LEV L. DASSIN
Acting United States Attorney for the
Southern District of New York
By:  MATTHEW L. SCHWARTZ
      TOMOKO ONOZAWA
Assistant United States Attorneys
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-1945
Fax: (212) 637-2750
E-mail: matthew.schwartz@usdoj.gov
        tomoko.onozawa@usdoj.gov

**HEARING DATE:**
    **June 9, 2009, at 11:00 AM (ET)**
**OBJECTION DEADLINE:**
    **June 2, 2009, at 4:00 PM (ET)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE:

      TRONOX INCORPORATED, *et al.*,

                  Debtors.

Chapter 11

Case No. 09-10156 (ALG)

Jointly Administered

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TRONOX INCORPORATED, TRONOX
WORLDWIDE LLC f/k/a Kerr-McGee
Chemical Worldwide LLC, and TRONOX
LLC f/k/a Kerr-McGee Chemical LLC,

               Plaintiffs,

        - against -

ANADARKO PETROLEUM
CORPORATION and KERR-MCGEE
CORPORATION,

              Defendants.

Adv. Proc. No.  09-01198 (ALG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF THE UNITED STATES OF AMERICA'S
## MOTION TO INTERVENE

PLEASE TAKE NOTICE that the United States of America, by its attorney

Lev L. Dassin, Acting United States Attorney for the Southern District of New

York, will move this Court, pursuant to Rule 7024 of the Federal Rules of

Bankruptcy Procedure, incorporating Rule 24 of the Federal Rules of Civil

Procedure, for an order in the form attached as Exhibit A to the Motion permitting

the United States to intervene in the above-captioned adversary proceeding, to file

the complaint-in-intervention attached as Exhibit B to the Motion, and for such

other relief as the Court deems just and proper (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing on the United States'

Motion will be held before the Honorable Allan L. Gropper, United States

Bankruptcy Judge, in Courtroom 617, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, New York, New York 10004, on

**June 9, 2009, at 11:00 AM (Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that responses or objections, if any, to

the Motion must comply with the Federal Rules of Bankruptcy Procedure and the

Local Bankruptcy Rules of this Court, must be set forth in a writing describing the

basis therefore, and must be filed with the Bankruptcy Court electronically in

accordance with General Order M-242, as amended by General Order M-269, by

registered users of the Court's electronic case filing system (the User's Manual for

the Electronic Case Filing System can be found at www.nysb.uscourts.gov the

official website for the Bankruptcy Court) and, by all other parties in interest, on a

3-1/2 inch disk, preferably in Portable Document Format (PDF), Wordperfect, or

any other Windows-based word processing format (with a hard copy delivered

2

directly to Chambers) and served upon each of the following: (a) the United States Attorney's Office for the Southern District of New York, 86 Chambers Street, Third Floor, New York, New York 10007, Attn: Matthew L. Schwartz & Tomoko Onozawa, Assistant United States Attorneys; (b) counsel to the Debtors, Kirkland & Ellis LLP, Citigroup Center, 153 East 53rd Street, New York, New York 10022, Attn: Jonathan S. Henes and Colin M. Adams; (c) counsel to the Official Committee of Unsecured Creditors, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, Attn: Alan W. Kornberg and Brian S. Hermann; (d) counsel to the Official Committee of Equity Security Holders, Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, New York 10036, Attn: Craig A. Barbarosh and David A. Crichlow; (e) counsel to the agent for the Debtors' prepetition secured lenders and postpetition secured lenders, Cravath, Swaine & Moore LLP, 825 Eighth Avenue, New York, New York 10019, Attn: Robert Trust; (f) counsel to Anadarko Petroleum Corporation and Kerr-McGee Corporation, Weil, Gotshall & Manges LLP, 700 Louisiana, Suite 1600, Houston, Texas 77002, Attn: Lydia Protopapas and Jason Billeck; and (g) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Susan Golden, so as to be received not later than **4:00 PM (Eastern Time) on June 2, 2009**.  Only those responses that are timely filed, served, and received will be considered at the hearing.  Failure to file a timely objection may result in entry of a final order granting the United States' Motion.

3

Dated:          May 21, 2009
                New York, New York

                                Respectfully submitted,

                                LEV L. DASSIN
                                Acting United States Attorney for the
                                Southern District of New York

                        By:      /s/ Matthew L. Schwartz_____
                                MATTHEW L. SCHWARTZ
                                TOMOKO ONOZAWA
                                Assistant United States Attorneys
                                86 Chambers Street
                                New York, New York 10007
                                Tel.: (212) 637-1945
                                Fax: (212) 637-2750
                                E-mail: matthew.schwartz@usdoj.gov
                                        tomoko.onozawa@usdoj.gov

LEV L. DASSIN
Acting United States Attorney for the
Southern District of New York
By:  MATTHEW L. SCHWARTZ
        TOMOKO ONOZAWA
Assistant United States Attorneys
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-1945
Fax: (212) 637-2750
E-mail: matthew.schwartz@usdoj.gov
        tomoko.onozawa@usdoj.gov

**HEARING DATE:**
        **June 9, 2009, at 11:00 AM (ET)**
**OBJECTION DEADLINE:**
        **June 2, 2009, at 4:00 PM (ET)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE:                                              Chapter 11

        TRONOX INCORPORATED, *et al.*,              Case No. 09-10156 (ALG)

                        Debtors.                    Jointly Administered

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
TRONOX INCORPORATED, TRONOX
WORLDWIDE LLC f/k/a Kerr-McGee
Chemical Worldwide LLC, and TRONOX
LLC f/k/a Kerr-McGee Chemical LLC,

                        Plaintiffs,

                - against -                         Adv. Proc. No.  09-01198 (ALG)

ANADARKO PETROLEUM
CORPORATION and KERR-MCGEE
CORPORATION,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**THE UNITED STATES OF AMERICA'S MOTION TO INTERVENE**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

     A.    The Debtors' Bankruptcy.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

     B.    The Government's Environmental Claims. . . . . . . . . . . . . . . . . . . . .  6

     C.    The Government's Objections to the DIP Order, and
          the Parties' Reservation of Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

     D.    The Complaint Against Anadarko and Kerr-McGee, and
          the Parties' Discussions Regarding the Government's Role in
          the Adversary Proceeding. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

RELIEF REQUESTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

BASIS FOR RELIEF.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

     A.    THE GOVERNMENT HAS AN "UNCONDITIONAL RIGHT
          TO INTERVENE" IN THE ADVERSARY PROCEEDING. . . . . . . . .  13

     B.    THE GOVERNMENT IS ENTITLED TO INTERVENE AS
          OF RIGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

     C.    THE GOVERNMENT SHOULD BE PERMITTED TO
          INTERVENE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

# TABLE OF AUTHORITIES

## CASES

*Brennan v. N.Y.C. Board of Education,*
        260 F.3d 123 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Department of Army v. Blue Fox, Inc.,*
        525 U.S. 255 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Caldor Corp.,*
        303 F.3d 161 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13, 14

*In re Hampton,*
        Nos. 95-50743, 95-5043, 96-5002, 1997 WL 714905,
        (Bankr. W.D. La. Aug. 13, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Kennedy Inn Associates,*
        221 B.R. 704 (Bankr. S.D.N.Y. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Refco Inc.,*
        505 F.3d 109 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Sunbeam Corp.,*
        287 B.R. 861 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lake Investors Dev. Group, Inc. v. Egidi Dev. Group,*
        715 F.2d 1256 (7th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Marino v. Ortiz,*
        484 U.S. 301 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*New York News, Inc. v. Kheel,*
        972 F.2d 482 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Reich v. ABC/York-Estes Corp.,*
        64 F.3d 316 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*SEC. v. Dresser Industries,*
        628 F.2d 1368 (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Trbovich v. United Mine Workers of America*,
   404 U.S. 528 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATUTES AND RULES**

11 U.S.C. § 105. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 U.S.C. § 361. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 U.S.C. § 363. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 U.S.C. § 502(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11 U.S.C. § 502(e)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11 U.S.C. § 510(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11 U.S.C. § 548. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11 U.S.C. § 550(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11 U.S.C. § 1101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11 U.S.C. § 1109(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

28 U.S.C. § 157. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1408. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 3301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 3304(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Bankr. P. 7024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 11

Fed. R. Civ. P. 24(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 24(b)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Civ. P. 24(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

iii

The United States of America (the "Government"), by its attorney Lev L. Dassin, Acting United States Attorney for the Southern District of New York, respectfully moves for an order pursuant to Rule 24(a) and/or Rule 24(b) of the Federal Rules of Civil Procedure, as incorporated by Federal Rule of Bankruptcy Procedure 7024, authorizing the United States to intervene in the above-captioned adversary proceeding, and to file its complaint-in-intervention.

## PRELIMINARY STATEMENT

1.      From literally the first day of these chapter 11 cases, the Debtors[1] have maintained that they were forced into bankruptcy in large part by crippling environmental liabilities at dozens, if not hundreds, of sites throughout the country. *See* Declaration of Gary Barton, Senior Director at Alvarez & Marsal North America LLC, In Support of First Day Motions ("Barton Declaration") ¶ 44. Debtors have been equally adamant that those liabilities "are almost entirely unrelated" to their ongoing operations, *id.* at ¶ 42, and have foreshadowed a fraudulent conveyance action against their former parent, Kerr-McGee Corporation ("Kerr-McGee"), as well as Anadarko Petroleum Corporation ("Anadarko"), which acquired Kerr-McGee almost immediately after the Debtors — along with all of Kerr-McGee's environmental liabilities — were spun off.

2.      Likewise, the United States has maintained from the start that it has

---

[1]      The "Debtors" in these cases include:  Tronox Luxembourg S.ar.L.; Tronox Incorporated; Cimarron Corporation; Southwestern Refining Company, Inc.; Transworld Drilling Company; Triangle Refineries, Inc.; Triple S, Inc.; Triple S Environmental Management Corporation; Triple S Minerals Resources Corporation; Triple S Refining Corporation; Tronox LLC; Tronox Finance Corp.; Tronox Holdings, Inc.; Tronox Pigments (Savannah) Inc.; and Tronox Worldwide LLC.

a unique statutory cause of action against Anadarko and Kerr-McGee under the

Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3301, *et seq.*, to the

extent that those parties fraudulently avoided debts to the United States of

America.  *See* United States of America's Objections to the Motion of the Debtors for

Entry of a Final Order (A) Authorizing the Debtors to Obtain Superpriority

Postpetition Secured Financing and Utilize Cash Collateral; (B) Authorizing the

Debtors to Repay Their Receivable Securitization Facility; and (C) Granting

Adequate Protection to Prepetition Secured Lenders ("DIP Objections") ¶¶ 8-14, 27-

33.

3.      On May 12, 2009, the Debtors filed their adversary complaint — a

compelling account of corporate greed in which Kerr-McGee sought to "jettison [its]

toxic legacy" by spinning off Tronox, so that Kerr-McGee could be acquired by

Anadarko for $18 billion, paying rich bonuses to its senior management in the

process.  *See* Adversary Complaint ("Complaint") ¶ 3.  According to the Complaint,

the defendants' "need to evade the Legacy Liabilities was underscored when the

U.S. Environmental Protection Agency . . . notified Old Kerr-McGee that it was

allegedly responsible for hundreds of millions of dollars in cleanup costs at a former

wood treatment plant in Manville, New Jersey.  Old Kerr-McGee knew that

Manville was just the tip of the iceberg and that it would face similar potential

liability at numerous other sites like Manville." *Id.*

4.      Now that the suit against Anadarko and Kerr-McGee is on file, the

United States seeks to intervene to protect its interests.  As the largest creditor in

2

these cases, the Government is obviously a party-in-interest within the meaning of

11 U.S.C. § 1109(b), and so has an "unconditional right to intervene" in this

adversary proceeding under the Second Circuit's decision in *In re Caldor Corp.*, 303

F.3d 161 (2d Cir. 2002).  Moreover, given that the United States has a unique

statutory cause of action to the extent that the defendants fraudulently avoided

debts to the United States — which the complaint makes plain was the case — the

Government must be permitted to assert those claims under the FDCPA.

5.      Indeed, the Government and the Debtors have already reached an

agreement permitting the United States to file its complaint-in-intervention and

defining the Government's role in the litigation of this action in such a way that will

enhance the Debtors' efforts to efficiently and effectively litigate this case, while

also protecting the Government's interests.  The Official Committee of Unsecured

Creditors, the Official Committee of Equity Security Holders, and the Debtors' pre-

petition Agent and DIP Agent likewise consent to the Government's intervention in

this case.

## JURISDICTION

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The basis for the relief requested in this motion is 11 U.S.C. § 1109(b),

and Federal Rule of Civil Procedure 24, as made applicable to this adversary

proceeding by Federal Rule of Bankruptcy Procedure 7024.

3

## BACKGROUND

### A.    The Debtors' Bankruptcy

8.    On January 12, 2009, Debtors filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code, 11 U.S.C. § 1101 *et seq*., as amended (the "Bankruptcy Code").  On the same day, this Court granted the Debtors' motion for joint administration.

9.    Debtors' first-day papers outline its extensive corporate history, dating back to the 1920s.  The Barton Declaration details the manner in which Kerr-McGee, through "Project Focus," isolated its legacy environmental and other liabilities in what became the Tronox line of entities — regardless of the source of those liabilities — and then spun Tronox off as an independent company.  The Barton Declaration likewise describes Kerr-McGee's stripping of valuable assets out of the Tronox entities prior to the spin-off, including $537.1 million in net proceeds from debt that was parked in Tronox.  Finally, the Barton Declaration goes through Kerr-McGee's aborted attempts to sell Tronox to a third-party buyer — including offering hundreds of millions of dollars in environmental indemnities — before Tronox was spun off in an initial public offering, the proceeds of which (along with almost 23 million class B shares in Tronox) naturally went to Kerr-McGee.  *See* Barton Declaration ¶¶ 24-39.  According to the Barton Declaration, less than five months after the spin-off, Anadarko acquired Kerr-McGee for $18 billion.  *Id*. ¶ 40.

### B.    The Government's Environmental Claims

10.    Although the Government is still in the process of collecting

claim-related information, it is clear that Debtors are liable for environmental and related costs at literally dozens of sites throughout the country, in addition to their many on-going (injunctive) remediation obligations. The first-day papers illustrate the magnitude of the Debtors' environmental liabilities. In addition to its future environmental responsibilities, Debtors have already performed remediation work at various sites, spending approximately $148 million pre-petition. *See* Barton Declaration ¶ 48.

11.     Kerr-McGee's ill-fated attempts to find a buyer for Tronox and its liabilities also gives some sense of the magnitude of the environmental liabilities. One "prospective purchaser conveyed a $1.2 billion bid if the Legacy Liabilities were not included, but only a $300 million bid if they were included. This prospective purchaser viewed the inclusion of the Legacy Liabilities as a $900 million swing, and refused to go further in any discussions." Complaint ¶ 61. Another potential purchaser was offered "more than $400 million in environmental indemnities if [it] would accept the Legacy Liabilities as part of a sale transaction," but refused to consummate any sale that included those liabilities. Barton Declaration ¶¶ 29-30; *see also* Complaint ¶ 73-75 (alleging that that buyer offered $1.6 billion for the company without the Legacy Liabilities, and that Kerr-McGee offered $400 million in indemnities).

12.     Indeed, the entire series of fraudulent transfers that gave rise to the claims against Anadarko and Kerr-McGee seems to have been precipitated, or at least accelerated, by one environmental claim in particular. In 1999, the EPA first

5

notified Kerr-McGee that it was a potentially responsible person ("PRP") at the

Federal Creosote Superfund Site in Manville, New Jersey.  This notice allegedly

convinced Kerr-McGee that its legacy liabilities were "simply too big" to carry.

Complaint ¶ 29.  At that time, EPA allegedly estimated the cost of the remedy at

only $59 million.  *See id.* ¶ 32.  By 2005, EPA informed Kerr-McGee that it was

liable for at least $179 million in clean-up costs relating to creosote contamination

in Manville.  *See* Barton Declaration ¶ 28.  And as of June 2008, the United States

had incurred in excess of $280 million in unreimbursed response costs at the

Federal Creosote Superfund Site, which is the subject of litigation filed by the

Government in the District of New Jersey.  *See United States of America v. Tronox,*

*LLC*, No. 08-cv-4368 (FLW) (D.N.J. filed Aug. 29, 2008).

13.    According to the Debtors' Complaint, this $280 million debt was

"simply the tip of the iceberg.  Old Kerr-McGee knew that it was associated with

numerous other previously undisclosed wood treatment and agricultural chemical

sites that, like Manville, posed the specter of substantial environmental and tort

liabilities."  Complaint ¶ 34.

## C.    The Government's Objections to the DIP Order, and the Parties' Reservation of Rights

14.    Shortly after this case was filed, the Debtors sought this Court's

approval to obtain DIP financing.  The Government objected to the terms of the

financing, arguing that the lenders should not be permitted to encumber avoidance

actions, observing that, "[i]n the Government's view, the most promising source of

6

assets likely to be available to unsecured creditors — especially given any

replacement liens given to the DIP Lenders on extant estate property — lies in

potential fraudulent conveyance claims [against Anadarko and Kerr-McGee]." DIP

Objections ¶ 8.

15.    In particular, the Government argued that Congress created a federal

statutory fraudulent conveyance claim, under the FDCPA, that gives the

Government enhanced rights when a debtor transfers property specifically to avoid

a debt to the Government.[2]  *See id.* ¶ 27.  As noted in the DIP Objections:

> The relief accorded by the FDCPA is limited. . . .  It only makes a
> transfer fraudulent "as to a debt to the United States."  28 U.S.C.
> §§ 3304(a) & (b).  By its express terms, the FDCPA therefore
> creates a sort of constructive trust or equitable lien in favor of the
> United States from the proceeds of any fraudulent conveyance
> avoided under that statute.  Indeed, unlike avoidance actions
> under sections 544 or 548 of the Code, which must ordinarily be
> brought by a trustee or debtor in possession, the United States
> retains its right to avoid fraudulent conveyances under the FDCPA
> even in bankruptcy.  *See, e.g., In re Hampton*, Nos. 95-50743,
> 95-5043, 96-5002, 1997 WL 714905, at *8-9 (Bankr. W.D. La. Aug.
> 13, 1997) (permitting United States to assert FDCPA claim with
> respect to transactions allegedly made to avoid tax debt, but
> denying that claim on its merits).  That result squares with the
> notion that the proceeds of FDCPA actions inure solely to the
> benefit of the United States, and not for the estate generally.
>
> Because the statute creates a property interest unique to the
> United States in the proceeds of FDCPA actions, the DIP Motion
> cannot grant the lenders a superior interest than that of the

---

[2]    As noted in the DIP Objections, nothing in this motion should be read
to imply that actions under the FDCPA constitute "Avoidance Actions" as defined in
the DIP Motion and DIP Documents, or that the proceeds of FDCPA actions are in
any sense property of the estate.  The Government specifically reserves it rights
with respect to those issues.

7

> United States in those funds.  Indeed, the doctrine of sovereign immunity bars it.  *See, e.g., Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 263-64 (1999) (subcontractor's attempt to "seize or attach money in the hands of the Government" barred by sovereign immunity).

DIP Objections ¶¶ 31-32 (footnote omitted).

16.   Ultimately, the Government's DIP Objections were resolved with the Debtors and the DIP Lenders by including a full reservation of rights for any claims under the FDCPA.  The Corrected Final Order (I) Authorizing Debtors (A) To Obtain Postpetition Financing Under 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) And 364(e), (B) To Utilize Cash Collateral Under 11 U.S.C. § 363 And (C) To Use Postpetition Financing To Purchase Receivables Portfolio And (II) Granting Adequate Protection To Prepetition Secured Lenders Under 11 U.S.C. §§ 361, 362, 363 and 364 (the "Final DIP Order") provides:

> The United States of America objects to any provision in this Final Order or the DIP Documents providing for any liens (including replacement liens) or superpriority claims with respect to actions, claims or settlements brought under or relying upon the Federal Debt Collection Procedures Act, or the proceeds of such actions, claims or settlements, and this Final Order is without prejudice to all rights of the United States with respect to such objection, or the rights of the Debtors, any Statutory Committee, the DIP Agents, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders or any other party in interest to challenge or otherwise contest such objection, and all rights of such parties are hereby fully preserved.

Final DIP Order ¶ 26.  At the DIP Agent's request, the Final DIP Order also contains restrictions on the Debtors' use of the DIP Financing or Cash Collateral (as those terms are defined in the Final DIP Order) to prosecute certain claims.  *See id.*

8

¶ 27.

**D.     The Complaint Against Anadarko and Kerr-McGee, and the Parties'
Discussions Regarding the Government's Role in the Adversary
Proceeding**

17.     On May 12, 2009, the Debtors filed their action against Kerr-McGee

and Anadarko.  The Debtors' Complaint fleshes out and expands upon the facts set

out by the Debtors in the Barton Declaration and by the Government in its DIP

Objections, and asserts eleven claims, as follows:

> i.     Actual fraudulent transfer, under 11 U.S.C.§ 544(b) and
>        Oklahoma's Uniform Fraudulent Transfer Act;
> ii.    Constructive fraudulent transfer, under the same
>        authorities;
> iii.   Constructive fraudulent transfer regarding payments
>        made for Anadarko's or Kerr-McGee's benefit during the
>        two years preceding Debtors' bankruptcy, under 11 U.S.C.
>        § 548;
> iv.    Civil conspiracy;
> v.     Aiding and abetting fraudulent conveyance;
> vi.    Breach of fiduciary duty as a promotor;
> vii.   Unjust enrichment;
> viii.  Equitable Subordination, under 11 U.S.C. § 510(c);
> ix.    Equitable Disallowance;
> x.     Disallowance, under 11 U.S.C. § 502(d); and
> xi.    Disallowance of Contingent Indemnity Claims, under 11
>        U.S.C. § 502(e)(1)(B).

18.     The Complaint does not assert any claims under the FDCPA.

19.     Long before Debtors filed their Complaint, they were aware that the

Government had been investigating fraudulent conveyance claims against Kerr-

McGee and Anadarko for some time, and were considering filing an action under

the FDCPA in United States District Court.  In an attempt to avoid unnecessary

litigation among them, and to join forces against Anadarko and Kerr-McGee, the

9

Government and the Debtors began to negotiate a way to reconcile the estates'

claims under the Bankruptcy Code with the Government's claims under the

FDCPA.

20.    To that end, the Government and Debtors have reached an agreement

that would give the Government the right to litigate its fraudulent conveyance

claims alongside the Debtors, while continuing to reserve the more novel issues

surrounding the interplay of the FDCPA and the Bankruptcy Code.

21.    The essential elements of the deal struck by the Debtors and the

Government are:

> i.    The Government, as a party in interest, may participate in the litigation of the case, including during discovery;
>
> ii.   The Debtors retain the ability to settle the estate's claims in the adversary proceeding under existing precedent, subject to the Government's ability to fully contest the Debtors' ability to settle fraudulent conveyances of federal debts;
>
> iii.  All arguments concerning the allocation of proceeds of the adversary proceeding as between the United States and other creditor constituencies are reserved;
>
> iv.   The Government may file a complaint-in-intervention in the adversary proceeding, asserting its claims under the FDCPA.  The Debtors reserve their rights to challenge the Government's complaint on any grounds, but agree not to do so at the outset.

22.    The Debtors and the Government are in the process of obtaining the

consent of the other relevant stakeholders to this agreement, which we anticipate

presenting as a stipulation for the Court's endorsement, so as to avoid placing

unnecessary disputes before the Court.  In the meanwhile, the Government

respectfully makes this motion so that it may intervene in the adversary proceeding

10

and file its complaint-in-intervention, so as not to delay in any way the prosecution

of the parties' various claims against Anadarko and Kerr-McGee.

## RELIEF REQUESTED

23.    In this motion, the Government respectfully requests that it be

permitted to intervene in the above-captioned adversary proceeding pursuant to

Federal Rule of Bankruptcy Procedure 7024 and Federal Rule of Civil Procedure 24,

and to file its complaint-in-intervention pursuant to Federal Rule of Civil Procedure

24(c).

24.    A proposed order granting the relief requested in this motion is

attached hereto as Exhibit A, and the Government's proposed complaint-in-

intervention is attached as Exhibit B.

25.    As noted, based on the terms of the stipulation that the parties are

finalizing, the Debtors, the Official Committee of Unsecured Creditors, the Official

Committee of Equity Security Holders, the Debtors' pre-petition agent, and the DIP

Agent all consent to the relief requested in this motion.

## BASIS FOR RELIEF

26.    Federal Rule of Civil Procedure 24 (made applicable to this action

through Federal Rule of Bankruptcy Procedure 7024) provides:

> (a)    Intervention of Right.  On timely motion, the court must
> permit anyone to intervene who:
>     (1)    is given an unconditional right to intervene by a
>            federal statute; or
>     (2)    claims an interest relating to the property or
>            transaction that is the subject of the action, and is so
>            situated that disposing of the action may as a

11

> practical matter impair or impede the movant's
> ability to protect its interest, unless existing parties
> adequately represent that interest.
>
> (b)    Permissive Intervention.
>
> (1)    In General.  On timely motion, the court may permit
> anyone to intervene who:
>
> *        *        *
>
> (B)    has a claim or defense that shares with the
> main action a common question of law or fact.

27.    Rule 24 therefore identifies at least three circumstances (two mandatory and one permissive) in which a party is a proper intervenor.  The Government is entitled to, or should be allowed to, intervene in the above-captioned adversary proceeding under each and every one of those tests.

## A.    THE GOVERNMENT HAS AN "UNCONDITIONAL RIGHT TO INTERVENE" IN THE ADVERSARY PROCEEDING

28.     Under the Second Circuit's decision in *Caldor*, any entity that is a party-in-interest in the umbrella bankruptcy case within the meaning of 11 U.S.C. § 1109(b) *automatically* meets the criteria for intervention in any adversary proceeding, under Rule 24.  *See Caldor*, 303 F.3d 161.

29.    Pursuant to Rule 24, "the court *must* permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute."  Fed. R. Civ. P. 24(a)(1) (emphasis supplied).  The Bankruptcy Code — specifically, section 1109(b) — is just such a federal statute.  According to the Second Circuit, "the plain text of the statute [*i.e.*, 11 U.S.C. § 1109(b)] indicates Congress intended to grant" "an unconditional statutory right for parties in interest to intervene in adversary proceedings that occur in connection with a Chapter 11 bankruptcy case."  *Caldor*,

12

303 F.3d at 162-62.

30.      There is no question that the United States is a party-in-interest in

these cases.  Indeed, section 1109(b) defines "party in interest" to include "the

debtor, a creditors' committee, an equity security holders' committee, a creditor, an

equity security holder, or any indenture trustee."  11 U.S.C. § 1109(b).  As not only

*a* creditor of these estates, but from all appearances the single largest creditor in

these cases, the Government is plainly a party-in-interest, as the Debtors agree.

*See, e.g., In re Refco Inc.*, 505 F.3d 109, 116-18 (2d Cir. 2007) (defining "party in

interest" under section 1109(b) to include all creditors, when vindicating their own

rights and interests).

31.      Simply put, "*Caldor* interpreted 11 U.S.C. § 1109(b) to provide parties

in interest — such as the Committee or *any creditor* — an 'unconditional right to

intervene in adversary proceedings.'"  *In re Sunbeam Corp.*, 287 B.R. 861, 862

(S.D.N.Y. 2003) (emphasis supplied; quoting *Caldor*, 303 F.3d at 166).  As a creditor

of these estates, and therefore a party in interest in these cases, the Government

therefore has an "unconditional right to intervene" in this adversary proceeding.

*See Caldor*, 303 F.3d at 162-62.

## B.      THE GOVERNMENT IS ENTITLED TO INTERVENE AS OF RIGHT

32.      Even if the Court were inclined to go through the more traditional

Rule 24 analysis, the Government would still be entitled to intervene in the

adversary proceeding as a matter of right.  Rule 24(a)(2) of the Federal Rules of

13

Civil Procedure provides that a party is entitled to intervene as a matter of right when it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

33.    The Second Circuit has identified four criteria that a movant must satisfy in order to intervene as of right under Rule 24(a)(2):  (1) the application to intervene must be timely; (2) the movant must have an interest in the action; (3) the movant must be so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) the movant's interest must not be adequately represented by the existing parties to the suit. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2nd Cir. 2001) (citing *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992)).

34.    The Government easily meets that test, here.  *First*, the intervention motion is timely because it comes within days of the Debtors' initiation of this action, before the defendants' answer is due, and before the initial case conference scheduled for July 7, 2009.

35.    *Second*, the United States has an interest in the action because it alleges that the defendants fraudulently avoided debts to, among others, the Government.  Indeed, the Government has an interest in the action simply by virtue of being a creditor of these estates, since the proceeds of any judgment or settlement of the estates' claims will run to the benefit of its creditors.  Under the

14

Bankruptcy Code, avoidance actions must be maintained "for the benefit of the estate." 11 U.S.C. § 550(a). And under the "benefit of the estate" standard, "what matters is whether creditors will receive some benefit.'" *In re Kennedy Inn Associates*, 221 B.R. 704, 715 (Bankr. S.D.N.Y. 1998) (internal quotation marks omitted). *See generally Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995) ("In ascertaining a potential intervenor's interest in a case, our cases focus on the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues.").

36.     *Third*, the disposition of the adversary proceeding may prejudice the Government's interests, insofar as the estate's claims overlap with the Government's claims under the FDCPA.

37.     And *fourth*, the Government's interests are not adequately represented by the current parties to the suit because they cannot assert FDCPA claims on behalf of the United States as a matter of law, and in any event, under the restrictions imposed by the Final DIP Order, the Debtors may be unable to prosecute FDCPA claims even if they were able and inclined to do so. If nothing else, the Debtors have elected not to bring such claims as part of their Complaint. *See Lake Investors Dev. Group, Inc. v. Egidi Dev. Group*, 715 F.2d 1256, 1261 (7th Cir. 1983) (adequate representation requirement of Rule 24(a)(2) is satisfied if "'the applicant shows that representation of his interest "may be" inadequate; and the burden of making that showing should be treated as minimal.'" (quoting *Trbovich v.*

15

*United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972))); *SEC. v. Dresser Indus.*, 628 F.2d 1368, 1390 (D.C. Cir. 1980) (stating that an applicant "need only show that the representation of his interest may be inadequate; the burden of proof rests on those resisting intervention").

38.    Without intervening, it is also not clear that the Government would have standing to appeal an adverse decision in the adversary proceeding, even ones particular to the Government's interests under the FDCPA.  *See Marino v. Ortiz*, 484 U.S. 301, 302 (1988) (noting that because "only parties to a law suit, or those that properly become parties, may appeal an adverse judgment," it is the "better practice" for non-parties who are affected by a court's judgment "to seek intervention for purposes of participating an any appeal").

## C.    THE GOVERNMENT SHOULD BE PERMITTED TO INTERVENE

39.    In the alternative, the Government should be permitted to intervene pursuant to Rule 24(b), which provides:  "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  The Government's claims under the FDCPA arise under almost precisely the same facts as the Debtors', and rest on analogous legal theories.  The Government should therefore be permitted to intervene under Rule 24(b).

16

## CONCLUSION

40.    For the foregoing reasons, the Government is entitled to, or alternatively should be permitted to, intervene in this adversary proceeding. Pursuant to Federal Rule of Civil Procedure 24(c), a proposed Complaint-in-Intervention is attached as Exhibit B, which the Government seeks leave to file upon the Court's granting of this motion.  *See* Fed. R. Civ. P. 24(c) ("A motion to intervene must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought.").  A proposed order is attached as Exhibit A.

41.    As these objections include citations to the applicable legal authorities, the Government respectfully requests that the Court waive the requirement contained in Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York that the Government file a separate memorandum of law.

42.    The Government has provided notice of this motion to the parties to the adversary proceeding (*i.e.*, the Debtors, Kerr-McGee, and Anadarko), as well as the Office of the United States Trustee, counsel to the Official Committee of Unsecured Creditors, counsel to the Official Committee of Equity Security Holders, counsel to the DIP Agent, as well as, by ECF, all parties that have appeared in these cases pursuant to Federal Rule of Bankruptcy Procedure 2002.

43.    The Government has not previously sought the relief requested by this motion.

17

Dated:      May 21, 2009
            New York, New York

                          Respectfully submitted,

                          LEV L. DASSIN
                          Acting United States Attorney for the
                          Southern District of New York

                  By:     /s/ Matthew L. Schwartz
                          MATTHEW L. SCHWARTZ
                          TOMOKO ONOZAWA
                          Assistant United States Attorneys
                          86 Chambers Street
                          New York, New York 10007
                          Tel.: (212) 637-1945
                          Fax: (212) 637-2750
                          E-mail: matthew.schwartz@usdoj.gov
                                  tomoko.onozawa@usdoj.gov