Melanie Gray (*pro hac vice*)
Lydia Protopapas (8089)
Jason W. Billeck (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:   (713) 224-9511

*Counsel to Anadarko Petroleum Corporation
and Kerr-McGee Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, *et al.*, | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 09-1198 |
| | ) | |
| ANADARKO PETROLEUM CORPORATION and KERR-McGEE CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |

**ANADARKO PETROLEUM CORPORATION AND
KERR-MCGEE CORPORATION'S OBJECTION TO
THE UNITED STATES OF AMERICA'S MOTION TO INTERVENE**

Anadarko Petroleum Corporation ("Anadarko") and Kerr-McGee Corporation

("Kerr-McGee") (collectively, the "Defendants") hereby file their objection (the "Objection") to

the motion to intervene ("Intervention Motion") filed by the United States of America (the "Government") as follows:

## PRELIMINARY STATEMENT

Through its Intervention Motion, the Government seeks to intervene not only as a party-in-interest under section 1109(a) of the Bankruptcy Code, but also to assert its own alleged fraudulent transfer claims—claims that are substantially identical to the fraudulent transfer claims being prosecuted by the Debtors. The Defendants do not oppose the Government's right to intervene provided that its rights as intervenor are appropriately limited as discussed below. The Defendants, however, do object to the Government being allowed to file and prosecute its own alleged fraudulent transfer claims—claims that even the Debtors do not agree belong to the Government. And for good reason—all purported fraudulent transfer claims are property of the Debtors' estates, belong solely to them, and cannot be pursued by an individual creditor.

Although the Second Circuit permits parties-in-interest to intervene in adversary proceedings, this right of intervention does not supplant the otherwise applicable requirements articulated in *STN* and its progeny concerning the limited circumstances under which creditors may assert claims that otherwise belong to the Debtors. Indeed, the terms of the Government's proposed participation in the Adversary Proceeding do not meet the standards articulated by the Second Circuit because the Debtors have not failed or refused to prosecute their alleged fraudulent transfer claims and the Government's participation in the Adversary Proceeding is not necessary or beneficial to the estates. Rather, such participation will delay, complicate and increase the costs of the proceeding. Moreover, even if the Government could otherwise satisfy the standards set forth by the Second Circuit in *STN, Commodore* and *Housecraft,* these opinions do not support the Government's current efforts to prosecute claims that it alleges are separate and distinct from those being prosecuted by the debtor.

Instead of enforcing the automatic stay and their rights as debtors in possession, the Debtors have entered into a proposed Stipulation with the Government, the Creditors' Committee, the Equity Committee ***and the DIP Agent*** that would give each of these parties

substantial rights to participate in the Adversary Proceeding and allow the Government to separately prosecute its alleged Federal Debt Collection Procedures Act ("FDCPA") claims, all to the detriment and prejudice of the Defendants. *See* Stipulation and Order With Respect to Federal Debt Collection Procedures Act (the "Stipulation"), filed on May 28, 2009. (Docket No. 09-10156).[1] The Stipulation does nothing to resolve the issue raised at the very outset of these chapter 11 cases concerning whether the Government in fact has its own right to prosecute fraudulent transfer claims under the FDCPA.

Moreover, the Defendants should not be forced to litigate against five different sets of parties when only one party in fact controls the claims. Fundamental fairness requires as much. In order to effectively manage this complex litigation, involving eleven different causes of action based upon numerous transactions, many of which occurred many years ago, this Court should first address the fundamental issue of who owns and controls the fraudulent transfer claims. Only then can this Adversary Proceeding proceed efficiently and cost-effectively.

## FACTUAL BACKGROUND

**A.   The Debtors' Adversary Proceeding.**

On January 12, 2009 (the "Petition Date"), Tronox Incorporated and certain of its affiliates (the "Debtors") filed a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On May 12, 2009 (*i.e.*, four months after the Petition Date and at least that many months of preparation), the Debtors initiated this adversary proceeding (the "Adversary Proceeding") by filing its complaint (the "Complaint") against the Defendants. Pursuant to the Complaint, the Debtors seek to avoid and recover, pursuant to sections 544(b) and 550(a) of the Bankruptcy Code and section 116 of Oklahoma's Uniform

---

[1]   The Defendants object to the terms of the Stipulation and will be filing their objection on or prior to the objection deadline of June 9, 2009, at 11:00 a.m. As the full impact of the Government's Intervention Motion cannot be understood without addressing certain aspects of the Stipulation, the Defendants briefly discuss the terms and effect of the Stipulation in this Objection. The Defendants, however, are not waiving their right to separately respond and object to the Stipulation.

Fraudulent Transfer Act ("UFTA"), certain purportedly fraudulent transfers associated with an internal corporate reorganization that occurred in 2002 and the spin-off of the Debtors from Kerr-McGee Corporation in 2005.  *See* Complaint ¶¶ 126-52.[2]

On May 21, 2009, the Government filed its Intervention Motion in this Adversary Proceeding, along with its proposed Complaint in Intervention.  In the Complaint in Intervention, the Government asserts two causes of action, an actual fraudulent transfer claim against the Defendants and a constructive fraudulent transfer claim against the Debtors.  *See* Complaint in Intervention ¶¶ 97-109.  Both of these causes of action are brought pursuant to the FDCPA and seek to set aside the exact same transfers being challenged by the Debtors in their Complaint. *See id.*  The Government also requests a declaratory judgment finding that the automatic stay of section 362(a) of the Bankruptcy Code does not apply to its alleged FDCPA claims by virtue of the applicability of the police and regulatory powers exception to such provision.  *See id.* ¶ 93. According to the Government, the Debtors, as well as the Creditors' Committee, the Equity Committee, and the DIP Agent, have agreed to the relief sought by the Government in the Intervention Motion.  *See* Intervention Motion ¶ 5.

**B.     The Proposed Stipulation and Order.**

On May 28, 2009, the Debtors filed the Stipulation among the Debtors, the Government, the Creditors' Committee, the Equity Committee, and the DIP Agent (collectively, the "Stipulating Parties") that purports to allow the Government to file its Complaint in Intervention and allows the other Stipulating Parties to actively participate in the Adversary Proceeding without the need to intervene.  The Defendants were not provided with a copy of the

---

[2]  In addition to their fraudulent transfer claims, the Complaint also asserts claims for civil conspiracy, breach of fiduciary duty, unjust enrichment, equitable subordination, equitable disallowance, disallowance and disallowance of contingent indemnity.  *See* Complaint ¶ 153-97.  Each of these additional claims is predicated on the same factual allegations that underlie the Debtors' alleged fraudulent transfer claims.

proposed Stipulation prior to it being filed in the main bankruptcy case and were never asked to participate in any discussions regarding the appropriate role of the Stipulating Parties in this Adversary Proceeding.

Pursuant to the proposed Stipulation, each of the Stipulating Parties would be allowed to file their own motions, pursue their own discovery, ask their own questions in depositions, and be granted an absolute, unfettered right to participate in settlement negotiations. Importantly, the Stipulation provides that the Debtors are not waiving their right to challenge whether the Government even owns and is entitled to pursue its alleged FDCPA claims, nor whether the prosecution of the Complaint in Intervention violates the automatic stay. Nor are any of the Stipulating Parties waiving their rights to a jury trial or to have the reference withdrawn as to the Adversary Proceeding. Further, although the Stipulation provides that the Debtors retain their rights to decide whether to settle the Adversary Proceeding, the Stipulation makes clear that nothing therein "shall be construed to authorize the Debtors to settle or compromise any claims that do not belong to the estates under applicable law." Stipulation ¶ 2. Thus, while the Stipulation would grant broad rights to the Government and the other Stipulating Parties, the fundamental question of who owns and controls the causes of action, where they will be tried, and who has the right to settle them is left unresolved.

## ARGUMENT

A.  **The Government's Proposed Fraudulent Transfer Claims Are Property of the Estate and Can Only Be Asserted by the Debtors.**

The Government's Intervention Motion should be denied to the extent that it would authorize the Government to file the proposed Complaint in Intervention because the claims asserted therein are the exclusive property of the Debtors' estates and are being actively prosecuted by them. It is well established that fraudulent transfer claims, including those that the

Government seeks to assert, are the exclusive property of a debtor's estate. *See Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 220 (1941) (unsecured creditor had no greater right than other creditors to fraudulently transferred funds); *In re Ontos, Inc.,* 478 F.3d 427, 431 (1st Cir. 2007) ("[It is] well established that a claim for fraudulent conveyance is included within . . . property [of the estate]."); *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 202-03 (7th Cir. 1998) (same); *In re Mishkin*, 58 B.R. 880, 882 (Bankr. S.D.N.Y. 1986) (prepetition fraudulent transfers are part of bankruptcy estate).  As described by the Fifth Circuit, "[a]n action under the Fraudulent Transfers Act is essentially one for property that belongs to the debtor . . . and therefore [cannot] be brought by a creditor acting alone and without the court's permission."  *In re MortgageAmerica,* 714 F. 2d 1266, 1275 (5th Cir. 1983), *citing Glenny v. Langdon,* 98 U.S. 20, 22 (1878); *Nat'l Credit Partners v. Havlik*, 20 F.3d 705, 708-09 (7th Cir. 1994) ("[T]he right to recoup a fraudulent conveyance . . . is the property of the estate that only a trustee or debtor in possession may pursue once a bankuptcy is under way."); *In re Maranatha Min. Co., Inc.*, 1993 WL 366657, at *2 (9th Cir. 1993) ("Once appointed, a bankruptcy trustee becomes the representative of the estate, 11 U.S.C. § 323(a), and succeeds to the debtor's right to pursue causes of action which are the property of the estate."); *Bauer v. Commerce Union Bank,* 859 F.2d 438, 441 (6th Cir. 1988) ("It is well settled that the right to pursue causes of action formerly belonging to the debtor . . . vests in the trustee for the benefit of the estate."), *cert. denied,* 489 U.S. 1079 (1989); *United Features Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 222 (S.D.N.Y. 2002) ("It is clear that under U.S. bankruptcy law, fraudulent conveyance claims based on pre-bankruptcy petition transfers by a debtor . . . [are actions that] the estate trustee has exclusive authority to maintain . . . .").  Based upon these and other authorities, the Debtors have the exclusive right to bring all fraudulent transfer claims and the

Government may not usurp this exclusive authority under the guise of intervention. *See In re Smart World Techs., LLC*, 423 F.3d 166, 182 (2d Cir. 2005) (intervention "does not equate to ownership of the causes of action in question; it takes an *STN*, or *Commodore/Housecraft* order to secure [such a role].") (quoting *In re Adelphia Comms. Corp.*, 285 B.R. 848, 851 (Bankr. S.D.N.Y. 2002)).

Contrary to the Government's assertion that it has a unique federal right to pursue FDCPA claims, the overwhelming majority of courts have held that a debtor may itself bring claims pursuant to the FDCPA. *See Allred v. Porter*, 2009 WL 902662 (Bankr. D.S.D. March 13, 2009) (allowing trustee to assert a claim under 28 U.S.C. § 3304); *Followell v. United States (In re Gurley)*, 357 B.R. 868 (Bankr. M.D. Fla. 2006) (upholding a previous determination that the trustee may recover property fraudulently transferred under 28 U.S.C. § 3304); *Kipperman v Onex Corp.*, 2006 U.S. Dist. LEXIS 96944, at * 76-78 (N.D. Ga. Sept. 15, 2006) (refusing to grant a motion to dismiss the trustee's claim of fraudulent transfer under 28 U.S.C. § 3304); *In re Bonham*, 224 B.R. 435 (Bankr. D. Ala. 1998) (suggesting that the trustee would be within its right to enforce the SEC's claim under 28 U.S.C. § 3304 if the SEC's disgorgement order were considered a "debt").

Moreover, the Government mistakenly relies on *In re Hampton*, 1997 WL 714905, at *8 (W.D. La. Aug. 13, 1997) for the proposition that it has standing to bring its own fraudulent conveyance claims. In *Hampton*, the debtors filed a complaint to determine the amount, priority and dischargeability of the government's tax claims and, in response, the government asserted a counterclaim alleging that the debtors had fraudulently transferred certain properties to a trust in an effort to evade their tax liabilities. *Id.* at *1. The debtors did not challenge the government's right to bring the counterclaim, and, as such, the court never

considered the propriety of the government's standing to prosecute the claims. *Id.* at *7. Unlike in the *Hampton* case, the Debtors *are* prosecuting their alleged fraudulent transfer claims, the Defendants *are* contesting the Government's standing to prosecute those fraudulent transfer claims, and additionally, the transfers challenged by the Debtors *are not* alleged to have been made for the sole purpose of evading the Government's (as opposed to other creditors') claims. Accordingly, *Hampton* does not support the Government's claim that it has an exclusive or "unique" right to pursue purported fraudulent transfer claims.

Moreover, the Government's assertion that the FDCPA gives it "a sort of constructive trust or equitable lien in favor of the United States from the proceeds of any fraudulent conveyance avoided under the statute," *see* Intervention Motion ¶ 15, is of no consequence to the present dispute because it solely relates to the question of who receives the proceeds of an FDCPA claim, rather than who is entitled to pursue the claim. While the Defendants submit there will be no proceeds resulting from this Adversary Proceeding or any alleged FDCPA claims, the issue of how they might be distributed need not be litigated in this Adversary Proceeding. Indeed, if any proceeds are realized by the Debtors, the Defendants need not be a party to any ensuing litigation involving the priority of creditors' claims to such proceeds.

**B.    The Government Cannot Satisfy the Required Showing to Be Granted the Right to Prosecute the Fraudulent Transfer Claims on Behalf of the Debtors.**

Given that the fraudulent transfer claims are the exclusive property of the Debtors' estate, the Government is trying to do indirectly that which it cannot do directly—assert causes of action belonging to the Debtors. Simply stated, intervention cannot be used as a means to bring claims that are the exclusive property of the Debtors' estates. Moreover, because the Debtors have not failed or refused to prosecute their alleged fraudulent transfer claims against

the Defendants, the Government cannot meet the standards required by the Second Circuit under *STN* and its progeny.

    1.    The Government Cannot Meet the Standards Set Forth in *STN*, *Commodore* and *Housecraft*.

The Second Circuit has recognized an "implied, but qualified" right for creditors to assert claims where the debtor has ***unjustifiably failed*** to bring suit or abused its discretion in not suing on colorable claims likely to benefit the estate. *See In re STN Enterprises*, 779 F.2d 901, 904-05 (2d Cir. 1985). In the instant case, however, the Debtors are actively prosecuting their fraudulent transfer claims and the *STN* exception therefore does not apply. The Government's proposed fraudulent transfer claims are largely identical to the Debtors' fraudulent transfer claims, insofar as they are based upon the same law (albeit codified in different statutes), the very same set of alleged facts, and the very same prepetition transfers.[3] Moreover, while a creditor may be granted leave under *STN* to pursue claims that the debtor has unjustifiably failed and refused to bring, the creditor must pursue that claim in the name of the debtor and for the benefit of the debtor's estate—not for the singular benefit of that creditor. *See STN*, 779 F.2d at 904 (allowing creditor to "initiate adversary proceedings *in the name of the debtor in possession*") (emphasis added). Here, the Debtors have neither failed nor refused to bring their fraudulent transfer claims and the Government seeks to bring its own claims, in its own name, and for its own benefit. Clearly, *STN* does not support such relief.

---

[3]    While the Government suggests that its FDCPA claims are in fact separate and distinct from those being prosecuted by the Debtors, the claims are in fact substantively identical. Indeed, other than differing statutes of limitations, the FDCPA and the Oklahoma fraudulent conveyance provision are largely coterminous. The Complaint in Intervention is in many ways a "cut and paste" of the Debtors' Complaint as both complaints seek the same relief based on the same transfers and are predicated on the same allegedly wrongful conduct. Indeed, any recovery that may be granted by this Court, whether awarded based on the FDCPA or Oklahoma's fraudulent conveyance statute, would be substantially the same.

Nor can the Government show that it is entitled to join with the Debtors in prosecuting this Adversary Proceeding under the standards enunciated by the Second Circuit in *Commodore* and *Housecraft*. Under these decisions, a creditor may bring suit or join a suit brought by the debtor only when: "(1) the [creditor] has the consent of the debtor in possession or trustee, **_and_** (2) the court finds that suit by the [creditor] is (a) in the best interest of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." *In re Commodore Int'l, Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001); *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 72 (2d Cir. 2002) (emphasis added). While the Debtors have purportedly consented to the Government's prosecution of its alleged FDCPA claims on the terms set forth in the Stipulation, such consent is not sufficient to permit the Government's participation under the Second Circuit's rulings in *Housecraft* and *Commodore*.

First, allowing the Government to participate in this Adversary Proceeding is not in the best interests of the Debtors' estates because such participation will delay the resolution of the litigation and significantly increase the costs for all parties—particularly the Debtors' estates.[4] Unlike *Housecraft*, in which the court noted that the estate lacked the resources to bring the action alone, 310 F.3d at 71, the Debtors clearly have sufficient resources to prosecute this Adversary Proceeding on their own as they are in fact doing so. Apart from receiving authority to borrow over $100 million in postpetition financing, the Debtors are also preparing to sell substantially all of their assets. This sale is sure to generate proceeds that are sufficient to fund

---

[4] In fact, the Government's participation, as set forth by the Stipulation, would do anything but streamline this Adversary Proceeding. Instead, allowing the Government to participate pursuant to the terms of the Stipulation would leave unanswered the question of who controls the claims and where they will ultimately be tried. For example, if the Government does not like how this Court is managing the litigation, the Stipulation permits them to move at anytime to withdraw the reference under 28 U.S.C. § 157(d) and demand a jury trial on its claims. Furthermore, if this litigation is finally resolved in this Court in a manner with which the Government is dissatisfied, the Government could nonetheless seek to continue to pursue its alleged claims under the FDCPA in this or another forum.

this litigation.  Moreover, the fact that the Debtors have agreed in the Stipulation to permit multiple estate professionals to participate in this Adversary Proceeding is highly probative of the fact that they have sufficient resources to fund this litigation.[5]  Additionally, the Debtors are represented by competent litigation counsel who is unlikely to require the resources or the assistance of the Government in effectively prosecuting their claims.  Accordingly, unlike in *Housecraft*, the Government's participation in this Adversary Proceeding will not provide resources that the estates otherwise lack.

Moreover, unlike in *Housecraft* where the court concluded that the estate would not have recovered "anything" from defendants in the creditor's absence, 310 F.3d at 71, the Government's participation in this Adversary Proceeding is not necessary to a recovery.  It is clear that the Debtors can bring—and have already brought—causes of action without the Government's assistance.  Moreover, contrary to the Government's assertion that the Debtors "cannot assert FDCPA claims on behalf of the United States as a matter of law," *see* Intervention Motion ¶ 37, courts have consistently allowed debtors to bring claims pursuant section 3304 of the FDCPA.  *See* Section A, *supra*.  As such, even if the Government's FDCPA claims were in fact substantively different from the Debtors' fraudulent conveyance claims (which they are not), the Government's participation in this lawsuit is nonetheless unnecessary because the Debtors themselves are more than capable of prosecuting the FDCPA claims.  In short, because the Government cannot demonstrate that its participation in this Adversary Proceeding meets the *Commodore* or *Housecraft* standards, such participation should be denied.

---

[5]     The Defendants find the additional costs that will be imposed upon the Debtors' estates as a result of the broad participation rights proposed in the Stipulation particularly troubling given that the Debtors have stated in support of their proposed six-month, rocket-docket case management order that the Debtors have limited assets to prosecute their claims.

2.  Even if the Government Could Meet the *STN*, *Commodore*, and *Housecraft* Standards, It Still Would Be Unable to Bring New Claims Against the Defendants.

Even if the Government could otherwise meet the *STN*, *Commodore*, and *Housecraft* standards, it still would be unable to bring its FDCPA claims against the Defendants because none of these authorities allows a creditor to bring new claims alongside the debtor's existing claims. Indeed, although the *Housecraft* court did allow a creditor to co-prosecute claims with the debtor, there was only one complaint filed by both parties, not two separate and distinct complaints. *See Housecraft*, 310 F.3d at 67 ("Trustee and BNP then amended *their Complaint* . . . .") (emphasis added). In fact, the court in *Housecraft* emphasized that the creditor would not be replacing plaintiff, who retained all rights of the party-plaintiff, "including the right to control the course of the litigation." *Id.* at 71. Here, the Debtors and the Government have agreed to allow the Government to bring new and separate claims and *Housecraft* is therefore inapposite. *See* Intervention Motion ¶ 21.

Furthermore, although the Debtors have agreed not to challenge the Government's claims at the outset, they have reserved the right to do so later in the proceedings. *Id.* Therefore, in addition to allowing the Government to "assist" the Debtors in their litigation, the agreement also allows the Government to concurrently pursue its own causes of action against the Defendants. Neither *Housecraft*, nor *STN* or *Commodore*, allows for such participation in an adversary proceeding.

C.  **The Government's Proposed Causes of Action Against the Defendants are Barred by the Automatic Stay**.

The Government is barred by the automatic stay from bringing its claims for fraudulent transfers. As discussed above, the fraudulent transfer claims that the Government seeks to bring are property of the estate. *See supra* Section A. Claims brought by a party other

than the Debtors for fraudulent conveyance are considered actions "to obtain possession of property of the estate" and thus violate the automatic stay. 11 U.S.C. § 362(a)(3); *see also MortgageAmerica*, 714 F.2d at 1276; *In re Zwirn*, 362 B.R. 536, 538 (S.D. Fla. 2007); *In re Fletcher,* 176 B.R. 445, 452 (Bankr. W.D. Mich. 1995).

Even the Debtors and the Government appear to agree with this fundamental precept as the very first count in the Complaint in Intervention seeks a declaratory judgment that the police and regulatory powers exception found in section 362(b)(4) applies to the Government's FDCPA claims. Surely if the Debtors agreed that the Government's claims are excepted from the automatic stay, the Government would not now be seeking such declaratory relief.[6]

Although the Debtors want to have it both ways—benefit from the extra burden caused to the Defendants by having a co-plaintiff in the Adversary Proceeding while at the same time disagreeing, *sub silento,* that the Government in fact is entitled to participate in this Adversary Proceeding, this Court should not countenance such contradictory and inconsistent

---

[6] Moreover, because declaratory relief requires that there be an actual case or controversy, *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937), the Debtors must ultimately disagree with the Government's position that its claims are excepted from the automatic stay. Indeed, the police and regulatory power exception does not apply to the present circumstances because the Government's purported FDCPA claims are intended solely to advance a purported monetary interest against the Debtors' estates. *See In re Go West Entm't*, 387 B.R. 435, 439 (Bankr. S.D.N.Y. 2008) ("pecuniary purpose" test examines whether Government is acting solely to advance a monetary interest in debtor's estate). In fact, the FDCPA's express purpose is to aid the Government in its efforts to collect on monetary obligations owed to it. *See* Statement of Antony C. Moscato, *Estimates for Fiscal Year 1994: Hearings Before a Subcomm. of the Comm. on Appropriations. of the H.R.*, 103rd Cong. 3 (1994) ("The Federal Debt Collection Procedures Act of 1990 opens up many avenues for collecting money."). In addition, the Government's proposed claims do not promote the public's health, safety, or welfare because they are not intended to stop an ongoing fraud or to preventing ongoing environmental damage. *See Go West*, 387 B.R. at 439 ("public policy" test seeks to distinguish between actions that advance public health, safety and welfare and those that advance governmental fiscal interests or adjudicate private rights). Instead, the proposed claims seek to collect money owed for environmental clean-ups that have already occurred or are already being performed. *See In re W. R. Grace*, 384 B.R. 678 (Bankr. D. Del. 2008) (finding that cause of action proposed by New Jersey environmental agency did not come within the exception to the automatic stay when the contaminated site had already been cleaned up).

NY1:\1620211\07\YQ5V07!.DOC\15337.0004          13

positions. Without establishing cause for a modification of the automatic stay, the Government is precluded from bringing its fraudulent conveyance claims against the Debtors and Defendants.

**D.     The Government's Role as Intervenor Should Be Limited to that of *Amicus Curiae* and Should Not Include the Right to Bring New Causes of Action, Participate as a Party in Discovery, Participate as of Right in Settlement Negotiations.**

Although the Government has the right to intervene in adversary proceedings as a party-in-interest, this role does not include the ability to bring new causes of action, participate as a party-plaintiff in discovery and settlement negotiations, or seek a portion of any potential recovery. Following its determination in *Caldor* that section 1109(b) of the Bankruptcy Code grants creditors the right to intervene in adversary proceedings,[7] the Second Circuit, and the courts below it, have made it clear that an intervening creditor's role does not extend beyond observing the proceedings and being heard on certain matters of interest. *See Smart World*, 423 F.3d at 182 (section 1109(b) "entitled the creditors to 'standing to raise issues and to appear and be heard,' but that the right did 'not equate to ownership of the causes of action in question.'") (quoting *Adelphia*, 285 B.R. at 855); *In re Sunbeam Corp.*, 287 B.R. 861, 863 (S.D.N.Y. 2003) (intervening creditor "has no standing to appeal the dismissal" of an adversary proceeding); *Adelphia*, 285 B.R. at 856 (ruling that creditor's role is more akin to "amicus" than "[owner] of causes of action").

Soon after *Caldor*, the court in *Adelphia* held that a creditor's participation in an adversary proceeding is limited to: (i) receiving notice of proceedings; (ii) filing papers; (iii) arguing and responding to arguments in court; and (iv) raising matters of concern at case status conferences. *See Adelphia*, 285 B.R. at 856 (noting that any further role required a court order

---

[7]    Under Rule 24(a)(1) of the Federal Rules of Civil Procedure, a court must permit anyone to intervene when they are "given the unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). In *Caldor*, the Second Circuit held that section 1109(b) of the Bankruptcy Code, which allows all parties in interest in a bankruptcy—including creditors—to participate in the "case," gives creditors an unconditional right to intervene pursuant to Rule 24(a)(1). *See In re The Caldor Corp.*, 303 F.3d 161, 176 (2d Cir. 2002).

pursuant to *STN*, *Commodore*, and *Housecraft*). The Second Circuit has since explicitly agreed with and adopted the reasoning of *Adelphia*. *See Smart World*, 423 F.3d at 182 ("We agree with the reasoning of *Adelphia* . . . .).

Here, the Government asserts that, pursuant to an agreement with the Debtors, it should have the ability to: (i) bring its own causes of action against the Defendants; (ii) participate in discovery; (iii) contest the Debtors' ability to settle its claims; and (iv) litigate the allocation of any recovery. *See* Intervention ¶ 21. This level of participation goes well beyond the limits set by *Adelphia* and the Second Circuit.

First, and as discussed above, the Government—as a creditor—cannot commandeer the role of the Debtors by bringing its own causes of action against the Defendants. *See Adelphia*, 285 B.R. at 855 ("it does not necessarily follow that just because the intervenor [is now a party] in the adversary proceeding, [it has] the same rights as those who actually own the causes of action."); *see also In re Marin Motor Oil, Inc.*, 689 F.2d 445, 456 (3d Cir. 1982) (distinguishing between "an absolute right to intervene in adversary proceedings already initiated by a . . . debtor in possession" from "[the right to bring] new causes of action in favor of creditors and committees"). Given that the Government's proposed claims against the Defendants are largely identical to claims already brought by the Debtors, the Government would be effectively seizing the same rights enjoyed by those who actually initiated the action. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 8-9 (2000) (noting that section 1109 "does not bestow any right to usurp the trustee's role as representative of the estate with respect to the initiation of certain types of litigation that belong exclusively to the estate") (quoting 7 COLLIER ON BANKRUPTCY ¶ 1109.05 (2005)).

Second, the Government should not be allowed to burden this Adversary Proceeding by making its own discovery requests, noticing depositions, and asking questions at depositions. In *Adelphia*, the court refused to allow an intervening creditor to propound discovery requests, notice depositions, and ask questions at depositions. *See Adelphia*, 285 B.R. at 856. In fact, it explicitly doubted whether an intervening creditor could *ever* acquire those rights. *Id.* at 857 (stating that although a creditor *may* have those rights in some circumstances, it "is not free from doubt"). Here, allowing the Government to participate in discovery as set forth in the proposed Stipulation would be burdensome and unhelpful. Because the Debtors have shown that they are fully capable of litigating this matter on their own, such Government involvement in the discovery process would be superfluous, costly, and inefficient.[8]

Third, neither the Government nor any of the Stipulating Parties should have a mandatory, unfettered right to participate in settlement negotiations. The Government asserts that the Debtors have agreed to allow the Government to "fully contest the Debtors' ability to settle fraudulent conveyances of federal debts." Intervention Motion ¶ 21. Simply stated, the Government should not be allowed to interfere with the Debtors' right to settle their own claims. *See Smart World*, 423 F.3d at 181, 183 (intervening creditor cannot settle the proceedings because it would interfere with the "exclusive role for the debtor-in-possession as legal representative and fiduciary of the estate").

Fourth, the Government should not be permitted to complicate, delay, and increase the costs of litigating issues in this Adversary Proceeding that have no relevance to the Defendants. The Debtors and the Government have purportedly agreed to reserve "[a]ll

---

[8] The same is true for the level of participation proposed in the Stipulation for the Creditors' Committee, the Equity Committee, and the DIP Agent. As noted above, the Defendants will be filing its objection to the proposed Stipulation by the objection deadline.

arguments concerning the allocation of proceeds of the adversary proceeding as between the [Government] and other creditor constituencies." *Id.* ¶ 21. Although the Government may eventually be able to stake a claim to a portion of any recovery realized by the Debtors (if any), this Adversary Proceeding is not the appropriate forum for litigating whether the Government has a right to any such potential recovery.

## **CONCLUSION**

For all of the foregoing reasons, the Defendants request that this Court deny the Government's Intervention Motion to the extent it seeks authority to file its Complaint in Intervention.

Houston, Texas
Dated: June 2, 2009

           */s/ Melanie Gray*
Melanie Gray (*pro hac vice*)
Lydia Protopapas (8089)
Jason W. Billeck (*pro hac vice*)
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

*Counsel to Anadarko Petroleum Corporation and Kerr-McGee Corporation*