LEV L. DASSIN  **HEARING DATE:**
Acting United States Attorney for the  **June 9, 2009, at 11:00 AM (ET)**
Southern District of New York
By:  MATTHEW L. SCHWARTZ
        TOMOKO ONOZAWA
Assistant United States Attorneys
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-1945
Fax: (212) 637-2750
E-mail: matthew.schwartz@usdoj.gov
        tomoko.onozawa@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE:                                              Chapter 11

     TRONOX INCORPORATED, *et al.*,          Case No. 09-10156 (ALG)

            Debtors.                 Jointly Administered

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
TRONOX INCORPORATED, TRONOX
WORLDWIDE LLC f/k/a Kerr-McGee
Chemical Worldwide LLC, and TRONOX
LLC f/k/a Kerr-McGee Chemical LLC,

            Plaintiffs,

      - against -                        Adv. Proc. No.  09-01198 (ALG)

ANADARKO PETROLEUM
CORPORATION and KERR-MCGEE
CORPORATION,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONSE TO ANADARKO PETROLEUM CORPORATION AND**
**KERR-MCKEE CORPORATION'S OBJECTION TO**
**THE UNITED STATES OF AMERICA'S MOTION TO INTERVENE**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RESPONSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    ANADARKO AND KERR-MCGEE HAVE NO STANDING TO
           ASSERT VIOLATIONS OF THE AUTOMATIC STAY, OR TO
           RAISE *STN*-RELATED ARGUMENTS IN RESPONSE TO THE
           GOVERNMENT'S MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           1.    Anadarko and Kerr-McGee Lack Standing To Complain
                  About the Automatic Stay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           2.    Anadarko and Kerr-McGee Cannot Challenge the
                  Government's Standing Under the *STN* Line of Cases In
                  Opposition to the Government's Motion to Intervene. . . . . . . . 9

    B.    THE GOVERNMENT IS NOT ASSERTING A CLAIM ON
           BEHALF OF THE ESTATE PURSUANT TO *STN*; IT IS
           ASSERTING A UNIQUE STATUTORY CLAIM THAT
           BELONGS TO THE UNITED STATES. . . . . . . . . . . . . . . . . . . . . . . 12

    C.    THE GOVERNMENT'S PARTICIPATION IN THE
           LITIGATION — DEFINED BY THE STIPULATION, NOT
           THE MOTION TO INTERVENE — IS CONSISTENT WITH
           THE LAW IN THIS COURT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## CASES

*Allen v. Wright*,
        468 U.S. 737 (1984)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bennett v. Spear*,
        520 U.S. 154 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Authority*,
        — F.3d —, 2009 WL 1492026 (2d Cir. May 29, 2009). . . . . . . . . . . . . . . . . . . 6

*Burcena v. Bank One*,
        No. CV-06-00422, 2007 WL 2915621 (D. Haw. Oct. 1, 2007). . . . . . . . . . . . . 7

*Commodore International, Ltd.*,
        262 F.3d 96 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Department of the Army v. Blue Fox, Inc.*,
        525 U.S. 255 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Elk Grove Unified School District v. Newdow*,
        542 U.S. 1 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Hudson Valley Cablevision Corp. v. Route 202 Developers, Inc.*,
        169 B.R. 531 (S.D.N.Y. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re A.P.I., Inc.*,
        331 B.R. 828 (Bankr. D. Minn. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Adelphia Communications Corp.*,
        285 B.R. 848 (Bankr. S.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*In re Bonham*,
        224 B.R. 435 (Bankr. D. Alaska 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Brooks*,
        79 B.R. 479 (9th Cir. BAP 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Caldor Corp.*,
        303 F.3d 161 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Chrysler LLC*,
   — B.R. —, 2009 WL 1507540 (Bankr. S.D.N.Y. May 31, 2009). . . . . . . . . . . 11

*In re Colonial Realty Co.*,
   980 F.2d 125 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Food Workshop, Inc.*,
   70 B.R. 962 (Bankr. S.D.N.Y. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Fuel Oil Supply and Terminaling, Inc.*,
   30 B.R. 360 (Bankr. N.D. Tex. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Globe Investment & Loan Co., Inc.*,
   867 F.2d 556 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Gurley*,
   222 B.R. 124,(Bankr. W.D. Tenn. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Gurley*,
   357 B.R. 868 (Bankr. M.D. Fla. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Hampton*,
   Nos. 95-50743, 95-5043, 96-5002, 1997 WL 714905
   (Bankr. W.D. La. Aug. 13, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Housecraft Industries USA, Inc.*,
   310 F.3d 64 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*In re Porter*,
   Nos. 06-10119, 07-1012, 2009 WL 902662
   (Bankr. D.S.D. Mar. 13, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Quigley Co., Inc.*,
   391 B.R. 695 (Bankr. S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Silverman*,
   42 B.R. 509 (Bankr. S.D.N.Y. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Smart World Technologies LLC*,
   423 F.3d 166 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

iii

*In re Stivers,*
      31 B.R. 735 (Bankr. N.D. Cal.1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*In re STN Enterprises,*
      779 F.2d 901 (2d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*In re Tascosa Petroleum Corp.,*
      196 B.R. 856 (D. Kan. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*In re Wonder Corp. of America,*
      70 B.R. 1018 (D. Conn. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Kane v. Johns-Manville Corp.,*
      843 F.2d 636 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 6

*Kipperman v Onex Corp.,*
      No. 05-CV-1242-JOF, 2006 U.S. Dist. LEXIS 96944,
      (N.D. Ga. Sept. 15, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Lujan v. Defenders of Wildlife,*
      504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Matter of James Wilson Associates,*
      965 F.2d 160 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Southern Boulevard, Inc. v. Martin Paint Stores,*
      207 B.R. 57 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Tax Analysts & Advocates v. Blumenthal,*
      566 F.2d 130 (D.C. Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Warth v. Seldin,*
      422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

## STATUTES AND RULES

11 U.S.C. § 363(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

28 U.S.C. § 3304. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 14

Fed. R. Bankr. P. 7012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Fed. R. Bankr. P. 9014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Fed. R. Civ. P. 12.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 12

Fed. R. Civ. P. 24.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 12

Fed. R. Civ. P. 26(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

The United States of America (the "Government"), by its attorney Lev L.

Dassin, Acting United States Attorney for the Southern District of New York,

respectfully submits this response in further support of its motion for an order

pursuant to Rule 24(a) and/or Rule 24(b) of the Federal Rules of Civil Procedure, as

incorporated by Federal Rule of Bankruptcy Procedure 7024, authorizing the

United States to intervene in the above-captioned adversary proceeding, and to file

its complaint-in-intervention, and in response to Anadarko Petroleum Corporation

and Kerr-McGee Corporation's Objection to the United States of America's Motion

to Intervene ("Anadarko's Objection").[1]

## PRELIMINARY STATEMENT

1.     Anadarko and Kerr-McGee concede on the first page of their opposition

to the Government's motion to intervene that they "do not oppose the Government's

right to intervene."  *See* Anadarko's Objection at 1.

2.     Indeed, although ostensibly responding to the Government's motion,

Anadarko and Kerr-McGee do not object to the Government's intervention at all —

only to the related stipulation and proposed order (the "Stipulation") executed by

the Government, the Debtors, the Creditor's Committee, the Equity Committee, the

DIP Agent, and the Pre-Petition Agent (the "Parties In Interest").  But even then,

Anadarko's Objection is based on a gross misreading of that Stipulation.

3.     As the Debtors articulated at the last hearing, the Stipulation

accomplishes two primary goals.  *First*, it reserves all of the difficult questions

---

[1]     Unless otherwise noted, capitalized terms and abbreviations have the
same meaning as in the Government's original motion papers.

surrounding the FDCPA — such as whether a claim under that statute can be asserted by the estates or only by the Government, to whom the proceeds of an FDCPA action belong, whether an FDCPA action is barred by the automatic stay, etcetera — until after the Parties In Interest have successfully prosecuted their claims against Anadarko and Kerr-McGee.  *See* May 28, 2009 Transcript at 8 ("So what we've decided is there's no reason to litigate that issue now about whether they do or whether they don't [have a special claim under the FDCPA].  We want to push that until either the appropriate time to litigate it, or hopefully, until we can get to a settlement with all the parties so we never have to litigate it.").  *Second*, it defines the rights of the Parties In Interest to participate in the prosecution of the adversary proceeding in such a way as to streamline the proceedings — allowing the Debtors to take the lead, and eliminating duplication of effort and the attendant expense to the estates.  *See id.* ("And second, we know that all of the parties here are going to want to intervene, and we believe they have the right to intervene in the adversary proceeding.  We wanted to, and what the stipulation does, is it just sets out those rights and sets certain limitations so we don't have any duplication of efforts, so we don't have any undue costs.").

4.    Anadarko's Objections speak *only* to these two points.  They seek to litigate the very issues that the other Parties In Interest have tried to bracket until the end of the litigation, and they seek to further limit the participation of the Government and the other Parties In Interest in the prosecution of the case.  The one thing that Anadarko's Objections do *not* do is object to the Government's

2

intervention, which is the only relief sought by this motion.  For that reason,

Anadarko's Objections should be disregarded and denied, and the Government's

motion should be granted.

5.      Nonetheless, because Anadarko's Objections insinuate that they will

file their response to the Stipulation shortly before the June 9th hearing at which

the Court will consider both the Government's motion and the Stipulation, not

leaving time for the other Parties In Interest to respond, *see* Anadarko's Objections

at 2 n.1 ("Defendants . . . will be filing their objection on or prior to the objection

deadline of June 9, 2009, at 11:00 a.m."), we address the substance of their

arguments.

## RESPONSE

6.      Anadarko's Objections raise essentially three substantive arguments.

First, they argue that the Government's FDCPA claims somehow violate the

automatic stay.  Second, they contend that the Government's FDCPA claim is

property of the estate and that, relatedly, the Government lacks standing to assert

the FDCPA claim under the *STN* line of cases.  Finally, they argue that the

Government's role in the prosecution of the cases against Anadarko and Kerr-

McGee should be more limited than what the Parties In Interest have agreed to.

7.      These arguments are all utterly without merit, coming from Anadarko

and Kerr-McGee.  To begin with, they have no standing to assert violations of the

automatic stay or to challenge the Government's standing to assert its FDCPA

claims in response to a motion to intervene.  Those arguments are reserved to the

3

Debtors, who have explicitly chosen to reserve them.  If, as Anadarko and Kerr-McGee assert, the FDCPA claim is really the Debtors', then the Debtors "own" that claim and can do with it as they wish.  If, on the other hand, the claim is the Government's, then the arguments in Anadarko's Objections are wrong on their merits.

8.      For substantially the same reason, Anadarko's arguments about the Government's participation in the litigation is equally misplaced.  The Parties In Interest's participation in motion practice and discovery is permissible under *Caldor*, and the Stipulation describes a level of participation consistent with the caselaw in this Circuit.

## A.      ANADARKO AND KERR-MCGEE HAVE NO STANDING TO ASSERT VIOLATIONS OF THE AUTOMATIC STAY, OR TO RAISE *STN*-RELATED ARGUMENTS IN RESPONSE TO THE GOVERNMENT'S MOTION

9.      As a threshold issue, this Court should not entertain the arguments in Anadarko's Objections concerning the automatic stay or the Government's standing under *STN*, because those are not Anadarko or Kerr-McGee's arguments to assert.

10.     In order to assert a claim or defense, a party must have standing to do so.  Standing has two distinct aspects: standing under the "case or controversy" requirement in Article III of the Constitution, and so-called prudential standing. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997).  *See generally Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 11 (2004) ("[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or

of particular issues.").

11.    Constitutional standing has three elements: injury in fact, causality, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Closely related to these Article III requirements, the Supreme Court has also developed prudential limitations on standing. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975). As relevant here, prudential standing encompasses the requirement that a litigant's claim "fall within the zone of interests protected by the law invoked." *Elk Grove*, 542 U.S. at 12 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *see also Bennett*, 520 U.S. at 162. Prudential limitations on standing, although not arising under Article III of the Constitution, are nonetheless a mandatory component in the standing analysis. *Tax Analysts & Advocates v. Blumenthal*, 566 F.2d 130, 137 n.37 (D.C. Cir. 1977). Prudential standing limitations are "essentially matters of judicial self-governance — the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth*, 422 U.S. at 500.

12.    In the bankruptcy context, courts must assess whether a party in interest has standing not just to raise a general objection, but whether they have standing to advance specific arguments in opposition to a motion or order. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642-43 (2d Cir. 1988) (holding that, under

5

the prudential standing doctrine, appellant had standing to raise only certain of his

challenges to an order confirming a plan); *see also In re Quigley Co., Inc.*, 391

B.R. 695, 703-05 (Bankr. S.D.N.Y. 2008) (citing cases for proposition that "court

should decide questions of standing . . . on an issue-by-issue basis"); *In re Tascosa*

*Petroleum Corp.*, 196 B.R. 856, 863 (D. Kan. 1996); *In re Wonder Corp. of*

*America*, 70 B.R. 1018, 1023 (D. Conn. 1987).[2]

13.     In a nutshell, the prudential standing doctrine as it applies here

requires that a party assert its own right, as opposed to someone else's. *See, e.g.,*

*Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Authority*, — F.3d

—, 2009 WL 1492026, at *6 (2d Cir. May 29, 2009) ("The Ferry Company also

satisfies the requirements of prudential standing because [] it sustained its own

injury and thus asserts its own rights, not those of the passengers.").

14.     Applying these standards, it is obvious that Anadarko and Kerr-McGee

---

[2]     Section 1109(b) of the Bankruptcy Code of course provides that any
"party in interest . . . may raise and may appear and be heard on any issue in a case
under this chapter."  Assuming that Anadarko and Kerr-McGee are parties in
interest for this purpose, that does not affect the standing analysis. *See, e.g., Matter*
*of James Wilson Assoc.*, 965 F.2d 160, 169 (7th Cir. 1992) ("[W]e do not think that
[section 1109(b)] was intended to waive other limitations on standing, such as that
the claimant be within the class of intended beneficiaries of the statute that he is
relying on for his claim."); *Kane*, 843 F.2d at 644; *Southern Blvd., Inc. v. Martin*
*Paint Stores*, 207 B.R. 57 (S.D.N.Y. 1997) (notwithstanding section 1109(b), a party
must still satisfy general requirements of the standing doctrine); *In re Quigley Co.,*
*Inc.*, 391 B.R. 695, 702-03 (Bankr. S.D.N.Y. 2008) (same); *In re A.P.I., Inc.*, 331 B.R.
828, 859 (Bankr. D. Minn. 2005) (section 1109(b) does not "trump[] the doctrines of
constitutional and prudential standing," such that a party in interest can object to
"any aspect of [a] proposed reorganization, on any substantive ground whatsoever,
whether the provision or aspect would affect them in the consummation or not").

lack standing to object to the Government's intervention under *STN* or because of

the automatic stay.  The protections afforded by the automatic stay and the *STN*

line of cases benefit a bankrupt estate, and by extension its stakeholders.  They

cannot be asserted by an unrelated third party.

### 1.    Anadarko and Kerr-McGee Lack Standing To Complain About the Automatic Stay

15.    "One of the very purposes of bankruptcy is to gain benefit from the

automatic stay which benefit is implicitly designed to give the debtor some

breathing room from his eager creditors."  *In re Food Workshop, Inc.*, 70 B.R. 962,

967 n.3 (Bankr. S.D.N.Y. 1987); *see generally* H.R. Rep. No. 595, 95th Cong., 1st

Sess. 340-43 (1977) ("The automatic stay is one of the fundamental debtor

protections provided by the bankruptcy laws.  It gives the debtor a breathing spell

from his creditors").  This "automatic stay" amounts "to an *ex parte* temporary

restraining order against the world without the need to show irreparable injury or

other requisites necessary for preliminary injunctive relief."  *Hudson Valley*

*Cablevision Corp. v. Route 202 Developers, Inc.*, 169 B.R. 531, 532 (S.D.N.Y. 1994).

16.    Consistent with the idea that the automatic stay is a protection

afforded to a debtor, courts consistently reject attempts by third parties to invoke

the stay for lack of standing.  *See In re Globe Investment & Loan Co., Inc.*, 867 F.2d

556, 559-60 (9th Cir. 1989) (holding that co-owners of property lacked standing to

assert a violation of the automatic stay under 11 U.S.C. § 362); *Burcena v. Bank*

*One*, No. CV-06-00422, 2007 WL 2915621, at *5 (D. Haw. Oct. 1, 2007) (holding that

non-debtor co-owners of real property lacked standing to challenge the annulment

of the automatic stay under 11 U.S.C. § 362); *In re Brooks*, 79 B.R. 479, 481 (9th

Cir. BAP 1987) ("if the debtor or the trustee chooses not to invoke the protections of

§ 362, no other party may attack any acts in violation of the automatic stay"); *In re*

*Silverman*, 42 B.R. 509, 516 (Bankr. S.D.N.Y. 1984) ("The automatic stay . . . [was]

not intended to be used as [a] weapon[] by creditors to the detriment of the estate.

The bankruptcy stay protected the debtor and the estate from harassment by

creditors."); *In re Fuel Oil Supply and Terminaling, Inc.*, 30 B.R. 360, 362 (Bankr.

N.D. Tex. 1983) ("The automatic stay is for the benefit of the debtor and if it chooses

to ignore stay violations other parties cannot use such violations to their

advantage." (cited in *Silverman*)); *In re Stivers*, 31 B.R. 735 (Bankr. N.D. Cal.1983)

("I conclude that the automatic stay operates in favor of debtors and estates

(represented by trustees and debtors-in-possession) only and that it gives junior

lienholders and other parties interested in the property no substantive or

procedural rights." (also cited in *Silverman*)).

17.    Here, Anadarko and Kerr-McGee attempt to invoke the stay not for the

benefit of the estates, but to protect themselves from a claim that the estates have

specifically permitted.  They have no standing to do so.[3]  Only the Debtors can

_____

[3]    Moreover, Anadarko's Objections totally misstate the substantive law
in this Circuit.  Relying on out-of-circuit decisions, they claim that a fraudulent
transfer action should be considered an action "'to obtain possession of property of
the estate' and thus violate[s] the automatic stay."  Anadarko's Objections at 12-13
(quoting 11 U.S.C. § 363(a)(3)).  The Second Circuit has expressly rejected this

(continued...)

invoke the stay, and they have chosen not to do so.

18.    Pursuant to the Stipulation, the Debtors are reserving their right to

challenge the Government's FDCPA claim on all grounds, including that it violates

the automatic stay.  But the Debtors have also agreed not to "assert or raise any

such argument, challenge, answer, defense, or motion unless and until the United

States begins to prosecute its Complaint-in-Intervention other than by participating

in discovery in a manner consistent with the terms of this Stipulation and Order."

Stipulation ¶ 5 (also specifying that Government shall not argue that any such

defense is untimely because it was not asserted upon filing of the complaint-in-

intervention).  Thus, the Debtors and their stakeholders — the other Parties In

Interest who signed the Stipulation — have made the determination that, on

balance, asserting a violation of the automatic stay at this juncture is not in the

best interest of the estates.  It is certainly not Anadarko or Kerr-McGee's place to

second-guess that judgment.

### 2.    Anadarko and Kerr-McGee Cannot Challenge the Government's Standing Under the *STN* Line of Cases In Opposition to the Government's Motion to Intervene

19.    Likewise, Anadarko and Kerr-McGee have no standing to challenge

the Government's intervention under the *STN* lines of cases.  *See In re STN*

_____

[3](...continued)
argument, however, finding that a fraudulent transfer action "is not an 'act to
obtain possession of property of the estate' within the meaning of § 362(a)(3)"
because fraudulently transferred property does not become estate property until the
trustee successfully recovers it, pursuant to section 541(a)(3).  *In re Colonial Realty
Co.*, 980 F.2d 125, 132 (2d Cir. 1992).

*Enterprises*, 779 F.2d 901 (2d Cir. 1985); *In re Commodore Int'l, Ltd.*, 262 F.3d 96

(2d Cir. 2001); *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64 (2d Cir. 2002).

20.    A creditor's standing to assert a claim under *STN*, *Commodore*, or

*Housecraft* is derivative of the estate.  That is, when a creditor sues under *STN*, it

sues on behalf of — indeed, in the name of — the estate under section 1109(b) and

1103(c)(5) of the Bankruptcy Code.  *See STN*, 449 F.2d at 904.  And, of course, a

creditor may only bring such a claim when the debtor either unjustifiably fails to do

so, *see id.*, or explicitly consents, *see Commodore*, 262 F.3d at 100; *Housecraft*, 310

F.3d at 70-72.

21.    But as Anadarko's Objections point out, to obtain standing under the

*STN* line of cases, the bankruptcy court must make a finding that the putative

claim is in the best interest of the estates.  *See* Anadarko's Objections at 10.  It is

therefore the estate and its stakeholders, and not Anadarko or Kerr-McGee, that

are within the "zone of interest" protected by the *STN/Commodore/Housecraft*

doctrines.  As a result, Anadarko and Kerr-McGee lack prudential standing to

challenge the Government's intervention under the *STN* line of cases.

22.    More fundamentally, however, Anadarko and Kerr-McGee have no

*constitutional* standing to challenge the Government's participation under *STN*

because they can demonstrate no injury-in-fact flowing from the Government's

claims.  As Anadarko's Objections ably point out, the Government's FDCPA claims

arise under the same facts and same legal theory as the Debtors' claims — the only

difference is that the Debtors rely on the Bankruptcy Code and Oklahoma state law, whereas the Government relies on the analogous provisions of the FDCPA. *See* Anadarko's Objections at 9 n.3 (referring to the Government's complaint-in-intervention as "in many ways a 'cut and paste' of Debtors' Complaint").

23.    As a result, Anadarko and Kerr-McGee are exposed to no greater liability as a result of the Government's intervention.  From the perspective of the defendants and the Debtors, whether the Government can assert its FDCPA claims is functionally an inter-creditor matter.  If the Government is correct that it has a unique FDCPA claim that runs to its exclusive benefit, then the Government is entitled to the portion of fraudulently avoided debt and fraudulently conveyed assets that correspond to federal debt.  If the Government is wrong, then all of the proceeds go to the estate, and the Government will take as any other creditor. Either way, it makes no difference to Anadarko and Kerr-McGee, who therefore lack standing to raise the issue. *See, e.g., In re Chrysler LLC*, — B.R. —, 2009 WL 1507540, at *2-3 (Bankr. S.D.N.Y. May 31, 2009) (creditors lacked constitutional standing to object to section 363 transaction on grounds that Treasury Department lacked authority to spend TARP funds on automotive company, because there was no injury in fact flowing from the Government's use of TARP funds specifically), *aff'd*, No. 09-2311-bk (2d Cir. June 5, 2009) (orally affirming for substantially the reasons stated by the bankruptcy court, with written opinion to follow).[4]

---

[4]    We are aware that courts have entertained challenges to a plaintiff's
(continued...)

## B.    THE GOVERNMENT IS NOT ASSERTING A CLAIM ON BEHALF OF THE ESTATE PURSUANT TO *STN*; IT IS ASSERTING A UNIQUE STATUTORY CLAIM THAT BELONGS TO THE UNITED STATES

24.    In any event, the *STN* issue is a red herring because the Government is not asserting a derivative claim on behalf of the estate.  The FDCPA claims alleged in the Government's complaint-in-intervention are claims that belong uniquely to the Government, and do not comprise property of the bankrupt estate.

25.    Indeed, the Government has argued from day one that its FDCPA claim is *not* derivative of the estate, but is a claim that "creates a property interest unique to the United States."  DIP Objections ¶ 32.  The litany of cases cited in

---

⁴(...continued)
*STN* standing in the context of motion to dismiss under Federal Rule of Civil Procedure 12 — indeed, that was the posture in which *Housecraft* and *Commodore* were decided.  In each of those cases, however, there was a distinct injury traceable to the creditors' participation in the litigation.  *See Housecraft*, 310 F.3d at 71 ("the estate could not have recovered anything from Federal Plastics in [the plaintiff-creditor's] absence"); *Commodore*, 262 F.3d at 100 (creditor committee's prosecution of claim was "necessary" to the fair and beneficial resolution of the proceedings).  Although the Government believes that a non-debtor defendant has no ability to raise an *STN*-type challenge at any point for *prudential* standing reasons (and neither *Housecraft* nor *Commodore* considered the issue), Anadarko and Kerr-McGee surely lack *constitutional* standing on these facts because they have no injury traceable to the FDCPA claim.

In any event, Anadarko and Kerr-McGee will have the ability to move to dismiss the Government's complaint, which is the proper time to make this argument if they can make it at all.  What is clear is that the Government has an "unconditional right to intervene" pursuant to Rule 24(a) and section 1109(b), *see In re Caldor Corp.*, 303 F.3d 161 (2d Cir. 2002), and that Rule 24(c) *requires* an intervenor to serve "a pleading that sets out the claims or defenses for which intervention is sought."  Thus, at worst, the Government's motion to intervene should be granted and these argument can be revisited on a motion to dismiss.  *See generally* Fed. R. Bankr. P. 7012 (governing when and how defenses to suit may be presented).

Anadarko's Objections holding that a creditor's common law fraudulent conveyance claim is estate property, *see* Anadarko's Objections at 5-7, are therefore of no moment, because none of them involve FDCPA claims.

26.    Indeed, no case to the Government's knowledge holds that an FDCPA claim belongs to the estates, and as discussed in the DIP Objections, the doctrine of sovereign immunity (among other things) forecloses that holding.  *See* DIP Objections ¶ 32 (citing *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 263-64 (1999)).

27.    Anadarko's Objections cite a handful of cases in which a debtor or trustee prosecuted an FDCPA claim, concluding that "the overwhelming majority of courts have held that a debtor may itself bring claims pursuant to the FDCPA." Anadarko's Objections at 7.  In reality, none of these decisions confronted whether an FDCPA claim is property of the estate — and certainly none of them considered the sovereign immunity question — because no party in interest made that argument.  Indeed, the only court to even appreciate the issue — whether a trustee can strongarm the United States' claim under the FDCPA — expressed skepticism that the estate could usurp the Government's claim:

> While the court is wary of Plaintiff's usage of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3304, as an avenue to avoid various transfers, as the parties' briefings have not addressed this point in any detail, the court will not raise the issue *sua sponte*.

*Kipperman v Onex Corp.*, No. 05-CV-1242-JOF, 2006 U.S. Dist. LEXIS 96944, at *77-78 (N.D. Ga. Sept. 15, 2006).  The other decisions cited in Anadarko's

Objections likewise assume but do not decide that a trustee may assert an FDCPA

claim — without any input from the Government or opposition by any party.  *See*

*In re Porter*, Nos. 06-10119, 07-1012, 2009 WL 902662, at *20-22 (Bankr. D.S.D.

Mar. 13, 2009) (allowing trustee to assert fraudulent conveyance claim under the

FDCPA because debtor had scheduled debt to the Small Business Administration;

SBA had not appeared in the bankruptcy and had not even filed a claim); *In re*

*Bonham*, 224 B.R. 435 (Bankr. D. Alaska 1998) (rejecting trustee's purported

FDCPA claim because there was no underlying federal "debt," and specifically

noting that while the Securities and Exchange Commission had filed a proof of

claim, it "ha[d] not sought to use FDCPA avoidance powers under 28 U.S.C. § 3304

to obtain judgments or disgorgement from the investors in the debtors' Ponzi

scheme" (footnotes omitted)).[5]

28.    Anadarko's Objections rightly point out that one of the cases cited by

the Government in its DIP Objections for the proposition that it may pursue its

FDCPA claim, *In re Hampton*, Nos. 95-50743, 95-5043, 96-5002, 1997 WL 714905,

---

[5]    The final case cited in Anadarko's Objections is almost completely
irrelevant.  In *In re Gurley*, 357 B.R. 868 (Bankr. M.D. Fla. 2006), certain plaintiffs
— including the debtor and the administrator of the debtor's wife's bankruptcy
estate — filed an adversary proceeding seeking a declaration that the EPA was not
entitled to have its claim satisfied from the proceeds of an avoidance action brought
by the chapter 7 trustee, possibly under the FDCPA.  The court dismissed that
complaint on the EPA's motion, finding that the claims were barred by *res judicata*,
collateral estoppel, and law of the case, as they had previously been litigated.  The
court then concluded that the EPA was entitled to have its claim satisfied from the
proceeds of the trustee's fraudulent conveyance suit pursuant to section 726 of the
Bankruptcy Code, which governs the distribution of estate property under in
Chapter 7 cases.

at *8-9 (Bankr. W.D. La. Aug. 13, 1997), also did not squarely confront the issue.
*See* Anadarko's Objections at 7-8.  Of course, the footnote attached by the
Government to the citation to *Hampton* acknowledged the split in "authority" —
though no decision speaks directly to the issue — noting that "[a] trustee or debtor
in possession may also be permitted to assert an FDCPA claim," and citing *In re
Gurley*, 222 B.R. 124, 132 (Bankr. W.D. Tenn. 1998).  DIP Objections ¶ 31 n.5.

29.    Indeed, the whole point of the Stipulation is that *no* court to the
Government's knowledge has ever squarely addressed this issue.  That's why the
Parties In Interest have chosen to bracket the novel FDCPA-related issues until
after the core fraudulent conveyance claims have been litigated, since, as
Anadarko's Objections observe, "[t]he Government's proposed fraudulent transfer
claims are largely identical to the Debtors' fraudulent transfer claims, insofar as
they are based upon the same law (albeit codified in different statutes), the very
same set of alleged facts, and the very same prepetition transfers."  Anadarko's
Objections at 9.

30.    In short, Anadarko's Objections seek to circumvent the Stipulation —
which essentially reserves the FDCPA issues until after judgment has been
obtained against Anadarko and Kerr-McGee — by requiring the parties to litigate
the very issues on which the Parties In Interest have reserved their rights.

## C.    THE GOVERNMENT'S PARTICIPATION IN THE LITIGATION — DEFINED BY THE STIPULATION, NOT THE MOTION TO INTERVENE — IS CONSISTENT WITH THE LAW IN THIS COURT

31.    Finally, Anadarko's Objections claim that the Government should not

15

be permitted to participate in discovery and settlement negotiations, or seek a portion of any potential recovery.  The law is clearly to the contrary.

32.     As Anadarko's Objections repeat, the claims asserted in the Debtors' Complaint, which of course does not include FDCPA claims, "belong" to the estate. That's true; as the Second Circuit clearly explained in *In re Smart World Technologies LLC*, 423 F.3d 166 (2d Cir. 2005), "[i]t is the debtor-in-possession who controls the estate's property, including its legal claims, and it is the debtor-in-possession who has the legal obligation to pursue claims or to settle them, based upon the best interests of the estate." *Id.* at 175.  And that is also exactly what the Stipulation provides: "the Debtors retain their rights to decide whether to enter into a settlement agreement with Anadarko Petroleum Corporation and/or Kerr-McGee Corporation to resolve the Litigation (a "Settlement"), and to make decisions regarding the terms of any such Settlement."  Stipulation ¶ 2.[6]

33.     Anadarko and Kerr-McGee seem to take issue with the immediately prior clause, which provides that "all Parties In Interest may participate in . . . settlement discussions to the extent that any other Party In Interest is included in such discussions."  *Id.*; *see* Anadarko's Objections at 16.  But the Debtors' ability to include whomever they please in settlement discussions is an obvious corollary to

---

[6]     The Stipulation does provide that "Nothing in this Stipulation and Order shall be construed to authorize the Debtors to settle or compromise any claims that do not belong to the estates under applicable law."  Stipulation ¶ 2.  But that, too, is a direct consequence of *Smartworld*: the Debtors can settle the estate's claims because they own them, but they cannot settle claims that belong to others.

their singular authority to conduct settlement negotiations.

34.    Moreover, the Stipulation does not provide the Government or the other Parties In Interest with a "mandatory, unfettered right to participate in settlement negotiations," as Anadarko's Objections suggest.  *Id.*  Rather, the Stipulation provides that to the extent one Party In Interest is included, so must all be included.  So, for example, the Debtors cannot include the Creditors' Committee in settlement talks, but exclude the Equity Committee.  Nothing in the Stipulation, however, precludes the Debtors from having direct negotiations with Anadarko and Kerr-McGee without the participation of the other Parties In Interest.

35.    Finally, Anadarko's Objections complain that the Government — and presumably the other Parties In Interest — "should not be allowed to burden this Adversary Proceeding by making its own discovery requests, noticing depositions, and asking questions at depositions."  Anadarko's Objections at 16.  They then cite Judge Gerber's decision in *Adelphia* for the proposition that an intervening creditor has no such rights.

36.    But *Adelphia* doesn't say that:

> Intervenors may have the right to propound discovery requests, to notice depositions and/or to question at depositions, to ask questions at trial or to have rights with respect to settlement even when they do not "own" the underlying cause(s) of action, but that is not free from doubt (particularly given the lack of focus on the question in either side's briefs), and the Court believes that it is premature to make decisions of that character at this time, without knowing the particular desire in question.

Then, in an attached footnote:

17

> The Court notes that parties in interest do have the right, in contested matters in umbrella cases, to discovery, and without first obtaining leave of court. *See* Fed. R. Bankr. P. 9014 (providing, inter alia, that Fed. R. Bankr. P. 7026 through 7037, providing for discovery, normally as of right, in adversary proceedings also apply in contested matters). They have that right in connection with motions as to which they wish to take a position, and have a right to be heard under section 1109(b), without regard to their pecuniary interest in the underlying controversy or "ownership" of rights in connection therewith. It is arguable, but not necessarily clear, that this would provide a basis for discovery rights for intervenors, but for lack of adequate briefing as to the issue, and context for deciding the matter, the Court is not deciding the question now.

*In re Adelphia Communications Corp.*, 285 B.R. 848, 856-57 & n.21 (Bankr. S.D.N.Y. 2002). Judge Gerber in *Adelphia* therefore reserved decision on the extent to which intervenors may participate in discovery, and further noted that "courts may control the proceedings before them even after intervention, and, if necessary, limit actions by intervenors or require coordination, in the interests of judicial economy, avoiding harassment or excessive burdens, or otherwise in the interests of justice." *Id.* at 857.

37.    The approach taken by the Parties In Interest in the Stipulation strikes a similar balance. The Stipulation conceives of a collaborative and streamlined approach to discovery, spear-headed by the Debtors. *See* Stipulation ¶ 1. Thus, the Parties In Interest may propound discovery or notice depositions, but only after conferring with the Debtors and allowing them to do so first, and only if they make an effort to "prevent duplicative" requests. *See id.* ¶ 1(D) & (E). And the Parties In Interest may ask questions at depositions, but again, only "non-

18

duplicative" ones. *Id.* ¶ 1(C).

38.    Most importantly, the Stipulation provides that "[t]he Parties shall maintain their respective rights to seek protective orders or otherwise to oppose or seek to limit discovery to the extent permitted by the Federal Rules of Civil Procedure." *Id.* ¶ 1(G).  Thus, any party may resist discovery because, among other grounds, it would constitute an "undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  In other words, the Parties In Interest have built in the very same safeguards that Judge Gerber relied upon in *Adelphia* — plus, of course, the court retains all of its inherent powers to control discovery and manage its docket.

39.    In short, the Stipulation provides for participation by the Parties In Interest at a level comfortably within the experience of this Court, and in a way designed to minimize duplication of effort and burden on Anadarko and Kerr-McGee.  To the contrary, the Parties In Interest have a strong interest in prosecuting the fraudulent conveyance claims as efficiently and aggressively as possible, and are well aware that the fastest way to derail that schedule would be to litigate at cross-purposes with one another.

## CONCLUSION

40.    Because a party in interest has an "unconditional right to intervene" in an adversary proceeding, this Court should grant the Government's motion.  Indeed, none of the arguments raised in Anadarko's Objections are to the contrary.  However, for the additional reasons set out above, the Court should also approve the Stipulation and allow the Parties In Interest to continue to work cooperatively,

and in the best interests of these estates.

Dated:      June 5, 2009
            New York, New York

                              Respectfully submitted,

                              LEV L. DASSIN
                              Acting United States Attorney for the
                              Southern District of New York

                    By:      /s/ Matthew L. Schwartz_____
                              MATTHEW L. SCHWARTZ
                              TOMOKO ONOZAWA
                              Assistant United States Attorneys
                              86 Chambers Street
                              New York, New York 10007
                              Tel.: (212) 637-1945
                              Fax: (212) 637-2750
                              E-mail: matthew.schwartz@usdoj.gov
                                      tomoko.onozawa@usdoj.gov