**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, *et al.*, | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ———————————————— | ) | |
| | ) | |
| TRONOX INCORPORATED, TRONOX | ) | |
| WORLDWIDE LLC f/k/a Kerr-McGee | ) | |
| Chemical Worldwide LLC, and TRONOX | ) | |
| LLC f/k/a Kerr-McGee Chemical LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 09-01198 (ALG) |
| | ) | |
| ANADARKO PETROLEUM | ) | |
| CORPORATION and KERR-MCGEE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff- Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRONOX, INC., TRONOX WORLDWIDE | ) | |
| LLC, TRONOX LLC, KERR-MCGEE | ) | |
| CORPORATION and ANADARKO | ) | |
| PETROLEUM CORPORATION, | ) | |
| | ) | |
| Defendants | ) | |
| ———————————————— | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| UNSECURED CREDITORS OF TRONOX | ) | |
| INCORPORATED and its affiliated debtors, | ) | |
| on behalf of the estates of TRONOX | ) | |
| INCORPORATED, *et al.* | ) | |
| | ) | |

|                                   |     |                                           |
|-----------------------------------|-----|-------------------------------------------|
| Plaintiff,                        | )   |                                           |
|                                   | )   |                                           |
| v.                                | )   | Adversary Proceeding No. 09-01388 (ALG)   |
|                                   | )   |                                           |
| CREDIT SUISSE *et al.*,           | )   |                                           |
|                                   | )   |                                           |
| Defendants.                       | )   |                                           |
| _____  | )   |                                           |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO
DISMISS ADVERSARY COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ............................................................................................................................2

I.    PLAINTIFF HAS NOT COMPLIED WITH THE DIP ORDER'S CLEAR
      "EXPRESS CHALLENGE" REQUIREMENT. ...............................................................2

II.   PLAINTIFF'S FAILURE TO SATISFY THE REQUIREMENTS OF THE
      COLLAPSING DOCTRINE AND PLEADING STANDARDS FOR
      KNOWLEDGE MANDATES DISMISSAL OF ITS CLAIMS FOR
      CONSTRUCTIVE FRAUDULENT TRANSFER. ...........................................................3

III.  PLAINTIFF'S FAILURE TO ALLEGE DEFENDANTS' KNOWLEDGE OF
      THE PURPORTED FRAUDULENT SCHEME ALSO REQUIRES
      DISMISSAL OF ITS CLAIM FOR ACTUAL FRAUDULENT
      INCURRENCE OF OBLIGATIONS. ...............................................................................7

IV.   PLAINTIFF'S CLAIM FOR EQUITABLE SUBORDINATION IS BOTH
      INTERTWINED WITH ITS DEFECTIVE CLAIMS FOR ACTUAL AND
      CONSTRUCTIVE FRAUDULENT TRANSFER AND DEFICIENT ON ITS
      OWN MERITS. ...................................................................................................................9

V.    DEFENDANTS' SECURITY INTERESTS IN TRONOX'S PATENTS AND
      TRADEMARKS WERE PROPERLY PERFECTED THROUGH UCC
      FILINGS. ..........................................................................................................................12

VI.   THE PLAIN LANGUAGE OF THE BANKRUPTCY CODE PROVIDES
      THAT THE SECTION 546(e) SAFE HARBOR APPLIES TO TRANSFERS
      OF LIENS AND OBLIGATIONS UNDER THE TERM LOAN. ....................................13

CONCLUSION .........................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Conn. Nat'l Bank v. Germain, 503 U.S. 249 (1992) ....................................................15

Crowthers McCall Pattern Inc. v. Lewis, 129 B.R. 992 (S.D.N.Y. 1991)......................................6

Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc., -- U.S. --, 128 S. Ct. 2326 (2008)...............15

Gasser Chair Co. v. Infanti Chair Mfg. Corp., No. 88 CV 3931(ILG), 03 CV 6413(ILG), 2006 WL 297451 (E.D.N.Y. Feb. 8, 2006).................................................................13

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000) .......................15

HBE Leasing Corp. v. Frank, 48 F.3d 623 (2d Cir. 1995).................................................... passim

Higgins v. Cal. Prune & Apricot Grower, Inc., 3 F.2d 896 (2d Cir. 1924) ...................................17

In re 80 Nassau Assocs., 169 B.R. 832 (Bankr. S.D.N.Y. 1994)...........................................10, 11

In re Actrade Fin. Techs. Ltd., 337 B.R. 791 (Bankr. S.D.N.Y. 2005) .......................................7, 9

In re AlphaStar Ins. Group Ltd., 383 B.R. 231 (Bankr. S.D.N.Y. 2008)..................................10, 11

In re Bayou Group, LLC ("Bayou I"), 362 B.R. 624 (Bankr. S.D.N.Y. 2007) ..............................8

In re Bayou Group, LLC ("Bayou II"), 396 B.R. 810 (Bankr. S.D.N.Y. 2008) .............................8

In re Bernard, 96 F.3d 1279 (9th Cir. 1996) ...................................................................17

In re Cybernetic Servs., Inc., 252 F.3d 1039 (9th Cir. 2001) ...................................................12, 13

In re Dry Wall Supply, Inc., 111 B.R. 933 (D. Colo. 1990)........................................................10

In re Enron Corp., 379 B.R. 425 (S.D.N.Y. 2007) .........................................................11

In re Global Serv. Group LLC, 316 B.R. 451 (Bankr. S.D.N.Y. 2004) .........................................10

In re Lexington Healthcare Group, Inc., 339 B.R. 570 (Bankr. D. Del. 2006).............................17

In re M. Fabrikant & Sons, Inc., 394 B.R. 721 (Bankr. S.D.N.Y. 2008)............................... passim

In re Peregrine Entm't, Ltd., 116 B.R. 194 (C.D. Cal. 1990).........................................................12

In re Resorts Int'l, Inc., 181 F.3d 505 (3d Cir. 1999), cert. denied, Sun Int'l N. Am., Inc. v. Lowenschuss, 528 U.S. 1021 (1999) ...................................................................14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

In re Sharp Int'l Corp., 281 B.R. 506 (Bankr. E.D.N.Y. 2002) ....................................................10

In re Sunbeam Corp., 284 B.R. 355 (Bankr. S.D.N.Y. 2002)................................................ passim

In re Teligent Servs., Inc., No. 06 Civ. 03721(KMW), 2009 WL 2152320 (S.D.N.Y. July 19, 2009) ............................................................................................................................17

In re Yellowstone Mountain Club, LLC, No. 08-61570-11 (No. 864), 2009 WL 1324950 (Bankr. D. Mont. May 12, 2009) ...........................................................................................12

In re Yellowstone Mountain Club, LLC, No. 09-00014 (No. 289), 2009 WL 3094930 (Bankr. D. Mont. May 12, 2009) ...........................................................................................12

In re Yellowstone Mountain Club, LLC, No. 09-00014 (No. 299), slip op. (Bankr. D. Mont. June 29, 2009) ............................................................................................................12

Int'l Controls Corp. v. Vesco, 490 F.2d 1334 (2d Cir. 1974)........................................................14

Kaiser Steel Corp. v. Charles Schwab & Co., 913 F.2d 846 (10th Cir. 1990) .............................14

Lamie v. U.S. Trustee, 540 U.S. 526 (2004) .................................................................................15

PaineWebber Inc. v. Nwogugu, No. 98 CIV. 2441 (DLC), 1998 WL 193110 (S.D.N.Y. Apr. 22, 1998)......................................................................................................................13

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2d Cir. 1998) ...........................................13

Russello v. United States, 464 U.S. 16 (1983)................................................................................16

Segal v. Gordon, 467 F.2d 602 (2d Cir. 1972) ..............................................................................11

Shewmaker v. Parker, 479 F. Supp. 616 (D.C. Cir. 1979) ...........................................................17

Trimarchi v. Together Dev. Corp., 255 B.R. 606 (D. Mass. 2000) ..............................................12

United States v. Ron Pair Enters., Inc., 489 U.S. 235 (1989)......................................................15

United States v. Tabor Court Realty Corp., 803 F.2d 1288 (3d Cir. 1986), cert. denied, McClellan Realty Co. v. United States, 483 U.S. 1005 (1987) ...............................................6

Wieboldt Stores, Inc. v. Schottenstein, 94 B.R. 488 (N.D. Ill. 1988)............................................6

**Statutes & Rules**

11 U.S.C. § 101(54) .................................................................................................................16, 17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

11 U.S.C. § 502.................................................................................................................10

11 U.S.C. § 502(d)............................................................................................................17

11 U.S.C. § 510(c) ............................................................................................................10

11 U.S.C. § 546(e) ....................................................................................................... passim

11 U.S.C. § 548.............................................................................................................8, 9

11 U.S.C. § 741(7)(A)........................................................................................................14

Local Bankruptcy Rule for the Southern District of New York 4001-2.........................................3

Uniform Commercial Code, Art. 9 .....................................................................................12, 13

## Other Authorities

United States Bankruptcy Court for the Southern District of New York General Order
No. M-274...................................................................................................................3

S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787 ..............................................17

Defendants, current and former pre-petition secured creditors (the "Pre-Petition

Lenders") of the Tronox Debtors,[1] hereby submit this reply memorandum of law in further

support of their Motion to Dismiss Adversary Complaint ("Motion" or "Mot."):[2]

## PRELIMINARY STATEMENT

Plaintiff's opposition all but concedes Defendants' principal arguments and

reinforces that this adversary proceeding should be dismissed with prejudice.  Specifically:

- Plaintiff does not dispute that it has failed to "expressly challenge" the stipulation in this Court's DIP Order that all claims against the Tronox Pre-Petition Lenders have been released (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Adversary Complaint ("Opposition" or "Opp'n") at 5-6);

- Plaintiff does not dispute that it has failed to allege any specific facts to support an inference that any Defendant had any knowledge of Kerr-McGee's purportedly fraudulent scheme (id. at 1, 19);

- Plaintiff does not dispute that it has failed to allege any specific facts indicating that any Defendant engaged in any inequitable conduct (id. at 18); and

- Plaintiff concedes that it uncovered no evidence of any misconduct by any Defendant—or that it failed to investigate the issue—during the "challenge period" that preceded the filing of this adversary proceeding (id. at 1 n.2, 30).

---

[1] Capitalized terms not defined herein have the meaning given to them in Defendants' Motion.  Since Defendants filed the Motion, Wave CBNA Loan Funding, LLC has joined in the Motion.  In addition, the parties have clarified and resolved certain inaccuracies in the names of the Defendants originally named.  Accordingly, the identity of the moving Defendants listed below on page 18-19 is slightly different than appeared on the original Motion papers.

[2] On November 6, 2009, Plaintiff filed its First Amended Adversary Complaint (the "Amended Complaint").  The Amended Complaint removes reference to certain previously-named defendants consistent with stipulations among the parties, and it names various additional entities as defendants that do not appear to have yet been served.  The Amended Complaint makes various other nonsubstantive changes to Plaintiff's original pleading, and the parties have agreed that Defendants' motion may be deemed to seek dismissal of the Amended Complaint as Plaintiff's now-operative pleading.

Instead, Plaintiff argues that it is not required to follow the "express challenge" requirement of this Court's DIP Order (id. at 6), that its claims do not require it to allege that the Defendants actually engaged in any wrongful conduct (id. at 7-11, 13-14, 18-20) and that it would have been overly burdensome for Plaintiff to investigate whether it had any basis to assert claims against the Defendants prior to filing its Complaint (id. at 1 n. 2, 30).  As detailed below, Plaintiff is wrong on the law and its frivolous claims should not be countenanced.

## ARGUMENT

### I.    PLAINTIFF HAS NOT COMPLIED WITH THE DIP ORDER'S CLEAR "EXPRESS CHALLENGE" REQUIREMENT.

Plaintiff asserts that "[n]othing in the DIP Order required the Committee to expressly refer to the DIP Order" in bringing this avoidance action.  (Id. at 3.)  Plaintiff is wrong. In fact, the DIP Order states that the stipulations and admissions contained therein shall be "binding and preclusive . . . except to the extent that such findings and admissions [are] expressly challenged".  (DIP Order ¶ 19 (emphasis added).)  The Complaint does not even make reference to, let alone expressly challenge, the specific stipulations and admissions referred to in Defendants' opening brief.  (See Mot. at 10-11.)

In trying to salvage its Complaint, Plaintiff argues that the mere fact that Plaintiff is now seeking to avoid transfers made to the Defendants somehow amounts to an express challenge to the surrender of the avoidance power in the DIP Order.  (Opp'n at 5-6.)  However, just because avoidance is sought does not mean it is a form of relief that may be granted in the face of the DIP Order's express stipulation that the avoidance power has been surrendered.  What is more, Plaintiff makes no argument at all so much as to suggest that it has "expressly challenged" the DIP Order's full release of all "claims, counterclaims, causes of action, defenses [and] setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Pre-

- 2 -

Petition Lenders". (DIP Order ¶ 4(a)(viii).) Because that release has not been challenged at all, Plaintiff's claims (seeking avoidance or otherwise) are all barred.

Further, no rule or order of this Court prohibits the express challenge term contained in the DIP Order. General Order No. M-274, which Plaintiff claims bars such a provision (Opp'n at 6), has been superseded by Local Bankruptcy Rule for the Southern District of New York 4001-2 ("Local Rule 4001-2"), which went into effect in August 2008. Nothing in Local Rule 4001-2 mentions extraordinary provisions or bars the Court from enforcing the DIP Order's express challenge provision. Despite Plaintiff's claim that the express challenge requirement is "an extraordinary hurdle" (Opp'n at 6), a claim it notably did not make when the DIP Order was submitted for the Court's approval on consent, compliance presumably could have been achieved with the insertion of just a few clauses into the Complaint. Plaintiff's failure to do so has not been explained or excused and only serves to reinforce the fact that Plaintiff did virtually nothing during its purported "challenge period" to investigate whether it properly could assert any valid claims against the Defendants. Indeed, even after Defendants argued in their Motion that Plaintiff's claims were barred by the DIP Order, Plaintiff did not even attempt to cure that defect in the Amended Complaint. Accordingly, the Amended Complaint should be dismissed with prejudice.

**II.    PLAINTIFF'S FAILURE TO SATISFY THE REQUIREMENTS OF THE COLLAPSING DOCTRINE AND PLEADING STANDARDS FOR KNOWLEDGE MANDATES DISMISSAL OF ITS CLAIMS FOR CONSTRUCTIVE FRAUDULENT TRANSFER.**

As Plaintiff concedes, it can state a claim against Defendants for constructive fraudulent transfer (Counts II and III) only if the Term Loan is "collapsed" with Tronox's transfer of the loan proceeds to New Kerr-McGee for allegedly inadequate consideration. (Opp'n at 7-8.) Plaintiff fails, however, to satisfy the requirements of the collapsing doctrine by

adequately alleging that Defendants knew or should have known of the circumstances that allegedly rendered the transfer to New Kerr-McGee constructively fraudulent.

Plaintiff acknowledges that separate and distinct transactions may not be collapsed into a single transaction unless "the transferee in the leg of the transaction sought to be voided [has] actual or constructive knowledge of the entire scheme that renders her exchange with the debtor fraudulent". HBE Leasing Corp. v. Frank, 48 F.3d 623, 635 (2d Cir. 1995). However, Plaintiff misstates the law in arguing that the transferee's knowledge of the "entire scheme" means only "knowledge of the structure of the transaction and its component parts". (Opp'n at 9-10.) [3]

Rather, as the Second Circuit clearly stated in HBE Leasing, Plaintiff must allege knowledge of the scheme that renders the transfer of the loan proceeds fraudulent. 48 F.3d at 635. In the constructive fraudulent transfer context, Plaintiff must allege that Defendants had or should have had "knowledge that the Debtor was insolvent or would be rendered insolvent". In re Sunbeam Corp., 284 B.R. 355, 373 (Bankr. S.D.N.Y. 2002); see also In re M. Fabrikant & Sons, Inc., 394 B.R. 721, 738 (Bankr. S.D.N.Y. 2008) (requiring knowledge that the "financial condition was deteriorating, or . . . that the transfers . . . rendered [the Debtor] insolvent or

---

[3] The first prong of the collapsing doctrine requires that Plaintiff plead that "the consideration received from the first transferee [is] reconveyed by the debtor for less than fair consideration or with an actual intent to defraud creditors". HBE Leasing, 48 F.3d at 635. In its Opposition, however, Plaintiff attempts salvage its constructive fraudulent transfer claims by creating an issue over whether Tronox Incorporated, Tronox Worldwide or neither "received a benefit" in exchange for the transfer of loan proceeds to New Kerr-McGee. (Opp'n 8 n.5.) The Complaint refers to Tronox Incorporated and Tronox Worldwide collectively as "Tronox" in alleging that the "Tronox Entities did not receive reasonably equivalent value". (Compl. ¶¶ 27, 140, 149.) To the extent that Plaintiff purports to raise that issue, it must concede that it has not satisfied the first prong of the collapsing doctrine, which requires detailed allegations as to which entity received which transfer and whether a benefit was received. See In re M. Fabrikant & Sons, Inc., 394 B.R. 721, 735-36 (Bankr. S.D.N.Y. 2008).

unable to continue in business"). Nothing in the Complaint supports the inference that Defendants were aware of the occurrence of an allegedly fraudulent transfer. Limiting the scope of the knowledge required to the mere structure of the transaction, as Plaintiff urges, would defeat the "policy of protecting innocent creditors or purchasers for value who have received the debtor's property without awareness of any fraudulent scheme". HBE Leasing, 48 F.3d at 636; see also Sunbeam, 284 B.R. at 370 ("[T]he transactions may be collapsed and the initial lender's transfer deemed fraudulent if that initial transferor was intimately involved in the formulation or implementation of the plan by which the proceeds of the loan were channeled to the third-party.").

Plaintiff's attempt to distinguish Fabrikant and Sunbeam in this context is unavailing. (Opp'n at 12-13.) Contrary to Plaintiff's suggestion that the Fabrikant court's decision not to collapse the challenged transactions was due to the transactions' "separation in time", in fact that court acknowledged that a "plausible claim" that the lenders "knew or should have known that the debtors were engaged in a multi-year scheme" would have satisfied the collapsing doctrine. See Fabrikant, 394 B.R. at 739. Instead, the Fabrikant decision was based on the well-established proposition that collapsing requires allegations of "some specific facts that support an inference of knowledge" by lenders of the circumstances rendering the use of debt proceeds actually or constructively fraudulent. Id. at 736. Similarly, the Sunbeam court did not suggest that a "separation in time" played any part in its conclusion, but rather held that the complaint's allegation of the lenders' purported knowledge was insufficient to support collapsing because it was "conclusory" with "no factual allegations to support it". 284 B.R. at 372. The court in Sunbeam rejected the argument by the creditors' committee plaintiff that the lenders

- 5 -

knowledge was adequately alleged because the complaint asserted "that the Lenders were aware of the structure of the entire transactions . . . ." Id.

Indeed, cases cited by Plaintiff (Opp'n at 10-11) confirm that knowledge of the structure of the transaction does not satisfy the collapsing doctrine.  Rather, a lender must have actual or constructive knowledge that "the eventual insolvency and bankruptcy of [the debtor] was a foreseeable result" of the series of transactions.  Crowthers McCall Pattern Inc. v. Lewis, 129 B.R. 992, 998 (S.D.N.Y. 1991).  In United States v. Tabor Court Realty Corp., collapsing was held to be appropriate where the lender was "intimately involved with the formulation of the agreement whereby the proceeds of its loan were funnelled [sic] into the hands of the purchasers of the stock of a corporation that was near insolvency".  803 F.2d 1288, 1302-03 n.8 (3d Cir. 1986), cert. denied, McClellan Realty Co. v. United States, 483 U.S. 1005 (1987).  Similarly, the lender in Wieboldt Stores, Inc. v. Schottenstein worked with the debtor to structure the transaction in an attempt to evade the application of fraudulent conveyance laws and, at debtor's insistence, waived its request for a solvency opinion.  94 B.R. 488, 495, 502-503 (N.D. Ill. 1988).

Finally, in HBE Leasing, on which Plaintiff heavily relies, the lender was a former director of the debtor and mother of the debtor's principal (i.e., the ultimate recipient of the funds), whom she knew was likely to make preferential payments to himself from the funds. 48 F.3d at 637.  Here, however, there are no allegations whatsoever that any of the Defendants had any knowledge of the purported fraudulent nature of Kerr-McGee's "scheme" or that Tronox's insolvency was a foreseeable result of the combined transactions.  To the contrary, not only do the Complaint's allegations support the opposite inference (see Compl. ¶¶ 66, 88, 102, 104-106, 109)—a point not disputed by Plaintiff—but the Tronox Debtors, on whose behalf

- 6 -

Plaintiff brings this action, have stated to this Court that "the marketplace was misled" by

"overstated assets" and "projections that were wholly improbabl[e]" as well as New Kerr-

McGee's alleged "failure to disclose the full extent of the liabilities".  Transcript of Hearing Re

Motion to Dismiss Filed by Defendants at 61, <u>Tronox Inc. v. Anadarko Petroleum Corp.</u>, No. 09-

01198 (No. 906).

> Accordingly, Counts II and III should be dismissed.

## III.    PLAINTIFF'S FAILURE TO ALLEGE DEFENDANTS' KNOWLEDGE OF THE PURPORTED FRAUDULENT SCHEME ALSO REQUIRES DISMISSAL OF ITS CLAIM FOR ACTUAL FRAUDULENT INCURRENCE OF OBLIGATIONS.

> To sustain its claim for actual fraudulent incurrence of obligations, Plaintiff is

required to plead and sufficiently allege that Defendants had knowledge of the alleged fraudulent

scheme.  (<u>See</u> Mot. at 20 and cases cited therein.)  In its effort to avoid that requirement—which

it does not even attempt to meet—Plaintiff asks the Court to ignore case law of this District,

which Plaintiff elsewhere relies upon as authoritative.

> <u>First</u>, Plaintiff is wrong that it need not allege Defendants' state of mind under the

Uniform Fraudulent Transfer Act ("UFTA") or the Bankruptcy Code because "[D]efendants'

good faith is an affirmative defense that must be pled and proven by the [D]efendant".  (Opp'n at

14-15.)  This Court, ruling on a fraudulent transfer claim under the Bankruptcy Code, explained

that "in an intentional fraudulent conveyance case the relevant inquiry is whether the transferee

knew of the transferor's intent to defraud his creditors 'in any way'".  <u>In re Actrade Fin. Techs.

Ltd.</u>, 337 B.R. 791, 809-10 (Bankr. S.D.N.Y. 2005).  <u>Actrade</u> also makes clear that alleging

knowledge requires pleading with "sufficient specificity", which Plaintiff fails to do.  <u>Id.</u> at 810.

Although knowledge may be pled generally, "the complaint must allege some specific facts that

support an inference of knowledge" on the part of each defendant.  <u>Fabrikant</u>, 394 B.R. at 736;

- 7 -

see also Sunbeam, 284 B.R. at 372-73.   Plaintiff does not even address the sufficiency of its

factual allegations of Defendants' knowledge of New Kerr-McGee's alleged fraud.

      Second, Plaintiff's identification of In re Bayou Group, LLC ("Bayou II"), 396

B.R. 810 (Bankr. S.D.N.Y. 2008), as the "most recent case in this district to address this issue

under the Bankruptcy Code and New York law" (Opp'n at 15) is misleading.   Bayou II was a

summary judgment decision that followed the law of the case established at the motion to

dismiss stage, in Bayou I.   See Bayou II, 396 B.R. at 824; In re Bayou Group, LLC ("Bayou I"),

362 B.R. 624, 638 (Bankr. S.D.N.Y. 2007).   Bayou I was decided before Fabrikant, which

plainly requires that "knowledge of the entire scheme that renders the exchange with the debtor

fraudulent" be alleged to state a claim for actual fraudulent transfer.   Fabrikant, 394 B.R. at 731.

In addition, Bayou II is factually distinguishable, as it involves a Ponzi scheme where the

defendants were investors who redeemed their investments from the Bayou hedge funds,

together with "fictitious profits", in the year prior to the funds' collapse.   396 B.R. at 821, 824.

Fabrikant is clearly more analogous, as it involved a committee of unsecured creditors that

brought suit against pre-petition lenders for transfers arising out of secured debt.   394 B.R. at

726-27.

      Third, Plaintiff states that the Oklahoma UFTA is "essentially equivalent to

section 548(a)(1) of the Bankruptcy Code", and cases decided under the Bankruptcy Code are

therefore persuasive.  (Opp'n at 14.)  In the same vein, Plaintiff claims that, although HBE

Leasing "was decided under New York law", the Second Circuit's "citation of bankruptcy cases

and cases decided under the [UFTA] make clear that its analysis is not limited to New York

law".  (Opp'n at 8 n.4.)  Remarkably, in attempting to discredit the cases cited by Defendants

regarding actual fraudulent transfer claims, Plaintiff takes the opposite position, arguing that

"Defendants have attempted an unconscionable sleight of hand" by "citing cases that allege claims under both New York's version of the [Uniform Fraudulent Conveyance Act] and section 548 of the Bankruptcy Code as if the cases were only construing section 548 and then pointing to Oklahoma authority noting the similarities between Oklahoma's UFTA and section 548". (Opp'n at 18 n.10.)  Plaintiff cannot have it both ways.  Because the cases relied upon by Defendants "make clear" that the analysis is "not limited to New York law" (and Defendants do not claim that the cases "only constru[e] section 548"), by Plaintiff's own logic, they are anything but "irrelevant" (Opp'n at 15).  See, e.g., Actrade, 337 B.R. at 809 (guided by New York case law, noting that "there is no reason why its reasoning should not be applicable to claims of intentional fraudulent conveyance under the Bankruptcy Code as well"); Fabrikant, 394 B.R. at 731 (addressing New York and Bankruptcy Code law).[4]

Accordingly, Plaintiff's failure to allege any facts in support of an inference that Defendants knew or should have known of New Kerr-McGee's alleged fraudulent scheme requires dismissal of Count I.

## IV.    PLAINTIFF'S CLAIM FOR EQUITABLE SUBORDINATION IS BOTH INTERTWINED WITH ITS DEFECTIVE CLAIMS FOR ACTUAL AND CONSTRUCTIVE FRAUDULENT TRANSFER AND DEFICIENT ON ITS OWN MERITS.

Plaintiff concedes that its equitable subordination claim is intertwined with its fraudulent transfer claims.  (Opp'n at 19.)  Consequently, because Plaintiff has not adequately

---

[4] Plaintiff's attempt to distinguish Fabrikant and HBE Leasing because they concern the collapsing doctrine misses the point. (Opp'n at 18 n.10.)  Both cases make clear—regardless of the application of the collapsing doctrine—that holding an initial transferee (such as Defendants) liable for an intentionally fraudulent conveyance between the transferor and a second transferee requires allegations that the initial transferee had knowledge of the scheme that renders the second transfer fraudulent.  Fabrikant, 394 B.R. 731; HBE Leasing, 48 F.3d at 635.  That knowledge requirement applies with equal force here.

stated a claim for fraudulent transfer, the "intertwined" claim for equitable subordination also

should be dismissed.  See, e.g., In re AlphaStar Ins. Group Ltd., 383 B.R. 231, 276 (Bankr.

S.D.N.Y. 2008) (dismissing claim for equitable subordination where fraud-based claims were

also being dismissed); In re Sharp Int'l Corp., 281 B.R. 506, 524 (Bankr. E.D.N.Y. 2002) (same).

Even if Plaintiff had stated a claim for fraudulent transfer, however, its claim for equitable

subordination still should be dismissed.[5]

       First, equitable subordination is reserved for instances of "gross and egregious

conduct", Sunbeam, 284 B.R. at 369, that "shock[] one's good conscience", In re 80 Nassau

Assocs., 169 B.R. 832, 837 (Bankr. S.D.N.Y. 1994).  Knowledge of a fraudulent scheme does

not "approach the level of gross misconduct" necessary to state a claim for the extraordinary

remedy of equitable subordination.  In re Dry Wall Supply, Inc., 111 B.R. 933, 938-39 (D. Colo.

1990) (finding claim for equitable subordination not stated on allegations that lender in LBO

"knew or should have known that the loan transaction would render [Debtor] insolvent and that it

was made without adequate consideration"); see also In re Global Serv. Group LLC, 316 B.R.

451, 462 (Bankr. S.D.N.Y. 2004).  Plaintiff's assertion that a claim for equitable subordination

may be "based on the Complaint's sufficient allegations of constructive fraudulent transfer

alone" accordingly fails.  (Opp'n at 18.)  That rule applies with particular force here, as

Plaintiff's only allegation of misconduct by the Defendants is the conclusory statement that,

---

[5] Plaintiff's contention that an adequately pled fraudulent transfer bars dismissal of an equitable subordination claim is inconsistent with the remedial scheme of the Bankruptcy Code. Specifically, Section 502, which addresses allowance and disallowance of claims, including claims for transfers avoided as fraudulent, nowhere requires that such claims be subordinated. See 11 U.S.C. § 502.  The power to equitably subordinate claims arises under an entirely different section, Section 510(c), precisely because equitable subordination is a separate remedy requiring an additional showing.  See 11 U.S.C. § 510(c).

"[o]n information and belief, certain of the Pre-Petition Lenders had knowledge of the fraudulent scheme described herein". (Compl. ¶ 170.) That is plainly not enough.

Indeed, the allegation that "certain of the Pre-Petition Lenders had knowledge of the fraudulent scheme" (id. (emphasis added)) does not even state that any Defendant had such knowledge, let alone allege plausible or specific facts to support such an inference. Plaintiff "must allege facts" on which the allegation of knowledge is premised. AlphaStar, 383 B.R. at 257 (internal quotation marks omitted); see also Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972). Although Plaintiff has had access to over one million pages of documents from both Tronox and New Kerr-McGee's successor Anadarko, the full cooperation of the Tronox Debtors and the opportunity to request pre-complaint discovery from Defendants, the most that Plaintiff can muster, for the first time in its Opposition, is the identification of Lehman Brothers as one of those "certain . . . Pre-Petition Lenders". (Opp'n at 19.) Of course, Lehman Brothers is not a defendant (Compl. ¶ 28GG), and Plaintiff offers no argument as to why such allegations could support a claim against any of the Defendants here.[6]

Second, Plaintiff also must allege that Defendants' inequitable conduct "resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant", In re Enron Corp., 379 B.R. 425, 433 (S.D.N.Y. 2007) (internal quotation marks omitted), and the allegation of injury must be "concrete", Nassau, 169 B.R. at 840. The Complaint makes no concrete allegations. Instead, Plaintiff relies on the conclusory statement that "[t]he inequitable conduct of the Pre-Petition Lenders resulted in injury to the other creditors of the Tronox

---

[6] It goes without saying that the innocent receipt of constructively fraudulent transfers does not shock the conscience or rise to the level of gross misconduct necessary to upset the usual "preference for secured creditors". In re Enron Corp., 379 B.R. 425, 434 n.44 (S.D.N.Y. 2007) (citation omitted). Such a remedy would be inequitable and punitive, contrary to the purposes for which the doctrine of equitable subordination may be used. See id. at 434.

Entities". (Compl. ¶ 172.) Again, Plaintiff's allegation does not even connect any Defendant's

act to any purported injury, as not all Pre-Petition Lenders are defendants. Moreover, the bare

recitation of the word "injury" is insufficient, and the additional facts Plaintiff now advances

cannot make up for its deficient pleading.[7]

## V.    DEFENDANTS' SECURITY INTERESTS IN TRONOX'S PATENTS AND TRADEMARKS WERE PROPERLY PERFECTED THROUGH UCC FILINGS.

Plaintiff insists that a filing with the U.S. Patent and Trademark Office ("PTO") is

necessary to perfect security interests in patents and trademarks. Plaintiff is wrong. See In re

Cybernetic Servs., Inc., 252 F.3d 1039, 1057-58 (9th Cir. 2001) (holding that creditors "did not

have to file with the PTO to perfect their security interest" in a patent); Trimarchi v. Together

Dev. Corp., 255 B.R. 606, 607, 610-12 (D. Mass. 2000) (collecting cases and holding that

creditor who filed with the PTO failed to perfect a security interest in a trademark because "the

perfection of a security interest in a trademark is governed by [Uniform Commercial Code]

Article 9"). The lone contrary authority cited by Plaintiff, In re Peregrine Entm't, Ltd., is a case

concerning perfection of a security interest in a copyright and decided under the Copyright Act.

116 B.R. 194, 203 (C.D. Cal. 1990). But the recordation scheme of the Copyright Act stands in

"stark contrast" to the Patent Act and the Lanham Act. See Trimarchi, 255 B.R. at 610-11.

---

[7] Plaintiff's sole citation on this point is an unpublished decision of a bankruptcy court equitably subordinating a claim without any reasoning. (Opp'n at 20, citing In re Yellowstone Mountain Club, LLC, No. 08-61570-11 (No. 864), 2009 WL 1324950, at *6 (Bankr. D. Mont. May 12, 2009).) Tellingly, Plaintiff fails to mention that that court's contemporaneous order setting forth the grounds for its decision, In re Yellowstone Mountain Club, LLC, No. 09-00014 (No. 289), 2009 WL 3094930, at *8-10 (Bankr. D. Mont. May 12, 2009), was subsequently vacated and "the preliminary and interim findings of facts and conclusions of law stated therein are and shall be deemed . . . withdrawn, void, and of no further force or effect for any and all purposes whatsoever." In re Yellowstone Mountain Club, LLC, No. 09-00014 (No. 299), slip op. at 2 (Bankr. D. Mont. June 29, 2009) (Ex. H to the Declaration of Laura R. Hall, Nov. 20, 2009, a continuation of the Sept. 25, 2009, Declaration of Laura R. Hall [hereinafter, "Ex. __"]).

Cases interpreting the Copyright Act are irrelevant to the perfection of security interests in patents and trademarks.  See Cybernetic, 252 F.3d at 1056.

In addition, Plaintiff's claim that there exists a split of authority over whether a filing pursuant to the Uniform Commercial Code ("UCC") perfects a security interest in a patent or trademark is based on a case noting such a split existed prior to 2001.  (Opp'n at 28 & n.13 (citing Gasser Chair Co. v. Infanti Chair Mfg. Corp., No. 88 CV 3931(ILG), 03 CV 6413(ILG), 2006 WL 297451, at *3, n.8 (E.D.N.Y. Feb. 8, 2006)).)  Since the 2001 enactment of revised Article 9 of the UCC, however, courts have uniformly held that the UCC, not the Patent Act, governs the perfection of security interests in a patent.  See Gasser, 2006 WL 297451, at *3, n.8.  Therefore, Defendants' UCC filings[8] properly establish security interests in Tronox's patents and trademarks and Count IV should be dismissed as to those interests.[9]

## VI.    THE PLAIN LANGUAGE OF THE BANKRUPTCY CODE PROVIDES THAT THE SECTION 546(e) SAFE HARBOR APPLIES TO TRANSFERS OF LIENS AND OBLIGATIONS UNDER THE TERM LOAN.

The application of the newly-enacted Section 546(e) safe harbor, for transfers "in connection with" a "securities contract", 11 U.S.C. § 546(e), to secured financing for a spin-off presents an issue of first impression.  Plaintiff does not dispute that the Defendants are each either "financial institutions" or "financial participants" entitled to the protection of Section

---

[8] Plaintiff also contends that the UCC filings are not properly before the Court on a motion to dismiss.  (Opp'n at 27 & n.12.)  However, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss", Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998), and "Financing Statements" filed pursuant to the UCC "are part of the public record", PaineWebber Inc. v. Nwogugu, No. 98 CIV. 2441 (DLC), 1998 WL 193110, at *3 (S.D.N.Y. Apr. 22, 1998).

[9] Defendants withdraw their argument as to the Deposit Account Control Agreements (see Mot. at 27) because the agreements attached to Defendants' Motion relate to liens securing the DIP financing and not the Term Loan.

546(e).  Nor does it offer any meaningful analysis to narrow the extraordinary breadth of the

phrase "in connection with", implicitly conceding that if the transaction involved a "securities

contract", the transfers of obligations and liens to the Pre-Petition Lenders occurred "in

connection with" that contract.  The Committee thus stakes its entire argument on the notion that

the Spin-Off did not involve a "securities contract" as that term is defined in Section 741(7)(A)

of the Bankruptcy Code.  11 U.S.C. § 741(7)(A).

The Master Separation Agreement is plainly a "securities contract".  Despite

Defendants' cataloging of the numerous securities transactions involved in the Master Separation

Agreement (Mot. at 24-25), Plaintiff argues that "no party to the Master Separation Agreement

either sells or purchases a security pursuant to its terms."  (Opp'n at 25.)  This argument ignores

that the Master Separation Agreement requires Tronox, a party to the Agreement, to sell by IPO

$550 million of Tronox stock (Ex. D at 1) and provides for the completion of the spin-off by

dividending Tronox shares to the shareholders of New Kerr-McGee (id. at 1-2), a transaction that

has been held to be a sale of securities.  See, e.g., Int'l Controls Corp. v. Vesco, 490 F.2d 1334,

1345-46 (2d Cir. 1974).  Indeed, Plaintiff contends that the Spin-Off was in fact "a classic LBO".

(Opp'n at 7.)  While Defendants believe the Spin-Off differs from "a classic LBO" because there

is no third-party acquiror, if the Court were to credit Plaintiff's characterization of the Spin-Off,

then Section 546(e) would clearly apply.  Even though LBO agreements are not commonly

called "securities contracts" in the financial industry, numerous cases have held that LBOs

involve securities transactions.  See, e.g., Kaiser Steel Corp. v. Charles Schwab & Co., 913 F.2d

846, 850 (10th Cir. 1990) ("The LBO was a securities transaction."); In re Resorts Int'l, Inc., 181

F.3d 505, 516 (3d Cir. 1999) ("A payment for shares during an LBO is obviously a common

securities transaction . . . ."), cert. denied, Sun Int'l N. Am., Inc. v. Lowenschuss, 528 U.S. 1021

- 14 -

(1999).  At least one transfer akin to the settlement payments common in LBOs occurred in the

Tronox spin-off when New Kerr-McGee relinquished a percentage of its ownership over Tronox

in exchange for the proceeds of the IPO, Term Loan and Bonds.  (Ex. D at 1-2.)

    Moreover, contrary to Plaintiff's claim that Defendants' argument is without

statutory support (Opp'n at 22), the plain language of the statute compels the conclusion that

Section 546(e) applies to bar this avoidance action.  (See Mot. at 24-26.)  As the United States

Supreme Court has stated repeatedly, "when the statute's language is plain, the sole function of

the courts—at least where the disposition required by the text is not absurd—is to enforce it

according to its terms."  Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S.

1, 6 (2000) (internal quotation marks omitted); see also Conn. Nat'l Bank v. Germain, 503 U.S.

249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature

says in a statute what it means and means in a statute what it says there. When the words of a

statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.")

(internal citations and quotation marks omitted); United States v. Ron Pair Enters., Inc., 489 U.S.

235, 241 (1989) ("[W]here, as here, the statute's language is plain, the sole function of the courts

is to enforce it according to its terms.") (citation and internal quotation marks omitted).

    Indeed, even if application of the safe harbor proves more expansive than

Congress may have anticipated, that is for Congress to remedy, not the courts.  See Fla. Dep't of

Revenue v. Piccadilly Cafeterias, Inc., -- U.S. --, 128 S. Ct. 2326, 2339 (2008) (responding to

defendant's contention that plaintiff's reading of the Bankruptcy Code would be an "absurd

policy" by reiterating that "it is not for us to substitute our view of . . . policy for the legislation

which has been passed by Congress") (citation and internal quotation marks omitted); Lamie v.

U.S. Trustee, 540 U.S. 526, 538, 542 (2004) (stating, regarding an apparent drafting error in the

Bankruptcy Code, that "[o]ur unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. . . .  If Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent.").

Nevertheless, examining the legislative history cited by Plaintiff only confirms the result.  Plaintiff quotes extensively from the report of the House Judiciary Committee on the Financial Netting Improvements Act, which amended Section 546(e) and other sections of the Bankruptcy Code, and a U.S. Treasury Department statement on proposed amendments to the Code's safe harbor provisions, both of which focus on narrowing the scope of the terms "margin loan" and "swap agreement".  (Opp'n at 23-24.)  Of course, those terms are not at issue here, and the absence of similar cautions regarding the term "securities contract" implies that no such limitation on that term was intended.  Cf. Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation and quotation marks omitted).

Finally, Plaintiff argues that even if "transfers" to Defendants are not avoidable under Section 546(e) it may seek avoidance of "obligations" and thereby disallow Defendants' claims under the Term Loan.  It is telling that Plaintiff cites no statutory authority or case law for this argument because it is contrary to the Bankruptcy Code, which defines "transfer" to include:

> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) the foreclosure of a debtor's equity redemption; or
> (D) each mode, direct or indirect, absolute or conditional, voluntary or
> involuntary, of disposing of or parting with --
> > (i) property; or
> > (ii) an interest in property.

- 16 -

11 U.S.C. § 101(54).  The creation of an obligation is the transfer of an interest in property.

Indeed, "[t]he Bankruptcy Code's definition of 'transfer' . . . is <u>extremely</u> broad . . . .  '[A]ny

transfer of an interest in property is a transfer . . . even if there is no transfer of title . . . .'"  <u>In re</u>

<u>Bernard</u>, 96 F.3d 1279, 1282 (9th Cir. 1996) (emphasis in the original) (quoting the legislative

history of 11 U.S.C. § 101(54) in S. Rep. No. 95-989, at 27 (1978), reprinted in 1978

U.S.C.C.A.N. 5787, 5813, in holding that debtor's withdrawal of cash from his own bank

account effected a transfer of an interest in property because it converted his right of redemption

into cash).  Moreover, accepting Plaintiff's interpretation of "transfer" in Section 546(e) to

protect liens but permit avoidance of associated obligations would vitiate its protection for

secured claims and allow Plaintiff to do in two steps what it could not do in one.  Courts have

routinely rejected analogous attempts to circumvent statutory protections.  <u>See, e.g.</u>, <u>Higgins v.</u>

<u>Cal. Prune & Apricot Grower, Inc.</u>, 3 F.2d 896, 898 (2d Cir. 1924) (stating that "appellees may

not accomplish in two steps what they concededly could not do in one"); <u>Shewmaker v. Parker</u>,

479 F. Supp. 616, 620 (D.C. Cir. 1979) ("statutory construction proves too much [if] it would

allow [a party] to do in two steps what he or she cannot legally do in one").

Section 546(e) thus applies to transfers of liens and obligations, and each claim

for avoidance (Counts I, II and III) must be dismissed.[10]

---

[10] Because the transfers and obligations cannot be avoided, claims for avoidance of preferences
(Count V) or avoidance of claims (Count VII) must also fail.  <u>See</u> <u>In re Teligent Servs., Inc.</u>, No.
06 Civ. 03721(KMW), 2009 WL 2152320, at *4 (S.D.N.Y. July 19, 2009) (avoidance of
preferences); <u>In re Lexington Healthcare Group, Inc.</u>, 339 B.R. 570, 577-78 (Bankr. D. Del.
2006) (Section 502(d) avoidance of claims).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety and with prejudice.

Dated: New York, New York
      November 20, 2009

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP

By :    /s/ Michael A. Paskin
        Michael A. Paskin
        A member of the Firm

        Michael A. Paskin
        Paul H. Zumbro
        Robert H. Trust
        Worldwide Plaza
        825 Eighth Avenue
        New York, NY 10019
        (212) 474-1000

        Attorneys for Defendants ABN AMRO Bank
        N.V.; AIB Debt Management, Ltd.; Allied
        Irish Banks, plc; Baker Street CLO II Ltd.;
        Baker Street Funding CLO 2005-1 Ltd.; Bank
        of Nova Scotia; Black Diamond CLO 2005-1
        Ltd.; Black Diamond CLO 2005-2 Ltd.;
        Celerity CLO Limited; Citibank, N.A.;
        Citicorp USA; Commerzbank AG; Credit
        Suisse AG, Cayman Islands Branch; Darien
        Loan Funding Company; DK Acquisition
        Partners, L.P.; Farallon Capital Institutional
        Partners, L.P.; Farallon Capital Institutional
        Partners II, L.P.; Farallon Capital Institutional
        Partners III, L.P.; Farallon Capital Offshore
        Investors, Inc.; Farallon Capital Offshore
        Investors II, L.P.; Farallon Capital Partners,
        L.P.; First 2004-II CLO, Ltd.; First 2004-I
        CLO, Ltd.; GMAM Group Pension Trust I;
        Highbridge International LLC; J.P. Morgan
        Securities Inc.; JP Morgan Chase Bank, N.A.;

- 18 -

Kelts LLC; Knighthead Master Fund, L.P.;
Oak Hill Credit Partners II, Ltd.; Oak Hill
Credit Partners III, Ltd.; Oak Hill Credit
Partners IV, Ltd.; Oak Hill Credit Partners V,
Ltd.; OHA Park Avenue CLO I, Ltd.; Park
Avenue Loan Trust; Redwood SPC; The Royal
Bank of Scotland, plc; Scotiabanc Inc.; SMBC
MVI SPC; Societe Generale, S.A.; Stone
Tower CLO V Ltd.; Stone Tower Credit
Funding I Ltd.; SunTrust Banks, Inc.; United
Overseas Bank and Wave CBNA Loan
Funding LLC.