Melanie Gray *(admitted pro hac vice)*
Lydia Protopapas (LP 8089)
Jason W. Billeck *(admitted pro hac vice)*
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

Richard A. Rothman (RR 0507)
Bruce S. Meyer (BM 3506)
Lori L. Pines (LP 3005)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

James J. Dragna *(admitted pro hac vice)*
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071
Telephone:  (213) 680-6400
Facsimile:  (213) 680-6499

Duke K. McCall, III *(admitted pro hac vice)*
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Telephone:  (202) 373-6000
Facsimile:  (202) 373-6001

*Counsel to Anadarko Petroleum Corporation and Kerr-McGee Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, *et al.*, | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. Pro. No. 09-1198 |
| | ) | |
| ANADARKO PETROLEUM CORPORATION and KERR-McGEE CORPORATION, | ) ) | |
| | ) | |
| Defendants. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | |
| ANADARKO PETROLEUM CORPORATION and KERR-McGEE CORPORATION, | ) ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF DEFENDANTS' MOTION TO DISMISS
COUNTS IV, V, AND VI OF THE AMENDED ADVERSARY COMPLAINT**

PLEASE TAKE NOTICE that upon the annexed Motion, dated May 26, 2010 (the "Motion"), Defendants Anadarko Petroleum Corporation and Kerr-McGee Corporation (collectively, the "Defendants"), will move for an order, pursuant to Fed. R. Civ. P. 8, 9, and 12(b)(6) (as incorporated by Federal Rules of Bankruptcy Procedure 7008, 7009 and 7012), seeking a dismissal of the Amended Complaint, as more fully set forth in the Motion. A hearing will be held before the Honorable Allan L. Gropper, United States Bankruptcy Judge, in Room 617 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, at a date and time after July 20, 2010 to be determined.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, set forth the legal and factual basis therefor, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) the chambers of the Honorable Allan L. Gropper, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, attorneys for the Defendants, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard A. Rothman, Esq., Bruce S. Meyer, Esq., and Lori L. Pines, Esq.) and 700 Louisiana, Suite 1600, Houston, Texas, 77002 (Attn: Melanie Gray, Esq., Lydia Protopapas, Esq., and Jason W. Billeck, Esq.); (iii) Bingham McCutchen LLP, attorneys for the Defendants, 355 South Grand Avenue, Suite 4400, Los Angles, California 90071 (Attn: James J. Dragna, Esq.), and 2020 K Street, NW,

Washington, DC 20006 (Attn: Duke K. McCall III, Esq.); (iv) Pillsbury Winthrop Shaw Pittman

LLP, attorneys for the Official Committee of Equity Holders of Tronox Inc., 1540 Broadway,

New York, New York 10036 (Attn: David A. Crichlow, Esq.); (v) Kasowitz, Benson, Torres &

Friedman LLP, attorneys for the Official Committee of Unsecured Creditors, 1633 Broadway,

New York, New York 10019 (Attn: David M. Friedman, Esq.); (vi) the United States Attorneys

Office, 86 Chambers Street, New York, New York 10007 (Attn: Joseph Pantoja, Esq.); and, (vii)

the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York

10004 (Attn: Susan D. Golden), so as to be filed and received no later than June 29, 2010

(Prevailing Eastern Time) (the "Objection Deadline").

   If no objections are timely filed and served with respect to the Motion, the

Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an

order dismissing the Complaint, which order may be entered with no further notice or

opportunity to be heard or offered to any party.

| | |
|---|---|
| Houston, Texas | _/s/ Lydia Protopapas_ |
| Dated: May 26, 2010 | Melanie Gray (*admitted pro hac vice*) |
| | Lydia Protopapas (LP 8089) |
| Richard A. Rothman (RR 0507) | Jason W. Billeck (*admitted pro hac vice*) |
| Bruce S. Meyer (BM 3506) | WEIL, GOTSHAL & MANGES LLP |
| Lori L. Pines (LP 3005) | 700 Louisiana, Suite 1600 |
| WEIL, GOTSHAL & MANGES LLP | Houston, Texas  77002 |
| 767 Fifth Avenue | Telephone:  (713) 546-5000 |
| New York, New York 10153 | Facsimile:  (713) 224-9511 |
| Telephone:  (212) 310-8000 | |
| Facsimile:  (212) 310-8007 | |
| | |
| Duke K. McCall, III (*admitted pro hac vice*) | James J. Dragna (*admitted pro hac vice*) |
| BINGHAM MCCUTCHEN LLP | BINGHAM MCCUTCHEN LLP |
| 2020 K Street, NW | 355 South Grand Avenue, Suite 4400 |
| Washington, DC 20006 | Los Angeles, California  90071 |
| Telephone:  (202) 373-6000 | Telephone:  (213) 680-6400 |
| Facsimile: (202) 373-6001 | Facsimile:  (213) 680-6499 |
| | |
| | *Counsel to Anadarko Petroleum Corporation* |
| | *and Kerr-McGee Corporation* |

Melanie Gray *(admitted pro hac vice)*
Lydia Protopapas (LP 8089)
Jason W. Billeck *(admitted pro hac vice)*
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile: (713) 224-9511

James J. Dragna *(admitted pro hac vice)*
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071
Telephone:  (213) 680-6400
Facsimile: (213) 680-6499

Richard A. Rothman (RR 0507)
Bruce S. Meyer (BM 3506)
Lori L. Pines (LP 3005)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile: (212) 310-8007

Duke K. McCall, III *(admitted pro hac vice)*
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Telephone:  (202) 373-6000
Facsimile: (202) 373-6001

*Counsel to Anadarko Petroleum Corporation and Kerr-McGee Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, *et al.*, | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. Pro. No. 09-1198 |
| | ) | |
| ANADARKO PETROLEUM CORPORATION and KERR-McGEE CORPORATION, | ) ) | |
| | ) | |
| Defendants. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | |
| ANADARKO PETROLEUM CORPORATION and KERR-McGEE CORPORATION, | ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS COUNTS IV, V, AND VI OF THE AMENDED ADVERSARY COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 4

    A.    Procedural History ............................................................................................... 4

    B.    Plaintiffs' Recycled Allegations ......................................................................... 5

    C.    New Allegations In The Amended Complaint...................................................... 6

ARGUMENT ............................................................................................................................ 8

I.    COUNTS IV-VI OF THE AMENDED COMPLAINT ARE ALL TIME-
BARRED .................................................................................................................... 8

    A.    Each Of The Amended Claims Is Barred By Oklahoma's Three-Year
Statute Of Limitations........................................................................................ 8

        1.    Counts IV, V, And VI Are All Related To An Alleged Breach Of
Fiduciary Duty And Thus Are Subject To The Three-Year Statute
Of Limitations ......................................................................................... 8

        2.    All Alleged Injuries Took Place At The Time Of The IPO, More
Than Three Years Before The Petition Date............................................ 9

    B.    There Is No Basis For Tolling The Statute Of Limitations Governing The
Amended Claims............................................................................................... 13

        1.    Plaintiffs Cannot Invoke Oklahoma's Narrow Adverse Domination
Exception To The Statute Of Limitations.............................................. 14

        2.    Plaintiffs Have Again Failed To Adequately Allege Fraudulent
Concealment .......................................................................................... 17

II.    EVEN IF NOT TIME-BARRED, PLAINTIFFS' BREACH OF FIDUCIARY
DUTY CLAIM MUST BE DISMISSED (COUNT IV).................................................... 20

    A.    No Plaintiff Was Owed A Fiduciary Duty As A Minority Shareholder.............. 21

    B.    Plaintiffs Have Not Adequately Pled That Kerr-McGee Breached A
Fiduciary Duty It Owed As A Parent Of An Insolvent Company ...................... 21

    C.    Plaintiffs Have Not Adequately Asserted Breach Of Fiduciary Duty As A
Promoter........................................................................................................... 22

III.    EVEN IF NOT TIME-BARRED, PLAINTIFFS' CIVIL CONSPIRACY CLAIM
MUST BE DISMISSED (COUNT V) ...................................................................... 24

    A.    The Civil Conspiracy Claim Fails To Adequately Plead An Agreement ........... 24

    B.    Anadarko Cannot Be Liable For Conspiracy To Breach A Fiduciary Duty
Because It Owed No Fiduciary Duties To Tronox Or Tronox's Creditors.......... 28

## TABLE OF CONTENTS
### (continued)

**Page**

IV.    EVEN IF NOT TIME-BARRED, PLAINTIFFS' AIDING AND ABETTING A
BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED (COUNT
VI) ........................................................................................................................... 28

CONCLUSION ...................................................................................................................... 33

# TABLE OF AUTHORITIES

## CASES

Page(s)

ASARCO LLC v. Americas Mining Corp., 396 B.R. 278 (S.D. Tex. 2008) .............21, 22

In re AXIS Capital Holdings Ltd. Sec. Litigation, 456 F. Supp. 2d 576 (S.D.N.Y. 2006) ...................................................................................................................24

Allen v. Ramsey, 41 P.2d 658 (Okla. 1935) ......................................................................24

Anadarko Petroleum Corp. v. Panhandle E. Corp., 545 A.2d 1171 (Del. 1988)..............21

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)...................................................................26, 27

Askanase v. Fatjo, 130 F.3d 657 (5th Cir. 1997).............................................................14

Aviall, Inc. v. Ryder System, Inc., 913 F. Supp. 826 (S.D.N.Y. 1996)...........................22

Bailes v. Colonial Press, Inc., 444 F.2d 1241 (5th Cir. 1971) .........................................22

Balta v. Ayco Co., 626 F. Supp. 2d 347 (W.D.N.Y. 2009) ..........................................9, 20

Bell Atlantic Corp. v. Twombly, 550 U.S. 555 (2007)........................................25, 26, 27

Billard v. Rockwell International Corp., 693 F.2d 51 (2d Cir. 1982)...............................19

Bragger v. Budacz, 1994 WL 698609 (Del. Ch. Dec. 7, 1994).......................................23

Briarpatch Ltd. v. Geisler Roberdeau, Inc., 2007 WL 1040809 (S.D.N.Y. Apr. 4, 2007) ..............................................................................................................28

Brock v. Thompson, 948 P.2d 279 (Okla. 1997).............................................................27

Chapman v. Chase Manhattan Mortgage Corp., 2007 WL 2815246 (N.D. Okla. Sept. 24, 2007) ...............................................................................................29

Chickasaw Telegraph Co. v. S.W. Bell Mobile System, Inc., 1997 WL 290951 (10th Cir. May 27, 1997) ...........................................................................10, 11, 12

Cooper v. Bondoni, 841 P.2d 608 (Okla. Civ. App. 1992)..............................................29

Dill v. Rader, 583 P.2d 496 (Okla. 1978) ......................................................................26

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

Energy Fluids, Inc. v. Cimarex Energy Co., 2008 WL 2404226 (W.D. Okla. Jun.
10, 2008) ....................................................................................................29

FDIC v. Smith, 980 P.2d 141 (Or. 1999) ..........................................................15

Fitzgerald v. Seamans, 553 F.2d 220 (D.C. Cir. 1977)......................................12

In re General Motors (Hughes) Shareholder Litigation, 2005 WL 1089021 (Del.
Ch. May 4, 2005), aff'd, 897 A.2d 162 (Del. 2006) .............................................30, 31

Halo Tech Holdings, Inc. v. Cooper, 2008 WL 877156
(D. Conn. Mar. 26, 2008)..................................................................30, 31, 32

Hinds County v. Wachovia Bank N.A., 620 F. Supp. 2d 499 (S.D.N.Y. 2009)..........18, 19

Hughes v. LaSalle Bank, N.A., 419 F. Supp. 2d 605 (S.D.N.Y. 2006), vacated on
other grounds, 2007 WL 4103680 (2d Cir. Nov. 19, 2007) ..................................11, 12

In re I.E. Liquidation, 2009 WL 2707223 (Bankr. N.D. Ohio Aug. 25, 2009) .................26

Jones v. Capital Cities/ABC, Inc., 168 F.R.D. 477 (S.D.N.Y. 1996) ...............................27

Jose Armando Bermudez & Co. v. Bermudez International, Inc., 2001 WL
1382582 (S.D.N.Y. Nov. 6, 2001) .................................................................19

Keel v. Hainline, 331 P.2d 397 (Okla. 1958).....................................................29

In re M. Fabrikant & Sons, Inc., 394 B.R. 721 (Bankr. S.D.N.Y. 2008)...........................6

Maersk, Inc. v. Neewra, Inc., 554 F. Supp. 2d 424 (S.D.N.Y. 2008)...............................27

In re Magnesium Corp. of America, 399 B.R. 722 (Bankr. S.D.N.Y. 2009) ....................29

Malpiede v. Townson, 780 A.2d 1075 (Del. 2001) ...........................................30

Medtech Products Inc. v. Ranir, LLC, 596 F. Supp. 2d 778 (S.D.N.Y. 2008)............26, 27

In re Merrill Lynch Ltd. Partnerships Litigation, 154 F.3d 56 (2d Cir. 1998) ......12, 17, 18

Meyer v. Town of Buffalo, 2007 WL 2436302 (W.D. Okla. Aug. 22, 2007)....................9

Montgomery v. Aetna Plywood, Inc., 231 F.3d 399 (7th Cir. 2000)...............................23

National Group for Commc'ns and Computers Ltd. v. Lucent Techs. Inc., 420 F.
Supp. 2d 253 (S.D.N.Y. 2006).....................................................................17

# TABLE OF AUTHORITIES
## (continued)

N. America Catholic Education Programming Foundation, Inc. v. Gheewalla, 930
A.2d 92 (Del. 2007) ....................................................................................................22

In re NYMEX Shareholder Litigation, 2009 WL 3206051 (Del. Ch. Sept. 30,
2009) .........................................................................................................................30

Official Committee of Unsecured Creditors v. Donaldson, Lufkin & Jenerette
Sec. Corp., 2002 WL. 362794 (S.D.N.Y. Mar. 6, 2002) ............................................28

Paxton v. Hyer, 87 P.2d 938 (Okla. 1939).................................................................20, 24

Peck v. Gen. Motors Corp., 894 F.2d 844 (6th Cir. 1990) ...............................................10

Peterson v. Grisham, 2008 WL 4363653 (E.D. Okla. Sept. 17, 2008).......................26, 28

Peterson v. Grisham, 594 F.3d 723 (10th Cir. 2010)................................................26, 28

Resolution Trust Corp. v. Acton, 49 F.3d 1086 (5th Cir. 1995).......................................14

Resolution Trust Corp. v. Bright, 872 F. Supp. 1551 (N.D. Tex. 1995) ..............14, 16, 17

Resolution Trust Corp. v. Grant, 901 P.2d 807 (Okla. 1995) .....................9, 14, 15, 16, 17

Resolution Trust Corp. v. Greer, 911 P.2d 257 (Okla. 1995) ....................................14, 20

Roberson v. Paine Webber Inc., 998 P.2d 193 (Okla. Civ. App. 1999) ...........................24

Robles v. Copstat Sec., Inc., 2009 WL 1867948 (S.D.N.Y. June 29, 2009) .....................6

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007)..................................................................6

Saito v. McCall, 2004 WL 3029876 (Del. Ch. Aug. 18, 2004) ........................................30

Shadid v. Monsour, 746 P.2d 685 (Okla. Civ. App. 1987)...............................................25

In re Sharp International Corp., 403 F.3d 43 (2d Cir. 2005) .....................................31, 32

Shovanec v. Archdiocese of Oklahoma City, 188 P.3d 158 (Okla. 2008) ........................29

Sieppel v. Jenkens & Gilchrist, PC, 341 F. Supp. 2d 363 (S.D.N.Y. 2004).....................24

Simon-Whelan v. Andy Warhol Foundation for the Visual Arts, 2009 WL
1457177 (S.D.N.Y. May 26, 2009)...............................................................17, 18, 19

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Simons v. Cogan, 549 A.2d 300 (Del. 1988)...................................................................24

Sourceone Healthcare Techs., Inc. v. Bensonhurst Imaging Associates
    Management, Inc., 2008 WL 2697324 (E.D.N.Y. Jul. 2, 2008).................................27

State v. Niagara Mohawk Power Corp., 263 F. Supp. 2d 650 (W.D.N.Y. 2003)..............10

Trenwick America Litigation Trust v. Ernst & Young, L.L.P., 906 A.2d 168 (Del.
    Ch. 2006), aff'd, 931 A.2d 438 (Del. 2007) .....................................................21, 22, 24

In re Tronox, Inc., --- B.R. ---, 2010 WL 1253157 (Bankr. S.D.N.Y. Mar. 31,
    2010) ................................................................................................................. *passim*

Van Dorsten v. Provident Life and Accident Insurance Co., 554 F. Supp. 2d 285
    (D. Conn. 2008) ....................................................................................................27

Varner v. Peterson Farms, 371 F.3d 1011 (8th Cir. 2004)...................................10, 11, 12

In re Verestar, Inc., 343 B.R. 444 (Bankr. S.D.N.Y. 2006)................................................32

Ward v. Caulk, 650 F.2d 1144 (9th Cir. 1981)...................................................................12

Westlake Vinyls, Inc. v. Goodrich Corp., 518 F. Supp. 2d 918 (W.D. Ky. 2007)............22

Wilson v. Paine, 288 S.W.3d 284 (Ky. 2009)....................................................................15

## STATUTES & RULES

Okla. Stat. tit. 12, § 95(A)(2).............................................................................................9

Okla. Stat. tit. 12, § 95(A)(3).........................................................................................9, 15

Fed. R. Civ. P. 8(a)     ........................................................................................ *passim*

Fed. R. Civ. P. 9(b)     ........................................................................................ *passim*

Fed. R. Civ. P. 11(b)     ........................................................................................27

Fed. R. Civ. P. 12(b)(6)   ........................................................................................1, 8, 28

Fed. R. Bankr. P. 7008.......................................................................................................1

Fed. R. Bankr. P. 7009.......................................................................................................1

Fed. R. Bankr. P. 7012.......................................................................................................1

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**MISCELLANEOUS**

Restatement (Second) of Torts § 874, cmt c (1982) ...........................................................29

Restatement (Second) of Torts § 876 (1982) ....................................................................29

Anadarko Petroleum Corporation ("Anadarko") and Kerr-McGee Corporation (a wholly-owned subsidiary of Anadarko ("Kerr-McGee,") (collectively, "Defendants") file this motion to dismiss (the "Motion") pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), and Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking dismissal of Counts IV (Breach of Fiduciary Duty), V (Civil Conspiracy) and VI (Aiding and Abetting Breach of Fiduciary Duty), of the Amended Adversary Complaint filed on April 28, 2010 (the "Amended Complaint" or "Am. Compl."), by plaintiffs Tronox Incorporated ("Tronox Inc."), Tronox Worldwide LLC f/k/a Kerr-McGee Chemical Worldwide LLC ("Tronox Worldwide"), and Tronox LLC f/k/a Kerr-McGee Chemical LLC ("Tronox LLC") (collectively, "Plaintiffs").[1]

## PRELIMINARY STATEMENT

In its decision on Defendants' first motion to dismiss, this Court dismissed Plaintiffs' claims for breach of fiduciary duty, aiding and abetting a fraudulent conveyance, and civil conspiracy because they were untimely and/or failed to state a claim, but gave Plaintiffs leave to re-plead these three claims.[2]  Now, despite the Court's ruling clearly setting forth the deficiencies in Plaintiffs' allegations and a substantially completed document production – with millions of pages of documents having been produced since the onset of this action – Plaintiffs are still unable to adequately plead these claims, which have merely been repackaged as causes of action

---

[1]    Defendant Kerr-McGee Corporation is defined as and referred to throughout this Motion as "Kerr-McGee." The entity known as Kerr-McGee Corporation prior to August 1, 2001, is sometimes referred to as "Old Kerr-McGee," to distinguish it from "Kerr-McGee," the Defendant and an entity that Anadarko acquired on August 10, 2006.  Kerr-McGee was not formed until May 2001.  Tronox Worldwide is the successor by merger to Old Kerr-McGee.

[2]    See In re Tronox, Inc., --- B.R. ---, 2010 WL 1253157, at *31 (Bankr. S.D.N.Y. Mar. 31, 2010).  The Court's March 31, 2010 Memorandum Opinion will be referred to as the "Opinion," and its April 27, 2010 Order Denying In Part and Granting In Part Defendants' Motion To Dismiss Plaintiffs' Adversary Complaint (Dkt. No. 125) will be referred to as the "Order."  Plaintiffs' May 12, 2009 Adversary Complaint will be referred to as the "Initial Complaint".

for breach of fiduciary duty, civil conspiracy to breach a fiduciary duty, and aiding and abetting a breach of fiduciary duty (collectively, the "Amended Claims").  The Amended Complaint contains no new factual allegations to enable Plaintiffs to overcome the bar of the statute of limitations or to cure the deficiencies previously identified by the Court.  Consequently, each of the Amended Claims should once again be dismissed – this time with prejudice.

The three Amended Claims are each based on an alleged breach of fiduciary duty.  As this Court recognized in the Opinion, absent equitable tolling or fraudulent concealment, the statute of limitations for these claims is at most three years.  Here, each of the allegations related to the Amended Claims occurred in connection with the November 28, 2005 IPO of Tronox Class A common stock, more than three years before Tronox's bankruptcy filing.  Indeed, despite being specifically advised by the Court that the breach of fiduciary duty claim would have to be amended to bring it within the limitations period, Plaintiffs have not identified any acts occurring within that period.  Instead, Plaintiffs allege only that Kerr-McGee approved of and "failed to stop" the distribution of Tronox's Class B shares to Kerr-McGee's shareholders – actions that flowed directly from the IPO and relate back to the date of the IPO at the latest. These actions clearly did not constitute new and separate breaches of Kerr-McGee's fiduciary duties.   More importantly, any alleged injury to Plaintiffs due to the alleged breaches of fiduciary duty was incurred at the time of the IPO, not when Kerr-McGee elected to dividend its shares of Tronox Class B stock to its own shareholders – which did not, and could not, have injured Tronox.  These actions are not only stale, Plaintiffs' new attempt to salvage their claims is belied and precluded by their own contradictory allegations that the Spin-Off of Tronox was approved in October 2005.  Am. Compl. ¶¶ 88, 111-13.

Plaintiffs cannot avoid the bar of the statute of limitations by invoking the doctrines of adverse domination or fraudulent concealment.  Adverse domination cannot save the Amended Claims because Plaintiffs have not pled, nor can they, that Kerr-McGee's officers constituted a controlling majority of Tronox's board of directors – a prerequisite to invocation of the adverse domination exception.  Further, Oklahoma's adverse domination doctrine is construed very narrowly and applies only to situations involving fraudulent conduct.  To the extent that Plaintiffs continue to rely on the adverse domination exception, the only way that exception could apply here is if Plaintiffs' breach of fiduciary duty claims were fraud claims.  And, in that event, Oklahoma's two-year, rather than three-year, statute of limitation would apply to bar the Amended Claims.

Plaintiffs also fail in their second attempt to properly plead the elements of fraudulent concealment as required by Federal Rule 9(b).  Plaintiffs have not pled a single fact regarding their alleged due diligence (presumably because none was conducted) to uncover the purportedly wrongful conduct that was allegedly concealed, or their actions taken to obtain redress – despite this Court's specific admonition that their common law claims could not be tolled under this doctrine unless they did so.[3]

Even if the Court were to find that the statute of limitations does not bar the Amended Claims, they should be dismissed nonetheless for failure to state a claim.  Plaintiffs' "Breach of Fiduciary Duty" claim should be dismissed because (i) no minority shareholder is a plaintiff in the case (see infra Section II.A); (ii) Kerr-McGee owed no duty to Tronox or its creditors at the time of the IPO, regardless of Tronox's financial condition (see infra Section II.B); and (iii)

---

[3]    Tronox, Inc., 2010 WL 1253157, at *28.

Plaintiffs again have failed to adequately plead any breach of duty by Kerr-McGee as a promoter of Tronox (see infra Section II.C).

Similarly, Plaintiffs' "Civil Conspiracy" claim, alleging a conspiracy by Kerr-McGee and Anadarko to "breach fiduciary duties," should be dismissed because Plaintiffs fail to adequately plead an essential legal element of a conspiracy – that Defendants had an agreement to do an unlawful act. Instead, Plaintiffs inappropriately rely on rank speculation, which is insufficient to withstand a motion to dismiss, to allege the requisite agreement between Kerr-McGee and Anadarko. Plaintiffs' conspiracy claim also fails against Anadarko since Anadarko owed no fiduciary duty to Tronox.

Finally, Plaintiffs' "Aiding and Abetting Breach of Fiduciary Duty" claim should be dismissed because that cause of action has not been expressly recognized under Oklahoma law, and more importantly, because Plaintiffs fail to plead the required elements of an aiding and abetting a breach of fiduciary duty claim.

Plaintiffs' attempt to adequately allege the Amended Claims was undertaken after they had the full benefit of Defendants' and third parties' voluminous document productions, and knew the concerns raised by the Court. Nevertheless, Plaintiffs have still failed to satisfy their burdens under Federal Rules 8(a) and 9(b). Accordingly, the Amended Claims should be dismissed with prejudice.

## **BACKGROUND**

### A.    **Procedural History**

In their Initial Complaint, Plaintiffs asserted eleven claims for relief, including civil conspiracy to effectuate a fraudulent conveyance, aiding and abetting a fraudulent conveyance, and breach of fiduciary duty as a promoter. Defendants moved to dismiss the Initial Complaint in its entirety. Dkt. No. 45. The Court granted Defendants' motion, in part, dismissing eight of

the eleven claims and Plaintiffs' claims for punitive damages.  Plaintiffs' unjust enrichment

claim was dismissed with prejudice, while Plaintiffs' three other common law claims for breach

of fiduciary duty, aiding and abetting, and conspiracy were dismissed without prejudice.[4]

In allowing Plaintiffs to replead these claims, the Court opined that claims arising outside

Oklahoma's three-year statute of limitations period could survive only if Plaintiffs successfully

invoked the tolling doctrines of adverse domination or fraudulent concealment.  Tronox, Inc.,

2010 WL 1253157, at *27.  The Court found the adverse domination doctrine applicable to

circumstances in which a company seeks to sue a controlling shareholder, rather than merely its

officers and directors, and to circumstances potentially involving the breach of a duty of loyalty.

Id.  But, the Court recognized that "Plaintiffs . . . have not adequately pled the elements of

fraudulent concealment, particularly their due diligence in uncovering the wrongful conduct and

taking action to obtain redress, and they have not clearly specified the breach of duty."  Id. at

*28.

        B.      Plaintiffs' Recycled Allegations

The Amended Complaint repeats the vast majority of the allegations in the Initial

Complaint.  It again alleges that on October 6, 2005, the Kerr-McGee Board of Directors

approved the separation of its Chemical Business pursuant to a Spin-Off, by which Kerr-McGee

would sell a minority stake in the Chemical Business through the IPO, and then distribute the

remaining Class B common stock to its own stockholders approximately four months later (the

"Distribution").  Am. Compl. ¶ 88.  To "effectuate the Spin-Off," Kerr-McGee and Tronox

entered into a number of agreements (collectively, the "Separation Agreements"), including an

---

[4]     Plaintiffs did not replead their claims for equitable subordination or disallowance, which were dismissed
        without prejudice to renewal if Defendants file proofs of claim.  Tronox, Inc., 2010 WL 1253157, at *31.  On
        May 19, 2010, Defendants served an Answer to the Amended Complaint with respect to the three causes of
        action for fraudulent transfer that were not dismissed in the Order.

Employee Benefits Agreement (the "EBA") – all of which were executed on November 28, 2005, the same day as the IPO – in which Tronox assumed liability for certain employee benefits and agreed to sponsor various employee benefit plans.  Am. Compl. ¶¶ 111-14.[5]

### C.    New Allegations In The Amended Complaint

The Amended Complaint makes only a handful of new fact allegations.  Specifically, Plaintiffs now allege:

- While Kerr-McGee commenced Project Focus, Anadarko was conducting its own analysis as to how it might acquire Kerr-McGee and then "shed" the Legacy Liabilities. In January 2002, Anadarko's "due diligence team" allegedly concluded that the Legacy Liabilities were a "deal killer" to any acquisition of Kerr-McGee.   Am. Compl.  ¶¶ 46-50.

- Anadarko found that Kerr-McGee's environmental reserves were sufficient to fund only two years of remediation at current levels, and that Anadarko used a different standard for taking environmental reserves than Kerr-McGee did.  Am. Compl.  ¶¶ 48.

- On "information and belief," Anadarko informed Kerr-McGee "it would be interested in acquiring its valuable assets" if Kerr-McGee "separated them from the Legacy Liabilities."  Am. Compl.  ¶¶ 128-29.

- A "fundamental" premise underlying Kerr-McGee's projections for the Spin-Off was that Tronox would obtain $150 million in proceeds from land sales in Henderson, Nevada, but this was untenable, because the scheduled sales had not closed at the time of the Distribution, and that Kerr-McGee supposedly knew when it distributed the Class B shares that Tronox would struggle to survive as a standalone entity without the land sales. Despite this knowledge, Kerr-McGee "failed to stop the Spin-Off" even though it was clear the land sales would not go through.   Am. Compl.  ¶¶ 115, 166.

- Nonetheless, at a March 8, 2006 meeting, Kerr-McGee's board of directors approved the distribution of Tronox's Class B Common Stock to Kerr-McGee's shareholders and the

---

[5]    In evaluating this motion to dismiss, the Court may consider any statements or documents "if they are either 'attached to the complaint or incorporated in it by reference.'"  Tronox Inc., 2010 WL 1253157, at * 16 (citing Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); see also In re M. Fabrikant & Sons, Inc., 394 B.R. 721, 731 (Bankr. S.D.N.Y. 2008); Robles v. Copstat Sec., Inc., 2009 WL 1867948, at *2 (S.D.N.Y. June 29, 2009). Accordingly, the Court may consider the Master Separation Agreement, Tax Sharing Agreement, and EBA, which are each incorporated in the Amended Complaint by reference (see, e.g., Am. Compl. ¶ 111), as well as the Tronox Form S-l Registration Statement ("Registration Statement"), dated November 21, 2005, which is likewise expressly referenced in the Amended Complaint (see e.g., Am. Compl. ¶¶ 100, 104-05, 108), cited herein.

transfer of defined benefit and retiree liabilities from Kerr-McGee to Tronox.    Am. Compl. ¶¶ 116, 166.

- By late 2006, Anadarko allegedly concluded that unless Tronox negotiated a resolution with the United States regarding the asserted environmental liabilities at Manville, those liabilities could "place a significant financial strain on Tronox", and "[i]f Tronox goes under Anadarko gets all the remediation sites back." Am. Compl. ¶¶ 50, 182-83.

While Defendants deny these allegations, even if assumed to be true, they are insufficient to avoid dismissal of the Amended Claims.

Unlike the foregoing allegations – which do at least purport to allege facts giving rise to actionable claims – Plaintiffs' adverse domination and fraudulent concealment allegations do not even attempt to allege actionable facts, but are instead completely conclusory:

- Kerr-McGee "adversely dominated Tronox until April 1, 2006" because "Kerr-McGee executives served as Directors of Tronox and New Kerr-McGee owned the majority of Tronox through March 31, 2006." Am. Compl. ¶¶ 176, 190, 196.

- "Tronox did not discover, and could not have discovered through reasonable diligence, the facts of New Kerr-McGee's breaches" until dates within the limitations period, because of New Kerr-McGee's "fraudulent concealment" and its "consistently conceal[ing] the true nature of its plan . . . ." Am. Compl. ¶¶ 177, 189, 195.

As with the Initial Complaint, Plaintiffs' factual allegations concerning Anadarko demonstrate only that Anadarko engaged in the legitimate arms-length acquisition of Kerr-McGee in August 2006.  See Am. Compl. ¶¶ 46-50, 180-195; see also Tronox Inc., 2010 WL 1253157, at *29 (finding that Plaintiffs' allegation that New Kerr-McGee and Anadarko may have commenced negotiations before the Distribution in 2006 was mere "speculation").  The only new factual allegations in the Amended Complaint of any purported wrongdoing by Anadarko, all of which are pled solely on "information and belief," are:

- No later than January 2002, Anadarko analyzed potential transactions "to separate the Chemical Business and Legacy Liabilities if Anadarko acquired them along with New Kerr-McGee's prized oil and gas assets";

- Anadarko's "due diligence team" confirmed in 2002 that the Legacy Liabilities were a "deal killer" to any acquisition of Kerr-McGee at that time;

- By early February 2002, Anadarko decided that it would not proceed with an acquisition of Kerr-McGee due to the Legacy Liabilities;

- Anadarko's CEO contacted Kerr-McGee's CEO "before the New Kerr-McGee Board met on March 8, 2006 to approve the completion of the Spin-Off" and Anadarko offered to acquire New Kerr-McGee in June 2006.

Am. Compl. ¶¶ 46-50, 180-185.  None of these allegations in any way suggest any wrongdoing

by Anadarko.  All they allege is that Anadarko evaluated and decided against the idea of

acquiring Kerr-McGee in 2002 and again looked at Kerr-McGee in 2006 – but this time

Anadarko decided to proceed.  Am. Compl. ¶¶ 50, 182-88, 193-94.

## ARGUMENT[6]

## I.    COUNTS IV-VI OF THE AMENDED COMPLAINT ARE ALL TIME-BARRED

### A.    Each Of The Amended Claims Is Barred By Oklahoma's Three-Year Statute Of Limitations

1.    *Counts IV, V, And VI Are All Related To An Alleged Breach Of Fiduciary Duty And Thus Are Subject To The Three-Year Statute Of Limitations*

In the Opinion, this Court applied a three-year statute of limitations to Plaintiffs' breach

of fiduciary duty claim.  Tronox, Inc., 2010 WL 1253157, at *26.[7]  Plaintiffs' claims for aiding

---

[6]    For the standard of review applicable to this motion, Defendants respectfully refer the Court to the Opinion. See Tronox, Inc., 2010 WL 1253157, at *8-11 (holding that a complaint fails to satisfy Federal Rule 8(a) and warrants dismissal under Federal Rule 12(b)(6) when it does not contain sufficient factual allegations to "state a claim to relief that is plausible on its face," and once non-conclusory factual allegations have been identified and discounted, "the court must determine if these well-pleaded factual allegations 'plausibly suggest an entitlement to relief'. . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully.") (citations omitted).

[7]    In support of their Motion to Dismiss the Initial Complaint, Defendants argued that a two-year limitations period applied to Plaintiffs' breach of fiduciary duty claims. Mot. at 50-51.  The Court, however, applied a three-year period because it held that there was doubt between whether a two or three-year limitations period applied.  Tronox, Inc., 2010 WL 1253157, at *26.  Defendants continue to believe that the applicable limitations period is two years, to the extent that Plaintiffs continue to invoke the adverse domination doctrine for their breach of fiduciary duty claim.  As set forth more fully below, Plaintiffs are attempting to apply the doctrine of adverse domination as an exception to the statute of limitations (see, e.g., Am. Compl. ¶ 175-76) and under a unanimous decision by the Oklahoma Supreme Court upon certification of this very issue, that "very narrow" doctrine has been limited to situations involving fraudulent conduct.  See infra Section I.B

and abetting and conspiracy to commit that alleged breach would be subject to the same statute.

See Okla. Stat. tit. 12, § 95(A)(2); see also Meyer v. Town of Buffalo, 2007 WL 2436302, at *5-

6 (W.D. Okla. Aug. 22, 2007) (holding that the statute of limitations for a claim of conspiracy is

the same as the statute of limitations for the underlying tort); Balta v. Ayco Co., 626 F. Supp. 2d

347, 359 (W.D.N.Y. 2009) ("The statute of limitations for a claim of aiding and abetting a

breach of fiduciary duty is the same limitations period that would apply to the underlying

breach."). Thus, if the alleged breaches of fiduciary duty giving rise to these claims arose more

than three years before January 12, 2009, the date of Plaintiffs' chapter 11 filing, they are time-

barred. Am. Compl. ¶ 10. As detailed below, each alleged breach asserted in the Amended

Complaint occurred in connection with or as a result of the IPO, which took place on November

28, 2005. See Am. Compl. ¶¶ 163-78. Accordingly, the Amended Claims are time-barred.

> 2.    *All Alleged Injuries Took Place At The Time Of The IPO, More Than Three Years Before The Petition Date*

Plaintiffs fail to adequately plead a breach of duty that occurred after the IPO and within

the limitations period. Specifically, the only new post-IPO allegations contained in the Amended

Complaint in support of the breach of duty claims consist of Kerr-McGee's March 8, 2006

approval of – and then "failure to stop" – the Distribution and the transfer of benefit and retiree-

related liabilities on March 31, 2006. See Am. Compl. ¶¶ 115-16, 166, 168. However, as the

Amended Complaint itself confirms, these actions were not the source of Plaintiffs' alleged

injury; they unequivocally relate back to the November 28, 2005 IPO; and they do not constitute

a separate breach for purposes of the statute of limitations.

---

(citing Resolution Trust Corp. v. Grant, 901 P.2d 801, 816-16 (Okla. 1995)). Thus, the doctrine of adverse domination could apply to Plaintiffs' breach of duty only if they are based on alleged fraudulent conduct, in which case Oklahoma's two-year limitation for actions grounded in fraud should also apply. Okla. Stat. tit. 12, § 95(A)(3). Regardless, however, of whether a two year or three year limitations period applies to the Amended Claims, all three claims should be dismissed as time-barred.

Absent allegations showing a new and independent overt act of breach by Kerr-McGee during the limitations period, i.e., after January 12, 2006, Plaintiffs' Amended Claims are time-barred. See Chickasaw Tel. Co. v. S.W. Bell Mobile Sys., Inc., 1997 WL 290951, at *3-6 (10th Cir. May 27, 1997) (granting summary judgment on breach of contract and tortious breach of fiduciary duty claims on statute of limitations grounds because alleged injuries flowed from initial breaches and not continuing breaches); Varner v. Peterson Farms, 371 F.3d 1011, 1019 (8th Cir. 2004) (noting that "when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act") (quoting Peck v. Gen. Motors Corp., 894 F.2d 844, 849 (6th Cir. 1990)).[8]  Here, on the face of the Amended Complaint, there are no such new, independent acts alleged.  Rather, Plaintiffs rely exclusively on Kerr-McGee's transfer of certain employment benefit liabilities, as required under the EBA executed on November 28, 2005, and Kerr-McGee's approval of – and then failure to halt – the Distribution.  Am. Compl. ¶ 166.

In Varner, the plaintiff claimed that defendant's performance and enforcement during the limitations period of an allegedly illegal contract entered into outside the limitations period was an overt act that restarted the running of the statute of limitations.  371 F.3d at 1019-20.  The court rejected this argument, and held that in order for conduct to qualify as an overt act that restarts the running of the statute of limitations:

> (1) it must be a new and independent act that is not merely a reaffirmation of a previous act, and (2) it must inflict new and accumulating injury on the plaintiff. Acts that are merely "unabated inertial consequences" of a single act do not restart the statute of limitations.

---

[8]    See also State v. Niagara Mohawk Power Corp., 263 F. Supp. 2d 650, 660 (W.D.N.Y. 2003) ("Application of [the continuing violation] doctrine . . . requires that the continuing violation be occasioned by continual unlawful acts, not continual ill effects from a single violation.").

Id. (citation omitted).  In ruling that the statute of limitations barred the plaintiff's claims, the

Eighth Circuit held that "when a complaining party was fully aware of the terms of an agreement

when it entered into the agreement, an injury occurs only when the agreement is initially

imposed" and there is no tolling by the requirements placed on the parties under the agreement.

Id.; see also Hughes v. LaSalle Bank, N.A., 419 F. Supp. 2d 605, 612-14 (S.D.N.Y. 2006)

vacated on other grounds, 2007 WL 4103680 (2d Cir. Nov. 19, 2007) (rejecting plaintiff's

attempt to toll the limitations period on breach of fiduciary duty claim by alleging a series of

separate breaches based on continuing violations of securities laws, and noting courts in this

district have rejected the theory that "'each payment pursuant to a wrongful agreement gives rise

to a separate and distinct claim, [when] the theory was invoked . . . to overcome the bar of a

statute of limitations'") (citation omitted).

Kerr-McGee's performance of its obligations already fixed under the Separation

Agreements, including the EBA, did not restart the running of the statute of limitations on the

Amended Claims.  The EBA controlled the timing for transferring employee and retiree

liabilities and funds from Kerr-McGee to Tronox, but the obligation to effectuate such transfer

was incurred at the time of the IPO.[9]  To the extent that Tronox took on obligations under the

EBA and other Separation Agreements, and Kerr-McGee made the Distribution during the

limitations period, those obligations were assumed on November 28, 2005, and any acts in

furtherance of those obligations were simply the "unabated inertial consequences" of pre-

limitations actions.  See Varner, 371 F.3d at 1019-20; Chickasaw, 1997 WL 290951, at *4 ("Any

---

[9]    See Ex. A Employee Benefits Agreement, Sections 2.02 ("Participation in Kerr-McGee Employee Benefit
Plans"), 4.02 ("Assumption of Pension Plan Liabilities"), and 4.03 ("Transfer of Assets"); see also Ex. B
Registration Statement at 5 ( "Prior to the completion of this offering, we will enter into agreements with
Kerr-McGee that, regardless of whether the Distribution occurs, will govern the separation of our businesses
and various interim and ongoing relationships, including agreements with respect to the provision of interim
services by Kerr-McGee to us.").  The Affidavit of Lydia Protopapas, Esq. ("Protopapas Aff.") is submitted
herewith.  All documents cited herein as "Ex. __" are attached to the Protopapas Aff.

injury allegedly suffered by [Plaintiff] after [the initial] breach constitutes damages flowing from the [initial] breach, not continuing breaches.").[10]

Moreover, any characterization of the Distribution as a separate act that is independently actionable is squarely contradicted and precluded by Plaintiffs' own allegations that the Kerr-McGee board approved the separation of the Chemical Business through a two-part Spin-Off – an IPO followed by a Distribution – *on October 6, 2005*.  Am. Compl. ¶ 88.  In fact, the Amended Complaint's overriding theory is that, starting *seven years* before the Spin-Off, Kerr-McGee devised a two-step fraudulent scheme which began with Project Focus and culminated in the IPO/Distribution, pursuant to which Kerr-McGee intended to achieve a "clean break" from the Legacy Liabilities.  Am. Compl. ¶¶ 4-8.  The Amended Complaint itself therefore makes clear that, while Kerr-McGee may not have been formally bound to complete the Distribution at the time of the IPO (see Ex. B Registration Statement at 109), the Distribution cannot be viewed as an event that was separate and independent from the IPO.

Nor did either the alleged March 8, 2006 approval of the transfer of employee and retiree liabilities or the Distribution constitute independent acts that inflicted a "new and accumulating injury" on Plaintiffs.  Varner, 371 F.3d at 1019-20; see also Chickasaw, 1997 WL 290951, at *3-6; Fitzgerald v. Seamans, 553 F.2d 220, 230 (D.C. Cir. 1977) (the "mere failure to right a wrong" cannot be a continuing wrong which tolls the statute of limitations).  Rather, any injury to Plaintiffs from the transfer of employment liabilities was incurred when such transfers were agreed to under the EBA.  All the Distribution did was to transfer Kerr-McGee's ownership of

---

[10]    See also In re Merrill Lynch Ltd. Partnerships Litig., 154 F.3d 56, 59 (2d Cir. 1998) (holding, in context of underlying RICO violations, where a complaint alleged a scheme that was fraudulent at the outset, later actions undertaken as part of the alleged scheme could not be viewed as separate and distinct acts resulting in new and independent injuries for statute of limitations purposes); Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation."); Hughes, 419 F. Supp. 2d at 612-14.

Tronox's Class B shares to Kerr-McGee's own shareholders. Am. Compl. ¶¶ 88, 117. The

transfer of ownership had no impact on the financial condition of Tronox, or its creditors or

minority shareholders. Indeed, Plaintiffs allege that Tronox was an insolvent company at the

time of the IPO, or that it became insolvent shortly after the allegedly fraudulent transfers and

obligations were effectuated through the Separation Agreements on November 28, 2005. Id. at

¶¶ 111-12, 122, 136, 149. Both before and after the Distribution, the company and its

shareholders owned the same bundle of assets and liabilities. Similarly, the Distribution had no

impact on Tronox's creditworthiness, so no new injury was incurred by Tronox's creditors.

Thus, even assuming the alleged "failure to stop" the Distribution were actionable as an

independent act (which it is not), it does not enable Plaintiffs to circumvent the statute of

limitations because the Distribution caused no new injury to the parties to whom Kerr-McGee

allegedly owed a duty.

Plaintiffs have clearly and affirmatively asserted that all of their injuries resulting from

their breach of fiduciary duty claims were incurred by the time of the IPO on November 28,

2005. Accordingly, their claims accrued no later than that date, and Plaintiffs' Amended Claims

are barred by the governing statute of limitations.

**B.      There Is No Basis For Tolling The Statute Of Limitations Governing The Amended Claims**

As this Court recognized, Plaintiffs must rely on an applicable tolling doctrine to

maintain causes of action accruing before January 12, 2006. See Tronox, Inc., 2010 WL

1253157, at *26 (holding that Plaintiffs may assert breach of fiduciary duty claims "only if their

further argument of tolling is accepted"). Plaintiffs attempt to invoke the doctrines of adverse

domination and fraudulent concealment to toll the statute of limitations, but fail to adequately

allege either.

1.      *Plaintiffs Cannot Invoke Oklahoma's Narrow Adverse Domination
Exception To The Statute Of Limitations*

As the Court is aware, the Oklahoma Supreme Court's decision in <u>Resolution Trust Corp.</u>

<u>v. Grant</u>, 901 P.2d 807 (Okla. 1995) governs the applicability of the adverse domination

exception under Oklahoma law.  In <u>Grant</u>, the Oklahoma Supreme Court issued its unanimous

decision in response to issues certified by the United States District Court for the Northern

District of Oklahoma, and unequivocally stressed throughout the Opinion that adverse

domination was a "very narrow" doctrine, to be applied only in "situations involving fraudulent

conduct."  <u>Id.</u> at 815-16 ("We find persuasive the reasoning of those courts which hold that to

extend the doctrine to cases involving conduct less culpable than fraud would be to eliminate the

statute of limitations in director-liability actions."); <u>see also</u> <u>id.</u> at 818, 819.[11]

Under this standard, the only way adverse domination could apply in this case would be

if the breach of duty claims to which Plaintiffs seek to apply the exception are construed as fraud

claims.  To the extent Plaintiffs continue to rely on the adverse domination exception,

Oklahoma's two-year statute of limitations governing actions for relief on the ground of fraud

should bar the Amended Claims.  Okla. Stat. tit. 12, § 95(A)(3); <u>Tronox, Inc.</u>, 2010 WL

---

[11]      In its Opinion, this Court found that if Plaintiffs asserted a breach of fiduciary duty claim based on a breach of
the duty of loyalty and such a breach was not grounded in common law fraud, then the doctrine of adverse
domination could apply under Oklahoma law.  <u>Tronox, Inc.</u>, 2010 WL 1253157, at *27.  But, courts have
expressly held that the conduct breaching a duty of loyalty amounts to constructive fraud – and that adverse
domination doctrine cannot be triggered by constructive fraud.  <u>See</u> <u>Resolution Trust Corp. v. Bright</u>, 872 F.
Supp. 1551, 1565-66 (N.D. Tex. 1995); <u>Askanase v. Fatjo</u>, 130 F.3d 657, 666-67 (5th Cir. 1997) (citing
<u>Resolution Trust Corp. v. Acton</u>, 49 F.3d 1086, 1090-91 (5th Cir. 1995) (holding that breach of fiduciary duty,
including breach of a duty of loyalty was not sufficient conduct to trigger adverse domination); <u>see also</u> <u>Grant</u>,
901 P.2d at 815 (relying on <u>Acton</u>, 49 F.3d at 1090 in holding that adverse domination doctrine was limited to
situations involving fraudulent conduct).  Defendants respectfully submit that this Court should follow the
guidance provided by these courts.

Further, in <u>Resolution Trust Corp. v. Greer</u>, 911 P.2d 257, 264 (Okla. 1995), the Oklahoma Supreme Court
limited the application of the doctrine to the corporation itself, declining to extend its applicability to the
corporation's creditors.  <u>See also</u> <u>Tronox, Inc.</u>, 2010 WL 1253157, at *n.20.  The adverse domination doctrine
therefore cannot be used to toll the statute of limitations as to Plaintiffs' claim that Kerr-McGee breached its
fiduciary duties to Tronox's creditors as the parent of an insolvent company.  Am. Compl. ¶ 167.

1253157, at *25.  The doctrine of adverse domination clearly would not save the Amended

Claims in that case, because it is undisputed that none of the alleged acts upon which the breach

of duty claims would have accrued later than April 1, 2006, more than two years before the

bankruptcy filing.

Even assuming the adverse domination doctrine could be applied to Plaintiffs' claims, the

allegations here are insufficiently pled.  At the heart of Plaintiffs' claim that Kerr-McGee

adversely dominated Tronox is the assertion that Kerr-McGee "exert[ed] control over Tronox"

through the two Kerr-McGee officers who also served as directors of Tronox.  See Am. Compl.

¶¶ 114, 176, 190, 196.  T Grant held, in response to the questions certified to the Oklahoma

Supreme Court, that the "disinterested majority" rule governs the adverse domination

allegations.  901 P.2d at 816.

As the Oklahoma Supreme Court explained:

> The rationale for the principle is that control of the board by wrongdoers
> precludes the possibility for filing suit, and that the controlling parties
> cannot be expected to sue themselves or to initiate an action contrary to
> their own interests. The doctrine applies to delay the accrual of a cause of
> action or to toll limitations involving claims by a corporate body against
> its directors for injuries to the corporation.

Id. at 811.  Under the "disinterested majority" test and the rationale set forth in Grant, the

plaintiff has "the initial burden to plead and prove facts that the board of directors was composed

of a majority of culpable directors."  Wilson v. Paine, 288 S.W.3d 284, 289 (Ky. 2009) (holding

that even though the existence of a majority of culpable directors creates a rebuttable

presumption that the corporation does not have notice of suit, plaintiff still has the initial burden

to plead that the board was in fact composed of such a majority); FDIC v. Smith, 980 P.2d 141,

148 (Or. 1999) (holding that plaintiff must plead "that the board was composed of a majority of

culpable directors, under the disinterested majority version of the adverse domination doctrine").

Here, the Amended Complaint alleges that after the IPO on November 28, 2005, Kerr-McGee exerted control through its majority ownership of Tronox and through the appointment of two Kerr-McGee officers to Tronox's Board of Directors.  See Am. Compl. ¶¶ 114, 176, 190, 196.  But, Plaintiffs never allege – nor can they – that Tronox's board consisted of a majority of supposedly culpable directors.  Indeed, as set forth in the plain language of the Registration Statement, only two of the six board members were Kerr-McGee officers and the other four were either Tronox officers or independent directors.  Ex. B Registration Statement at 93-95 (listing the six Tronox board of directors, consisting of two Tronox officers, two Kerr-McGee officers, and two unaffiliated directors).[12]  Thus, because Tronox's board did not consist of a majority of purportedly culpable directors, Plaintiffs cannot rely on the adverse domination doctrine to toll the statute of limitations.  See Bright, 872 F. Supp. at 1565 (rejecting argument that, in absence of a numerical majority of culpable directors,  plaintiff can establish adverse domination by asserting that minority of board or controlling shareholders exercised actual control or superior power over the institution).[13]  Accordingly, adverse domination cannot save the Amended

---

[12]    Tronox's Registration Statement indicates that, of six total members, Tronox's board of directors had *two* Kerr-McGee officers at the time of the IPO:

> Our board of directors is composed of six members, divided into three classes serving staggered, three-year terms. At each annual meeting of our stockholders, directors will be elected to succeed the class of directors whose terms have expired. The terms of our class I directors, Messrs. Rauh and Rowland, will expire at the 2006 annual meeting of our stockholders; the terms of our class II directors, Messrs. Adams and Kinnear, will expire at the 2007 annual meeting of our stockholders; and the terms of our class III directors, Messrs. Richardson and Wohleber, will expire at the 2008 annual meeting of our stockholders.

Ex. B Registration Statement at 95.  Of these individuals, only Messrs. Wohleber and Rauh were Kerr-McGee officers.  The remaining four board of directors members were independent of Kerr-McGee.  Id. at 93-94.

[13]    The holding of Bright, construing the disinterested majority test under Texas law, is in accord with the rationale behind the disinterested majority test as recognized in Oklahoma:  "The rationale for the principle is that control of the board by wrongdoers precludes the possibility for filing suit, and that the controlling parties cannot be expected to sue themselves or to initiate an action contrary to their own interests."  Grant, 901 P.2d at 811.

Claims from the bar of the statute of limitations.[14]

>### 2.    *Plaintiffs Have Again Failed To Adequately Allege Fraudulent Concealment*

Plaintiffs also attempt to save their claims by alleging that the statute of limitations should be tolled under the doctrine of "fraudulent concealment."  See Am. Compl. ¶¶ 177, 189, 195.  Fraudulent concealment requires the plaintiff to plead that:  (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.  Simon-Whelan v. Andy Warhol Found. for the Visual Arts, 2009 WL 1457177, at *7 (S.D.N.Y. May 26, 2009) (dismissing parts of the complaint for failure to sufficiently allege that defendants' acts prevented discovery or that plaintiffs exercised reasonable diligence); see also In re Merrill Lynch & Co., 154 F.3d at 60 (granting motion to dismiss because the plaintiffs failed to adequately plead the exercise of due diligence or that the defendants' concealment prevented them from discovering the fraud).

Because fraudulent concealment is based on fraud, Plaintiffs must plead its elements with particularity in compliance with Federal Rule 9(b) ("Rule 9(b)").  See Simon-Whelan, 2009 WL 1457177, at *7 (citing Nat'l Group for Commc'ns and Computers Ltd. v. Lucent Techs. Inc., 420 F. Supp. 2d 253, 265 (S.D.N.Y. 2006)); Tronox, Inc., 2010 WL 1253157, at *9 ("Rule 9(b) requires that in allegations of fraud, 'the circumstances constituting the fraud must be stated with

---

[14]    The other test for adverse domination adopted by some jurisdictions is the "single disinterested director" or "complete domination" test, which is stricter than the disinterested majority test.  See Grant, 901 P.2d at 816-17.  Under the "complete domination" test, the plaintiff must show that "the culpable directors had full, complete and exclusive control of the corporation and must negate the possibility that an informed director or shareholder could have induced the corporation to institute suit."  Id. at 817.  Plaintiffs clearly fail to meet this test as well.  Indeed, Plaintiffs make no allegations about any director or shareholder's inability to initiate a suit against Kerr-McGee after the IPO.

particularity.'") (citations omitted).  All elements of fraudulent concealment, including the

requirement that plaintiff exercised due diligence to discover the claim, must be alleged with

specificity.  See In re Merrill Lynch Ltd., 154 F.3d at 60 (dismissing RICO claims based on

statute of limitations and refusing to toll limitations period based on fraudulent concealment

because Plaintiffs did not make specific allegations of due diligence); Tronox Inc., 2010 WL

1253157, at *28 ("Plaintiffs also have not adequately pled the elements of fraudulent

concealment, particularly their due diligence in uncovering the wrongful conduct and taking

action to obtain redress.").[15]

Despite being given a road map that laid out what Plaintiffs would have to do in order to

plead fraudulent concealment, Plaintiffs' allegations once again fall far short of Rule 9(b)'s

heightened pleading requirements.  Specifically, Plaintiffs have failed to identify any details

regarding their supposed due diligence.  In fact, with respect to diligence, the only new allegation

in the Amended Complaint is the wholly conclusory statement that "Tronox did not discover,

and could not have discovered in the exercise of reasonable diligence," the facts that give rise to

Plaintiffs' claims.  See Am. Compl. ¶¶ 175, 177, 189, 195.  This allegation is patently

insufficient, and provides no detail whatsoever regarding the purported diligence, or when and to

whom the supposed due diligence inquiries were made.  See In re Merrill Lynch Ltd., 154 F.3d

at 60 (finding fraudulent concealment inadequately pled where plaintiffs "did not allege . . . that

they exercised due diligence" and made "no allegation of any specific inquiries of [Defendant],

let alone detail when such inquiries were made, to whom, regarding what, and with what

---

[15]    See also Hinds County v. Wachovia Bank N.A., 620 F. Supp. 2d 499, 521 (S.D.N.Y. 2009) (noting that
"general assertions of ignorance and due diligence without more specific explanation . . . will not satisfy the []
pleading requirements"); Simon-Whelan, 2009 WL 1457177, at *7 (holding that fraudulent concealment was
not adequately pled where plaintiffs did not proffer sufficient facts to demonstrate that discovery of claim was
prevented by Defendants' concealment of wrongful actions).

response").[16]  Merely tacking these bare recitals of the elements of fraudulent concealment onto

the very allegations this Court already ruled inadequate does not satisfy Rule 9(b)'s strict

standard for pleading fraudulent concealment.

Moreover, despite having had the benefit of the enormous document productions by

Defendants and third parties, the Amended Complaint contains no factual allegations purporting

to show that Defendants concealed material facts that prevented Plaintiffs from discovering their

claims.  Rather, all Plaintiffs assert is that their breach of fiduciary duty claim was supposedly

concealed because Kerr-McGee selected two senior officers as Tronox's CEO and CFO who had

"very little knowledge" regarding the scope of the Legacy Liabilities and that Kerr-McGee failed

to further educate them.  Am. Compl. ¶ 177.  But this allegation does not explain how material

facts remained concealed from Tronox and these senior executives, or how Defendants'

supposed concealment prevented Tronox from uncovering any material facts.  Thus, Plaintiffs

have failed to sufficiently allege either of the first two elements of fraudulent concealment.[17]  See

Billard v. Rockwell Int'l Corp., 693 F.2d 51, 57(2d Cir. 1982) (dismissing fraud claims under

Rule 9(b) where, as here, plaintiffs had the opportunity to supplement the record with materials

developed through document discovery, but still failed to produce any supporting detail in their

complaint); Jose Armando Bermudez & Co., v. Bermudez Int'l, Inc., 2001 WL 1382582, at * 3

(S.D.N.Y. Nov. 6, 2001) (denying leave to replead fraud claims where plaintiff had sufficient

opportunity to discover facts to meet the Rule 9(b) requirements); Simon-Whelan, 2009 WL

---

[16]    See also Hinds County, 620 F. Supp. 2d at 521-22 (finding fraudulent concealment inadequately pled because
"a brief reference to 'reasonable diligence,' coupled with general allegations of secrecy and deception" did not
satisfy Rule 9(b)'s requirement that due diligence be pled with particularity) (citation omitted).

[17]    In connection with Plaintiffs' conspiracy and aiding and abetting breach of fiduciary duty claims, Plaintiffs
allege that information was concealed from Tronox because it was in the possession of Anadarko and Kerr-
McGee.  See Am. Compl. ¶¶ 189, 195.  Plaintiffs do not, however, allege the requisite specific facts to show
that Defendants' purported concealment prevented Plaintiffs' discovery of material facts giving rise to these
claims or specific instances of due diligence that Plaintiffs undertook to discover these claims.

1457177, at *7 (dismissing claims as time-barred because plaintiff did not allege sufficient facts under Rule 9(b) to establish that defendants' alleged concealment prevented discovery of material facts).

Here, Plaintiffs have not pled any new facts, but instead continue to rely only on conclusory, boilerplate language that parrots the elements of fraudulent concealment.  The Court has already deemed those bare-bones allegations are inadequate.  Tronox, Inc., 2010 WL 1253157, at *28.  Because Plaintiffs cannot toll the three-year statute of limitations that the Court has held is likely applicable to the Amended Claims, all three claims are time-barred.[18]

## II.  EVEN IF NOT TIME-BARRED, PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED (COUNT IV)

The Amended Complaint asserts three bases for Kerr-McGee's purported breach of fiduciary duties to Tronox: (1) Kerr-McGee allegedly breached its fiduciary duties, including the duty of loyalty, to Tronox and Tronox's minority shareholders by "engaging in and completing a transaction – the Spin-Off – that lacked intrinsic fairness. . . ." (Am. Compl. ¶¶165-66); (2) as a parent of an insolvent company, Kerr-McGee allegedly breached its fiduciary duties, including the duty of loyalty, to Tronox and Tronox's creditors by "failing to stop the Spin-Off. . . ." (id. at ¶¶167-68); and (3) Kerr-McGee allegedly breached its fiduciary duties to Tronox as a corporate promoter by "promoting Tronox when it knew or should have known that Tronox could never survive as an independent company."  Id. at ¶¶169-173.  Each of the three bases alleged fails to state a claim for breach of fiduciary duty, and accordingly, all of the Amended Claims should be dismissed.

---

[18]    See Greer, 911 P.2d at 265 (dismissing breach of fiduciary duty claim); Paxton v. Hyer, 87 P.2d 938, 940 (Okla. 1939) (dismissing conspiracy claim based on limitations period of underlying claim); see also Balta, 626 F. Supp. 2d at 359-60 (applying limitations period of underlying claim and denying, in part, aiding and abetting claim).

### A.  No Plaintiff Was Owed A Fiduciary Duty As A Minority Shareholder

Plaintiffs assert that Kerr-McGee owed a fiduciary duty to Tronox's minority

shareholders between the time of the IPO and the Distribution.  Am. Compl. ¶¶ 165-66.

However, none of these minority shareholders is a plaintiff in this case.  Nor is there is any

allegation that any of these minority shareholders even held shares as of the Petition Date.

Moreover, Plaintiffs have also failed to plead any basis upon which they have a right to sue on

behalf of the so-called minority shareholders.  Alleging breach of duty claims purportedly owed

to minority shareholders highlights Plaintiffs' obvious and futile effort to now plead the "kitchen

sink" in search of a fiduciary duty claim that will survive.

### B.  Plaintiffs Have Not Adequately Pled That Kerr-McGee Breached A Fiduciary Duty It Owed As A Parent Of An Insolvent Company

Plaintiffs allege that Kerr-McGee breached its fiduciary duty as a parent or majority

shareholder of Tronox.  Prior to the IPO, however, Tronox was a wholly-owned subsidiary of

Kerr-McGee and thus was owed no fiduciary duties by Kerr-McGee.  See Trenwick Am. Litig.

Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 191-93 (Del. Ch. 2006), aff'd, 931 A.2d 438

(Del. 2007) (dismissing breach of fiduciary duty claim because "under settled principles of

Delaware law, a parent corporation does not owe fiduciary duties to its wholly-owned

subsidiaries," even where subsidiary later filed for bankruptcy) (citing Anadarko Petroleum

Corp. v. Panhandle E. Corp., 545 A.2d 1171, 1174 (Del. 1988)).  Recent case law suggests this

same rule would apply to an insolvent, wholly-owned subsidiary.  See ASARCO LLC v. Am.

Mining Corp., 396 B.R. 278, 414-416 (S.D. Tex. 2008) (holding that breach of fiduciary duty

claim failed because parent did not owe fiduciary duty to insolvent subsidiary or insolvent

subsidiary's creditors).[19]  Furthermore, conducting the Spin-Off itself was "entirely consistent

with traditional principles of corporate governance."  <u>See</u> <u>Aviall, Inc. v. Ryder Sys., Inc.</u>, 913 F.

Supp. 826, 832-33 (S.D.N.Y. 1996) (finding that a spin-off agreement does not constitute a

breach of fiduciary duty owed to the shareholders of either the parent or the subsidiary).[20]

    As to the period after the IPO, Plaintiffs' claims for breach of fiduciary duty are time-

barred.  <u>See</u> <u>supra</u> Section I.A.2.[21]  Accordingly, Plaintiffs' claim that Kerr-McGee breached a

fiduciary duty to Tronox and Tronox's creditors as the parent of an insolvent company must fail.

> **C.    Plaintiffs Have Not Adequately Asserted Breach Of Fiduciary Duty As A
> Promoter**

    Plaintiffs' claim for breach of fiduciary duty as a promoter also remains fatally flawed.  A

promoter has a duty to the corporation it promotes only until the plan or scheme of promotion

has been accomplished.  <u>See</u> <u>Bailes v. Colonial Press, Inc.</u>, 444 F.2d 1241, 1244 (5th Cir. 1971).

Here, all of the alleged acts of promotion – the filing of a Certificate of Incorporation, obtaining

a revolving credit facility, and soliciting purchasers of Tronox's Class A Common Stock –

occurred in connection with the IPO.  <u>See</u> Am. Compl. ¶¶ 170-71.  Indeed, the breaches

specifically alleged by Plaintiffs – failures to disclose information to *future* shareholders and

bondholders – demonstrate that Defendants' promotion took place prior to or in connection with

the IPO.  <u>See</u> Am. Compl. ¶ 173.  Thus, the promotional scheme and any associated duties ended

---

[19]    <u>ASARCO</u> is consistent with Delaware law, which does not recognize a duty from a parent to a wholly-owned
subsidiary and has only found that creditors have standing to maintain derivative (not direct) claims against
directors of an insolvent corporation.  <u>See</u> <u>N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla</u>,
930 A.2d 92, 101-02 (Del. 2007); <u>Trenwick</u>, 906 A.2d at 191.

[20]    <u>See also</u> <u>Tronox, Inc.</u>, 2010 WL 1253157, at *10 (citing <u>Aviall</u>); <u>Westlake Vinyls, Inc. v. Goodrich Corp.</u>, 518
F. Supp. 2d 918, 939 (W.D. Ky. 2007) (holding that parent owed no fiduciary duty to subsidiary when parent
incorporated wholly-owned subsidiary, transferred liabilities and assets into subsidiary, and then offered
shares of subsidiary to public in IPO).

[21]    As previously discussed, any injury that Plaintiffs allege in connection with the Distribution relates back to the
time of the IPO.  <u>See</u> <u>supra</u> Section I.A.2.   Therefore, in addition to being time-barred, these allegations do
not support a breach of fiduciary duty claim because New Kerr-McGee owed no duty to Tronox or Tronox's
creditors at the time of the IPO, when it was wholly-owned by Kerr-McGee.

at the time of the IPO, more than three years prior to the date Tronox filed for bankruptcy. Accordingly, Plaintiffs' promoter claims should be dismissed.

As to the period following the IPO, but before the Distribution, Plaintiffs' claim is essentially the same as in its Initial Complaint.  <u>Compare</u> Initial Compl. ¶¶ 168-171 <u>with</u> Am. Compl. ¶¶ 170-173.  In fact, after receiving millions of pages of discovery, the only new event cited by Plaintiffs purportedly relating to its promoter claim is a vague allegation about Kerr-McGee's arrangement of the Distribution – which does nothing to bolster the claim.  Am. Compl. ¶ 171.[22]  Accordingly, these recycled promoter allegations do not allege any facts that could be construed as acts constituting a breach of any duties, as a promoter or otherwise, and must fail.

Additionally, the allegations of breaches as to Tronox's future shareholders and future bondholders (Am. Compl. ¶¶ 173), also fail to support Plaintiffs' claim because, as with Tronox's minority shareholders, no such prospective shareholders or bondholders are alleged to be plaintiffs here.  Moreover, Kerr-McGee did not owe any fiduciary duties to them as matter of law.  <u>See</u> <u>Bragger v. Budacz</u>, 1994 WL 698609, at *6 (Del. Ch. Dec. 7, 1994) (dismissing breach of fiduciary duty claim for failure to state a claim because directors of a parent do not have a duty to make full and complete disclosure about a spin-off to subsidiary's future shareholders); <u>see also</u> <u>Montgomery v. Aetna Plywood, Inc.</u>, 231 F.3d 399, 407 (7th Cir. 2000) ("Delaware law treats actual stockholders and prospective stockholders quite differently.  Most significantly,

---

[22]  Plaintiffs' lone allegation that Kerr-McGee "arrang[ed] for the distribution of Tronox's Class B Common Stock" (to Kerr-McGee's own existing shareholders) on March 31, 2006, fails to constitute a breach of fiduciary duty, because this allegation relates back to the IPO.  <u>See</u> Am. Compl. ¶ 171; <u>supra</u> Part I.A.2. Moreover, the apparent promotional scheme about which Plaintiffs complain relates to the public's purchase of Tronox's Class A Common Stock and not the Distribution of Tronox's Class B Common Stock from Kerr-McGee to Kerr-McGee shareholders.  This is clear from Plaintiffs' allegations that Kerr-McGee's board approved the separation pursuant to the two-part process in October 2005.  Am. Compl. ¶ 88.

23

prospective stockholders are not owed fiduciary duties."); Simons v. Cogan, 549 A.2d 300, 303-04 (Del. 1988) (dismissing claim because a fiduciary duty was not owed to debenture holders).

## III.    EVEN IF NOT TIME-BARRED, PLAINTIFFS' CIVIL CONSPIRACY CLAIM MUST BE DISMISSED (COUNT V)

Because Plaintiffs have failed to allege a viable claim for breach of fiduciary duty, their claims for conspiracy and aiding and abetting breach of a fiduciary duty also fail.  See Trenwick, 906 A.2d at 215-16 (dismissing claims for conspiracy and aiding and abetting breach of fiduciary duty in part because "the complaint fail[ed] to state a claim for breach of fiduciary duty"); see also Sieppel v. Jenkens & Gilchrist, PC, 341 F. Supp. 2d 363, 382 (S.D.N.Y. 2004) ("This [aiding and abetting breach of fiduciary duty] claim must be dismissed because the underlying claim of breach of fiduciary duty is time-barred.").[23]

Plaintiffs' civil conspiracy claim also should be dismissed because Plaintiffs fail to adequately plead the elements of a conspiracy claim.

### A.    The Civil Conspiracy Claim Fails To Adequately Plead An Agreement

Under Oklahoma law, "civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means."  Roberson v. Paine Webber Inc., 998 P.2d 193, 201 (Okla. Civ. App. 1999); Allen v. Ramsey, 41 P.2d 658, 665 (Okla. 1935)

---

[23]    Since Plaintiffs' conspiracy claim is actually grounded in and based on fraud, it is Defendants' position that Oklahoma's two-year statute of limitations should apply to bar the conspiracy count.  See Paxton, 87 P.2d at 940 (applying a two-year limitations period for conspiracy based on fraud).  The fact that Plaintiffs have attempted to repackage their conspiracy claims as conspiracy to breach fiduciary duties, rather than conspiracy to commit fraud, is "insufficient . . . to divorce the claims from their fraudulent underpinnings."  In re AXIS Capital Holdings Ltd. Sec. Litig., 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006) (citation omitted).  Plaintiffs appear to recognize this in the Amended Complaint, because, in an attempt to salvage this claim, they allege (inadequately) that the conspiracy was fraudulently concealed until February 1, 2007 (which would fall within a two-year limitations period).  See Am. Compl. ¶ 189.  This effort by Plaintiffs to save their conspiracy claim by alleging that they could not have discovered the purported conspiracy within the two-year statute of limitations period due to fraudulent concealment by Kerr-McGee, further demonstrates the extent to which the conspiracy claim is tied to allegations that sound in fraud.  See also Am. Compl. ¶¶ 50-51 (alleging, upon information and belief, a conspiracy between Anadarko and Kerr-McGee that led Kerr-McGee to undertake the first step in the alleged fraudulent scheme upon which the Amended Complaint is based).

("[W]hen the parties to [an agreement to do wrong] act in furtherance of the illegal combination, resulting in injury to a third person, the conspiracy becomes actionable, and the conspirators are liable to the injured party for damages proximately flowing from their illegal conduct.").  To properly allege a cause of action for civil conspiracy, the complaint must allege concerted action sufficient to show that the parties entered into an agreement.  See Shadid v. Monsour, 746 P.2d 685, 688-89 (Okla. Civ. App. 1987).  Here, Plaintiffs were required to allege that an agreement existed between Anadarko and Kerr-McGee and that one or more unlawful acts occurred pursuant to that agreement.  See Bell Atl. Corp. v. Twombly, 550 U.S. 555, 557 (2007) (under Rule 8(a), with respect to conspiracy claims, "conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

Plaintiffs allege that, at some undetermined point after 2002, Anadarko agreed to purchase Kerr-McGee, thereby creating a "monetary incentive [for Kerr-McGee] to complete the Spin-Off. . . ."  Am. Compl. ¶ 187.  Yet, as with their Initial Complaint, Plaintiffs again fail to assert any facts regarding the existence of the alleged "agreement" – even failing to identify facts from which it could be inferred when or where such an alleged agreement was made.  Indeed, while the Amended Complaint alleges that Anadarko's CEO and Kerr-McGee communicated after the IPO, but "before the New Kerr-McGee Board met on March 8, 2006 to approve the completion of the Spin-Off," Plaintiffs fail to allege that the two individuals came to an "agreement" even during that communication – which took place *after* the IPO.  See Am. Compl. ¶ 184.  And, while the Amended Complaint throws in allegations regarding Anadarko's 2002 internal analysis of a potential acquisition of Kerr-McGee four years earlier, it alleges no facts whatsoever to support the conclusory allegation, upon "information and belief," that there was any communication between these two companies, much less that an agreement was reached, at

25

that time.  Rather, this "information and belief" pleading is the linchpin of Plaintiffs' conspiracy

and aiding and abetting claims against Anadarko, and it consists entirely of irresponsible

speculation – anchored by no factual basis – that Anadarko "informed New Kerr-McGee that it

would be interested in acquiring its valuable assets if New Kerr-McGee separated them from the

Legacy Liabilities" and continued to inform Kerr-McGee or its investment banker of such

interest from 2002 through early 2006.  Am. Compl. ¶¶ 182-83.

Plaintiffs further speculate that it is "exceedingly unlikely if not impossible that

Anadarko and New Kerr-McGee did not begin planning the acquisition prior to the Spin-Off."

Id. at ¶ 185.  Once again, this rank speculation is exactly the type of inadequate pleading that

courts reject.  See Twombly, 550 U.S. at 555, 557; see also Ashcroft v. Iqbal, 129 S. Ct. 1937,

1950 (2009) (pleadings that "are no more than conclusions" are not entitled to assumption of

truth); Peterson v. Grisham, 2008 WL 4363653, at *9 (E.D. Okla. Sept. 17, 2008) (pleading of

civil conspiracy claim was insufficient under Twombly because alleged agreement "appears to

be nothing more than an allegation of independent action by the defendants [and] [t]here is

nothing alleged that points to a preceding agreement by the defendants"), aff'd, 594 F.3d 723,

730-31 (10th Cir. 2010) ("Disconnected circumstances, any. . . of which[] are just as consistent

with lawful purposes as with unlawful purposes, are insufficient to establish a conspiracy.")

(quoting Dill v. Rader, 583 P.2d 496, 499 (Okla. 1978)).[24]

Plaintiffs have not pled any facts as to an "act in furtherance" of an "agreement to do

wrong."  They have merely surmised that Defendants "conspired" with each other because

---

[24]    See also Medtech Prods. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 795 (S.D.N.Y. 2008) (pleading of civil
conspiracy was insufficient under Twombly because complaint "merely conclude[d] that an agreement existed
without any factual basis to make the allegation plausible."); In re I.E. Liquidation, 2009 WL 2707223, at *8-9
(Bankr. N.D. Ohio Aug. 25, 2009) (dismissing conspiracy claims for failure to meet the plausibility
requirements of Twombly and Iqbal, where, even looking at the entire complaint, there was no factual
predicate for finding when or how the alleged plan developed, how it was carried out, or identifying the
unlawful act apart from the alleged conspiracy).

Anadarko "agree[d] to purchase New Kerr-McGee once it shed the Legacy Liabilities." Am.

Compl. ¶ 187.  The Supreme Court has categorically rejected this type of conclusory allegation

as insufficient to withstand motion to dismiss scrutiny.  See Iqbal, 129 S. Ct. at 1949 ("A

pleading that offers 'labels and conclusions'. . . will not do"); see also Twombly, 550 U.S. at 557

("N]aked assertion[s]" devoid of "further factual enhancement" do not suffice).  Plaintiffs'

failure to level anything beyond conclusory allegations "on information and belief" is

particularly fatal in light of the extensive document discovery Plaintiffs have already received in

this proceeding – unlike the usual case where a plaintiff is required to plead its claims before

receiving any discovery.[25]  Such allegations are based on nothing but speculation that finds no

support whatsoever in any of the millions of produced documents.  Plaintiffs should not be able

to evade their pleading burden at this stage by making such irresponsible "information and

belief" accusations.

Furthermore, even the existence of an agreement does not itself create liability:  a

plaintiff must plead an agreement to do an independent unlawful act.  See Brock v. Thompson,

948 P.2d 279, 294 (Okla. 1997) ("There can be no civil conspiracy where the act complained of

---

[25]   All allegations of an agreement to breach Kerr-McGee's fiduciary duties and that Anadarko and New Kerr-McGee acted in furtherance of such an agreement are improperly based upon "information and belief."  See Am. Compl. ¶¶ 182-88.  Conspiracy plaintiffs are allowed some leeway because details may not be readily known before discovery, see, e.g. Maersk, Inc. v. Neewra, Inc., 554 F. Supp. 2d 424, 458 (S.D.N.Y. 2008), but they do not have "carte blanche to plead the existence of conspiracy through solely conclusory allegations."  Medtech Prods. Inc., 596 F. Supp. 2d at 795n.12.  Indeed, allegations on "information and belief" must be likely to have evidentiary support after a reasonable opportunity for further investigation or discovery under Federal Rule 11(b).  See Sourceone Healthcare Techs., Inc. v. Bensonhurst Imaging Assocs. Mgmt., Inc., 2008 WL 2697324, at *2 (E.D.N.Y. Jul. 2, 2008) ("Making the allegation 'upon information and belief' does not dilute the Rule 11 obligation in any way.  Under Rule 11, a party cannot allege facts to make out the substance of a claim when it has an insufficient basis to make those allegations in the hope that discovery may fortuitously give it a good faith basis, unless it has reason to believe that will in fact occur.") (citations omitted); Van Dorsten v. Provident Life and Accident Ins. Co., 554 F. Supp. 2d 285, 288 (D. Conn. 2008) (holding plaintiffs cannot file "a lawsuit on the basis of a conclusory statement in the hope of finding information during discovery that would validate [] supposition[s]" made on information and belief) (citing Jones v. Capital Cities/ABC, Inc., 168 F.R.D. 477, 480 (S.D.N.Y. 1996) ("[T]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim[] exists.")).  Plaintiffs' allegations on "information and belief" are inappropriate at this stage of the proceedings, given that document discovery has been substantially completed.

and <u>means employed</u> are lawful.") (emphasis in original).  Circumstances that are equally

consistent with lawful and unlawful activity are insufficient to establish conspiracy.  <u>Peterson</u>,

594 F.3d at 730-31.  At most, Plaintiffs allege, upon information and belief, that Anadarko

contacted Kerr-McGee to inquire about purchasing the company.  Am. Compl. ¶ 185.  Exploring

a business deal is a lawful activity and therefore the allegations made by Plaintiffs are

insufficient to establish any conspiracy claim.  <u>See</u> <u>Peterson</u>, 2008 WL 4363653, at *8.

### B.    Anadarko Cannot Be Liable For Conspiracy To Breach A Fiduciary Duty Because It Owed No Fiduciary Duties To Tronox Or Tronox's Creditors

In order to prevail on a claim for conspiracy to breach a fiduciary duty,  a plaintiff must

demonstrate that all members of the alleged conspiracy independently owed a fiduciary duty to

the plaintiff.  <u>See</u> <u>Briarpatch Ltd. v. Geisler Roberdeau, Inc.</u>, 2007 WL 1040809, at *26

(S.D.N.Y. Apr. 4, 2007); <u>Official Comm. of Unsecured Creditors v. Donaldson, Lufkin &

Jenerette Sec. Corp.</u>, 2002 WL 362794, at *13-14 (S.D.N.Y. Mar. 6, 2002) (dismissing the

plaintiff's action for civil conspiracy to breach a fiduciary duty under Rule 12(b)(6) because it

was not established that all the members of the alleged conspiracy independently owed such a

duty to the plaintiff).  Plaintiffs have not alleged that Anadarko owed a fiduciary duty to Tronox

or its creditors, and have no basis for doing so.  Accordingly, the underlying tort of "breach of

fiduciary duty" is not common to Anadarko as an alleged co-conspirator, and Plaintiffs' civil

conspiracy claim fails as a matter of law.

### IV.    EVEN IF NOT TIME-BARRED, PLAINTIFFS' AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED (COUNT VI)

Plaintiffs' claim against Anadarko for aiding and abetting a breach of fiduciary duty

should be dismissed as a matter of law because no such claim has been expressly adopted by the

Oklahoma courts, and in any event because it is inadequately pled.[26]  While other states have

recognized an aiding and abetting breach of fiduciary duty cause of action, no reported

Oklahoma decision has ever done so.  Nor has Oklahoma adopted comment c to § 874 of the

Restatement (Second) of Torts on aiding and abetting a breach of fiduciary duty.[27]  See, e.g.,

Chapman v. Chase Manhattan Mortgage Corp., 2007 WL 2815246, at *7-8 (N.D. Okla. Sept. 24,

2007) (holding that where Oklahoma has not expressly adopted a tort claim, there is no basis for

recovery).

Even if such a cause of action did exist in Oklahoma, the aiding and abetting claim is

inadequately pled and cannot stand.  To state a claim for aiding and abetting, a plaintiff must

show either:  (a) "a tortious act in concert" with another person "or pursuant to a common design

with him;" (b) knowledge "that the other's conduct constitutes a breach of duty" to a third party

and "substantial assistance or encouragement to the other;" or (c) "substantial assistance to the

other in accomplishing a tortious result" along with "his own conduct . . . "constit[uting] a

breach of duty to the third person."  Restatement (Second) of Torts § 876 (1982); see also

Cooper, 841 P.2d at 611-12, n.6 (relying on section 876 of Second Restatement of Torts in

analyzing aiding and abetting claim).  Plaintiffs' allegations focus on whether "Anadarko

---

[26]    Oklahoma law applies to Plaintiffs' aiding and abetting a breach of fiduciary duty claim.  Under New York
choice of law rules, the court applies the law of the state with the greatest interest in the outcome of a claim
for aiding and abetting a breach of fiduciary duty.  See, e.g., In re Magnesium Corp. of Am., 399 B.R. 722,
742 (Bankr. S.D.N.Y. 2009). The jurisdiction with the greatest interest in the outcome of the claim is that of
the plaintiff's principal place of business.  See id. at 742-43, 769-70.  Thus, Oklahoma law applies to this
claim because Plaintiffs' principal place of business is Oklahoma.

[27]    The only Oklahoma court to cite to § 874 of the Restatement in any capacity refers to comments a and b,
regarding the existence of a fiduciary relationship.  Shovanec v. Archdiocese of Oklahoma City, 188 P.3d 158,
174 (Okla. 2008).  Comment c to section 874 of the Restatement references section 876 of the Restatement to
establish the elements of an aiding and abetting breach of fiduciary duty claim.  Restatement (Second) of Torts
§ 874, cmt c (1982). While Oklahoma has adopted § 876 of the Restatement ("Persons Acting in Concert"), it
has never applied this section to support a claim for aiding and abetting a breach of fiduciary duty.  See
Energy Fluids, Inc. v. Cimarex Energy Co., 2008 WL 2404226, at *3 (W.D. Okla. Jun. 10, 2008) (aiding and
abetting fraud); Keel v. Hainline, 331 P.2d 397, 400-01 (Okla. 1958) (aiding and abetting an assault and
battery); Cooper v. Bondoni, 841 P.2d 608, 611-12 (Okla. Civ. App. 1992) (aiding and abetting breach of duty
to society to abstain from willful or careless conduct).

knowingly provided substantial assistance to New Kerr-McGee in its breaches of its fiduciary duties." Am. Compl. ¶ 194.

The standard for stating an aiding and abetting claim is "stringent." Saito v. McCall, 2004 WL 3029876, at *9 (Del. Ch. Aug. 18, 2004).  It requires "the third party [to] act with the knowledge that the conduct advocated or assisted constitutes [] a breach." Malpiede v. Townson, 780 A.2d 1075, 1097 (Del. 2001); see also Halo Tech Holdings, Inc. v. Cooper, 2008 WL 877156, at *21 (D. Conn. Mar. 26, 2008) (dismissing aiding and abetting breach of fiduciary duty claim where complaint alleged only that third party "acted 'together with'" fiduciary and did not describe how third party assisted breach).  In addition, a plaintiff must assert facts showing the defendant's involvement in the acts constituting the alleged breach, and when such acts occurred.  See Malpiede at 1097-98 (dismissing claim for aiding and abetting a breach of fiduciary duty because "there is no indication in the amended complaint that [defendants] participated in the board's decisions, conspired with board, or otherwise caused the board to make the decisions at issue").[28]

Here, Plaintiffs fail to plead any facts to show that Anadarko knew that the conduct it was supposedly assisting constituted a breach of fiduciary duty by Kerr-McGee.  See Malpiede 780 A.2d at 1097 (requiring that "the third party act with the knowledge that the conduct advocated or assisted constitutes [] a breach").  Nor does the Amended Complaint indicate when Anadarko's alleged assistance occurred.  See Saito, 2004 WL 3029876, at *9.

---

[28]    See also In re General Motors (Hughes) S'holder Litig., 2005 WL 1089021, at *27 (Del. Ch. May 4, 2005), aff'd, 897 A.2d 162 (Del. 2006) (dismissing aiding and abetting a breach of fiduciary duty claim in absence of any "properly pled allegations that [defendants] participated in meetings of the GM board of directors or otherwise interjected themselves into the process by which the GM and [the] boards of directors approved the [] transactions in any manner other than as an arms-length bidder"); In re NYMEX S'holders Litig., 2009 WL 3206051, at *12 (Del. Ch. Sept. 30, 2009) (holding claim inadequately pled on basis of conclusory allegations that "[aiding and abetting defendant] had knowledge of the [fiduciary] Defendants' breaches of fiduciary duty, and, therefore, aided and abetted such breaches of fiduciary duties").

30

Furthermore, for a third party to provide the requisite "substantial assistance," it must act *affirmatively* in aiding the fiduciary to breach its duty. <u>See</u> <u>In re Sharp Int'l Corp.</u>, 403 F.3d 43, 52 (2d Cir. 2005) ("Absent a duty to act, the only action prescribed is not to 'affirmatively assist' or to 'help conceal. . . .'"). Even if a third party continues to participate in an acquisition transaction after it knows of an alleged breach by the breaching party, that participation does not constitute "substantial assistance." <u>See</u> <u>Halo Tech</u>, 2008 WL 877156, at *21-22 (holding that third party's act of taking steps to complete an acquisition despite knowledge of alleged breach did not constitute substantial assistance).

Plaintiffs' paltry allegations of Anadarko's purported "substantial assistance" clearly fail to satisfy the stringent standard for pleading the claim. Plaintiffs again merely parrot the legal standard – and only on "information and belief" – that Anadarko "knowingly provided substantial assistance to New Kerr-McGee in its breaches of its fiduciary duties by . . . agreeing to purchase New Kerr-McGee once it shed the Legacy Liabilities and by providing New Kerr-McGee with monetary incentive to complete the Spin-Off. . . ." Am. Compl. ¶¶ 193-94. These rote allegations, consisting entirely of baseless speculation, are wholly inadequate. <u>See</u> <u>General Motors</u>, 2005 WL 1089021, at *27.[29] Plaintiffs' scant allegations provide no support for the proposition that Anadarko "agreed" with Kerr-McGee that it would purchase the oil and gas business only after Kerr-McGee shed its Legacy Liabilities, much less that Anadarko provided

---

[29] Plaintiffs' only support for the conclusory allegations in Count VI are the irrelevant suppositions that Anadarko allegedly considered purchasing Kerr-McGee in 2002, *four years* before Anadarko's acquisition, and *three years* prior to the Spin-Off, and the unsupported and irresponsible speculation that "on information and belief," "Anadarko informed New Kerr-McGee that if New Kerr-McGee was able to separate the Legacy Liabilities and the Chemical Business from its valuable oil and gas assets, Anadarko would be ready to pounce on a Kerr-McGee acquisition." Am. Compl. ¶¶ 46-50. Even taking such allegations as true, these types of arms-length negotiations between a potential buyer and seller are plainly not sufficient to establish a claim for aiding and abetting a breach of fiduciary duty. <u>See</u> <u>Halo Tech</u>, 2008 WL 877156, at *21-22; <u>General Motors</u>, 2005 WL 1089021, at *27.

31

affirmative assistance in anything Anadarko could have known was a breach.  Id. at ¶ 193. [30]

Finally, even if the Amended Complaint had alleged that Anadarko knew Kerr-McGee intended

an eventual breach, that alone would not establish aiding and abetting.  See Sharp, 403 F.3d at

51-52; Halo Tech, 2008 WL 877156, at *21-22.  Accordingly, the aiding and abetting claim

cannot stand.

---

[30]    The allegations in the Amended Complaint are also distinguishable from the allegations stating a claim for
aiding and abetting a breach of fiduciary duty in In re Verestar, Inc., 343 B.R. 444, 482 (Bankr. S.D.N.Y.
2006).  There, the allegations underlying the claim for breach of fiduciary duty involved conduct in which
both the fiduciary, Verestar, and the aider and abettor, Verestar's parent, ATC, allegedly engaged in acts to the
damage of Verestar and its creditors, including ATC's program to transfer Verestar's assets and its value to
ATC.  Id. at 456-58, 482.  Verestar would be applicable here if the Plaintiffs' claim were that Kerr-McGee had
aided and abetted its subsidiary Tronox's directors and officers in a breach of a fiduciary duty by engaging in a
fraudulent transfer scheme.  However, the Amended Complaint's conclusory allegations regarding Anadarko's
knowledge and assistance of Kerr-McGee's purported breaches do not come close to rising to the level of
pleading sufficient to state the claim in Verestar.

## **CONCLUSION**

For all of the foregoing reasons, Defendants request that the Court grant their motion to

dismiss.


Houston, Texas
Dated: May 26, 2010

Richard A. Rothman (RR 0507)
Bruce S. Meyer (BM 3506)
Lori L. Pines (LP 3005)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Duke K. McCall, III (*admitted pro hac vice*)
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006
Telephone:  (202) 373-6000
Facsimile:  (202) 373-6001

 /s/ Lydia Protopapas
Melanie Gray (*admitted pro hac vice*)
Lydia Protopapas (LP 8089)
Jason W. Billeck (*admitted pro hac vice*)
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, Texas  77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

James J. Dragna (*admitted pro hac vice*)
Bingham McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California  90071
Telephone:  (213) 680-6400
Facsimile:  (213) 680-6499

*Counsel to Anadarko Petroleum Corporation
and Kerr-McGee Corporation*

33

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **Defendants' Motion to Dismiss Counts IV, V, and VI of the Amended Adversary Complaint** was served on the following counsel of record on May 26, 2010, as indicated below:

***Via email jonathan.henes@kirkland.com***
Jonathan S. Henes
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022

***Via email jeffrey.zeiger@kirkland.com
and jzeiger@kirkland.com***
Jeffrey J. Zeiger
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654

***Via email susan.golden@usdoj.gov***
Susan D. Golden
OFFICE OF THE UNITED STATES TRUSTEE
33 Whitehall Street
New York, New York 10004

***Via email rtrust@cravath.com***
Robert Trust
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019-7475

***Via email david.crichlow@pillsburylaw.com***
David A. Crichlow
Craig A. Barbarosh
Karen B. Dine
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036

***Via email dfriedman@kasowitz.com***
David M. Friedman
David J. Mark
Ross G. Shank
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019

***Via email joseph.pantoja@usdoj.gov***
Lev L. Dassin
U.S. ATTORNEY FOR THE
SOUTHERN DISTRICT OF NEW YORK
By: Joseph Pantoja
Assistant U.S. Attorney
86 Chambers Street
New York, New York 10007

Houston, Texas
Dated: May 26, 2010

*/s/ Rene A. Olvera*
Rene A. Olvera