KIRKLAND & ELLIS LLP
David J. Zott, P.C. (*admitted pro hac vice*)
Jeffrey J. Zeiger (*admitted pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Tronox Incorporated, Tronox Worldwide LLC, and Tronox LLC*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| TRONOX INCORPORATED, *et al.*, | Case No. 09-10156 (ALG) |
| Debtors. | Jointly Administered |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | |
| Plaintiffs, | |
| v. | Adversary Proceeding No. 09-01198 (ALG) |
| ANADARKO PETROLEUM CORPORATION and KERR-MCGEE CORPORATION, | |
| Defendants. | |
| THE UNITED STATES OF AMERICA, | |
| Plaintiff- Intervenor, | |
| v. | |
| TRONOX, INC., TRONOX WORLDWIDE LLC, TRONOX LLC, KERR-MCGEE CORPORATION and ANADARKO | |

PETROLEUM CORPORATION,                          )
                                                )
                            Defendants.          )
_____         )

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
COUNTS IV, V, AND VI OF THE AMENDED ADVERSARY COMPLAINT**

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ........................................................................................................................5

I.      The Amended Claims Are Timely. ..............................................................................5

        A.      The Amended Claims Accrued Within The Limitations Period...........................5

        B.      Accrual Of The Amended Claims Was Tolled Until Well Within The
                Limitations Period.......................................................................................9

II.     The Amended Complaint States A Claim For Breach Of Fiduciary Duty. ......................15

III.    The Amended Complaint States A Claim For Conspiracy To Breach Fiduciary
        Duties. ...............................................................................................................20

        A.      Plaintiffs State A Civil Conspiracy Claim. ..........................................................21

        B.      Anadarko Does Not Need To Owe A Fiduciary Duty To Tronox To Be
                Liable For Conspiracy To Breach A Fiduciary Duty..........................................25

IV.     The Amended Complaint States A Claim For Aiding And Abetting A Breach Of
        Fiduciary Duty. ...................................................................................................26

        A.      Applicable Law Recognizes A Claim For Aiding And Abetting Breach of
                Fiduciary Duty. ...........................................................................................27

        B.      The Amended Complaint States The Elements Of Aiding And Abetting  A
                Breach Of Fiduciary Duty...........................................................................28

CONCLUSION....................................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abbatiello v. Monsanto Co.*,
  522 F. Supp. 2d 524 (S.D.N.Y. 2007) ................................................................... 10

*All Bus. Solutions, Inc. v. NationsLine, Inc.*,
  629 F. Supp. 2d 553 (W.D. Va. 2009) .................................................................... 23

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
  545 A.2d 1171 (Del. 1988) ............................................................................ 18, 19

*Bailes v. Colonial Press, Inc.*,
  444 F.2d 1241 (5th Cir. 1971) ............................................................................. 19

*BBS Norwalk One, Inc. v. Raccolta, Inc.*,
  60 F. Supp. 2d 123 (S.D.N.Y. 1999) ................................................................ 21, 27

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 22

*Bernstein v. Crazy Eddie, Inc.*,
  702 F. Supp. 962 (E.D.N.Y. 1988) ....................................................................... 21

*Briarpatch Ltd. v. Geisler Roberdeau, Inc.*,
  2007 WL 1040809 (S.D.N.Y. Apr. 4, 2007) .......................................................... 26

*Brock v. Thompson*,
  948 P.2d 279 (Okla. 1997) ............................................................................ 22, 25

*Burton v. Exxon Corp.*,
  583 F. Supp. 405 (S.D.N.Y. 1984) ....................................................................... 16

*Cooper v. Bondoni*,
  841 P.2d 608 (Okla. Ct. App. 1992) ..................................................................... 27

*Democrat Printing Co. v. Johnson*,
  175 P. 737 (Okla. 1918) ............................................................................... 22, 24

*Empire Fin. Servs., Inc. v. Bank of N.Y.*,
  900 A.2d 92 (Del. 2006) ............................................................................... 21, 24

*EPS Solutions Corp. v. Deloitte & Touche, LLP*,
  2002 WL 441510 (N.D. Ill. March 20, 2002) ......................................................... 19

ii

*F.D.I.C. v. Grant*,
  8 F. Supp. 2d 1275 (N.D. Okla. 1998) ............................................................. 7

*Getty Oil Co. v. Skelly Oil Co.*,
  267 A.2d 883 (Del. 1970) ...................................................................... 16, 17

*Gilbert v. El Paso Co.*,
  490 A.2d 1050 (Del. Ch. 1984) ................................................................. 25

*Huffman v. Cohen*,
  2009 WL 1227648 (N.D. Okla. 2009) ...................................................... 10, 11

*Hughes v. LaSalle Bank, N.A.*,
  419 F. Supp. 2d 605 (S.D.N.Y. 2006) ............................................................ 8

*Hughes v. LaSalle Bank, N.A.*,
  2007 WL 4103680 (2d Cir. Nov. 19, 2007) .................................................... 8

*In re Adelphia Commc'ns Corp.*,
  365 B.R. 24 (Bankr. S.D.N.Y. 2007) .......................................................... 11

*In re Am. Int'l Group, Inc.*,
  965 A.2d 763 (Del. Ch. 2009) .............................................................. 21, 22

*In re Bridgeport Holdings, Inc.*,
  388 B.R. 548 (Bankr. D. Del. 2008) ............................................................ 6

*In re Fedders North Am., Inc.*,
  405 B.R. 527 (Bankr. D. Del. 2009) ....................................................... 27, 28

*In re Harvard Knitwear, Inc.*,
  153 B.R. 617 (E.D.N.Y.1993 .................................................................. 22

*In re Magnesium Corp. of Am.*,
  399 B.R. 722 (Bankr. S.D.N.Y. 2009) ........................................................ 11

*In re Magnetic Audiotape Antitrust Litig.*,
  2002 WL 975678 (S.D.N.Y. May 9, 2002) ................................................ 14, 15

*In re Mirant Corp.*,
  326 B.R. 646 (Bankr. N.D. Tex. 2005) ....................................................... 19

*In re Nine West Shoes Antitrust Litig.*,
  80 F. Supp. 2d 181 (S.D.N.Y. 2000) .......................................................... 14

*In re Sw. Supermarkets, LLC*,
  376 B.R. 281 (Bankr. D. Ariz. 2007) ......................................................... 18

*In re Transkaryotic Therapies, Inc.*,
  954 A.2d 346 (Del. Ch. 2008) ................................................................. 28, 30

*In re Tronox, Inc.*,
  --- B.R. ----, 2010 WL 1253157 (Bankr. S.D.N.Y. Mar. 31, 2010) .................................. passim

*In re USA Detergents, Inc.*,
  418 B.R. 533 (Bankr. D. Del. 2009) ........................................................... 28, 30

*Keel v. Hainline*,
  331 P.2d 397 (Okla. 1958) ...................................................................... 27

*Kravetz v. Brukenfeld*,
  591 F. Supp. 1383 (S.D.N.Y. 1984) ............................................................. 22

*Lancaster v. Hale*,
  152 P.3d 890 (Okla. Civ. App. 2006) ........................................................... 9

*Lesavoy v. Gattullo-Wilson*,
  170 Fed. App'x 721 (2d Cir. Mar. 2, 2006) .................................................... 28

*Litig. Trust of MDIP, Inc. v. Rapoport*,
  2004 WL 3101575 (D. Del. Nov. 29, 2004) ...................................................... 6

*Maersk, Inc. v. Neewra, Inc.*,
  554 F. Supp. 2d 424 (S.D.N.Y. 2008) ........................................................... 22

*Malpiede v. Townson*,
  780 A.2d 1075 (Del. 2001) ..................................................................... 27, 28

*Masquat v. DaimlerChrysler Corp.*,
  195 P.3d 48 (Okla. 2008) ...................................................................... 13

*Medtech Prods. Inc. v. Ranir, LLC*,
  596 F. Supp. 2d 778 (S.D.N.Y. 2008) ........................................................... 24

*Meyer v. Town of Buffalo*,
  2007 WL 2436302 (W.D. Okla. Aug. 22, 2007) .................................................... 6

*Mills Acquisition Co. v. Macmillan, Inc.*,
  559 A.2d 1261 (Del. 1989) ..................................................................... 26

*Murray v. Miner*,
  876 F. Supp. 512 (S.D.N.Y. 1995) .............................................................. 16, 17

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
  930 A.2d 92 (Del. 2007) ....................................................................... 18

iv

*Nicolet, Inc. v. Nutt,*
    525 A.2d 146 (Del. 1987) ................................................................ 21, 22

*Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenerette Sec. Corp.,*
    2002 WL 362794 (S.D.N.Y. Mar. 6, 2002) ........................................... 26

*Penn Mart Realty Co. v. Becker,*
    298 A.2d 349 (Del. Ch. 1972) ............................................................. 25

*Peterson v. Grisham,*
    2008 WL 4363653 (E.D. Okla. Sept. 17, 2008) .................................... 24

*Resolution Trust Corp. v. Greer,*
    911 P.2d 257 (Okla. 1995) ........................................................... 6, 9, 12

*Roselink Investors, L.L.C. v. Shenkman,*
    386 F. Supp. 2d 209 (S.D.N.Y. 2004) ................................................... 18

*Saito v. McCall,*
    2004 WL 3029876 (Del. Ch. Ct. Dec. 20, 2004) .................................. 28

*Schovanec v. Archdiocese of Oklahoma City,*
    188 P.3d 158 (Okla. 2008) ................................................................... 27

*SEC v. Power,*
    525 F. Supp. 2d 415 (S.D.N.Y. 2007) ................................................... 13

*Shadid v. Monsour,*
    746 P.2d 685 (Okla. Ct. App. 1987) ..................................................... 21

*Sinclair Oil Corp. v. Levien,*
    280 A.2d 717 (Del. 1971) ............................................................... 16, 17

*Stone v. Ritter,*
    911 A.2d 362 (Del. 2006) ....................................................................... 6

*Trenwick Am. Litig. Trust v. Ernst & Young LLP,*
    906 A.2d 168 (Del. Ch. 2006) .............................................................. 16

*Varner v. Peterson Farms,*
    371 F.3d 1011 (8th Cir. 2004) ................................................................. 8

*Wright v. Cies,*
    648 P.2d 51 (Okla. Ct. App. 1982) ....................................................... 21

## STATUTES

Okla. Stat. tit. 12, § 95(A)(2) ....................................................................... 6

v

## **MISCELLANEOUS**

Restatement (Second) of Torts § 876(a) cmt. a (1979).................................................................. 24

## INTRODUCTION

Defendants protest too much.   Despite Defendants' repeatedly characterizing the allegations in Plaintiffs' Amended Complaint as "irresponsible," those allegations state valid claims and are fully supported by the documents Defendants produced in time to be reviewed before Plaintiffs filed the Amended Complaint.   Defendants' recently produced documents show that, in early 2002, Anadarko wanted to acquire Kerr-McGee's valuable oil and gas assets. Anadarko, however, concluded that Kerr-McGee's environmental liabilities were "deal killers" to the potential multi-billion dollar transaction, would cost *billions* of dollars, and would hang over the company for the next 20-30 years.   Anadarko also concluded that Kerr-McGee's environmental reserves were understated and calculated in a manner that was far more aggressive than the method Anadarko itself used.   Most significantly, Anadarko's financial advisor concluded that a spin-off of the liabilities with the Chemical Business—just as New Kerr-McGee did in 2006—was "unlikely to be viable."

At nearly the exact same moment when Anadarko was determining that the scope and magnitude of the environmental liabilities blocked a multi-billion dollar acquisition of Kerr-McGee's oil and gas assets, Kerr-McGee was commencing Project Focus—the first step in its scheme to jettison its poison pill of Legacy Liabilities.   After New Kerr-McGee achieved its goal and set Tronox adrift with the Legacy Liabilities in 2006, Anadarko immediately pounced and acquired a "clean" New Kerr-McGee for $18 billion.   These actions by New Kerr-McGee and Anadarko were more than "irresponsible."   They were illegal.

The Court already has sustained Plaintiffs' fraudulent conveyance claims.   As set forth below, Plaintiffs' Amended Complaint also states well-recognized claims for breach of fiduciary duty by New Kerr-McGee (Count IV), conspiracy to breach fiduciary duty by New Kerr-McGee

and Anadarko (Count V), and aiding and abetting breach of fiduciary duty by Anadarko (Count VI) (together, the "Amended Claims"). Contrary to Defendants' arguments, the Amended Claims are timely because New Kerr-McGee breached its fiduciary duties to Tronox within the limitations period, when it decided to proceed with the Spin-Off and the transfer of retiree-liabilities to Tronox even after a central premise of Tronox's viability—$150 million in land sales—had become untenable. In any event, the claims are timely because Oklahoma's discovery rule and the doctrines of adverse domination and fraudulent concealment tolled the statute of limitations until the Distribution, when Tronox first became an independent company outside of New Kerr-McGee's control as majority shareholder, or later. Further, Plaintiffs have sufficiently alleged that New Kerr-McGee owed and breached fiduciary duties to Tronox as the parent and promoter of a non-wholly-owned and insolvent subsidiary. Finally, Plaintiffs' conspiracy and aiding and abetting claims are viable because the well-pleaded allegations establish that Anadarko only agreed to acquire New Kerr-McGee once it jettisoned the Legacy Liabilities, and knew that Tronox could not survive on its own with the Legacy Liabilities.

Accordingly, as fully set forth below, Defendants' motion to dismiss should be denied in its entirety.

## BACKGROUND

In its Memorandum of Opinion ("Opinion") on Defendants' initial motion to dismiss, the Court held that Oklahoma's three-year statute of limitations applied to Plaintiffs' breach of fiduciary duty claim, "allow[ing] the Plaintiffs to complain of events subsequent to January 12, 2006." *In re Tronox, Inc.*, --- B.R. ----, 2010 WL 1253157, at *26 (Bankr. S.D.N.Y. Mar. 31, 2010). The Court, however, held that Plaintiffs had not "clearly specified the breach of duty." *Id.* at *28. Thus, the Court dismissed Plaintiffs' claim for breach of fiduciary duty as promoter

with leave to amend. *Id.*. In addition, the Court dismissed Plaintiffs' conspiracy and aiding and abetting claims, but held that Plaintiffs could amend to assert claims for "aiding or abetting or civil conspiracy in connection with a breach of fiduciary duty." *Id.* at *23.

The allegations in the Amended Complaint demonstrate that New Kerr-McGee breached its fiduciary duties to Tronox after January 12, 2006. Specifically, Plaintiffs allege that New Kerr-McGee proceeded with the Spin-Off even after it became clear that a fundamental premise of Tronox's post-spin viability—$150 million in proceeds from the sale of land in Henderson, Nevada—was unfounded. Indeed, New Kerr-McGee knew that sales involving approximately half of the total acreage had failed to close as scheduled due to outstanding environmental and zoning issues. (Am. Compl. ¶¶ 115-116) In fact, they never closed. (*Id.* ¶ 99) Yet, on March 8, 2006, New Kerr-McGee approved the completion of the Spin-Off and the transfer of retiree liabilities to Tronox upon the Distribution. (*Id.* ¶ 117) In addition, the Amended Complaint alleges that New Kerr-McGee owed and breached fiduciary duties to Tronox as the parent and promoter of a non-wholly-owned and insolvent subsidiary. (*Id.* ¶¶ 165-173) Finally, the Amended Complaint includes sufficient allegations to allow Plaintiffs to invoke Oklahoma's discovery rule, or the doctrines of adverse domination or fraudulent concealment, to toll any applicable limitations period. (*Id.* ¶ 175)

Plaintiffs also amended their complaint to assert claims that Anadarko conspired with, and aided and abetted, New Kerr-McGee in its breaches of fiduciary duties to Tronox. Plaintiffs' allegations in support of these claims are largely based on documents produced by Defendants shortly before Plaintiffs filed their Amended Complaint on April 28, 2010. As an initial matter, Defendants repeatedly mischaracterize Plaintiffs' access to Defendants' document production at the time Plaintiffs filed their Amended Complaint. (*See* Mot. at 1, 19, 27) Defendants produced

over 1.1 million pages of documents on April 8, 2010—one week after the date agreed upon by the parties for the "substantial completion" of document production and one week after the Court's Opinion. Despite their best efforts, Plaintiffs did not finish "loading" these 1.1 million pages for electronic document review until April 21, 2010, just one week before the April 28, 2010 due date for the Amended Complaint. As a result of Defendants' massive, tardy document production, Plaintiffs were unable to complete their review of Defendants' documents prior to the filing of the Amended Complaint. In addition, Defendants have recently produced hundreds of thousands of pages of documents designated as jointly privileged, with the bulk of these documents being produced this month. In short, it is simply not true that Plaintiffs were able fully to review Defendants' "substantially completed document production" prior to the filing of the Amended Complaint. (Mot. at 1)

Nevertheless, the documents that Plaintiffs did have an opportunity to review and incorporate into the Amended Complaint further support their conspiracy and aiding and abetting claims against Anadarko. Among other things, Defendants' documents show:

- "No later than January 2002, Anadarko retained Merrill Lynch to analyze potential transactions ... to separate the Chemical Business and Legacy Liabilities if Anadarko acquired them along with New Kerr-McGee's prized oil and gas assets. Anadarko was attempting to find a way to separate the Chemical Business and Legacy Liabilities through a '*clean, certain exit ... which minimizes any environmental liability exposure* ... .'" (Am. Compl. ¶ 46)

- "Merrill Lynch reached the same conclusion as Kerr-McGee: a transaction would not be possible until New Kerr-McGee shed the Legacy Liabilities." (*Id.*) Merrill Lynch concluded that a "Spinoff/IPO" of the Chemical Business was "unlikely to be viable" as the "[s]ize / growth profile would make [the Chemical Business] highly unattractive as a standalone public entity." (*Id.*)

- Anadarko conducted due diligence on the Legacy Liabities and confirmed they "were a poison pill to any acquisition," including that Kerr-McGee would spend *billions* of dollars on future remediation, and that Kerr-McGee had "over 500 active pollution sites" and an additional "1,000 sites with KM ownership." Anadarko concluded "it could not risk that '[a]ll the liability would transfer to APC.'" (*Id.* ¶ 47)

- Anadarko identified numerous problems with New Kerr-McGee's environmental reserves, including that New Kerr-McGee's reserves "were only 'sufficient to fund two years of remediation at current level'"; "Anadarko reserved for the 'total life of remediation projects' while Kerr-McGee reserved for only a few years"; and Anadarko's ratio of reserve amount to environmental spending was more than *six times* greater than New Kerr-McGee's. (*Id.* ¶ 48)

- In the end, "Anadarko concluded that the Legacy Liabilities would be 'very difficult to transfer to other companies even if the [chemical] asset is sold' and '[a]ny sale of the chemical assets would probably require ongoing management of remediation liabilities by Anadarko personnel.'" "As Anadarko later explained, the Chemical Business and the Legacy Liabilities were the 'deal killer for APC. Too much liability.'" (*Id.* ¶ 49)

- Although the Legacy Liabilities were too large for Anadarko—a company with a market capitalization of approximately $20 billion in 2005—to risk acquiring them, New Kerr-McGee spun them off along with a small, cyclical chemical company in a deteriorating market. (*Id.* ¶¶ 5, 83)

- Within *a week* after the Spin-Off was completed and the poison pill of the Legacy Liabilities eliminated, Lehman contacted New Kerr-McGee on April 5, 2006 to formally indicate Anadarko's interest in acquiring New Kerr-McGee. Less than three months after the Spin-Off, Anadarko offered to acquire New Kerr-McGee. (*Id.* ¶ 185)

These allegations, combined with Plaintiffs' original allegations, give rise to a plausible—indeed compelling—inference that Anadarko agreed with New Kerr-McGee to acquire it once it "was able to separate the Legacy Liabilities and the Chemical Business from its valuable oil and gas assets." (*Id.* ¶ 50) As set forth below, nothing more is required to survive a motion to dismiss. Certainly, Plaintiffs should be permitted to fully explore these important claims through discovery.

## ARGUMENT

**I.    The Amended Claims Are Timely.**

### A.    The Amended Claims Accrued Within The Limitations Period.

As this Court previously recognized, Oklahoma's three-year statute of limitations applies to Plaintiffs' breach of fiduciary duty claim. 2010 WL 1253157, at *26; Okla. Stat. tit. 12,

§ 95(A)(2); *Resolution Trust Corp. v. Greer*, 911 P.2d 257 (Okla. 1995)) The same three-year limitations period applies to Plaintiffs' conspiracy and aiding and abetting claims because they are based on Plaintiffs' breach of fiduciary duty claim. (*See* Mot. at 9; *Meyer v. Town of Buffalo*, 2007 WL 2436302, at *6 (W.D. Okla. Aug. 22, 2007) (statute of limitations for civil conspiracy is supplied by the underlying wrongdoing))[1] Accordingly, the Amended Claims are timely if they accrued after January 12, 2006.

The Amended Complaint adequately alleges claims for breach of fiduciary duty, conspiracy, and aiding and abetting breach of fiduciary duty that accrued after January 12, 2006. Specifically, Plaintiffs allege that New Kerr-McGee, which controlled Tronox as its majority shareholder following the IPO, "fail[ed] to stop the Spin-Off at any time before its completion on March 31, 2006, especially when it became clear that a fundamental premise of Tronox's purported viability—$150 million in proceeds from land sales during Tronox's first three years of existence—was untenable." (Am. Compl. ¶ 166)[2] After the IPO on November 28, 2005, New Kerr-McGee had the option not to complete the Spin-Off. Instead of putting on the brakes, New Kerr-McGee elected to complete the separation by approving at a March 8, 2006 board meeting

---

[1]    Defendants' statement that Plaintiffs "recognize" that their conspiracy claim is really based on fraud because of allegations that "the conspiracy was fraudulently concealed until February 1, 2007" is simply wrong. (Mot. at 24 n. 23) Plaintiffs do not allege fraudulent concealment with respect to the conspiracy claim (rather the discovery rule) and Defendants omit that the Amended Complaint alleges that Tronox could not have discovered Anadarko's role in the conspiracy "until February 1, 2007 *at the earliest.*" (Am. Compl. ¶ 189) Moreover, Defendants' attempt to mold Plaintiffs' breach of fiduciary duty claims into fraud claims ignores the rest of the well-pleaded allegations that, as set forth herein, demonstrate that Tronox has asserted claims for breach of fiduciary duty by New Kerr-McGee as a promoter, as the parent of an insolvent subsidiary, or as the parent of a non-wholly-owned subsidiary, as well as Anadarko's role in conspiring to commit and aiding and abetting those breaches. (*See, e.g.,* Am. Compl. ¶ 46-51, 124, 127-128, 163-170, 180-187, 193-194)

[2]    *See, e.g., In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 564 (Bankr. D. Del. 2008) ("Fiduciaries breach their duty of loyalty by intentionally failing to act in the face of a known duty to act, demonstrating a conscious disregard for their duties.") (citing *Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006)); *Litig. Trust of MDIP, Inc. v. Rapoport*, 2004 WL 3101575, at *3–5 (D. Del. Nov. 29, 2004) (fiduciary's failure to take corrective action to address company's poor financial condition was breach of fiduciary duty).

the distribution of Tronox's Class B Common Stock to New Kerr-McGee's shareholders and the additional transfer of retiree liabilities to Tronox that were grossly above market effective upon the Distribution. (Am. Compl. ¶¶ 113, 115–16, 166) These steps in March 2006 set the stage for Tronox to become an independent company on April 1, 2006, cut Tronox loose from the security of its former parent, and burdened it with additional liabilities, thereby injuring Tronox and enriching New Kerr-McGee. Accordingly, even apart from any tolling, Tronox's claims for these breaches accrued on March 8, 2006 at the earliest and are timely. *F.D.I.C. v. Grant*, 8 F. Supp. 2d 1275, 1299 (N.D. Okla. 1998) (claims for breach of fiduciary duty do not accrue until a breach proximately causes damage to the plaintiff).

Contrary to Defendants' assertions, New Kerr-McGee's approvals of the Distribution and the transfer of retiree liabilities in March 2006 do not simply relate back to the execution of the Employee Benefits Agreement ("EBA") on November 28, 2005 or any other event prior to January 12, 2006. (Mot. at 10, 12) The EBA did not impose an "obligation" on New Kerr-McGee to complete the Distribution or approve the transfer of retiree liabilities to Tronox following the IPO. To the contrary, New Kerr-McGee remained in control of Tronox as its majority shareholder after November 28, 2005 and had the express right to scuttle the Spin-Off when it became clear that a fundamental premise of Tronox's viability—the Henderson land sales—was untenable. (Am. Compl. ¶¶ 115, 166) Although the EBA was signed on November 28, 2005, its performance was expressly contingent on the occurrence of the Distribution. (EBA § 12.01)[3] New Kerr-McGee, however, was "not required to complete the Distribution," but rather retained "the sole discretion to decide if and when the Distribution [would] occur and determine the form, the structure, and all other terms of any transactions to effect the

---

[3]    The EBA is attached as Exhibit A to the Affidavit of Lydia Protopapas, Esq. in Support of the Defendants' Motion to Dismiss Counts IV, V, and VI of the Amended Adversary Complaint.

Distribution." (Amend. No. 6 to Tronox Form S-1 at 5, attached hereto as Ex. A; *see also id.* at 27 (similar)) Instead of exercising this discretion consistent with its fiduciary duties, on March 8, 2006, New Kerr-McGee "approved the completion of the Spin-Off through the distribution of Tronox's Class B Common Stock" and "also approved the further transfer of defined benefit and retiree-related liabilities from New Kerr-McGee to Tronox upon the distribution date." (Am. Compl. ¶ 116) New Kerr-McGee made these decisions despite knowing that Tronox likely would never collect the $150 million in proceeds from land sales that were critical to Tronox's viability as a stand-alone entity. (*Id.* ¶¶ 115, 166) Thus, contrary to Defendants' assertion, New Kerr-McGee's distribution of Tronox's stock and transfer of retiree liabilities to Tronox were not "the unabated inertial consequences" of the EBA or New Kerr-McGee's October 6, 2005 decision to proceed with the Spin-Off (or any other event), but rather were the result of the New Kerr-McGee Board's independent and conscious decision to exercise its discretion and complete the Spin-Off on March 8, 2006.[4]

Finally, contrary to Defendants' assertion (Mot. at 12–13), New Kerr-McGee's decision to proceed with the Distribution and complete the Spin-Off caused Tronox "new and accumulating" injury. Until the Distribution on March 31, 2006, New Kerr-McGee remained in control of Tronox as Tronox's majority shareholder and should have—consistent with its

---

[4]    Defendants' reliance on *Varner v. Peterson Farms*, 371 F. 3d 1011 (8th Cir. 2004), is therefore misplaced. In *Varner*, the plaintiff brought suit under the antitrust laws and alleged that a contract entered into outside the limitations period was an illegal "tying arrangement." The court rejected the plaintiff's argument that the defendant's enforcement of the contract "restarted" the limitations period because the enforcement was an "unabated inertial consequence" of the contract. *Varner*, 371 F.3d at 1019-20. Here, as explained above, the EBA did not require New Kerr-McGee to approve the distribution and proceed with the transfer of retiree liabilities following the IPO. *Hughes v. LaSalle Bank, N.A.*, 419 F. Supp. 2d 605 (S.D.N.Y. 2006), *vacated on other grounds*, 2007 WL 4103680 (2d Cir. Nov. 19, 2007), is likewise distinguishable. There, the plaintiff alleged that the defendant's investment decision, made outside of the limitations period, breached its fiduciary duty to the plaintiff. 419 F. Supp. 2d at 612. The court rejected plaintiff's argument that the continuation of the investment into the limitations period tolled the limitations period. *Id.* at 613. Thus, unlike the situation here, the defendant in *Hughes* took no independent, affirmative action in breach of its fiduciary duties within the limitations period.

fiduciary duties to its insolvent, non-wholly-owned subsidiary—remedied the assumption of Legacy Liabilities and massive debt that it unilaterally imposed on Tronox in the Spin-Off. (Ex. A, Amend. No. 6 to Tronox Form S-1 at 24–25 (stating that after the IPO, New Kerr-McGee as majority shareholder had "control over [Tronox's] decisions to enter into significant corporate transactions," "the ability to prevent any transactions that it does not believe are in [New] Kerr-McGee's best interest," and was "able to control, directly or indirectly ... all matters affecting Tronox")) Instead, New Kerr-McGee decided to approve the Distribution, thereby piling additional liabilities on Tronox and setting it adrift as an insolvent company that could never survive on its own. (Am. Compl. ¶¶ 167-68; EBA § 12.01 (EBA expressly conditioned the transfer of retiree liabilities on occurrence of Distribution))

## B. Accrual Of The Amended Claims Was Tolled Until Well Within The Limitations Period.

Even if the Amended Complaint failed to allege post-January 12, 2006 breaches of fiduciary duty, the Amended Claims are timely because the statute of limitations should be tolled until April 1, 2006 at the earliest, when New Kerr-McGee no longer controlled Tronox and Tronox became an independent company. The statute of limitations should be tolled for three independent reasons: the discovery rule, the doctrine of adverse domination, and the doctrine of fraudulent concealment.

First, although Defendants do not address it, Oklahoma's discovery rule suspended the accrual of the Amended Claims until well within the limitations period. The discovery rule "shields a plaintiff from the accrual of a cause of action until he discovers, or by the exercise of reasonable diligence should have discovered that he may have an actionable claim." *Lancaster v. Hale*, 152 P.3d 890, 892 (Okla. Civ. App. 2006); *see also Resolution Trust Corp. v. Grant*, 901 P.2d 807, 813 (Okla. 1995) (recognizing Oklahoma's discovery rule). Moreover, a complaint

may not be dismissed as untimely unless the complaint itself conclusively demonstrates that the discovery rule or any other ground for tolling does not apply. *Huffman v. Cohen*, 2009 WL 1227648, at *7 (N.D. Okla. 2009) (resolution of the discovery rule's application "must be submitted to the [factfinder] when the facts about the injury's discovery are disputed"); *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 530 (S.D.N.Y. 2007) (declining to dismiss complaint as untimely where it did not "conclusively appear" that plaintiff had knowledge of facts from which injury could be inferred).

Here, the Amended Complaint alleges that "Tronox did not discover, and could not have discovered in the exercise of reasonable diligence, the facts of New Kerr-McGee's fiduciary breaches until April 1, 2006 at the earliest." (Am. Compl. ¶ 175) Until that time, "Tronox was under the control of New Kerr-McGee, which designed and oversaw the Spin-Off" and therefore "could not have discovered New Kerr-McGee's fiduciary breaches until it was spun-off as an independent company outside of New Kerr-McGee's control." (*Id.*) In addition, "[s]everal of Tronox's senior executives, including its CEO and CFO, were appointed shortly before the Spin-Off and had very little knowledge regarding the scope of the Legacy Liabilities." (*Id.*) Taken as true, these allegations show that Tronox did not discover, and could not have discovered in the exercise of reasonable diligence, New Kerr-McGee's fiduciary breaches until April 1, 2006 at the earliest. In addition, Tronox did not discover, and could not have discovered in the exercise of due diligence, its conspiracy or aiding and abetting claims until February 1, 2007, at the earliest because, among other things, the information necessary to uncover Anadarko's role in New Kerr-McGee's breaches of its fiduciary duties was not in Tronox's possession. (*Id.* ¶¶ 189, 195) Accordingly, Tronox's Amended Claims are timely under the discovery rule. *See, e.g.,*

*Huffman*, 2009 WL 1227648, at *7 (discovery rule precluded summary judgment on breach of fiduciary duty claim).

Second, New Kerr-McGee's adverse domination of Tronox tolled the statute of limitations until April 1, 2006. Under the doctrine of adverse domination, "the statute of limitations is tolled for as long as a corporate plaintiff is controlled by the alleged wrongdoers." *In re Adelphia Commc'ns Corp.*, 365 B.R. 24, 58 (Bankr. S.D.N.Y. 2007). The doctrine recognizes that "if a corporation can act only through the controlling wrongdoers, it cannot reasonably be expected to pursue a claim which it has against those wrongdoers until they are no longer in control." *In re Magnesium Corp. of Am.*, 399 B.R. 722, 751 (Bankr. S.D.N.Y. 2009). Here, New Kerr-McGee controlled Tronox as its majority shareholder until March 31, 2006, when it distributed its majority ownership of Tronox stock to New Kerr-McGee's shareholders. (Am. Compl. ¶ 114; Ex. A, Amend. No. 6 to Tronox Form S-1 at 24–25 (noting that after the IPO, New Kerr-McGee as majority shareholder would "have control over [Tronox's] decisions to enter into significant corporate transactions," would "have the ability to prevent any transactions that it does not believe are in [New] Kerr-McGee's best interest," and would "be able to control, directly or indirectly … all matters affecting Tronox")) Accordingly, Tronox could not have brought the Amended Claims against New Kerr-McGee and Anadarko until April 1, 2006 at the earliest, when Tronox became an independent entity outside of New Kerr-McGee's control.

Defendants mistakenly rely on *Grant* to avoid tolling under the doctrine of adverse domination. Indeed, the Court has already rejected Defendants' first argument under *Grant*— that the doctrine only applies to fraud claims (*see* Mot. at 14)—instead holding that Oklahoma law does not foreclose Plaintiffs from stating a claim for breach of the duty of loyalty and relying

11

on the doctrine of adverse domination. 2010 WL 1253157, at *27 (analyzing *Grant* and holding "it would not be appropriate at this point to find that the Oklahoma courts would not permit a suit against a controlling corporation for a breach of fiduciary duty that is akin to the breach of the duty of loyalty, and to apply a three-year statute of limitations and the doctrine of adverse domination"). Thus, the Court should reject Defendants' request for reconsideration for the reasons set forth in its Opinion.[5]

Defendants' assertion that the doctrine of adverse domination does not apply because Tronox had a "majority of disinterested directors" misconstrues the doctrine and Plaintiffs' fiduciary duty claim. As the cases cited by Defendants illustrate (Mot. at 15–16), the "majority of disinterested directors" rule applies when a plaintiff brings a fiduciary duty claim against individual directors. Here, however, Plaintiffs have not brought suit against individual directors, but rather have sued New Kerr-McGee, which as Tronox's majority shareholder exercised absolute control over Tronox and its board until the completion of the Spin-Off. (Am. Compl. ¶ 176; Ex. A, Amend. No. 6 to Tronox Form S-1 at 24 (noting that after Tronox's IPO, New Kerr-McGee would remain Tronox's majority shareholder and would "be entitled to nominate a majority of [Tronox's] board of directors and will have the ability to control the vote in any election of directors")) There is simply no way that Tronox and its board could have sued New Kerr-McGee while New Kerr-McGee controlled that very decision. The whole point of the doctrine of adverse domination is to toll the limitations period in these circumstances. *Cf. Grant*, 901 P.2d at 811 ("The rationale for the [disinterested majority test] is the control of the board by

---

[5]    Defendants ask the Court to reconsider its holding based on Fifth Circuit decisions holding that a breach of the duty of loyalty constitutes "constructive fraud" and the "doctrine of adverse domination cannot be triggered by constructive fraud." (Mot. at 14 n. 11) However, these decisions are not controlling, and as the Court noted in its Opinion, Oklahoma law does not foreclose the application of adverse domination to claims for breach of the duty of loyalty. 2010 WL 1253157, at *27.

wrongdoers precludes the possibility for filing suit, and that the controlling parties cannot be expected to sue themselves or to initiate an action contrary to their own interests.").

Finally, the doctrine of fraudulent concealment tolls the three-year statute of limitations for Plaintiffs' breach of fiduciary duty claim until April 1, 2006. "The fraudulent concealment doctrine operates to toll the statute if the plaintiff alleges:  (1) that the defendants concealed the cause of action; (2) that the plaintiff did not discover the cause of action until some point within [the limitations period]; and (3) that the plaintiff's continuing ignorance was not attributable to lack of diligence on its part." *SEC v. Power*, 525 F. Supp. 2d 415, 424 (S.D.N.Y. 2007). "Fraudulent concealment constitutes an implied exception to the statute of limitations, and a party who wrongfully conceals material facts and prevents a discovery of his wrong ... is not allowed to take advantage of his wrong by pleading the statute." *Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 54-55 (Okla. 2008).

Here, the Complaint alleges all elements of fraudulent concealment.  New Kerr-McGee concealed its breaches of fiduciary duty from Tronox by secretly designing and implementing its fraudulent two-step scheme to transfer the Legacy Liabilities to Tronox.  (Am. Compl. ¶ 177) Among other things, Plaintiffs allege:

- New Kerr-McGee planned Project Focus in 2001 and concealed its true purpose— "segregating the Legacy Liabilities from the oil and gas assets as the first step to avoiding responsibility altogether for these potentially massive historic liabilities" (*id.* ¶ 43);

- New Kerr-McGee continued to fund the Legacy Liabilities at the parent level after Project Focus, knowing that its "small chemical unit did not have sufficient assets to manage the Legacy Liabilities" (*id.* ¶ 56);

- New Kerr-McGee drafted an Assignment, Assumption & Indemnity Agreement to "finish off" Project Focus—including a provision that "requir[ed] the Chemical Business to indemnify New Kerr-McGee for any losses relating to or arising out of the Legacy Liabilities" to protect New Kerr-McGee from the EPA's $179 million Manville demand on April 15, 2005—and backdated the agreement from May 2005 to December 31, 2002 (*id.* ¶¶ 55, 69–73);

13

- "Beginning in 2004, New Kerr-McGee replaced certain key senior executives of the Chemical Business with people who knew little or nothing about the Legacy Liabilities," including a President (and future CEO) who "had no knowledge of the Legacy Liabilities, and had never heard of Project Focus" (*id.* ¶¶ 59, 177);

- Despite knowing that the Legacy Liabilities were massive and that separation from the Legacy Liabilities could be "complicated under a bankruptcy scenario," New Kerr-McGee decided to Spin-Off Tronox with an illusory indemnity for the Legacy Liabilities, $550 million in debt, and less cash than Tronox "would be required to spend in the first year following the Spin-Off just to service the Legacy Liabilities and debt it was forced to assume through the Spin-Off" (*id.* ¶¶ 89–92);

- "New Kerr-McGee also materially understated the Legacy Liabilities that it dumped on Tronox through the Spin-Off" in setting reserves (*id.* ¶ 100); and

- New Kerr-McGee failed to disclose "numerous additional wood treatment sites where a Kerr-McGee entity potentially may be responsible for substantial clean-up costs … even though New Kerr-McGee was aware of these sites at the time of the Spin-Off," as well as "260 … agricultural chemical sites, five …former chemical manufacturing sites, two … former fertilizer manufacturing sites, and several other … sites," which Tronox only recently discovered in preparation for this litigation (*id.* ¶¶ 101-102).

In addition, the Complaint alleges that "Tronox did not discover, and could not have discovered through reasonable diligence, the facts of New Kerr-McGee's breaches until April 1, 2006 at the earliest because of New Kerr-McGee's fraudulent concealment." (*Id.* ¶ 177)

In their Motion, Defendants argue that the Amended Complaint fails to allege fraudulent concealment because "Plaintiffs have failed to identify any details regarding their supposed due diligence" in discovering the Amended Claims. (Mot. at 18) To the contrary, Plaintiffs' allegation that New Kerr-McGee's concealment of its wrongdoing precluded Plaintiffs from discovering the wrongdoing in the exercise of due diligence satisfies the due diligence prong of fraudulent concealment. *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000) (the complaint sufficiently pled due diligence with specificity where it alleged that defendants' concealment prevented the plaintiff from "discover[ing] the conspiracy at an earlier date by the exercise of due diligence"); *In re Magnetic Audiotape Antitrust Litig.*, 2002 WL 975678, at *2-3 (S.D.N.Y. May 9, 2002) (similar). Indeed, requiring a plaintiff to allege that

it had actually undertaken due diligence to discover the plaintiff's wrongdoing would perversely undermine the purpose of the fraudulent concealment doctrine by allowing those wrongdoers who have most effectively concealed their conduct—thereby leaving the plaintiff in the dark as to its injury and giving the plaintiff no reason to conduct due diligence—to escape liability. *See id.* ("Without a tip-off that a price-fixing conspiracy existed, plaintiffs had no reason to exercise due diligence. Thus, defendants' argument that the Amended Complaint is deficient because it fails to state what due diligence plaintiffs undertook to learn of the conspiracy is without merit.").

In sum, the conscious decisions of New Kerr-McGee on March 8, 2006 to set Tronox adrift as an independent company and to dump additional liabilities on Tronox were new and independent acts that breached New Kerr-McGee's fiduciary duties and that inflicted a new and accumulating injury on Tronox. Even if the Amended Claims did not accrue as a result of these decisions, the statute of limitations should be tolled under the discovery rule and the doctrines of adverse domination and fraudulent concealment. Accordingly, Plaintiffs' Amended Claims are timely.

## II.    The Amended Complaint States A Claim For Breach Of Fiduciary Duty.

The Amended Complaint sufficiently alleges that New Kerr-McGee owed—and breached—fiduciary duties to Tronox as the parent and promoter of a non-wholly-owned and insolvent subsidiary. Defendants take aim at each one of these duties, but miss their target each time.

First, between November 28, 2005 and March 31, 2006, when Tronox had minority shareholders, New Kerr-McGee owed fiduciary duties to Tronox as the parent of a non-wholly owned subsidiary. It is well-settled law that parent corporations owe fiduciary duties to subsidiaries that are not wholly-owned. *Murray v. Miner*, 876 F. Supp. 512, 516–17 (S.D.N.Y.

1995) (citing cases under Delaware law holding that a non-wholly-owned subsidiary may sue its corporate parent for breach of fiduciary duty); *Burton v. Exxon Corp.*, 583 F. Supp. 405, 414 (S.D.N.Y. 1984) (stating that "by reason of Exxon's status [as a parent] and domination, it is clear that Exxon owed [its subsidiary] a fiduciary duty.")  Indeed, the cases cited by Defendants support this fundamental proposition. *See Trenwick Am. Litig. Trust v. Ernst & Young L.L.P.*, 906 A.2d 168, 192 n.66 (Del. Ch. 2006) ("Although it is said in general terms that a parent corporation owes a fiduciary obligation to its subsidiaries, this obligation does not arise as such unless the subsidiary has minority stockholders.") (cited in Mot. at 21).

The duty that a corporate parent owes to a non-wholly-owned subsidiary is particularly stringent when the corporate parent is engaging in self-dealing.  As the Supreme Court of Delaware explained:

> A parent does indeed owe a fiduciary duty to its subsidiary when there are parent-subsidiary dealings.  However, this alone will not evoke the intrinsic fairness standard. This standard will be applied only when the fiduciary duty is accompanied by self-dealing—the situation when a parent is on both sides of a transaction with its subsidiary. Self-dealing occurs when the parent, by virtue of its domination of the subsidiary, causes the subsidiary to act in such a way that the parent receives something from the subsidiary to the exclusion of, and detriment to, the minority stockholders of the subsidiary.

*Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971); *accord Burton*, 583 F. Supp. at 415 ("The intrinsic fairness standard will be applied when the fiduciary duty is accompanied by self-dealing."); *Getty Oil Co. v. Skelly Oil Co.*, 267 A.2d 883, 887 (Del. 1970) ("The test of 'intrinsic fairness' has been applied to parent-subsidiary business where the parent controls the making of the transaction and the fixing of its terms.").

That is precisely the situation here.  As the parent corporation of Tronox after the IPO, New Kerr-McGee owed Tronox fiduciary duties.  Because New Kerr-McGee's completion of the

16

Spin-Off involved extensive self-dealing "where the parent control[led] the making of the transaction and the fixing of its terms," those fiduciary duties are tested by a standard of "intrinsic fairness." *Getty Oil*, 267 A.2d at 887.  New Kerr-McGee breached its fiduciary duties under the intrinsic fairness standard to Tronox by "engaging in and completing a transaction— the Spin-Off—that lacked intrinsic fairness, involved gross overreaching, was in bad faith and/or was otherwise unfair to Tronox and its minority shareholders."  (Am. Compl. ¶166)  Among other things, New Kerr-McGee:

- "[F]ailed to stop the Spin-Off or take any action to protect Tronox's minority shareholders" even after it was clear that land sales upon which Tronox's viability depended were no longer likely to occur (*id.* ¶ 115);

- "[A]pproved the completion of the Spin-Off through the distribution of Tronox's Class B Common Stock to New Kerr-McGee's shareholders" at a March 8, 2006 meeting (*id.* ¶ 116); and

- "[A]pproved the further transfer of defined benefit and retiree-related liabilites from New Kerr-McGee to Tronox" at the same meeting (*id.*; *see also supra* § I.A).

Each of these acts was a breach of New Kerr-McGee's fiduciary duties to Tronox.

Defendants' argument that no minority shareholder is a plaintiff in this case is entirely beside the point.  As numerous cases make clear, New Kerr-McGee's duties as a parent of a non-wholly-owned subsidiary ran to Tronox as well as the individual minority shareholders.  *See Sinclair Oil*, 280 A.2d at 720 ("A parent does indeed owe a fiduciary duty *to its subsidiary* ...") (emphasis added); *Getty Oil*, 267 A.2d at 888 ("the parent owes a fiduciary duty *to its subsidiary* ...") (emphasis added).  Indeed, a court in this district determined that "because of a corporate parent's fiduciary duties to a subsidiary, the subsidiary may institute proceedings against the parent if it has sustained liability to third parties as a result of the parent's control."[6]

---

[6]    The court in *Murray* also recognized that a subsidiary's fiduciary duty claims against a parent belong to a debtor's trustee in bankruptcy. *Id.* at 516–17.

*Murray*, 876 F. Supp. at 516–17. Defendants' argument lacks merit because Tronox is a proper

plaintiff with respect to claims of breaches of New Kerr-McGee's fiduciary duties *to Tronox*.

Second, New Kerr-McGee owed Tronox fiduciary duties because Tronox was insolvent.

Plaintiffs allege that after the IPO but before the completion of the Spin-Off, Tronox was "an

insolvent and severely undercapitalized company." (Am. Compl. ¶ 122) Accordingly, during

this time, New Kerr-McGee owed fiduciary duties to Tronox's creditors. *See N. Am. Catholic*

*Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101–02 (Del. 2007) (stating that

creditors of insolvent corporations have standing to pursue claims for breach of fiduciary duty).

Defendants do not dispute that New Kerr-McGee had fiduciary duties to Tronox and its creditors

*after* the IPO—Defendants' only challenge to New Kerr-McGee's insolvency-based duties "as to

the period after the IPO" is that fiduciary duty claims are time-barred.[7] (Mot. at 22) New Kerr-

McGee breached these duties with its decision and actions to continue with the Distribution and

Spin-Off of an insolvent and severely undercapitalized company that was destined to fail. (*See,*

*e.g.*, Am. Compl. ¶¶ 122, 168) Moreover, these duties existed even before the IPO because

Tronox was insolvent. *See, e.g., Roselink Investors, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209,

215 (S.D.N.Y. 2004) (noting that "directors of a wholly-owned subsidiary, who otherwise would

owe fiduciary duties only to the parent, also owe fiduciary duties to creditors of the subsidiary"

when the subsidiary is insolvent). During the time Tronox was insolvent, New Kerr-McGee's

duties to its subsidiary (which would otherwise only run to its own benefit as parent) also ran to

creditors, and thus were not limited by the holding in *Anadarko Petroleum Corp. v. Panhandle*

*E. Corp.*, 545 A.2d 1171 (Del. 1988).[8]

---

[7]    Tronox's fiduciary duty claims are not time-barred, as discussed in § I, *supra*.

[8]    The holding in *Anadarko* is not as broad as Defendants suggest. *Anadarko* dealt with a parent's
duties to prospective shareholders of the subsidiary, not the subsidiary itself. *Id.* at 1174; *In re*
*Sw. Supermarkets, LLC*, 376 B.R. 281, 283 (Bankr. D. Ariz. 2007) ("The facts of Anadarko did

18

Finally, New Kerr-McGee owed fiduciary duties to Tronox as its corporate promoter.

New Kerr-McGee does not contest that it was a promoter of Tronox and thus owed it fiduciary

duties.[9] (Mot. at 22–23)  Instead, it argues that its duties ended with the IPO.  (*Id.* at 22)  But the

very authorities upon which Defendants rely belie their argument:

> At common law the promoters of a corporation stand in a fiduciary
> relation to the corporation, charged with the duty of good faith as
> in cases of other trusts.  **The fiduciary relation continues until
> the plan or scheme of promotion has been accomplished.**
> Where the plan contemplates simply the organization of the
> corporation, the promoters' duties end there; but where the plan
> includes the continued operation of the corporation, its incurrence
> of taxes, debts and liabilities, and the procurement of capital by
> sale of the corporation's stock to the public, the obligation of good
> faith continues to the completion of the plan.

*Bailes v. Colonial Press, Inc.*, 444 F.2d 1241, 1244 (5th Cir. 1971) (emphasis added) (cited in

Mot. at 22); *accord EPS Solutions Corp. v. Deloitte & Touche, LLP,* No. 00C7411, 2002 WL

441510, at *5 (N.D. Ill. March 20, 2002)  ("[A] promoter's liability as a fiduciary ends only after

the promotion plan has been completed; it does not end with mere incorporation if the promotion

plan goes beyond that period.").  Defendants' plan or scheme of promotion was not completed

until after the Distribution date of March 31, 2006 as New Kerr-McGee's "arranging for the

distribution of Tronox's Class B Common Stock on March 31, 2006" was an "activit[y] as a

corporate promoter."  (Am. Compl. ¶ 171)  In fact, in arguing that Plaintiffs' claims are time-

barred, Defendants argue strenuously in their motion that the Distribution and other post-IPO

acts were all part of the same plan.  (Mot. at 10–12)  And public filings also confirm that Kerr-

---

[9]      not raise the issue of whether any fiduciary duty was owed directly to the subsidiary.  The only
issue in *Anadarko*  was whether fiduciary duties were owed to prospective shareholders, either in
addition to or in lieu of duties owed to the sole shareholder, the parent."); *In re Mirant Corp.,* 326
B.R. 646, 651 (Bankr. N.D. Tex. 2005) (rejecting an "overly-broad reading of *Anadarko*.").
Likewise, the Court previously stated in its Opinion, "on this motion to dismiss and the detailed
allegations of the Complaint regarding insolvency, it would be premature to dismiss the
[promoter] claim on the ground that the Delaware courts would not recognize it."  2010 WL
1253157, at *25.

McGee's plan to create an *independent* public company was not completed until March. (Ex. A, Amend. No. 6 to Tronox Form S-1 at 24–25) Thus, Defendants have effectively conceded that their promoter duties ran until March 31, 2006.

New Kerr-McGee breached its fiduciary duties to Tronox as a promoter "by failing to act in good faith by creating and promoting Tronox when it knew or should have known that Tronox could never survive as an independent company." (Am. Compl. ¶ 173) New Kerr-McGee failed to act in good faith when it saddled the newly formed Tronox with massive Legacy Liabilities, forced Tronox to enter into onerous and unfair agreements, failed to disclose the true scope of the Legacy Liabilities, and set up Tronox as an insolvent and undercapitalized entity. (*Id.* ¶¶ 90–94, 98–104, 122) After the IPO, New Kerr-McGee continued to breach its fiduciaries duties by continuing to transfer liabilities to Tronox in March 2006, approving the Distribution, and failing to stop the Spin-Off when it knew Tronox could not survive on its own. (Am. Compl. ¶¶ 115–16, 122, 173) These breaches continued until the promotion plan ended with the Distribution.

## III.    The Amended Complaint States A Claim For Conspiracy To Breach Fiduciary Duties.

As discussed above, the documents that Tronox was able to review prior to filing the Amended Complaint confirmed what Tronox suspected and what Defendants' counsel adamantly denied:    Anadarko previously pursued a potential acquisition of New Kerr-McGee, but concluded after due diligence that the Legacy Liabilities were a "deal killer" to the potential multi-billion dollar acquisition of Kerr-McGee's oil and gas business. So Anadarko waited until New Kerr-McGee dumped the Legacy Liabilities through the Spin-Off. (Am. Compl. ¶¶ 46-50; *cf.* 2/6/09 Hrg. Tr. at 59-60, attached hereto as Ex. B (Anadarko's counsel:  "[T]he environmental liabilities reserved in public documents and in SEC filings was 220 million dollars.  In the 2005 and 2006 time period the company was ultimately sold for approximately

twenty billion dollars. So the idea that this … 220 million dollars of environmental reserves was what was driving a twenty-plus billion dollar company just really doesn't withstand very much scrutiny."))

The allegations in the Amended Complaint are more than sufficient to state a claim for civil conspiracy, especially given the inherently secretive nature of conspiracies.

## A.    Plaintiffs State A Civil Conspiracy Claim.

To state a claim for conspiracy, Plaintiffs must allege:    (1) the existence of a confederation or combination of two or more persons; (2) that an unlawful act was done in furtherance of the conspiracy; and (3) that the conspirators caused actual damage to the plaintiff. *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987); *see also Wright v. Cies*, 648 P.2d 51, 53 n. 2 (Okla. Ct. App. 1982).[10]  Contrary to Defendants' assertion, Plaintiffs do not need to "allege concerted action sufficient to show that the parties entered into an agreement." (*See* Mot. at 25)[11]  Instead, "a conspiracy can be inferred from the pled behavior of the alleged conspirators." *In re Am. Int'l Group, Inc.*, 965 A.2d 763, 806 (Del. Ch. 2009) ("[T]o survive a motion to dismiss, all that is needed is a reasonable inference that [defendant] was part of this conspiracy."); *Empire Fin. Servs., Inc. v. Bank of N.Y.*, 900 A.2d 92, 97 n.16 (Del. 2006) ("[T]he conspirators' 'agreement need not be expressed in words and may be implied and understood to exist from the conduct itself.'") (quoting Restatement (Second) of Torts § 876(a) cmt. a (1979)); *see also Shadid v. Monsour*, 746 P.2d 685, 689 (Okla. Ct. App. 1987) (similar); *Democrat*

---

[10]    Because Delaware law governs Plaintiffs' breach of fiduciary duty claim, it also governs their conspiracy and aiding and abetting claims.    2010 WL 1253157, at *23; *Bernstein v. Crazy Eddie, Inc.*, 702 F. Supp. 962, 986 (E.D.N.Y. 1988), *vacated on other grounds*, 714 F.Supp. 1285 (E.D.N.Y. 1989); *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999).

[11]    Rather, the case cited by Defendants, *Shadid v. Monsour*, states that a conspiracy is "a combination of two or more persons to accomplish by concerted action, some unlawful objective by either lawful or unlawful means." 746 P.2d 685, 689 (Okla. Ct. App. 1987) (internal quotations omitted).

*Printing Co. v. Johnson*, 175 P. 737 (Okla. 1918) ("In action on the case in nature of a conspiracy, it is not necessary to show by direct evidence that parties entered into a formal agreement to do things complained of, but that may be shown by facts and circumstances from which a conspiracy may be inferred."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (Plaintiffs' "allegations 'must be placed in a context that raises a suggestion of a preceding agreement.'").

Nor do Plaintiffs need to allege that Anadarko committed an unlawful act independently of New Kerr-McGee: the law requires only that *one* conspirator have committed an unlawful act in furtherance of the conspiracy. *See In re Am. Int'l Group*, 965 A.2d at 805 ("[T]he utility of the conspiracy concept is that a person who did not commit all the required elements of a tort can still be held liable if her co-conspirators' joint actions completed the tort.") (citing *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 150 (Del. 1987) ("Under Delaware law, a conspirator is jointly and severally liable for the acts of co-conspirators committed in furtherance of the conspiracy.")); *see also Brock v. Thompson*, 948 P.2d 279, 294 n.66 (Okla. 1997) ("[A] civil conspiracy claim enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort.").

Moreover, courts recognize that "great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of pleading." *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 458 (S.D.N.Y. 2008) (internal quotation marks omitted); *Kravetz v. Brukenfeld*, 591 F. Supp. 1383, 1387–88 (S.D.N.Y. 1984); *In re Harvard Knitwear, Inc.*, 153 B.R. 617, 628 (E.D.N.Y.1993) ("It should be recognized that the nature of conspiracies often make it impossible to provide details at the pleading stage. A plaintiff therefore should be allowed to resort to the discovery process and not easily be subject to dismissal of his complaint alleging conspiracy."); *All Bus. Solutions, Inc. v. NationsLine, Inc.*,

629 F. Supp. 2d 553, 557 (W.D. Va. 2009) (holding under *Iqbal* that even "arguably conclusory" allegations stated a conspiracy claim because the "complaint, in its entirety, contains sufficient factual content to permit the court to reasonably infer that the required elements . . . can be met.").

Under this liberal pleading standard, the Amended Complaint more than sufficiently alleges that Anadarko agreed to, participated in, and encouraged New Kerr-McGee's scheme to spin-off Tronox and rid itself of its massive Legacy Liabilities, clearing the way for Anadarko's acquisition. For example, the Amended Complaint alleges:

- No later than January 2002, Anadarko commenced an analysis of how it might acquire New Kerr-McGee and retained Merrill Lynch to analyze potential transactions through which Anadarko could separate the Chemical Business and the Legacy Liabilities from Kerr-McGee's prized oil and gas assets. Merrill Lynch concluded that the Legacy Liabilities would make a spin-off of the Chemical Business "unlikely to be viable." (Am. Compl. ¶¶ 46, 180)

- In January 2002, Anadarko's due diligence confirmed that the Legacy Liabilities were a poison pill to any acquisition, even with Anadarko's strong balance sheet. Anadarko concluded that future spending related to the legacy environmental liabilities could be between $2 and $3 billion and there was "no end in sight" for at least the next 30 years. Anadarko could not risk that "[a]ll the liability would transfer to APC." (*Id.* ¶¶ 47, 181)

- Anadarko concluded that the Legacy Liabilities and the Chemical Business were a "deal killer" and by early February 2002, Anadarko decided that it would not proceed with an acquisition of New Kerr-McGee. Instead, on information and belief, Anadarko informed New Kerr-McGee that it would have to separate the Legacy Liabilities and the Chemical Business from its valuable oil and gas assets, before Anadarko would acquire New Kerr-McGee. (*Id.* ¶¶ 49–50, 182)

- On information and belief, Anadarko remained interested in acquiring New Kerr-McGee's oil and gas assets from 2002 through early 2006 and continued to inform New Kerr-McGee or its investment banker, Lehman, of such interest. (*Id.* ¶ 183)

- James Hackett, Anadarko's CEOs contacted Luke Corbett, New Kerr-McGee's CEO before New Kerr-McGee's Board approved the completion of the Spin-Off on March 8, 2006. On information and belief, the purpose of Mr. Hackett's call to Mr. Corbett was to discuss Anadarko's acquisition of New Kerr-McGee. (*Id.* ¶ 184)

23

- Within *a week* after the Spin-Off was completed and the poison pill of the Legacy Liabilities eliminated, Lehman contacted New Kerr-McGee on April 5, 2006 to formally indicate Anadarko's interest in acquiring New Kerr-McGee. Less than three months after the Spin-Off, Anadarko offered to acquire New Kerr-McGee. Given the size and complexity of the deal and Anadarko's previous interest in acquiring the oil and gas assets once they were purged of the Legacy Liabilities, it is exceedingly unlikely if not impossible that Anadarko and New Kerr-McGee did not begin planning the acquisition prior to the Spin-Off. (*Id.* ¶ 185)

- On information and belief, Anadarko conspired with New Kerr-McGee to breach New Kerr-McGee's fiduciary duties by engaging in and completing the Spin-Off. Through its analysis of New Kerr-McGee in 2001–2002, Anadarko had already concluded that a spin-off of the Legacy Liabilities and Chemical Business would not be viable. Nonetheless, Anadarko knowingly and intentionally furthered the conspiracy by providing New Kerr-McGee with monetary incentive to complete the Spin-Off, thereby harming Tronox and its creditors. (*Id.* ¶ 187)

- The same investment banker—Lehman Brothers—advised New Kerr-McGee simultaneously with regard to both its separation from Tronox and its bid to be acquired by Anadarko. (*Id.* ¶ 188) This investment banker knew that the Legacy Liabilities would ultimately choke Tronox. (*Id.* ¶ 96)

- After the acquisition, Anadarko, in an unusual provision, specifically indemnified New Kerr-McGee's officers and directors from liability for their roles in the Spin-Off. (*Id.* ¶ 11)

Far from being "rank speculation," these allegations give rise to a plausible inference that there was a meeting of the minds and common purpose between Anadarko and New Kerr-McGee to separate the Legacy Liabilities from New Kerr-McGee to facilitate a sale of New Kerr-McGee to Anadarko. *See Empire Fin. Servs.*, 900 A.2d at 97 n. 16 (agreement underlying conspiracy need not be expressed and can be found to exist from conduct itself); *Democrat Printing*, 175 P. 737 (formal agreement may be shown from facts and circumstances "from which a conspiracy may be inferred").[12]

---

[12] Plaintiffs' allegations stand in stark contrast to the conclusory allegations in the cases cited by Defendants (*see* Mot. at 26). *See, e.g., Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 795 (S.D.N.Y. 2008) (sole allegation in support of plaintiff's conspiracy claim was a conclusory statement that defendants "conspired, agreed, and planned to use Medtech's confidential and proprietary information"); *Peterson v. Grisham*, 2008 WL 4363653, at *8–10 (E.D. Okla. Sept. 17, 2008) (conspiracy allegations based solely on parallel conduct without alleging agreement or

Plaintiffs further have sufficiently alleged that Defendants agreed to commit an independently unlawful act and that such unlawful act was committed: (i) Defendants reached an understanding that New Kerr-McGee would spin-off the Chemical Business to eliminate the Legacy Liabilities even though Anadarko had already concluded that a spin-off was "unlikely to be viable" and (ii) New Kerr-McGee breached its fiduciary duties to Tronox and its creditors by executing the agreed scheme.

### B. Anadarko Does Not Need To Owe A Fiduciary Duty To Tronox To Be Liable For Conspiracy To Breach A Fiduciary Duty.

Defendants' assertion that Anadarko cannot be liable for conspiring to breach a fiduciary duty because Anadarko did not owe any fiduciary duties to Tronox or Tronox's creditors is inconsistent with the law and common sense. "It is well settled that a third party who knowingly participates in the breach of a fiduciary's duty becomes liable to the beneficiaries of the trust relationship." *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch. 1984) (holding that conspiracy to breach fiduciary duty claim was properly alleged against third-party defendant); *Penn Mart Realty Co. v. Becker*, 298 A.2d 349, 351 (Del. Ch. 1972) (holding that party not in direct fiduciary relationship can be liable for knowing participation in breach of fiduciary duty); *see also Brock*, 948 P.2d at 294 n.66 (Under Oklahoma law, "a civil conspiracy claim enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort.") Indeed, if Defendants were correct and a claim for conspiracy required that all conspirators

---

concerted action). In addition, Plaintiffs' numerous factual allegations belie Defendants' claim that all Plaintiffs' conspiracy allegations are improperly based on information and belief. (*See* Mot. at 27 n. 25) In fact, many of those allegations are based on—and quote—documents produced by Defendants, and easily satisfy Rule 11(b)'s pleading standards.

independently owed fiduciary duties to plaintiffs, then the conspiracy claim would be wholly duplicative and serve no purpose. [13]

In short, Tronox has properly alleged that Anadarko and New Kerr-McGee had a common understanding that New Kerr-McGee would shed its Legacy Liabilities in a spin-off that, by Anadarko advisor's own account, was "unlikely to be viable" in order to cleanse the oil and gas assets that Anadarko wanted from New Kerr-McGee. New Kerr-McGee breached its fiduciary duties to Tronox and its minority shareholders and creditors by executing the agreed scheme. As such, the Amended Complaint adequately alleges that Anadarko conspired to breach fiduciary duties owed to Tronox and its minority shareholders and creditors. *See Gilbert*, 490 A.2d at 1057 (allegation that defendant agreed to terms of acquisition with knowledge that target's directors were preferring their interests to certain of its shareholders properly stated claim for conspiracy to breach fiduciary duty); *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1284 n.33 (Del. 1989) ("[I]t is bedrock law that the conduct of one who knowingly joins with a fiduciary, including corporate officials, in breaching a fiduciary obligation, is equally culpable.").

## IV.    The Amended Complaint States A Claim For Aiding And Abetting A Breach Of Fiduciary Duty.

For all of the reasons discussed above in connection with Tronox's civil conspiracy claim, the Amended Complaint sufficiently alleges that Anadarko knowingly assisted in, participated in, and benefited from New Kerr-McGee's breaches of its fiduciary duties. These

---

[13]    To the extent the two cases cited by Defendants suggest otherwise, the state law decisions they rely upon do not support the proposition that all defendants must owe a fiduciary duty to the plaintiff. In any event, neither of Defendants' cases applies Delaware law. *See Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenerette Secs. Corp.*, 2002 WL 362794, at *13-14 (S.D.N.Y. Mar. 6, 2002) (purporting to apply California and New York law); *Briarpatch Ltd. v. Geisler Roberdeau, Inc.*, 2007 WL 1040809, at *26 (S.D.N.Y. Apr. 4, 2007) (citing *Donaldson, Lufkin & Jenerette* and purporting to apply New York law).

allegations state an independent claim against Anadarko for aiding and abetting New Kerr-McGee's breaches of its fiduciary duties to Tronox and its minority shareholders and creditors.

### A.    Applicable Law Recognizes A Claim For Aiding And Abetting Breach of Fiduciary Duty.

Delaware law expressly recognizes a claim for aiding and abetting a breach of fiduciary duty. *See, e.g., Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001) (stating elements of aiding and abetting breach of fiduciary duty claim under Delaware law).[14]

Moreover, as this Court noted in its Opinion, a claim for aiding and abetting a breach of fiduciary duty has been "recognized in many cases as an independent wrong." 2010 WL 1253157, at *23. Thus, even if Oklahoma law applied, there is no indication that Oklahoma would not recognize a claim for aiding and abetting breach of fiduciary duty. In fact, as Defendants concede, in *Schovanec v. Archdiocese of Oklahoma City*, 188 P.3d 158, 174 (Okla. 2008), the Oklahoma Supreme Court cited approvingly to comment b of Restatement (Second) of Torts § 874, which outlines a claim for aiding and abetting a breach of fiduciary duty. Nor is there anything to suggest that Oklahoma would depart from this general common law or its own law under which "[o]ne who commands, directs, advises, encourages, procures, instigates, promotes, controls, aids, or abets a wrongful act by another has been regarded as being as responsible as the one who commits the act so as to impose liability upon the former to the same extent as if he had performed the act himself." *Cooper v. Bondoni*, 841 P.2d 608, 611 (Okla. Ct. App. 1992) (quoting *Keel v. Hainline*, 331 P.2d 397, 401 (Okla. 1958)).

---

[14]    Contrary to Defendants' assertion, Tronox's aiding and abetting a breach of fiduciary duty claim is governed by Delaware law. *See, e.g., BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) (law of state of incorporation applies to a claim for aiding and abetting breach of fiduciary duty); *In re Fedders North Am., Inc.*, 405 B.R. 527, 543 (Bankr. D. Del. 2009) (holding that under internal affairs doctrine, Delaware law applied to aiding and abetting breach of fiduciary duty claim).

**B.      The Amended Complaint States The Elements Of Aiding And Abetting  A Breach Of Fiduciary Duty.**

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship; (2) that the fiduciary breached its duty; (3) that a defendant, who is not a fiduciary, knowingly participated in a breach; and (4) a showing that damages to the plaintiff resulted from the concerted action of the fiduciary and nonfiduciary. *In re USA Detergents, Inc.*, 418 B.R. 533, 546 (Bankr. D. Del. 2009) (applying Delaware law) (*citing In re Fedders North America, Inc.*, 405 B.R. 527, 544 (Bankr. D. Del. 2009)).  With respect to the third element, Tronox's allegations need only support a "reasonable inference" that Anadarko "knowingly participated" in New Kerr-McGee's fiduciary breaches. *Malpiede*, 780 A.2d at 1097 (knowing participation requires an allegation that the defendant acted with knowledge that the conduct it advocated or assisted constituted a breach of fiduciary duty); *see also In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 372 (Del. Ch. 2008) (holding that plaintiffs proffered enough evidence from which court could infer knowing participation by defendant).[15]

As with the civil conspiracy claim, the facts comprising the aiding and abetting claim are within the knowledge of Defendants and, accordingly, Plaintiffs may plead their claims more generally. *See, e.g.*, *Lesavoy v. Gattullo-Wilson*, 170 Fed. App'x 721, 724-25 (2d Cir. Mar. 2, 2006) (reversing district court's holding that aiding and abetting allegations were conclusory and holding that defendants satisfactorily pled "knowing participation" under liberal notice pleading

---

[15]    Defendants' repeated references to New York and Connecticut state law are inapplicable. Moreover, Defendants' cases do not stand for the proposition that plaintiffs must allege "when" the alleged assistance occurred. *See Saito v. McCall*, No. Civ.A. 17132-NC, 2004 WL 3029876, at *9 (Del. Ch. Ct. Dec. 20, 2004) (noting that plaintiffs lacked standing before Oct. 20, 1998 and complaint does not specify when the aiding and abetting occurred); *Malpiede*, 780 A.2d at 1098 (stating that complaint did not indicate that defendant participated in or caused fiduciary's decisions but not noting any requirement or failure to allege when such acts occurred).

standard).  Particularly in light of this more general pleading standard, the Amended Complaint amply alleges that Anadarko knowingly participated and assisted in New Kerr-McGee's breaches of its fiduciary duties.

First, Tronox has sufficiently alleged Anadarko's participation in New Kerr-McGee's fiduciary breaches including that Anadarko (i) evaluated an acquisition of New Kerr-McGee as far back as 2002 and, concluding that the Legacy Liabilities were a "deal breaker," made it clear to New Kerr-McGee that it would only be willing to acquire it if it jettisoned the Legacy Liabilities; (ii) continued to inform New Kerr-McGee of its interest in the company if New Kerr-McGee rid itself of the Legacy Liabilities and provided New Kerr-McGee with monetary incentive to do so; (iii) was in communication with New Kerr-McGee before and after the Spin-Off was completed; and (iv) made a formal acquisition offer for New Kerr-McGee less than three months after the Spin-Off.  (Am. Compl. ¶¶ 49–50, 180–87)

Second, the allegations also establish that Anadarko knew that New Kerr-McGee's misconduct, in which it participated, constituted a breach of New Kerr-McGee's fiduciary duties. The Amended Complaint alleges that through its due diligence in 2002, Anadarko confirmed that:  (i) the Legacy Liabilities were a poison pill to any acquisition, even with Anadarko's strong balance sheet; (ii) spending on Legacy Liabilities would be in the billions with no end in sight; and (iii) a spin-off and/or IPO of the Chemical Business was "unlikely to be viable." (Am. Compl. ¶¶ 46–48)  The Amended Complaint further alleges that not only did Anadarko provide an unusual indemnity as part of the acquisition for all of New Kerr-McGee's officers' misconduct but when Tronox later approached Anadarko seeking financial assistance, Anadarko conditioned such assistance on Tronox agreeing to waive any claims of misconduct against Anadarko and New Kerr-McGee.  (Am. Compl. ¶¶ 11, 133, 183)

29

Accordingly, the Amended Complaint sufficiently pleads that Anadarko aided and abetted New Kerr-McGee's breaches of its fiduciary duties by knowingly encouraging and participating in the Spin-Off, knowing that Tronox was doomed to fail with the Legacy Liabilities. *See In re Transkaryotic Therapies,* 954 A.2d at 372 (finding that aiding and abetting breach of fiduciary duty claim could be based on non-fiduciary's offering of a side deal if record supports inference that it offered the deal in order to induce the fiduciary to breach its duties); *In re USA Detergents, Inc.,* 418 B.R. at 546 (holding that allegation that non-fiduciary knowingly participated in and benefitted from officers' and directors' promotion of their self interest at the expense of the corporation stated claim for aiding and abetting breach of fiduciary duty).

## CONCLUSION

For all the foregoing reasons, Defendants' Motion to Dismiss Counts IV, V, and VI of the Amended Complaint should be denied in its entirety.

Dated: June 29, 2010

Respectfully submitted,

/s/  David J. Zott, P.C.

David J. Zott, P.C.
Jeffrey J. Zeiger
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Richard M. Cieri
Jonathan S. Henes
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

*Attorneys for Tronox Incorporated,*
*Tronox Worldwide LLC, and*
*Tronox LLC*

## CERTIFICATE OF SERVICE

I, David H. DeCelles, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that on this 29th day of June 2010, I caused a true and correct copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss Counts IV, V, and VI of the Amended Adversary Complaint to be served (i) by electronic mail upon the parties listed below and (ii) by electronic mail upon the parties who receive electronic notice in this case pursuant to the Court's ECF filing system:

Melanie Gray
Lydia Protopapas
Jason W. Billeck
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, Texas  77002

*Counsel to Anadarko
Petroleum Corporation and Kerr-
McGee Corporation*

David A. Crichlow
Pillsbury Winthrop Shaw  Pittman LLP
1540 Broadway
New York, NY  10036

*Counsel for the Official Committee of
Equity Holders of Tronox Inc.*

David Mark
Kasowitz, Benson, Torres &
Friedman LLP
1633 Broadway
New York, NY  10019

*Counsel for the Official Committee of
Unsecured Creditors*

Robert Trust
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475

*Counsel for Credit Suisse*

Robert W. Yalen
Assistant United States Attorney
86 Chambers Street
New York, New York  10007

/s/  David H. DeCelles
David H. DeCelles