Melanie Gray (admitted pro hac vice)
Lydia Protopapas (LP 8089)
Jason W. Billeck (admitted pro hac vice)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Richard A. Rothman (RR 0507)
Bruce S. Meyer (BM 3506)
Lori L. Pines (LP 3005)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

James J. Dragna (admitted pro hac vice)
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071
Telephone: (213) 680-6400
Facsimile: (213) 680-6499

Duke K. McCall, III (admitted pro hac vice)
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Telephone: (202) 373-6000
Facsimile: (202) 373-6001

*Counsel for Anadarko Petroleum
Corporation and Kerr-McGee Corporation*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| TRONOX INCORPORATED, *et al.,* | Case No. 09-10156 (ALG) |
| Debtors. | Jointly Administered |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | |
| Plaintiffs, | Adversary Proceeding No. 09-01198 (ALG) |
| v. | |
| ANADARKO PETROLEUM CORPORATION AND KERR-MCGEE CORPORATION, | |
| Defendants. | |

THE UNITED STATES OF AMERICA,

            Plaintiff-Intervenor,

    v.

TRONOX, INC., TRONOX
WORLDWIDE LLC, TRONOX LLC,
KERR-MCGEE CORPORATION, and
ANADARDKO PETROLEUM
CORPORATION,

            Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY
DEFENDANTS ANADARKO PETROLEUM CORPORATION AND
KERR-MCGEE CORPORATION TO COMPEL THE PRODUCTION OF
<u>DOCUMENTS BY PLAINTIFF-INTERVENOR THE UNITED STATES OF AMERICA</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................1

BACKGROUND ....................................................................................................................4

    A.    Defendants' Requests for the Production of Documents .........................................4

    B.    The Dispute Over the Government's Document Production ...................................6

    C.    Defendants' Efforts to Resolve this Dispute ..........................................................10

ARGUMENT ........................................................................................................................16

    I.    THE GOVERNMENT HAS FAILED TO PRODUCE
        DOCUMENTS CONSISTENT WITH ITS DISCOVERY
        OBLIGATIONS UNDER RULE 34 ...................................................................16

    II.    THE GOVERNMENT'S ARGUMENT REGARDING THE
        BREADTH OF THE RFPS IS UNAVAILING....................................................20

    III.    DEFENDANTS SHOULD BE AWARDED THEIR ATTORNEYS'
        FEES IN CONNECTION WITH THIS MOTION TO COMPEL .......................21

CONCLUSION.....................................................................................................................22

## TABLE OF AUTHORITIES

CASES

Chemtex, LLC v. St. Anthony Enters., Inc.,
    No. 03-cv-4263, 2004 WL 764781 (S.D.N.Y. Apr. 9, 2004) ......................................19, 20

Fund Comm'n Serv., II, Inc. v. Westpac Banking Co.,
    No. 93-cv-8298, 1996 WL 469660 (S.D.N.Y. Aug. 16, 1996)........................................22

JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,
    No. 03-cv-5562, 2005 WL 1958361 (S.D.N.Y. Aug. 16, 2005)......................................22

S.E.C. v. Collins & Aikman Corp.,
    256 F.R.D. 403 (S.D.N.Y. 2009) .............................................................. passim

Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp.,
    No. 85-cv-5399, 1987 WL 6905 (S.D.N.Y. Feb. 10, 1987) ......................................19, 20

Stiller v. Arnold,
    167 F.R.D. 68 (N.D. Ill. 1996)...........................................................................19

T.N. Taube Corp. v. Marine Midland Mortgage Corp.,
    136 F.R.D. 449 (W.D.N.C. 1991).......................................................................19


STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 11 ..........................................................................................................

Fed. R. Civ. P. 34.............................................................................................. passim

Fed. R. Civ. P. 37............................................................................................1, 21, 22

Fed. R. Bankr. P. 7034....................................................................................... 1, 22

Fed. R. Bankr. P. 7037....................................................................................1, 21, 22

Fed. R. Evid. 803(6).................................................................................................18

2 Michael C. Silberberg et al., Civil Practice in the Southern District of New York
§ 22:14 (2d ed. 2009) ..............................................................................................19

Defendants Anadarko Petroleum Corporation ("Anadarko") and Kerr-McGee Corporation ("Kerr-McGee"), a wholly owned subsidiary of Anadarko (collectively, "Defendants"), hereby submit this Memorandum in Support of their Motion to Compel the production of documents by Plaintiff-Intervenor the United States of America (the "Government") pursuant to Rules 7034 and 7037[1] of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## PRELIMINARY STATEMENT

This motion to compel is necessitated by the Government's failure to comply with its discovery obligations under Rule 34 of the Federal Rules of Civil Procedure ("Rule 34"), incorporated by reference in Rule 7034 of the Bankruptcy Rules.  Defendants have served two sets of requests for the production of documents ("RFPs") on the Government with a total of 167 distinct requests.  Notwithstanding the fact that the first RFPs were served over ten months ago, the Government still has failed to produce documents responsive to many of Defendants' RFPs, including those pertaining to key aspects of the Government's claims and Defendants' defense thereto.  At the parties' recent "meet and confer" conferences, Defendants' inquiries regarding the ignored RFPs were largely met with the response of "we'll look into it," without any commitment to produce responsive documents or provide a time frame for doing so.  This is unacceptable, particularly in light of how long ago the RFPs were served.

Perhaps the most egregious example of the Government's deficient document production has been its production of only five boxes of documents concerning its alleged $4.4 billion claim relating to at least 70 supposed mining sites, which are among over 600 mining

---

[1]    Rule 37 of the Federal Rules of Civil Procedure ("Rule 37") is incorporated by reference into Bankruptcy Rule 7037.

sites that were allegedly contaminated.  <u>See</u> McCall Decl. Ex. A[2] (Second RFP No. 65) (citing

Proofs of Claim of the United States of America, on Behalf of the United States Environmental

Protection Agency (Aug. 11, 2009)).  These boxes obviously do not constitute a complete

production regarding these sites.  Consequently, Defendants have not been able to even identify

the 600 sites,[3] let alone ascertain anything about the alleged environmental liabilities associated

with them, including the aggregate amount of the Government's claim for up to 530 of the sites.

These documents are obviously essential for Defendants to prepare their defense to this claim,

which the Government alleges could exceed $4.4 billion.

Another striking example of the Government's failure to produce documents

concerns its claims for reimbursement of over $300 million for cleanup at the Manville site, the

alleged centerpiece of the Government's purported claims against Defendants.  <u>See</u> McCall Decl.

Ex. B (First RFP No. 56).  The Government has prosecuted certain individuals for a supposed

kick-back scheme involving the clean-up costs.  <u>See</u> McCall Decl. Ex. C (Lorraine McCarthy,

<u>Subcontractor Representative Pleads Guilty In Bid-Rigging Scheme at New Jersey Site</u>, Daily

Env't Rep. (Nov. 2, 2009)).  To this date, however, the Government has not even collected or

reviewed, let alone produced, the requested documents regarding its investigation and

prosecution of these individuals, even though it is plain that Defendants cannot be held liable for

costs fraudulently inflated by the criminal activities of others.

---

[2]    As used herein, "McCall Decl. Ex." refers to exhibits accompanying the Declaration of Duke K. McCall, III, sworn to July 9, 2010 and submitted together with this memorandum and motion.

[3]    Nor has the Government, apparently.  At the "meet and confers" held by the parties, the Government could not commit to providing Defendants with a list of the 600 sites referenced in its Proofs of Claim.  The Government's inability to do so raises the question of how it made these allegations consistent with its obligations under Rule 11.

Furthermore, the Government's purported paper "production" to date has been in abject disregard of its discovery obligations under Rule 34.  As Judge Scheindlin recently held in S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403 (S.D.N.Y. 2009), Rule 34 requires the Government to produce documents labeled and sorted in a manner corresponding to the RFPs. Notwithstanding the Collins decision and other clear authority brought to the Government's attention by Defendants, the Government believes that it can satisfy its discovery obligations by (1) providing Defendants with purported "indices" to its various storage and other facilities that vaguely describe the contents of boxes and stacks of documents possibly responsive to a limited subset of the RFPs, i.e., those relating to certain of the EPA sites at issue in this case, and (2) opening the doors to these facilities to permit Defendants to search for this limited subset of responsive documents themselves.  Indeed, it appears that no one from the Government has actually reviewed the vast majority of the documents supposedly "produced" in this manner to determine whether or not they are in fact  responsive to the RFPs.  Rather, the Government has concluded, based on a seemingly deliberate over-reading of the RFPs, that all of the documents it has made available are responsive.  The plain language of the RFPs, however, shows they are targeted at specific documents, and thus the Government's interpretation is untenable.  The shortcomings of the Government's approach to document production in this case have been confirmed by Defendants' attorneys, who have spent numerous hours at two of the Government's storage facilities wading through piles of unresponsive materials in an effort to identify the documents Defendants actually asked for.  Under Rule 34, this is the Government's obligation, not Defendants'.

The  Complaint in Intervention filed by the Government (the "Intervenor Complaint") seeks hundreds of millions of dollars in damages, and the facts alleged therein

3

regarding purported clean-up costs are the supposed basis for multi-billion dollar claims against Defendants in this litigation.  Yet, the Government seems to be completely unprepared to meet the most basic discovery requirements of a party to litigation in federal court by producing the documents supporting its allegations.  Its failure to do so has impeded Defendants' ability to defend this litigation and caused significant delay.  The Government's protestations regarding the burden associated with its discovery obligations are unavailing, particularly in light of the millions of dollars expended thus far by Defendants on document discovery.  Defendants respectfully request their Motion to Compel be granted.

## BACKGROUND

The Intervenor Complaint alleges participation in a "scheme" by Defendants to purportedly transfer certain liabilities of Kerr-McGee to Plaintiff Tronox, Inc. ("Tronox") in order to avoid certain environmental cleanup liabilities.  The two main steps of the alleged "scheme" were (1) a corporate reorganization called "Project Focus" and (2) numerous transactions leading up to the initial public offering of Tronox.  The Government asserts fraudulent transfers with respect to a number of the transactions in the alleged "scheme," which allegedly left Tronox unable to pay for the liabilities.  The Amended Case Management Order, entered on March 22, 2010, provides that document productions should have been substantially completed by March 31, 2010 and all fact discovery and all depositions of fact witnesses should be completed by November 1, 2010.  Yet, the Government has failed to produce documents responsive to many of the twenty-one (21) separate RFPs seeking documents supporting the allegations in the Intervenor Complaint.

## A.    Defendants' Requests for the Production of Documents

Defendants served their First RFPs on August 10, 2009.  See McCall Decl. Ex. B. Defendants served their Second RFPs, see McCall Decl. Ex. A, on January 19, 2010.

4

Defendants' document requests contain 167 separate RFPs, all relevant to the Government's

allegations in this action, including the following:

- Documents pertaining to specific information requested regarding the alleged environmental sites referenced in the Proofs of Claim and/or Intervenor Complaint (including but not limited to information regarding potential liability of third parties, ownership, contamination, remediation and damages caused by toxic substances).  <u>See</u> McCall Decl. Ex. B (First RFP Nos. 30, 35-36, 39, 42-49, 51); McCall Decl. Ex. A (Second RFP Nos. 67-68).

- Documents pertaining to the supposed environmental liabilities including but not limited to costs allegedly incurred by the Government in connection therewith and the settlement or potential settlement thereof.  <u>See</u> McCall Decl. Ex. B (First RFP Nos. 31-32, 38).

- Documents pertaining to any actual or potential settlements or litigation involving Tronox, Kerr-McGee or Anadarko.  <u>See</u> McCall Decl. Ex. B (First RFP Nos. 33-34, 49-50, 52-54).

- Documents pertaining to the allegations in the Intervenor Complaint regarding Project Focus.  <u>See</u> McCall Decl. Ex. B (First RFP Nos. 2-4, 9-11, 21-24, 26).

- Documents pertaining to post-Project Focus (2002-2005) (including the attempted sale of Tronox).  <u>See</u> McCall Decl. Ex. B (First RFP Nos. 12-13, 15-17, 24, 26).

- Documents pertaining to the allegations in the Intervenor Complaint regarding the IPO/Spinoff of Tronox.  <u>See</u> McCall Decl. Ex. B (First RFP Nos. 5, 18, 21, 25-29).

- Documents pertaining to specific environmental sites.  <u>See</u> McCall Decl. Ex. B (First RFP Nos. 14, 19, 32, 37, 40-41); McCall Decl. Ex. A (Second RFP Nos. 56-58, 69-125, 127-62).

- Documents pertaining to the allegations in the Intervenor Complaint regarding the history of Kerr-McGee and its successors.  <u>See</u> McCall Decl. Ex. B (First RFP Nos. 6-7).

- Documents pertaining to audits (including the IRS audit of Project Focus).  <u>See</u> McCall Decl. Ex. B (First RFP Nos. 41, 55); McCall Decl. Ex. A (Second RFP No. 58).

Notably, except in a few limited instances, the Government has not contested

Defendants' right to any of the documents sought in the RFPs, which are directly relevant to the

issues raised in the Intervenor Complaint.

B.    **The Dispute Over the Government's Document Production**

      The Government served its Responses and Objections to the First RFPs on

September 10, 2009.  See McCall Decl. Ex. D.  The Government served its Responses and

Objections to the Second RFPs on February 18, 2010.  See McCall Decl. Ex. E.  In its responses,

the Government asserted numerous boilerplate objections and blanket claims of privilege, but

only indicated that it would be withholding responsive document with respect to 5 of the 167

RFPs.

      Yet, the Government has failed to produce documents responsive to a significant

number of the RFPs, many of which are critical to this case.  Indeed, the Government has

virtually ignored entire categories of RFPs, including but not limited to the following:[4]

- Documents concerning the Government's criminal prosecutions of certain individuals responsible for allegedly fraudulently overbilling for remediation at the Manville site.  See McCall Decl. Ex. B (First RFP No. 56).

- Documents concerning the allegations in the Proofs of Claim related to over 257 service stations currently or formerly owned and/or operated by Debtor or an affiliate debtor, and/or by their corporate predecessors, in multiple locations in the following states: AL, AR, FL, GA, IL, IN, LA, KS, KY, LA, MO, NE, ND, OK, SD, TN, TX, VA, WI.  See McCall Decl. Ex. A (Second RFP No. 61).

- Documents concerning the allegations in the Proofs of Claim relating to approximately 270 chemical manufacturing, fertilizer manufacturing, R&D/Lab, agricultural chemical and other sites that were transferred to Debtor or its affiliate debtors by Kerr-McGee Corporation through transactions in late 2005 and early 2006.  See McCall Decl. Ex. A (Second RFP No. 63).

- Documents concerning the allegations in the Proofs of Claim relating to the supposedly "Secret Sites" that were transferred to Debtor or its affiliate debtors by Kerr-McGee Corporation through transactions in late 2005 and

---

[4]        While Defendants dispute the Government's allegations set forth below, they are entitled to the documents the Government claims support them.

2006, including sites located in Birmingham, AL and Rome, NY. <u>See</u> McCall Decl. Ex. A (Second RFP No. 64).

- Documents concerning the allegations in the Proofs of Claim relating to more than 600 mining-related sites owned and/or operated by Debtor or an affiliate debtor, and/or by their corporate predecessors, which are allegedly contaminated with hazardous substances within the meaning of CERCLA Section 101(14) and 102(a), 42 U.S.C. §§ 9601(14) and 9602(a), including but not limited to radioactive materials in soil and groundwater, at multiple locations in the following states: AR, AZ, CA, CO, FL, GA, ID, IL, KS, ME, MD, MI, WY. The Government further alleges the Environmental Protection Agency ("EPA") estimates that the cleanup costs associated with at least 70 of these mines are in excess of $4.4 billion. <u>See</u> McCall Decl. Ex. A (Second RFP No. 65).

- Documents concerning the allegations in the Proofs of Claim relating to the EPA's alleged estimate that Tronox LLC is subject to at least $2.5 million in civil penalties for the violations set forth in paragraphs 42 to 48 of the Proof of Claim against Tronox LLC. <u>See</u> McCall Decl. Ex. A (Second RFP No. 126).

- Documents pertaining to the allegations in the Proofs of Claim and Intervenor Complaint regarding the Edgebrook Development Corporation. <u>See</u> McCall Decl. Ex. B (First RFP No. 41).

- Documents concerning the allegations in the Proofs of Claim relating to the Gulf States Creosoting Site (Hattiesburg, MS). <u>See</u> McCall Decl. Ex. A (Second RFP Nos. 60, 62).

- Documents pertaining to specific information requested regarding the alleged environmental sites referenced in the Proofs of Claim and/or Intervenor Complaint (including but not limited to information regarding potential liability of third parties, ownership, contamination, remediation and damages caused by toxic substances). <u>See</u> McCall Decl. Ex. B (First RFP Nos. 30, 35-36, 39, 42-49, 51); McCall Decl. Ex. A (Second RFP Nos. 67-68).

- Documents relating to the allegations in the Intervenor Complaint regarding Project Focus. <u>See</u> McCall Decl. Ex. B (First RFP Nos. 2-4, 9-11, 21-24, 26).

- Documents pertaining to the allegations in the Intervenor Complaint regarding post-Project Focus (2002-2005) (including the attempted sale of Tronox). <u>See</u> McCall Decl. Ex. B (First RFP Nos. 12-13, 15-17, 24, 26).

- Documents pertaining to the allegations in the Intervenor Complaint regarding the IPO/Spinoff of Tronox. <u>See</u> McCall Decl. Ex. B (First RFP Nos. 5, 18, 21, 25-29).

- Documents pertaining to the allegations in the Intervenor Complaint regarding history of Kerr-McGee and its successors. <u>See</u> McCall Decl. Ex. B (First RFP Nos. 6-7).

7

- Documents pertaining to any actual or potential settlements or litigation involving Tronox, Kerr-McGee or Anadarko.  <u>See</u> McCall Decl. Ex. B (First RFP Nos. 33-34, 49-50, 52-54).

- Documents pertaining to audits (including the IRS audit of Project Focus). <u>See</u> McCall Decl. Ex. B (First RFP Nos. 41, 55); McCall Decl. Ex. A (Second RFP No. 58).

The Government's failure to produce documents responsive to this extensive list of RFPs is inexcusable.  As a result of the Government's failures, Defendants have not been able to adequately defend against the Government's claims that Defendants' alleged "scheme" rendered Tronox unable to pay for certain alleged legacy liabilities.

Furthermore, with the exception of approximately 40,000 electronic documents (a production so small in relation to the broad sweep of the Government's claims, and correspondingly, the RFPs, as to appear inadequate on its face), the Government has decided that, rather than review its files for responsive documents and provide only responsive documents to Defendants, it would give Defendants access to certain storage facilities and other locations housing <u>potentially</u> responsive documents and force Defendants to search for responsive documents themselves.  Instead of labeling and sorting its documents to correspond to the RFPs as required by Rule 34, the Government decided to provide Defendants with purported "indices" that, with the arguable exception of a few indices initially provided, vaguely, and sometimes illegibly, describe the contents of boxes, folders, or documents at various facilities. As discussed further below, the production of selected "indices," which did not even purport to be responsive to many of the RFPs, does not suffice to meet the Government's discovery obligations, and, even if it did, the actual indices produced are useless in terms of enabling

Defendants to identify documents that are responsive to the RFPs.[5]  While Defendants originally

assented to the use of such "indices" in a good faith effort to cooperate with the Government, the

"index" system proved unworkable.  See § C, infra.

For example, one index relating to the Manville, New Jersey Site (the "Manville

Site") purports to describe the contents of nine boxes as "Miscellaneous: Photos, Cost

Information, Meeting Minutes, Inspections, Property Files, Correspondence 2007, Remedial

Work Information, Government Property Inventory, Health History and Physical Exam

Information, Training Certificates, Newspaper Articles, Submittal Register Revisions, Fact

Sheets, Contracts Information, Certified Payroll, Budget."  See McCall Decl. Ex. F-54, at 2.

There is no way based upon this index that Defendants would be able to tell whether these

particular boxes contain responsive documents.  Another Manville Site entry is for eighty-three

boxes containing "Quality Assurance Reports, Daily Log of Construction (includes Daily Site

Status Report, Daily Air Monitoring Data, Daily Security Logs, Site Sign-in Sheets,

Transportation Log, Health & Safety Sign-in sheets, Sevenson Labor and Equipment costs,

Tipping Receipts for Common Fill, Small item cost receipts)."  See id. at 1.  Defendants are not

required to sort through these eighty-three boxes to extract responsive documents.

Notwithstanding the inability of the purported indices to provide useful

information, in an effort to cooperate with the Government and ascertain whether the issues

raised in this motion could be narrowed, Defendants visited two of the storage facilities

identified by the Government as housing responsive documents; what they found confirms the

---

[5]      Attached as Exhibit F to the McCall Declaration is a chart describing Defendants' RFPs and the
Government's responses.  The Government's indices are attached as exhibits to Exhibit F, see, e.g.,
McCall Decl. Ex. F-1.

inadequacy of the Government's production.  On May 20 and 21, 2010, counsel for Defendants

visited the National Archives and Records Administration's ("NARA's") facility in Lee's

Summit, Missouri, at the behest of the Government.  See Declaration of David M. Halverson

("Halverson Decl."), ¶ 3.  The Government made available dozens of boxes of documents

concerning the Manville Site, but, given the content of the production, did not appear to have

reviewed its documents for responsiveness before tendering its "production."  As a result,

Defendants found that many of the documents at the facility were not responsive to the RFPs,

such as equipment inventory lists for the Manville Site, and paperwork related to the transfer of

the equipment between federal agencies and the sale or disposal of the equipment.  Id.

On June 3 and 4, 2010, counsel for Defendants visited the Government's storage

facility at 290 Broadway Avenue in New York City.  See Declaration of Jason E. Glass, ¶ 3.  As

was the case at Lee's Summit, the Government made available dozens of boxes of documents

supposedly concerning the Manville Site.  Defendants once again found that many of the

documents were unresponsive to the RFPs, including chain of custody reports for soil samples,

bills of lading, and turn-by-turn directions and maps to disposal sites.  Id.

Even the Government's electronic production likewise includes many

nonresponsive documents, including e-mails discussing vacation schedules or the timing of

meetings, corrupted files containing only meaningless text, and shipment details and tracking

information for UPS packages.  See Halverson Decl. ¶ 4.

## C.    Defendants' Efforts to Resolve this Dispute

Defendants made numerous efforts to resolve these disputes, but the Government

has adhered to a view of its discovery obligations that selectively ignores certain RFPs,

minimizes its own burden, maximizes the burden on Defendants, and leaves Defendants unable

10

to ascertain whether, and to what extent, its RFPs have been responded to, all in disregard of the Government's duties under Rule 34.

After serving responses to Defendants' RFPs in September 2009, the Government had not produced a single document by December 2009. See Declaration of Jason W. Billeck, ¶ 4. During a conference call on or about December 9, 2009, Defendants expressed their concerns regarding the Government's production. Id. The Government informed Defendants that, in addition to its electronic documents, it had the equivalent of approximately 650 boxes that may potentially contain responsive paper documents. Id. The Government declined to review these documents itself and make available responsive documents. Instead, the Government proposed a purported "index" production, whereby the Government would provide Defendants with detailed indices of the documents contained at the various warehouses and other facilities where its documents are stored. Id. Although this proposal clearly failed to satisfy the Government's discovery obligations under Rule 34, Defendants, in a good faith effort to cooperate in discovery, did not initially object to this approach based on the Government's representation that it would provide detailed indices of all of the documents at the relevant facilities within one week of the December 9, 2009 call. Id.

Notwithstanding the Government's representations on the December 9, 2009 call, Defendants waited until January 15, 2010 to receive the first indices. See McCall Decl. ¶ 16. As these initial indices contained sufficient detail to allow Defendants to identify potentially responsive documents, Defendants, in an good faith effort to cooperate with the Government, attempted to utilize these indices to narrow their search for responsive documents. Id. However, this process quickly broke down and the Government began to provide indices that were uniformly vague, overbroad, sometimes illegible, incomplete and absolutely useless for the

11

intended purpose of enabling Defendants to identify documents responsive to the RFPs.  Id.

Over the course of a ten-week period beginning in mid-January, the Government sent dozens of

such indices and pressed Defendants to conduct their review based thereon.  Id.  In the spirit of

cooperation, Defendants promptly reviewed the indices and attempted to identify documents

responsive to the RFPs in a timely fashion.  Id.

Thus, despite Defendants' best efforts, the "index" system proved unworkable.

The indices did not provide enough useful information to enable Defendants to identify whether

any particular box contained documents responsive to the RFPs.  Id.  Contrary to the intent and

purpose of Rule 34, Defendants were left with no choice but to make guesses regarding what

boxes might contain responsive documents and conduct the review themselves.  Id.  Moreover,

the Government's method of production made it impossible for the Defendants to assess

whether, and to what extent, each and every one of their 167 RFPs had been fully responded to.

To this day, the Government has never claimed to have done so.  See McCall Decl. ¶ 18.  Nor

can it; as demonstrated above, it is clear that many RFPs have been ignored.  Moreover, the

Government does not appear to have fully searched the working files and computers of all

relevant personnel, a shortcoming made more apparent by the paucity of the Government's initial

electronic production.

Realizing that the Government's alleged production amounted to nothing short of

a shift of its discovery obligations onto the Defendants and provided a smokescreen for

incomplete production, Defendants notified the Government in a letter dated April 21, 2010 that

its purported "index" production was in violation of its discovery obligations under Rule 34.  See

McCall Decl. Ex. G.  Citing Collins, Defendants requested that the Government comply with its

obligation to make available organized and labeled responsive documents according to the RFPs.

Alternatively, Defendants offered to enter into a discovery agreement with the Government, similar to the process implemented between Defendants and Tronox, whereby the Government could produce documents responsive to Defendants' RFPs in an agreed-upon, searchable, electronic format. In a responsive letter dated April 28, 2010, the Government disregarded the merits of Defendants' April 21 letter, ignored the extensive list of RFPs to which the Government had failed to respond, and simply summarized its discovery efforts to date (tellingly, never actually claiming to have made all responsive documents available). See McCall Decl. Ex. H.

In a second letter to the Government, dated May 3, 2010, Defendants reiterated the demands set forth in Defendants' April 21 letter and emphasized the apparent inadequacy of the Government's electronic production. See McCall Decl. Ex. I. In response, in an email dated May 7, 2010, the Government directly contradicted the position it took during the December 9 call by stating that it "never promised to provide detailed indices for the entirety of the Government's hard copy documents or even a subset of it." See McCall Decl. Ex. J. Once again, the Government completely failed to respond to Defendants' position that the Government's purported "index" production failed to comply with its obligations under Rule 34.

In a third letter, dated May 10, 2010, Defendants once again noted the deficiencies in the Government's production and its failure to address these issues in its prior correspondence. See McCall Decl. Ex. K. In response, in a letter dated May 12, 2010, the Government erroneously claimed that the Government's production reflected an agreement between the parties, and took the position that, "even though not required to do so, [it] provided Defendants with numerous detailed indices or other descriptions of documents concerning the state and federal environmental sites relevant to this action." See McCall Decl. Ex. L. Rather

13

than attempt to address <u>Collins</u> head on, it simply misconstrued it by arguing that the <u>Collins</u>

decision does not require the Government to produce documents in electronic format – a position

regarding <u>Collins</u> that Defendants never asserted – and that it was otherwise in compliance with

Rule 34.

On May 25, 2010, Defendants and the Government held a "meet and confer"

conference. <u>See</u> McCall Decl. ¶ 17. Defendants summarized the deficiencies in the

Government's purported index production, including the fact that the Government did not even

respond to dozens of Defendants' RFPs and that the Government's indices were not detailed and

did not help Defendants identify responsive documents. The Government attempted to excuse its

conduct by maintaining that it has the right to produce the documents as they are maintained and

that its production is appropriate because Defendants' RFPs are overbroad. <u>Id.</u> After hearing

Defendants' objections, the Government "took under advisement" Defendants' concerns and the

parties agreed to a second "meet and confer." <u>Id.</u> Defendants requested that, at the next

meeting, the Government be prepared to go through each of the RFPs and advise Defendants: (1)

whether the Government was in possession of documents responsive to each RFP; (2) the

process by which it reached that determination; and (3) whether the Government would be

producing the responsive documents. The Government agreed to do so. <u>Id.</u>

The parties met again on June 3, 2010. <u>See</u> McCall Decl. ¶ 18. The Government

described its process for responding to Defendants' RFPs generally, which involved a review of

the RFPs by the specific attorneys responsible for prosecuting this action and forwarding the

RFPs to the various agencies identified in the RFPs for review and discussion. <u>Id.</u> According to

the Government, by this process, it concluded that the RFPs were so broad as to justify its

purported production of <u>all</u> environmental site-related documents at various storage facilities

around the country.  Id.  Notably, the Government declined to answer the Defendants' question

of whether anyone had actually reviewed all of the documents at the various storage facilities for

responsiveness to the RFPs.  Id.  When presented with several examples of documents

Defendants found at the two storage locations which were clearly not responsive to the RFPs, the

Government posited the (plainly incorrect) view that documents such as federal express tracking

slips and inventories of equipment at the storage facilities themselves were in fact called for by

the RFPs.[6]  Id.

The Government offered no credible argument or legal basis to justify its

approach to discovery, which flies in the face of well-settled authority, including the Collins

decision.  Moreover, it became clear at the June 3 "meet and confer" that the Government's

efforts fell short of even its own flawed interpretation of its duties under Rule 34.  For example,

the Government explained that as of June 3, many agencies had not yet fully determined whether

they possess responsive documents, and the attorneys responsible for this case still needed to

follow up with many of them.  Id.  Defendants advised the Government that, unless the

Government would undertake a comprehensive search and review of its files for responsive

documents to each RFP, the instant motion to compel would be filed.  The Government declined

to do so, reiterating that its efforts to date were sufficient and any further collection efforts would

be unduly burdensome.  Id.

---

[6]      Notably, prior to the "meet and confers," the Government never asked Defendants about the
scope of the RFPs or how they should be interpreted.  See McCall Decl. ¶ 18.  If there was any ambiguity
whatsoever, one would have expected the Government to initiate a discussion with Defendants regarding
the scope of its production rather than unilaterally deciding to perform a "dump" of unreviewed
documents on Defendants.

Notwithstanding the Government's intransigence, Defendants continued efforts to narrow the dispute. To that end, the parties began reviewing the RFPs for the information requested by Defendants, but were only able to get through approximately 30 of them before the meeting ended. See McCall Decl. ¶ 19. The results, however, were telling. The answer for each RFP was essentially the same: the attorneys responsible for this case consulted with various agencies and, based upon their interpretation of the RFP, concluded that all documents located at certain facilities relating to certain of the environmental sites at issue in the litigation were responsive. Id.

On June 11, 2010, the parties held a third "meet and confer" by telephone and continued the review of the RFPs. See McCall Decl. ¶ 20. Once again, not much progress was made. For most of the RFPs discussed, the answers were the same as those articulated at the June 3 meeting. Id. Furthermore, counsel for the Government acknowledged that they did not know whether the Government had documents responsive to the following RFPs: 2-6, 9-10, 15-18, 33, 36, 40-41, 45-52. See McCall Decl. ¶ 20. Id. The Government lawyers did not even try to justify this failure. Id.

In the end, both parties agreed that, in light of the fundamental disagreement about the scope of the Government's Rule 34 obligations, any further "meet and confers" would be pointless. Id.

## ARGUMENT

## I.    THE GOVERNMENT HAS FAILED TO PRODUCE DOCUMENTS CONSISTENT WITH ITS DISCOVERY OBLIGATIONS UNDER RULE 34

As noted above, the Government has failed altogether to produce documents responsive to a significant number of the RFPs, specifically numbers 2-7, 9-13, 15-18, 21-29, 33-36, 39, 41-56, 58, 61, 63-65, and 126. The Government's refusal to do so is inexcusable, and

it should be compelled to produce all documents responsive to all RFPs, not just the ones to which it chooses to respond.

In addition to its failure to produce responsive documents, the Government's position – that Defendants must wade through the documents stored at selected facilities, armed only with incomplete and vague indices, in order to identify which subset of documents are responsive to their own RFPs – is untenable.  Rule 34 provides two options for a party making documents available pursuant to Rule 34(b)(2)(E)(i) in response to a document request:  "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  Fed. R. Civ. P. 34(b)(2)(E)(i).  Under the circumstances presented here, in accordance with the holding of Collins, 256 F.R.D. 403, the "usual course of business" option is not available to the Government.

The Collins decision is directly on point.  In Collins, the defendant served RFPs seeking fifty-four categories of documents from the Securities and Exchange Commission (the "SEC").  Id. at 406.  Twenty-five of the requests targeted documents that supported factual allegations in the complaint, like many of Defendants' RFPs in this case.  Id. at 407 n.4.  In response, the SEC produced electronic databases containing 1.7 million documents, without any attempt to correspond any of the documents with the defendant's RFPs.  Id. at 407 & n.5.  The SEC maintained that its "production comport[ed] with the manner in which the documents are kept in the usual course of business."

The court rejected the SEC's argument, noting that the key to understanding the availability of the two options under Rule 34(b)(2)(E)(i) is "the assumption that in either case the documents will be organized – that records kept in the usual course of business would not be maintained in a haphazard fashion.  Thus regardless of the form chosen, the production will be

useful to the requesting party, and neither choice will inject unnecessary time and cost into

litigation." Id. at 411 (emphasis added).  The court explained what it means for documents to be

"kept in the usual course of business" by referencing Federal Rule of Evidence 803(6), which

addresses "regularly conducted business activity."  The court concluded:

> By rough analogy to Rule 803(6), the option of producing documents "as
> they are kept in the usual course of business" under Rule 34 requires the
> producing party to meet either of two tests.  First, this option is available
> to commercial enterprises or entities that function in the manner of
> commercial enterprises.  Second, this option may also apply to records
> resulting from "regularly conducted activity."  Where a producing party's
> activities are not "routine and repetitive" such as to require a well-
> organized record-keeping system – in other words when the records do not
> result from an "ordinary course of business" – the party must produce
> documents according to the sole remaining option under Rule 34:
> "organize[d] and label[ed] . . . to correspond to the categories in the
> request."

Id. at 412-13 (emphasis in original).  The court provided some examples of "routine or

repetitive" activities by the Government: "purchasing equipment from defense contractors,

selling maps to backpackers, and executing contracts to construct buildings."  Id.  However,

according to the court, anything in the nature of an investigation or analysis is not "routine and

repetitive," and thus, under these circumstances, a Rule 34(b)(2)(E)(i) production may not be

produced in the "usual course of business."  Id. at 408.

> [C]onducting an investigation – which is by its very nature not routine or
> repetitive – cannot fall within the scope of the "usual course of business."
> While the SEC routinely collects and maintains regulatory submissions
> such [as] 10-K reports, in its investigative capacity the agency conducts
> tailored probes of a company or an industry, requiring the gathering of
> records from diverse sources . . . .  The documents can only be provided in
> a useful manner if the agency organizes or labels them to correspond to
> each demand.

Id. at 413 (emphasis added).  The court concluded that "the SEC must respond to [defendant]'s

request for production by providing him with the documents that respond to those requests."  Id.

(emphasis added).

The holding of <u>Collins</u> is consistent with well-settled authority in this District and elsewhere.  <u>See, e.g.</u>, 2 Michael C. Silberberg et al., <u>Civil Practice in the Southern District of New York</u> § 22:14 (2d ed. 2009); <u>Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp.</u>, No. 85-cv-5399, 1987 WL 6905, at *2 (S.D.N.Y. Feb. 10, 1987) (if "the state of the corporation's records would make it unreasonably burdensome for the discovering party to search for the sought after documents, the burden falls on the discoveree to organize the documents so that the discoveror may make reasonable use of them.  If [the discoveree] has failed to maintain its records in a reasonable state, it must bear the burden of searching those available records for documents responsive to [the discoveror's] Rule 34(b) request." (internal quotation marks and citation omitted)); <u>id.</u> (discoveree's response to document request – which consisted of telling discoveror that the documents were located at a textile plant – did not satisfy discoveree's obligations under Rule 34); <u>Chemtex, LLC. v. St. Anthony Enters., Inc.</u>, No. 03-cv-4263, 2004 WL 764781, at *1 (S.D.N.Y. Apr. 9, 2004) (rejecting discoveree's offer "to bring counsel for [discoveror] to the location where the documents are located and to allow counsel to search for the documents" and ordering discoveree to search for responsive documents and make them available for inspection); <u>see also</u> <u>T.N. Taube Corp. v. Marine Midland Mortgage Corp.</u>, 136 F.R.D. 449, 456 (W.D.N.C. 1991) (discoveree failed to comply with Rule 34 when it produced documents that "were in no apparent order and were not labeled as responsive to any particular request"); <u>Stiller v. Arnold</u>, 167 F.R.D. 68, 71 (N.D. Ind. 1996) ("Producing 7,000 pages of documents in no apparent order does not comply with a party's obligation under Rule 34(b)").

Accordingly, Defendants here need not wade through nonresponsive documents searching for responsive ones.  Nor need they be left in the dark about whether all locations

where responsive documents might reasonably be located had been searched, or whether each and every RFP had been fully responded to (which clearly they had not). The law mandates that the Government must organize and label responsive documents to correspond to the RFPs. Because the Government has failed and still refuses to do so, Defendants respectfully request their Motion to Compel be granted with respect to each and every RFP.

## II.  THE GOVERNMENT'S ARGUMENT REGARDING THE BREADTH OF THE RFPS IS UNAVAILING

The Government contended at the "meet and confers" that its approach to its discovery obligations was justified by the scope of the RFPs, which, in the Government's opinion, are so broad as to call for all environmental site-related documents. See McCall Decl. ¶ 18. This argument fails for multiple reasons.

First, it is beyond dispute that the Government has ignored a long list of RFPs that have nothing to do with the environmental sites. See § B, supra. The Government has no answer whatsoever for its failure to produce documents responsive to those RFPs.

Second, even if the environmental site-related RFPs were as broad as the Government contends, and they are not, it does not excuse the Government's failure to review, sort, and label its responsive documents according to the RFPs under Collins and other authorities. See Collins, 256 F.R.D. 403; Standard Dyeing, 1987 WL 6905, at *2; Chemtex, 2004 WL 764781, at *1.

Third, the Government's interpretation of the RFPs as calling for all documents related to the environmental sites is unavailing. Defendants' RFPs regarding environmental sites called for specific documents, not the universe of irrelevant materials held at each storage facility. For example, with respect to the Moss American site, Defendants requested specific information, including documents concerning the history and alleged environmental harm caused

at the site, the EPA's investigation of the site, an alleged obligation of Kerr-McGee Chemical

Corporation to undertake certain remediation, the progress of that remediation, and the amounts

of remediation expenses that the EPA incurred and expects to incur in the future.  <u>See</u> McCall

Decl. Ex. A (Second RFP Nos. 60, 62, 136–141).  In response to these specific requests, the

Government has provided only indices of boxes, cases, and stacks of documents that do not

distinguish responsive documents from nonresponsive documents.  <u>See</u> McCall Decl. Exs. E-1

(indices describing the number of boxes that <u>may</u> contain responsive documents), E-14, E-57

(indices describing the contents of documents that <u>may</u> be responsive), E-15–16 (indices

describing the contents of cases that <u>may</u> contain responsive documents).  The other RFPS

addressed to environmental sites are similarly pointed.  <u>See, e.g.</u>, McCall Decl. Ex. A (Second

RFP Nos. 60, 82-86) (Soda Springs site); McCall Decl. Ex. A (Second RFP Nos. 62, 150–153)

(Toledo Tie site).

There is no reasonable way the RFPs can be interpreted to call for documents

such as federal express tracking slips and site-wide equipment inventories.  It is plain that the

Government has adopted its position with regard to the breadth of the RFPs only as an excuse to

justify its refusal to conduct a responsiveness review and other deficient efforts at production.

As the Government has failed to comply with its obligations under Rule 34, the

Defendants respectfully request their motion be granted.

## III.    DEFENDANTS SHOULD BE AWARDED THEIR <u>ATTORNEY'S FEES IN CONNECTION WITH THIS MOTION TO COMPEL</u>

For the reasons discussed above, Defendants' motion to compel should be

granted.  Accordingly, pursuant to Bankruptcy Rule 7037, Defendants are entitled to recover

reasonable expenses, including attorney's fees, incurred in connection with filing this motion.

Indeed, the text of Rule 37 not only authorizes, but requires, the grant of attorneys fees:

> If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A); see JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., No. 03-cv-5562, 2005 WL 1958361, at **12-13 (S.D.N.Y. Aug. 16, 2005) (granting attorney's fees to prevailing party in discovery dispute); Fund Comm'n Serv., II, Inc. v. Westpac Banking Co., No. 93-cv-8298, 1996 WL 469660, at *5 (S.D.N.Y. Aug. 16, 1996) (same).  The Government should thus be ordered to pay Defendants' attorneys' fees in connection with this motion.

## **CONCLUSION**

The Government chose to come before this Court against the Defendants seeking hundreds of millions of dollars in damages.  It has long known that its relevant documents would be subject to production.  The Government should not be granted a "free pass" here to withhold key documents, shift the burden of discovery in a lawsuit it brought onto the backs of the Defendants, or hide an incomplete production behind a smokescreen of indices.  For the foregoing reasons, Defendants respectfully request their motion to compel pursuant to Bankruptcy Rules 7034 and 7037 be granted.

| | |
|---|---|
| Dated:      New York, New York<br>            July 9, 2010 | Respectfully submitted, |
| /s/ Melanie Gray | /s/ Duke McCall, III |
| Melanie Gray (admitted pro hac vice)<br>Lydia Protopapas (LP 8089)<br>Jason W. Billeck (admitted pro hac vice)<br>WEIL, GOTSHAL & MANGES LLP<br>700 Louisiana, Suite 1600<br>Houston, Texas 77002<br>Telephone: (713) 546-5000<br>Facsimile: (713) 224-9511<br><br>Richard A. Rothman (RR 0507)<br>Bruce S. Meyer (BM 3506)<br>Lori L. Pines (LP 3005)<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007 | Duke K. McCall, III<br>Bingham McCutchen LLP<br>2020 K Street, NW<br>Washington, DC  20006-1806<br>202.373.6000<br>202.373.6001(fax)<br>duke.mccall@bingham.com<br><br>James J. Dragna (admitted pro hac vice)<br>BINGHAM MCCUTCHEN LLP<br>355 South Grand Avenue, Suite 4400<br>Los Angeles, California 90071<br>Telephone: (213) 680-6400<br>Facsimile: (213) 680-6499<br><br>*Counsel for Anadarko Petroleum Corporation and Kerr-McGee Corporation* |

## <u>CERTIFICATE OF SERVICE</u>

I, Duke K. McCall, III, hereby certify under penalty of perjury that on July 9, 2010, in

addition to service via ECF, I caused true and correct copies of the foregoing to be served upon

the following persons, as indicated below:

**Via email joseph.pantoja@usdoj.gov**

Joseph A. Pantoja
Assistant United States Attorney
86 Chambers Street
New York, NY 10007

**Via email jonathan.henes@kirkland.com**

Richard M. Cieri
Jonathan S. Henes
Kirkland & Ellis LLP
153 East 53rd Street
New York, NY 10022

**Via email david.crichlow@pillsburylaw.com**

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 100036

**Via email jeffrey.zeiger@kirkland.com and
jzeiger@kirkland.com**

Jeffrey J. Zeiger
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654

**Via email dfriedman@kasowitz.com**

David M. Friedman
David J. Mark
Ross G. Shank
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

/s/ Duke K. McCall, III
Attorney at Law

24