Melanie Gray *(admitted pro hac vice)*
Lydia Protopapas (LP 8089)
Jason W. Billeck *(admitted pro hac vice)*
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile: (713) 224-9511

Richard A. Rothman (RR 0507)
Bruce S. Meyer (BM 3506)
Lori L. Pines (LP 3005)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

James J. Dragna *(admitted pro hac vice)*
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071
Telephone:  (213) 680-6400
Facsimile:  (213) 680-6499

Duke K. McCall, III *(admitted pro hac vice)*
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Telephone:  (202) 373-6000
Facsimile:  (202) 373-6001

*Counsel to Anadarko Petroleum Corporation and Kerr-McGee Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, *et al.*, | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. Pro. No. 09-1198 |
| | ) | |
| ANADARKO PETROLEUM CORPORATION and KERR-McGEE CORPORATION, | ) ) | |
| | ) | |
| Defendants. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | |
| ANADARKO PETROLEUM CORPORATION and KERR-McGEE CORPORATION, | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS COUNTS IV, V, AND VI OF
THE AMENDED ADVERSARY COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...............................................................................................................4

I.    THE STATUTE OF LIMITATIONS BARS THE AMENDED CLAIMS ..............4

    A.    The Amended Claims Are Time-Barred Because No Breach Of Fiduciary
          Duty Resulting In Any New And Independent Injury Occurred In
          Connection With The March 2006 Distribution .............................................5

    B.    Plaintiffs Have Failed To Satisfy Their Burden For Pleading Any Doctrine
          That Would Toll The Statutes Of Limitations For The Amended Claims ....8

        1.    Plaintiffs' Attempt To Use The Adverse Domination Doctrine To
              Toll The Statute Of Limitations Is Barred By Oklahoma Law..........8

        2.    Plaintiffs Again Have Failed To Adequately Allege Fraudulent
              Concealment ......................................................................................11

        3.    The Discovery Rule Provides No Support For Plaintiffs' Attempt
              To Avoid The Statute Of Limitations ................................................12

II.   PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM FAILS TO
      STATE A CLAIM AND SHOULD BE DISMISSED (COUNT IV)........................14

    A.    Plaintiffs Allege No Actionable Breach After January 12, 2006..................14

    B.    No Plaintiff Was Owed A Fiduciary Duty As A Minority Shareholder........14

    C.    Plaintiffs Have Not Adequately Pled That Kerr-McGee Breached A
          Fiduciary Duty It Owed As A Parent Of An Insolvent Company .................15

    D.    Plaintiffs Have Not Adequately Asserted Breach Of Fiduciary Duty As A
          Promoter.......................................................................................................16

III.  THE CIVIL CONSPIRACY CLAIM MUST BE DISMISSED (COUNT V) ..........17

IV.   PLAINTIFFS' AIDING AND ABETTING A BREACH OF FIDUCIARY
      DUTY CLAIM MUST BE DISMISSED (COUNT VI)............................................22

CONCLUSION..............................................................................................................27

# TABLE OF AUTHORITIES

## CASES

ASARCO LLC v. Americas Mining Corp., 396 B.R. 278 (S.D. Tex. 2008) ....................15

Askanase v. Fatjo, 130 F.3d 657 (5th Cir. 1997) ................................................................11

Abbatiello v. Monsanto Co., 522 F. Supp. 2d 524 (S.D.N.Y. 2007) .................................13

Adelphia Commc'ns Corp. v. Bank of Am., N.A., 365 B.R. 24 (Bankr. S.D.N.Y.
    2007) ............................................................................................................................22

All Bus. Solutions Inc. v. NationsLine, Inc., 629 F. Supp. 2d 553 (W.D. Va.
    2009) ............................................................................................................................20

Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043 (11th Cir. 2007)...........................21

Anadarko Petroleum Corp. v. Panhandle E. Corp., 545 A.2d 1171 (Del. 1988)...............15

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).........................................................................19

BBS Norwalk, Inc. v. Raccolta, Inc., 60 F. Supp. 2d 123 (S.D.N.Y. 1999).....................22

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ................................................19, 21, 25

Bernstein v. Crazy Eddie, Inc., 702 F. Supp. 962 (E.D.N.Y. 1989) .................................22

In re Bostic Constr., Inc., 2010 WL 2598253 (Bankr. M.D.N.C. June 25, 2010) ............24

Brock v. Thompson, 948 P.2d 279 (Okla. 1997) ................................................................21

Brownstone Inv. Group, LLC v. Levey, 468 F. Supp. 2d 654 (S.D.N.Y. 2007) ...............20

Calderon v. Aurora Loan Serv., Inc., 2010 WL 2306343 (E.D.Va. June 3, 2010)............23

Chickasaw Tel. Co. v. Sw. Bell Mobile Sys., Inc., 1997 WL 290951 (10th Cir.
    May 27, 1997).................................................................................................................7

Christmas v. Virgin Is. Water & Power Auth., 527 F. Supp. 843 (D.V.I. 1981)...............23

Cont'l Cas. Co. v. Compass Bank, 2006 WL 566900 (S.D. Ala. Mar. 6, 2006) ...............24

EPS Solutions Corp. v. Deloitte & Touche, LLP, 2002 WL 441510 (N.D. Ill.
    Mar. 20, 2002)..............................................................................................................17

FCC v. NextWave Personal Commc'ns, Inc., 200 F.3d 43 (2d Cir. 1999) ........................8

FDIC v. Henderson, 61 F.3d 421 (5th Cir. 1995) ...........................................................9

FDIC v. Smith, 980 P.2d 141 (Or. 1999) .........................................................................9

Garnett v. Atoka State Bank, 227 P. 142 (Okla. 1924).....................................................26

Garrett v. Bryan Cave LLP, 2000 WL 430163 (10th Cir. Apr. 21, 2000).........................22

In re Gen. Motors (Hughes) S'holder Litig., 2005 WL 1089021 (Del. Ch. May 4,
    2005) .................................................................................................................24, 25

Halo Tech Holdings, Inc. v. Cooper, 2008 WL 877156 (D. Conn. Mar. 26, 2008) ..........24

Hawkins v. Feder, 2008 WL 3192973 (D.N.J. Aug. 5, 2008) ...........................................14

Hecht v. Commerce Clearing House, Inc., 897 F.2d 21 (2d Cir. 1990) ............................20

Hinds County v. Wachovia Bank N.A., 620 F. Supp. 2d 499 (S.D.N.Y. 2009)................12

In re I.E. Liquidation, 2009 WL 2707223 (Bankr. N.D. Ohio Aug. 25, 2009) .................20

Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098 (Fla. 2008) .................................................24

Lesavoy v. Gattullo-Wilson, 170 F. App'x 721 (2d Cir. 2006).........................................25

In re Magnesium Corp. of Am., 399 B.R. 722 (Bankr. S.D.N.Y. 2009) ...........................22

In re Magnetic Audiotape Antitrust Litig., 2002 WL 975678 (S.D.N.Y. May 9,
    2002) .................................................................................................................12

Malpiede v. Townson, 780 A.2d 1075 (Del. 2001) ....................................................24, 25

Medtech Prods. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778 (S.D.N.Y. 2008)................19, 20

In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56 (2d Cir. 1998) ............................7, 12

Midwest Grain Prods. v. Productization, Inc., 228 F.3d 784 (7th Cir. 2000)....................23

Matter of Munford, Inc., 98 F.3d 604 (11th Cir. 1996) .....................................................23

In re NYMEX S'holders Litig., 2009 WL 3206051 (Del. Ch. Sept. 30, 2009)...........24, 25

In re Nine West Shoes Antitrust Litig., 80 F. Supp. 2d 181 (S.D.N.Y. 2000)...................12

Pavlovich v. Nat'l City Bank, 435 F.3d 560 (6th Cir. 2006).............................................24

Peterson v. Grisham, 2008 WL 4363653 (E.D. Okla. Sept. 17, 2008), aff'd, 594
  F.3d 723 (10th Cir. 2010) .....................................................................................20, 21

Popielarski v. Jacobson, 59 N.W.2d 45 (Mich. 1953) .......................................................21

Resolution Trust Corp. v. Acton, 49 F. 3d 1086 (5th Cir. 1995)........................................11

Resolution Trust Corp. v. Bright, 872 F. Supp. 1551 (N.D. Tex. 1995) .......................9, 11

Resolution Trust Corp. v. Grant, 901 P.2d 807 (Okla. 1995)..............................8, 9, 10, 13

Roffman v. City of New York, 2002 WL 31760245 (S.D.N.Y. Dec. 10, 2002)...............17

Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209 (S.D.N.Y. 2004) ............15

Saito v. McCall, 2004 WL 3029876 (Del. Ch. Aug. 18, 2004) .........................................24

Seattle-First Nat'l Bank v. Carlstedt, 678 F. Supp. 1543 (W.D. Okla. 1987) ..................26

In re Sharp Int'l Corp., 403 F.3d 43 (2d Cir. 2005)....................................................24, 26

Simon-Whelan v. Andy-Warhol Found. for the Visual Arts, 2009 WL 1457177
  (S.D.N.Y. May 26, 2009)......................................................................................11, 12

Stadt v. Fox News Network LLC, 2010 WL 2540957 (S.D.N.Y. June 22, 2010) ............23

State v. Niagara Mohawk Power Corp., 263 F. Supp. 2d 650 (W.D.N.Y. 2003)...............7

Steinberg v. Sherman, 2008 WL 2156726 (S.D.N.Y. May 8, 2008)................................22

In re Sw. Supermarkets, LLC, 376 B.R. 281 (Bankr. D. Ariz. 2007)...............................15

In re Tronox, Inc., 429 B.R. 73 (Bankr. S.D.N.Y. 2010)....................................4, 8, 10, 11

Twombly v. Bell Atl. Corp., 425 F.3d 99 (2d Cir. 2005) .................................................25

In re USA Detergents, Inc., 418 B.R. 533 (Bankr. D. Del. 2009) .....................................25

United States v. Lloyds TSB Bank PLC, 639 F. Supp. 2d 326 (S.D.N.Y. 2009)..............19

Varner v. Peterson Farms, 371 F.3d 1011 (8th Cir. 2004)...............................................7, 8

Ward v. Caulk, 650 F.2d 1144 (9th Cir. 1981) ...................................................................7

Wilson v. Paine, 288 S.W.3d 284 (Ky. 2009)......................................................................9

Zahrey v. City of New York, 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009) ...................20

**STATUTES & RULES**

Fed. R. Civ. P. 8(a) ...........................................................................................................25

Fed. R. Civ. P. 9(b) ......................................................................................................11, 12

**MISCELLANEOUS**

Restatement (Second) of Torts § 874 (1982)......................................................................23

Restatement (Second) of Torts § 876 (1982)......................................................................23

## PRELIMINARY STATEMENT

Defendants' motion to dismiss the Amended Complaint (the "Motion") demonstrated that, despite Plaintiffs having been given a second chance to cure their deficient claims, Counts IV, V and VI of the Amended Complaint (the "Amended Claims") are untimely, inadequately pled and should be dismissed with prejudice. Plaintiffs' Opposition to Defendants' Motion to Dismiss Counts IV, V, and VI (the "Opposition") does nothing to rebut this conclusion. In fact, while repeatedly reciting a lengthy catalog of the Amended Complaint's insufficient allegations, the Opposition fails to dispute, and in fact concedes, many of the Motion's key arguments. The Opposition also flatly misstates the law as well as certain facts regarding the parties' document production to date.[1]

Plaintiffs still cannot overcome the three-year statute of limitations governing each of the Amended Claims. Rather, the Opposition confirms that the only "act" that took place within the three-year statutory period consists *not* of any affirmative misconduct on the part of Kerr-McGee, but only that Kerr-McGee did not "stop" the March 31, 2006 Distribution and "undo" the wrongs allegedly caused to Tronox by the November 28, 2005 IPO. Plaintiffs fail to address Defendants' argument that the Distribution consisted merely of Kerr-McGee's dividending its Tronox Class B shares to *Kerr-McGee's own shareholders*, an act which could not have caused a

---

[1] Defendants' moving brief explained that Plaintiffs' failure to plead the requisite factual allegations to support the Amended Claims is particularly inexcusable and should be assessed in light of the fact that, unlike in the usual case, Plaintiffs have had the benefit of an enormous document production – exceeding 3.1 million pages as of April 28, 2010, the date Plaintiffs filed the Amended Complaint. Plaintiffs attempt to deflect this attack by complaining that Defendants' document production was not completed as of the March 31, 2010 target date for substantial completion of the parties' document productions. Plaintiffs' criticism is astonishing given that Plaintiffs have produced over 1.695 million pages *since* March 31, 2010. Moreover, contrary to the implication in the Opposition, both Plaintiffs and Defendants have continued to produce documents designated as jointly privileged pursuant to an agreement reached between the parties on April 29, 2010. At the time Plaintiffs filed the Opposition, Tronox had not completed its own production of these documents. But most importantly, Plaintiffs do not dispute that, unlike in the usual case where a plaintiff files its complaint before the commencement of discovery, in this case, Plaintiffs received millions of pages of document discovery before filing their Amended Complaint. Under these circumstances, Plaintiffs' failure to plead facts sufficient to establish the essential elements of the Amended Claims warrants their dismissal with prejudice.

1

separate or independent injury to Tronox.  In fact, the Amended Complaint makes it plain that any alleged injury to Tronox from the so-called "scheme" to separate the Legacy Liabilities occurred when these liabilities allegedly were "transferred" to Tronox at the time of the IPO. Moreover, while Plaintiffs now predicate their breach of fiduciary duty claim upon the transfer of certain employee and retiree liabilities from Kerr-McGee to Tronox at the time of the Distribution, the Amended Complaint makes clear that the Employee Benefits Agreement ("EBA") governing that transfer was part and parcel of the IPO and executed in November 2005.

Nor have Plaintiffs provided any basis for resuscitating their stale claims through any of the narrow tolling exceptions they attempt to invoke.  First, Plaintiffs concede – as they must – that there was never a time when a majority of allegedly culpable directors controlled the Tronox board, a fact that precludes the application of the adverse domination tolling doctrine.  Second, Plaintiffs' attempt to avoid the statute of limitations based on allegations of fraudulent concealment should be rejected out of hand because Plaintiffs have disregarded this Court's express instruction to allege with particularity the diligence they undertook to discover their claims.  To the contrary, Plaintiffs' Opposition effectively concedes that they failed to exercise the diligence required to invoke fraudulent concealment.  Finally, Plaintiffs' attempt to invoke Oklahoma's discovery rule is groundless.  Plaintiffs do not claim that Tronox's officers and directors did not discover, or could not with diligence have discovered, their claims within the limitations period.  Instead, Plaintiffs' claim is that they supposedly could not act upon such knowledge because of the alleged adverse domination of the Tronox board by Kerr-McGee.  As noted above and discussed in more detail below, however, the narrow adverse domination exception is clearly inapplicable here due to Plaintiffs' inability to satisfy the applicable "disinterested majority" rule.  Plaintiffs cannot evade that requirement in the context of the

discovery rule by rehashing the same argument about Tronox's officers and directors being controlled by Kerr-McGee.

The Amended Claims should also be dismissed for failure to state a claim.  Plaintiffs have not addressed Defendants' argument that Plaintiffs have not and cannot assert any breach of fiduciary duty claim on behalf of Tronox's minority shareholders, its future shareholders, or on behalf of Tronox itself while it was a wholly-owned subsidiary of Kerr-McGee.  And, Plaintiffs ignore the recent case law that provides that there is no duty owed by Kerr-McGee even if Tronox were insolvent while it was wholly-owned.  Moreover, nothing in the Opposition alters the fact that Plaintiffs fail to adequately plead any act of promotion by Kerr-McGee after the IPO, let alone an act that could constitute a breach of any duty owed by Kerr-McGee as a promoter.  Count IV must therefore be dismissed.

The Amended Complaint also fails to state a claim for civil conspiracy to breach fiduciary duties (Count V).  Plaintiffs repeatedly cite to documents reflecting that Anadarko considered buying Kerr-McGee, and decided not to do so, *three years before the IPO*.  However, Plaintiffs do not dispute that the Amended Complaint fails to allege any facts whatsoever to satisfy the most critical element of their conspiracy claim – i.e., that there was ever any communication, much less an agreement, between Anadarko and Kerr-McGee prior to the IPO to "foist the Legacy Liabilities" on Tronox as a prelude to Anadarko's purchase of Kerr-McGee. Instead, these critical allegations are based entirely on speculation and pled on information and belief, under circumstances where there is an alternative, lawful explanation for the fact that Anadarko evaluated the purchase of Kerr-McGee prior to the IPO and decided not to purchase the company at that time – because Kerr-McGee's chemical assets would not complement

Anadarko's oil and gas exploration and production business.  Plaintiffs have clearly failed to plead the elements of their conspiracy claim.

Finally, Plaintiffs' Opposition applies the wrong choice of law analysis to the aiding and abetting a breach of fiduciary duty claim (Count VI) in order to circumvent the fact that Oklahoma, whose law governs this claim, has never recognized such a cause of action.  Indeed, a claim for aiding and abetting a breach of fiduciary duty is separately addressed in a section of the Restatement (Second) of Torts that has never been adopted in Oklahoma.  Moreover, Plaintiffs fail to point to any non-conclusory allegations that can support the essential elements of an aiding and abetting a breach of fiduciary duty claim, particularly that Anadarko provided Kerr-McGee with any assistance, much less substantial assistance, in the allegedly unlawful scheme.

For all of the reasons set forth herein and in Defendants' Motion, the Amended Claims should be dismissed with prejudice.

## ARGUMENT

## I.    THE STATUTE OF LIMITATIONS BARS THE AMENDED CLAIMS

In its Opinion, this Court dismissed Plaintiffs' breach of fiduciary duty claim as inadequately pled, and recognized that it would be barred by the statute of limitations unless Plaintiffs were able to successfully plead an applicable tolling doctrine.  In re Tronox, Inc., 429 B.R. 73, 108 (Bankr. S.D.N.Y. 2010).  Despite a second bite at the apple, Plaintiffs have failed to allege any actionable breach of duty occurring after January 12, 2006 (three years before the petition date), and have failed to allege facts that would support any tolling doctrine.  Consequently, the Amended Claims, which are all based on purported breaches of fiduciary duty, should now be dismissed with prejudice as time-barred.

**A.    The Amended Claims Are Time-Barred Because No Breach Of Fiduciary Duty Resulting In Any New And Independent Injury Occurred In Connection With The March 2006 Distribution**

Recognizing that any alleged breaches based on conduct occurring before January 12, 2006 (which includes every purported act undertaken in connection with the November 28, 2005 IPO) are time-barred, Plaintiffs now latch on to two allegations concerning the Distribution in an effort to save their claims.  First, Plaintiffs allege that Kerr-McGee breached a duty in March 2006 by going forward with the Distribution, especially given the allegation that certain land sales that would have provided Tronox with $150 million in post-IPO proceeds had not closed by the date of the Distribution.  Opp. at 6-7; Am. Compl. ¶¶ 115, 166.  Second, Plaintiffs assert that by approving the completion of the Spin-Off on March 8, 2006, Kerr-McGee approved the further transfer of defined benefit and retiree-related liabilities upon the Distribution date.  Opp. at 7-8; Am. Compl. ¶¶ 116-17.  As demonstrated in Defendants' moving brief (Mot. at 9-13), and for all the reasons detailed below, neither of these allegations provides a basis for a timely breach of fiduciary duty claim.

As this Court is aware, Tronox's IPO occurred on November 28, 2005, and on March 31, 2006 Kerr-McGee effectuated the Distribution.  See Am. Compl. ¶¶ 114, 117.  Notwithstanding Plaintiffs' specious land-sale allegations,[2] the Distribution itself inflicted no new injury on

---

[2]    While not necessary for the granting of this Motion, the Court should be aware that the depositions of Tronox's former CEO (Thomas Adams), current Vice President of Corporate Affairs (Robert Gibney), and former General Counsel (Roger Addison) have been completed, and have shown that there was no support for Plaintiffs' allegations that Kerr-McGee knew these sales involving land in Henderson, Nevada, would not close.  Indeed, these executives, including Mr. Gibney (who is still a Tronox employee and is slated to become an officer of the reorganized company) testified to their continued belief – long after the date of the Distribution – that the Henderson land sales would indeed close.  See Ex. A Deposition of Robert Gibney, dated June 23, 2010, at 238 (A. "At that time, during the IPO, and I think all the [way] up until this [February 22, 2007] call, we still had the belief that Syntex [sic] was going to follow through with their purchase of the land.  I'd have to look at the date when they backed out, but it wasn't long after that."  Q.  "So, are you agreeing with me then that it would not be correct to characterize it as unrealistic as of that time to expect those sales to -- to be complete?"  A. "At -- at that point in time, we had every belief that those sales would be concluded, yes."); Ex. B Deposition of Thomas Adams, dated June 10, 2010, at 509; Ex. C Deposition of Roger Addison, dated July 13, 2010, at 158-59.  Inexplicably, Plaintiffs' counsel apparently failed to vet these

Tronox.  All the Distribution did was give Kerr-McGee's shares of Tronox's Class B stock, in the form of a dividend, to Kerr-McGee's own shareholders.  Am. Compl. ¶¶ 88, 117, 136; Mot. at 12-13.  Indeed, this is exactly the same way Plaintiffs describe the Distribution in their recent Disclosure Statement.  See Disclosure Statement Regarding the Joint Plan of Reorganization of Tronox, Inc., at 16, In re Tronox, Inc., No. 09-10156 (Bankr. S.D.N.Y. July 17, 2010) (the "Disclosure Statement") [Dkt. No. 1707] ("On March 30, 2006, New Kerr-McGee completed the Spinoff by distributing 100% of the Tronox Inc. class B common stock to New Kerr-McGee's public stockholders.").  Kerr-McGee's mere transfer of its Tronox Class B common stock to its own shareholders did not constitute a breach of fiduciary duty, and therefore cannot bring the Amended Claims within the statute of limitations.

In a last-ditch effort to find a loophole that will enable them to avoid the three-year limitations period, Plaintiffs argue that it was Kerr-McGee's approval of the Spin-Off through the Distribution – and not the November 28, 2005 execution of the EBA – that transferred certain benefit and retiree-related liabilities to Tronox.  Opp. at 7-8.  But the transfer of the defined benefit and retiree-related liabilities was provided for and occurred solely pursuant to the EBA.  As the Amended Complaint itself states, the EBA governed all the terms of the transfer of these employee-related liabilities, including the terms of how these liabilities would be transferred when the expected Distribution ultimately occurred.  See Am. Compl. ¶¶ 111, 113; see also Disclosure Statement, at 18 (Tronox "assume[d] responsibility for retirement and other employee benefit liabilities . . . pursuant to the terms of [the EBA].").  The March 8, 2006 approval of the

---

– or any of the other key allegations in this case – with Tronox's current executive Mr. Gibney or its former executives Mr. Adams and Mary Mikkelson (Tronox CFO until May 2009) who have all testified that various key allegations in the Amended Complaint are incorrect.  See, e.g., Ex. D Deposition of Mary Mikkelson, dated June 22, 2010, at 79-80, 264.  The Affidavit of Lydia Protopapas, Esq. In Support Of The Reply Brief ("Protopapas Reply Aff.") is submitted herewith.  All documents cited herein as "Ex. __" are attached to the Protopapas Reply Aff.

Distribution merely triggered the previously negotiated and agreed upon terms of the EBA – a deal that was struck in November 2005.  See Am. Compl. ¶ 116.  Plaintiffs do not allege that there was any new agreement entered into in March 2006, nor do they allege that Plaintiffs assumed any obligations not expressly prescribed in the EBA.  Moreover, Plaintiffs do not allege that anything new happened in March 2006 in connection with the employee-related liabilities other than the implementation of the November 2005 EBA.

Plaintiffs' emphasis in the Opposition on the theoretical possibility that the Distribution might not have occurred cannot save their breach of fiduciary duty claims.  Plaintiffs' entire Amended Complaint – and theory of the case – is predicated on an alleged two-part "scheme" that was supposedly designed to enable Kerr-McGee to achieve a "clean break" from the Legacy Liabilities through a Spin-Off of its Chemical Business.  See, e.g., Am. Compl. ¶¶ 4, 7.  Indeed, Plaintiffs specifically allege that in October 2005 Kerr-McGee "approved the separation of the Chemical Business through a two-part Spin-Off."  Id. at ¶ 88.  Despite Plaintiffs' contortions to the contrary, the only plausible reading of the Amended Complaint is that the parties never seriously considered an IPO without a Distribution.

Finally, Plaintiffs are unable to distinguish the cases cited by Defendants holding that under circumstances such as those present here, the later effectuation of an earlier agreed-upon obligation does not toll the statute of limitations.  See Mot. at 10-13; Varner v. Peterson Farms, 371 F.3d 1011, 1019-20 (8th Cir. 2004); Chickasaw Tel. Co. v. Sw. Bell Mobile Sys., Inc., 1997 WL 290951, at *3-6 (10th Cir. May 27, 1997) (granting summary judgment on breach of fiduciary duty claims on statute of limitations grounds because alleged injuries after initial breach flowed from that first untimely breach, and not from continuing breaches).[3]  Accordingly,

---

[3]    See also State v. Niagara Mohawk Power Corp., 263 F. Supp. 2d 650, 660 (W.D.N.Y. 2003); Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981); In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 59 (2d Cir. 1998).

Plaintiffs' Amended Claims accrued in November 2005, when they signed the EBA and were fully aware of and agreed to assume the employee-related obligations in connection with the ensuing distribution that the parties had contemplated.  See Varner, 371 F.3d at 1019-20 ("[W]hen a complaining party was fully aware of the terms of an agreement when it entered into the agreement, an injury occurs only when the agreement is initially imposed" and there is no tolling by the requirements placed on the parties under the agreement); see also FCC v. NextWave Personal Commc'ns, Inc., 200 F.3d 43, 60 (2d Cir. 1999) (finding that general contract law provides that transfer is made at the time of offer and acceptance, when contractual obligations are incurred).  For all of these reasons, the Amended Claims are untimely and cannot survive Defendants' motion to dismiss.

## B.    Plaintiffs Have Failed To Satisfy Their Burden For Pleading Any Doctrine That Would Toll The Statutes Of Limitations For The Amended Claims

Under governing law, exceptions to statutes of limitation are strictly construed.  See Resolution Trust Corp. v. Grant, 901 P.2d 807, 813 (Okla. 1995). This Court expressly held that in order to assert causes of action for breach of fiduciary duties accruing before January 12, 2006, Plaintiffs would have to adequately plead that the statute was tolled.  See Tronox, Inc., 429 B.R. at 107.  Plaintiffs have failed to do so.

### 1.    *Plaintiffs' Attempt To Use The Adverse Domination Doctrine To Toll The Statute Of Limitations Is Barred By Oklahoma Law*

As this Court recognized, Grant governs the applicability of the adverse domination exception in this proceeding.  Tronox, Inc., 429 B.R. at 107-08.  After stressing that the adverse domination doctrine must be narrowly construed, the Oklahoma Supreme Court went on to hold that the "disinterested majority" rule – which requires a plaintiff to plead that the majority of its directors were not disinterested – is a prerequisite to the assertion of the adverse domination doctrine.  Grant, 901 P.2d at 813, 816-18.  Thus, in order to delay the accrual of Plaintiffs'

Amended Claims until April 1, 2006, Tronox's board of directors must have been composed of a majority of culpable directors.  See id. at 816; see also Wilson v. Paine, 288 S.W.3d 284, 289 (Ky. 2009) (holding that under the "disinterested majority" test plaintiff has "the initial burden to plead and prove facts that the board was composed of a majority of culpable directors"); see also FDIC v. Smith, 980 P.2d 141, 148 (Or. 1999); see also Mot. at 14-16.

Plaintiffs have not and cannot meet that burden here because it is undisputed that Tronox's board consisted of a majority of disinterested directors, as only two of the six board members were Kerr-McGee employees and allegedly culpable directors.  See Opp. at 11-13. Nor do Plaintiffs dispute the holdings of the several cases cited by Defendants applying the disinterested majority test of the adverse domination doctrine.  See id.  Thus, Plaintiffs cannot rely on the adverse domination doctrine to toll the statute of limitations.  See Resolution Trust Corp. v. Bright, 872 F. Supp. 1551, 1565-66 (N.D. Tex. 1995).

Plaintiffs' argument that Kerr-McGee as majority shareholder could have nominated a majority of Tronox's board of directors does nothing to refute that Tronox's board was in fact always comprised of a majority of directors who were independent of Kerr-McGee.  See Opp. at 11-12; Mot. at 16.  For a plaintiff to satisfy the disinterested majority requirement, it is not enough "simply to show that the culpable director had the ability to control the board because, for example, of his power to fire or remove informed directors; otherwise, limitations would never run against a corporation where the culpable director or officer is also the majority shareholder."  FDIC v. Henderson, 61 F.3d 421, 430 (5th Cir. 1995) (holding that adverse domination sufficient to toll the statute of limitations cannot be established where control of the board is by culpable directors that constitute a numerical minority).  Accordingly, allegations

that Kerr-McGee could have exerted control over the board do not satisfy the disinterested majority rule.

Plaintiffs also now assert that the disinterested majority rule should apply only to fiduciary duty claims brought against *individual directors*, and not to fiduciary duty claims against parent corporations. Opp. at 12. This assertion is remarkable, and also precluded by the Oklahoma Supreme Court's decision in <u>Grant</u>. The court in that case squarely held that the doctrine of adverse domination is to be construed narrowly and is subject to, and limited by, the disinterested majority rule. <u>Grant</u>, 901 P.2d at 813, 816-18. While the Oklahoma Supreme Court has not held that the adverse domination doctrine applies to claims other than those asserted against directors, Plaintiffs here took a significant leap and argued to this Court's satisfaction that the adverse domination doctrine should be expanded to apply to claims against parent corporations as well. <u>Tronox, Inc.</u>, 429 B.R. at 107-08. Having done so, Plaintiffs now argue – with no support – that while this Court should continue to extend the adverse domination doctrine in that manner, it should then disregard the Oklahoma Supreme Court's express ruling that the doctrine must be limited by the disinterested majority rule. Plaintiffs have failed to satisfy Oklahoma's disinterested majority test which clearly applies, and, in light of the undisputed facts, they cannot do so. Accordingly, this Court should find that Plaintiffs cannot use the adverse domination doctrine to avoid the statute of limitations.[4]

---

[4]    Plaintiffs have also failed to offer any explanation as to why <u>Grant's</u> holding that the adverse domination doctrine should be narrowly applied to fraud claims (and not breach of fiduciary duty claims) should not be strictly followed. Opp. at 11-12. As Defendants have explained, the Oklahoma Supreme Court has held that adverse domination is a "very narrow" doctrine, which applies only in "situations involving fraudulent conduct." Mot. at 14 (quoting <u>Grant</u>, 901 P.2d at 815-16). Defendants further showed that courts examining the issue have found that adverse domination should not apply to claims, such as Plaintiffs', involving breaches of the duty of loyalty. Mot at 14 n.11. While Plaintiffs try to dissuade this Court from reconsidering this issue, they offer no substantive rebuttal as to why the Oklahoma Supreme Court's holding in <u>Grant</u> should not be followed in this case, especially given the persuasive decisions from courts in the Fifth Circuit specifically analyzing the question of whether adverse domination doctrine should apply to duty of loyalty claims, and declining to apply the doctrine to such claims. <u>See</u> <u>id.</u> at 14 (citing <u>Resolution Trust Corp. v.</u>

2. *Plaintiffs Again Have Failed To Adequately Allege Fraudulent Concealment*

Plaintiffs' attempt to toll the statute of limitations based on the doctrine of fraudulent concealment relies on the same allegations as in the Initial Complaint, which fare no better the second time around. To successfully invoke the doctrine, Plaintiffs were required to adequately plead the elements of fraudulent concealment with particularity, in compliance with Rule 9(b). Mot. at 17-18. Those elements are that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled. Simon-Whelan v. Andy-Warhol Found. for the Visual Arts, 2009 WL 1457177, at *7 (S.D.N.Y. May 26, 2009).

This Court specifically required Plaintiffs to plead facts sufficient to establish that they exercised due diligence in pursuing the discovery of the Amended Claims within the limitations period. See Tronox, Inc., 429 B.R. at 108 ("Plaintiffs also have not adequately pled the elements of fraudulent concealment, particularly their due diligence in uncovering the wrongful conduct and taking action to obtain redress . . . ."). In the Opposition, Plaintiffs acknowledge that the Amended Complaint fails to allege that they took any action that would satisfy the diligence requirement. Opp. at 14-15. Instead, Plaintiffs assert that they should be exempt from the requirement because they have pled concealment. Id. That assertion, however, is directly contrary to the Court's Opinion, which required Plaintiffs to plead the steps they took to uncover the alleged misconduct. See Tronox, Inc., 429 B.R. at 108. Furthermore, Plaintiffs'

---

Acton, 49 F.3d 1086 (5th Cir. 1995); Askanase v. Fatjo, 130 F.3d 657 (5th Cir. 1997); Bright, 872 F. Supp 1551).

interpretation is flatly contradicted by the law that clearly recognizes concealment and diligence as separate elements that must be pled in order to toll the limitations period. See Simon-Whelan, 2009 WL 1457177, at *7 (describing the three required elements of a fraudulent concealment claim).[5]

In addition, Plaintiffs have not adequately alleged the other elements of fraudulent concealment. In particular, they fail to plead particularized facts to support the allegation that material information related to the fiduciary breaches was concealed from Plaintiffs in a way that would have prevented Plaintiffs' discovery of their claims within the limitations period.[6] See Mot. at 19. Therefore, the statute of limitations cannot be tolled on the basis of fraudulent concealment.

3. *The Discovery Rule Provides No Support For Plaintiffs' Attempt To Avoid The Statute Of Limitations*

Having failed to satisfy the requirements for the adverse domination and/or fraudulent concealment exceptions, Plaintiffs now argue that the statute should be tolled because of

---

[5]    Plaintiffs rely on only two district court cases that pre-date the cases cited by Defendants, and fail to distinguish the Second Circuit precedent and more recent district court cases cited in the Motion. See Simon-Whelan, 2009 WL 1457177, at *7; Merrill Lynch Ltd. P'ships Litig., 154 F.3d at 60 ("Investors did not allege in the SAC that they exercised due diligence; they make no allegation of any specific inquiries of Merrill Lynch, let alone detail when such inquiries were made, to whom, regarding what, and with what response."); Hinds County v. Wachovia Bank N.A., 620 F. Supp. 2d 499, 521-22 (S.D.N.Y. 2009). Moreover, unlike the plaintiffs in the cases cited in the Opposition – see In re Nine West Shoes Antitrust Litig., 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000) and In re Magnetic Audiotape Antitrust Litig., 2002 WL 975678, at *2-3 (S.D.N.Y. May 9, 2002) – which hold that the plaintiffs satisfied the due diligence prong by specifically pleading acts of concealment by defendants that would have prevented discovery even by the exercise of due diligence, Plaintiffs here do not plead acts of concealment that prevented their discovery ,but instead rely exclusively on the purported concealment of the Legacy Liabilities. Opp. at 14; see also Hinds County, 620 F. Supp. 2d at 521 ("Th[e] standard [applied in Nine West and Magnetic Audiotape] is problematic because it allows the allegations required to satisfy the first prong of fraudulent concealment to also satisfy the third prong."). These allegations fail to show why Plaintiffs could not have discovered such concealment had they in fact exercised due diligence.

[6]    See, e.g., Hinds County, 620 F. Supp. 2d at 521-22 (noting that "general assertions of ignorance" and "a brief reference to 'reasonable diligence,' coupled with general allegations of secrecy and deception" did not satisfy Rule 9(b)'s particularity requirement); Simon-Whelan, 2009 WL 1457177, at *7 (holding that fraudulent concealment was not adequately pled where plaintiffs did not proffer sufficient facts to demonstrate that discovery of claim was prevented by Defendants' concealment of wrongful actions).

Oklahoma's "discovery rule."  Opp. at 9-11.  However, Plaintiffs' discovery rule argument is merely a rehash of their legally impermissible attempt to invoke the adverse domination exception, and should be rejected.

The discovery rule provides that a claim accrues when the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he may have an actionable claim.  Grant, 901 P.2d at 813.  Here, there is no question that Tronox's management either knew the facts giving rise to their potential claims or could have discovered them well before April 2006 – and they do not and cannot in good faith contend otherwise.  Instead, they contend that they supposedly could not have "discovered" their claims within the limitations period because until April 1, 2006, Tronox was under the control of Kerr-McGee.  Opp. at 10.  That is, rather than making a bona fide discovery rule argument based on factual allegations that Tronox's executives and officers were impeded *from discovering* the Amended Claims before April 1, 2006, Plaintiffs allege only that because Tronox was allegedly subject to Kerr-McGee's domination, Plaintiffs were unable to act upon the facts they knew or could easily have discovered and should therefore be excused from the statute of limitations bar.  Thus, Plaintiffs simply conflate the adverse domination doctrine with the discovery rule, and given their inability to satisfy the requirements for application of the adverse domination exception, their discovery rule argument also fails.  See supra Section I.B.1.[7]  Because Plaintiffs have not and cannot allege

---

[7]    Plaintiffs also conflate the "discovery rule" with the fraudulent concealment exception.  The only basis in the Amended Complaint for the assertion that Plaintiffs could not have discovered their claims because they allegedly were concealed are the same insufficient allegations Plaintiffs rely on to plead tolling under the fraudulent concealment doctrine.  See supra, Section I.B.2.  Additionally, Plaintiffs' citation to Abbatiello v. Monsanto Co., 522 F. Supp. 2d 524, 529 (S.D.N.Y. 2007), is inapposite, as it applies to an action where the inability to discover injury is built into the cause of action – for example, a claim for personal or property damage caused by the  latent effects of exposure to a toxic substance.  Furthermore, Plaintiffs' allegation that the discovery rule tolls their conspiracy to commit breach of fiduciary duty and aiding and abetting fiduciary duty claims until February 1, 2007, includes no factual support demonstrating why any injuries from such claims could not have been discovered until then; indeed the date appears wholly arbitrary.  Opp. at 10; Am. Compl. ¶ 195.  This conclusory allegation is therefore insufficient to toll the statute of limitations on these

any fact sufficient to show that its directors and officers were impeded from *discovering* the

Amended Claims, they cannot avoid the statute of limitations by means of the discovery rule.

## II.    PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM FAILS TO STATE A CLAIM AND SHOULD BE DISMISSED (COUNT IV)

### A.    Plaintiffs Allege No Actionable Breach After January 12, 2006

The Opposition devotes pages to debating arguments that Defendants have never

advanced.  For example, Plaintiffs argue at length that Kerr-McGee owed fiduciary duties to

Tronox because it was the parent corporation of an insolvent Tronox during the period <u>after</u> the

IPO up until the Distribution.  Opp. at 15-18.  However, Defendants have never disputed that

Kerr-McGee *might owe* fiduciary duties to Tronox if in fact Tronox was insolvent after the IPO.

What the Motion actually did assert is that any post-January 12, 2006 fiduciary breaches alleged

by Plaintiffs are time-barred because none of those purported "breaches" constitute separate and

independent actions or injuries from those undertaken in connection with the IPO.  <u>See</u> <u>supra</u>,

Section I.A.  Moreover, because all purported misconduct that occurred on or during the period

before the IPO took place while Tronox was a wholly-owned subsidiary of Kerr-McGee, Kerr-

McGee did not owe Tronox any fiduciary duty for that period.  Mot. at 21-22.

### B.    No Plaintiff Was Owed A Fiduciary Duty As A Minority Shareholder

The Amended Complaint alleges that, in addition to the alleged duties owed to Tronox

itself, Kerr-McGee owed a duty to Tronox's minority shareholders.  Am. Compl. ¶ 115.

Defendants' Motion demonstrated, and Plaintiffs have failed to dispute, that none of these

minority shareholders is a plaintiff in this lawsuit, nor is there any allegation that Plaintiffs have

the right to sue on their behalf.  Mot. at 21.  In their Opposition, Plaintiffs appear to have

---

claims.  <u>See, e.g.,</u> <u>Hawkins v. Feder</u>, 2008 WL 3192973, at *3 & n.4 (D.N.J. Aug. 5, 2008) (holding discovery rule inapplicable because the allegations failed to explain why plaintiff could not have discovered his alleged injury with the exercise of reasonable diligence, and plaintiff did not indicate what occurred on the date on which he said he discovered the injury that led to the discovery of defendants' alleged wrongdoing).

abandoned their claim of breach of fiduciary duty on behalf of their minority shareholders.  See

Opp. at 18 ("Tronox is a proper plaintiff with respect to claims of breaches of New Kerr-

McGee's fiduciary duties *to Tronox*.").  Rather than present any authority to rebut the Motion

and defend the Amended Complaint on this issue, Plaintiffs remark only that the fact that no

minority shareholder is a plaintiff in this case is "beside the point."  Id. at 17.  In sum, Plaintiffs

have offered no substantive response to the Motion on this point, and, accordingly, to the extent

the Amended Complaint attempts to expand Plaintiffs' claim for breach of fiduciary duty to

recover damages to minority shareholders, the claim should be dismissed.  Id.

### C.    Plaintiffs Have Not Adequately Pled That Kerr-McGee Breached A Fiduciary Duty It Owed As A Parent Of An Insolvent Company

Prior to the IPO, Tronox was a wholly-owned subsidiary of Kerr-McGee and thus was

owed no fiduciary duty by Kerr-McGee.  Plaintiffs fail to dispute recent authority applying this

rule to even insolvent subsidiaries.  See ASARCO LLC v. Americas Mining Corp., 396 B.R.

278, 414-416 (S.D. Tex. 2008).[8]  The only case Plaintiffs do cite on this point, Roselink

Investors, L.L.C. v. Shenkman, merely holds that *directors* of a wholly-owned and insolvent

*subsidiary* owe fiduciary duties to that subsidiary's creditors, in addition to owing fiduciary

duties to the subsidiary's parent.  386 F. Supp. 2d at 215.  That case is inapposite, as Kerr-

McGee was the parent, not a subsidiary of Tronox, and Tronox's individual directors have not

---

[8]    Plaintiffs' attempt to distinguish Anadarko Petroleum Corp. v. Panhandle E. Corp., 545 A.2d 1171 (Del. 1988), also fails to establish that Kerr-McGee owed fiduciary duties to Tronox while Tronox was its wholly-owned subsidiary.  As the cases cited in the Motion show, the Anadarko case is regularly relied upon for the proposition that a parent owes no fiduciary duties to its wholly-owned subsidiary.  Mot. at 21; see also Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209, 215 (S.D.N.Y. 2004) (citing Anadarko for the proposition that "[u]nder Delaware law, when one company wholly owns another, the directors of the parent . . . are obligated to manage the affairs of the subsidiary in the best interests only of the parent and [the parent's] shareholders").  Plaintiffs wrongly construe cases to suggest otherwise.  Notably, while Plaintiffs quote In re Sw. Supermarkets, LLC, 376 B.R. 281, 283 (Bankr. D. Ariz. 2007) as stating that the "facts of Anadarko did not raise the issue of whether any fiduciary duties was [sic] owed directly to the subsidiary," it is clear that the Sw. Supermarkets court was addressing whether fiduciary duties are owed by the subsidiary's *directors*, not the parent corporation itself.

been named in this suit.  Plaintiffs have not pled anything to support the existence of any duty

that Kerr-McGee owed to Tronox or its creditors while Tronox was still its wholly-owned

subsidiary.  Thus, Tronox's alleged insolvency cannot serve as the basis for a pre-IPO breach of

fiduciary duty claim, even if the statute of limitations is tolled.  Mot. at 21-22.

### D.    Plaintiffs Have Not Adequately Asserted Breach Of Fiduciary Duty As A Promoter

It is undisputed that any fiduciary duties Kerr-McGee owed to Tronox as its corporate

promoter ended when the plan of promotion was accomplished.  The only dispute is when, as a

matter of law, the plan of promotion ended.  While in some instances a plan of promotion can

continue after the date of incorporation, that is clearly not the case here.  Each of the alleged acts

of promotion – filing a Certificate of Incorporation, causing Tronox to obtain a revolving credit

facility, and soliciting purchasers of Tronox's Class A common stock – occurred at the time of

the IPO.  See Am. Compl. ¶¶ 170-71.

Indeed, the core allegations in the Amended Complaint, including that Kerr-McGee

breached its fiduciary duty as a promoter by promoting Tronox while it "saddled" Tronox with

"massive Legacy Liabilities" and forced it to enter into "onerous and unfair agreements," all

occurred at or before the time of the IPO and the execution of the related Separation Agreements.

Am. Compl. ¶ 98; Opp. at 20.  There are no allegations in the Amended Complaint that hinge on

independent acts that took place after January 12, 2006.  Am. Compl. ¶¶ 169-73; see also Opp. at

20.  While Plaintiffs assert that Defendants "concede" that Kerr-McGee's promotional duties ran

until March 31, 2006 (Opp. at 20), there is absolutely no basis for that statement as Kerr-McGee

has never made such a concession.  Other than reciting their own conclusory allegations,

16

Plaintiffs fail to explain how Kerr-McGee dividending shares of Tronox stock to its own

shareholders could possibly constitute an act of corporate promotion of Tronox.  Opp. at 19-20.[9]

Furthermore, Plaintiffs do not dispute that their allegations of breaches as to Tronox's

future shareholders and future bondholders fail because Kerr-McGee did not owe any fiduciary

duties to them as matter of law.  See Am. Compl. ¶ 173.  Accordingly, Count IV should be

dismissed as to any fiduciary breaches alleged on behalf of future shareholders or bondholders.[10]

## III.    THE CIVIL CONSPIRACY CLAIM MUST BE DISMISSED (COUNT V)

Plaintiffs try again in the Opposition to make much out of their allegation that, in 2002,

Anadarko analyzed a potential acquisition of Kerr-McGee, decided not to pursue it at that time,

and then purchased the Company four years later, after the Spin-Off was complete.  Opp. at 23-

24.  However, nothing in the Amended Complaint or in the underlying documents provides any

basis whatsoever to conclude that Kerr-McGee and Anadarko reached a common understanding

or agreement in 2002 (or at any time prior to the Distribution) to illegally separate the Legacy

Liabilities.

---

[9]    The cases cited by Plaintiffs highlight the difference between the promotional schemes that continue after the date of incorporation and the one alleged here.  Opp. at 19.  In EPS Solutions Corp. v. Deloitte & Touche, LLP, 2002 WL 441510, at *2-3 (N.D. Ill. Mar. 20, 2002), for example, the court found the defendant took an "active rol[e]" in carrying out the scheme after the company was incorporated because defendants continued to engineer a roll-up of numerous third party companies into the new enterprise after the incorporation date.  Id. at *2-3.  Unlike in that case, here, the Amended Complaint contains no such allegations of an active promotional scheme by Kerr-McGee after the IPO.  Indeed, the Court should be aware that Tronox's current Vice President of Corporate Affairs and former head of Investor Relations, testified that, other than having two employees on Tronox's board of directors, Kerr-McGee had no role in promoting Tronox or its stock after the IPO.  See Ex. A Deposition of Robert Gibney, dated June 23, 2010, at 156-57 (Q. "And so my question is, Kerr-McGee didn't have any influence at that point in time over the contents of any of these [February 2006] disclosures to investors, such as the roadshow presentation, right?"  … Q. "As far as you know."  A. "As far as I know."  Q. "And in your job as the head of investor relations for Tronox, Kerr-McGee wasn't the one telling you what to tell investors, right –" … Q. "-- after the IPO."  A. "No, they didn't have any input directly on what we were saying to investors.").

[10]    By failing to respond, Plaintiffs concede this point.  See Roffman v. City of New York, 2002 WL 31760245, at *6 (S.D.N.Y. Dec. 10, 2002).

Plaintiffs' conspiracy claim is hinged entirely on allegations relating to a few documents concerning Anadarko's 2002 analysis of Kerr-McGee which Plaintiffs rehash *ad nauseam* throughout the Opposition. Those documents and Plaintiffs' factual allegations reflect only that Anadarko considered a potential acquisition of Kerr-McGee in 2002, independently examined purely public information about the company, and after evaluating that information decided not to pursue the acquisition at that time. Nothing in the Amended Complaint or the documents therein contains any indication that there was any communication whatsoever – much less that an agreement was reached – between Kerr-McGee and Anadarko in 2002 or at any other time before the completion of the Spin-Off. To the contrary, these documents reveal only that Anadarko, a growing company that regularly evaluated potential acquisition candidates, conducted a purely internal, independent and proper exercise in corporate due diligence of a potential business opportunity – an opportunity that did not materialize until many years later when Kerr-McGee's asset mix more closely mirrored that of Anadarko. Ultimately, Plaintiffs fail to allege a single *fact* that would support a cognizable claim that there was a conspiratorial plot between these parties.

Thus, each of the following allegations which purportedly support the claim that there was an illicit agreement between Anadarko and Kerr McGee preceding the Spin-Off is based on nothing but pure and irresponsible speculation:

- "[O]n information and belief, Anadarko informed New Kerr-McGee that it would have to separate the Legacy Liabilities and the Chemical Business from its valuable oil and gas assets, before Anadarko would acquire New Kerr-McGee;" (Opp. at 23; see also Am. Compl. ¶¶ 50, 182, 186)

- "Given the size and complexity of [Anadarko's acquisition of New Kerr-McGee] and Anadarko's previous interest in acquiring the oil and gas assets once they were purged of the Legacy Liabilities, it is exceedingly unlikely if not impossible that Anadarko and New Kerr-McGee did not begin planning the acquisition prior to the Spin-Off;" (Opp. at 24; see also Am. Compl. ¶ 185) and

18

- "On information and belief, . . . Anadarko knowingly and intentionally furthered the conspiracy by providing New Kerr-McGee with monetary incentive to complete the Spin-Off . . . " (Opp. at 24; see also Am. Compl. ¶ 187).

These conclusory allegations lack the factual content that would permit a court to infer that the elements of conspiracy are met. Ample authority – including the recent U.S. Supreme Court precedents governing this issue – requires that these conclusory allegations be disregarded for purposes of evaluating the sufficiency of the Amended Complaint. Once they are disregarded, it is clear that there is nothing left of the conspiracy claim, which must therefore be dismissed. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007); see also United States v. Lloyds TSB Bank PLC, 639 F. Supp. 2d 326, 343-44 & n.13 (S.D.N.Y. 2009) (holding that despite making numerous allegations concerning the defendant's knowledge of and intent to join the conspiracy, all the allegations were "entirely conclusory, and must be disregarded under Twombly and Iqbal."); Medtech Prods. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 795 (S.D.N.Y. 2008).

Furthermore, the Amended Complaint is particularly indefensible because Plaintiffs improperly rely on "information and belief" to allege that from 2002 until early 2006, Anadarko informed Kerr-McGee and/or its investment banker that it was interested in acquiring Kerr-McGee if it shed the Legacy Liabilities. Am. Compl. ¶¶ 50, 183, 186. Plaintiffs have failed to address the case law cited in the Motion holding that such "information and belief" pleading may not be used in the hopes that discovery might turn up a basis for claims that are otherwise unsupported. See Mot. at 27 n.25. Such pleading is especially inappropriate where, as here, significant discovery has already been conducted.

Nor have Plaintiffs succeeded in distinguishing the cases cited by Defendants in which conspiracy claims were dismissed because the complaints did not contain sufficient non-conclusory facts to satisfy the required elements of the cause of action. Mot. at 26-27. For

19

example, while Plaintiffs seek to distinguish Peterson v. Grisham, 2008 WL 4363653 (E.D.

Okla. Sept. 17, 2008), aff'd, 594 F.3d 723 (10th Cir. 2010), by pointing out that the court there

dismissed the conspiracy claim on the ground that parallel conduct allegations were insufficient,

Plaintiffs fail to mention that the Peterson court also held that the conspiracy claim should be

dismissed because of the plaintiffs' failure to plead any facts that actually pointed to a prior

agreement.  Peterson, 2008 WL 4363653, at *9.  Here, Plaintiffs have alleged a prior agreement

based solely on:  (1) factual allegations showing only that Anadarko independently evaluated a

potential business acquisition in 2002 – which like the complaint in Peterson, 2008 WL 4363653

at *9, "appears to be nothing more than an allegation of independent action by the defendants";

and (2) rank speculation.[11]  These allegations are insufficient as a matter of law, and Plaintiffs'

assertion that the Amended Complaint "stand[s] in stark contrast to the conclusory allegations in

the cases cited by Defendants" (Opp. at 24 n.12), is both inaccurate and misplaced.  Rather, the

cases make it abundantly clear that conspiracy claims cannot be based solely on speculation and

conclusory allegations, as they are in the Amended Complaint.[12]

---

[11]    See also In re I.E. Liquidation, 2009 WL 2707223, at *8-9 (Bankr. N.D. Ohio Aug. 25, 2009) (dismissing
conspiracy claims where, even looking at the entire complaint, there was no factual predicate for finding when
or how the alleged plan developed); Medtech Prods. Inc., 596 F. Supp. 2d at 795 (citing cases, including Hecht
v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n. 4 (2d Cir. 1990) ("[T]he complaint must allege some
factual basis for a finding of a conscious agreement"); Brownstone Inv. Group, LLC v. Levey, 468 F. Supp. 2d
654, 661 (S.D.N.Y. 2007) ("'[T]o survive a motion to dismiss, a complaint must . . . allege the specific times,
facts, and circumstances of the alleged conspiracy.'").  Further, contrary to Plaintiffs' attempt to distinguish
Medtech as involving a single, conclusory allegation in support of plaintiff's conspiracy claim, there the Court
considered several allegations that the plaintiff contended sufficiently alleged an agreement, but found that the
only allegation that actually purported to show an agreement was based upon information and belief, and that
the complaint "merely conclude[ed] that an agreement existed without any factual basis to make the allegation
plausible."  Medtech Prods. Inc., 596 F.Supp. 2d at 794-95 (emphasis in original).

[12]    See Medtech Prods. Inc., 596 F. Supp. 2d. at 795 n.12 ("The Court does not, however, read [Maersk and In re
Harvard Knitwear] as giving plaintiffs carte blanche to plead the existence of conspiracy through solely
conclusory allegations."); Zahrey v. City of New York, 2009 WL 1024261, at *11 (S.D.N.Y. Apr. 15, 2009)
("[I]nnuendo, unrelated incidents and conclusory allegations, without any factual basis are insufficient to
support a conspiracy claim") (internal citations omitted).  Further, unlike the Amended Complaint here, All
Bus. Solutions Inc., 629 F. Supp. 2d 553, 556-58 (W.D. Va. 2009), cited by Plaintiffs (Opp. at 22-23),
involved a complaint that contained specific factual allegations that evidenced a conspiratorial relationship,
including the existence of a letter that supported plaintiff's claims of a conspiracy.  Unlike in that case,

Plaintiffs also do not dispute that their allegations are defective because they support an inference that is equally consistent with lawful activity – i.e., that Anadarko briefly considered purchasing Kerr-McGee in 2002 and decided not to do so, and that it then proposed and agreed to purchase the company four years later, after circumstances had changed and a Spin-Off had been completed. For this reason alone, the allegations in the Amended Complaint are insufficient to establish conspiracy. See Peterson, 594 F.3d at 730-31; Peterson, 2008 WL 4363653, at *8; Brock v. Thompson, 948 P.2d 279, 294 (Okla. 1997) ("There can be no civil conspiracy where the act complained of and the means employed are lawful.") (emphasis in original); see also Twombly, 550 U.S. at 556-57.

Finally, Plaintiffs cannot salvage their conspiracy claim by relying on allegations that Lehman Brothers contacted Kerr-McGee on April 5, 2006 to indicate Anadarko's interest in an acquisition (Am. Comp. ¶ 185), or that Anadarko indemnified Kerr-McGee's officers and directors from liability (which is far from "unusual" in such transactions, despite Plaintiffs' conclusory insistence to the contrary). Am. Compl. ¶ 11. Both of these events took place after the purported conspiracy was completed, and thus cannot serve as the basis of a conspiracy claim. "There can be no *ex post facto* conspiracy to do that which has already been done." Popielarski v. Jacobson, 59 N.W.2d 45, 53 (Mich. 1953) (citations omitted); see also Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1054 (11th Cir. 2007) (discussing aiding and abetting liability, and noting that "[t]he law does not countenance claims of accessory after the fact in civil fraud claims").

---

Plaintiffs fail to adequately plead the existence of an agreement or any unlawful act by either Kerr-McGee or Anadarko that is sufficient to satisfy the elements of civil conspiracy.

## IV.    PLAINTIFFS' AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED (COUNT VI)

Plaintiffs do not dispute that Oklahoma has never recognized a claim for aiding and abetting a breach of fiduciary duty.  In an obvious attempt to circumvent Oklahoma law, Plaintiffs take the position that Delaware law applies to all three Amended Claims.  See Opp. at 27.  But, as detailed in Defendants' moving brief, Oklahoma law clearly applies to the aiding and abetting a breach of fiduciary duty claim (Mot. at 29),[13] and this Court should refrain from creating new Oklahoma law.

A claim for aiding and abetting a breach of fiduciary duty is fundamentally different from a claim for aiding and abetting many other torts.  Fiduciary duties are narrowly construed obligations created by special relationships between two parties, as opposed to the general duties imposed by other torts.  Garrett v. Bryan Cave LLP, 2000 WL 430163, at *3 (10th Cir. Apr. 21, 2000) ("To assert a claim for breach of fiduciary duty in other contexts, an Oklahoma plaintiff must demonstrate that he had a 'special relationship' of confidence and trust with the

---

[13]    Plaintiffs' argument that Delaware law applies to all of the Amended Claims is based on the "internal affairs" choice of law test.  The "internal affairs" test, however, is clearly outdated and inapplicable.  More recent cases have evaluated the possible tests for determining the choice of law for secondary liability claims, including the "internal affairs" test, and chosen the interest analysis approach, which Defendants applied, and under which Oklahoma law would plainly govern any aiding and abetting or conspiracy claim.  Indeed, the cases relied upon by Plaintiffs for their claim that Delaware law should apply to these claims – Bernstein v. Crazy Eddie, Inc., 702 F. Supp. 962, 986 (E.D.N.Y. 1989) and BBS Norwalk, Inc. v. Raccolta, Inc., 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) (Opp. at 21 n.10) – have both been cited in more recent cases that disagree with using the state of incorporation in a choice of law analysis.  For example, in Adelphia Commc'ns Corp. v. Bank of Am., 365 B.R. 24, 40 n.38 (Bankr. S.D.N.Y. 2007), aff'd in part, 390 B.R. 64 (S.D.N.Y. 2008), the court cited to both Bernstein and BBS Norwalk, but held that "[a]fter considering the matter, the Court believes that it should follow the latter line of authority-in accordance with Solow, Granite Partners and Cromer Finance-and treat the aiding and abetting claims like the other tort claims, applying the law of the jurisdiction with the greatest interest in the dispute.  The New York Court of Appeals has rejected 'any automatic application of the so-called "internal affairs" choice-of-law rule.'"  Id. at 40 (citing cases).  More recently, the court in In re Magnesium Corp. held that for aiding and abetting breach of fiduciary duty claims, "[t]he jurisdiction with the greatest interest is that of the principal place of business, where any injury as a consequence of any aiding and abetting would have been suffered."  399 B.R. 722, 742-43 (Bankr. S.D.N.Y. 2009).  The same is true for conspiracy to breach a fiduciary duty claim, where the location of the conspiracy determines the applicable law.  See Steinberg v. Sherman, 2008 WL 2156726, at *3 (S.D.N.Y. May 8, 2008); see also Adelphia, 365 B.R. at 40 nn.38, 40 (rejecting Bernstein's reliance on "internal affairs" doctrine for conspiracy claims and applying interests analysis to aiding and abetting claims).

22

defendant."); Stadt v. Fox News Network LLC, 2010 WL 2540957, at *3 (S.D.N.Y. Jun. 22,

2010) (stating that a fiduciary duty "must arise from 'a position of trust or special confidence'")

(internal citation omitted); Christmas v. Virgin Is. Water and Power Auth., 527 F. Supp. 843, 846

(D.V.I. 1981) (stating that general "[t]ort duties are imposed by law on everyone and actions in

tort remedy a violation of such a universal duty").[14]  In recognition of the special nature of a

fiduciary duty claim, the Restatement of Torts treats aiding and abetting a breach of fiduciary

duty claim in a special section (§ 874) – entirely separate from § 876 of the Restatement which

governs aiding and abetting in connection with other torts.  Plainly, the law recognizes that

special considerations are involved in deciding whether to allow a claim for aiding and abetting a

breach of fiduciary to be asserted against a non-fiduciary.  This makes perfect sense given that

permitting the claim effectively imposes a special duty on the purportedly aiding and abetting

defendant.

        Here, there is no dispute that Oklahoma has never adopted comment c to § 874 of the

Restatement (Second) of Torts, which addresses aiding and abetting a breach of fiduciary duty.

See Opp. at 27; Mot. at 29.  Moreover, the law is clear that federal courts should refrain from

adopting torts that have not been recognized by the applicable state courts and are based on

portions of Restatements that have never been adopted by the state.  See Mot. at 29; see also

Midwest Grain Prods. v. Productization, Inc., 228 F.3d 784, 790 (7th Cir. 2000) (refusing to

adopt a provision of the Restatement (Second) of Contracts, because Oklahoma law governed

and Oklahoma had not adopted that provision of the Restatement).  State courts routinely adopt

---

[14]    The Court of Appeals for the Eleventh Circuit specifically refused to extend aiding and abetting liability to
        breaches of fiduciary duties in Georgia until the Georgia state courts themselves did so.  See Matter of
        Munford, Inc., 98 F.3d 604, 613 (11th Cir. 1996) (refusing to recognize aiding and abetting breach of
        fiduciary duty under Georgia law, in absence of Georgia state court instruction, because, "[t]o hold otherwise .
        . . would enlarge the fiduciary obligations beyond the scope of a confidential or special relationship").

one section of a Restatement while rejecting others.  See, e.g., Jews for Jesus, Inc. v. Rapp, 997

So.2d 1098, 1113-14 (Fla. 2008) (rejecting tort of false light, despite comment in Restatement,

while acknowledging the viability of tort of defamation).  Furthermore, many state courts have

declined to recognize or have questioned the existence of a claim for aiding and abetting a breach

of fiduciary duty.  See Cont'l Cas. Co. v. Compass Bank, 2006 WL 566900, at *12 (S.D. Ala.

Mar. 6, 2006) (Alabama); In re Bostic Constr., Inc., 2010 WL 2598253, at *15 (Bankr. M.D.N.C.

June 25, 2010) (North Carolina); Pavlovich v. Nat'l City Bank  435 F.3d 560, 570 (6th Cir.

2006) (Ohio); Calderon v. Aurora Loan Serv., Inc., 2010 WL 2306343, *6 (E.D. Va. June 3,

2010) (Virginia).  Thus, it cannot be assumed that Oklahoma would recognize a claim for aiding

and abetting a breach of fiduciary duty.  And, even if it were to do so someday, Oklahoma could

very well choose to limit the extent to which a third party may be liable for another's breach of a

specifically created duty.  Under these circumstances, it would be inappropriate for this Court to

create new Oklahoma law so as to allow an aiding and abetting breach of fiduciary duty claim

against Anadarko.

Even if Oklahoma were to recognize this claim, Plaintiffs' allegations that Anadarko

aided and abetted Kerr-McGee's alleged breach of fiduciary duty are insufficient, because

Plaintiffs have not adequately pled the elements of a claim for aiding and abetting any tort.

Plaintiffs do not dispute that the standard for stating an aiding and abetting claim is a "stringent"

one.  Mot. at 30.[15]

---

[15]    Moreover, Plaintiffs criticize the holdings of Halo Tech Holdings, Inc. v. Cooper, 2008 WL 877156 (D. Conn. Mar. 26, 2008) and In re Sharp Int'l Corp., 403 F.3d 43, 52 (2d Cir. 2005), solely on the basis that they are New York and Connecticut cases.  Opp. at 28 n.15.  However, given that Oklahoma law applies here, see supra, note 13, these cases are just as persuasive as any Delaware authority cited by Plaintiffs.  See Mot. at 30-32; Opp. at 28-30.  In any event, Delaware authority supports the notion that Count VI should be dismissed.  See Mot. at 30-31 (citing Malpiede v. Townson, 780 A.2d 1075 (Del. 2001); In re NYMEX S'holders Litig., 2009 WL 3206051 (Del. Ch. Sept. 30, 2009); In re Gen. Motors (Hughes) S'holder Litig., 2005 WL 1089021 (Del. Ch. May 4, 2005), aff'd, 897 A.2d 162 (Del. 2006); Saito v. McCall, 2004 WL 3029876 (Del. Ch. Aug. 18, 2004)).

First, Plaintiffs fail to plead facts showing that Anadarko knew its conduct was substantially assisting Kerr-McGee's alleged breach of fiduciary duty. See Malpiede, 780 A.2d at 1097. Instead, Plaintiffs refer back to the same documents that evidence only that Anadarko internally explored a legitimate business acquisition – not that it had any communication with, or rendered any assistance, much less "knowing assistance," to Kerr-McGee in connection with the allegedly unlawful scheme. Opp. at 29. These documents, along with Plaintiffs' conclusory allegations that Anadarko knew of Kerr-McGee's "scheme," are insufficient to sustain a claim for aiding and abetting breach of fiduciary duty. See Gen. Motors (Hughes), 2005 WL 1089021, at *27 (dismissing aiding and abetting claim where plaintiff failed to assert allegations that defendants participated in transaction "in any manner other than as an arms-length bidder"); NYMEX, 2009 WL 3206051, at *12 (finding conclusory allegations that aiding and abetting defendant had knowledge of breaches of fiduciary duty to be inadequate).[16]

Second, even if Plaintiffs could overcome that hurdle, they have plainly failed to plead, as required, that Anadarko offered *substantial* assistance to Kerr-McGee's "scheme" where, as

---

[16]   Other cases cited by Plaintiffs fail to bolster their aiding and abetting claim. First, Plaintiffs mistakenly rely on Lesavoy v. Gattullo-Wilson, 170 F. App'x 721 (2d Cir. 2006) for the assertion that, because "the facts comprising the aiding and abetting claim are within the knowledge of Defendants . . . Plaintiffs may plead their claims more generally." Opp. at 28. Lesavoy, however, does not stand for this proposition. Rather, after affirming dismissal of three of the plaintiff's four aiding and abetting claims, the court in Lesavoy merely held that plaintiff had adequately pled its fourth aiding and abetting claim under Rule 8(a), where the complaint alleged that defendant paid an unwarranted fee to another defendant in order to induce that party to breach its fiduciary duties. Id. at 724-25. Moreover, the Court of Appeals for the Second Circuit specifically relied on its decision in Twombly, 425 F.3d 99 (2d. Cir. 2005), in holding that the allegations the District Court had deemed conclusory had satisfied the "liberal, notice-pleading approach of Rule 8." Lesavoy, 170 F. App'x at 724. This, of course, was the decision that the U.S. Supreme Court later expressly reversed. Twombly, 550 U.S. 544. Second, Plaintiffs' reliance on In re USA Detergents, Inc., 418 B.R. 533 (Bankr. D. Del. 2009), to support their conclusion that the aiding and abetting claim was adequately pled (Opp. at 28, 30), is equally unavailing. In USA Detergents, the plaintiff alleged that certain defendants aided and abetted breaches of fiduciary duty by: (1) giving orders directly to one of the director defendants, rather than allowing that defendant to make independent decisions; and (2) pressuring the other director defendants to focus on minimizing losses to third parties, rather than to the plaintiff company. Id. at 546. Here, the Amended Complaint fails to make any similar allegations to suggest that Anadarko did anything other than independently evaluate a potential acquisition of Kerr-McGee, and ultimately choose not to do the acquisition until a later date.

here, the non-conclusory facts in the Amended Complaint show nothing but engagement in legitimate business activity.  See Garnett v. Atoka State Bank, 227 P. 142, 144 (Okla. 1924) (dismissing secondary liability action against defendant members of a partnership that had published a libel, where plaintiffs had adequately alleged only that defendants had an "interest in the benefits to be derived from the legitimate publication of the magazine"); Seattle-First Nat'l Bank v. Carlstedt, 678 F. Supp. 1543, 1549 (W.D. Okla. 1987) (granting summary judgment and dismissing aiding and abetting claim because the "substantial assistance" requirement for aiding and abetting a securities violation is not satisfied merely by showing that a defendant bank lent money in connection with the improper transaction); Sharp, 403 F.3d at 51-52 (affirming dismissal of debtor's action against lender for aiding and abetting debtor's principals' breach of fiduciary duty in diverting assets from debtor, where various acts alleged to constitute substantial assistance were no more than failures to act or legitimate business activities).  As pled, Count VI for aiding and abetting breach of fiduciary duty cannot survive the motion to dismiss.

## **CONCLUSION**

For all of the foregoing reasons and the reasons set forth in Defendants' Motion to

Dismiss Counts IV, V, and VI of the Amended Adversary Complaint, Defendants request that

the Court grant their motion to dismiss the Amended Claims.

Houston, Texas
Dated: July 20, 2010

Richard A. Rothman (RR 0507)
Bruce S. Meyer (BM 3506)
Lori L. Pines (LP 3005)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Duke K. McCall, III (*admitted pro hac vice*)
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006
Telephone:  (202) 373-6000
Facsimile:  (202) 373-6001

  /s/ Lydia Protopapas
Melanie Gray (*admitted pro hac vice*)
Lydia Protopapas (LP 8089)
Jason W. Billeck (*admitted pro hac vice*)
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, Texas  77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

James J. Dragna (*admitted pro hac vice*)
Bingham McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California  90071
Telephone:  (213) 680-6400
Facsimile:  (213) 680-6499

*Counsel to Anadarko Petroleum Corporation
and Kerr-McGee Corporation*

27

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **Defendants' Reply Memorandum Of Law In Support Of Their Motion to Dismiss Counts IV, V, and VI of the Amended Adversary Complaint** was served on the following counsel of record on July 20, 2010, as indicated below:

*__Via email jonathan.henes@kirkland.com__*
Jonathan S. Henes
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022

*__Via email jeffrey.zeiger@kirkland.com and jzeiger@kirkland.com__*
Jeffrey J. Zeiger
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654

*__Via email susan.golden@usdoj.gov__*
Susan D. Golden
OFFICE OF THE UNITED STATES TRUSTEE
33 Whitehall Street
New York, New York 10004

*__Via email rtrust@cravath.com__*
Robert Trust
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019-7475

*__Via email david.crichlow@pillsburylaw.com__*
David A. Crichlow
Craig A. Barbarosh
Karen B. Dine
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036

*__Via email dfriedman@kasowitz.com__*
David M. Friedman
David J. Mark
Ross G. Shank
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019

*__Via email joseph.pantoja@usdoj.gov__*
Lev L. Dassin
U.S. ATTORNEY FOR THE
SOUTHERN DISTRICT OF NEW YORK
By: Joseph Pantoja
Assistant U.S. Attorney
86 Chambers Street
New York, New York 10007

Houston, Texas
Dated: July 20, 2010

*/s/ Rene A. Olvera*
Rene A. Olvera