# EXHIBIT A

# BINGHΛM

James J. Dragna
Direct Phone:     213-680-6436
Direct Fax:        213-680-6499
jim.dragna@bingham.com

April 21, 2010

**VIA EMAIL AND U.S. MAIL**

Joseph A. Pantoja, Esq.
Assistant United States Attorney
Southern District of New York
86 Chambers Street
New York, New York 10007
joseph.pantoja@usdoj.gov

Re:    **Tronox Incorporated, et al. v. Anadarko Petroleum Corp., et
         ano., Adv. Proc. No. 09-01198 (Bankr. S.D.N.Y) (ALG)**

Dear Mr. Pantoja:

We are writing on behalf of Defendants Anadarko Petroleum Corp. and Kerr-McGee
Corp. ("Defendants") to address the document production of Plaintiff-Intervenor the
United States of America ("the Government") in the above-referenced matter. This letter
is sent pursuant to Rule 7007-1 of the Local Rules of the United States Bankruptcy Court
for the Southern District of New York (the "Local Rules") in an effort to "meet and
confer" regarding deficiencies in the Government's paper document production to date.

Defendants served their First Request for Production of Documents (the "First RFPs") on
the Government on August 10, 2009. The Government served its Responses and
Objections thereto on September 10, 2009. Defendants served their Second Request for
Production of Documents (the "Second RFPs") on January 19, 2010. The Government
served its Responses and Objections thereto on February 18, 2010. Notably, while the
Government asserted numerous boilerplate objections and blanket claims of privilege, it
did not indicate in its responses and objections that it would be withholding <u>any</u> specific
document from production.

Notwithstanding that fact, the Government's production of documents thus far has been
inadequate and fails to satisfy its obligations under Rule 7034 of the Federal Rules of
Bankruptcy Procedure ("Rule 7034") and the Local Rules. The First and Second RFPs
contain 167 separate RFPs covering a broad range of topics relevant to the allegations in
this action. Yet, as of the date of this letter, the entirety of the Government's production
constitutes the following: (1) approximately fifty thousand documents <u>selected by
Defendants' attorneys</u> relating to various sites in Environmental Protection Agency
("EPA") Region 5; and (2) a 250 gigabyte hard drive containing approximately nineteen
thousand electronic documents.

While the paucity of the production alone evidences its insufficiency, in addition, the
process by which the Government has decided to respond to the First and Second RFPs is

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106

T 213.680.6400
F 213.680.6499
bingham.com

Joseph A. Pantoja, Esq.
April 21, 2010
Page 2

inappropriate and makes it impossible to determine the extent to which the Government
is in possession of documents responsive to Defendants' RFPs. The Government's paper
"document production" has been limited to providing Defendants with purported
"indices" of documents relating to various state and federal environmental sites relevant
to this action. Providing such indices as a substitute for actual document production is
impermissible and in direct contravention of the Government's obligations as a party to
this action under Rule 7034 and the Local Rules.

It is axiomatic that parties to litigation in federal court must take their discovery
obligations seriously and comply with all applicable rules. See McConnell v. Costigan,
00-cv-4598, 2001 WL 1456609, at *3 (S.D.N.Y. Nov. 16, 2001). Rule 34 of the Federal
Rules of Civil Procedure ("Rule 34"), which is incorporated by reference in the FRBP,
provides two options for a party producing paper copies of documents in response to a
RFP: "A party must produce documents as they are kept in the usual course of business
or must organize and label them to correspond to the categories in the request." Fed. R.
Civ. P. 34(b)(2)(E)(i).

By providing Defendants with indices to documents at various government locations, the
Government appears to be attempting to avail itself of the prong of Rule 34 that permits
paper documents to be produced "in the usual course of business." However, that option
is not available to the Government under the circumstances presented. Judge Scheindlin
recently confronted a nearly identical failure to comply with discovery obligations by the
Securities and Exchange Commission (the "SEC") in S.E.C. v. Collins & Aikman Corp.,
256 F.R.D. 403 (S.D.N.Y. 2009). In that case, the defendant served RFPs seeking fifty-
four categories of documents. Id. at 406. Twenty-five of the requests targeted
documents that supported factual allegations in the complaint, like many of the RFPs
served by Defendants in this action. Id. at 407 n.4. In response, the SEC produced
electronic databases containing 1.7 million documents, without any attempt to correspond
any of the documents with the defendant's RFPs. Id. at 407 & n.5. The SEC maintained
that its "production comport[ed] with the manner in which the documents are kept in the
usual course of business."

The court rejected the SEC's argument, noting that the "key" to understanding the
availability of the two options under Rule 34(b)(2)(E)(i) is "the assumption that in either
case the documents will be organized – that records kept in the usual course of business
would not be maintained in a haphazard fashion. Thus regardless of the form chosen, the
production will be useful to the requesting party, and neither choice will inject
unnecessary time and cost into litigation." Id. at 411 (emphasis added). The court
further explained what it means for documents to be "kept in the usual course of
business" by referencing Federal Rule of Evidence 803(6), which addresses "regularly
conducted business activity." The court concluded:

> By rough analogy to Rule 803(6), the option of producing documents "as
> they are kept in the usual course of business" under Rule 34 requires the
> producing party to meet either of two tests. First, this option is available
> to commercial enterprises or entities that function in the manner of
> commercial enterprises. Second, this option may also apply to records

Bingham McCutchen LLP
bingham.com

Joseph A. Pantoja, Esq.
April 21, 2010
Page 3

> resulting from "regularly conducted activity." Where a producing
> party's activities are not "routine and repetitive" such as to require a
> well-organized record-keeping system – in other words when the records
> do not result from an "ordinary course of business" – the party must
> produce documents according to the sole remaining option under Rule
> 34: "organize[d] and label[ed] . . . to correspond to the categories in the
> request."

Id. at 412-13 (emphasis in original). The court provided some examples of "routine or repetitive" activities by the Government: "purchasing equipment from defense contractors, selling maps to backpackers, and executing contracts to construct buildings." Id.

However, according to the court, anything in the nature of an investigation or analysis is not "routine and repetitive," and thus, under these circumstances, a Rule 34(b)(2)(E)(i) production may not be produced in the "usual course of business."

> [C]onducting an investigation – which is by its very nature not routine or
> repetitive – cannot fall within the scope of the "usual course of
> business." While the SEC routinely collects and maintains regulatory
> submissions such [as] 10-K reports, in its investigative capacity the
> agency conducts tailored probes of a company or an industry, requiring
> the gathering of records from diverse sources. . . . The documents can
> only be provided in a useful manner if the agency organizes or labels
> them to correspond to each demand.

Id. (emphasis added). The court concluded that "the SEC must respond to [defendant]'s request for production by providing him with the documents that respond to those requests." Id. The holding of Collins is consistent with well-settled authority. See, e.g., 2 Michael C. Silberberg et al., Civil Practice in the Southern District of New York § 22:14 (2d ed. 2009); Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp., 85-cv-5399, 1987 WL 6905, at *2 (S.D.N.Y. Feb. 10, 1987) (if "the state of the corporation's records would make it unreasonably burdensome for the discovering party to search for the sought after documents, the burden falls on the discoveree to organize the documents so that the discoveror may make reasonable use of them. If [the discoveree] has failed to maintain its records in a reasonable state, it must bear the burden of searching those available records for documents responsive to [the discoveror's] Rule 34(b) request" (internal quotation marks and citation omitted)).

For purposes of Rule 34, Defendants' First and Second RFPs are analytically indistinguishable from the requests at issue in Collins. Broadly stated and without limitation, Defendants have sought documents relating to: the allegations in the Government's complaint against Kerr-McGee, Tronox, and Anadarko, see First RFP Nos. 1-18, 21-31, 33-36, 42-52; Second RFP Nos. 63-64, 77, 82, 88-89, 91, 98-99, 110-11, 113, 117, 124, 127-30, 132, 134, 136-39, 143, 147-51, 162-67; review of Project Focus by the Internal Revenue Service, see First RFP No. 55; and documents relating to the Government's Proofs of Claim in the Tronox bankruptcy that purport to detail

Joseph A. Pantoja, Esq.
April 21, 2010
Page 4

environmental clean-up costs that have been or will be incurred with respect to at least twenty alleged environmental sites or groups of sites, see First RFP Nos. 14, 19-20, 32, 37-41; Second RFP Nos. 56-162. As was made clear in Collins, these RFPs do not correspond to "routine and repetitive" activities by the Government. Accordingly, Defendants are entitled to "individualized, complete responses to each of the requests, as numbered and identified in the requests, accompanied by production of each of the documents responsive to the request." Fed. R. Civ. P. 34(b)(2)(E)(i); Collins, 256 F.R.D. at 413; see also Louen v. Twedt, 236 F.R.D. 502, 505 (E.D. Cal. 2006); Johnson v. Kraft Foods N. Am., Inc., 236 F.R.D. 535, 540-41 (D. Kan. 2006) (plaintiff who produced paper documents not kept in the usual course of business must specify which documents relate to specific document requests).[1]

Furthermore, not only is the "index" manner of production inadequate and impermissible, but the Government has not even purported to produce documents responsive the vast majority of Defendants' RFPs. By way of example, and without limitation, the indices produced thus far do not fully address the following topics included in Defendants' RFPs concerning the basis for allegations in the Government's Proofs of Claim and Complaint in Intervention regarding:

- All documentation in support of the Proofs of Claim that the United States has offered in the Proofs of Claim to make available upon request. See Second RFP No. 59.

- Property presently owned and/or operated by the Debtor or by an Affiliate Debtor in Henderson, NY; Oklahoma City, OK; Avoca, PA; Beaumont, TX; Bossier City, LA; Calhoun, LA; Cimarron, OK; Cleveland, OK; Corpus Christi, TX; Cushing, OK; Hattiesburg, MS; Indianapolis, IN; Jacksonville, FL; LaGrange, MO; Madison, IL; Mobile, AL; Nashville, TN; Rome, NY; Sauget, IL; St. Louis, MO. See Second RFP No. 60.

- Various service stations currently or formerly owned and/or operated by Debtor or an affiliate debtor, and/or by their corporate predecessors, in multiple locations in the following states: AL, AR, FL, GA, IL, IN, LA, KS, KY, LA, MO, NE, ND, OK, SD, TN, TX, VA, WI. Approximately 257 of these service stations are presently owned by Debtor or an affiliate debtor. See Second RFP No. 61.

---

[1]    Even if providing indices were somehow an acceptable way of complying with Rule 34, the indices provided by the Government do not adequately allow Defendants to identify documents responsive to the First and Second RFPs. Enclosed is a particularly stark example – a handwritten, illegible list of the contents of various file folders maintained at the EPA's Region 5 office that contain documents that may or may not respond to the RFPs. This is clearly not what Judge Sheindlin had in mind in Collins when she cautioned parties not to "inject unnecessary time and cost into litigation." Collins, 256 F.R.D. at 411.

Joseph A. Pantoja, Esq.
April 21, 2010
Page 5

- Facilities formerly owned and/or operated by Debtor or an affiliate debtor, and/or by their corporate predecessors, in Ambrosia Lake, NM; Anniston, AL; Beaumont, TX; Birmingham, AL; Brunswick, GA; Calhoun, LA; Church Rock, NM; Clermont, IN; Corpus Christi, TX; Cottondale, FL; Cotton Valley, LA; Dubach, LA; Golden, CO; Hattiesburg, MS; Jacksonville, FL; Jericho, SC; Lewis Run, PA; McFarland, WI; Memphis, TN; Mobile, AL; Mount Vernon, IL; Nashville, TN; North Haven, CT; Oklahoma City, OK; Port Chester, NY; Powder Springs, GA; Rushville, IN; Tallahassee, FL; The Dalles, OR; Trona, CA; Williamston, NC. See Second RFP No. 62.

- Approximately 270 chemical manufacturing, fertilizer manufacturing, R&D/Lab, agricultural chemical and other sites that were transferred to Debtor or its affiliate debtors by Kerr-McGee Corporation through transactions in late 2005 and early 2006. See Second RFP No. 63.

- The supposedly "Secret Sites" that were transferred to Debtor or its affiliate debtors by Kerr-McGee Corporation through transactions in late 2005 and 2006, including sites located in Birmingham, AL and Rome, NY. See Second RFP No. 64.

- More than 600 mining-related sites owned and/or operated by Debtor or an affiliate debtor, and/or by their corporate predecessors, which are allegedly contaminated with hazardous substances within the meaning of CERCLA Section 101(14) and 102(a), 42 U.S.C. §§ 9601(14) and 9602(a), including but not limited to radioactive materials in soil and groundwater, at multiple locations in the following states: AR, AZ, CA, CO, FL, GA, ID, IL, KS, ME, MD, MI, WY. EPA estimates that the cleanup costs associated with at least 70 of these mines are in excess of $4.4 billion. See Second RFP No. 65.

- EPA's estimate that Tronox LLC is subject to at least $2.5 million in civil penalties for the violations set forth in paragraphs 42-48 of the Proof of Claim against Tronox LLC. See Second RFP No. 126.

- The Gulf States Creosoting Site (Hattiesburg, MS). See Second RFP Nos. 60, 62, 117.

- The Cimarron Corporation Nuclear Fuels Facility (Cimarron, OK). See Second RFP Nos. 60, 91-96.

- The Henderson Facility (Henderson, NV). See First RFP No. 37; Second RFP No. 60.

- The Kerr-McGee Chemical LLC Site in Jacksonville, FL. See Second RFP Nos. 60, 62, 110-16.

- The Navassa Site (Wilmington, NC). See Second RFP Nos. 60, 117-23.

- The Toledo Tie Site (Toledo, OH). See Second RFP Nos. 62, 151, 153.

- The Texarkana Facility (Texarkana, TX). See Second RFP Nos. 60, 154-56.

- The Soda Springs Facility (Soda Springs, ID). See Second RFP Nos. 60, 82-86.

Joseph A. Pantoja, Esq.
April 21, 2010
Page 6

- Documents pertaining to Project Focus. See First RFP Nos. 2-4, 9-11, 21-24, 26.

- Documents pertaining to post-Project Focus (2002-2005) (including the attempted sale of Tronox). See First RFP Nos. 12-13, 15-17, 24, 26.

- Documents pertaining to the IPO/Spinoff of Tronox. See First RFP Nos. 5, 18, 21, 25-29.

- Documents pertaining to alleged liability for environmental cleanups (including legacy liabilities). See First RFP Nos. 1, 8, 10, 20.

- Documents pertaining to the history of Kerr-McGee and its successors. See First RFP Nos. 6-7.

Moreover, again without limitation, the indices produced thus far do not fully address the following additional topics included in Defendants' RFPs:

- Documents pertaining to specific information requested regarding any and all of the alleged environmental sites referenced in the Proofs of Claim and/or Complaint in Intervention (including but not limited to information regarding potential liability of third parties, ownership, contamination, remediation and damages caused by toxic substances). See First RFP Nos. 30, 35-36, 39, 42-48, 51; Second RFP Nos. 67, 68.

- Documents pertaining to audits (including the IRS audit of Project Focus). See First RFP Nos. 41, 55; Second RFP No. 58.

- Documents pertaining to the Liabilities (as defined in the First RFPs), including but not limited to costs allegedly incurred by the Government in connection therewith and the settlement or potential settlement thereof. See First RFP Nos. 31, 32, 38.

- Documents pertaining to any actual or potential settlements or litigation involving Tronox, Kerr-McGee or Anadarko (including but not limited to exhibits and expert documents used in the adversary proceeding). See First RFP Nos. 33-34, 49, 50, 52-54; Second RFP Nos. 163-67.

- Documents pertaining to the December 20, 2009 bankruptcy plan or agreement. See Second RFP Nos. 163-67.

While Defendants have attempted to work with the Government cooperatively regarding its production, it has now become clear that the process has resulted in considerable delay and obfuscation, with Defendants still very far from receiving the complete production to which they are entitled. As a result, Defendants expect the Government to promptly and fully comply with its discovery obligations and to produce documents responsive to all of their RFPs in a manner consistent with the requirements of Rule 34, as explained in the Collins decision.

Alternatively, consistent with FRCP Rule 34(b)(2)(E), Anadarko would be willing to enter into the same agreement with the Government that it has with Tronox, that is, for the Government to identify the documents that are responsive to the RFPs and produce

Joseph A. Pantoja, Esq.
April 21, 2010
Page 7

those documents in an agreed, searchable, electronic format. What the Government cannot do is continue its current practice of trying to foist on Defendants the Government's discovery obligations.

Finally, we note that the Government has asserted various privileges against disclosure as a general objection to Defendants' First and Second RFPs and as a specific objection to some of the RFPs. See Responses and Objections to Second RFP, at pp. 2, 4-5. Local Rule 7034-1 provides as follows:

> If a claim of privilege is asserted in an objection or request for relief with respect to any document request or portion thereof, and an answer is not provided on the basis of the assertion, the objection or request for relief shall identify: (1) the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and (2) unless divulgence of such information would cause disclosure of the allegedly privileged information: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

If the Government intends to withhold any documents on the basis of privilege, Defendants expect full compliance with Local Rule 7034-1. We further note that we expect the Government will not broadly assert the deliberative process privilege to withhold documents in this action, where hundreds of millions of dollars are at stake, and where the balancing test applied to claims of such qualified privilege plainly weighs in favor of production. See, e.g., Ferrell v. U.S. Dept. of Housing & Urban Dev., 177 F.R.D. 425, 430 (N.D. Ill. 1998).

We would be happy to meet with you to discuss our position with you further; however, in light of the inadequacy of the Government's response discussed above and the looming deadlines in the Case Management Order, Defendants request that the Government fully and completely comply with its discovery obligations under Rule 34 and the Local Rules within three weeks of your receipt of this letter.

We look forward to your response and anticipated compliance.

Sincerely yours,

James J. Dragna

Joseph A. Pantoja, Esq.
April 21, 2010
Page 8


cc:     Melanie Gray (melanie.gray@weil.com)
        Jason W. Dilleck (jason.dilleck@weil.com)
        Lydia Protopapas (lydia.protopapas@weil.com)

Moss files in 7th Floor File Room

A - 8/19/87 - 7/31/92   Correspondence
A-2  1970s — 7/27/87  correspondence & notes
A-2  ~~~~ 5/22/90  8/90  Western Suburbs response to QAPP ~~~~ RI/FS comments
B.2  1970s  Site Identification & correspondence & memos & clippings
C    Site assessmt & HRS material  80s — 90s
C3   1995 HRS materials  & news clippings
C3   1983 HRS materials
C3   NEIC Report HRS materials notes & draft E&E Performance Eval Rept  1970s+88
E    1996 Western submittal Response to comments & ~~EECA~~ approved screenwg analysis/cost evaluation
E-5  Court filings & a draft RD/RA CD from 1970s + 1990s
E-1  Correspondence 70s — 90s including Special note files for RP/PA & Mons
E-5  1990s  Consent Decrees filing & 2002 WDNR snake vegetation taken engthermal
E-6  1885 — 1993 information requests
E-6  1981 — 2001  correspondence & memos including Comts & RI/FS & Remediation  KM
E-6  1980s & 90s  correspondence & Milwaukee County
G    1993 — 2008  cost surveys, memos & performance report
G    1980  ~~Cost~~ IAGs Cost survey & inspection, notes memo & County State
G-4  Contractor related documents 1990s
G?   2000-2001  CH2M Hill workplan docs
G3   2000 — 2002  RAC progress reports  / CH2M Hill
     2002 — 2003  RAC progress report
     2002 — 2003  CH2M Hill workplan docs
     1999 — 2000  RAC progress report
     1999 — 2002  CH2M Hill contract info & memos
     1992 — 1994  correspondence/ memos on CH2M Hill contract
     1991 — 1992  correspondence & memos on CH2M Hill contract & county related wk
     1980s ~~~~ Contractor related document

Row ?

G4   '85-'87, '96, 72   Contractor related Documents (list authorizations)

G4   86-88   Contractor related documents (self evaluations, summary evaluation rpts, vouchers

G4   88-89   Contractor related docuts Technical status report

G4   86-87   Contractor docs Technical status reports

G4   88-89   Contractor docs authorizations/action memos & workplans for RI/FS

G4   86-88   Contractor docs Financial Reports, Status reports, work assignet

G4   88-89   Contractor docs ARCs & CH₂MHill status reports & vouchers

G4   85-88   Contractor docs CH₂MHill authorizations, SOW notes

K3   2000-2002   ~~Technical~~ correspondence & submittals on remedy (eg QAPP, HsSPlan work change

K3   88-2000   QAPP related documents

K3   2001   QAPP related documents

K3   87, 2000-2001   ~~remediation docs on~~ QAPP, Sampling, technologies,

K3   86-892   Technical Support Section documents QAPP, ROD, RI/FS workplan Studies

K4   72-2001   Workplans, design, progress reqst, scope of work rules

K4   96-2003   submitteds progress reports, workplans, Contractor qualifications, comments

K4   86-91   Contractor & subcontractor documents work assignet docs

K4   86-98   status & progress reports Contractor & reston

K5   89-2001   remedy documents on ARARs, sampling, submittal progress report, oversight notes

K7   75-96   sampling ~~&~~ survey documents & submittal

K7   77-2003   studies & submittals

K7   2001-2005   Groundwater monitoring &

~~Revised Design An~~

K10 2002 90 % Design Submittal Reach 1

k10 2004    Final Design Reaches 2 & 3

k10 2000-2002   100 % Pre-Final Design LTTD, Milwaukee Metro Sewer backet project 60% Design Reach 1

K8    1990 FS Report

K8    1990 RI Report                 30% Design Reach 1

k9    98 ROD Amendment  97 ESD

k9    90 ROD  97 Draft ESD  notes st & Us

K10 2004 Final Design Submittal Reach 2 & 3  cont'd (App I-M)

K10    94-96 Predesign Tasks  submittal, comments & responses

K10    94  KMC Technical Memo for Predesign Task 9

K11    ~~Excerpt~~ Excerpt from LTTD Remedial action work plan

N    2000-2001 • sampling  & letter to Northwest Truck Parts

O3    2005  5 Year Report

T1    98 & 90 Transcripts from Public Meetings

T    85-98 Community Relations Docs

U    85-01 Guidance & Wisdon note on sampling equipment

U    75-01 Guidance, regulations, note & note from Wisdon on Creosote-sampling method