**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| TRONOX INCORPORATED, *et al.*, ) | Case No. 09-10156 (ALG) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| TRONOX INCORPORATED, TRONOX ) | |
| WORLDWIDE LLC f/k/a Kerr-McGee ) | |
| Chemical Worldwide LLC, and TRONOX LLC ) | |
| f/k/a Kerr-McGee Chemical LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adv. Pro. No. 09-1198 |
| ) | |
| ANADARKO PETROLEUM CORPORATION, ) | |
| KERR-McGEE CORPORATION, KERR- ) | |
| MCGEE OIL & GAS CORPORATION, KERR- ) | |
| MCGEE WORLDWIDE CORPORATION, ) | |
| KERR-MCGEE INVESTMENT ) | |
| CORPORATION, KERR-MCGEE CREDIT LLC, ) | |
| KERR-MCGEE SHARED SERVICES ) | |
| COMPANY LLC, and KERR-MCGEE ) | |
| STORED POWER COMPANY LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | |
| ) | |
| TRONOX INCORPORATED, TRONOX ) | |
| WORLDWIDE LLC, KERR-MCGEE ) | |
| CORPORATION, and ANADARKO ) | |
| PETROLEUM CORPORATION, ) | |
| ) | |
| Defendants, ) | |
| ) | |

**MEMORANDUM OF OPINION**

A P P E A R A N C E S:

KIRKLAND & ELLIS LLP
Counsel to Plaintiffs Tronox Incorporated,
Tronox Worldwide LLC, and Tronox LLC
300 North LaSalle Street
Chicago, Illinois 60654
      By:    David J. Zott, Esq.
              Jeffrey J. Zeiger, Esq.

601 Lexington Avenue
New York, New York 10022
      By:    Richard M. Cieri, Esq.
              Jonathan S. Henes, Esq.

WEIL, GOTSHAL & MANGES LLP
Counsel to Defendants Anadarko Petroleum Corporation
and Kerr-McGee Corporation
700 Louisiana, Suite 1600
Houston, Texas 77002
      By:    Melanie Gray, Esq.
              Lydia Protopapas, Esq.
              Jason W. Billeck, Esq.

767 Fifth Avenue
New York, New York 10153
      By:    Richard A. Rothman, Esq.
              Bruce S. Meyer, Esq.
              Lori L. Pines, Esq.

BINGHAM McCUTCHEN LLP
Counsel to Defendants Anadarko Petroleum Corporation
and Kerr-McGee Corporation
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071
      By:    James J. Dragna, Esq.

2020 K Street, NW
Washington, DC 20006
      By:    Duke K. McCall, III, Esq.

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

This Court's prior opinion (the "First Opinion") granted in part and denied in part the Defendants' motion to dismiss the complaint ("Initial Complaint") and granted leave to the Plaintiffs to replead Counts IV through VI, charging breach of fiduciary duty, aiding and abetting, and civil conspiracy. *See Tronox Inc., et. al. v. Anadarko Petroleum Corp. and Kerr-McGee Corp. (In re Tronox Inc.)*, 429 B.R. 73 (Bankr. S.D.N.Y. 2010).

Defendants Kerr-McGee Corporation and affiliates (collectively "Kerr-McGee" or "New Kerr-McGee"), their corporate parent, Anadarko Petroleum Corporation ("Anadarko" and together with Kerr-McGee, collectively, "Defendants"), now move to dismiss renewed Counts IV, V, and VI of the Second Amended Adversary Complaint (the "Amended Complaint") filed by debtors Tronox Incorporated, Tronox Worldwide LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and Tronox LLC f/k/a Kerr-McGee Chemical LLC (collectively, "Tronox" or "Plaintiffs"). Defendants move to dismiss the Amended Complaint pursuant to FED. R. CIV. P. 8(a)(2), 9(b) and 12(b)(6). Counts I, II, and III of the Amended Complaint, asserting claims against some of the Defendants for actual and constructive fraudulent transfer, are not at issue on the present motion.

Reference is made to the First Opinion for the factual allegations that underlie both the Initial and Amended Complaint. In brief, the Plaintiffs charge that Defendants imposed on them 70 years of "legacy liabilities," including enormous environmental remediation and retiree-related obligations, in connection with the spin-off from Tronox of New Kerr-McGee and its valuable oil and gas assets. The spin-off allegedly left Tronox insolvent or severely undercapitalized and had the purpose of immunizing the oil and gas business, the prized asset of

3

the prior enterprise, from the burden of the legacy liabilities and facilitating the acquisition of these assets by Anadarko for an ultimate price of $18 billion. The factual allegations in the Amended Complaint are substantially similar to those made in the Initial Complaint but have been expanded with respect to the role that Anadarko allegedly played in connection with a possible acquisition of Kerr-McGee in 2002, the circumstances surrounding the initial public offering of the stock of Tronox, Incorporated (the "Tronox IPO") on November 28, 2005, and the spin-off of Tronox from New Kerr-McGee that was assertedly consummated on March 31, 2006. The Amended Complaint alleges new theories of liability for breach of fiduciary duty, and the aiding and abetting and civil conspiracy counts of the original complaint have been repled in the Amended Complaint as breaches of fiduciary duty.

Since the First Opinion and the Amended Complaint were filed, the parties have proceeded in a largely cooperative fashion with discovery and trial preparation. The Tronox Debtors have confirmed a chapter 11 plan of reorganization (the "Plan"), based in part on a global Environmental Settlement Agreement ("ESA") negotiated as a resolution of environmental remediation claims against the Debtors asserted by Federal, State, tribal and other parties. The ESA formed the lynchpin of the Debtors' Plan, allowing the reorganized Debtors to liquidate billions of dollars of claims for alleged environmental remediation costs by establishing an environmental remediation trust funded in part by an equity offering of shares in the reorganized Debtors and in part by a litigation trust which has assumed the further litigation of the case at bar as well as other claims against the Defendants.[1] All of Anadarko's objections to

---

[1] A second proceeding based on similar allegations is pending, brought by the United States for the recovery of response costs for environmental cleanup pursuant to 42 U.S.C. § 9607(a) on a theory of fraudulent transfer under 28 U.S.C. § 3304(b). That action has been consolidated with the instant adversary proceeding for pretrial purposes; a motion to dismiss by the defendants in that action (the same defendants as here) was stayed pending the decision herein and further order of this Court. Case No. 09-01198 (ALG), Dkt. No. 69, Sept. 30, 2009 and Dkt No. 72, Oct. 2, 2009. A third action against certain lenders to Tronox was settled and dismissed. The Anadarko Litigation Trust is "deemed to stand in the shoes of Tronox" as Plaintiff in this action by order of this Court dated Feb. 14, 2011,

4

the confirmation of the Plan were resolved consensually, and the confirmed Plan became effective on February 14, 2011.[2] The Plaintiffs filed a Second Amended Complaint, which added additional Kerr-McGee entities as defendants without altering the substance of the Amended Complaint. Defendants consented to this second amendment, subject to the present motion to dismiss.[3]

For the reasons set forth below, Defendants' motion to dismiss Counts IV, V, and VI of the Amended Complaint is granted in part and denied in part.

## DISCUSSION

**I. Standard of Review**

The present motion to dismiss is subject to the standards summarized in the First Opinion. Under Rule 12(b)(6), made applicable to this case by Bankruptcy Rule 7012(b), the Court must "accept as true all of the factual allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009). The Court is not required to weigh the evidence at issue. *DeJesus v. Sears Roebuck Co.,* 87 F.3d 65, 69 (2d Cir. 1996), *cert denied*, 519 U.S. 1007 (1996); *see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.3d 774, 779 (2d Cir. 1984). The Court considering a

---

approving the Anadarko Litigation Trust Agreement and Environmental Settlement Agreement. Case No. 09-10156 (ALG), Dkt. No. 2812, ¶ 3.

[2] The Confirmation Order was entered on Nov. 30, 2010. *Findings of Fact, Conclusions of Law and Order Confirming the Joint Plan of Reorganization of Tronox Incorporated et al. Pursuant to Chapter 11 of the Bankruptcy Code*, Case No. 09-10156 (ALG), Dkt. No. 2567, Nov. 30, 2010. The Environmental Settlement Agreement was filed as a supplement to the Plan. *First Supplement to the Plan Supplement for the First Amended Joint Plan of Reorganization of Tronox Inc.*, Case No. 09-10156 (ALG), Dkt. No. 2441, Nov. 9, 2010. The Plan Effective Date occurred on February 14, 2011. *Notice of Occurrence of Effective Date of Plan of Reorganization*, Case No. 09-10156 (ALG), Dkt. No. 2827, Feb. 15, 2011.

[3] See the stipulation so-ordered on February 18, 2011. It is noted that the Plaintiffs also filed an *ex parte* application to file a surreply to the pending motion under seal, as well as a redacted version of the underlying surreply, on December 20, 2010. A motion to strike the surreply followed from Anadarko, to which the Plaintiffs responded. The Court will not consider the surreply in evaluating the present motion as it relies on factual assertions beyond the scope of a motion to dismiss.

5

motion to dismiss reads the complaint as a whole. *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir. 1985), citing *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957). The Court must accept all well-pleaded, nonconclusory factual allegations in the complaint to be true. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). These factual allegations "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

A complaint is only required under Rule 8(a)(2) to provide a "short and plain statement of the claim showing that the pleader is entitled to relief," so that there is disclosure of "sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir. 2000), *quoting Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). However, where claims are based on purported fraud, Rule 9(b), made applicable by Bankruptcy Rule 7009, requires that allegations of fraud be stated with particularity. *Granite Partners, L.P. v. Bear Stearns & Co., Inc.,* 58 F.Supp.2d 228, 236 (S.D.N.Y. 1999), citing *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir. 1994).

## II. Breach of Fiduciary Duty (Count IV)

Count IV of the Amended Complaint seeks compensatory damages against New Kerr-McGee for its alleged breach of fiduciary duties owed to Tronox prior to the completion of the spin-off on March 31, 2006. The Plaintiffs allege that New Kerr-McGee owed fiduciary duties to Tronox as a promoter, as the parent of an insolvent subsidiary, and as the parent of a subsidiary with minority shareholders. The First Opinion held that, under the choice of law rules of the forum jurisdiction (New York), Delaware law governs the substantive breach of fiduciary duty claims as a result of the incorporation of each of the Tronox entities in that state. 429 B.R.

at 104. *See 380544 Canada, Inc. v. Aspen Tech., Inc.,* 544 F.Supp.2d 199, 233 (S.D.N.Y. 2008). On the other hand, the statute of limitations is determined by reference to the law of the place where the cause of action accrued, which the parties agree in this case was Oklahoma. Under New York choice of law principles, the Court must apply the shorter of New York's three-year statute of limitations or that of Oklahoma. *See* N.Y. CPLR 202, 213, 214(4); *In re Tronox*, 429 B.R. at 105. Under Oklahoma law, the statute of limitations for the amended claims would be a maximum of three years. Okla. Stat. tit. 12, § 95(a); *Resolution Trust Corp. v. Greer,* 911 P.2d 257 (Okla. 1996).

The Court will proceed by addressing the question whether a breach of a fiduciary duty claim has been sufficiently alleged in the Amended Complaint before considering whether the factual allegations, taken as true for purposes of this motion, support the conclusion that such a breach occurred during the statute of limitations period. As noted above, the applicable substantive law is that of Delaware, and the applicable statute of limitations is provided by Oklahoma law. To understand the issues, however, it is first necessary to review the structure of the spin-off and the key dates.

  A. *Spin-Off Transaction*

Although the Plaintiffs and Defendants offer different characterizations of why the spin-off was carried out, there is no dispute as to the timing and nature of the principal transactions effectuated in the course of splitting New Kerr-McGee from Tronox. According to the Amended Complaint and the documents incorporated by reference and attached thereto, and not disputed by Defendants, the predecessor of both entities, Kerr-McGee Corporation, was an energy and chemical company with a wide range of operations and liabilities that accrued over the course of more than seventy years. Starting in May 2001, Kerr-McGee embarked on a program of

7

corporate reorganization called "Project Focus" aimed at segregating its oil and gas assets from the rest of its holdings and from its legacy liabilities. As a first step, Kerr-McGee set up a holding company framework under which it could isolate its oil and gas assets within one entity, which would ultimately become "New Kerr-McGee," while leaving all other assets and liabilities in another entity or group of entities ("Old Kerr-McGee"), which would later become Tronox.

Although Old Kerr-McGee appears to have originally held substantially all the assets of the consolidated enterprise, under the reorganized structure New Kerr-McGee became the parent company. New Kerr-McGee directly held the oil and gas assets, while its subsidiary Old Kerr-McGee retained most of the other assets and the legacy liabilities. In addition, New Kerr-McGee was also the beneficiary of various agreements providing for the assumption of liabilities by Old Kerr-McGee (later Tronox), as well as indemnification against future liability related to the assets retained by Old Kerr-McGee (Tronox). Among the agreements effecting the spin-off were an Assignment, Assumption, and Indemnification Agreement, executed in May 2005 and backdated to December 31, 2002, and a Master Separation Agreement ("MSA"), dated November 28, 2005. Pursuant to the MSA, Tronox incurred bank debt, issued bonds, and conducted the Tronox IPO, which took place on November 28, 2005. Tronox transferred to New Kerr-McGee substantially all the proceeds of the financing, including the $224.7 million proceeds of the IPO and the $537.1 million proceeds of other financing.

Following the Tronox IPO, New Kerr-McGee remained the majority owner of Tronox, with the remaining shares publicly traded, until the spin-off was completed on March 31, 2006. At that time, New Kerr-McGee distributed its remaining shares of Tronox stock to the New Kerr-

8

McGee shareholders.[4] Assuming a three-year statute of limitations period, in order to state a claim relating to the spin-off, the Amended Complaint must allege at a minimum either (i) some actionable conduct occurring after January 12, 2006 (three years before the date of Tronox's Chapter 11 filing), or (ii) a basis for tolling the statute of limitations with relation to conduct occurring before that date until a date within the limitations period.

   *B. Duties Owed by New Kerr-McGee With Respect to Tronox*

The Plaintiffs have three theories upon which they base allegations that New Kerr-McGee owed duties to Tronox during the course of the spin-off. First, the Plaintiffs allege that New Kerr-McGee owed fiduciary duties as the parent company of a subsidiary that had minority shareholders after the date of the IPO and before the date of the spin-off. Second, the Plaintiffs allege that New Kerr-McGee owed fiduciary duties to Tronox and its creditors as a parent in control of an insolvent subsidiary. Lastly, the Plaintiffs allege that New Kerr-McGee was liable as a promoter by acting as Tronox's sponsor, obtaining initial credit facilities, soliciting investors, arranging for the IPO, and distributing its ownership interest to shareholders in the spin-off.

Under Delaware law, a wholly owned subsidiary is not owed fiduciary duties by its corporate parent under normal circumstances. *Trenwick Am. Litig. Trust v. Ernst & Young*, 906 A.2d 168, 191-92 (Del. Ch. 2006), citing *Anadarko Petroleum Corp. v. Panhandle E. Corp.,* 545 A.2d 1171, 1174 (Del. 1988). However, it is established in Delaware that a parent company owes fiduciary duties to a subsidiary that has minority shareholders. *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971); *Burton v. Exxon Corp.*, 583 F.Supp.405, 414 (S.D.N.Y. 1984)(Delaware law). The Delaware Supreme Court has also recognized that a parent owes

---

[4] Less than three months thereafter, on June 22, 2006, Anadarko entered into an agreement with New Kerr-McGee to acquire it for $16.4 billion in cash and the assumption of $1.6 billion in debt. The Tronox Debtors filed their chapter 11 petition on January 12, 2009.

9

fiduciary duties to a subsidiary when that subsidiary is insolvent, and that the creditors of the subsidiary have standing to enforce such duties. *See N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla,* 930 A.2d 92, 101-02 (Del. 2007). Moreover, even when a subsidiary is wholly-owned, a parent corporation may owe fiduciary duties as a promoter when it is engaged in a plan or scheme of promotion, until the scheme has been concluded. *Bailes v. Colonial Press, Inc.,* 444 F.2d 1241 (5th Cir. 1971).

The Defendants have raised objections to the Plaintiffs' assertion that duties were owed by New Kerr-McGee to Tronox, but for the reasons stated below, each such objection is wrong on the law or based on the resolution in favor of the Defendants of hotly disputed factual questions that cannot be determined on a motion to dismiss.

First, Defendants argue that they cannot be held liable for breach of fiduciary duties as a majority owner of a subsidiary with minority shareholders because no such shareholders are party to this action. However, as the Plaintiffs show, it is well established under Delaware law that the duties owed to a subsidiary with minority shareholders run directly to the subsidiary itself. *Sinclair Oil Corp. v. Levien*, 280 A.2d at 720. Plaintiffs are not asserting claims on behalf of shareholders, but on behalf of the corporate entities.

Plaintiffs have adequately alleged that a duty was owed by New Kerr-McGee with respect to Tronox as a subsidiary with minority shareholders, and that such duties were breached. Plaintiffs allege that from at least the time New Kerr-McGee commenced Project Focus until and including the conclusion of the spin-off on March 31, 2006, New Kerr-McGee (and its predecessor) engaged in transactions that lacked intrinsic fairness, involved gross overreaching, and caused Tronox to become insolvent in breach of the fiduciary duties owed by New Kerr-McGee. The Plaintiffs also allege that the spin-off itself constituted a breach of duty to Tronox

10

because New Kerr-McGee "knew or should have known that Tronox could never survive as an independent company." Am. Compl. ¶ 173. "Self-dealing occurs when the majority stockholder or parent, by virtue of its domination of the subsidiary, causes the subsidiary to act in such a way that the dominant party receives something of value to the exclusion of, and detriment to, the minority stockholders." *Burton v. Exxon Corp.*, 583 F.Supp. at 415.[5]

With respect to duties owed to Tronox as an insolvent subsidiary, the Defendants appear to concede that, following the IPO, New Kerr-McGee would have owed fiduciary duties to Tronox as an insolvent subsidiary if indeed it were insolvent.[6] The real dispute is the factual question whether Tronox was insolvent or undercapitalized following the IPO. Since the insolvency of Tronox is a hotly contested factual question, it follows that this branch of the motion to dismiss must be denied.

Finally, with respect to the duties of New Kerr-McGee as a promoter of Tronox, the Defendants do not dispute that New Kerr-McGee owed such duties during at least some period, but they assert that all activities relating to promotion of the Tronox entities were concluded on the date of the IPO (a date more than three years before the bankruptcy filing). The Defendants point to *Bailes v. Colonial Press, Inc.,* 440 F.2d at 1244, to support their argument that liability as a promoter ends when the scheme of promotion is concluded. The Amended Complaint alleges, however, that the spin-off itself was part of the scheme of promotion and that it did not conclude until after March 31, 2006, when Tronox was no longer directly controlled by the

---

[5] Where a parent company owes fiduciary duties to its subsidiary, transactions between the two that involve self-dealing on the part of the parent will be judged by the intrinsic fairness standard, under which the defendant bears the burden of proof. *Burton v. Exxon Corp.*, 583 F.Supp. at 415; *Kahn v. Lynch Comm'n Sys., Inc.*, 638 A.2d 1110, 1115 (Del. 1994).

[6] *Defendants' Reply Memorandum of Law* at 14. Although Defendants argue in their motion that no such duty existed prior to the IPO, Plaintiffs' opposition clarifies that such duties are only alleged to have existed during the period following the IPO. *Plaintiffs' Opposition* at 18. The IPO appears to be the critical date because following that date, it is alleged, New Kerr-McGee only paid the obligations of Tronox where it was under a contractual obligation to do so, whereas previously New Kerr-McGee routinely paid or provided for the obligations of its subsidiaries, including Tronox.

11

Defendants. It is also alleged New Kerr-McGee executed further transfers of defined benefit and retiree liabilities to Tronox in the course of authorizing and preparing for the final step in the spin-off, the stock distribution, on March 31, 2006. These allegations are sufficient to create a disputed factual issue as to when the scheme of promotion concluded.

Although factual questions exist regarding the solvency of Tronox during the relevant pre-spin-off period and the scope of the plan of promotion which caused Tronox to become an independent company, at the motion to dismiss stage the Court must assume the truth of the well-pled facts. Taking the allegations made by the Plaintiffs as true, the Amended Complaint sets forth a claim for breach of fiduciary duties if any act in breach of those duties occurred within the applicable limitations period.

C. *Statute of Limitations*

Assuming for purposes of this motion to dismiss that New Kerr-McGee owed fiduciary duties to Tronox at all times prior to the conclusion of the spin-off, to state a claim for breach of fiduciary duties, the Plaintiffs must plead facts supporting the conclusion that actionable conduct occurred within the three-year limitations period, or else that the statute of limitations was tolled. An affirmative defense, such as the statute of limitations, "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). On such a motion, "as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.*; *see also In re Magnesium Corp. of Am.,* 399 B.R. 722, 754 (Bankr. S.D.N.Y. 2009). The parties agree that a three-year statute of limitations applies to the amended claims of breach of fiduciary duty to the extent that they are not based in fraud. Since

none of the allegations in Count IV of the Amended Complaint is grounded in fraud, the Court applies a three-year statute of limitations.

The Defendants admit that the distribution of Tronox stock in the spin-off and certain transfers of defined benefit and retiree liabilities from New Kerr-McGee to Tronox took place after January 12, 2006, the cut-off date under a three-year statute of limitations.  The Defendants argue nevertheless that the consummation of the spin-off is not, standing alone, a sufficient predicate for Plaintiffs' claims because a spin-off is an ordinary transaction that is "entirely consistent with traditional principles of corporate governance." *Aviall, Inc. v. Ryder Sys. Inc.,* 913 F.Supp. 826 (S.D.N.Y. 1996); *Anadarko Petroleum Corp. v. Panhandle E. Corp.,* 545 A.2d at 1174.  The Defendants also argue that the spin-off and all transfers occurring during the limitations period were merely the "unabated inertial consequences" of agreements entered into prior to the IPO and did not reset the statute of limitations clock, citing *Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004).

The Court agrees that a spin-off can be an entirely appropriate corporate transaction and that a spin-off is not *prima facie* evidence of a breach of a fiduciary duty owed to a subsidiary. However, on the allegations of the Amended Complaint, this spin-off was not a beneficial corporate transaction but the concluding step in an integrated scheme to segregate the valuable oil and gas assets from the legacy liabilities of Old Kerr-McGee, leaving Tronox insolvent and without adequate capital.  The detailed allegations are that Project Focus included unsuccessful attempts to sell the non-oil and gas related assets of Kerr-McGee, the creation or use of the Tronox entities for the purpose of concentrating and offloading liabilities, and the consummation of a spin-off by which New Kerr-McGee "caused Tronox to accept onerous liabilities, including

13

defined benefit and other retiree-related liabilities that were transferred to Tronox as of March 31, 2006." Am. Compl. ¶ 166.

The Defendants' argument that the transfers of liabilities occurring at the time of the spin-off and the spin-off itself were "unabated inertial consequences" of the IPO and other earlier actions does not square with the facts alleged in the Amended Complaint. In *Varner v. Peterson Farms*, the Court held that performance under a pre-existing contract was not an overt act sufficient to constitute a continuing violation of the antitrust laws or to start the statute of limitations running again, as contractual performance was merely an "unabated inertial consequence" of the initial entry into the contract. 371 F.3d at 1019. Under *Varner*, an overt act must be "a new and independent act that is not merely a reaffirmation of a previous act," and it must "inflict new and accumulating injury on the plaintiff." *Id.*

The Plaintiffs have adequately alleged that the Defendants took "new and independent" acts after January 12, 2006. For one thing, it appears that prior to March, 2006, under the documents governing the Tronox IPO, New Kerr-McGee was not subject to a binding obligation to complete the spin-off. As alleged in the Amended Complaint, the distribution of the new Tronox stock held by New Kerr-McGee and the consummation of the spin-off would not have occurred but for a decision of the directors of New Kerr-McGee on March 8, 2006. Am. Compl. ¶ 166. This allegation is substantiated by the statement, contained in a Tronox S-1 Registration Statement, filed on November 21, 2005, immediately prior to the IPO, that "Kerr-McGee [continued to have] the sole discretion to decide if and when the Distribution [would] occur and to determine the form, the structure, and all other terms of any transactions to effect the Distribution."[7] Given the Plaintiffs' detailed allegations that the effectuation of the spin-off

---

[7] Tronox Registration Statement at 5, Exhibit B to Defendants' Affidavit in Support of the Motion to Dismiss. The Court can take judicial notice of certain securities filings in ruling on a motion to dismiss under Rule 12(b)(6).

14

caused further harm to Tronox and its shareholders, the authorization of the spin-off by the New Kerr-McGee board of directors within the limitations period is sufficient to plead that a "new and independent" breach of fiduciary duty occurred within that period.

The Plaintiffs have provided an adequate basis to support their theories of fiduciary duties owed by New Kerr-McGee to Tronox and have stated with sufficient clarity factual allegations supporting the claim that New Kerr-McGee breached such duties within a three-year limitations period. Because the Plaintiffs have adequately pled a claim for breach of fiduciary duties without tolling the statute of limitations, the Court need not reach the question of whether the statute of limitations was tolled.[8] The Defendants' motion to dismiss is denied with respect to Count IV of the Amended Complaint.

## III. Civil Conspiracy (Count V) and Aiding and Abetting Breach of Fiduciary Duty (Count VI)

Count V is premised on an alleged conspiracy between Anadarko and New Kerr-McGee to breach fiduciary duties owed to Tronox, and Count VI alleges that Anadarko should independently be held directly liable for aiding and abetting breaches of fiduciary duty by New Kerr-McGee.[9] The Amended Complaint asserts that Anadarko pursued an acquisition of Kerr-McGee's valuable oil and natural gas assets beginning in 2002 until it discovered the magnitude of the legacy liabilities, after which it waited in the wings, eager to pay a premium for the assets if they were cleansed. According to the Plaintiffs, the acquisition of New Kerr-McGee for $18 billion just months after the completion of the spin-off was not consummation of an arm's-length

---

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Staehr v. Hartford Fin. Svc. Group, Inc.,* 547 F.3d 406, 425 (2d Cir. 2008).

[8] The Plaintiffs argue that even if actionable conduct did not occur within the limitations period, the statute of limitations was tolled due to the adverse domination of Tronox, fraudulent concealment by the Defendants, and under the "discovery" rule. The Defendants contend that adverse domination only applies when fraud is alleged, in which case Oklahoma would impose a two-year limitations period. Def. Motion. at 8, fn. 7; *In re Tronox, Inc.,* 429 B.R. at 106. The Defendants also argue that fraudulent concealment and the discovery rule have not been adequately pled and should not be applied to toll the statute of limitations. None of these issues need be reached.

[9] New Kerr-McGee has not been named in Count VI's allegations of aiding and abetting breach of fiduciary duty.

15

business transaction but instead the conclusion of a conspiracy to transfer out the valuable assets, with Tronox left behind insolvent and undercapitalized. The Anadarko Defendants argue in response that even if the amended claims are not barred by the statute of limitations or other legal deficiencies, the facts alleged do not rise to the level of specificity required under *Twombly* and *Iqbal*, nor do the allegations suggest that Anadarko engaged in actionable conduct inconsistent with a legitimate arm's-length business transaction. *See Bell Atl. Corp. v. Twombly*, 550 U.S. at 557; *Peterson v. Grisham*, 594 F.3d 723, 731 (10th Cir. 2010).

There is no material disagreement as to the elements the Plaintiffs must show in order to state a claim in Counts V and VI.[10] A claim of civil conspiracy (Count V) requires that a complaint allege: 1) the existence of a confederation or combination of two or more persons; 2) that an unlawful act was done in furtherance of the conspiracy; and 3) that the conspirators caused actual damage to the plaintiff. *Nicolet v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987). A claim for aiding and abetting breach of fiduciary duty (Count VI) requires a showing of: 1) the existence of a fiduciary relationship; 2) that the fiduciary breached its duty; 3) that a defendant, who is not a fiduciary, knowingly provided substantial assistance to a breach; and 4) that the plaintiff was damaged as a result of the concerted action of the fiduciary and nonfiduciary. *In re USA Detergents, Inc.*, 418 B.R. 533, 546 (Bankr. D. Del. 2009).

Thus, Count V's conspiracy claim fails unless the Amended Complaint adequately alleges that Anadarko entered an actual agreement to commit an unlawful act, and Count VI

---

[10] The Defendants point to Oklahoma law as governing Counts V and VI, whereas the Plaintiffs rely on Delaware law. The Defendants argue that under Oklahoma law a two-year statute of limitations applies to the conspiracy claims because they are based in fraud. Mtn. to Dismiss at 24, fn. 23, citing *Paxton v. Hyer*, 87 P.2d 938 (Okla. 1939). They also argue that the aiding and abetting a breach of fiduciary duty claim is controlled by Oklahoma law, and that although Oklahoma has applied aiding and abetting to other causes of actions in tort it has not recognized it as applying to breach of fiduciary duty. Mtn. to Dismiss at 29, fn. 26, 27  Because the Amended Complaint has failed to state a claim under Count V or VI without regard to these questions of state law, the Court bases its decision solely on the common law elements of civil conspiracy and aiding and abetting recognized by both jurisdictions. Citation is made to Delaware case law because even under the cases cited by the Plaintiffs, Counts V and VI fail. Accordingly, the effect of the statute of limitations need not be reached.

16

requires allegations that Anadarko was at a minimum a knowing provider of substantial assistance to a breach of duty. On the other hand, as the Delaware courts have held, negotiation of the terms of an arm's-length transaction "cannot give rise to liability for aiding and abetting, whereas a bidder may be liable to the target's stockholders if the bidder attempts to create or exploit conflicts of interest in the board . . . [or] where the bidder and the board conspire in or agree to the fiduciary breach." *Malpiede v. Townson,* 780 A.2d 1075, 1098 (Del. 2001). If Anadarko's involvement in the reorganization of New Kerr-McGee was limited to the role of counterparty to an arm's-length business transaction, then the agreement to enter such a transaction and the effectuation thereof cannot ordinarily support claims of either actionable conspiracy or aiding and abetting. *See id.*

The claims in the Amended Complaint are insufficient in light of these principles. According to the Amended Complaint, Anadarko explored an acquisition of Kerr-McGee in 2002 but lost interest and terminated its due diligence after determining that it could be faced with as much as $3 billion in legacy costs if it closed the transaction. Certainly this demonstration of interest could not be enough for the incurrence of liability, and Plaintiffs do not argue to the contrary.

The Amended Complaint then admits that the only communication between Anadarko and New Kerr-McGee from that time until after the IPO was in the form of Anadarko's continued expressions of interest in an acquisition communicated through New Kerr-McGee's investment banker, Lehman Brothers. Nevertheless, although the Plaintiffs imply that Lehman Brothers played a nefarious role in orchestrating "Project Focus" and the acquisition of New Kerr-McGee by Anadarko, none of the expressions of interest allegedly communicated between Anadarko and New Kerr-McGee through Lehman is alleged to have constituted an agreement.

17

None indicates that Anadarko supplied assistance or aid to the project that can be termed substantial. The Plaintiffs have not alleged that Anadarko demanded that any particular liabilities be imposed upon Tronox or that New Kerr-McGee promised to sweeten the deal at Anadarko's behest by foisting additional liabilities upon Tronox prior to the spin-off. The Amended Complaint makes it clear that Anadarko had previously balked at acquiring unliquidated liabilities that could potentially reach into the billions of dollars, but the Plaintiffs have not alleged sufficient facts to support the conclusion that Anadarko acted in concert with New Kerr-McGee to structure the spin-off or that Anadarko dictated which assets and liabilities would be retained by New Kerr-McGee.

The Amended Complaint also alleges that Anadarko and New Kerr-McGee entered formal discussions regarding an acquisition of New Kerr-McGee prior to the completion of the spin-off in March 2006, but there is no allegation that the substance of such discussions involved the transfer of further liabilities to Tronox. Even if the Court accepts for purposes of this motion the Plaintiffs' assertion that the CEO of Anadarko contacted the CEO of New Kerr-McGee in March of 2006 to discuss an acquisition of New Kerr-McGee, such communications are consistent with arm's-length negotiations. Plaintiffs have not cited any case law supporting the proposition that a third-party can take on *in personam* liability for damages on a theory of conspiracy or aiding and abetting merely because it holds itself out as a potential purchaser of assets that have been cleansed through improper or unlawful means. As a purchaser, Anadarko may find that the company it bought is worth substantially less because of liabilities that the law does not permit New Kerr-McGee to avoid, but this is quite different from Anadarko's incurrence of *in personam* liability as a conspirator or aider and abettor. Ultimately, the Amended Complaint's factual allegations only support the proposition that as the conclusion of

18

the spin-off neared, New Kerr-McGee was an attractive target for a strategic partner in the oil and gas industry and that Anadarko, having already conducted due diligence on the company and on the investment bankers' valuations of New Kerr-McGee, was in haste to consummate an acquisition before an alternate bidder emerged.

Indeed, the facts here are similar or even more favorable to Anadarko than those in *Malpiede v. Townson, supra.* There the Delaware court found that a company bidding for an attractive target may have engaged in suspect tactics, and that there had been conflicts of interest and a possible breach of the duty of care by the target board, but that there could be no liability on the bidder for aiding and abetting a breach of fiduciary duty because the conduct of the bidder in the course of the acquisition was not actionable, in that "arm's length negotiations cannot give rise to liability for aiding and abetting . . . ." 780 A.2d at 1097. As the Supreme Court stated in *Twombly*, "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." 550 U.S at 557.

In the case at bar, although the anticipation of a merger with Anadarko provides the motive for New Kerr-McGee to maximize the net value of its enterprise by transferring out all the valuable property and leaving the legacy liabilities behind, the allegations do not provide a sufficient basis to infer an agreement between Anadarko and New Kerr-McGee to commit an unlawful act, as required for an allegation of civil conspiracy, or of knowing and substantial assistance in a breach of duty, as required for liability for aiding and abetting. Counts V and VI are dismissed.

## CONCLUSION

Defendants' motion to dismiss is denied as to Count IV of the Amended Complaint for breach of fiduciary duty and granted as to Counts V and VI for civil conspiracy and aiding and abetting breach of fiduciary duty. Either party may settle an order on five business days' notice.

Dated:   New York, New York
         May 11, 2011                          */s/ Allan L. Gropper*
                                               UNITED STATES BANKRUPTCY JUDGE