Melanie Gray (*admitted pro hac vice*)
Lydia Protopapas (LP 8089)
Jason W. Billeck (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Richard A. Rothman (RR 0507)
Bruce S. Meyer (BM 3506)
Lori L. Pines (LP 3005)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

James J. Dragna (*admitted pro hac vice*)
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071
Telephone: (213) 680-6400
Facsimile: (213) 680-6499

Thomas R. Lotterman (*admitted pro hac vice*)
Duke K. McCall, III (*admitted pro hac vice*)
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Telephone: (202) 373-6000
Facsimile: (202) 373-6001

*Counsel to Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, *et al.*, | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | Adv. Pro. No. 09-01198 (ALG) |
| ANADARKO PETROLEUM CORPORATION and KERR-MCGEE CORPORATION, KERR-MCGEE OIL & GAS CORPORATION, KERR-MCGEE WORLDWIDE CORPORATION, KERR-MCGEE INVESTMENT CORPORATION, KERR-MCGEE CREDIT LLC, KERR-MCGEE SHARED SERVICES COMPANY LLC, and KERR-MCGEE STORED POWER COMPANY LLC | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |

| | |
|---|---|
| Plaintiff-Intervenor, | ) |
| v. | ) |
| | ) |
| TRONOX, INC., TRONOX WORLDWIDE LLC, | ) |
| TRONOX LLC, KERR-MCGEE CORPORATION | ) |
| and ANADARKO PETROLEUM CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' ANSWER TO PLAINTIFFS'
## SECOND AMENDED ADVERSARY COMPLAINT

Anadarko Petroleum Corporation ("Anadarko"), Kerr-McGee Corporation ("Kerr-McGee"),[1] Kerr-McGee Oil & Gas Corporation, Kerr-McGee Worldwide Corporation, Kerr-McGee Investment Corporation, Kerr-McGee Credit LLC, Kerr-McGee Shared Services Company LLC, and Kerr-McGee Stored Power Company LLC (collectively, "Defendants") hereby file their Answer to the Second Amended Adversary Complaint ("Second Amended Complaint") filed by Tronox Incorporated ("Tronox Inc."), Tronox Worldwide LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and Tronox LLC f/k/a Kerr-McGee Chemical LLC (collectively, "Tronox"):

## General Denial

Except as otherwise expressly admitted, Defendants deny each and every allegation and averment in the Second Amended Complaint, including, without limitation, all allegations and averments contained in the preamble, headings, or subheadings of the Second Amended Complaint. Allegations and averments in the Second Amended Complaint to which

---

[1] For the avoidance of confusion, Defendants note that Defendant Kerr-McGee Corporation is defined as and referred to throughout this Answer as "Kerr-McGee." This Defendant is a completely separate and distinct entity from the company generally referred to in this Answer as Kerr-McGee Corporation. These two companies are, and always have been, separate and distinct entities. Kerr-McGee did not exist until 2001. After Kerr-McGee was formed, the Kerr-McGee Corporation referenced herein was merged into a subsidiary of Kerr-McGee and was subsequently renamed Tronox Worldwide LLC.

no responsive pleading is required shall be deemed as denied.  Defendants expressly reserve the right to amend and/or supplement their Answer as may be necessary.

Defendants do not adopt or incorporate Tronox's definitions into this Answer. Further, reference to any entity is limited to that entity as it existed at the time period for which the allegation relates, without reference to any reorganizations or changes in that entity's structure or ownership.

## **Introduction**

1.      Defendants deny the allegations in Paragraph 1 of the Second Amended Complaint, except admit that Kerr-McGee is a successful oil and gas exploration and production company.

2.      Defendants deny the allegations in Paragraph 2 of the Second Amended Complaint, except admit that at certain times, Kerr-McGee Corporation (as it existed at that time) and/or certain of its subsidiaries or affiliates or any of their predecessors, or entities it acquired, was or has been involved in the business of the treatment of wood products; production of rocket fuel; refining and marketing of petroleum products; and the mining, milling, and processing of nuclear materials, and that certain of these businesses were acquired with or incurred various liabilities.

3.      Defendants deny the allegations in Paragraph 3 of the Second Amended Complaint, except admit that in certain years, Kerr-McGee Corporation (as it existed at that time) and/or certain of its subsidiaries or affiliates or any of their predecessors enjoyed profits, and that in 1999, the EPA notified Kerr-McGee Corporation (as it existed at that time) and Kerr-McGee Chemical LLC that they potentially may be liable for clean-up costs at a Federal creosote site located in Manville, New Jersey.

4.      Defendants deny the allegations in Paragraph 4 of the Second Amended Complaint.

5.       Defendants deny the allegations in Paragraph 5 of the Second Amended Complaint, except admit that in 2002 there was a corporate restructuring internally referred to as Project Focus, which was undertaken for legitimate and sound business reasons, and that a purpose of Project Focus was to reorganize Kerr-McGee Corporation's (as it existed at that time) and/or certain of its subsidiaries' or affiliates' or any of their predecessors' operations along business segments and/or functions.

6.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Sentence 4 of Paragraph 6 of the Second Amended Complaint and, therefore, deny those allegations.  Defendants deny the remaining allegations in Paragraph 6 of the Second Amended Complaint, except admit that (i) in 2005, Kerr-McGee explored the possibility of a sale or a spin-off of Kerr-McGee Chemical Worldwide LLC; (ii) certain potential purchasers expressed an interest in acquiring Kerr-McGee Chemical Worldwide LLC on various terms, while others did not; (iii) in April 2005, the EPA sent a letter to Kerr-McGee and Kerr-McGee Chemical LLC asserting a demand for $178.8 million in connection with the Manville site; and (iv) Kerr-McGee or its affiliates (or their predecessors) were parties to certain pending personal injury claims.

7.      Defendants deny the allegations in Paragraph 7 of the Second Amended Complaint.

8.      Defendants deny the allegations in Paragraph 8 of the Second Amended Complaint.

9.      Defendants deny the allegations in Paragraph 9 of the Second Amended Complaint, except admit that (i) on or about June 22, 2006, Anadarko and Kerr-McGee entered into an Agreement and Plan of Merger whereby Anadarko would acquire Kerr-McGee for approximately $18 billion in consideration; (ii) Kerr-McGee became a wholly owned subsidiary of Anadarko on or about August 10, 2006; (iii) Luke R. Corbett served as Kerr-McGee's Chairman and Chief Executive Officer prior to the acquisition; (iv) Robert M. Wohleber served as Kerr-McGee's Senior Vice President and Chief Financial Officer prior to the acquisition, as well as the Chairman of the Board of Tronox Inc. for a certain period of time; and (v) Gregory F. Pilcher served as Kerr-McGee's Senior Vice President and General Counsel prior to the acquisition.

10.      Defendants deny the allegations in Paragraph 10 of the Second Amended Complaint.

11.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11 of the Second Amended Complaint that a potential third-party buyer warned Kerr McGee that Tronox could never survive on its own and, therefore, deny those allegations. Defendants deny the remaining allegations in Paragraph 11 of the Second Amended Complaint, except admit that (i) Lehman Brothers served as an investment banker in connection with both the spin-off and the Anadarko acquisition; (ii) Tronox retained approximately $40 million in cash in connection with the spin-off; (iii) in connection with the acquisition by Anadarko, certain indemnities were provided to Kerr-McGee's officers and directors for acts and omissions occurring prior to the effective time of the Anadarko acquisition; and (iv) a Lehman Brothers banker drew a picture of a pot containing a flower and a weed on

more than one occasion but deny the allegation that the Lehman Brothers banker explained that the weed would choke the flower.

12.    Defendants deny the allegations in Paragraph 12 of the Second Amended Complaint.

### Jurisdiction and Venue

13.    Defendants admit the allegations in Paragraph 13 of the Second Amended Complaint to the extent that the Court has subject matter jurisdiction over this adversary proceeding and that certain, but not all, claims asserted in the Second Amended Complaint, as pled, are core claims.  Defendants consent to the entry of final orders or judgment by this Court pursuant to Rule 7012(b).

14.    Defendants admit the allegations in Paragraph 14 of the Second Amended Complaint to the extent that venue is proper in the Southern District of New York.

### Parties

15.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in Paragraph 15 of the Second Amended Complaint regarding Tronox Incorporated's principal place of business and, therefore, deny those allegations. Defendants deny the remaining allegations in Paragraph 15 of the Second Amended Complaint, except admit that Tronox Incorporated is a Delaware corporation, that on January 12, 2009, Tronox and certain of its affiliated companies filed for chapter 11 protection in this Court, and that Tronox and/or its affiliates have operations in the United States, the Asia Pacific region, and Europe.

16.    The allegations in Paragraph 16 of the Second Amended Complaint amount to a legal conclusion for which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 16 of the Second Amended Complaint,

except admit that prior to filing for chapter 11 protection in this Court, Tronox Worldwide LLC

was a wholly owned subsidiary of Tronox Inc.

17.     The allegations in Paragraph 17 of the Second Amended Complaint

amount to a legal conclusion for which no response is required.  To the extent a response is

required, Defendants deny the allegations in Paragraph 17 of the Second Amended Complaint,

except admit that prior to filing for chapter 11 protection in this Court, Tronox LLC was a

wholly owned subsidiary of Tronox Inc.

18.     The allegations in Sentence 4 of Paragraph 18 of the Second Amended

Complaint amount to a legal conclusion for which no response is required.  To the extent a

response is required, Defendants deny those allegations.  Defendants deny the remaining

allegations in Paragraph 18 of the Second Amended Complaint, except admit that (i) Anadarko is

a Delaware corporation headquartered in The Woodlands, Texas; (ii) on or about June 22, 2006,

Anadarko and Kerr-McGee entered into an Agreement and Plan of Merger pursuant to which

Anadarko would acquire Kerr-McGee for approximately $18 billion, including $16.4 billion in

cash; and (iii) Kerr-McGee became a wholly owned subsidiary of Anadarko on or about August

10, 2006.

19.     The allegations in Paragraph 19 of the Second Amended Complaint that

Kerr-McGee and Anadarko are successors to "Old Kerr-McGee" amount to legal conclusions for

which no response is required.  To the extent a response is required, Defendants deny those

allegations.  Defendants admit that Kerr-McGee is a wholly owned subsidiary of Anadarko.

20.     Defendants deny the allegations in Paragraph 20 of the Second Amended

Complaint, except admit that Kerr-McGee Worldwide Corporation is a wholly owned subsidiary,

directly or indirectly, of Kerr-McGee.

21.     Defendants deny the allegations in Paragraph 21 of the Second Amended Complaint, except admit that Kerr-McGee Oil & Gas Corporation is a wholly owned subsidiary, directly or indirectly, of Kerr-McGee.

22.     Defendants deny the allegations in Paragraph 22 of the Second Amended Complaint.

23.     Defendants deny the allegations in Paragraph 23 of the Second Amended Complaint.

24.     Defendants deny the allegations in Paragraph 24 of the Second Amended Complaint, except admit that Kerr-McGee Shared Services Company LLC is a wholly owned subsidiary, directly or indirectly, of Kerr-McGee.

25.     Defendants deny the allegations in Paragraph 25 of the Second Amended Complaint, except admit that Kerr-McGee Stored Power Company LLC is a wholly owned subsidiary, directly or indirectly, of Kerr-McGee.

## Background

26.     Defendants deny the allegations in Paragraph 26 of the Second Amended Complaint, except admit that Anderson & Kerr Drilling Company was founded in 1929 near Oklahoma City, Oklahoma, that the company grew its oil and gas exploration activities and drilling operations, and that it moved into downstream operations with the purchase of its first refinery in 1945.

27.     Defendants deny the allegations in Paragraph 27 of the Second Amended Complaint, except admit that (i)  Kerr-McGee Corporation (as it existed at that time) and/or certain of its subsidiaries or affiliates or any of their predecessors expanded in the 1950s into various energy-related businesses; (ii)  Kerr-McGee Corporation (as it existed at that time) and/or certain of its subsidiaries or affiliates or any of their predecessors entered the uranium

industry in 1952 by acquiring mining properties in Arizona; and (iii) at some time in the 1950s

Kerr-McGee Corporation (as it existed at that time) and/or certain of its subsidiaries or affiliates

or any of their predecessors also (a) constructed a uranium processing mill; (b) expanded retail

operations into owning and operating service stations; and (c) expanded the refining operations.

28.      Defendants deny the allegations in Paragraph 28 of the Second Amended

Complaint, except admit that in the 1960s, Kerr-McGee Corporation (as it existed at that time)

and/or certain of its subsidiaries or affiliates or any of their predecessors entered the forestry

business through a series of asset purchases and acquired certain fertilizer-marketing companies.

29.      Defendants deny the allegations in Paragraph 29 of the Second Amended

Complaint, except admit that in 1967, Kerr-McGee Corporation (as it existed at that time) and/or

certain of its subsidiaries or affiliates or any of their predecessors completed a merger with

American Potash Chemical Corporation and began to manufacture and market a variety of

ammonium perchlorate chemicals (such as fertilizers, potash, and sodium chlorate), boron,

titanium dioxide, and manganese and started construction of its first coal mine shaft near Stigler,

Oklahoma.

30.      Defendants deny the allegations in Paragraph 30 of the Second Amended

Complaint, except admit that by the 1970s, Kerr-McGee Corporation (as it existed at that time)

and/or certain of its subsidiaries or affiliates or any of their predecessors were involved in

various aspects of the nuclear industry, including exploration, mining, milling, and/or conversion

of uranium oxide into uranium hexafluoride; pelletizing these materials; and fabrication of fuel

elements.

31.      Defendants deny the allegations in Paragraph 31 of the Second Amended

Complaint, except admit that by the year 2000 (i)  Kerr-McGee Corporation (as it existed at that

time) and/or certain of its subsidiaries or affiliates or any of their predecessors had exited many

historical business operations, and that two of its remaining businesses involved oil and gas

exploration and production, and chemical related operations; (ii) Kerr-McGee Corporation (as it

existed at that time) and/or certain of its subsidiaries or affiliates or any of their predecessors had

discontinued certain operations, and there were certain liabilities associated with these

operations; and (iii) certain liabilities existed related to Kerr-McGee Corporation's (as it existed

at that time) and/or certain of its subsidiaries' or affiliates' or any of their predecessors' historical

business operations that were not related to titanium dioxide and other operations that became

Tronox.

        32.     Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegation in Paragraph 32 of the Second Amended Complaint that

consolidation in the oil and gas industry in the late 1990s increased valuations of exploration and

production companies like Kerr-McGee Corporation (as it existed at that time) and, therefore,

deny the allegation.  Defendants deny the remaining allegations in Paragraph 32 of the Second

Amended Complaint.

        33.     Defendants deny the allegations in Paragraph 33 of the Second Amended

Complaint.

        34.     Defendants deny the allegations in Paragraph 34 of the Second Amended

Complaint.

        35.     Defendants deny the allegations in Paragraph 35 of the Second Amended

Complaint.

        36.     Defendants admit the allegations in Paragraph 36 of the Second Amended

Complaint.

37.    Defendants deny the allegations in Paragraph 37 of the Second Amended Complaint, except admit that the EPA sent a letter to Kerr-McGee Corporation (as it existed at that time) and/or certain of its subsidiaries or affiliates in July 1999 and respectfully refer the Court to that letter for the contents thereof.

38.    Defendants deny the allegations in Paragraph 38 of the Second Amended Complaint, except admit that the EPA sent a letter to Kerr-McGee Corporation (as it existed at that time) and/or certain of its subsidiaries or affiliates on October 18, 1999 and respectfully refer the Court to that letter for the contents thereof.

39.    Defendants deny the allegations in Paragraph 39 of the Second Amended Complaint, except admit that after receiving the July 1999 letter, Kerr-McGee Corporation (as it existed at that time) and/or certain of its subsidiaries or affiliates investigated the circumstances of the Manville site and periodically provided information to the Board of Directors regarding Manville.

40.    Defendants deny the allegations in Paragraph 40 of the Second Amended Complaint, except admit that the United States and New Jersey governmental entities filed a lawsuit against Tronox LLC in 2008 alleging that they had incurred at least $280 million in clean up costs at Manville.

41.    Defendants deny the allegations in Paragraph 41 of the Second Amended Complaint.

42.    Defendants deny the allegations in Paragraph 42 of the Second Amended Complaint.

43.    Defendants deny the allegations in Paragraph 43 of the Second Amended Complaint.

44.      Defendants deny the allegations in Paragraph 44 of the Second Amended Complaint, except admit that (i)  Kerr-McGee Corporation's (as it existed at that time) Board of Directors approved the acquisition of certain titanium dioxide operations of Kemira Oy including plants in Savannah, Georgia and Botlek, Netherlands; (ii) the Savannah acquisition closed effective April 1, 2000; (iii) the Botlek acquisition closed effective May 1, 2000; and (iv) the total acquisition price for these operations was approximately $400 million.

45.      Defendants deny the allegations in Paragraph 45 of the Second Amended Complaint.

46.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46 of the Second Amended Complaint and, therefore, deny those allegations.

47.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Sentence 4 of Paragraph 47 of the Second Amended Complaint and, therefore, deny those allegations.  Defendants deny the remaining allegations in Paragraph 47 of the Second Amended Complaint.

48.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48 of the Second Amended Complaint and, therefore, deny those allegations.

49.      Defendants deny the allegations in Paragraph 49 of the Second Amended Complaint, except admit that Kerr-McGee engaged in a corporate reorganization internally referred to as Project Focus to reorganize Kerr-McGee's and/or certain of its subsidiaries' or affiliates' or any of their predecessors' operations along business segments.

50.    Defendants deny the allegations in Paragraph 50 of the Second Amended

Complaint, except admit that (i) at the March 13, 2001 Board meeting, Luke R. Corbett,

Chairman and Chief Executive Officer of Kerr-McGee Corporation (as it existed at that time),

announced that Kerr-McGee Corporation (as it existed at that time) was reviewing alternatives

for various non-core businesses in the company's portfolio; and (ii) on May 8, 2001,

management for Kerr-McGee Corporation (as it existed at that time) presented the Board with

various strategic alternatives, including:  (a) a leveraged buy out of the chemical business, with

Kerr-McGee Corporation (as it existed at that time) retaining a minority stake; (b) spinning off

either the chemical or the exploration and production business; or (c) a Morris trust transaction

through which a spin-off would be coupled with a merger of the chemical business and a third

party.

51.    Defendants deny the allegations in Paragraph 51 of the Second Amended

Complaint, except admit that a new company, which ultimately became known as Kerr-McGee

Corporation, and a new subsidiary were created on or about May 11, 2001, and that Kerr-McGee

Operating Corporation subsequently became a wholly owned subsidiary of Kerr-McGee.

52.    Defendants deny the allegations in Paragraph 52 of the Second Amended

Complaint, except admit that in 2002 Merrill Lynch provided Anadarko with a pitch book related

to considerations associated with any potential purchase of Kerr-McGee but Defendants lack

knowledge or information sufficient to form a belief about the truth of the allegations regarding

any conclusions that Merrill Lynch might have reached.

53.    Defendants deny the allegations in Paragraph 53 of the Second Amended

Complaint, except admit that (i) in January 2002 Anadarko conducted an initial review of the

publicly available information related to Kerr-McGee; and (ii) Paragraph 53 quotes, in part,

selected statements contained in an email from a former Anadarko employee involved in the

2002 review of Kerr-McGee.

54.      Defendants deny the allegations in Paragraph 54 of the Second Amended

Complaint, except admit that Anadarko conducted an initial review of publicly available

information regarding Kerr-McGee and that Paragraph 54 of the Second Amended Complaint

references selected statements in a document related to such review.

55.      Defendants deny the allegations in Paragraph 55 of the Second Amended

Complaint, except admit that (i) Sentence 1 of Paragraph 55 quotes, in part, a selected portion of

a document; and (ii) Sentence 2 of Paragraph 55 quotes, in part, selected notes to a document.

56.      Defendants deny the allegations in Paragraph 56 of the Second Amended

Complaint.

57.      Defendants deny the allegations in Paragraph 57 of the Second Amended

Complaint, except admit that a unanimous written consent dated December 30, 2002, for Project

Focus was signed by Kerr-McGee Operating Corporation's Board of Directors (of which Luke

R. Corbett was a member) to effectuate certain legitimate internal transactions and restructuring

along business segments.

58.      Defendants deny the allegations in Paragraph 58 of the Second Amended

Complaint, except admit that the Supplemental Bond Indenture provides that substantially all of

Kerr-McGee Operating Corporation's exploration and production assets were transferred to its

parent, Kerr-McGee Worldwide Corporation, and that certain liabilities appropriately were not

transferred into Kerr-McGee Oil & Gas Corporation.

59.       Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Sentence 1 of Paragraph 59 of the Second Amended

Complaint regarding the exact value of the alleged transferred assets, in part, based on Plaintiffs'

failure to identify the specific assets allegedly transferred and, therefore, Defendants deny those

allegations.  Defendants deny the remaining allegations in Paragraph 59 of the Second Amended

Complaint, except admit that the market value of the Devon Energy Corporation shares exceeded

$200 million but further state that this market value does not account for the encumbrances and

payment obligations associated with or owed by the holders of these shares.

     60.     Defendants deny the allegations in Paragraph 60 of the Second Amended

Complaint, except admit that the shares identified therein were transferred from Kerr-McGee

Operating Corporation to one or more subsidiaries of Kerr-McGee.

     61.     Defendants deny the allegations in Paragraph 61 of the Second Amended

Complaint, except admit that an Assignment and Assumption Agreement was drafted, but never

executed, and lack knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 61 of the Second Amended Complaint regarding when drafting of an

Assignment and Assumption Agreement initially began.

     62.     The allegation in Paragraph 62 of the Second Amended Complaint that

"New Kerr-McGee" remained a guarantor amounts to a legal conclusion for which no response

is required.  To the extent a response is required, Defendants deny this allegation.  Defendants

also deny the remaining allegations in Paragraph 62 of the Second Amended Complaint.

     63.     Defendants deny the allegations in Paragraph 63 of the Second Amended

Complaint.

     64.     Defendants deny the allegations in Paragraph 64 of the Second Amended

Complaint, except admit that the recession and SARS may have impacted demand and pricing

for pigment at certain time periods.

65.     Defendants deny the allegations in Paragraph 65 of the Second Amended Complaint.

66.     Defendants deny the allegations in Paragraph 66 of the Second Amended Complaint, except aver that it was determined in 2005 that the market conditions were favorable to either sell or spin off Kerr-McGee Chemical Worldwide LLC.

67.      Defendants deny the allegations in Paragraph 67 of the Second Amended Complaint, except admit that on or about February 23, 2005, Kerr-McGee announced that it had hired an investment bank to consider strategic alternatives for the chemical business and that the Board of Directors would consider the issue at its March 8, 2005 meeting.

68.     Defendants deny the allegations in Paragraph 68 of the Second Amended Complaint, except admit that on March 8, 2005, the Kerr-McGee Board of Directors authorized Kerr-McGee to analyze the separation of the chemical business through either a sale or spin-off and respectfully refer the Court to the press release and letter cited therein for the contents of those documents.

69.     Defendants deny the allegations in Paragraph 69 of the Second Amended Complaint, except admit that (i) one individual stated, in part, that the chemical business is cyclical and therefore will undergo a downturn at some point; (ii) the management presentation prepared by Lehman Brothers included multiple slides regarding the various liabilities; and (iii) at least one slide in a version of the presentation specifically referenced the wood treatment facilities, including Manville.

70.     Defendants deny the allegations in Paragraph 70 of the Second Amended Complaint, except admit that in April 2005 the EPA sent a letter to Kerr-McGee and Kerr-

McGee Chemical LLC containing a demand for $178.8 million in connection with the Manville

site, and aver that such demand was fully and properly disclosed by Kerr-McGee.

71.    Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 71 of the Second Amended Complaint and,

therefore, deny those allegations, except admit that certain potential purchasers inquired about,

and conducted due diligence regarding, certain liabilities.

72.    Defendants deny the allegations in Paragraph 72 of the Second Amended

Complaint, except admit that certain potential purchasers expressed interest in acquiring Kerr-

McGee Chemical Worldwide LLC without certain liabilities, and that one potential purchaser,

prior to conducting substantive due diligence, indicated it would offer $300 million to $1.2

billion for Kerr-McGee Chemical Worldwide LLC depending on the assumption of certain

liabilities.

73.    Defendants deny the allegations in Paragraph 73 of the Second Amended

Complaint.

74.    Defendants deny the allegations in Paragraph 74 of the Second Amended

Complaint, except admit that in April 2005 a draft assignment and assumption agreement was

emailed that did not include a section heading titled indemnification.

75.    Defendants deny the allegations in Paragraph 75 of the Second Amended

Complaint, except admit that Tronox Worldwide LLC potentially could seek, but would not be

entitled to, contribution from Kerr-McGee for certain liabilities.

76.    Defendants deny the allegations in Paragraph 76 of the Second Amended

Complaint. `

77.     Defendants deny the allegations in Paragraph 77 of the Second Amended Complaint, except admit that a version of an Assignment, Assumption and Indemnity Agreement was distributed after receipt of an EPA demand letter regarding Manville.

78.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 78 of the Second Amended Complaint regarding the exact date of the execution of the Assignment, Assumption and Indemnity Agreement and, therefore, deny those allegations.  Defendants also deny the remaining allegations in Paragraph 78 of the Second Amended Complaint, except admit that in 2005 Kerr-McGee Chemical Worldwide LLC and Kerr-McGee Oil & Gas Corporation executed an Assignment, Assumption and Indemnity Agreement that is dated as of December 31, 2002.

79.     Defendants deny the allegations in Paragraph 79 of the Second Amended Complaint.

80.     Defendants deny the allegations in Paragraph 80 of the Second Amended Complaint.

81.     Defendants deny the allegations in Paragraph 81 of the Second Amended Complaint, except admit that Kerr-McGee Chemical Worldwide LLC and Kerr-McGee Oil & Gas Corporation executed an Assignment Agreement dated as of December 31, 2002, and respectfully refer the Court to the Assignment Agreement for the terms thereof.

82.     Defendants deny the allegations in Paragraph 82 of the Second Amended Complaint, except admit that in 2005 Kerr-McGee Chemical Worldwide LLC and Kerr-McGee Oil & Gas Corporation signed an Assignment Agreement dated effective as of December 31, 2002.

83.      Defendants deny the allegations in Paragraph 83 of the Second Amended Complaint.

84.      Defendants deny the allegations in Paragraph 84 of the Second Amended Complaint, except admit that Kerr-McGee had extensive negotiations in 2005 with Apollo Management, L.P. ("Apollo") regarding the purchase of Kerr-McGee Chemical Worldwide LLC.

85.      Defendants deny the allegations in Paragraph 85 of the Second Amended Complaint, except admit that in August 2005, a proposed purchase and sale agreement was drafted, but never executed by Defendants, whereby Apollo would have received an indemnity that was capped at approximately $400 million for certain liabilities, including the wood treatment facilities.

86.      Defendants deny the allegations in Paragraph 86 of the Second Amended Complaint, except admit that a final agreement with Apollo was never consummated and, thereafter, Tronox was properly spun off.

87.      Defendants deny the allegations in Paragraph 87 of the Second Amended Complaint, except admit that Kerr-McGee concurrently considered an IPO and share distribution or sale of the business held by Kerr-McGee Chemical Worldwide LLC.

88.      Defendants deny the allegations in Paragraph 88 of the Second Amended Complaint, except admit that Lehman Brothers made presentations in July 2005 comparing the Apollo bid with a potential spin-off, and aver that at least one Lehman Brothers' presentation indicated that while the Apollo sale could result in receipt of after-tax cash proceeds of approximately $500 million more than the after-tax cash proceeds of the potential spin-off, the potential spin-off would generate a greater after-tax value to shareholders.

89.     Defendants deny the allegations in Paragraph 89 of the Second Amended Complaint, except admit that Apollo attempted to reduce its offer by making the allegations referenced in Paragraph 89 of the Second Amended Complaint.

90.     Defendants deny the allegations in Paragraph 90 of the Second Amended Complaint.

91.     Defendants deny the allegations in Paragraph 91 of the Second Amended Complaint.

92.     Defendants deny the allegations in Paragraph 92 of the Second Amended Complaint, except admit that on September 12, 2005, an Amended and Restated Certificate of Incorporation was filed with the Delaware Secretary of State changing the name of "New-Co Chemical, Inc." to "Tronox Incorporated."

93.     Defendants deny the allegations in Paragraph 93 of the Second Amended Complaint, except admit that the parties were working on the Master Separation Agreement ("MSA") and ancillary agreements in or around September 2005, and that the chemical business was represented by its own business personnel and legal counsel in connection with the separation from Kerr-McGee.

94.     Defendants deny the allegations in Paragraph 94 of the Second Amended Complaint, except admit that Kerr-McGee's Board of Directors approved proceeding with an IPO of Tronox Inc. and, thereafter, there was a stock distribution to Kerr-McGee's shareholders.

95.     Defendants deny the allegations in Paragraph 95 of the Second Amended Complaint, except admit that in a Lehman Brothers document it was noted that the separation of legacy liabilities could be complicated under a bankruptcy scenario.

96.    Defendants deny the allegations in Paragraph 96 of the Second Amended Complaint, except admit that Kerr-McGee agreed to reimburse Tronox Inc. for 50 percent of qualifying environmental costs up to a total of $100 million for seven years from the effective date of the MSA.

97.    Defendants deny the allegations in Paragraph 97 of the Second Amended Complaint, except admit that Tronox Inc. and/or its subsidiaries incurred $550 million in debt in connection with its acquisition of Tronox Worldwide LLC, and at certain times has incurred interest on its debts in excess of $30 million annually.

98.    Defendants deny the allegations in Paragraph 98 of the Second Amended Complaint, except admit that Tronox Inc. and/or its subsidiaries retained approximately $40 million in cash after the IPO and aver that they were adequately capitalized.

99.    Defendants deny the allegations in Paragraph 99 of the Second Amended Complaint, except admit that there are certain indemnification obligations between and among Tronox Inc. and/or certain of its subsidiaries and Kerr-McGee and/or certain of its subsidiaries.

100.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Sentences 2 and 3 of Paragraph 100 of the Second Amended Complaint and, therefore, deny those allegations.  Defendants deny the remaining allegations in Paragraph 100 of the Second Amended Complaint.

101.    Defendants deny the allegations in Paragraph 101 of the Second Amended Complaint, except admit that certain members of Tronox's management team participated in a November 2005 road show to make presentations to potential investors in connection with the IPO, and that Kerr-McGee and Lehman Brothers were involved in preparing those presentations.

102.    Defendants deny the allegations in Paragraph 102 of the Second Amended

Complaint, except admit that a Lehman Brothers banker drew a diagram of a pot containing a

flower and a weed on more than one occasion and aver that the allegation in Paragraph 102 of

the Second Amended Complaint related to the "conclusion" regarding the purpose or meaning of

the drawing is false.

103.    Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 103 of the Second Amended Complaint and,

therefore, deny those allegations.

104.    Defendants deny the allegations in Paragraph 104 of the Second Amended

Complaint.

105.    Defendants deny the allegations in Paragraph 105 of the Second Amended

Complaint, except admit that it reasonably was anticipated that Tronox would be able to realize

approximately $150 million in cash following the spin-off through the sale of land in Nevada,

and that this sale contract eventually was terminated.

106.    Defendants deny the allegations in Paragraph 106 of the Second Amended

Complaint.

107.    Defendants deny the allegations in Paragraph 107 of the Second Amended

Complaint, except admit that Kerr-McGee Corporation (as it existed at that time) and/or certain

of its affiliates and subsidiaries investigated additional wood treatment sites in addition to

Manville.

108.    Defendants deny the allegations in Paragraph 108 of the Second Amended

Complaint.

109.    Defendants deny the allegations in Paragraph 109 of the Second Amended Complaint.

110.    Defendants deny the allegations in Paragraph 110 of the Second Amended Complaint, except admit that Akin Gump Strauss Hauer & Feld LLP was counsel for the Underwriters for the IPO and commented on and approved the disclosures in the Registration Statement.

111.    Defendants deny the allegations in Paragraph 111 of the Second Amended Complaint, except admit that Plaintiffs attempt to quote a portion of the Registration Statement.

112.    Defendants deny the allegations in Paragraph 112 of the Second Amended Complaint, except admit that it quotes portions of the Registration Statement and respectfully refer the Court to the Registration Statement for the terms thereof.

113.    Defendants deny the allegations in Paragraph 113 of the Second Amended Complaint, except admit that Apollo engaged Morgan Lewis & Bockius to conduct certain due diligence.

114.    Defendants deny the allegations in Paragraph 114 of the Second Amended Complaint, except admit that Tronox LLC entered settlement agreements for certain claims relating to wood treatment and that Ernst & Young discussed certain disclosures in the Registration Statement.

115.    Defendants deny the allegations in Paragraph 115 of the Second Amended Complaint, except admit that Paragraph 115 quotes, in part, statements contained in a November 2006 email from a former Anadarko employee.

116.    Defendants deny the allegations in Paragraph 116 of the Second Amended Complaint.

117.    Defendants deny the allegations in Paragraph 117 of the Second Amended

Complaint, except admit that in connection with the spin-off, Kerr-McGee and/or certain of its

subsidiaries and Tronox Inc. and/or certain of its subsidiaries entered into:  (a) a Master

Separation Agreement; (b) a Registration Rights Agreement; (c) a Transitional License

Agreement; (d) a Tax Sharing Agreement; (e) an Employee Benefits Agreement; and (f) a

Transition Services Agreement.

118.    Defendants deny the allegations in Paragraph 118 of the Second Amended

Complaint, except admit that (i) as provided in the Master Separation Agreement, on

November 28, 2005, among other things, Kerr-McGee Worldwide Corporation transferred its

interest in Kerr-McGee Chemical Worldwide LLC to Tronox Inc. and agreed to reimburse

Tronox Inc. for certain environmental costs up to a total of $100 million; (ii) certain

intercompany debt was eliminated; (iii) Kerr-McGee owned 22,889,431 shares of Class B

Common Stock in Tronox Inc.; (iv) Kerr-McGee received approximately $787.8 million

consisting of:  (a) $224.7 million in proceeds from the IPO of Tronox Inc.'s Class A Common

Stock; (b) $537.1 million in proceeds from the $550 million in debt Tronox incurred in

connection with the spin-off; and (c) approximately $26 million in cash which was the excess

cash Tronox Inc. had on hand above $40 million at the time of the IPO; and (v) certain

indemnities were provided to and by Tronox Inc.

119.    Defendants deny the allegations in Paragraph 119 of the Second Amended

Complaint, except admit that in connection with the MSA, Tronox Inc. agreed to sponsor certain

employee benefit plans, including a defined benefit plan and retiree medical and life insurance

plans, for certain employees and/or retirees, including employees and/or retirees involved in the

chemical, refining, coal, nuclear, and offshore contract drilling business units.

120.    Defendants deny the allegations in Paragraph 120 of the Second Amended Complaint, except admit that (i) Tronox Inc. completed the IPO of its Class A Common Stock on November 28, 2005; (ii) Kerr-McGee owned a majority voting interest in Tronox Inc. until March 30, 2006; and (iii) certain officers of Kerr-McGee served on Tronox Inc.'s Board of Directors, including serving as the Chairman of Tronox Inc.'s Board, for a period after the IPO.

121.    The allegations in Sentences 1, 2, and 3 of Paragraph 121 of the Second Amended Complaint amount to legal conclusions for which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding the reasons the closings did not occur at various times and, therefore, deny those allegations.  Defendants also deny the remaining allegations in Paragraph 121 of the Second Amended Complaint, except admit that (i) it was anticipated that Tronox would be able to realize approximately $150 million in cash following the spin-off through the sale of land in Nevada; (ii) sales of portions of the land initially had estimated closing dates of July, October, and November 2005 but did not close on those dates; and (iii) this sale contract eventually was terminated by Centex in January 2007.

122.    Defendants deny the allegations in Paragraph 122 of the Second Amended Complaint, except admit that (i) on March 8, 2006 the Board of Directors of Kerr-McGee approved the distribution of shares of Tronox Inc. Class B Common Stock to the shareholders of Kerr-McGee; (ii) after the distribution, Kerr-McGee no longer held any interest in Tronox Inc.; and (iii) pursuant to the terms of the November 28, 2005 Employee Benefits Agreement, certain assets and liabilities held in the Kerr-McGee Retirement Plan and Trust were transferred to the Tronox Inc. Retirement Plan and Trust effective as of the Distribution Date.

123.    Defendants deny the allegations in Paragraph 123 of the Second Amended
Complaint, except admit that Kerr-McGee distributed its shares of Tronox Inc.'s Class B
Common Stock to its shareholders through a dividend of such securities on March 30, 2006.

124.    Defendants deny the allegations in Paragraph 124 of the Second Amended
Complaint, except admit that as of April 1, 2006, Kerr-McGee had distributed its shares of
Tronox Inc.'s Class B Common Stock to its shareholders.

125.    Defendants deny the allegations in Paragraph 125 of the Second Amended
Complaint.

126.    Defendants deny the allegations in Paragraph 126 of the Second Amended
Complaint, except admit that in connection with the MSA, and in consideration of assets
transferred, Kerr-McGee Worldwide Corporation received approximately $785 million, and that
the MSA provided for certain mutual indemnities and/or reimbursement rights and obligations.

127.    Defendants lack knowledge or information sufficient to form a belief
about the truth of the allegations in Paragraph 127 of the Second Amended Complaint regarding
the specific amount Tronox has allegedly spent on "Legacy Liabilities" since November 28,
2005 and, therefore, deny those allegations.  Defendants deny the remaining allegations in
Paragraph 127 of the Second Amended Complaint, except admit that (i) in connection with the
MSA, Kerr-McGee Worldwide Corporation transferred its interest in Tronox Worldwide LLC to
Tronox Inc.; (ii) the net intercompany debt was converted into equity in Tronox Inc.; (iii) Tronox
Inc. received a right to be reimbursed for up to $100 million of certain environmental costs; (iv)
Tronox Inc. has been paid approximately $4 million pursuant to the MSA reimbursement
provision; and (v) the reimbursement obligation set forth in the MSA, which has been rejected by
the Tronox Debtors, was to expire by its terms in November 2012.

128.    Defendants deny the allegations in Paragraph 128 of the Second Amended

Complaint.

129.    Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 129 of the Second Amended Complaint regarding

the conclusions allegedly reached by the unnamed individuals referenced in Paragraph 129 of the

Second Amended Complaint and, therefore, deny those allegations.  Defendants deny the

remaining allegations in Paragraph 129 of the Second Amended Complaint.

130.    Defendants deny the allegations in Paragraph 130 of the Second Amended

Complaint, except admit that on June 22, 2006, Anadarko and Kerr-McGee entered into a merger

agreement pursuant to which Anadarko would acquire 100 percent of the outstanding stock of

Kerr-McGee for approximately $70.50/share in cash, and that this represented approximately a

40 percent premium to Kerr-McGee's share price as of the last trading day preceding the

acquisition announcement.

131.    Defendants deny the allegations in Paragraph 131 of the Second Amended

Complaint, except admit that Kerr-McGee's shareholders voted to approve the offer on August

10, 2006 and, thereafter, Kerr-McGee became a wholly owned subsidiary of Anadarko.

132.    Defendants deny the allegations in Paragraph 132 of the Second Amended

Complaint, except admit that (i) Luke R. Corbett served as Kerr-McGee's Chairman and Chief

Executive Officer prior to the acquisition; (ii) Robert M. Wohleber served as Kerr-McGee's

Chief Financial Officer prior to the acquisition, as well as the Chairman of the Board of Tronox

Inc. for a certain period of time after the IPO; and (iii) Gregory F. Pilcher served as Kerr-

McGee's General Counsel prior to the acquisition.

133.    Defendants deny the allegations in Paragraph 133 of the Second Amended Complaint, except admit that certain indemnities were provided to Kerr-McGee's officers and directors for acts and omissions occurring prior to the effective time of the Anadarko acquisition.

134.    Defendants deny the allegations in Paragraph 134 of the Second Amended Complaint, except admit that (i) Plaintiffs quote, in part, statements contained in a December 2006 email from a former Anadarko employee regarding the Manville site; and (ii) Plaintiffs quote, in part, language from Anadarko's 2006 and 2007 Annual Reports.

135.    Defendants deny the allegations in Paragraph 135 of the Second Amended Complaint, except admit that Plaintiffs quote, in part, language from Anadarko's 2008 Annual Report and respectfully refer the Court to the Annual Report for the terms thereof.

136.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Sentences 2 and 3 of Paragraph 136 of the Second Amended Complaint and, therefore, deny those allegations.  Defendants deny the remaining allegations in Paragraph 130 of the Second Amended Complaint.

137.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 137 of the Second Amended Complaint and, therefore, deny those allegations.

138.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 138 of the Second Amended Complaint regarding Tronox's liquidity and efforts in general to obtain debtor-in-possession ("DIP") financing and, therefore, deny those allegations.  Defendants deny the remaining allegations in Paragraph 138 of the Second Amended Complaint, except admit that Anadarko is not primarily in the business

of lending money and that in 2008 Tronox contacted Anadarko to inquire as to whether

Anadarko would consider providing DIP financing to Tronox.

139.    Defendants deny the allegations in Paragraph 139 of the Second Amended

Complaint, except admit that Anadarko was willing to consider potentially providing DIP

financing to Tronox.

140.    Defendants deny the allegations in Paragraph 140 of the Second Amended

Complaint, except admit that Lehman Brothers noted that the separation of legacy liabilities

could be complicated under a bankruptcy scenario.

### Claims for Relief

### COUNT I
### Actual Fraudulent Transfer

141.    Defendants incorporate by reference all responses contained in the

foregoing paragraphs as if set forth fully herein.

142.    Defendants deny the allegations in Paragraph 142 of the Second Amended

Complaint.

143.    Defendants deny the allegations in Paragraph 143 of the Second Amended

Complaint.

144.    Defendants deny the allegations in Paragraph 144 of the Second Amended

Complaint, except admit that Kerr-McGee was either the direct or indirect parent of the Tronox

entities at the time of the IPO.

145.    Defendants deny the allegations in Paragraph 145 of the Second Amended

Complaint.

146.    Defendants deny the allegations in Paragraph 146 of the Second Amended

Complaint.

147.    Defendants deny the allegations in Paragraph 147 of the Second Amended Complaint.

148.    Defendants deny the allegations in Paragraph 148 of the Second Amended Complaint.

149.    Defendants deny the allegations in Paragraph 149 of the Second Amended Complaint.

**COUNT II**
**Constructive Fraudulent Transfer**

150.    Defendants incorporate by reference all responses contained in the foregoing paragraphs as if set forth fully herein.

151.    Defendants deny the allegations in Paragraph 151 of the Second Amended Complaint.

152.    Defendants deny the allegations in Paragraph 152 of the Second Amended Complaint.

153.    Defendants deny the allegations in Paragraph 153 of the Second Amended Complaint, except admit that Kerr-McGee was either the direct or indirect parent of the Tronox entities at the time of the IPO.

154.    Defendants deny the allegations in Paragraph 154 of the Second Amended Complaint.

155.    Defendants deny the allegations in Paragraph 155 of the Second Amended Complaint.

156.    Defendants deny the allegations in Paragraph 156 of the Second Amended Complaint.

157.    Defendants deny the allegations in Paragraph 157 of the Second Amended Complaint.

158.    Defendants deny the allegations in Paragraph 158 of the Second Amended Complaint.

159.    Defendants deny the allegations in Paragraph 159 of the Second Amended Complaint.

160.    Defendants deny the allegations in Paragraph 160 of the Second Amended Complaint.

**COUNT III**
**Constructive Fraudulent Transfer**

161.    Defendants incorporate by reference all responses contained in the foregoing paragraphs as if set forth fully herein.

162.    Defendants deny the allegations in Paragraph 162 of the Second Amended Complaint.

163.    Defendants deny the allegations in Paragraph 163 of the Second Amended Complaint.

164.    Defendants deny the allegations in Paragraph 164 of the Second Amended Complaint.

165.    Defendants deny the allegations in Paragraph 165 of the Second Amended Complaint.

166.    Defendants deny the allegations in Paragraph 166 of the Second Amended Complaint.

167.    Defendants deny the allegations in Paragraph 167 of the Second Amended Complaint.

168.    Defendants deny the allegations in Paragraph 168 of the Second Amended Complaint.

## COUNT IV
## Breach of Fiduciary Duty

169.    Defendants incorporate by reference all responses contained in the foregoing paragraphs as if set forth fully herein.

170.    Defendants deny the allegations in Paragraph 170 of the Second Amended Complaint.

171.    Defendants deny the allegations in Paragraph 171 of the Second Amended Complaint, except admit that Kerr-McGee owned a majority voting interest in Tronox Inc. until March 30, 2006 and that certain Kerr-McGee officers served on Tronox Inc.'s Board of Directors, including serving as the Chairman of Tronox Inc.'s Board of Directors, for a period after the IPO.

172.    Defendants deny the allegations in Paragraph 172 of the Second Amended Complaint, except admit that on March 8, 2006, Kerr-McGee's Board of Directors approved the distribution of shares of Tronox Inc. Class B Common Stock to the shareholders of Kerr-McGee.

173.    Defendants deny the allegations in Paragraph 173 of the Second Amended Complaint.

174.    Defendants deny the allegations in Paragraph 174 of the Second Amended Complaint.

175.    Defendants deny the allegations in Paragraph 175 of the Second Amended Complaint.

176.    The allegation in Sentence 1 of Paragraph 176 of the Second Amended Complaint amounts to a legal conclusion for which no response is required.  To the extent a

response is required, Defendants deny the allegation.  Defendants deny the remaining allegations in Paragraph 176 of the Second Amended Complaint, except admit that "New-Co Chemical, Inc." was incorporated on May 17, 2005 by the filing of a Certificate of Incorporation with the Secretary of State of the State of Delaware; and on September 12, 2005, an Amended and Restated Certificate of Incorporation was filed with the Delaware Secretary of State changing the name of "New-Co Chemical, Inc." to "Tronox Incorporated."

177.    Defendants deny the allegations in Paragraph 177 of the Second Amended Complaint, except admit that Kerr-McGee distributed Tronox Inc.'s Class B Common Stock to existing Kerr-McGee shareholders on March 30, 2006.

178.    Defendants deny the allegations in Paragraph 178 of the Second Amended Complaint.

179.    Defendants deny the allegations in Paragraph 179 of the Second Amended Complaint.

180.    Defendants deny the allegations in Paragraph 180 of the Second Amended Complaint.

181.    Defendants deny the allegations in Paragraph 181 of the Second Amended Complaint.

182.    The allegations in Sentence 1 of Paragraph 182 of the Second Amended Complaint amount to a legal conclusion for which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 182 of the Second Amended Complaint.

183.    The allegations in Sentences 1 and 4 of Paragraph 183 of the Second Amended Complaint amount to a legal conclusion for which no response is required.  To the

extent a response is required, Defendants deny those allegations.  Defendants deny the remaining

allegations in Paragraph 183 of the Second Amended Complaint.

184.    Defendants deny the allegations in Paragraph 184 of the Second Amended

Complaint, except admit that Plaintiffs seek, but are not entitled to recover, damages against

Defendants.

**COUNT V**
**Civil Conspiracy**

185.    Defendants incorporate by reference all responses contained in the

foregoing paragraphs as if set forth fully herein.

186.    Count V was dismissed and, therefore, no answer is required.

187.    Count V was dismissed and, therefore, no answer is required.

188.    Count V was dismissed and, therefore, no answer is required.

189.    Count V was dismissed and, therefore, no answer is required.

190.    Count V was dismissed and, therefore, no answer is required.

191.    Count V was dismissed and, therefore, no answer is required.

192.    Count V was dismissed and, therefore, no answer is required.

193.    Count V was dismissed and, therefore, no answer is required.

194.    Count V was dismissed and, therefore, no answer is required.

195.    Count V was dismissed and, therefore, no answer is required.

196.    Count V was dismissed and, therefore, no answer is required.

197.    Count V was dismissed and, therefore, no answer is required.

**COUNT VI**
**Aiding And Abetting Breach of Fiduciary Duty**

198.    Defendants incorporate by reference all responses contained in the

foregoing paragraphs as if set forth fully herein.

199.    Count VI was dismissed and, therefore, no answer is required.

200.    Count VI was dismissed and, therefore, no answer is required.

201.    Count VI was dismissed and, therefore, no answer is required.

202.    Count VI was dismissed and, therefore, no answer is required.

203.    Count VI was dismissed and, therefore, no answer is required.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses and reserve the right to amend this Answer to assert other and further defenses when and if, in the course of their investigation, discovery, or preparation for trial it becomes appropriate.    By designating these matters "defenses," Defendants do not intend to suggest either that Plaintiffs do not bear the burden of proof as to such matters or that such matters are not elements of Plaintiffs' *prima facie* case against Defendants.

1.    The Second Amended Complaint fails to state a claim upon which relief can be granted.

2.    Plaintiffs lack standing to assert certain claims in the Second Amended Complaint.

3.    Plaintiffs' claims are barred, in whole or in part, by the statute of limitations or repose.

4.    Plaintiffs' claims are barred, in whole or in part, by the business judgment rule.

5.    Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, release, and/or laches.

6.    Plaintiffs' claims are barred, in whole or in part, because Defendants took any property transferred in good faith and for value, and Defendants may retain any interest

transferred or may enforce any obligation incurred, as the case may be, to the extent that

Defendants gave value to the Debtors in exchange for the transfer.

7.      Any recovery against Defendants is limited by the single satisfaction rule

in 11 U.S.C. §550(d) and any attempt recover twice against Defendants is prohibited.

8.      Plaintiffs' claims are barred, in whole or in part, by the doctrines of accord

and satisfaction and/or payment.

9.      Plaintiffs' claims are barred, in whole or part, because Defendants took for

value, in good faith, and without knowledge of the voidability of the transfer avoided.

10.     Plaintiffs' claims are barred, in whole or in part, by the doctrines of

unclean hands and *in pari delicto*.

11.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of

ratification.

12.     Plaintiffs' claims are barred, in whole or in part, to the extent that any of

the alleged transfer(s) were authorized by law or court order and/or res judicata.

13.     Plaintiffs' claims are barred, in whole or in part, based on the doctrine of

subsequent intervening cause.

14.     Any transfer to Defendants from the Debtors was in exchange for

reasonably equivalent value.

15.     Defendants assert all rights of recoupment, recovery, and setoff, including,

but not limited to, claims under Bankruptcy Code Sections 550(e) and 502(h) and as set forth in

Tronox's First Amended Joint Plan of Reorganization [Dkt. No. 1947] (as amended, modified, or

supplemented, the "Plan"), the Order confirming the Plan [Dkt. No. 2567], and the Stipulated

Order Resolving the Rejection Damages Claims of Anadarko and Kerr-McGee and Related Relief [Dkt. No. 2748].

16.    Plaintiffs' claims are barred, in whole or part, to the extent their alleged injuries were not caused, actually or proximately, or contributed to by any acts on the part of the Defendants.

17.    To the extent Plaintiffs seek equitable subordination or equitable disallowance of the Defendants' claims to the other creditors, such other creditors have not suffered injury by virtue of the Defendants' alleged conduct.

18.    Plaintiffs' claims are barred, in whole or part, to the extent the alleged transfers were not made to or on behalf of the Defendants.

19.    Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' own comparative or contributory fault, negligence, or wrongdoing.

20.    Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate their damages, if any.

21.    Plaintiffs' claims are barred, in whole or in part, by the single entity defense.

22.    Plaintiffs' claims are barred, in whole or part, because Defendants at all times acted in good faith and with reasonable care and diligence and lacked scienter.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that the Court dismiss Plaintiffs'

claims against them; enter a judgment that Plaintiffs take nothing; award costs, disbursements,

and attorneys' fees to Defendants; and grant Defendants all such other and further relief, whether

in law or equity, to which they are entitled and that the Court deems just and proper.

Houston, Texas
Dated: June 10, 2011


Richard A. Rothman (RR 0507)
Bruce S. Meyer (BM 3506)
Lori L. Pines (LP 3005)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Thomas R. Lotterman (*admitted pro hac vice*)
Duke K. McCall, III (*admitted pro hac vice*)
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006
Telephone: (202) 373-6000
Facsimile: (202) 373-6001

  */s/ Melanie Gray*
Melanie Gray (*admitted pro hac vice*)
Lydia Protopapas (LP 8089)
Jason W. Billeck (*admitted pro hac vice*)
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

James J. Dragna (*admitted pro hac vice*)
Bingham McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071
Telephone: (213) 680-6400
Facsimile: (213) 680-6499


*Counsel to Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Defendants' Answer to Plaintiffs' Second Amended Adversary Complaint** was served on the following counsel of record on June 10, 2011, as indicated below:

***Via email jonathan.henes@kirkland.com***
Jonathan S. Henes
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022

***Via email jeffrey.zeiger@kirkland.com***
Jeffrey J. Zeiger
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654

***Via email susan.golden@usdoj.gov***
Susan D. Golden
OFFICE OF THE UNITED STATES TRUSTEE
33 Whitehall Street
New York, New York 10004

***Via email joseph.pantoja@usdoj.gov
and robert.yalen@usdoj.gov***
Joseph Pantoja
Robert Yalen
Assistant U.S. Attorney
SOUTHERN DISTRICT OF NEW YORK
86 Chambers Street
New York, New York 10007

Houston, Texas
Dated: June 10, 2011

*/s/ Melanie Gray*
Melanie Gray