**Objection Deadline: September 30, 2011**
**Hearing Date: To Be Determined**

KIRKLAND & ELLIS LLP
David J. Zott, P.C. *(admitted pro hac vice)*
Jeffrey J. Zeiger *(admitted pro hac vice)*
300 North LaSalle
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel for the Anadarko Litigation Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| TRONOX INCORPORATED, *et al.*, | ) Case No. 09-10156 (ALG) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |
| | ) |
| TRONOX INCORPORATED, | ) |
| TRONOX WORLDWIDE LLC | ) |
| f/k/a Kerr-McGee Chemical Worldwide LLC, | ) |
| and TRONOX LLC f/k/a Kerr-McGee | ) |
| Chemical LLC, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adversary Proceeding No. 09-01198 (ALG) |
| | ) |
| ANADARKO PETROLEUM | ) |
| CORPORATION *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

THE UNITED STATES OF AMERICA,                  )
                                               )
              Plaintiff-Intervenor,            )
                                               )
       v.                                      )
                                               )
TRONOX, INC.,                                  )
TRONOX WORLDWIDE LLC,                           )
TRONOX LLC,                                     )
KERR-MCGEE CORPORATION, and                     )
ANADARKO PETROLEUM                             )
CORPORATION,                                   )
                                               )
              Defendants.                      )
                                               )

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING PLAINTIFF'S RECOVERY
UNDER SECTION 550(a) OF THE BANKRUPTCY CODE**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

BACKGROUND ............................................................................................... 2

I.  Tronox's Global Settlement. ....................................................................... 2

II. Defendants' Motion To Bifurcate. ............................................................... 5

ARGUMENT ................................................................................................... 6

I.  Section 550 Does Not Cap Plaintiff's Recovery On Fraudulent Transfer Claims. ........... 6

II. Section 550's Requirement That A Recovery Must Be For The "Benefit Of
The Estate" Is Easily Satisfied Here. ............................................................ 13

III. Defendants' Damages "Cap" Theory Is Directly Contrary To Tronox's Confirmed
Plan And To Core Bankruptcy Principles. ........................................................ 16

    A.  The Allowed Amount Of The Environmental And Tort Claims Already
Has Been Agreed To, Set By The Plan, And Transferred To Creditors. ............... 17

    B.  Defendants' Cap Would Deprive The Environmental And Tort Creditors
Of The Benefit Of Their Bargain. ........................................................... 19

    C.  The Consideration Received By The Environmental And Tort Creditors
Must Be Measured At The Time Of Confirmation. ......................................... 20

    D.  Defendants' Arguments, Even If Correct, Would Not Justify A Reduction
In The Litigation Recovery. ................................................................... 22

IV. Defendants' Damage "Cap" Argument Has Important Implications Beyond
This Case. ............................................................................................. 22

CONCLUSION ............................................................................................... 24

i

# TABLE OF AUTHORITIES

**Cases**

*Adelphia Recovery Trust v. Bank of America,*
    390 B.R. 80 (S.D.N.Y. 2008) ................................................................ 10, 11

*In re 400 Madison Avenue Ltd. Partnership,*
    213 B.R. 888 (Bankr. S.D.N.Y. 1997) ............................................................ 12

*In re Acequia, Inc.,*
    34 F.3d 800 (9th Cir. 1994) ............................................................ passim

*In re Best Products,*
    168 B.R. 35 (Bankr. S.D.N.Y. 1994) ............................................................ 11

*In re Calpine Corp.,*
    377 B.R. 808 (Bankr. S.D.N.Y. 2007) ............................................................ 13

*In re Centennial Indus.,*
    12 B.R. 99 (Bankr. S.D.N.Y. 1981) ............................................................ 13

*In re Coleman,*
    426 F.3d 719 (4th Cir. 2005) ............................................................ 13

*In re DLC, Ltd.,*
    295 B.R. 593 (B.A.P. 8th Cir. 2003) ............................................................ 8, 12

*In re FBN Food Services, Inc.,*
    1995 WL 230958 (N.D. Ill. Apr. 17, 1995) ............................................................ 9

*In re Murphy,*
    331 B.R. 107 (Bankr. S.D.N.Y. 2005) ............................................................ 11, 12

*In re P.A. Bergner & Co.,*
    140 F.3d 1111 (7th Cir. 1998) ............................................................ 8, 13

*In re Pardee,*
    218 B.R. 916 (9th Cir. B.A.P. 1998) ............................................................ 17

*In re Prince,*
    85 F.3d 314 (7th Cir. 1996) ............................................................ 21

*In re Serrato,*
    214 B.R. 219 (Bankr. N.D. Cal. 1997) ............................................................ 7

*In re Sheffield Steel Corp.,*
    320 B.R. 423 (Bankr. N.D. Okla. 2004) ............................................................ 10, 16

<u>Page(s)</u>

*In re Southern Indus. Banking Corp.*,
    59 B.R. 638 (Bankr. E.D. Tenn. 1986) ....................................................... 13

*In re Transworld Airlines*,
    163 B.R. 964 (D. Del. 1994) ........................................................................ 14

*Kipperman v. Onex Corp.*,
    411 B.R. 805 (N.D. Ga. 2009) .............................................................. passim

*Kuhne v. Cohen & Slamowitz, LLP*,
    579 F.3d 189 (2d Cir. 2009) ......................................................................... 6

*MC Asset Recovery, LLC v. Southern Co.*,
    2006 WL 5112612 (N.D. Ga. Dec. 11, 2006) ....................................... passim

*Mellon Bank, N.A. v. Dick Corp.*,
    351 F.3d 290 (7th Cir. 2003) ........................................................ 14, 15, 16

*Moore v. Bay*,
    284 U.S. 4 (1931) ....................................................................................... 12

*SCR Joint Venture L.P. v. Warshawsky*,
    559 F.3d 133 (2d Cir. 2009) ......................................................................... 6

*Stalnaker v. DLC, Ltd.*,
    376 F.3d 819 (8th Cir. 2004) ....................................................... 8, 12, 13, 22

*United States v. Lucien*,
    347 F.3d 45 (2d Cir. 2003) ........................................................................... 6

**Statutes**

11 U.S.C. § 1129(a)(9)(A) ...................................................................................... 3

11 U.S.C. § 502 ..................................................................................................... 17

11 U.S.C. § 541(a)(1) ............................................................................................ 20

11 U.S.C. § 544 ....................................................................................................... 6

11 U.S.C. § 550(a) ....................................................................................... 1, 7, 8, 22

**Other Authorities**

COLLIER ON BANKRUPTCY (15th ed.) ¶ 544.07[4] ................................................ 9, 13

**Rules**

Fed. R. Bankr. P. 7056 ............................................................................................ 1

iii

**Page(s)**

Fed. R. Civ. P. 56 ...................................................................................................... 1, 6

Local Rule 7056-1 ...................................................................................................... 6

Pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056, Plaintiff Anadarko Litigation Trust, as successor to Tronox Incorporated, Tronox Worldwide LLC, and Tronox LLC (collectively, "Tronox"), moves for partial summary judgment regarding the amount of Plaintiff's recovery under Bankruptcy Code § 550(a). Defendants assert that Tronox's recovery is "capped" at the amount of Tronox's environmental and tort creditor claims. This is wrong as a matter of law, and contradicts the plain language of the Bankruptcy Code, an unbroken line of cases construing it, the terms of Tronox's confirmed Plan of Reorganization, and foundational policies that go to the heart of chapter 11 reorganizations.

First, there is no dispute that § 550 of the Bankruptcy Code governs the recovery on Tronox's fraudulent transfer claims. Unlike many state fraudulent conveyance statutes, § 550 does not limit recovery to the amount of creditor claims as Defendants contend. To the contrary, it expressly authorizes the debtor to recover, "for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property. . . ." 11 U.S.C. § 550(a). A uniform line of cases holds that this language does not cap recovery at the amount of creditor claims.

Second, the sole requirement at issue under § 550(a)—that any recovery "benefit the estate"—is readily met here. The proceeds of this litigation already have been assigned and transferred to Tronox's environmental and tort creditors under its Plan. This is a direct benefit to the estate that satisfies § 550, and Plaintiff is aware of no case holding otherwise. Equally importantly, Tronox used the prospect of a recovery in this litigation to forge the Global Creditor Settlement, which was "the cornerstone of the Plan." (Findings of Fact, Conclusions of Law and Order Confirming 1st Am. J. Plan [Case No. 09-10156, Dkt. 2567] (hereinafter, "Confirmation

Order") ¶ 37)    Thus, the estate and all of its stakeholders already have benefited from any recovery in this action.   This is exactly the kind of benefit that § 550(a) contemplates, and all that it requires.

Third, even if § 550(a) did limit recovery to the allowed amount of creditors' claims as Defendants argue, it would not help Defendants here.    By operation of the Plan and the settlements it embodies, the agreed amount of consideration for the environmental and tort claims already has been set, approved by the Court, and transferred to the Environmental Response Trusts and Tort Claims Trust.   Regardless of the outcome of this action, these creditors cannot recover a penny more—and should not be required to accept a penny less—than the agreed amount for which their claims already have been compromised and allowed.

Fourth, a contrary ruling would not only defeat the bargain the environmental and tort creditors struck in this case and violate the Plan, it would interpose a serious obstacle to the negotiation and confirmation of plans of reorganization in future cases.   Stakeholders routinely accept non-fixed consideration as part of a plan.    The right to litigation proceeds is one example. Stock is another.   If the value of non-fixed consideration could be reassessed years after plan confirmation because it increased (or decreased) in value, stakeholders would no longer accept it, plans would be more difficult to negotiate and confirm, and distributions would be subject to interminable post-confirmation attacks.   That has never been the law.   It should not become the law now.

## BACKGROUND

### I.    Tronox's Global Settlement.

After filing for chapter 11 on January 12, 2009, Tronox was faced with billions of dollars of claims, the bulk of which were environmental and tort claims related to legacy environmental sites and discontinued businesses that became Tronox's problem when it was spun-off from

Kerr-McGee. Environmental creditors filed 122 claims seeking more than $4.9 billion (after excluding obvious duplicate claims), plus additional unliquidated amounts.[1] (Disclosure Statement [Ex. B to Case No. 09-10156, Dkt. 2196] (hereinafter "Disclosure Statement") at 30) Tort creditors filed more than 11,500 claims seeking more than $2 billion (also after excluding obvious duplicate claims), plus additional unliquidated amounts. (*Id.*) Tronox estimated that $300-$500 million of the environmental claims were administrative expense claims (*id.* at 7) that would have needed to be satisfied in full upon emergence. *See* 11 U.S.C. § 1129(a)(9)(A). Absent a settlement with Tronox's environmental creditors, Tronox could not have emerged from bankruptcy because it could not have obtained financing to satisfy these administrative claims. (Decl. of Dennis L. Wanlass in Supp. of Confirmation of 1st Am. J. Plan (Case No. 09-10156, Dkt. 2500) ¶¶ 43, 44)

After months of hard-fought negotiations with multiple constituencies, Tronox and its stakeholders reached a global settlement in the fall of 2010 that formed the basis for Tronox's Plan. (*See generally* Disclosure Statement at 40–42) As the Court found, the "Global Creditor Settlement is the cornerstone of the Plan." (Confirmation Order ¶ 37)[2] Under that settlement, Tronox's environmental and tort creditors agreed to compromise and release their billions of dollars of claims for a package of consideration that included $282.5 million in cash to fund certain remediation efforts and partially compensate tort victims, the value (if any) of certain polluted properties across the country, certain limited insurance assets, and all of the proceeds from this litigation (allocated 88% to the environmental creditors and 12% to the tort creditors).

---

[1]    In addition, indirect environmental creditors asserted 12 claims seeking over $1.1 billion. (Disc. Stmt. [Ex. B to Case No. 09-10156, Dkt. 2196] at 30)

[2]    The Confirmation Order defines the Global Creditor Settlement as the combined agreements among all of Tronox's creditors to create the various environmental, tort, and litigation trusts and distribute Tronox's estate. (*Id.* ¶ 36) It defines the Global Settlement as the combination of the Global Creditor Settlement and the Equity Committee Settlement, which provided former Tronox equity holders with certain warrants. (*Id.* ¶ 39)

(*See* First Am. Plan of Reorg. [Ex. A to Case No. 09-10156, Dkt. 2567] (hereinafter "Plan") at 21–22)

The Global Creditor Settlement was ultimately supported by all stakeholders, including Defendants (subject to a limited reservation of rights). Following full notice, briefing, the submission of evidence, and a Confirmation Hearing, the Court approved the Plan and the global settlements on which it is based. The Court specifically found that "the Global Creditor Settlement is fair, reasonable and meets the standard for approval," and was "negotiated at arm's length and in good faith. . . ." (Confirmation Order ¶¶ 37, 40)

During the confirmation hearing, Debtors' counsel told the Court that there were no "[o]bjections to the transfer of rights" provided for in the environmental and tort settlements "and to the consideration that's going along with the rights from the debtors." (11/17/10 H'rg Tr. [Case No. 09-10156, Dkt. 2562] at 20) The Court made clear that "parties who have an objection to the environmental settlement should speak up now if they have such an objection." (*Id.* at 70) Neither Defendants' counsel nor anyone else objected to the consideration provided in the environmental and tort settlements.[3] To the contrary, Defendants lodged only "limited" objections not relevant here to the Environmental Claims Settlement Agreement and specifically did "not challenge the terms of the Environmental Settlement Agreement, nor the asserted justifications and benefits of the settlement." (Anadarko Obj. to U.S. Mot. to Approve Consent Decree & Envtl. Settlement [Case No. 09-10156, Dkt. 2724] ¶ 3) In their Plan objection, Defendants asserted that under § 550(a), "the Debtors cannot recover more than the amount that will accrue for the 'benefit of the estate.'" (Anadarko's Obj. to Plan

---

[3] This is hardly surprising. Anadarko has long maintained that the claims that Tronox's environmental and tort creditors are relying on for the vast majority of their consideration under the Plan are "unsubstantiated," "baseless" and "specious." (Dkt. No. 217 ¶ 2) To date, Anadarko has not taken a reserve for them.

[Case No. 09-10156, Dkt. 2398] ¶ 43)  The Confirmation Order expressly reserved all parties' "right[s] to make any available arguments, and assert any available claims and available defenses concerning the effect, if any, of the Plan Documents on the determination of liability or measure of damages" in this suit.  (Confirmation Order ¶ 191)  The Court overruled all objections to Plan Confirmation not otherwise withdrawn, waived, or settled.  (*Id.* ¶ 93)

The Plan went effective on February 14, 2011.  Under the terms of the Plan, on the Effective Date, Tronox transferred to the Environmental Response Trusts, the Tort Claims Trust, and certain Government Environmental Entities the agreed consideration, including the right to 100% of the proceeds of this litigation.  In return, the environmental and tort claimants released and/or provided a covenant not to sue Tronox on account of their claims.  (Plan, Articles III.B.5, IV.C, and VIII.D;  Consent Decree & Envtl. Settlement Agreement [Case No. 09-10156, Dkt. 2555], Article XVI)

## II.    Defendants' Motion To Bifurcate.

On June 22, 2011, just two days prior to the close of fact discovery, Defendants moved to bifurcate trial on liability and damages issues.  (Dkt. 239)  Among other things, Defendants' motion argued that § 550(a) limited any recovery in this litigation "to the amount necessary to fully satisfy the deficiency claims of the environmental and tort claimants," and therefore the Court would be required to separately value the environmental and tort claims as of the petition date.  (*Id.* at 3, 14; Defs.' Reply Br. in Supp. of Mot. to Bifurcate [Dkt. 250 ] at 5–6)  As a result, the issue of the effect of § 550 on damages in this case already has been partially briefed by both Defendants and Plaintiff.

The Court denied Defendants' motion to bifurcate.  (*See* Ex. A, 7/19/11 H'rg Tr. [Dkt. 254] at 64:21–25)  But the Court also left open the possibility of "separat[ing] out the 550 issues relating to benefit of the estate and the value of plaintiff's claims as of 2009."  (*Id.* at 64:22–24)

The Court also suggested that the issue of the effect, if any, of the amount of environmental and tort claims on damages should be presented to the Court soon and well before trial. (*Id.* at 62:17–21) In accordance with the Court's request, and because this issue may impact the scope of evidence presented at trial, Plaintiff brings this motion.[4]

## ARGUMENT[5]

### I.   Section 550 Does Not Cap Plaintiff's Recovery On Fraudulent Transfer Claims.

Defendants have conceded that "Section 550(a) of the Bankruptcy Code governs Plaintiffs' recovery in the event a transfer is avoided." (Defs.' Mot. to Bifurcate [Dkt. 239] at 12; Anadarko's Obj. to Plan [Case No. 09-10156, Dkt. 2398] ¶ 43 ("Section 550(a) of the Bankruptcy Code governs the remedies available to the Debtors if they prevail in their fraudulent transfer action against Anadarko."))[6]

"It is axiomatic that statutory interpretation begins with the language of the statute, and that the ordinary meaning of the language accurately expresses the legislative purpose." *United States v. Lucien*, 347 F.3d 45, 51 (2d Cir. 2003) (internal quotation and citation omitted); *Kuhne v. Cohen & Slamowitz, LLP*, 579 F.3d 189, 193 (2d Cir. 2009) (similar). The express terms of § 550(a) do not cap recovery at the amount of creditors' claims or any other amount.

---

[4] The parties have agreed that a motion for partial summary judgment is the proper procedure to raise the issues presented by this motion. Pursuant to Local Rule 7056-1(b), Plaintiff has annexed to this motion a short statement of material undisputed facts. Plaintiff also has filed a letter pursuant to Local Rule 7056-1(a) setting forth the issues raised in the motion and the grounds for relief. Because the Court suggested that the issues presented by this motion may be appropriately addressed on summary judgment (*see* Ex. A, 7/19/11 H'rg Tr. at 62), the parties do not believe that a pre-motion conference is necessary prior to filing.

[5] Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).

[6] Defendants' "cap" defense is grounded in § 550(a) of the Bankruptcy Code, which governs recoveries for transfers avoided under other Code provisions, including 11 U.S.C. § 544. The argument has no application to Plaintiff's common law breach of fiduciary duty count (Count IV). Defendants have not suggested otherwise.

Rather, § 550(a) provides only that "to the extent that a transfer is avoided under section 544 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property. . . ." 11 U.S.C. § 550(a); *In re Acequia, Inc.*, 34 F.3d 800, 811 (9th Cir. 1994) (reversing magistrate judge for capping recovery under § 544 and § 550 at the amount of unsecured creditors claims); *Kipperman v. Onex Corp.*, 411 B.R. 805, 878 (N.D. Ga. 2009) ("Section 550 does not 'cap' Plaintiff's recovery.").[7]

Based on the plain language of the statute, courts have uniformly held that recoveries under § 550(a) are not capped. The leading authority is the Ninth Circuit's decision in *In re Acequia*. In *In re Acequia*, the debtor in possession (Acequia) brought a fraudulent conveyance action under § 544(b) against its former controlling shareholder. 34 F.3d at 804-05. Because Acequia's unsecured creditors "were paid in full on the distribution date," the magistrate judge imposed what the Ninth Circuit deemed "a novel limitation" on Acequia's recovery, limiting it "to the amount of unsecured claims paid on the distribution date." *Id.* at 808-09. The Ninth Circuit held that the magistrate judge "erred by imposing a 'cap' on Acequia's section 544(b) recovery." *Id.* at 809. It reasoned that once the plaintiff establishes its right to avoid a fraudulent transfer, "[s]ection 550(a) governs the *extent* to which the trustee may exercise that right, specifically permitting recovery 'for the benefit of the estate.'" *Id.* The court rejected the magistrate judge's "implicit determination" that allowing the plaintiff to recover more than the amount of unsecured claims under § 550(a) would not "benefit the estate." *Id.* at 811. Noting that "[c]ourts construe the 'benefit of the estate' requirement broadly," the Ninth

---

[7] Although state law often limits recoveries on fraudulent transfer claims to the extent necessary to satisfy the creditor's claim, Congress omitted any limitation on recoveries under § 550(a), further confirming its deliberate intention to eschew the cap on recoveries urged by Defendants. *In re Serrato*, 214 B.R. 219, 231 (Bankr. N.D. Cal. 1997) (noting that although California law "limits a creditor's recovery in a fraudulent transfer action to the amount necessary to satisfy the creditor's claim, this section is not controlling" in an action under § 544(b)).

Circuit found that Acequia's § 544(b) action "sufficiently benefitted the estate by secur[ing] Acequia's post-confirmation obligations under the plan of reorganization" and "reimburs[ing] the bankruptcy estate for the costs of pursuing fraudulent conveyance litigation." *Id.* at 811-12.

The Eighth Circuit similarly recognized that recoveries for fraudulent transfers avoidable under § 544(b) are not limited by the amount of unsecured creditors' claims. *Stalnaker v. DLC, Ltd.*, 376 F.3d 819 (8th Cir. 2004), *affirming In re DLC, Ltd.*, 295 B.R. 593 (B.A.P. 8th Cir. 2003). In *DLC*, the Bankruptcy Appellate Panel addressed whether the trustee in a fraudulent transfer action may "recover only the amount necessary to satisfy the creditors' claims." 295 B.R. at 606. The Panel noted that "Congress expressly rejected limiting the estate's recovery to the amount of a particular creditor's claims," and that "although state law limits a creditor's recovery in a fraudulent transfer action to the amount necessary to satisfy the creditor's claim, this is not controlling in bankruptcy." *Id.* Accordingly, the Panel held that "the trustee may recover the entire fraudulent transfer under section 550(a)." *Id.* at 607. The Eighth Circuit affirmed. *Stalnaker*, 376 F.3d at 823 ("If the trustee identifies such a creditor with an allowable claim and a valid right to avoid the transfer, the trustee may avoid the claim and recover the entirety of the property or value of the property 'for the benefit of the estate.' 11 U.S.C. § 550(a). The trustee's recovery is not limited to the value of the claim of the unsecured creditor(s) he identifies."); *see also In re P.A. Bergner & Co.*, 140 F.3d 1111, 1118 (7th Cir. 1998) (following *Acequia*, the Seventh Circuit rejects argument that recovery would not benefit estate even though unsecured creditors already recovered the agreed plan consideration).

The district courts that have considered this issue are in accord. In *MC Asset Recovery, LLC v. Southern Co.*, No. 1:06-CV-0417-BBM, 2006 WL 5112612 (N.D. Ga. Dec. 11, 2006), the plaintiff brought a fraudulent transfer action under § 544(b) against the debtor's former

parent company related to a spinoff. *Id.* at *1–*2. The defendant argued that the plaintiff could not avoid the transfers at issue because the unsecured creditors' claims had been satisfied in full under the plan. *Id.* at *4. Assuming *arguendo* that the unsecured creditors' claims had been satisfied in full, the district court rejected the defendant's argument because "several cases decided since *Moore v. Bay* have addressed that very question, and all have found that a trustee who brings an action to avoid and recover a fraudulent transfer may avoid and recover it in its entirety, even when the value of the transfer exceeds the value of all allowed claims by unsecured creditors."[8] *Id.* at *5. Indeed, the court emphasized that the Ninth Circuit's decision in *Acequia* "has been repeatedly cited for the proposition that a trustee may recover for the benefit of the estate even when all unsecured creditors have already been paid, and has never been overruled or even seriously questioned by a court in its own, or in any other, jurisdiction." *Id.* at *5 n.11.

Similarly, in *In re FBN Food Services, Inc.*, No. 93 C 6347, 1995 WL 230958 (N.D. Ill. Apr. 17, 1995), the defendant in an action under § 548 challenged the debtor's stipulation with a creditor allowing the creditor's claim. *Id.* at *1. The defendant argued that it had standing to challenge the stipulated claim on the ground that the amount of creditors' claims "limits the damages recoverable in a fraudulent conveyance action under section 548." *Id.* at *2. The district court rejected the argument that recovery in a fraudulent conveyance action is capped at the amount of all creditors' claims and held that the defendant lacked standing. *Id.* at *3 ("Because section 550(a) contemplates full recovery of a transfer provided that the action will

---

[8] The Supreme Court's decision in *Moore*, 284 U.S. at 4, "allowed the trustee to avoid a transfer entirely without regard to the size of the claim of the creditor whose rights and powers the trustee was asserting, with the recovery to be retained for the benefit of the entire estate." COLLIER ON BANKRUPTCY (15th ed.) ¶ 544.07[4].

benefit at least one creditor, the amount of creditor claims does not limit the trustee's right of recovery in avoidance actions.").

Moreover, in *In re Sheffield Steel Corp.*, 320 B.R. 423 (Bankr. N.D. Okla. 2004), the defendant in an action under § 544(b) asserted that the debtor's recovery was capped at the percentage of proceeds allocated to unsecured creditors in the plan because any greater recovery would only benefit the debtor and, therefore, would not "benefit the estate" within the meaning of § 550. *Id.* at 446. Relying on *Acequia*, the bankruptcy court disagreed and concluded that "the only statutory limitation on recovery is found in Section 550(a), which provides that avoided transfers may be recovered 'for the benefit of the estate.'" *Id.* at 447. It found that this standard was satisfied because (1) the debtor's recovery of proceeds from the litigation would improve the value of the reorganized debtor for the benefit of noteholders who received equity under the plan, and (2) the noteholders might not have consented to the plan if it had not provided them with the indirect benefit of the debtor's recovery. *Id.* at 447-48; *accord Kipperman*, 411 B.R. at 874-77 (holding that recovery under § 550(a) is not capped at either "total allowable claims for all unsecured creditors" or "total allowable claims for all creditors who opted into the [Litigation] Trust").

Despite this uniform body of law, Defendants contend that "binding precedent from this jurisdiction . . . unequivocally holds that a recovery under § 550 is limited to the value of unsecured claims." (Defs.' Reply in Supp. of Mot. to Bifurcate [Dkt. 250] at 8) To the contrary, none of the cases cited by Defendants even addresses § 550(a)'s "benefit of the estate" requirement or the novel recovery cap proposed by Defendants. For example, in *Adelphia Recovery Trust v. Bank of America, N.A.*, 390 B.R. 80 (S.D.N.Y. 2008), the court held that the plaintiff trust lacked standing to bring claims under § 544(b) where the plan on its face

10

made clear that all creditors of the relevant debtor had been paid in full with post-petition interest, and any litigation recovery would go to separate creditors and shareholders of a different debtor. *Id.* at 91, 95. Here, of course, Tronox's environmental and tort creditors will receive the litigation proceeds, which are part of the agreed consideration that already has been distributed to them to satisfy their claims. Further, unlike the creditors in *Adelphia*, no one claimed at confirmation that Tronox's environmental and tort creditors would be paid in full with postpetition interest absent a recovery in this litigation. Thus, *Adelphia* has no bearing on this case.

Similarly, *In re Best Products, Co.*, 168 B.R. 35 (Bankr. S.D.N.Y. 1994), is not remotely on point. *Best Products* considered whether to approve the debtor's settlement of a fraudulent conveyance action that arose out of an LBO. *Id.* at 39. The decision had nothing to do with § 550(a) and capping recoveries at the amount of creditors' claims. Indeed, Defendants apparently cite *Best Products* for the unremarkable proposition that "fraudulent transfer laws are intended to promote payment to creditors."[9] (Mot. to Bifurcate [Dkt. 239] at 12 n.19 (quoting *In re Best Products*, 168 B.R. at 57)) Here, Plaintiff's recovery of the full value of the fraudulent transfers at issue would clearly "promote payment to creditors" as Tronox's environmental and tort creditors will receive all litigation proceeds.

The final case cited by Defendants in support of a recovery cap—*In re Murphy*, 331 B.R. 107 (Bankr. S.D.N.Y. 2005)—is both inapposite and wrong. In *In re Murphy*, a chapter 7 trustee brought a fraudulent conveyance action under § 548 to avoid a town's foreclosure on the debtor's residential real estate for nonpayment of taxes under New York law. *Id.* at 113. The bankruptcy court noted that the chapter 7 case was "extremely unusual" because,

---

[9]    The bankruptcy court recognized this general principle in its analysis of whether the defendant banks would have a claim against the estate in the event that the LBO was avoidable. *Id.* at 57–59.

if the entire forfeiture were avoided, all creditors would be paid in full and a substantial surplus would remain for the debtor. *Id.* at 121. In deciding who had "the right to the surplus funds as between the debtor and the defendant," the bankruptcy court relied on New York's public interest in enforcing its tax laws and the "longstanding principle that federal courts, and bankruptcy courts in particular, should give effect to state law to the extent that it does not conflict with federal interests." *Id.* at 122. Thus, the court struck a middle ground and limited the extent of the avoidance of the tax forfeiture to the amount necessary to make creditors whole to avoid a conflict between New York's tax forfeiture laws and federal bankruptcy law. *Id.* at 126. Here, the special consideration that decided *Murphy*—potential interference with state taxation authority—is not present. Avoidance of the fraudulent transfers at issue in this case does not conflict with state law. Accordingly, there is no reason to depart from well-settled law and cap Plaintiff's recovery in this case.

In any event, the *Murphy* decision is based on a fundamental misreading of the law and conflicts with 75 years of precedent.[10] The court in *Murphy* did not base its decision on § 550(a)'s "benefit of the estate" language at issue here. Instead, it held that "the answer to the present issue lies in Section 548," and it adopted a theory of "partial avoidance" to reach its result. This theory of partial avoidance, however, squarely conflicts with the rule set forth in *Moore v. Bay* and its progeny, and codified in §§ 544 and 550. *See, e.g., Moore v. Bay,* 284 U.S. 4, 5 (1931); *Acequia,* 34 F.3d at 809-10 ("under section 544(b) '[a] transaction that is voidable by a single, actual unsecured creditor may be avoided in its entirety, regardless of the size of the creditor's claim'") (citations omitted); *Stalnaker,* 376 F.3d at 823 (same, citing

---

[10] Indeed, as a bankruptcy court decision, *Murphy* is not binding on this Court. *See, e.g., In re 400 Madison Ave. Ltd. P'ship,* 213 B.R. 888, 890 n.2 (Bankr. S.D.N.Y. 1997) ("The authorities are in agreement that a decision issued by a single bankruptcy judge in a multi-judge bankruptcy court is not binding on the other bankruptcy judges.").

*Moore v. Bay*); *DLC*, 295 B.R. at 602 ("Once the trustee has proven his case, the trustee, pursuant to *Moore v. Bay* . . . may . . . avoid the entire transfer (even if the creditor upon whom the trustee relies could avoid it only in part) . . ."); COLLIER ON BANKRUPTCY (15th ed.) ¶ 544.07[4] (explaining that the *Moore v. Bay* "decision allowed the trustee to avoid a transfer entirely without regard to the size of the claim of the creditor whose rights and powers the trustee was asserting, with the recovery to be retained for the benefit of the entire estate"). Not surprisingly, shortly after the *Murphy* decision, the Fourth Circuit in *In re Coleman*, 426 F.3d 719, 725–26 (4th Cir. 2005) once again rejected this theory of "partial avoidance": "[T]he plain language of § 544 provides that Debtor 'may avoid'" the transfers. "To 'avoid,' in a legal context, means '[t]o render void. . . .' We therefore hold the bankruptcy court erred in limiting Debtor's ability to avoid the deeds of trust." *Id.* at 725-26.

## II. Section 550's Requirement That A Recovery Must Be For The "Benefit Of The Estate" Is Easily Satisfied Here.

Tronox's recovery of the entire value of the fraudulent transfers at issue easily satisfies § 550(a)'s requirement that a recovery must be for the "benefit of the estate." Courts "construe the 'benefit of the estate' requirement broadly" and have found the requirement satisfied "even though the unsecured creditors had received full distributions under the plan of reorganization." *In re Calpine Corp.*, 377 B.R. 808, 813 (Bankr. S.D.N.Y. 2007) (quoting *Acequia*, 34 F.3d at 811). Indeed, "[i]n virtually every case, recovery of any property benefits the estate." *Stalnaker*, 376 F.3d at 823; *P.A. Bergner*, 140 F.3d at 1118 ("benefit of the estate" requirement satisfied where creditor only received an indirect recovery); *In re S. Indus. Banking Corp.*, 59 B.R. 638, 641 (Bankr. E.D. Tenn. 1986) (recovery permissible "as long as the unsecured creditors receive some benefit from the recovery . . . even if it is not an increase in the amount creditors will receive") (citing *In re Centennial Indus.*, 12 B.R. 99 (Bankr. S.D.N.Y. 1981)).

Defendants concede that the "benefit of the estate" requirement is satisfied where creditors receive an equity stake in the reorganized debtor and recovery would increase the reorganized debtor's value, or where recovery would increase the likelihood that creditors will receive post-confirmation payments under the plan. (Defs.' Reply in Supp. of Mot. to Bifurcate [Dkt. 250] at 7) *See also Acequia*, 34 F.3d at 811–12 (finding requirement met where "recovery would secure performance of Acequia's post-confirmation obligations under the plan of reorganization" and "would reimburse the bankruptcy estate for the costs of pursuing fraudulent conveyance litigation"). Here, there is no need to come up with an indirect benefit to show that Plaintiff's recovery will be "for the benefit of the estate." Plaintiff's right of recovery already has been transferred to the Environmental Response Trusts and Tort Claims Trust, and will directly benefit Tronox's core unsecured creditors. Accordingly, Plaintiff's recovery of the value of the fraudulent transfers at issue easily satisfies § 550(a)'s "benefit of the estate" requirement.

Even absent this direct recovery by Tronox's unsecured creditors, Plaintiff's recovery in this adversary proceeding readily satisfies § 550. It was the prospect of recovery in this litigation that drove plan negotiations, enabled the parties to achieve the settlements that are "the cornerstone of the Plan," and resulted in a confirmable Plan for the benefit of the estate. (*Supra* at 3-5; Confirmation Order ¶ 37) *See In re Transworld Airlines*, 163 B.R. 964, 973 (D. Del. 1994) ("the estate is the focus of § 550(a), not individual creditors. How, in any particular case, a recovery is used and whether any of it is distributed to creditors is a function of the conduct of the case and the negotiations of a plan of reorganization."). This is more than enough to satisfy § 550.

Two decisions are especially instructive here, and underscore the flaw in Defendants' position. In *Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290 (7th Cir. 2003), the Seventh Circuit

held that a potential litigation recovery is "for the benefit of the estate" under § 550(a) where the prospect of recovery is used to benefit the estate during a chapter 11 case. In *Mellon Bank*, the bankruptcy court promised objecting prepetition secured creditors the first $30 million in proceeds from any preference actions to compensate them for risk while new super-priority funds were raised to facilitate the sale of the debtor. Even though the debtor had been sold and there was no "estate" by the time the first preference action was filed, the Seventh Circuit held that § 550(a) was satisfied because "the potential to recover funds from preference recipients was put to use for the estate's benefit" by facilitating the sale of the debtor:

> Having put the *prospect* of preference recoveries to work for the benefit of all creditors (including the unsecured creditors) *ex ante* by effectively selling them to the secured creditors in exchange for forbearance—and in the process facilitating a swift sale all around—the bankruptcy judge did not need to use them *ex post* a second time, for still another benefit to the estate; there was no further benefit to be had.

*Id.* at 293.

Consistent with *Mellon Bank*, a district court recently concluded that a potential recovery from a litigation trust is "for the benefit of the estate" and satisfies § 550(a) where the prospect of recovery facilitated a successful reorganization. *Kipperman,* 411 B.R. at 876-77. In *Kipperman*, the plaintiff argued that allowing unsecured creditors to recover for fraudulent transfers from a litigation trust facilitated confirmation of the plan. *Id.* at 877–78. The plaintiff asserted that if the court had not given unsecured creditors the opportunity to opt into the litigation trust, they might have objected to the plan, refused to release the debtor from all claims, or taken some other action not in the best interests of the estate. *Id.* at 878. The defendants, on the other hand, argued that the benefit of plan confirmation could not "serve as a 'benefit' under section 550 because it already has been realized and has no connection to Plaintiff's recovery under this action." *Id.* Applying *Mellon Bank*, the court held that the recovery in the fraudulent

15

conveyance action was "for the benefit of the estate" because it provided an "*ex ante* benefit" by facilitating plan confirmation, which "is all that section 550 requires." *Id.*; *see also Sheffield Steel*, 320 B.R. at 447–48 (rejecting defendants' cap theory and holding that § 550 is satisfied where noteholders might not have consented to the plan if it had not provided them with the indirect benefit of the debtor's recovery through an equity stake in debtor).

Here, just as in *Mellon Bank* and *Kipperman*, Tronox already "put the *prospect* of [litigation] recoveries to work for the benefit of all creditors. . . ." *Mellon Bank*, 351 F.3d at 293. It used the prospect of recovery in this litigation to fund the Global Creditor Settlement, which became the "cornerstone of the Plan." (Confirmation Order ¶¶ 36–37; *supra* at 3-4) That "is all that section 550 requires." *Kipperman*, 411 B.R. at 878.

## III. Defendants' Damages "Cap" Theory Is Directly Contrary To Tronox's Confirmed Plan And To Core Bankruptcy Principles.

Even if the law were different and § 550(a) did cap damages at the allowed amount of creditors' claims, it would have no impact on Plaintiff's recovery here. Defendants' entire damages "cap" theory proceeds from the flawed premise that Tronox's environmental and tort creditors can recover more than the allowed amount of their claims based on the amount of any judgment in this case. They cannot. By virtue of the Plan and the settlements it embodies, the agreed amount of consideration for the environmental and tort claims already has been set, approved by the Court, and transferred to the Environmental Response Trusts, the Tort Claims Trust, and certain Government Environmental Entities. (*Supra* at 5) These creditors cannot recover a penny more—and should not be required to accept a penny less—than the agreed amount for which their claims have been compromised and allowed.

By ignoring this central point, Defendants' cap theory is a frontal assault on the Plan and underlying settlements, seeks to deprive the environmental and tort creditors of the benefit of their bargain, and violates core bankruptcy principles.

A.    **The Allowed Amount Of The Environmental And Tort Claims Already Has Been Agreed To, Set By The Plan, And Transferred To Creditors.**

It is axiomatic under the Bankruptcy Code that only creditor claims that have been allowed can be paid.  11 U.S.C. § 502; *In re Pardee*, 218 B.R. 916, 922 (9th Cir. B.A.P. 1998) ("We note that Congress used the term 'allowed claims' in certain parts of the Code.  *See, e.g.,* §§ 726(a) and 1129(b)(2).  These sections support the general rule that only 'allowed claims' will be paid through the bankruptcy estate.").  Under Tronox's Plan, an "Allowed" Claim is defined to include a "(iii) a claim that is Allowed (x) pursuant to the Plan, (y) in any stipulation that is approved by the Bankruptcy Court or (z) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith . . . (v) with respect to Tort Claims, a Claim that is Allowed through the Tort Claims Trust Distribution Procedures. . . ."  (Plan ¶ 4) Through the Plan and Confirmation Order, this Court specifically approved the settlements of the environmental and tort claims, concluding they are "fair, reasonable and meet[] the standard for approval of settlements. . . ."  (Confirmation Order ¶¶ 37, 40; Plan, Article IV.C.2)

On the Effective Date, Tronox established the "Environmental Response Trusts" and funded them with the agreed consideration, including "the right to 88% of the Proceeds of the Anadarko Litigation."  (Plan, Article IV.C)  Under the Environmental Settlement Agreement, the litigation proceeds were in turn allocated to specific sites "on account of allowed claims of the Governments and/or resolutions of causes of action of the Governments."  (Consent Decree & Envtl. Settlement Agreement [Case No. 09-10156, Dkt. 2555] ¶¶ 123–25)  Similarly, on the Effective Date, Tronox created the Tort Claims Trust, and funded it with the agreed

17

consideration, including "the right to 12% of the proceeds of the Litigation." (Plan, Article IV)
The tort settlement includes agreed procedures for allowing (or disallowing) claims.  (Tort
Claims Trust Distribution Procedures [Ex. B to Case No. 09-10156, Dkt. 2768] at Articles II and
III)   The consideration already provided to the Tort Claims Trust—including 12% of the
litigation proceeds—does not vary based on the number or amount of tort claims ultimately
allowed; only pro-rata claimant recoveries are impacted.  (*Id.* §§ 1,3, Article IV)  In return for
this consideration, the environmental and tort claimants released and/or provided a covenant not
to sue Tronox on account of their claims on the Effective Date.  (Plan, Article VIII; Consent
Decree & Envtl. Settlement Agreement [Case No. 09-10156, Dkt. 2555], Article XVI)

In short, by operation of the Plan and the settlements on which it is based, the
environmental and tort claims already have been (or, in the case of tort claims, are in the process
of being) allowed for the agreed consideration.  Therefore, even if § 550(a) did cap recoveries at
the allowed amount of creditors' claims—and it does not—Tronox's environmental and tort
claimants cannot recover more than the agreed amount that already has been provided to them
for claims that already have been compromised and allowed through the Plan.  Accordingly,
Defendants' suggestion that a separate trial is necessary because these "claims must be valued as
of the 2009 petition date, and those claims must be found to be 'allowable'" is flat wrong and
flies in the face of the Plan and the Environmental Settlement Agreement.  (Defs.' Reply in
Supp. of Mot. to Bifurcate [Dkt. 250] at 6)  Indeed, as this Court already has recognized, the
Environmental Settlement Agreement "formed the lynchpin of the Debtors' Plan, allowing the
reorganized Debtors to liquidate billions of dollars of claims for alleged environmental
remediation costs by establishing an environmental remediation trust" that is funded by, among
other things, the proceeds from this action.  (5/11/11 Mem. of Op. [Dkt. 229] at 4)

It bears emphasis that the reservation of rights in the Plan has no bearing on this issue. Under the Plan, the parties simply reserved "any available arguments . . . concerning the effect, if any, of the Plan Documents on the determination of liability or measure of damages . . . in the Anadarko Litigation. . . ." (Confirmation Order ¶ 191) They did not, however, agree to alter the legal effect of the Plan and related settlements. It is the legal effect of those operative documents that is dispositive here.

### B.    Defendants' Cap Would Deprive The Environmental And Tort Creditors Of The Benefit Of Their Bargain.

The environmental and tort creditors have released their claims against Tronox in exchange for the agreed Plan consideration. That consideration includes a contingent asset—the right to the litigation proceeds.    If the Litigation Trust loses, the creditors would have surrendered their claims for a relative pittance, but that is the risk they have taken.    No one suggests that these creditors could reopen the Plan and reallocate the consideration if the Litigation Trust loses. Conversely, if the Litigation Trust wins, these creditors may receive more than some measure of the amount of their claims as compensation for the risk they have taken.[11] But that is the bargain they negotiated, that the Debtors and the other creditors agreed to, and that this Court approved as fair and reasonable.    The cap urged by Defendants would breach that agreement.

Defendants' "heads I win, tails you lose" position has no basis in the Plan or the law. The court in *MC Asset Recovery* rejected a virtually identical argument.    2006 WL 5112612, at *6 n.12.    In that case, the plan assigned the right to proceeds from litigation regarding a failed

---

[11]    Whether the total cost to remediate the legacy sites, and to compensate tort claimants for their injuries, will ultimately prove to be more or less than the litigation recovery here will not be known for many years.    If history is a guide, those costs likely will be higher than anyone, including Tronox's experts in this case, anticipates today.    That is one of the many reasons why the environmental and tort settlements are a fair and sensible way to address these inherent uncertainties.

spinoff to unsecured creditors and equity. *Id.* at *1. Due to a post-bankruptcy increase in the Debtors' stock, the defendant argued that the recovery in the fraudulent conveyance action should be capped at the amount of the unsecured creditors' claims to avoid an inequitable windfall. The court squarely rejected the cap argument, holding that all courts to address the issue "have found that a trustee who brings an action to avoid and recover a fraudulent transfer may avoid and recover it in its entirety, even when the value of the transfer exceeds the value of all allowed claims of unsecured creditors." *Id.* at *5. The court was equally unimpressed with defendant's windfall argument, holding that the creditors would receive no more than the benefit of their bargain under the Plan:

> Although the court does not now make such a finding, the creditors very well may be "satisfied in full" . . . in the sense that the distribution they received from the Plan is currently valued higher than the cash debt the creditors were owed as of the Petition Date. However, the debtor's claims against Southern Co. were fixed as of the Petition Date, according to 11 U.S.C. § 541(a)(1). In the absence of allegations that the negotiations which led to confirmation of the Plan were not in good faith or not at arms length, the parties are entitled to the benefit of [the] bargain they made—just as they would have had to suffer the detriment of the bargain had the value of New Mirant stock immediately plummeted.

*Id.* at *6 n.12. The environmental and tort creditors here are likewise entitled to the benefit of the bargain they struck in the Plan. The centerpiece of that bargain was a right to 100% of the proceeds from this litigation, regardless of what that turns out to be.[12]

### C. The Consideration Received By The Environmental And Tort Creditors Must Be Measured At The Time Of Confirmation.

Defendants argue that, if the proceeds from the litigation (coupled with the other consideration the environmental and tort creditors received under the Plan) ultimately exceed

---

[12] In fact, the Confirmation Order explicitly provides that the Plan does not "permit Anadarko to recover any assets held by any Environmental Response Trust or the Anadarko Litigation Trust." (Confirmation Order ¶ 190) The right to 100% of the proceeds from this litigation was transferred to the Litigation Trust and assigned to the Environmental Response and Tort Claims Trusts on the Effective Date. If Anadarko is permitted to limit recovery to less than 100% of the litigation proceeds, it would be tantamount to removing assets from the trusts in direct violation of this provision.

some measure of their allowed claims, that consideration must be reduced accordingly. This position violates yet another core bankruptcy principle: the value of plan consideration must be measured at the date of confirmation—not some later date. *Kipperman*, 411 B.R. at 876 (stating that plan assets for purposes of the absolute priority rule are "based on the valuation of the assets under the plan at the time of confirmation" and rejecting suggestion that "a district court in a subsequent piece of litigation [should] go back and re-assess equity among the parties based on subsequent events"); *In re Prince*, 85 F.3d 314, 321 (7th Cir. 1996) (noting that a bankruptcy court must "determine the value of the stock on the day the bankruptcy reorganization plan was confirmed").

The environmental and tort creditors received a contingent asset—proceeds from this litigation—under the Plan. In confirming the Plan, this Court determined that the value of that contingent asset and the other consideration the creditors received was fair and reasonable in light of the claims they were releasing. It is legally irrelevant if the value of that contingent asset ultimately proves to be worth more, or less, than the parties and the Court anticipated. That is the nature of contingent assets, and is no different from stock or any other non-fixed asset whose value can go up or down after confirmation. In rejecting the same argument that proceeds from a litigation trust should be capped at the amount of creditors' claims, the court in *Kipperman* made this very analogy:

> When a plan distributes stock and the stock appreciates or depreciates in value, section 1129(b) does not compel the bankruptcy court to reassess whether the party receiving the stock has received too much or not enough value relative to the total value of the party's claim and the distributions to the other parties. The court finds this analogy helpful.

*Id.*, 411 B.R. at 876.

21

### D.    Defendants' Arguments, Even If Correct, Would Not Justify A Reduction In The Litigation Recovery.

Defendants also wrongly assume that, if the environmental and tort creditors could receive no more than some measure of the value of their claims at the petition date, then Tronox's right to recover in this litigation would have to be reduced accordingly.    Under § 550(a), Tronox is entitled to recover, "for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property. . . ."    11 U.S.C. § 550(a).    Tronox asserts that all of its oil and gas assets were wrongly transferred out of its estates, and that it is entitled to recover their full value to make the estates whole.    If, for some reason, Tronox's assignment of the litigation proceeds to the environmental and tort creditors exceeded these creditors' rights to recover, that would not impact Defendants' liability for, or Tronox's right to recover on, its independent claim against Defendants.    It would simply mean (ignoring for a moment the terms of the Plan) that the estates would retain the remaining value, which would benefit the former unsecured creditors (now current shareholders) of Tronox.    As Defendants concede, courts routinely find that this type of indirect benefit meets § 550(a)'s benefit of the estate requirement. (Defs.' Reply in Supp. of Mot. to Bifurcate [Dkt. 250] at 7); *In re Acequia*, 34 F.3d at 811.

Here, of course, the stakeholders already have allocated all of Tronox's rights to recovery in this action to the environmental and tort creditors as part of the numerous compromises that make up the Plan.    Tronox's assignment of its recovery does not change the fact that it is entitled to recover the full value of the assets wrongfully transferred out of its estates.

## IV.    Defendants' Damage "Cap" Argument Has Important Implications Beyond This Case.

A ruling capping litigation recovery at the amount of environmental and tort creditors' claims would not only defeat the bargain the parties struck in this Plan, it would have a dramatic chilling effect on future reorganizations.    Creditors and equity are frequently awarded non-fixed

22

or contingent assets, such as proceeds from litigation, as a central component of reorganization plans.    *See*, *e.g.*, *Kipperman,* 411 B.R. at 823–24; *Stalnaker,* 376 F.3d at 822; *MC Asset Recovery*, 2006 WL 5112612, at *1.

Stakeholders would have little incentive to accept contingent assets like litigation proceeds, along with their attendant risks, if their recovery could be reduced years after the fact based on a reassessment of the assets' value.  It would be irrational for creditors to accept the risk of contingent assets like litigation proceeds if they do not have an opportunity to enjoy the benefits.  It would be especially irrational here where the environmental and tort creditors would be capped at approximately the same level of recovery as all other creditors who did not take similar risks.  The implications of Defendants' argument, of course, go far beyond litigation proceeds.  If a Plan can be reopened long after the fact to revalue a contingent asset like litigation proceeds, then any asset (like stock) whose value fluctuates based on post-confirmation developments would be subject to the same attack.  Nor is there a principled basis to limit Defendants' rule to cases where the non-fixed asset unexpectedly increased in value after plan confirmation.  The same logic would apply if a non-fixed asset decreased in value, thus underpaying some creditors and overpaying others.  The end result would be to wreak havoc on plan negotiations, and subject plans to endless post-confirmation attack.  That is not the law.  It should not become the law now.  *See Acequia,* 34 F.3d at 808 ("[I]f confirmation and payment [of creditors' claims] precluded application of section 544(b), debtors undoubtedly would delay filing plans of reorganization until completing all potential litigation, a result that would contravene the Bankruptcy Code's goal of quick and equitable reorganization."); *MC Asset Recovery*, 2006 WL 5112612, at *6 (same).

## CONCLUSION

The plain language of § 550(a) does not "cap" Plaintiff's recovery to the amount of outstanding unsecured claims, but requires only that a recovery "benefit the estate." Any recovery in this case already has benefited the estate enormously: the prospect of recovery is what drove the compromises that formed the Plan and allowed Tronox to reorganize successfully. A long history of directly on-point case law confirms this. In any event, Defendants' argument is built on a flawed premise. By operation of the Plan and regardless of the outcome of this case, the environmental and tort creditors will not receive a penny more, and should not receive a penny less, than the agreed consideration for their allowed claims. Any other rule would not only defeat the bargain struck in this Plan, but erect a serious obstacle to the negotiation and confirmation of future plans. Accordingly, the Court should grant Plaintiff's motion for partial summary judgment.

Date: August 31, 2011

Respectfully submitted,

/s/ David J. Zott, P.C.

David J. Zott, P.C. *(admitted pro hac vice)*
Jeffrey J. Zeiger *(admitted pro hac vice)*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
david.zott@kirkland.com
jeffrey.zeiger@kirkland.com

*Counsel for the Anadarko Litigation Trust*

## CERTIFICATE OF SERVICE

I, Jeffrey J. Zeiger, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that on this 31st day of August 2011, I caused a true and correct copy of the foregoing Plaintiff's Motion for Partial Summary Judgment to be served upon the following:

**VIA U.S. MAIL AND ELECTRONIC MAIL**

Melanie Gray
Jason W. Billeck
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, TX  77002

*Counsel for Defendants*

**VIA ELECTRONIC MAIL**

Robert William Yalen
Assistant United States Attorney
86 Chambers Street
New York, NY  10007

*Counsel for the United States of America*

____ */s/ Jeffrey J. Zeiger* _____