UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------- x

IN RE:

    TRONOX INCORPORATED, *et al.*,   Bankr. Case No. 09-10156 (ALG)
                                                                                                                                    (Jointly Administered)

                      Debtors.

---------------------------------------------------------------------------------- x

TRONOX INCORPORATED, TRONOX
WORLDWIDE LLC f/k/a Kerr-McGee Chemical
Worldwide LLC, and TRONOX LLC f/k/a Kerr-
McGee Chemical LLC,

                                                                                        Adversary Proceeding
                   Plaintiffs,                         No. 09-01198 (ALG)

           - against -

ANADARKO PETROLEUM CORPORATION
and KERR-MCGEE CORPORATION,

                   Defendants.

---------------------------------------------------------------------------------- x

THE UNITED STATES OF AMERICA,

                   Plaintiff-Intervenor,

           - against -

TRONOX, INC., TRONOX WORLDWIDE
LLC, TRONOX LLC, KERR-MCGEE
CORPORATION, and ANADARKO
PETROLEUM CORPORATION,

                   Defendants.

---------------------------------------------------------------------------------- x

JOINDER OF THE UNITED STATES OF AMERICA
IN THE LITIGATION TRUST'S MOTION FOR PARTIAL
SUMMARY JUDGMENT REGARDING THE LITIGATION TRUST'S
RECOVERY UNDER SECTION 550(a) OF THE BANKRUPTCY CODE

The United States respectfully joins in the Litigation Trust's motion for partial summary judgment seeking a ruling rejecting the "damages cap" proposed by defendants Anadarko Petroleum Corporation, *et al.* (collectively, "Anadarko").

ARGUMENT

Anadarko's suggestion that the Litigation Trust's recovery be capped at the amount of unpaid creditor claims should be rejected. Anadarko's request has no basis in law, as described in the Litigation Trust's motion, and would result in a material change in the agreement struck between Tronox and the governmental environmental creditors (collectively, the "Governments"), embodied in the Environmental Settlement Agreement [Exhibit 1 to Dkt. No. 2692, as amended by Exhibit 3 to Dkt. No. 2810], and incorporated into the Plan of Reorganization [Exh. A to Dkt. No. 2567]. The Environmental Settlement Agreement, approved by the Court, provided that the Governments would receive certain cash payments and other non-cash consideration, a significant portion of which consisted of the promise that eighty-eight percent of the proceeds of the fraudulent conveyance adversary proceeding would be paid on account of Tronox's environmental liabilities. Nothing in the Environmental Settlement Agreement or the Plan of Reorganization provided that the Governments would bear the risk that the litigation will be *unsuccessful* without having the opportunity to benefit from the full potential upside of the litigation in the event that it is *successful*. To the contrary, the Governments' willingness to accept non-cash consideration in settlement of Tronox's vast environmental liabilities – the legacy of a century of pollution by Kerr-McGee Corporation and other predecessor companies – was based on the understanding that these litigation interests had both upside and downside risk. The litigation might end well, and it might end poorly, but the combination of the upside and downside risk was deemed to justify the settlement under the

circumstances, including the relatively cash-poor nature of the debtors' estate. Anadarko's proposed damages cap would rewrite this deal, leaving the Governments with the downside risk only.

Anadarko's request for a back-end limitation on the Governments' recovery fundamentally asks the Court to resolve the wrong question, at the wrong time: The *right question* is whether distributions under the Plan of Reorganization and Environmental Settlement Agreement, considered on an expected value basis as of the time of confirmation, would result in overpayment of the United States and other litigation trust beneficiaries. And the *right time* for answering that question was prior to the entry of the Confirmation Order. [Dkt. No. 2567] Had Anadarko or any other party-in-interest objected to the settlement consideration at that time, the Court could have held the necessary estimation hearings to determine whether the distribution of the litigation interests, in light of their expected value, taken together with any other consideration provided under the Environmental Settlement Agreement and Plan, resulted in the overpayment of any creditor (or, indeed, all creditors). No party-in-interest objected on these grounds: not Anadarko, not the Committee of Unsecured Creditors, and not the Committee of Equity Securityholders, who arguably had the most to gain from such an objection if it had any merit (which it did not). Accordingly, in the absence of any objection and based on the record before it, the Court approved the Environmental Settlement Agreement as "reasonable, fair and equitable pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code," Confirmation Order ¶ 99, and confirmed the Plan. That should be the end of the story.

As with all of the non-cash consideration transferred under the Plan, the litigation interests had a value, perhaps difficult to determine, at the time of confirmation. Any party-in-interest considering whether to object to the Environmental Settlement Agreement or Plan could

exercise its own judgment in assessing that value. In the case of litigation interests, such a party-in-interest would consider the present value of the litigation, perhaps by taking into account the various possible outcomes (both high and low), attaching a percentage likelihood to each one, and summing the results, subtracting the costs of litigating, and applying discounts reflecting the time value of money. Every creditor in the bankruptcy had to reach its own judgment regarding the value of the litigation interests, just as every creditor needed to reach a conclusion about the present value of stock to be provided to the General Unsecured Creditors under the Plan, and the present value of the warrants to be provided to the holders of Tronox's pre-petition equity under the Plan. Anyone who believed that the Governments (or the General Unsecured Creditors, or Equity) were receiving non-cash consideration with too great a value had the opportunity to object, and seek an estimation hearing, prior to confirmation. No one did.

Anadarko's current request, long after confirmation, for the Court to estimate the value of the creditors' claims and compare that value against the actual results in the fraudulent conveyance litigation (rather than the expected value as of the confirmation date) is inconsistent with the general rule that Plan consideration is measured as of, and at, the time of confirmation. The Court would rightly reject out of hand any request that it now scrutinize the current market values of Tronox's stock in order to determine, after the fact, whether the stock received by General Unsecured Creditors under the Plan was "too much" relative to their claim amounts. The Court would likewise refuse any effort to rewrite the terms of the warrants provided under the Plan to the holders of pre-petition equity, if the terms approved at confirmation now appear too rich. The litigation interests transferred to settle the environmental and tort liabilities should be treated no differently.

Indeed, although imposing such a back-end review of litigation interests transferred as plan consideration is inappropriate in any circumstance, it is particularly inappropriate here because it undermines one of the very benefits that the Court considered in confirming the Plan in this case: "avoiding expensive and lengthy estimation or other proceedings with respect to the amount and priority of Environmental Claims and Tort Claims." Confirmation Order ¶ 38. The Court correctly concluded, at the time of confirmation, that avoiding such estimation proceedings was a factor justifying approval of the Plan and Environmental Settlement Agreement as written. At the time, Anadarko apparently agreed, because it chose not to ask the Court to hold estimation proceedings. Having failed to request an estimation at the proper time, Anadarko should not now be permitted to institute such proceedings at the time of trial in this adversary proceeding, long after the Court approved the Environmental Settlement Agreement and confirmed the Plan.

## CONCLUSION

For the reasons stated above and the reasons contained in the Litigation Trust's motion, the United States respectfully requests that the Court grant the motion, reject defendants' proposed damages cap, and reaffirm the deal that was struck in the Plan and Environmental Settlement Agreement.

Dated: New York, New York
August 31, 2011

PREET BHARARA
United States Attorney
Attorney for the United States of America

By:   /s/ Robert William Yalen
ROBERT WILLIAM YALEN
JOSEPH A. PANTOJA
Assistant United States Attorneys
Telephone: (212) 637-2722
Facsimile:  (212) 637-2686
E-mail: robert.yalen@usdoj.gov