## Exhibit A

### STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THE CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT LIMITING PLAINTIFFS' POTENTIAL DAMAGE AWARD PURSUANT TO SECTIONS 544, 548 AND 550(A) OF THE BANKRUPTCY CODE

Pursuant to Rule 7056-1 of the Local Bankruptcy Rules for the Southern District of New York, Defendants[1] submit this Statement of Undisputed Material Facts ("SOF") in support of their Response and Cross-Motion.[2]

**A.     Plaintiffs' Chapter 11 Cases and Plan of Reorganization**

1.     On January 12, 2009, Tronox Incorporated and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Tronox") each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

**(i)     The Disclosure Statement, Plan and Plan-Related Documents**

2.     On July 7, 2010, Tronox filed a plan of reorganization and related disclosure statement (as subsequently amended and modified several times, the "Initial Plan & Disclosure Statement").[3]

3.     On October 29, 2010 and subsequent dates, Tronox filed portions of the Plan Supplement, which included forms of the Tort Claims Trust Agreement, Tort Claims Distribution Procedures, the Environmental Claims Settlement Agreement, and the Environmental Response Trust Agreements.[4]

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Response and Cross-Motion to which this Statement of Facts is affixed, or if not defined therein, in the Plan (as defined herein).

[2]    To the extent the documents referred to herein and in the Response and Cross-Motion are not publicly available, such documents are attached hereto as "Exhibit 1".

[3]    Main Case Dkt. Nos. 1706, 1707, respectively.

[4]    See Dkt. Nos. 2343, 2441, 2723, 2726, 2727. See also Dkt. Nos. 2768 and 2812 for the execution versions of those documents.

4.      Defendants objected to the Initial Plan & Disclosure Statement and other Plan-related documents on multiple grounds, including that nothing in the Plan should displace the damage limitations imposed by § 550(a) of the Bankruptcy Code.[5]

5.      On October 1, 2010, Tronox filed solicitation versions of its First Amended Joint Plan of Reorganization of Tronox Inc. *Et Al.* Pursuant to Chapter 11 of the Bankruptcy Code (as subsequently amended and modified, the "Plan")[6] and Disclosure Statement relating thereto (the "Disclosure Statement").[7]

6.      The Disclosure Statement provides that "[n]othing herein shall prejudice the right of Tronox or any party in interest to assert any and all objections to, or defenses with respect to, any Environmental Claims" and "Tort Claims".[8] The Plan provides that "[n]othing herein or in any documents executed in connection herewith . . . shall prejudice the rights of . . . Anadarko, and the parties expressly reserve all rights and defenses with respect to the Anadarko Litigation . . . and any and all matters not expressly addressed herein . . . .".[9]

---

[5]  *See* Objection of Anadarko Petroleum Corporation and Kerr-McGee Corporation to the Disclosure Statement Regarding the Joint Plan of Reorganization of Tronox Incorporated, *Et Al.* [Main Case Dkt. No. 1822] at 14, 15-16 (stating that the Disclosure Statement should contain a more precise estimate of the Tort and Environmental Claims); Objection of Anadarko Petroleum Corporation and Kerr-McGee Corporation to the Disclosure Statement Regarding the First Amended Joint Plan of Reorganization of Tronox Incorporated, *Et Al.* [Main Case Dkt. No. 2018] at 11 (collectively, the "Disclosure Statement Obj.") (stating that Defendants' rights should not be prejudiced by Tronox's estimated claim values); Objection of Anadarko Petroleum Corporation and Kerr-McGee Corporation to the Proposed First Amended Plan of Reorganization of Tronox Incorporated, *Et Al.* Pursuant to Chapter 11 of the Bankruptcy Code [Main Case Dkt. No. 2398] (the "Plan Obj.") at 22, 28, 29-30 (stating that (a) any calculation of damages against Anadarko . . . must be limited to only those amounts necessary to 'benefit the estate' as determined under § 550(a); (b) Anadarko should not be bound by Tronox's estimated claim values for the Tort and Environmental Claims; and (c) the Tort Claims Trust Distribution Procedures (i) "appears to be a deliberate attempt to inflate . . . toxic tort liabilities in connection with the Anadarko Litigation"; (ii) contain "Scheduled Values [that] appear to be substantially higher than amounts typically paid for such types of claims"; and (iii) "do not provide adequate direction for the Tort Claims Trustee to evaluate the eligibility of Holders of Tort Claims.").

[6]  Main Case Dkt. Nos. 2196, Exh. A and 2567, Exh. A.

[7]  Main Case Dkt. No. 2196, Exh. B.

[8]  Disclosure Statement at 7 n.7, 11 n.10.

[9]  Plan at 28-29 n.4.

7. On November 3, 2010, the government filed its Notice of Lodging of Proposed Consent Decree and Environmental Settlement Agreement.[10] In accordance with the public notice and comment process contemplated by environmental laws, Defendants submitted comments to the environmental settlement agreement wherein they reserved their right to assert arguments concerning the value of claims being resolved, including under § 550(a) of the Bankruptcy Code.[11]

8. The Court held a confirmation hearing on November 17, 2010,[12] and on November 30, 2010 entered its findings of fact, conclusions of law and order confirming the Plan (the "Confirmation Order").[13]

9. The Confirmation Order provides that "All parties reserve the right to make any available arguments, and assert any available claims and available defenses concerning the effect, if any, of the Plan Documents on the determination of liability or measure of damages (including, to the extent relevant, the value of the Tort Claims and the Environmental Claims) in the Anadarko Litigation, including under section 550 of the Bankruptcy Code."[14]

10. On January 13, 2011, the government filed its Motion to Approve the Consent Decree and Environmental Settlement Agreement Among the Debtors, the Environmental Response Trust Trustees, the United States, and Certain State and Local Environmental Agencies,[15] to which the Defendants also objected.[16] The government's motion states that "to the extent the Anadarko Defendants

---

[10] Dkt. No. 2555.

[11] *In re Tronox Incorporated et al.*, D.J. Ref. 90-11-3-09688 Comments on Notice of Lodging of Consent Decree and Environmental Settlement Under the Comprehensive Environmental Response, Compensation and Liability Act, and the Resource Conservation and Recovery Act. at 2.

[12] *See* 11/17/2010 H'rg Tr. (the "Confirmation H'rg Tr.").

[13] *See* Findings of Fact, Conclusions of Law and Order Confirming the First Amended Joint Plan of Reorganization of Tronox Incorporated, *Et Al.* Pursuant to Chapter 11 of the Bankruptcy Code [Main Case Dkt. No. 2567].

[14] Confirmation Order at ¶ 191.

[15] Main Case Dkt. No. 2692.

[16] *See* Main Case Dkt. No. 2724.

are concerned that any provisions regarding the cash payments or allocations in the Settlement Agreement will prejudice their rights . . . the Confirmation Order makes clear that 'all parties reserve the right to make any available arguments . . . concerning the effect . . . of the Plan Documents on the determination of liability or measure of damages . . . in the Anadarko Litigation . . .'".[17]

11. The Court entered an order approving the environmental settlement agreement on January 26, 2011.[18]

12. On February 14, 2011, the Plan became effective.[19]

13. The Plan provides for, among other things, the creation of a litigation trust to which Tronox contributed all its rights and interests in this litigation.[20]

**(ii) Treatment of Claims**

14. The Plan classifies claims filed by tort creditors (collectively, the "Tort Claims") in Class 4.[21] Pursuant to the Plan, the Tort Claims will be satisfied from the Tort Claims Trust, which has been funded with (i) the right to 12% of the proceeds of this litigation, (ii) $12.5 million in cash and (iii) certain insurance assets.[22]

15. The Plan classifies claims filed by environmental creditors (collectively, the "Environmental Claims") in Class 5.[23] The Plan provides for the creation of multiple environmental response trusts (collectively, the "Environmental Response Trusts"), which have been funded with

---

[17] Main Case Dkt. No. 2692 at 24-25.

[18] Order Granting United States' Motion to Approve the Consent Decree and Environmental Settlement Agreement [Main Case Dkt. No. 2747].

[19] *See* Notice of (A) (*sic*) Occurrence of Effective Date of Plan of Reorganization, (II) Assumption and Rejection of Executory Contracts and Unexpired Leases and (III) Deadlines for Filing Certain Claims [Main Case Dkt. No. 2827].

[20] Plan at 28.

[21] *Id.* at 20-21.

[22] Plan at 20-21, 27-28; *see also* Tort Claims Trust Distribution Procedures [Main Case Dkt. No. 2768, Exh. B].

[23] Plan at 21.

(i) $270 million in cash, (ii) the right to 88% of the proceeds of this litigation, (iii) certain real property owned by Tronox and related assets, (iv) Tronox's ownership interests in certain entities and real property located in Nevada, and (v) insurance assets.[24] The Plan also provides that any funds remaining in the Environmental Response Trusts after completion of environmental activities and reimbursement of costs will be transferred in accordance with the terms of the applicable trust agreement as follows: first, to trust accounts for sites owned by Tronox in the same state; second to trust accounts for sites owned by Tronox in other states; third, to trust accounts for sites not owned by Tronox; and fourth, to the "Superfund" established under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA").[25]

### B. Plaintiffs' Fraudulent Transfer Action

#### (i) Plaintiffs' Allegations

16. On May 12, 2009, Plaintiffs commenced this litigation against Defendants,[26] and on February 7, 2011, Plaintiffs filed the Second Amended Adversary Complaint (the "Complaint").[27]

17. On June 15, 2009, the government intervened in this litigation and asserted a right to recover claims under the Federal Debt Collection Procedures Act.[28]

#### (ii) Fact Discovery

18. Pursuant to the Fourth Amended Case Management Order, the parties have produced extensive fact discovery.[29] Tronox's production included, among other things, documents related to a site in Henderson, Nevada for which Environmental Claims have been asserted.[30]

---

[24] *Id.* at 21-22, 26, 28.

[25] *Id.* at 26; *see also, e.g.*, Nevada Environmental Response Trust [Main Case Dkt. No. 2812, Exh 1], at 13.

[26] Dkt. No. 1.

[27] Dkt. No. 223.

[28] *See* Notice of Motion of the United States of America's Motion to Intervene [Dkt. No. 5]; Order Granting the United States of America's Motion to Intervene [Dkt. No. 22].

[29] Fourth Amended Case Management Order [Dkt. No. 230].

### (iii) Defendants' Motion to Bifurcate

19. On June 22, 2011, Defendants filed their Motion to Bifurcate Trial on Plaintiffs' Liability and Damage Claims (the "Bifurcation Motion").[31] On July 8, 2011, Plaintiffs objected to the Bifurcation Motion (the "Bifurcation Objection"),[32] and Defendants replied on July 16, 2011.[33]

20. A hearing was held on the Bifurcation Motion on July 19, 2011. At the hearing, the Court suggested that the issue raised by Defendants concerning whether § 550(a) of the Bankruptcy Code limits Plaintiffs' ability to recover the full amount of their requested damages may be addressed on summary judgment.[34]

### (iv) Valuation of Claims

#### (a) Tort Claims

21. According to Plaintiffs, Tort Claimants filed 11,501 proofs of claim against the Tronox estates totaling approximately $2.05 billion.[35] The Confirmation Order provides that any Tort Claims not already "Allowed" are "deemed objected to and shall be channeled to the Tort Claims Trust for allowance or disallowance in accordance with the Tort Claims Trust Distribution Procedures."[36]

---

[30] *See* Basic Remediation Company Environmental Briefing for Kerr-McGee Chemical LLC [TRX-ENVTL 1706411-492] (the "Environmental Briefing").

[31] *See* Anadarko Petroleum Corporation and Kerr-McGee Corporation's Motion to Bifurcate Trial on Plaintiffs' Liability and Damage Claims [Dkt. No. 239].

[32] *See* Plaintiff's Objection to Defendants' Motion to Bifurcate Trial on Liability and Damages Claims [Dkt. No. 244].

[33] Reply to Plaintiffs' Objection to Defendants' Motion to Bifurcate Trial on Liability and Damage Claims [Dkt. No. 250].

[34] 7/19/11 H'rg Tr. at 12:12-13 (stating that the idea of limiting recovery to the claims of unsecured creditors is "perhaps at the top of your summary judgment list"); 7/19/11 H'rg Tr. at 13:16-19 ("I'm just trying to clarify issues which I think we can do perhaps and same [sic] ourselves a lot of time and perhaps a lot of summary judgment paper by simply putting aside some of the issues."); 7/19/11 H'rg Tr. at 51:-7-8 (stating that "[p]erhaps th[e] § 550(a)] issue should be . . . on the list of their summary judgment possibilities.").

[35] *See* Disclosure Statement at 30.

[36] Confirmation Order at ¶ 184.

22.	In the Disclosure Statement, Tronox valued the Tort Claims at $500 million to $1 billion, but stated that such values were for settlement purposes only and that no party was bound thereby.[37]

23.	On or about June 23, 2010, Tronox's restructuring advisors, Alvarez & Marsal North America, LLC ("A&M"), analyzed the Tort Claims, and, after removing withdrawn claims and claims to which Tronox believed there were valid objections, valued them at approximately REDACTED REDACTED.[38]

24.	On June 24, 2011, Plaintiffs served the Report of Denise Neumann Martin (the "Martin Report").[39] The Martin Report estimates that Tronox's liability for Tort Claims as of November 28, 2005 was REDACTED.[40]

25.	Defendants' tort expert, Analysis Research Planning Corporation, intends to submit its export report on October 21, 2011, and will value the Tort Claims at a significantly lower amount than Plaintiffs' expert.

26.	The Court has never valued the Tort Claims for any purpose in the main bankruptcy case or in this Adversary Proceeding.[41]

**(b)	Environmental Claims**

27.	According to Plaintiffs, Environmental Claimants filed 122 proofs of claim totaling $4.92 billion against the Tronox estates.[42] A Government Rule 30(b)(6) witness, W. David

---

[37]   *See id.* at 11 n.10 (stating that the range of estimates for the Tort Claims for "plan settlement purposes only pursuant to Federal Rule of Evidence 408 and state law equivalents" and that "[n]othing herein shall prejudice the right of Tronox or any party in interest to assert any and all objections to, or defenses with respect to, any Tort Claims").

[38]   *See* TRX-ADV20985390, Email from Gary Barton, Senior Director, A&M, to Tarig Kozouz, Director, AlixPartners, LLP (June 23, 2010, 2:26 PM).

[39]   *See* 7/19/11 H'rg Tr. at 6:4-8 (counsel for Plaintiffs responding to the Court's question by affirmatively stating that Plaintiffs' expert reports had been recently served).

[40]   Martin Report at 30.

[41]   *See generally* Main Case Docket; Adv. Pro. No. 09-01198 Docket.

Keefer, testified during his deposition, that proofs of claim filed by the Government were "protective," and do not necessarily reflect accurate estimates of expected costs associated with the Environmental Claims.[43]

28. In the Disclosure Statement, Tronox valued the Environmental Claims at $1.4 billion to $5.2 billion, but stated that such values were for settlement purposes only and that no party was bound thereby.[44]

29. On or about June 23, 2010, A&M analyzed the Environmental Claims, and, after removing withdrawn claims and claims to which Tronox believed there were valid objections, valued them at approximately REDACTED[45]

30. On June 24, 2011, Plaintiffs served the Environmental Liability Evaluation of Tronox Legacy Sites prepared by Neil M. Ram, Ph.D. (the "Ram Report"), wherein Ram states that the value of Tronox's Environmental Claims as of November 2005 ranges from a low value of REDACTED to a high value of REDACTED[46]

31. Defendants' environmental expert, Gnarus Advisors LLC, will submit its expert report on November 3, 2011, and will value the Environmental Claims at a significantly lower amount than Plaintiffs' expert.

---

[42] See Disclosure Statement at 30.

[43] See Keefer Depo. Tr. at 54:13-15 (explaining that when initially estimating costs to cleanup a site, the United States produces a "cost that is a protective amount for the United States relative to the potential costs of the site.").

[44] See Disclosure Statement at 7 n.7 (stating that the range of estimates for the Environmental Claims were for "plan settlement purposes only pursuant to Federal Rule of Evidence 408 and state law equivalents" and that "[n]othing herein shall prejudice the right of Tronox or any party in interest to assert any and all objections to, or defenses with respect to, any Environmental Claims.").

[45] See TRX-ADV20985390, Email from Gary Barton, Senior Director, A&M, to Tarig Kozouz, Director, AlixPartners, LLP (June 23, 2010, 2:26 PM).

[46] Ram Report, Executive Summary at 1; see also Ram Report at Figure 3-1 (describing the methods used to calculate net present value).

32.  The Court has never valued the Environmental Claims for any purpose in the main bankruptcy case or in this Adversary Proceeding.[47]

### (v) Value of Funds Distributed and Anticipated Recovery

33.  Consideration has already been distributed on account of Environmental and Tort Claims under the Plan. On July 6, 2011, Tronox posted on its website a Consolidated Financial Statement for Tronox and its affiliates auditing their balance sheet and other financial statements as of December 31, 2010, which was prepared by Grant Thornton LLP.[48] As recounted therein, the Environmental Response Trusts have received $325.9 million in cash and accounts receivable, and "other non-monetary assets . . . valued at $68.4 million," for a total of $394.3 million.[49] In addition, the Environmental Response Trusts have received certain insurance assets, which are not valued in the Grant Thornton Audit.[50]

34.  On June 24, 2011, Plaintiffs served the Expert Report of Grant W. Newton (the "Newton Report"), wherein Newton analyzes the value of three insurance policies which Plaintiffs hold to cover environmental costs at certain sites.[51] Newton assigned a present value of REDACTED to these policies.[52] Accordingly, the value of the consideration, including the insurance policies, contributed to the Environmental Response Trusts is REDACTED

---

[47] See generally Main Case Docket; Adv. Pro. No. 09-01198 Docket; see also Confirmation H'rg Tr. at 72:19-21 (Court stating that Tronox's position that the Environmental Claims are so enormous that they leave Tronox hopelessly insolvent is "obviously not binding or preclusive of any right of any other party or definitely Anadarko.").

[48] TRONOX INCORPORATED, CONSOLIDATED FINANCIAL STATEMENTS (Dec. 31, 2010), http://tronox.com/SiteObjects/published/20011F12491745CD824BB40E8EEA8C84/E11682EBFB34AA75736 5228BD6FAEEE0/file/2010%20Financial%20Statements%20-%20FINAL.pdf (the "Grant Thornton Audit").

[49] Grant Thornton Audit at 12, 43.

[50] Id.

[51] Newton Report at 50.

[52] Id. at 50.

35. The Torts Claim Trust has received approximately $17.6 million in cash and accounts receivable.[53] In addition, the Torts Claim Trust has received certain insurance assets, which are not valued in the Grant Thornton audit report.[54]

36. Based on the foregoing, and without taking into account any recovery from this Adversary Proceeding, consideration totaling at least REDACTED has already been distributed to the Environmental Response and Tort Trusts.

### (vi) Recovery on Claim Amounts

37. Tronox's CEO stated in his declaration supporting confirmation of the Plan that no creditor would be paid more than in full under the Plan.[55] The declaration of Tronox's financial advisor similarly stated that the global settlement was "premised on a fair allocation of value among creditors where none is being paid in full."[56] In reliance on these sworn declarations, the Court found that the Plan satisfied the best interests test of Bankruptcy Code § 1129(a)(7), the feasibility requirement of § 1129(a)(11), and the fair and equitable requirement of § 1129(b).[57]

### (vii) Amount of Recovery Sought By Plaintiffs

38. On June 24, 2011, Plaintiffs served the Expert Report of Jack F. Williams, JD, CIRA, CDBV (the "Williams Report"). The Williams Report analyzed, among other things, the

---

[53] Grant Thornton Audit at 12, 43.

[54] *Id.*

[55] Declaration of Dennis L. Wanlass in Support of Confirmation of the First Amended Joint Plan of Reorganization of Tronox Incorporated *Et Al.* Pursuant to Chapter 11 of the Bankruptcy Code [Main Case Dkt. No. 2500], at 15 ("Moreover, I understand that no Class of creditors is recovering more than in full under the Plan on account of its Claims.").

[56] Declaration of Todd R. Snyder in Support of Confirmation of the First Amended Joint Plan of Reorganization of Tronox Incorporated *Et Al.* Pursuant to Chapter 11 of the Bankruptcy Code [Main Case Dkt. No. 2501], at 11.

[57] *See* Confirmation Order at 27-31; *id.* at 30 (finding that the Plan is "fair and equitable" as shown by Tronox's proffers because "no junior Class of Claims or Equity Interest will receive or retain any property under the Plan on account of such Claims or Equity Interests.").

appropriate calculation of damages, if any, in this litigation.[58] The Williams Report concluded that the

REDACTED

REDACTED as of November 28, 2005.[59]

39. Plaintiffs stated in their Bifurcation Objection that they intend to "roll forward" the value of the transfers allegedly made on November 28, 2005 to the judgment date using the oil and gas indices Williams used in his report to determine the value of oil and gas assets at various points in time.[60]

40. Applying the oil and gas indices to Williams' valuation of the oil and gas assets as of November 28, 2005[61] and moving the indices forward to REDACTED (the last date for which Williams provides data on the indices) yields estimated damages of REDACTED.[62] However, because trial is not set until April 2, 2012,[63] Williams would presumably roll forward the value of oil and gas assets to an eventual judgment date, thereby potentially increasing Plaintiffs' asserted damages even further.

---

[58] Williams Report at 1.

[59] Id. at 67 (emphasis added). Williams' damage calculations are predicated on the assumption that all transfers occurred on or before November 25, 2005. See generally Williams Report; id. at 14, 55, 67. Williams arrived at his REDACTED figure by valuing liabilities REDACTED and the assets allegedly transferred by Tronox as of November 28, 2005 at REDACTED, and subtracting REDACTED in value provided by Defendants to Tronox. Id. at 60-61.

[60] See Bifurcation Objection at 9 ("Professor Williams uses the same oil and gas indices to roll the value of the transferred assets forward to the transfer date as part of his reasonably equivalent value analysis as he would use to calculate the value of those assets as of the judgment date."); see also Williams Report at 46-47 (explaining how Williams' analysis uses the oil and gas indices to estimate value).

[61] Williams Report at 60.

[62] This calculation applies the REDACTED return on the oil and gas indices between November 28, 2005 and REDACTED REDACTED (the amount at which Williams values the oil and gas assets as of November 28, 2005), but excludes REDACTED in shared services assets to which Williams does not apply the oil and gas indices, resulting in a calculation of REDACTED After subtracting REDACTED (the value of the consideration which Williams acknowledges was given to Tronox by Defendants), and adding back the REDACTED in shared services assets, the total adjusted value is REDACTED

[63] See Fourth Amended Case Management Order [Dkt. No. 230]. The parties are currently negotiating amendments to the Case Management Order which would extend the trial date to May 2011.

41. Plaintiffs reserved the right to seek prejudgment interest from the date of the transfers.[64] Using Plaintiffs' REDACTED claim as of November 28, 2005 and applying (by way of example only) a simple annual interest rate of 4.3% (the federal judgment interest rate in November of 2005) yields a value of approximately REDACTED as of September 15, 2012.

---

[64] Williams Report at 67 (stating that REDACTED) REDACTED