Hearing Date: December 22, 2011 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: December 7, 2011 4:00 p.m. (Prevailing Eastern Time)

| | |
|---|---|
| Melanie Gray (*admitted pro hac vice*) | Richard A. Rothman (RR 0507) |
| Lydia Protopapas (LP 8089) | Bruce S. Meyer (BM 3506) |
| Jason W. Billeck (*admitted pro hac vice*) | WEIL, GOTSHAL & MANGES LLP |
| WEIL, GOTSHAL & MANGES LLP | 767 Fifth Avenue |
| 700 Louisiana, Suite 1600 | New York, New York 10153 |
| Houston, Texas 77002 | Telephone: (212) 310-8000 |
| Telephone: (713) 546-5000 | Facsimile: (212) 310-8007 |
| Facsimile: (713) 224-9511 | |
| | |
| James J. Dragna (*admitted pro hac vice*) | Thomas R. Lotterman (*admitted pro hac vice*) |
| BINGHAM MCCUTCHEN LLP | Duke K. McCall, III (*admitted pro hac vice*) |
| 335 South Grand Avenue, Suite 4400 | BINGHAM MCCUTCHEN LLP |
| Los Angeles, California 90071 | 2020 K Street, NW |
| Telephone: (213) 680-6400 | Washington, DC 20006 |
| Facsimile: (213) 680-6499 | Telephone: (202) 373-6000 |
| | Facsimile: (202) 373-6001 |

*Counsel to Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | ) Chapter 11 |
| | ) |
| **TRONOX INCORPORATED,** *et al.*, | ) Case No. 09-10156 (ALG) |
| **Debtors.** | ) |
| | ) Jointly Administered |
| **TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC,** | ) ) Adv. Pro. No. 09-01198 (ALG) ) ) |
| **Plaintiffs,** | ) |
| v. | ) **DEFNDANTS' MEMORANDUM OF** |
| | ) **LAW IN SUPPORT OF THEIR** |
| **ANADARKO PETROLEUM CORPORATION and KERR-McGEE CORPORATION, KERR-MCGEE OIL & GAS CORPORATION, KERR-MCGEE WORLDWIDE CORPORATION, KERR-MCGEE INVESTMENT CORPORATION, KERR-MCGEE CREDIT LLC, KERR-MCGEE SHARED SERVICES COMPANY LLC, AND KERR-MCGEE STORED POWER COMPANY LLC** | ) **MOTION IN LIMINE TO EXCLUDE** ) **DEPOSITION TESTIMONY OF** ) **THE POWELL LAW GROUP, P.C.** ) **OR, ALTERNATIVELY, FOR AN** ) **ORDER ALLOWING DEFENDANTS** ) **TO IDENTIFY ADDITIONAL** ) **WITNESSES** ) ) |
| **Defendants.** | ) |
| **THE UNITED STATES OF AMERICA,** | ) |
| **Plaintiff-Intervenor,** | ) |
| v. | ) |
| **TRONOX, INC., TRONOX WORLDWIDE LLC, TRONOX LLC, KERR-McGEE CORPORATION and ANADARKO PETROLEUM CORPORATION,** | ) ) ) ) |
| **Defendants.** | ) |

Defendants Anadarko Petroleum Corporation, Kerr-McGee Corporation, Kerr-McGee Oil & Gas Corporation, Kerr-McGee Worldwide Corporation, Kerr-McGee Investment Corporation, Kerr-McGee Credit LLC, Kerr-McGee Shared Services Company LLC and Kerr-McGee Stored Power Company LLC respectfully submit this memorandum of law in support of their Motion *In Limine* to Exclude Deposition Testimony of the Powell Law Group, P.C. or, Alternatively, for an Order Allowing Defendants to Identify Additional Witnesses.[1]

**PRELIMINARY STATEMENT**

About two months after the close of fact discovery, Plaintiff Anadarko Litigation Trust took the Rule 30(b)(6) deposition of the Powell Law Group, P.C (the "Powell Group"). The Powell Group represents tort claimants, in state court and this bankruptcy case, who are seeking damages for alleged decades-old exposure to creosote from a Tronox plant in Avoca, Pennsylvania (the "Avoca Plant"). For the deposition, the Powell Group designated its founder and named partner, Robert Powell, to testify as its representative. His license to practice law was suspended by the Pennsylvania Supreme Court after he pleaded guilty to crimes of dishonesty for paying kickbacks to judges.

The deposition was beyond the pale. Powell filled his testimony with inflammatory accusations, with speculation about numerous people connected with the Avoca Plant, and with technical, scientific, and medical opinions he is not qualified to render. Afterward, Defendants approached Plaintiff about Powell's testimony and proposed that significant portions be stricken; Plaintiff declined, responding that it intends to rely on the testimony to support its case-in-chief. Lotterman Decl. ¶ 6.

Powell's testimony is the definition of inadmissible evidence. Most of it lacks foundation. Other parts are improper opinion testimony by a lay witness. And throughout, it is

---

[1] The exhibits this memorandum mentions are attached to the Declaration of Thomas L. Lotterman, dated November 16, 2011 (the "Lotterman Declaration"), which is submitted along with the memorandum.

1

inflammatory, prejudicial, and adds nothing to Plaintiff's fraudulent conveyance and breach of fiduciary duty claims. Admitting much of this testimony would waste time and money and needlessly delay the proceedings. At a minimum, the most egregious sections of this testimony (identified by highlighting the transcript, which is Exhibit A to the Lotterman Declaration) should be excluded.

Moreover, given the serious credibility issues of Powell (and his law firm), the Court ought to exclude the testimony in its entirety.

If, however, Plaintiff is allowed to admit some or all of Powell's most egregious testimony, Defendants request an order allowing them to identify additional fact and expert witnesses so that they can properly address all of the new issues that Powell's testimony raises (well after the close of fact discovery).[2]

## FACTUAL BACKGROUND

### I. THE AVOCA LITIGATION

From 1964 until 1996, Kerr-McGee Chemical LLC operated the Avoca Plant. In 2001, approximately 1,000 claimants from Avoca filed complaints against Kerr-McGee Chemical LLC and others in the Court of Common Pleas of Luzerne County, seeking damages for harm allegedly resulting from exposure to creosote from the Avoca Plant. After the parties reached a settlement in 2003, the suits were dismissed.

In 2005, the Powell Group, led by Powell, filed copycat lawsuits on behalf of about 4,600 new claimants (the "Avoca Litigation"). The defendants' summary judgment motion was denied (by a judge who was later embroiled in the Powell bribery scandal, Ex. B), and subsequent settlement negotiations were unsuccessful. Shortly before trial, Tronox LLC (which had

---

[2] In focusing this motion on only a few grounds for excluding Powell's testimony, Defendants do not waive, and expressly preserve, the right to object on all grounds to any portion of Powell's testimony that is designated for use in these proceedings. For instance, Powell's testimony is riddled with multiple layers of hearsay.

2

replaced Kerr-McGee Chemical LLC as defendant) agreed to arbitrate the several claims of several claimants.

Tronox's bankruptcy petition put a stop to the arbitrations, and the 4,362 claimants who had not yet arbitrated filed proofs of claim in the bankruptcy proceeding. Ex. C. Like other tort claimants, those claimants are beneficiaries of the Anadarko Litigation Trust to the extent their claims are allowed. Ex. D. Due to their contingency fee agreements, the Powell Group and Powell have a 40% interest in the proofs of claim and, thus, have a stake in the adversary proceeding as well. Ex. E.

## II. PLAINTIFF NOTICES THE POWELL GROUP DEPOSITION AT THE END OF FACT DISCOVERY

On June 3, 2011, three weeks before the cut-off of two years of fact discovery in this case, Plaintiff disclosed the Powell Group and Powell as likely to have discoverable information and informed Defendants that it intended to depose the Powell Group pursuant to Rule 30(b)(6). Lotterman Decl. ¶ 3. On June 6, 2011, Plaintiff served a subpoena on the law firm, identifying six broad topics for a deposition to take place on June 23, 2011, the day before the conclusion of fact discovery. Id. Although Defendants believed the deposition was needless, they had no choice but to serve their own subpoena in response and to request documents related to the deposition topics. Id. ¶ 4. The deposition was postponed several times at the request of Powell and because of document production issues. Id. The deposition ultimately took place on August 25, 2011 — two months after the close of fact discovery. Id. ¶ 5.

## III. POWELL AND HIS 30(B)(6) DEPOSITION

Powell is a singularly unethical lawyer. He gained widespread national notoriety after being convicted as a key figure in a judicial kickback scheme known as "Kids-for-Cash" in Pennsylvania. Between January 2003 and January 2007, Powell paid two state judges (Judges Ciavarella and Conahan) more than $2.8 million in exchange for their handing out harsher

3

sentences to juveniles and sending them to detention centers that Powell owned. Exs. F, G. One of Powell's law partners, Jill Moran, testified at a criminal trial that she delivered to Judge Conahan three FedEx boxes stuffed by Powell "with banded bunches of money. Ex. H. For his part in the scheme, Powell was charged in a two-count felony information and pleaded guilty. Exs. I, J. His law license was suspended. Ex. K. The same year that another state judge (Judge Olszewski) denied defendants' motion for summary judgment in the Avoca Litigation (that Powell was spearheading), Powell arranged for that judge to fly on a private jet with Judge Conahan for a vacation to Florida, where they reportedly partied with a convicted drug dealer. Ex. B. In March 2008, a federal grand jury subpoenaed county court records of all civil cases handled by Judges Ciavarella, Conahan, and Olszewski from 2002 to 2008, including the Avoca case handled by Judge Olszewski. Id.

Powell's deposition resembled a plaintiff's closing argument to a jury more than a question-and-answer session.[3] He repeatedly gave non-responsive answers to questions, then launched into inflammatory monologues about his view of the "facts" as to what transpired decades ago at the Avoca Plant. The following selections are representative:

> Now, one of the heinous things about what Kerr-McGee[4] did was they knew what they were doing in terms of polluting the air, the water and land.
>
> And in Avoca one mile square the things that are right next to the plant are the ball fields where everybody congregated as a community, not just to play softball or practice football, it is where the kids went and played in the summertime. The kids went and swam in the stream next to the plant because they didn't have a community pool.
>
> ***
>
> Kerr-McGee didn't want to know what was coming off the cooling tower because they knew that gave them a problem and as it turns

---

[3] In fact, Powell's opening and closing statement binders were made exhibits to the Powell Group deposition and are among the exhibits defendants seek to exclude.

[4] Powell repeatedly referred to "Kerr McGee" instead of Kerr-McGee Chemical LLC. Ex. A at 138:16-21.

4

> out they said, well, why worry about these coal miners which is what they said when they were dumping the water down the bore hole, oh, these coal miners, who cares.

Ex. A at 98:10–24, 94:2–9; *see also, e.g.*, id. at 41:6–18, 59:25–60:18,[5] 61:23–62:15, 80:22–81:19, 82:25–85:2, 86:2–88:7, 88:19–90:8, 91:2–93:25. Powell also provided opinions on medical and environmental issues related to these alleged events at the Avoca Plant. *See, e.g.*, id. at 9:18–22, 15:2–24, 20:11–20, 25:2–13, 28:4–18, 34:8–35:5, 71:4–11, 98:25–99:14, 106:8–108:14, 111:21–113:25.

On November 4, 2011 (about two months after his deposition), Powell was sentenced to prison. Ex. L. He must report to the Federal Bureau of Prisons on November 30, 2011. Id.

## ARGUMENT

**I. POWELL'S TESTIMONY IS NOT BASED ON PERSONAL KNOWLEDGE OR EXPERIENCE.**

In the absence of personal knowledge and experience, a lay witness's testimony is inadmissible. *See United States v. Gallagher*, No. 310-CR-00093, 2011 WL 1097192 (D. Conn. Mar. 13, 2011) (lay witnesses "may not speculate in their answers to questions and . . . their testimony must be grounded in observation or other first hand knowledge; their opinions must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience"); *Helena Assocs., LLC v. EFCO Corp.*, No. 06 CIV. 0861, 2008 WL 2117621, at \*6 (S.D.N.Y. May 14, 2008) (lay opinion testimony is limited to that based on the perception of the witness).

Powell's testimony for the Powell Group is not based on personal knowledge or experience with the Avoca Plant's operations. He and his firm are merely lawyers hired to

---

[5] This testimony discusses Exhibit 16 to the Powell Group deposition, a video produced by the Powell Group that depicts Powell's alleged "facts" regarding the Avoca Plant and the claimants in the Avoca Litigation in a highly inflammatory manner. Powell testified that this video provided a introduction "to the folks and the faces of Avoca that had to live with what Kerr-McGee had done for 30 plus years." Ex. A at 60:12–18. But this exhibit is simply not relevant to this litigation and should be excluded, along with Exhibits 21, 22 and 25 (opening and closing arguments for the Avoca Litigation arbitrations).

5

represent plaintiffs who claim that operations at the Avoca Plant injured them. Before being contacted in 2003 about the litigation, Powell "didn't really know anything about what Kerr-McGee had done or that even Kerr-McGee had a plant in the community." Ex. A at 10:18–11:10. He never saw the Avoca Plant because, upon closing the plant in 1996, "[Kerr-McGee] completely disassembled it and took it off and away in rail cars." Id. at 125:3–6. Everything Powell claimed to know about Avoca and the historical operations at the plant he learned as a lawyer litigating his clients' claims.[6]

Powell's testimony was speculative as well. For instance, he testified at length about the intent and state of mind of persons who allegedly oversaw operations at the Avoca Plant decades ago. Yet he offered no foundation for his beliefs.

There is nothing in Powell's testimony to show that, as the corporate designee of the Powell Group, he was vicariously testifying about information with which the Powell Group had "personal" knowledge or experience. *See Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 215 n.5 (S.D.N.Y. 2007) (information not within the personal knowledge of a Rule 30(b)(6) designee must nonetheless be "information within the knowledge and control of the corporation"), *aff'd*, 354 F. App'x 496 (2d Cir. 2009). Powell's law firm was in the same position as Powell himself. All of its knowledge of the Avoca Plant and operations is secondhand.

The portions of Powell's testimony that lack foundation in either his or his firm's firsthand experience must be excluded.

---

[6]  For this reason, Powell's testimony is also inadmissible hearsay (in some cases, multiple hearsay). The hearsay rules apply to lay witnesses who conduct interviews, then compile and repeat information — except to the extent that the witness has personal knowledge of the information. *See Med. Assurance Co. v. Miller*, 779 F. Supp. 2d 902, 915 n.2 (N.D. Ind. 2011) (private investigator); *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (police report); *United States v. Bertling*, No. CR05-4125, 2006 WL 2549253, at *5 (N.D. Iowa Sept. 1, 2006) ("information from, by, or about [potential witnesses] in [an attorney's] discovery file might very well be hearsay").

6

## II. POWELL'S IMPROPER OPINION TESTIMONY CONCERNING EXPERT ISSUES MUST BE EXCLUDED.

A lay witness may not testify as to "scientific, technical, or other specialized knowledge within the scope of Rule 702 [Testimony by Experts]." Fed. R. Evid. 701. "[L]ay opinion testimony is admissible only when based on the witness' direct personal experience, whether or not the expertise of the witness aided his perceptions, and any testimony that is primarily . . . an analysis based on specialized knowledge is excludable where the witness has not been qualified as an expert." *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004); *accord In re MarketXT Holdings Corp.*, No. 04-12078, 2011 WL 1422012, at *2 (Bankr. S.D.N.Y. Jan. 7, 2011).

As noted, Powell's testimony is not based on personal knowledge, and he was never identified as an expert by Plaintiff. (Not that he could have been — he lacks technical and scientific qualifications and has not complied with any of the rules concerning expert witnesses.) Yet he testified on matters clearly within the province of experts, including environmental matters like pathways of the waste stream and air modeling at the Avoca Plant. *See, e.g.*, Ex. A at 85:3–17, 90:9–17. Powell also testified extensively about the toxicology of creosote. See, for example, the following:

> [T]here was overwhelming proof beginning in the late 1700s that creosote and coal tar was really bad stuff. There is 200 years worth of medical literature which tells you that the PAHs that are — result from coal tar or coal tar pitch are as dangerous a carcinogen that you can find. In fact, our early research told us that when medical researchers want to make or might want to cause a mouse to get sick they paint it with coal tar as we knew that coal tar was bad stuff.
>
> ***
>
> Our experts had already started to put together information which showed that in fact if you are smoking a cigarette while you are being exposed to a constant barrage of molecular PAHs from Kerr-McGee's cooling tower that in fact you weren't just smoking one

7

>cigarette, you may as well have the 200 cigarettes in your hand because the multiplier effect was vast.

Ex. A at 23:25–24:19, 67:2–11; *see also, e.g.*, id. at 30:4–20, 82:2–19. This and similar testimony — in which Powell admits that he is repeating what an expert in another case told him — crosses the line from lay testimony to scientific, technical, and specialized knowledge within the province of expert testimony. *See, e.g.*, id. at 26:8–15, 95:16–97:4, 99:15–102:12. It must be excluded.

### III. ANY PROBATIVE VALUE OF POWELL'S TESTIMONY IS FAR OUTWEIGHED BY ITS PREJUDICIAL EFFECTS.

Even evidence which is relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the [factfinder], or by considerations of undue delay [or] waste of time . . . ." Fed. R. Evid. 403; *see also MarketXT Holdings*, 2011 WL 1422012, at *6. All of Powell's testimony – not just the most egregious sections – fails Rule 403.

#### A. Powell's testimony has little, if any, probative value.

Most of Powell's testimony has no probative value because it is not relevant to the fraudulent transfer and breach of fiduciary duty claims pending in this proceeding. 2d Am. Compl. ¶¶ 141–97 (Counts I-V). Those claims arise out of the initial public offering and spinoff of Tronox in 2005 and 2006. Regarding Avoca, only the valuation of the Avoca Litigation may be potentially relevant to the pending claims, and then only insofar as it may tend to demonstrate whether or not Tronox was solvent at the time of the alleged fraudulent transfer.

Powell's wide-ranging testimony is too far removed from Tronox's solvency to be relevant to this case. His take on the operations at the Avoca Plant between 1964 and 1996 is not relevant. Nor does his testimony about the process of the Avoca Litigation — for example, the Powell Group's engagement of paid litigation experts, discovery, Tronox's denied motion for

8

summary judgment, and post-spinoff arbitrations — tend to show the valuation of the Avoca Litigation. *See, e.g.*, Ex. A at 16:22–30:20, 30:21–32:7, 32:8–47:23, 47:24–119:18. This is not the place to try the merits of the Avoca Litigation.

In fact, both parties have retained experts to opine on the valuation of the Avoca Litigation and other toxic tort litigation at the time of Tronox's spinoff. Lotterman Decl. ¶ 7. So, even if some portion of Powell's testimony were relevant, it would have no meaningful probative value beyond the experts' testimony.

In measuring the probative value of Powell's testimony, the Court should not disregard Powell's personal history. As noted above, his law license has been suspended; he has pleaded guilty to felony crimes of dishonesty; and he has a financial stake in the outcome of this litigation. The veracity of his testimony is thus highly questionable, to say the least. *See United States v. White*, No. 08CR0682, 2009 WL 4730234, at *4 (E.D.N.Y. Dec. 4, 2009) (crimes of dishonesty "bear [particularly] on a witness's propensity to testify truthfully" (quoting *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005))). Moreover, given the participation of other Powell Group partners in the "Kids for Cash" scheme, it is not just Powell whose testimony lacks credibility; the Powell Group as a whole lacks credibility. The probative value of Powell's testimony, therefore, is meager.

        **B.**       **Powell's testimony is highly prejudicial.**

Whatever minimal probative value Powell's testimony might have is far outweighed by its speculative and inflammatory nature. As noted above, he flagrantly accuses "Kerr-McGee" and its employees of being indifferent to the lives of residents. His descriptions of the Avoca claimants and their injuries are calculated to incite passionate reactions. And, he purports to offer highly technical and scientific testimony without any basis. *See Helena Assocs., LLC v. EFCO Corp.*, No. 06 CIV. 0861, 2008 WL 2117621 (S.D.N.Y. May 14, 2008) (defendant would

9

be prejudiced if witness who was not designated as an expert is permitted to provide expert testimony).

If Powell's testimony (including his deposition exhibits) is admitted into evidence in the adversary proceeding, Defendants would need to dedicate time at trial to rebut the irrelevant testimony and to limit its prejudicial impact. Indeed, responding to Powell's testimony will take time and resources even before trial. Powell raised several new matters *after the close of fact discovery in this case*. To be in a position to respond to those charges at trial, Defendants need more discovery; they would, in effect, need to investigate and possibly duplicate the Avoca Litigation between Powell's clients and Tronox. Admitting Powell's testimony, therefore, unnecessarily risks delaying the adversary proceeding, which would prejudice all parties.

Because Powell's testimony fails Rule 403, it ought to be excluded in its entirety. At a minimum, this Court should exclude the most egregious sections of that testimony and certain exhibits, as identified in Exhibit A.

## IV. ALTERNATIVELY, THE COURT SHOULD ALLOW DEFENDANTS TO IDENTIFY ADDITIONAL WITNESSES AND UNDERTAKE ADDITIONAL DISCOVERY TO REBUT POWELL'S TESTIMONY.

If the Court determines that the most egregious sections of Powell's testimony are admissible (or if it delays resolving the question until trial), Defendants respectfully request an order allowing them to identify additional fact and expert witnesses to address the new issues Powell raised. Plaintiff disclosed the Powell Group and Powell as likely to have discoverable information in the final weeks of fact discovery, then scheduled the deposition to take place a day before discovery closed. The deposition was postponed several times and, as a result, the deposition did not occur until two months after the end of fact discovery. At the deposition, Powell made serious, unfounded, and surprising accusations. Without further discovery, Defendants will be unable to show that those accusations, like the accuser himself, are dishonest.

Therefore, assuming the most egregious portions of Powell's testimony are not entirely excluded, fairness demands that Defendants be given an opportunity to conduct limited discovery for the purpose of responding to Powell's testimony.

## CONCLUSION

Defendants respectfully request that the Court exclude, at a minimum, the most egregious sections of the Powell Group's deposition transcript (as identified in Exhibit A) and preclude its use in this adversary proceeding. Alternatively, should Plaintiff be allowed to admit portions of the Powell Law Group deposition transcript, Defendants respectfully request an order permitting them to identify additional fact and/or expert witnesses to address the new issues raised by that testimony.

Dated: November 16, 2011

| | |
|---|---|
| | *s/Thomas R. Lotterman* |
| Richard A. Rothman (RR 0507) | Thomas R. Lotterman (*admitted pro hac vice*) |
| Bruce S. Meyer (BM 3506) | Duke K. McCall, III (*admitted pro hac vice*) |
| WEIL, GOTSHAL & MANGES LLP | BINGHAM MCCUTCHEN LLP |
| 767 Fifth Avenue | 2020 K Street, NW |
| New York, New York 10153 | Washington, DC 20006 |
| Telephone: (212) 310-8000 | Telephone: (202) 373-6000 |
| Facsimile: (212) 310-8007 | Facsimile: (202) 373-6001 |
| | |
| Melanie Gray (*admitted pro hac vice*) | James J. Dragna (*admitted pro hac vice*) |
| Lydia Protopapas (LP 8089) | BINGHAM MCCUTCHEN LLP |
| Jason W. Billeck (*admitted pro hac vice*) | 355 South Grand Avenue, Suite 4400 |
| WEIL, GOTSHAL & MANGES LLP | Los Angeles, California 90071 |
| 700 Louisiana, Suite 1600 | Telephone: (213) 680-6400 |
| Houston, Texas 77002 | Facsimile: (213) 680-6499 |
| Telephone: (713) 546-5000 | |
| Facsimile: (713) 224-951 | *Counsel to Defendants* |