**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, *et al.*, | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Adv. Pro. No. 09-1198 |
| ANADARKO PETROLEUM CORPORATION, KERR-McGEE CORPORATION, KERR-MCGEE OIL & GAS CORPORATION, KERR-MCGEE WORLDWIDE CORPORATION, KERR-MCGEE INVESTMENT CORPORATION, KERR-MCGEE CREDIT LLC, KERR-MCGEE SHARED SERVICES COMPANY LLC, and KERR-MCGEE STORED POWER COMPANY LLC, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| THE UNITED STATES OF AMERICA, | ) ) | |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC, KERR-MCGEE CORPORATION, and ANADARKO PETROLEUM CORPORATION, | ) ) ) ) ) | |
| Defendants, | ) ) | |

**MEMORANDUM OF OPINION**

A P P E A R A N C E S:

KIRKLAND & ELLIS LLP
*Counsel to Plaintiff Anadarko Litigation Trust*
300 North LaSalle Street
Chicago, Illinois 60654
  By: David J. Zott, Esq.
     Jeffrey J. Zeiger, Esq.


WEIL, GOTSHAL & MANGES LLP
*Counsel to Defendants*
700 Louisiana, Suite 1600
Houston, Texas 77002
  By: Melanie Gray, Esq.
     Lydia Protopapas, Esq.
     Jason W. Billeck, Esq.

767 Fifth Avenue
New York, New York 10153
  By: Richard A. Rothman, Esq.
     Bruce S. Meyer, Esq.


BINGHAM McCUTCHEN LLP
*Counsel to Defendants*
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071
  By: James J. Dragna, Esq.

2020 K Street, NW
Washington, DC 20006
  By: Thomas R. Lotterman, Esq.
     Duke K. McCall, III, Esq.


PREET BHARARA
*United States Attorney for*
*the Southern District of New York*
U.S. Attorney's Office
86 Chambers Street, 4th floor
New York, New York 10007
  By: Joseph Pantoja, Esq.
     Robert William Yalen, Esq.

2

LEWIS and ROCA LLP
*Counsel to the Nevada Division*
*Of Environmental Protection*
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
    By:    Dawn M. Cica, Esq.


NEW YORK STATE DEPARTMENT OF LAW
*Counsel to the State of New York and New York*
*State Department of Environmental Conservation*
The Capitol
Albany, New York 12224
    By:    Maureen F. Leary, Esq.


KEATING MUETHING AND KLEKAMP, PLL
*Counsel to Tronox Incorporated Tort Claims Trust*
One East Fourth St.
Suite 1400
Cincinnati, Ohio 45202
    By:    Bethany P. Recht, Esq.


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

**Introduction**

This decision represents another chapter in the adversary proceeding between debtors Tronox Incorporated and its affiliates[1] and defendant Anadarko Petroleum Corporation,[2] arising out of a spin-off that allegedly led to the bankruptcy of Tronox. Before the Court are competing motions for partial summary judgment as to an alleged cap on the damages that Tronox will be entitled to recover if it succeeds in establishing that the transfer of the assets in the spin-off was an intentional or constructive fraudulent conveyance under 11 U.S.C. § 548 or under 11 U.S.C. § 544(b), which allows an estate representative to assert rights under state law if there remains one unsecured creditor with such rights.[3]

Anadarko has moved for a ruling that § 550 of the Bankruptcy Code caps Tronox's recovery on its fraudulent transfer claims at the amount of "unpaid creditor claims" in the case; Tronox has moved for a ruling that § 550 imposes no such cap.[4] For the reasons that follow,

---

[1] For convenience, Tronox Incorporated, Tronox Worldwide LLC, Tronox LLC, and the Litigation Trust that is their successor in interest in this action as a consequence of their confirmed plan of reorganization are collectively referred to as "Tronox." A second proceeding based on similar allegations is pending, brought by the United States for the recovery of response costs for environmental cleanups at numerous sites around the country pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, as well as for other environmental liabilities to federal agencies. That action was consolidated with the instant adversary proceeding for pretrial purposes; a motion to dismiss by the defendants in that action (the same defendants as here) was stayed pending further order of this Court. A third action against certain lenders to Tronox was settled and dismissed.

[2] The remaining defendants are Kerr-McGee Corporation and certain affiliates that are subsidiaries of Anadarko Petroleum Corporation. They were the vehicles for the spin-off of assets formerly owned directly or indirectly by Tronox's predecessors in interest. For convenience, these entities are hereinafter referred to as "Anadarko," even though Anadarko Petroleum Corporation was dismissed as a defendant from this adversary proceeding.

[3] In this case, there is no dispute that the applicable state law is that of Oklahoma, 24 Okla. St. Ann. §§ 116 and 117.

[4] Although this aspect of procedural posture is not relevant to substance of the matter, Tronox is the movant and Anadarko the cross-movant on these cross-motions for partial summary judgment.

Anadarko's motion will be denied and Tronox's opposing motion will be granted, but only in part.

## Background

The factual background of this proceeding is set forth in the court's prior decisions on the defendants' motions to dismiss. *See Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 429 B.R. 73 (Bankr. S.D.N.Y. 2010); *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 450 B.R. 432 (Bankr. S.D.N.Y. 2011). In brief, Tronox filed for chapter 11 relief on January 12, 2009 (the "Petition Date"). The second amended complaint (the "Complaint") in the instant adversary proceeding alleges that through a multi-stage transaction completed in 2005, Tronox's predecessor segregated valuable oil and gas exploration and production assets from billions of dollars of environmental, tort, and other liabilities. The Complaint claims that the subsequent spinoff of the "cleansed" oil and gas assets (which were acquired by Anadarko) was an intentional or constructive fraudulent conveyance, which left Tronox insolvent and undercapitalized, beset by massive legacy liabilities.[5]

In the course of Tronox's chapter 11 proceedings, environmental and tort creditors filed proofs of claim for unliquidated amounts but where quantified totaled more than $6.9 billion. Disclosure Statement, Case No. 09-10156, Dkt. No. 2196, Ex. B at 30. Tronox also had secured debt of $212.8 million under prepetition facilities and unsecured debt estimated at $445.6 million. *Id.* at 10, 23. The secured debt was refinanced during the chapter 11 case, and was ultimately converted into exit financing. *Id.* at 23. After months of negotiation, Tronox reached a settlement with the unsecured creditors and environmental and tort creditors that

---

[5] The Complaint also states a claim for breach of fiduciary duty as a promoter. In prior decisions, the court dismissed Tronox's claims for aiding and abetting a fraudulent conveyance, aiding and abetting breach of fiduciary duty, unjust enrichment, civil conspiracy, equitable subordination, and disallowance of claims, although the latter two claims were held subject to renewal in the event Anadarko filed a proof of claim. *See Tronox*, 429 B.R. 73; *Tronox*, 450 B.R. 432.

formed the basis of its second amended plan. *Id.* at 2. The environmental and tort creditors agreed to satisfaction of their claims against Tronox in return for all proceeds from this adversary proceeding against Anadarko, as well certain cash consideration. *Id.* at 40-42; Plan of Reorganization, Case No. 09-10156, Dkt. No. 2567, Ex. A at Art. IV.C.2, C.4. The agreement of the environmental and tort plaintiffs to take the bulk of their possible recovery in the form of a lawsuit whose outcome was (and is) uncertain made it possible for the debtors to distribute to their other unsecured creditors (the "General Unsecured Creditors") all of the stock of the reorganized companies, now cleansed of legacy liabilities. The Disclosure Statement estimated that this would provide General Unsecured Creditors with a recovery of 58-78% on their claims. Disclosure Statement at 10 n.9.[6]

This settlement agreement formed the "cornerstone" of Tronox's proposed plan of reorganization. Confirmation Order, Case No. 09-10156, Dkt. No. 2567, at ¶ 37. This Court approved the settlement and confirmed Tronox's plan on November 30, 2010. *Id.* at 86. The Plan created a litigation trust to pursue the claims in this adversary proceeding, and although the rights of Tronox are asserted, the environmental and tort creditors are the real parties in interest as plaintiffs, and several appeared through counsel at the hearing on these motions. Anadarko was an active party in interest throughout Tronox's chapter 11 proceedings and although it did not object to the settlement or confirmation of the Plan, it obtained a provision in the Confirmation Order regarding its rights in this adversary proceeding. The Confirmation Order provides:

> All parties reserve the right to make any available arguments, and assert any available claims and available defenses concerning the effect, if any, of the Plan Documents on the

---

[6] The Plan gave General Unsecured Creditors the opportunity to participate in a rights offering whereby a creditor could elect to pay a certain amount for the right to obtain a greater amount of stock. The disclosure statement estimated that General Unsecured Creditors who participated in the rights offering would obtain a recovery of 78-100% on their claims. Disclosure Statement at 10.

> determination of liability or measure of damages (including, to the extent relevant, the value of the Tort Claims and the Environmental Claims) in the Anadarko Litigation, including under section 550 of the Bankruptcy Code.

*Id.* at ¶ 191.[7] The Plan also provides that if Anadarko is found liable for a fraudulent transfer, any claim under § 502(h) to which it may be entitled can be applied as a direct offset against its liability.[8] Plan of Reorganization at Art. III.D.

Now, more than a year after confirmation, the adversary proceeding has proceeded through two motions to dismiss and the completion of discovery. With trial set to begin in May, the parties seek to narrow the issues through cross-motions for partial summary judgment on a limited issue relating to damages. Anadarko asserts that a clause in § 550(a) of the Bankruptcy Code, "for the benefit of the estate," caps Tronox's recovery at the amount of unpaid creditor claims and requires an accounting at trial of the amounts that the tort and environmental creditors are owed – or were owed on the Petition Date. Tronox, on the other hand, asserts that the plain language of § 550 and relevant case law impose no such ceiling on its potential recovery.

The amounts at stake are possibly enormous but at this point wholly uncertain. Anadarko asserts that Tronox's attempted recovery is $15.5 billion – a number that Tronox does not reject

---

[7] Because this language reserves the rights of both parties to argue the § 550 issue, the court finds Tronox's argument that the plan conclusively determines the value of the environmental and tort claims at the value of their contingent right to recovery to be as mistaken as Anadarko's argument that Tronox should now be judicially estopped from arguing the § 550 issue. *Cf. Kipperman v. Onex Corp.*, 411 B.R. 805, 879 (N.D. Ga. 2009) ("The court finds that the [Litigation Trust] did not take inconsistent positions here. The amount of the Debtors' potential claims in the disclosure was an estimate. . . . [Thus] judicial estoppel does not 'cap' the Trustee's recovery.").

[8] Section 502(h) of the Code as applicable here provides that if a transferee of a fraudulent transfer has an unsecured claim against the estate after disgorging the transferred property or its value, the claim will be treated as a prepetition claim. *See* 11 U.S.C. § 502(h); *In re Best Products Co.*, 168 B.R. 35, 58 (Bankr. S.D.N.Y. 1994). Because this adversary proceeding will be concluded post-confirmation when the plan consideration may have been wholly distributed, the parties agreed that any § 502(h) claim to which Anadarko may be entitled could be applied as a direct offset, rather than an independent claim, and that agreement became part of Tronox's confirmed plan. *See* Plan of Reorganization at Art. III.D.

7

– but this amount seems to be based on the gross value of the assets transferred out in 2005 increased to at least the Petition Date and possibly to the present. *See* Anadarko Opposition at 2; Transcript of Hearing held on 11/29/2011, Case No. 09-01198, Dkt. No. 292, at 26 ln.19 – 27 ln. 3. Anadarko claims that Tronox seeks a "windfall" of $14 billion by using excerpts from the reports of Tronox's expert witnesses at trial (if called and qualified) to assert that Tronox's own experts "concede" that environmental and tort claims as of 2005 were worth no more than $2 billion, a number to be reduced by the roughly $.5 billion already distributed on these claims. Anadarko Opposition at 2.[9] Anadarko cites no authority that it can use excerpts from expert reports that have not been introduced into evidence as an admission of a party, and in the Disclosure Statement Tronox valued the tort and environmental claims in the case as between $1.9-$6.2 billion. Disclosure Statement at 11. The most that can be said at this stage of the litigation is that the value of the oil and gas assets spun off may exceed the unpaid claims of the tort and environmental creditors.

## Discussion

Tronox is correct that the "for the benefit of the estate" clause in § 550(a) will not limit its recovery on its fraudulent transfer claims at trial. Once an avoidance action creates some benefit for creditors -- as this action already has -- § 550(a) is satisfied and any limits to recovery must be found elsewhere in the law. On the other hand, Tronox overstates its case when it asserts that there are no limits on the recovery of a plaintiff in a case such as this other than the value of the fraudulently transferred property. In this case, the appropriate measure of damages, if any, can only be determined after trial of all relevant issues.

---

[9] The numbers are hugely variable. *See* Anadarko Reply at 33-34: "Plaintiffs' potential recovery is just as uncertain today as it was at the time of confirmation . . . Even the highly inflated amounts set forth in the tort and environmental proofs of claim are at least *$8.5 billion less* than the amounts Plaintiffs now seek. And those claim amounts are clearly overstated." (footnotes omitted).

**A.     Legal Standard**

Under Rule 56 of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rule 7056), a party may move for summary judgment "upon all *or any part*" of a claim at issue. Fed. R. Civ. P. 56(a), 56(b) (emphasis supplied).  A motion for partial summary judgment seeks a pretrial adjudication that certain issues shall be deemed established for the trial of the case.  *Alberty-Velez v. Corporacion de Puerto Rico*, 361 F.3d 1, 6 n.5 (1st Cir. 2004); *In re Ciprofloxacin Hydrochloride Antitrust Litigation,* 261 F. Supp. 2d 188, 231 (E.D.N.Y. 2003).  Although motions for partial summary judgment are generally disfavored, such motions are permitted where they are conducive to conservation of judicial resources and are of benefit to the parties.  *Bruschini v. Board of Educ.*, 911 F. Supp. 104, 106 (S.D.N.Y. 1995).  Consistent with this purpose, courts have entertained and decided motions for partial summary judgment on the question of damages to narrow the issues before trial.  *Jewell-Rung Agency, Inc. v. Haddad Org., Ltd.*, 814 F. Supp. 337, 339-40 (S.D.N.Y. 1993) (citing cases); *see, e.g., Academic Indus., Inc. v. Untermeyer Mace Partners, Ltd.,* 1992 WL 73473 (S.D.N.Y. Apr. 1, 1992) (denying on the merits a partial summary judgment motion to limit potential damages to out-of-pocket expenditures); *Poultry Health Serv., Inc. v. Moxley,* 538 F. Supp. 276 (S.D. Ga. 1982) (granting in part and denying in part plaintiff's motion for partial summary judgment on the issue of damages).  On the other hand, the resolution of an issue may be so dependent on the facts to be proved at trial that it may be impossible or improvident to attempt to resolve it on a motion for summary judgment.  *Powell v. Radkins,* 506 F.2d 763, 765 (5th Cir. 1975), *cert. denied,* 423 U.S. 873 (1975).

In the case at bar, it is fair to conclude on this record that § 550(a) of the Bankruptcy Code does not impose Anadarko's asserted cap on Tronox's damages.  It is equally clear,

9

however, that the appropriate measure of damages in this case can only be determined after trial, leading to the denial of Tronox's motion for summary judgment to the extent it seeks a holding that there is no limitation on damages other than the value of the fraudulently conveyed property.

**B.    Section 550**

Fraudulent transfer law generally allows creditors to set aside or "avoid" transactions which improperly deplete a debtor's assets. *Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 435 B.R. 866, 875 (Bankr. S.D.N.Y. 2010), citing 5 *Collier on Bankruptcy* ¶ 548.01 (16th ed. rev. 2010). In bankruptcy, a trustee or a debtor-in-possession armed with the powers of a trustee can avoid a fraudulent transfer under federal law (§ 548 of the Bankruptcy Code) on the ground that the transfer was made "with actual intent to hinder, delay, or defraud" creditors, or on the ground that it was constructively fraudulent, *i.e.*, if the debtor "received less than a reasonably equivalent value in exchange for such transfer" and at the time either (i) was insolvent, (ii) undercapitalized, or (iii) illiquid, or became such as a result of such transfer. 11 U.S.C. § 548(a)(1)(A) and (B).

In addition to avoidance powers under § 548, the trustee or debtor-in-possession may also access applicable state law under § 544(b) of the Bankruptcy Code if there still exists one creditor holding an unsecured claim who could pursue the action.[10] Since the substantive provisions of state statutes under the Uniform Fraudulent Transfer Act and the earlier Uniform Fraudulent Conveyance Act are largely the same as § 548, a trustee's reliance on state fraudulent conveyance provisions may only have the effect of extending the statute of limitations, as the federal limitations period is shorter than the period in most state laws. In the case at bar, most of

---

[10] Section 544(b) authorizes the avoidance of "any transfer of an interest of the debtor in property or any obligation incurred by the debtor *that is voidable under applicable law by a creditor* holding an [allowable] unsecured claim." 11 U.S.C. § 544(b) (emphasis added).

10

Tronox's claims are pursued under § 544(b), accessing the law of Oklahoma, which the parties agree is the applicable state law.[11]

Once a transfer has been avoided, Bankruptcy Code § 550 provides that the trustee/debtor-in-possession

> may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . .

11 U.S.C. § 550(a). Other parts of section 550 set forth the liability of an initial transferee and a subsequent transferee, defenses of certain transferees, and rights accorded to "good faith transferees," such as a lien on any increase in value of the fraudulently conveyed property as a result of an "improvement" made after the transfer. The Bankruptcy Code thus separately provides for the avoidance or nullification of a fraudulent conveyance, and the liability of a transferee. *See IBT Intern., Inc. v. Northern (In re Int'l Admin. Servs., Inc.),* 408 F.3d 689, 703 (11th Cir. 2005).

Anadarko's motion for summary judgment is largely premised on one clause in § 550(a) providing that the trustee or debtor-in-possession "may recover *for the benefit of the estate*, the property transferred, or, if the court so orders, the value of such property . . ." 11 U.S.C. § 550(a) (emphasis supplied).[12] Anadarko contends that this clause imposes an absolute cap on its potential liability as transferee and that the cap is the aggregate of the claims of the creditors who would be benefited by the litigation – in its formulation, the claims of the environmental and tort claimants who are the plaintiffs in this adversary proceeding.

---

[11] No issue has been raised as to the existence of one unsecured creditor who is duly possessed of such a claim.

[12] There is no dispute that any recovery in this case would be for the value of the physical assets transferred to the Anadarko defendants, rather than recovery of the assets themselves. *See* Transcript of Hearing on 11/29/2011, Case No. 09-01198, Dkt. No. 292, at 84 ln.22 – 85 ln.5.

11

As an initial matter, Anadarko can find no support for its position in the plain words of the statute. Section 541 of the Bankruptcy Code provides that the "estate" created at the commencement of the case is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." The concept of the estate is not limited to the interest of creditors or a subclass of creditors.

Faithful to the language of the statute, the courts have given a very broad construction to the phrase "benefit of the estate." Benefit for purposes of § 550 includes both direct benefits to the estate (*e.g.*, an increased distribution) and indirect ones (*e.g.*, an increase in the probability of a successful reorganization). *See Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 34 F.3d 800, 811 (9th Cir. 1994), *Kipperman*, 411 B.R. at 876-77; *In re NextWave Personal Communications, Inc.,* 235 B.R. 305, 308–09 (Bankr. S.D.N.Y. 1999). Furthermore, the benefit from an avoidance action can come from an assignment of a cause of action prior to the litigation's resolution, and need not be obtained at the time of recovery. *Mellon Bank v. Dick Corp.,* 351 F.3d 290, 293 (7th Cir. 2003); *Kipperman*, 411 B.R. at 877-78. As the Seventh Circuit held in *Mellon Bank*, § 550(a) was satisfied because "the potential to recover funds from preference recipients was put to use for the estate's benefit" by facilitating the sale of the debtor:

> Having put the *prospect* of preference recoveries to work for the benefit of all creditors (including the unsecured creditors) *ex ante* by effectively selling them to the secured creditors in exchange for forbearance-and in the process facilitating a swift sale all around-the bankruptcy judge did not need to use them *ex post* a second time, for still another benefit to the estate; there was no further benefit to be had.

*Mellon Bank*, 351 F.3d at 293. In rejecting the argument that proceeds from a litigation trust should be capped at the amount of creditors' claims, the Court in *Kipperman* made this very analogy:

> When a plan distributes stock and the stock appreciates or depreciates in value, section 1129(b) does not compel the bankruptcy court to reassess whether the party receiving the stock has received too much or not enough value relative to the total value of the party's claim and the distributions to the other parties. The court finds this analogy helpful.

12

*Kipperman*, 411 B.R. at 876.

Once some benefit to the estate is established, the cases do not use the "benefit of the estate" clause in § 550(a) to impose a cap on recovery. *Acequia,* 34 F.3d at 811; *Stalnaker v. DLC, Ltd.* (*In re DLC, Ltd.*), 295 B.R. 593, 606-607 (B.A.P. 8th Cir. 2003), *aff'd* 376 F.3d 819 (8th Cir. 2004); *In re Sheffield Steel Corp.,* 320 B.R. 423, 447 (Bankr. N.D. Okla. 2004); *Kipperman*, 411 B.R. at 878; *In re FBN Food Services, Inc.,* No. 93 C 6347, 1995 WL 230958, at *3 (N.D. Ill. Apr. 17, 1995); *MC Asset Recovery, LLC v. Southern Co.,* No. 06-CV-0417, 2006 WL 5112612, at *5 n.11 (N.D. Ga. Dec. 11, 2006). In other words, the "for benefit of the estate" clause in § 550 sets a minimum floor for recovery in an avoidance action – at least some benefit to the estate – but does not impose any ceiling on the maximum benefits that can be obtained once that floor has been met. For example, in *Acequia,* the debtor was permitted to pursue the recovery of fraudulent transfers even though creditors had been paid in full because recovery would benefit the estate by aiding continued performance under the plan. 34 F.3d at 812. This construction of § 550(a) – virtually universal among courts that have substantively considered the issue – reflects § 550's underlying purpose of restoring the estate to its position prior to the transfer. *Id.*, citing *Morris v. Kansas Drywall Supply Co.* (*In re Classic Drywall, Inc.*), 127 B.R. 874, 876 (D. Kan. 1991). Indeed, it is significant that § 550 provides that the trustee can recover an avoided transfer "for the benefit of the estate," not "*to the extent of* benefit to the estate." Because Congress used the phrase "to the extent of" in an earlier clause of § 550(a), albeit in a different context ("to the extent a transfer is avoided"), it is reasonable to infer that Congress would have explicitly so provided if it had intended to limit recovery to the extent of benefit of the estate, or as Anadarko would put it, benefit to creditors (or, as here, the environmental and tort subclass of creditors).

13

Anadarko contends that several (but not all) of the cases cited above involved intentional fraudulent conveyances and are therefore of little precedential value. There is no indication in the decisions, however, that the holdings should be so limited and § 550 applies to all avoided fraudulent conveyances, not just to a subset. Moreover, the Complaint states claims for intentional as well as constructive fraudulent conveyances. *See Shapiro v. Wilgus,* 287 U.S. 348, 354 (1932) ("A conveyance is illegal if made with an intent to defraud the creditors of the grantor, but equally it is illegal if made with an intent to hinder and delay them.").

The record in this case establishes that the prospect of recovery in this adversary proceeding has already benefited Tronox's estate. The liquidation analysis attached to the Disclosure Statement estimated that in a liquidation unsecured creditors would receive no recovery at all. Exhibit E to Disclosure Statement, at 3. The willingness of the environmental and tort claimants to take a relatively small amount of cash and litigation claims that were (and are) uncertain benefited the Tronox estate by providing the General Unsecured Creditors with a stock interest in a company freed of legacy liabilities. It may be questioned whether Tronox would have been able to confirm a plan absent the settlement. Anadarko has implicitly acknowledged that there was some benefit to the estate from the settlement, as demonstrated by the following passage from the transcript of the hearing on this motion:

> THE COURT: My point is more limited. My point is simply that the unsecured creditors . . . benefited from the fact that the tort and environmental creditors removed their unliquidated claims from the reorganized debtor and agreed to seek recovery elsewhere?
>
> [ANADARKO'S COUNSEL]: They benefited to the extent that the recovery was -- subject to the limitations of Section 550, I agree. . . . But, Your Honor, what they're arguing is that this prospect of recovery was put to work for the benefit of the estate, so therefore, now the sky's the limit. . . . I submit to you, that does not suffice for purposes of Section 550.[13]

---

[13] Transcript of Hearing on 11/29/2011, at 58 ln. 18 - 59 ln. 17.

Once this benefit was obtained, § 550's "for the benefit of the estate" requirement was satisfied. *Mellon Bank,* 351 F.3d at 293; *Kipperman*, 411 B.R. at 878. Furthermore, in this case, all proceeds of this adversary proceeding are being paid to creditors of Tronox, so recovery will also create a second benefit to the estate.

Anadarko argues that limitation of damages to the claims of the creditor plaintiffs is required because Tronox is principally relying on Oklahoma fraudulent transfer law, incorporated for present purposes through § 544(b) of the Bankruptcy Code. Like many other state fraudulent transfer laws, the Oklahoma statute provides that the creditor in a fraudulent transfer action may not recover more than "the amount necessary to satisfy the creditor's claim."[14] This limitation reflects the different purposes of a fraudulent transfer proceeding brought under state law by a creditor on behalf of that creditor only, and an action pursued by a bankruptcy estate representative on behalf of the "estate." Section 544(b) of the Bankruptcy Code adopts the ruling of the Supreme Court in *Moore v. Bay*, 284 U.S. 4 (1931), where the Court allowed a trustee to avoid a fraudulent transfer without regard to the size of the claim of the creditor whose rights and powers the trustee was asserting, with the rights of the trustee "to be enforced for the benefit of the estate." *Id.* at 5; *see also* 5 *Collier on Bankruptcy* ¶ 544.07[4] (citing *Moore*). Because a trustee's recovery under § 544(b) is governed by § 550, it follows that Congress intended to incorporate *Moore*'s rule of complete avoidance into § 550. *See Stalnaker*, 295 B.R. at 606-07; *MC Asset Recovery,* 2006 WL 5112612, at *4; *Barber v. McCord Auto Supply, Inc.* (*In re Pearson Indus., Inc.*), 178 B.R. 753, 756, n.4 (Bankr. C.D. Ill. 1995). Indeed, the absence of any indication that Congress intended to limit the rule of *Moore* is further

---

[14] The Oklahoma fraudulent transfer statute provides, in relevant part, that "to the extent a transfer is voidable in an action by a creditor . . . , the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less." 24 Okla. St. Ann. § 120 B. (2011).

evidence against any such proposition. *See Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998) ("We . . . will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.") (internal quotation omitted).[15] Nor is there any basis for the argument that state law is controlling where the recovery in a proceeding under § 544(b) as well as § 548 is controlled by § 550, a federal statute. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546 (1994) ("where the meaning of the Bankruptcy Code's text is itself clear, its operation is unimpeded by contrary state law") (internal quotation omitted).

In support of its position, Anadarko relies on cases holding that the avoidance powers of an estate representative cannot be used where creditors cannot possibly benefit from the proceeding. This is an established principle that was applied to efforts to avoid a lien as well as to pursue preference or fraudulent conveyance actions under the former Bankruptcy Act. *See, e.g.*, *Vintero Corp. v. Corporacion Venezolana De Fomento (In re Vintero Corp.)*, 735 F.2d 740 (2d Cir. 1984) (lien avoidance proceeding); *Whiteford Plastics Co. v. Chase Nat'l Bank*, 179 F.2d 582 (2d Cir. 1950) (prohibiting debtor from commencing an avoidance action that could not benefit creditors). This principle has also been applied in fraudulent conveyance proceedings under the Code, which cannot be maintained where they would only benefit the debtor. *Wellman v. Wellman*, 933 F.2d 215, 218 (4th Cir. 1991), *cert. denied*, 502 U.S. 925 (1991); *Adelphia Recovery Trust v. Bank of America, N.A.*, 390 B.R. 80 (S.D.N.Y. 2008) (plaintiff lacked standing to pursue post-confirmation avoidance action because all debtors' creditors had already been paid in full with interest); *In re Calpine Corp.*, 377 B.R. 808, 812-13 (Bankr. S.D.N.Y. 2007). However, the cases that recognize the principle also recognize, virtually without exception, that creditors can benefit from an avoidance proceeding indirectly as well as by a

---

[15] The Code's legislative history explicitly states that § 544(b) "follows *Moore v. Bay*." S. Rep. No. 95-989, at 85 (1978).

16

direct monetary recovery. For example, in *Acequia*, the Court quoted the statement in *Collier on Bankruptcy* that, "in general, the trustee or debtor in possession may not recover the property transferred or its value when the result is to benefit only the debtor rather than the estate." *Acequia*, 34 F.3d at 811, quoting *Collier on Bankruptcy* ¶ 550.02 at 550-6 to 550-7 n.3 (15th ed. 1994). The *Acequia* Court nevertheless proceeded to note the breadth with which the term "benefit of the estate" has been construed, and it reversed the decision below that dismissed the avoidance action because the recovery would exceed the amount of unpaid unsecured creditor claims. The Court said, "Courts construe the 'benefit to the estate' requirement broadly, permitting recovery under section 550(a) even in cases where distribution to unsecured creditors is fixed by a plan of reorganization and in no way varies with recovery of avoidable transfers." *Id.* at 811.

We have not been able to find any case that has accepted Anadarko's contention that in order for there to be any recovery in an avoidance proceeding, there must be a prior calculation of each creditor's claim in the case and a limitation of avoidance liability to the deficiency in payment. Any such tie between avoidance recovery and plan distribution would impede a settlement of the type incorporated in Tronox's plan by refusing to afford a creditor who has taken a litigation risk a prospect of a possible recovery beyond that creditor's individual damages. It would encourage endless valuation litigation and effectively impose a requirement, not found in the statute, that a judgment in the avoidance action precede plan confirmation. As the Ninth Circuit noted in *Acequia*, this would undoubtedly require debtors to delay filing plans of reorganization until completing all potential litigation and would violate chapter 11's policy of facilitating a fast and equitable reorganization. *Id.* at 808. In this case, it is unclear whether Tronox could have confirmed any plan of reorganization without a settlement with its tort and

17

environmental creditors, leading to the conclusion, as stated above, that the possibility of recovery in this action already has benefited creditors by making Tronox's plan possible.

The only case Anadarko has cited which arguably supports its position of a recovery cap under § 550(a) is a chapter 7 case decided on "extremely unusual facts." *In re Murphy*, 331 B.R. 107, 121 (Bankr. S.D.N.Y. 2005). In *Murphy*, a chapter 7 debtor's real estate had been legally forfeited to a state taxing authority prepetition based on the debtor's failure to pay taxes. The debtor sought to avoid the forfeiture as a constructive fraudulent transfer and to recover the $300,000 amount by which the property's value exceeded the total amount of claims in the case. In rejecting the debtor's position, the Court held that § 548 and § 550 of the Code should be reconciled with the state's public interest in penalizing nonpayment of taxes and thus limited avoidance to the extent necessary to pay creditors and administrative claimants in full. *Murphy* is factually distinguishable because there is no analogous state public policy at issue here. As the Court said in *Acequia*, complete recovery does not result in a windfall when it restores the estate to the condition it would have been in had the transfer had never occurred. 34 F.3d at 812.

Based on the foregoing, Anadarko's motion for summary judgment must be denied. On the other hand, Tronox overstates its case when it implies that there is no cap on plaintiffs' potential recovery other than the value of the property fraudulently transferred. Bankruptcy Code § 550 has several provisions that explicitly limit a plaintiff's recovery, including the right of a good faith transferee to retain the value of any "improvement" to the property after the transfer (less the transferee's profit) and any increase in value from any improvements. 11 U.S.C. § 550(e).

Beyond the specific limitations in § 550, courts have recognized that the purpose of fraudulent conveyance law is remedial rather than punitive. *In re Best Products Co.*, 168 B.R.

18

35, 57 (Bankr. S.D.N.Y. 1994). Bankruptcy courts have used their equitable powers in appropriate cases to reduce the estate's recovery by the value of consideration paid by a transferee, even in cases of actual fraud. *See Kingsley v. Wetzel*, 518 F.3d 874 (11th Cir. 2008) (affirming bankruptcy court's decision to equitably adjust recovery from transferee who committed actual fraud but later repaid funds to estate); *compare Nostalgia Network, Inc. v. Lockwood*, 315 F.3d 717 (7th Cir. 2002) (affirming bankruptcy court's decision to deny offsets to a transferee in an actual fraud case). Indeed, in one of the few cases that have applied fraudulent conveyance law to a major corporate spin-off, the District Court in *ASARCO* permitted the defendant to assert the rights of a good faith transferee and to offset the value it provided to the debtor, despite finding the defendant liable for an intentional fraudulent transfer. *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008). The Court also noted: "the Bankruptcy Code does not provide for punitive damages." *Id.* at 421. The Court's decision, however, was made after a four-week trial and on the basis of all of the facts of the case.

Even after damages are calculated, other provisions of the Bankruptcy Code may mitigate the liability of the defendant in an avoidance proceeding. Courts have held that even the transferee of an intentional fraudulent conveyance may have a § 502(h) claim for the value of consideration paid after disgorging the transferred property. *See Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1257 (1st Cir. 1991); *Best Products*, 168 B.R. at 58. The application of this or other principles to the calculation of damages in this case will be based on the facts proved at trial, as well as the parties' contentions on the subject of damages, and it is premature to speculate as to the effect of § 502(h) or other damages provisions in this case. In any event, the existence of limitations on recovery outside of the "for the benefit of the estate" clause in § 550(a) makes speculative Anadarko's contention that failure to impose its cap will

19

create a multi-billion dollar "windfall" to creditors if they are successful in establishing liability at trial.

## Conclusion

For the foregoing reasons, Anadarko's motion for partial summary judgment is denied and Tronox's opposing motion is granted in part and denied in part. Either party may settle an appropriate order on five days' notice.

Dated:   January 20, 2012
         New York, New York

                                                          _/s/Allan L. Gropper_____
                                                          United States Bankruptcy Judge