<u>Exhibit A</u>

**DEFENDANTS' UNDISPUTED STATEMENT OF FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT SEEKING DISMISSAL OF (I) CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS INVOLVING TRANSFERS MADE BY TRONOX LLC; (II) ANADARKO PETROLEUM CORPORATION AS A SUBSEQUENT TRANSFEREE WITH RESPECT TO ALL ALLEGED FRAUDULENT TRANSFERS; AND (III) ALL ACTUAL AND CONSTRUCTIVE FRAUDULENT <u>TRANSFER CLAIMS PROTECTED BY SECTION 546(e) OF THE BANKRUPTCY CODE</u>**

Pursuant to Rule 7056-1 of the Local Bankruptcy Rules for the Southern District of New York, Defendants[1] submit this Undisputed Statement of Facts ("<u>SOF</u>").

**A.    Plaintiffs' Chapter 11 Cases and Plan of Reorganization**

1.    On January 12, 2009, Tronox Incorporated ("<u>Tronox Inc.</u>"), Tronox Worldwide LLC ("<u>Tronox Worldwide</u>"), Tronox LLC and certain affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>") each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>").

2.    On July 7, 2010, Tronox filed a plan of reorganization and related disclosure statement (the "<u>Initial Plan & Disclosure Statement</u>").[2]

3.    Defendants objected to the Initial Plan & Disclosure Statement because, *inter alia*, "[t]he Disclosure Statement indicates that the Plan 'constitutes a separate chapter 11 plan for Tronox and each of its 14 affiliated Debtors' but then subsequently refers to the 'deemed substantive consolidation' of the Debtors' estates."[3]

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion to which this Statement of Facts is affixed.

[2]    Proposed Joint Plan of Reorganization of Tronox Incorporated *Et Al.* Pursuant to Chapter 11 of the Bankruptcy Code [Main Case Dkt. No. 1706]; Disclosure Statement Regarding the Joint Plan of Reorganization of Tronox Incorporated, *Et Al.* Pursuant to Chapter 11 of the Bankruptcy Code [Main Case Dkt. No. 1707].

[3]    *See* Objection of Anadarko Petroleum Corporation and Kerr-McGee Corporation to the Disclosure Statement Regarding the Joint Plan of Reorganization of Tronox Incorporated, *Et Al.* [Main Case Dkt. No. 1822], at 19-20.

4.　　　On October 1, 2010, Tronox filed solicitation versions of its First Amended Joint Plan of Reorganization of Tronox Inc. *et al.* Pursuant to Chapter 11 of the Bankruptcy Code (as subsequently amended and modified, the "Plan")[4] and Disclosure Statement relating thereto (the "Disclosure Statement").[5]

5.　　　The Plan provides for, among other things, the deemed substantive consolidation of the Debtors' estates, with the effect of such consolidation being that "all assets and liabilities of the Tronox Debtors shall be treated as though they were merged into the Estate of Tronox Incorporated for all purposes associated with voting, Confirmation and Distributions."[6]

6.　　　The Plan also provides that "[d]eemed substantive consolidation shall not affect the legal and organizational structure of Reorganized Tronox or its separate corporate existence or that of its subsidiaries and affiliates or any prepetition or postpetition guarantees, Liens, or security interests that are required to be maintained under the Bankruptcy Code, the Plan, the Exit Credit Documents, any contract, instrument, or other agreement or document pursuant to the Plan, or in connection with contracts or leases that were assumed or entered into during the Chapter 11 Cases."[7]

7.　　　On November 30, 2010, the Court entered its Findings of Fact, Conclusions of Law and Order Confirming the First Amended Joint Plan of Reorganization of Tronox Incorporated *et al.* Pursuant to Chapter 11 of the Bankruptcy Code (the "Confirmation Order").[8]

---

[4]　　*See* Proposed First Amended Joint Plan of Reorganization of Tronox Incorporated *Et Al.* Pursuant to Chapter 11 of the Bankruptcy Code [Main Case Dkt. No. 2196, Exh. A]; Findings of Fact, Conclusions of Law and Order Confirming the First Amended Joint Plan of Reorganization of Tronox Incorporated *et al.* Pursuant to Chapter 11 of the Bankruptcy Code [Main Case Dkt. No. 2567, Exh. A].

[5]　　*See* Proposed First Amended Joint Plan of Reorganization of Tronox Incorporated *Et Al.* Pursuant to Chapter 11 of the Bankruptcy Code [Main Case Dkt. No. 2196, Exh. B].

[6]　　First Amended Joint Plan of Reorganization of Tronox Incorporated *Et Al.* Pursuant to Chapter 11 of the Bankruptcy Code, dated November 30, 2010 [Main Case Dkt. No. 2567, Exh. A], at 25.

[7]　　*Id.*

[8]　　*See* Findings of Fact, Conclusions of Law and Order Confirming the First Amended Joint Plan of Reorganization of Tronox Incorporated, *Et Al.* Pursuant to Chapter 11 of the Bankruptcy Code [Main Case Dkt. No. 2567].

B.    **Plaintiffs' Fraudulent Transfer Action**

1.    **Complaint**

8.    On May 12, 2009, Tronox Inc., Tronox Worldwide and Tronox LLC (collectively "Tronox" or the "Plaintiffs")[9] commenced this litigation (the "Adversary Proceeding") against Anadarko Petroleum Corporation ("Anadarko") and Kerr-McGee Corporation ("Kerr-McGee" or "New Kerr-McGee") in this Court by filing an Adversary Complaint.[10]

9.    On April 28, 2010, Plaintiffs filed an Amended Adversary Complaint (the "Amended Complaint") asserting six causes of action:   (i) actual fraudulent transfer ("Count I"); (ii) constructive fraudulent transfer ("Count II"); (iii) constructive fraudulent transfer regarding payments made for Anadarko's or Kerr-McGee's benefit during the two years preceding the bankruptcy filing ("Count III"); (iv) breach of fiduciary duty ("Count IV"), (v) civil conspiracy ("Count V"), and (vi) aiding and abetting breach of fiduciary duty ("Count VI").[11]

10.    On May 26, 2010, Anadarko and Kerr-McGee filed a Motion to Dismiss Counts IV-VI of the Amended Complaint (the "Motion to Dismiss").[12]

11.    On February 7, 2011, Plaintiffs filed a Second Amended Adversary Complaint (the "Complaint"), adding Kerr-McGee Oil & Gas Corporation ("KMOGC"), Kerr-McGee Worldwide Corporation ("Kerr-McGee Worldwide"), Kerr-McGee Investment Corporation ("KM Investment"), Kerr-McGee Credit LLC ("KM Credit"), Kerr-McGee Shared Services Company LLC ("Shared

---

[9]    *See* Adversary Complaint [Dkt. No. 1].

[10]    *See id.*

[11]    *See* Amended Adversary Complaint [Dkt. No. 128].

[12]    *See* Defendants' Motion to Dismiss Counts IV, V, and VI of the Amended Adversary Complaint [Dkt. No. 131].

Services") and Kerr-McGee Stored Power Company LLC ("Stored Power") as defendants (collectively, and together with Anadarko and Kerr-McGee, the "Defendants").[13]

      12.      Plaintiffs allege in Paragraph 4 of the Complaint that:

> Old Kerr-McGee devised a two-step fraudulent scheme to escape its toxic past and attempt to place its valuable oil and gas assets safely beyond the reach of the EPA, tort claimants, and other creditors. First, Old Kerr-McGee would isolate the Legacy Liabilities by, transferring all of its valuable oil and gas assets out of the historical business and into a new "clean" entity. Second, Old Kerr-McGee then would sever the historical business containing the Legacy Liabilities-achieving a "clean break" between its valuable oil and gas assets and the Legacy Liabilities.

      13.      In Paragraph 5 of the Complaint, Plaintiffs allege that:

> Step One of the scheme was code-named "Project Focus." To isolate the Legacy Liabilities from the valuable oil and gas assets, Old Kerr-McGee created an entirely new corporate structure that featured a new "clean" parent company-also called "Kerr-McGee Corporation" ("New Kerr-McGee")--and a new "clean" subsidiary-Kerr-McGee Oil and Gas Corporation (the "Oil and Gas Business")--into which all of the valuable oil and gas assets were transferred. Numerous liabilities created by those oil and gas assets, however, stayed behind along with the liabilities of all of Old Kerr-McGee's other historical businesses. Through these corporate machinations, Old Kerr-McGee . . . was stripped of its most valuable assets. All that remained in Old Kerr-McGee . . . was a small, cyclical chemical business, a handful of discontinued businesses, and more than 70 years of Legacy Liabilities (the "Chemical Business"). The majority of the Legacy Liabilities retained by the Chemical Business stemmed from business operations completely unrelated to the Chemical Business, including oil and gas operations.

      14.      Plaintiffs further allege that "[t]he Spin-Off was completed on March 31, 2006 when New Kerr-McGee distributed its shares of Class B Common Stock to New Kerr-McGee shareholders . . . [and] New Kerr-McGee's two-step scheme to isolate and sever the Legacy Liabilities was complete."[14]

      15.      In Count I of the Complaint, Plaintiffs allege, among other things, that Kerr-McGee "transferred valuable assets from Tronox, Tronox Worldwide LLC, Tronox LLC and their

---

[13]   *See* Second Amended Adversary Complaint [Dkt. No. 223].

[14]   *Id.* at ¶¶ 123-24.

affiliates and predecessors (the "Tronox Entities"), including valuable oil and gas assets and proceeds from Tronox's secured and unsecured loans and IPO (the "Transfers"), while simultaneously transferring to and causing the Tronox Entities to assume liabilities and debt, including the Legacy Liabilities and $550 million in secured and unsecured loans (the "Obligations")."[15]

16.    Plaintiffs further allege that, "[u]nder 11 U.S.C. § 544(b) and § 550(a), Oklahoma's Uniform Fraudulent Transfer Act, including but not limited to 24 Okla. St. Ann. tit. 24, § 116, and/or other applicable law, . . . Tronox is entitled to avoid the Transfers and Obligations and to recover the property or value of the property transferred to Anadarko, New Kerr-McGee, New Kerr-McGee Subsidiaries, their affiliates, or third parties for the benefit of Anadarko, New Kerr-McGee, or New Kerr-McGee Subsidiaries with interest."[16]    Plaintiffs further allege that "[t]he Transfers and Obligations were made to or for the benefit of New Kerr-McGee and New Kerr-McGee Subsidiaries."[17]

17.    In Count II of the Complaint, Plaintiffs allege, among other things, that (i) "[t]he Tronox Entities did not receive reasonably equivalent value from New Kerr-McGee or New Kerr-McGee Subsidiaries in exchange for the Transfers and Obligations"[18] and (ii) "[a]t the time the Transfers and Obligations were undertaken, New Kerr-McGee was the parent of the Tronox Entities . . . [and] New Kerr-McGee was in a position to, and in fact did, control and dominate the Tronox Entities."[19]

18.    Plaintiffs further allege that, "[u]nder 11 U.S.C. § 544(b) and § 550(a), Oklahoma's Uniform Fraudulent Transfer Act, including but not limited to 24 Okla. St. Ann. tit. 24, §§ 116 and 117 . . . Tronox is entitled to avoid the Transfers and Obligations and to recover the property

---

[15]    *Id.* at ¶ 142.

[16]    *Id.* at ¶ 149.

[17]    *Id.* at ¶ 143.

[18]    *Id.* at ¶ 151.

[19]    *Id.* at ¶ 153.

or value of the property transferred to Anadarko, New Kerr-McGee, New Kerr-McGee Subsidiaries, their affiliates, or third parties for the benefit of Anadarko, New Kerr-McGee, or New Kerr-McGee Subsidiaries together with interest."[20]    Plaintiffs further allege that "[e]ach of the Transfers and Obligations was made to or for the benefit of New Kerr-McGee or New Kerr-McGee Subsidiaries."[21]

19.    In Count III of the Complaint, Plaintiffs allege, among other things, that "Tronox did not receive reasonably equivalent value from Anadarko, New Kerr-McGee or New Kerr-McGee Subsidiaries in exchange for payments it made or became obligated to make for Anadarko's and New Kerr-McGee's benefit within two years of Tronox's bankruptcy filing, including: (a)  All payments related to the Legacy Liabilities . . . ."[22]  Plaintiffs further allege that, "[u]nder 11 U.S.C. § 548 and 11 U.S.C. § 550(a), Tronox is entitled to avoid these transfers and to recover the property or value of the property transferred to Anadarko, New Kerr-McGee, New Kerr-McGee Subsidiaries, their affiliates, or third parties for the benefit of Anadarko, New Kerr-McGee, or New Kerr-McGee Subsidiaries together with interest."[23]

20.    In Paragraphs 148, 159, and 167 of the Complaint, Plaintiffs allege that "Anadarko benefited from the fraudulent conveyance of the Transfers and Obligations and/or exercised dominion and control over the fraudulently conveyed assets."

## 2.    Relevant Factual Background

### a.    Project Focus

21.    In 2001, Kerr-McGee acquired HS Resources, Inc. ("HS Resources").[24] After the acquisition of HS Resources,[25] but prior to December 31, 2002, Kerr-McGee held two direct

---

[20]    *Id.* at ¶ 160.

[21]    *Id.* at ¶ 152.

[22]    *Id.* at ¶ 162.

[23]    *Id.* at ¶ 168.

[24]    *See* Kerr-McGee Corp. Current Report Form 8-K filed May 16, 2001, at Item 5.

subsidiaries, including:[26]    (i) Kerr-McGee Rocky Mountain Corporation ("<u>KMRMC</u>"), which held the

exploration and production ("<u>E&P</u>") business of the former HS Resources;[27] and (ii) Kerr-McGee

Operating Corporation ("<u>KMOC</u>"), n/k/a Tronox Worldwide, which held all of Kerr-McGee's other

subsidiaries and assets.[28]

22.                                                                Redacted


23.        On or about December 31, 2002, Project Focus was implemented through the

execution of written stock transfers and related documents.[30]

24.        Through the execution of such written agreements, Project Focus involved the

following transfers, among others, and not set forth in any particular order:

    a.    Kerr-McGee formed a new intermediate holding company, Kerr-McGee
          Worldwide, and KMOC became a wholly-owned subsidiary of Kerr-McGee
          Worldwide;[31]

---

[25]  *See id.* at Exhibit 2.1 (describing the mergers related to Kerr-McGee Corporation's ("<u>Old Kerr-McGee</u>") acquisition of HS Resources).

[26]  *See*                          Redacted

[27]  *See*                                            Redacted


[28]  *See* Kerr-McGee Corp. Form 8-K filed May 16, 2001, at Exhibit 2.1 (describing the mergers related to Old Kerr-McGee's acquisition of HS Resources); *see also*                 Redacted


[29]  *See*                                    Redacted
                    *see also* Declaration of David L. Siddall Authenticating Documents and Certifying Records of Regularly Conducted Business Activity, attached hereto as <u>Appendix "A."</u>

[30]  *See id.*;                    Redacted                            ; *see also* Plaintiffs' Response to Defendants' First Request for Admissions (No. 14)

[31]  *See*                                Redacted

    b.    KMOC transferred its equity interests in KMOGC and other E&P subsidiaries to Kerr-McGee Worldwide;[32]

    c.    KMOC transferred its equity interests in Devon Energy Corporation to KM Investment;[33]

    d.    Kerr-McGee Chemical LLC ("Kerr-McGee Chemical"), n/k/a Tronox LLC, transferred (i) 100% of its equity interest in Kerr-McGee Stored Power Corporation and (ii) 50% of its equity interest in US Avestor LLC to KMOC, which in turn contributed the same assets to Stored Power;[34]

    e.    Redacted

    f.    Redacted

25.    Through Project Focus, Kerr-McGee Worldwide became the parent holding company for six subsidiary holding companies including:  (i) KMOGC; (ii) Kerr-McGee Chemical Worldwide, n/k/a Tronox Worldwide; (iii) Stored Power; (iv) Shared Services; (v) KM Credit; and (vi) KM Investment.[37]

---

[32]  *See*    Redacted

[33]  *See id.* at 7-8;    Redacted    The Devon Energy Corporation stock transferred from KMOC had a fair value of $437 million as of December 31, 2002. *See* Kerr-McGee Corp. 2002 Annual Report Form 10-K filed March 27, 2003, at Item 7.

[34]  *See*    Redacted

[35]  *See*    Redacted

[36]  *See*    Redacted

[37]  *See*    Redacted

**b.  Separation of Tronox and Kerr-McGee**

26.     Tronox Inc. was formed on May 17, 2005.[38]

27.     On November 28, 2005, Kerr-McGee, Kerr-McGee Worldwide and Tronox
Inc. entered into the Master Separation Agreement (the "MSA").[39]

28.     The MSA states:

> Worldwide[40] will, and Parent[41] will cause Worldwide to, assign, transfer and
> convey to Tronox all of Worldwide's right, title and interest in and to the
> Membership Interests,[42] and Tronox will receive and accept from Worldwide
> all of Worldwide's right, title and interest in and to such Membership
> Interests.   The transfer of the Membership Interests and the rest of the
> Contribution shall be in exchange for (i) the conversion of the Existing Stock
> into 22,889,431 shares of Tronox Class B Common Stock, which will be the
> only shares of Tronox Class B Common Stock outstanding, (ii) the payment
> of the net proceeds of the Initial Public Offering and the Concurrent
> Financings pursuant to Section 3.5 and the payment, if any, of cash balances
> in excess of $40 million pursuant to Section 2.4(a), and (iii) the covenants
> and agreements of Tronox set forth herein and in each of the Ancillary
> Agreements.[43]

29.     The MSA also states:

> The Board of Directors of Parent (the "Board") has determined that it is in
> the best interests of Parent and its stockholders to separate the chemical
> business and the oil and gas exploration and production business from their
> common ownership by Parent, and has authorized the separation through an
> initial public offering, a spin-off or a split-off of the chemical business, or a
> combination of some or all of these transactions (collectively, the
> "Separation") . . . Parent currently intends, after the Initial Public Offering, to
> distribute (in one or more transactions or offerings) to holders of shares of

---

[38]   *See* Tronox Inc. Prospectus Form 424B4 filed November 22, 2005, at 1.

[39]   *See* MSA,    Redacted

[40]   *See id.* (defining "Worldwide" as "Kerr-McGee Worldwide Corporation, a Delaware Corporation").

[41]   *See id.* (defining "Parent" as "Kerr-McGee Corporation, a Delaware Corporation").

[42]   *See id.* (defining (i) "Membership Interests" as "the limited liability company membership interests in TWLLC"
and (ii) "TWLLC" as "Kerr-McGee Chemical Worldwide LLC").

[43]   *Id.* at Article 2, § 2.1,    Redacted

Parent Common Stock, the shares of Tronox Class B Common Stock then owned directly or indirectly by Parent (the "Distribution") or offer to exchange such shares of Tronox Class B Common Stock for shares of Parent Common Stock (the "Exchange") or a combination thereof.[44]

30.    The MSA also states:

On the Closing Date, an amount equal to the aggregate amount of indebtedness owed by members of the Tronox Group to members of the Parent Group, net of the aggregate amount of indebtedness owed by members of the Parent Group to members of the Tronox Group, shall be deemed equity in Tronox and shall thereafter form a part of the continuing equity of Tronox.[45]

31.    Tronox Inc.'s 2005 Annual Report Form 10-K, filed March 29, 2006, provides

that, in connection with the MSA:

a.    "An initial public offering ("IPO") of Class A common stock was subsequently completed on November 28, 2005 . . . Pursuant to the IPO registration statement on Form S-1 (File No. 333-125574), Tronox sold approximately 17.5 million shares of its Class A common stock at a price of $14.00 per share.  Pursuant to the terms of . . . (the "MSA"), the net proceeds from the IPO of approximately $224.7 million were distributed to Kerr-McGee."[46]

b.    "Concurrent with the IPO, the company, through its wholly-owned subsidiaries, issued $350.0 million in aggregate principal amount of 9.5% senior unsecured notes due 2012 and borrowed $200.0 million under a six-year senior secured credit facility.  Pursuant to the terms of the MSA, the company distributed to Kerr-McGee the net proceeds from the borrowings of approximately $537.1 million;"[47]

---

[44]    *Id.* at Introduction,    Redacted

[45]    *Id.* at Article 2, § 2.4(b),    Redacted    The MSA provides that (i) "'Tronox Group' means Tronox, each Subsidiary of Tronox immediately after the Closing Date, Tiwest Pty. Ltd., Tiwest Sales Pty. Ltd., and the Tiwest Joint Venture and each other Person that is controlled directly or indirectly by Tronox immediately after the Closing Date," and (ii) "'Parent Group' means Parent and each Person (other than any member of the Tronox Group) that is an Affiliate of Parent immediately after the Closing Date."  *Id.* at Article 1, §1.1, Redacted

[46]    Tronox Inc. 2005 Annual Report Form 10-K filed March 29, 2006, at Items 1 & 2.

[47]    *Id.*

c. "Following the IPO, approximately 43.3% of the total outstanding common stock of Tronox was held by the general public and 56.7% was held by Kerr-McGee;"[48]

d. "[C]ommon stock held by Kerr-McGee converted into approximately 22.9 million shares of Class B common stock;[49] and

e. "On March 8, 2006, Kerr-McGee's Board of Directors declared a dividend of Tronox's Class B common stock owned by Kerr-McGee to its stockholders."[50]

32.      Kerr-McGee's Current Report Form 8-K, filed April 5, 2006, states that "[o]n March 30, 2006, . . . Kerr-McGee distributed to its stockholders, in the form of a share dividend .20164 of a share of Tronox Incorporated Class B common stock for each outstanding share of Kerr-McGee common stock." [51]

33.      Redacted

34.      Kerr-McGee's 2005 Annual Report states, "net proceeds from an initial public offering (IPO) and borrowings by Tronox, were used to repay debt, including $4.25 billion borrowed in May 2005 primarily to fund a $4 billion tender offer for Kerr-McGee's common stock."[53]

**c. Anadarko Acquisition of Kerr-McGee**

35.      On June 22, 2006, Anadarko entered into an agreement with Kerr-McGee, pursuant to which:  (i) each share of Kerr-McGee common stock was exchanged for $70.50; and (ii) Kerr-McGee became a wholly-owned subsidiary of Anadarko.[54]

---

[48]   *Id.*

[49]   *Id.*

[50]   *Id.*

[51]   Kerr-McGee Corp. Current Report Form 8-K filed April 5, 2006, at Item 2.01.

[52]   *See*                    Redacted

[53]   Kerr-McGee Corp. 2005 Annual Report Form 10-K filed March 15, 2006, at Items 1 & 2.

[54]   *See* Anadarko Petroleum Corp. Current Report Form 8-K filed June 26, 2006, at Item 1.01.

36.    Kerr-McGee's stock price was $50.08 per share at the close of trading on June 21, 2006.[55]

37.    On August 10, 2006, Anadarko acquired Kerr-McGee in exchange for approximately $16.5 billion in cash and the assumption of approximately $2.6 billion in debt.[56]

### d.    Relevant Financial Information

38.    Kerr-McGee's 2002 Annual Report, 2005 Annual Report and 2005 Quarterly Report for the period ending September 30, 2005 each provide tables disclosing the value of various hedging contracts, including contracts related to natural gas and crude oil.[57]

39.    Anadarko's 2007 Annual Report and 2008 Annual Report each provide tables disclosing the value of various hedging contracts, including contracts related to natural gas and crude oil.[58]

### C.    Expert Analysis

40.    The Expert Report of Jack F. Williams, dated June 24, 2011 (the "Williams Report"),[59] states, in part,

Redacted

---

[55]    Bloomberg Terminal pricing data for Kerr-McGee on June 21, 2006.

[56]    Anadarko Petroleum Corp. 2006 Annual Report Form 10-K filed February 27, 2007, at Item 1.

[57]    *See* Kerr-McGee Corp. 2002 Annual Report Form 10-K filed March 27, 2003, at Item 7; Kerr-McGee Corp. Quarterly Report Form 10-Q filed November 9, 2005, at Item 2; Kerr-McGee Corp. 2005 Annual Report Form 10-K filed March 15, 2006, at Item 7.

[58]    *See* Anadarko Petroleum Corp. 2007 Annual Report Form 10-K filed February 29, 2008, at Item 10; Anadarko Petroleum Corp. 2008 Annual Report Form 10-K filed February 25, 2009, at Item 8.

[59]    The Williams Report is attached hereto as Appendix "B."

Redacted

41.        Page 43 of the Williams Report includes the following table:

Redacted

Redacted

42.        Page 55 of the Williams Report states:

Redacted

43.        The Williams Report provides that,                    Redacted

---

[60]   Williams Report at 1.  The Williams Report further states                    Redacted

[61]   The Williams Report                    Redacted                    *See id.* at 14.

Redacted

44.     The Williams Report further provides,                    Redacted




                                                                                    The Williams

Report further provides that                    Redacted




45.     The Williams Report further provides that,            Redacted




46.     On November 3, 2011, Defendants served the Expert Report of Jeff D.
Balcombe (the "Balcombe Report").[66]

47.     The Balcombe Report states in part            Redacted

---

[62]    *See id.* at Exhibit 3.            Redacted

                        *See id.*

[63]    *Id.* at 46, n.93            Redacted

[64]    *See id.* at 46, Exhibit 5.

[65]    *See id.* at Exhibit 8.

[66]    The Balcombe Report and Sur-rebutal Report are attached as Exhibit A to the Balcombe Declaration, annexed
        hereto as Appendix "C."

Redacted

48.        The Balcombe Report further states, in part,        Redacted

49.        Page 42 of the Balcombe Report includes the following table:

Redacted

Redacted

50.        The Balcombe Report states, in part,        Redacted

---

[67]    Balcombe Report at 41.  The Balcombe Report states that :        Redacted

*Id.* at 7, 8.

[68]    *Id.* at 40.

[69]    Balcombe Report at 42.

51.    Page 42 of the Balcombe Report includes the following table:

Redacted

Redacted

52.    On or about December 16, 2011, Plaintiffs served the Rebuttal and Supplemental Report of Jack F. Williams (the "Williams Rebuttal") in response to the Balcombe Report.[70]

53.    The Williams Rebuttal states, in part:

Redacted

54.    The Williams Rebuttal also states, in part:

---

[70]    The Williams Rebuttal is attached hereto as Appendix "D."

[71]    Williams Rebuttal at 9-10.

Redacted

55.    The Williams Rebuttal also states                Redacted

---

[72]    *Id.* at 16 (citing the Balcombe Report at 39).

[73]    *Id.* at 42 n.57.

# Appendix A

# Filed Under Seal

# Appendix B


# Filed Under Seal

# Appendix C


# Filed Under Seal

US_ACTIVE:\43932223\04\15337 0004

# Appendix D


# Filed Under Seal

US_ACTIVE:\43932223\04\15337 0004