Melanie Gray (*admitted pro hac vice*)
Lydia Protopapas (LP 8089)
Jason W. Billeck (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:     (713) 546-5000
Facsimile:     (713) 224-9511

Richard A. Rothman (RR 0507)
Bruce S. Meyer (BM 3506)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:     (212) 310-8000
Facsimile:     (212) 310-8007

James J. Dragna (*admitted pro hac vice*)
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071
Telephone:     (213) 680-6400
Facsimile:     (213) 680-6499

Thomas R. Lotterman (*admitted pro hac vice*)
Duke K. McCall, III (*admitted pro hac vice*)
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Telephone:     (202) 373-6000
Facsimile:     (202) 373-6001

*Counsel to Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) Chapter 11 |
| TRONOX INCORPORATED, *et al.*, | ) Case No. 09-10156 (ALG) |
| Debtors. | ) Jointly Administered |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 09-01198 (ALG) |
| ANADARKO PETROLEUM CORPORATION and KERR-MCGEE CORPORATION, KERR-MCGEE OIL & GAS CORPORATION, KERR-MCGEE WORLDWIDE CORPORATION, KERR-MCGEE INVESTMENT CORPORATION, KERR-MCGEE CREDIT LLC, KERR-MCGEE SHARED SERVICES COMPANY LLC, and KERR-MCGEE STORED POWER COMPANY LLC | |
| Defendants. | |
| THE UNITED STATES OF AMERICA, | |
| Plaintiff-Intervenor, | |
| v. | |
| TRONOX, INC., TRONOX WORLDWIDE LLC, TRONOX LLC, KERR-MCGEE CORPORATION and ANADARKO PETROLEUM CORPORATION, | |
| Defendants. | |

**DEFENDANTS' NOTIFICATION OF LACK OF CONSENT TO FINAL ADJUDICATION OF FRAUDULENT TRANSFER CLAIMS AND NOTICE OF
MOTION FOR LEAVE REGARDING FIDUCIARY DUTY CLAIM**

PLEASE TAKE NOTICE that upon the annexed motion, dated March 2, 2012 (the "Motion"), Anadarko Petroleum Corporation, Kerr-McGee Corporation, Kerr-McGee Oil & Gas Corporation, Kerr-McGee Worldwide Corporation, Kerr-McGee Investment Corporation, Kerr-McGee Credit LLC, Kerr-McGee Shared Services Company LLC, and Kerr-McGee Stored Power Company LLC (collectively, "Defendants"), pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure, Rules 7012, 7015, and 7016 of the Federal Rules of Bankruptcy Procedure, and General Order M-431 of the United States District Court for the Southern District of New York, hereby: (1) provide notification that they do not consent to the Bankruptcy Court issuing final orders and judgments on Plaintiffs' fraudulent transfer claims; and (2) move for leave to (i) withdraw their consent to the Court issuing final orders and judgments on Plaintiffs' "non-core" fiduciary duty claim and (ii) amend Defendants' Answer To Plaintiffs' Second Amended Adversary Complaint to reflect such lack of consent, as more fully set forth in the Motion. A hearing will be held before the Honorable Allan L. Gropper, United States Bankruptcy Judge, in Room 617 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, at a date and time to be determined.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, set forth the legal and factual basis therefore, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-399, and on (i) the chambers of the Honorable Allan L. Gropper, One Bowling Green, New York, New York 10004, Courtroom 617; (ii) Weil, Gotshal & Manges LLP, attorneys for the Defendants, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard A. Rothman,

Esq., and Bruce S. Meyer, Esq.) and 700 Louisiana, Suite 1600, Houston, Texas 77002 (Attn: Melanie Gray, Esq., Lydia Protopapas, Esq., and Jason W. Billeck, Esq.); (iii) Bingham McCutchen LLP, attorneys for the Defendants, 355 South Grand Avenue, Suite 4400, Los Angeles, California 90071 (Attn: James J. Dragna, Esq.), and 2020 K Street, NW, Washington, DC 20006 (Attn: Duke K. McCall III, Esq.); and (iv) the Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, New York, New York 10007 (Attn: Joseph Pantoja, Esq.), so as to be filed and received at a date and time to be determined (the "Objection Deadline").

If no objections are timely filed and served with respect to the Motion, the Defendants may, on or after the Objection Deadline, submit to the Bankruptcy Court a proposed Amended Answer to Plaintiffs' Second Amended Adversary Complaint, which may be entered with no further notice to, or opportunity to be heard by, any party.

Houston, Texas
Dated:  March 2, 2012

| | |
|---|---|
| | /s/ Melanie Gray |
| Richard A. Rothman (RR 0507) | Melanie Gray (*admitted pro hac vice*) |
| Bruce S. Meyer (BM 3506) | Lydia Protopapas (LP 8089) |
| WEIL, GOTSHAL & MANGES LLP | Jason W. Billeck (*admitted pro hac vice*) |
| 767 Fifth Avenue | WEIL, GOTSHAL & MANGES LLP |
| New York, New York 10153 | 700 Louisiana, Suite 1600 |
| Telephone:  (212) 310-8000 | Houston, Texas   77002 |
| Facsimile:  (212) 310-8007 | Telephone:  (713) 546-5000 |
| | Facsimile:  (713) 224-9511 |
| Thomas R. Lotterman (*admitted pro hac vice*) | |
| Duke K. McCall, III (*admitted pro hac vice*) | James J. Dragna (*admitted pro hac vice*) |
| BINGHAM MCCUTCHEN LLP | BINGHAM MCCUTCHEN LLP |
| 2020 K Street, NW | 355 South Grand Avenue, Suite 4400 |
| Washington, DC 20006 | Los Angeles, California   90071 |
| Telephone:  (202) 373-6000 | Telephone:  (213) 680-6400 |
| Facsimile:  (202) 373-6001 | Facsimile:   (213) 680-6499 |
| | |
| | *Counsel to Defendants* |

**Hearing Date: TBD**
**Response Deadline: TBD**

| | |
|---|---|
| Melanie Gray (*admitted pro hac vice*) | Richard A. Rothman (RR 0507) |
| Lydia Protopapas (LP 8089) | Bruce S. Meyer (BM 3506) |
| Jason W. Billeck (*admitted pro hac vice*) | WEIL, GOTSHAL & MANGES LLP |
| WEIL, GOTSHAL & MANGES LLP | 767 Fifth Avenue |
| 700 Louisiana, Suite 1600 | New York, New York 10153 |
| Houston, Texas 77002 | Telephone: (212) 310-8000 |
| Telephone: (713) 546-5000 | Facsimile: (212) 310-8007 |
| Facsimile: (713) 224-9511 | |
| James J. Dragna (*admitted pro hac vice*) | Thomas R. Lotterman (*admitted pro hac vice*) |
| BINGHAM MCCUTCHEN LLP | Duke K. McCall, III (*admitted pro hac vice*) |
| 355 South Grand Avenue, Suite 4400 | BINGHAM MCCUTCHEN LLP |
| Los Angeles, California 90071 | 2020 K Street, NW |
| Telephone: (213) 680-6400 | Washington, DC 20006 |
| Facsimile: (213) 680-6499 | Telephone: (202) 373-6000 |
| | Facsimile: (202) 373-6001 |

*Counsel to Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, *et al.*, | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | Adv. Pro. No. 09-01198 (ALG) |
| ANADARKO PETROLEUM CORPORATION and KERR-MCGEE CORPORATION, KERR-MCGEE OIL & GAS CORPORATION, KERR-MCGEE WORLDWIDE CORPORATION, KERR-MCGEE INVESTMENT CORPORATION, KERR-MCGEE CREDIT LLC, KERR-MCGEE SHARED SERVICES COMPANY LLC, and KERR-MCGEE STORED POWER COMPANY LLC | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | |
| | ) | |
| TRONOX, INC., TRONOX WORLDWIDE LLC, TRONOX LLC, KERR-MCGEE CORPORATION and ANADARKO PETROLEUM CORPORATION, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' NOTIFICATION OF LACK OF CONSENT TO
FINAL ADJUDICATION OF FRAUDULENT TRANSFER CLAIMS AND
MOTION FOR LEAVE REGARDING FIDUCIARY DUTY CLAIM**

TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

Anadarko Petroleum Corporation, Kerr-McGee Corporation, Kerr-McGee Oil & Gas Corporation, Kerr-McGee Worldwide Corporation, Kerr-McGee Investment Corporation, Kerr-McGee Credit LLC, Kerr-McGee Shared Services Company LLC, and Kerr-McGee Stored Power Company LLC (collectively, "Defendants"), defendants in the above-captioned Adversary Proceeding, file this motion (the "Motion for Leave") pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure (the "Federal Rules"), Rules 7012, 7015, and 7016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and General Order M-431 of the United States District Court for the Southern District of New York. Defendants hereby: (1) provide notification that they do not consent to the Court issuing final orders and judgments on the fraudulent transfer claims asserted by Tronox Incorporated, Tronox Worldwide LLC and Tronox LLC (collectively, "Plaintiffs"); and (2) move for leave to (i) withdraw their consent to the Court issuing final orders and judgments on Plaintiffs' "non-core" fiduciary duty claim, and (ii) amend Defendants' Answer To Plaintiffs' Second Amended Adversary Complaint to reflect such lack of consent.

**PRELIMINARY STATEMENT**

When Defendants answered Plaintiffs' Amended Adversary Complaint and Second Amended Adversary Complaint (collectively, the "Complaint"), they were obligated to plead (1) whether the claims asserted were "core" or "non-core," and (2) whether they consented to final adjudication of "non-core" claims by the bankruptcy court. FED. R. BANKR. P. 7012(b) ("Rule 7012(b)"). There was, however, no obligation to plead "consent" with respect to "core" claims. *Id*. At that time, it was assumed that bankruptcy courts had statutory *and constitutional* authority to finally adjudicate all "core" claims irrespective of consent. *See* 28 U.S.C. § 157; *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 466-67 (S.D.N.Y. 2011).

The Supreme Court's decision in *Stern v. Marshall*, --- U.S. ---, 131 S.Ct. 2594, 2609-20 (2011), upset that assumption by suggesting a new class of claims that, although statutorily "core," were deemed to be outside the constitutional authority of a bankruptcy court to adjudicate to a final determination – absent the consent of the parties. *Dev. Specialists*, 462 B.R. at 466-72. Based upon *Stern's* holding, District Courts in the Southern District of New York have recently held that a bankruptcy court's final adjudicatory authority over fraudulent transfer claims requires informed consent, and any presumed consent pre-*Stern* is unavailing. *See*, *e.g.*, *Adelphia Recovery Trust v. FLP Group, Inc.*, No. 11 CIV. 6847 PAC, 2012 WL 264180, at *3-5 (S.D.N.Y. Jan. 30, 2012).

Consistent with the developing case-law, the Southern District of New York's Board of Judges recently promulgated an amended "Standing Order of Reference re: Title 11," as set forth in General Order M-431 of the United States District Court for the Southern District of New York (the "Amended Order"), which clarifies that bankruptcy courts shall, unless otherwise directed by the District Court, hear core claims outside the final adjudicatory authority of the bankruptcy court, and issue proposed findings of fact and conclusions of law with respect thereto. Similarly, on February 21, 2012, the United States Bankruptcy Court for the Southern District of New York proposed a new rule requiring defendants to plead whether they consent to the entry of final orders or judgments by the bankruptcy court on core claims outside its final adjudicatory authority. *See* Proposed Rule 7012-1, Statement in Responsive Pleading Regarding Consent to Entry of Orders or Judgment in Core Proceeding (the "Proposed Rule") (February 21, 2012).

In light of the significant changes in a bankruptcy court's authority to finally adjudicate fraudulent transfer claims without the parties' consent, the Amended Order, and as required by Proposed Rule 7012-1, Defendants hereby notify the Court that they do not consent to the Court issuing final orders or judgments on Counts I-III of Plaintiffs' Complaint, Plaintiffs' fraudulent transfer claims, since these are "core" claims outside the final adjudicatory power of the Court under Article III of the United States

Constitution ("Article III").[1]  In addition, given that *Stern* and its progeny altered the Court's authority to issue final orders and judgments on Plaintiffs' claims, Defendants move for leave to withdraw their consent to this Court's final adjudication of Count IV of the Complaint, the fiduciary duty claim, and amend their Answer to Plaintiffs' Second Amended Adversary Complaint to so reflect.

Defendants' Motion for Leave will not alter the conduct or timing of trial or result in any prejudice to Plaintiffs.  The only effect this motion could have on the outcome of this Adversary Proceeding concerns the proper form of any judgment entered by this Court with respect to this proceeding (*i.e.*, proposed findings of fact and conclusions of law) and the District Court's standard of review thereof.  Granting Defendants' Motion for Leave, however, ensures Defendants are permitted to assert their constitutional right to have the multi-billion dollar claims that are the subject of the Complaint finally adjudicated by an Article III court.

## BACKGROUND FACTS

1. Prior to the Supreme Court's decision in *Stern v. Marshall*, a bankruptcy court's authority to issue final orders and judgments was determined by reference to 28 U.S.C. § 157.  *Dev. Specialists*, 462 B.R. at 466-67.  The bankruptcy court was permitted to enter "appropriate orders and judgments" for "core proceedings," which were considered final.  *See* 28 U.S.C. § 157(b)(1).  In "non-core" proceedings, however, bankruptcy courts were not authorized to issue final orders or judgments absent the consent of all parties to the dispute.  28 U.S.C. § 157(c).[2]  Accordingly, Rule 7012(b) required

---

[1] In asserting their lack of consent, Defendants do not imply or concede that their consent empowers the Court to finally adjudicate Plaintiffs' claims.  Article III serves two roles, "both to protect the role of the independent judiciary within the constitutional scheme of tripartite government, and to safeguard litigants' right to have claims decided before judges who are free from potential domination by other branches of government."  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986) (internal quotations and citations omitted).  Although the "personal right . . . is subject to waiver," "[t]o the extent that th[e] structural principle is implicated in a given case, the parties cannot by consent cure the constitutional difficulty . . . ."  *Id*. at 848-51.  Defendants reserve their right to assert that final adjudication of Plaintiffs' claims by the Court implicates Article III structural concerns, and, therefore, that Defendants' consent will not cure the constitutional infirmities identified by *Stern* and its progeny.

[2] Appellate review of "core proceedings" tracked that of "traditional appellate standards."  *Stern,* 131 S.Ct. at 2603-04 (citing 28 U.S.C. § 158; Fed. R. Bankr. P. 8013).  For "non-core proceedings," bankruptcy courts were instructed to submit "proposed findings of fact and conclusions of law to the district court," which reviewed the submissions *de novo*.  28 U.S.C. § 157(c)(1).

all responsive pleadings to admit or deny an allegation that the proceeding was core or non-core. The rule further provided that, "if the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge." *Id*.

2. Plaintiffs filed their Amended Adversary Complaint after the Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' initial Complaint. *See* Op., March 31, 2010. Based upon agreement, Plaintiffs filed a Second Amended Adversary Complaint on February 7, 2011. Defendants answered Plaintiffs' Amended Adversary Complaint on May 19, 2010, and Plaintiffs' Second Amended Adversary Complaint on June 10, 2011 (collectively, the "Answer"). Therefore, Defendants answered the Complaint under the law prevailing prior to *Stern*, which was decided on June 23, 2011.

3. In the Complaint, Plaintiffs originally sought recovery based upon actual and constructive fraudulent transfers, breach of fiduciary duty, civil conspiracy, and aiding and abetting a breach of a fiduciary duty. Second Am. Adversary Compl. ¶¶ 141-203.[3] Given that "proceedings to determine, avoid, or recover fraudulent conveyances" are statutorily designated as "core proceedings" under section 157(b)(2)(H), Defendants answered that, "certain, but not all," of the claims pled in the Complaint were "core claims." Answer ¶ 13.

4. Consistent with the then-current interpretation of Rule 7012(b), Defendants' Answer did not address consent to the bankruptcy court's authority to enter final orders and judgments on the Complaint's "core" claims. *See id*. Defendants reasonably assumed that the Court had statutory *and constitutional* authority to adjudicate all "core" claims to a final determination, regardless of "consent." *See Dev. Specialists,* 462 B.R. at 466-67 (noting that, prior to *Stern*, "it was assumed that Congress had succeeded in identifying as 'core' proceedings only those affecting 'public rights,' so all 'core' proceedings fell within the final adjudicative power of the Article I Bankruptcy Court").

---

[3] Since the resolution of Defendants' motions to dismiss, the only remaining claims are the fraudulent transfer claims (Counts I-III) and the breach of fiduciary duty claim (Count IV). Mem. Op. 20, May 11, 2011.

5. Pursuant to Rule 7012(b), Defendants did consent to the entry of final orders with respect to Plaintiffs' non-core claims. Answer ¶ 13. This consent, however, was premised on the assumption that this Court would have final adjudicatory authority over all "core" claims under section 157(b)(2)(H). In essence, Defendants "consented" given that the Court would have *necessarily* had the authority to issue final orders and judgments on the "core" fraudulent transfer claims, which factually overlapped with the breach of fiduciary duty claim.

6. In *Stern v. Marshall*, the Supreme Court held that bankruptcy courts "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 131 S.Ct. at 2620. By rejecting the bankruptcy courts' presumed ability to enter final orders and judgments on all core claims, *Stern* created a new class of claims that is statutorily defined as "core," but that falls outside the final adjudicatory authority of a bankruptcy court based upon Article III. *Id.*[4]

7. Recently, Southern District of New York courts have held that although bankruptcy courts continue to have subject matter jurisdiction over core but precluded claims, they do not have the constitutional authority to issue final orders and judgments on fraudulent transfer claims, absent the consent of the parties. *See Adelphia Recovery Trust*, 2012 WL 264180, at *1-5; *Dev. Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP*, No. 11 CIV. 6337 CM, 2011 WL 6780600, at *2-3 (S.D.N.Y. Dec. 23, 2011); *Dev. Specialists*, 462 B.R. at 468-72. Where a "trustee has brought a fraudulent conveyance action against a third party non-creditor of the estate, in order to recover assets allegedly belonging to the estate" that action "lies beyond the final adjudicative power of the Bankruptcy Court." *Dev. Specialists, Inc.*, 2011 WL 6780600, at *2-3. Accordingly, this Court is not authorized to finally adjudicate the fraudulent transfer claims absent Defendants' consent. *See id.*; *Adelphia Recovery Trust*, 2012 WL 264180, at *5.

---

[4] This class of claims will be referred to as "core but precluded" for the remainder of this Motion for Leave.

8. Post-*Stern*, most courts found that bankruptcy courts may hear core but precluded claims, so long as they issue proposed findings of fact and conclusions of law with respect thereto, and not final orders or judgments. *See*, *e.g.*, *Retired Partners of Coudert Bros. Trust v. Baker & McKenzie LLP (In re Coudert Bros. LLP)*, No. 08-1472, 2011 WL 5593147, at *13 (S.D.N.Y. Sept. 22, 2011). Section 157(c), however, only authorized bankruptcy courts to issue proposed findings of fact and conclusions of law on non-core claims. The Southern District of New York's Board of Judges addressed this inconsistency on January 31, 2012, when it entered the Amended Order, which now provides that:

> If a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution in a particular proceeding referred under this order and determined to be a core matter, the bankruptcy judge shall, unless otherwise ordered by the district court, hear the proceeding and submit proposed findings of fact and conclusions of law to the district court.

*See* Amended Order. The Amended Order clarifies that, in the Second Circuit, bankruptcy judges are permitted to issue proposed findings of fact and conclusions of law on core claims, despite the lack of explicit statutory authority in 28 U.S.C. § 157. *Adelphia Recovery Trust*, 2012 WL 264180, at *6.

9. *Stern* also had an effect on the pleading requirements of the Bankruptcy Rules. Existing Rule 7012(b) only requires that Defendants plead whether a claim is core or non-core, and whether they consent to final adjudication *of non-core claims*. Rule 7012(b) does not, however, address how parties should plead the "core but precluded" claims *Stern* created. Proposed Rule 7012-1, published on February 21, 2012, addresses this gap by *mandating* that defendants plead whether they consent to the bankruptcy court entering final orders and judgments on core but precluded claims:

> In addition to statements required by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, if a responsive pleading states that the proceeding or any part of it is core, it also shall contain a statement that the pleader does or does not consent to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

*Id*.

10. In light of *Stern*, its progeny, the Amended Order, and in order to comply with Proposed Rule 7012-1, Defendants now notify the Court that they do not consent to the Court issuing final

orders or judgments on "core" claims outside the final adjudicatory power of the Court under Article III, a category which includes Plaintiffs' fraudulent transfer claims. In addition, leave should be granted to allow Defendants to withdraw their previous consent to final adjudication by this Court on Plaintiffs' "non-core" fiduciary duty claim, and to amend their Answer to reflect these changes.

## ARGUMENT

**I.   DEFENDANTS NEVER CONSENTED AND DO NOT CONSENT TO THIS COURT'S ISSUANCE OF FINAL ORDERS OR JUDGMENTS ON THE FRAUDULENT TRANSFER CLAIMS**

11.   Defendants have never consented to this Court's issuance of final orders or judgments on the Complaint's "core" fraudulent transfer claims. Defendants pled "that certain, but not all, claims asserted in the Amended Complaint, as pled, are core claims," and consented to the entry of final orders and judgments by this Court on *non-core* claims. Answer ¶ 13. Defendants' Answer cannot, however, be interpreted as a knowing waiver of Defendants' constitutional right to have Plaintiffs' fraudulent transfer claims finally adjudicated by an Article III court because Defendants did not know, and could not have known, they were entitled to final adjudication by an Article III court on Plaintiffs' fraudulent transfer claims at the time the Answer was filed. *See Adelphia Recovery Trust*, 2012 WL 264180, at *5. Consent to waive one's right to proceed in an Article III court "should only be found where it is fully knowing." *Id.* at *5 (internal quotations omitted). As was the case in *Adelphia*:

> There is no indication that Defendants, in conceding that the claim was "core," expressly consented to final adjudication by a bankruptcy judge. While this may have been implied at that time, *Stern* provided [defendants] with a legal basis to contest the Bankruptcy Court's adjudicative power that they did not have before. Accordingly, the Court will not read Defendants [sic] pre-*Stern* conduct as an implied consent to final adjudication by the Bankruptcy Court because any such consent was not knowingly made.

*Id.* (internal quotations and citations omitted).

12.   Courts recently have made it clear that pre-*Stern* conduct cannot be a basis for finding consensual waiver of a party's right to having an Article III court finally adjudicate its claims. *See id.; Dev. Specialist*, 462 B.R. at 472 ("Thus, I conclude that *Stern* provided the Firms with a legal basis to contest the Bankruptcy Court's adjudicative power that they did not have before last summer. For that

reason, the Firms should not be found to have consented to final adjudication in the Bankruptcy Court."); *In re Coudert Bros. LLP*, 2011 WL 5593147, at *12 ("[U]ntil *Stern* strongly embraced the approach of the *Marathon* plurality, it is doubtful that the Trust knew or could have known that it had a right to Article III adjudication that it was waiving."); *Meoli v. The Huntington Nat'l Bank* (*In re Teleservices Group, Inc.*, 456 B.R. 318, 339 (Bankr. W.D. Mich. 2011) ("Huntington, though, clearly has not given its consent when that consent is now recognized for what it must be—a *knowing waiver* of Huntington's right to have an Article III judge, as opposed to me, make the final decision . . . .").[5]

13. Proposed Rule 7012-1 also evidences that consent to adjudication by a bankruptcy court on core but precluded claims is not established by pleading that a claim is "core," or by pleading that one consents to non-core claims being finally adjudicated by the bankruptcy court. Proposed Rule 7012-1 specifically establishes that a defendant must plead whether it consents to having core but precluded claims adjudicated to a final determination by a bankruptcy court. *Id*. If either pleading that a claim was core, or consenting to final adjudication by a bankruptcy court of non-core claims, was sufficient to show consent with respect to core but precluded claims, there would be no need for the Proposed Rule. Defendants' notification with respect to their lack of consent is, in fact, necessary to comply with the Proposed Rule's mandate.

14. As the fraudulent transfer claims are outside the final adjudicatory power of the Court, final orders and judgments on those claims are inappropriate in this forum. *See Adelphia Recovery Trust*, 2012 WL 264180, at *2-5; *Dev. Specialists*, 2011 WL 6780600, at *2-3. Nothing prohibits the Court, however, from issuing proposed findings of fact and conclusions of law as an alternative. *Adelphia Recovery Trust*, 2012 WL 264180, at *5-7.

---

[5] Cases finding pre-*Stern* conduct indicative of "consent" are readily distinguishable, not controlling, and contradict *Adelphia*. *See* discussion *infra* Part II.

II.  **LEAVE SHOULD BE GRANTED TO ALLOW DEFENDANTS TO WITHDRAW THEIR CONSENT TO THIS COURT'S FINAL ADJUDICATION OF THE FIDUCIARY DUTY CLAIM**

15. The provisions of section 157(c) regarding consent "are deemed important, in light of the fact that bankruptcy courts are not Article III tribunals." *In re Hunt*, 215 B.R. 505, 512 (Bankr. W.D. Tex. 1997). "If those provisions are too narrowly constricted, such as by (for example) making consent irrevocable, the entire scheme is at least colorably threatened." *Id*.

16. Withdrawing consent with respect to a bankruptcy court's power to issue final orders and judgments, "require[s] both a motion and a showing of good cause." *Heath Jacobs, LLC v. Kingsley Capital, Inc.* (*In re Kingsley Capital, Inc.*), 423 B.R. 344, 352 (B.A.P. 10th Cir. 2010) (citing 28 U.S.C. § 157(c)(2)). "'Good cause' includes a material change in the circumstances that led the party to consent in the first instance." *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 770 (S.D. Tex. 2007). For example, the court in *Veldekens* found that good cause for withdrawal existed because a "changed relationship altered their rights and preferences as to Bankruptcy Court adjudication." *Id*. at 769.

17. As noted above, Defendants consented to final adjudication of the fiduciary duty claim based on the then existing legal precept that the Court necessarily would have had authority to adjudicate the statutorily "core" fraudulent transfer claims to a final determination. *See* § 157(b)(2)(H); *Dev. Specialists, Inc.*, 462 B.R. at 466-67. But, that is no longer the case. It was only because Defendants believed that the Court had the power to adjudicate the fraudulent transfer claims regardless of Defendants' consent that Defendants consented to the final adjudication of the non-core fiduciary duty claim. When this legal precept was overturned with respect to the fraudulent transfer claims, however, Defendants were accorded with a right to have all Plaintiffs' claims adjudicated by an Article III court for the first time. This is a "material change in the circumstances that led [Defendants] to consent in the first instance," and therefore amounts to good cause justifying granting Defendants leave to withdraw their previously granted consent. *See Veldekens*, 362 B.R. at 769-70.

18. While certain courts have refused to allow a party to withdraw its consent in light of *Stern* and its progeny, those cases are not controlling and are readily distinguishable. The court in *In re*

*Old Prairie Block Owner, LLC*, 457 B.R. 692, 702 (Bankr. N.D. Ill. 2011), found that a defendant could not "undo" its previously issued consent "now that it is faced with unfavorable rulings following motions resulting in dismissal of four Counts with prejudice and losing after trial of Count III."  *Id*.   The court found withdrawal would need to be supported by a "motion and a showing of good cause," neither of which was provided by the Defendant.  *Id*.   In this case, withdrawal of consent is supported by a motion establishing good cause filed well in advance of trial.   This is not an after-the-fact attempt by a dissatisfied litigant to retroactively withdraw consent after such claims had been fully litigated and lost.

19. Likewise, in *Brook v. Ford Motor Credit Co., LLC (In re Peacock II)*, 455 B.R. 810 (M.D. Fla. 2011), the defendants attempted to revoke their consent without filing a motion, and "without a showing of cause."  *Id*. at 813.   The claims at issue in *Peacock II*, however, were brought under the Florida Consumer Collections Practices Act.  *Id*. at 811-12.   Despite the fact that the defendants mistakenly pled from the outset that the claims were core, the claims were non-core both before and after *Stern*.  *Id.* at 811-13.   Therefore, there was no explicit change in the governing legal regime, as there has been with respect to fraudulent transfer claims.   Given these dissimilarities, *Peacock II* has no bearing on whether this Court should permit Defendants to withdraw previously issued consent.

20. Lastly, *Bayonne Med. Ctr. v. Bayonne/Omni Dev., LLC (In re Bayonne Med. Ctr.)*, No. 09-1689 (MS), 2011 WL 5900960, at *6 (Bankr. D.N.J. Nov. 1, 2011), is likewise inapposite. The Court in *Bayonne* found that a *plaintiff* could not withdraw its consent given that it "demand[ed] . . . full and complete adjudication by this court of all of the causes pled here and *placed solely by the plaintiff before this court* . . . ."  *Id*. at *6 (emphasis added).   Here, Defendants did not "place" these claims before the court, and the mere fact that they arose in a bankruptcy context does not negate Defendants' right to see them adjudicated to a final decision by an Article III court.  *Dev. Specialists, Inc.*, 2011 WL 6780600, at *3.

21. Assuming this Court grants leave to allow Defendants to withdraw consent to a final adjudication of the non-core fiduciary duty claim in this Court, Defendants seek leave to amend their Answer to reflect that they do not consent to the final adjudication by this Court of the Plaintiffs'

remaining claims. While Federal Rule 15(a)(2) limits a party's ability to "amend its pleading only with the opposing party's written consent or the court's leave[,] [t]he court should [nonetheless] freely give leave when justice so requires."[6] "A Court should deny a motion to amend only for good reasons, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372, 379 (S.D.N.Y. 2007) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Showing "prejudice alone" or "mere delay" is not a basis for denying leave to amend. *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000).

22. Plaintiffs cannot show undue prejudice, bad faith, or a dilatory motive given the development of the case-law, the Amended Order, Proposed Rule 7012-1, and the fact that the outcome of this Motion for Leave will not alter any aspect of this litigation up to and including trial. The only effect amendment would have on this litigation concerns this Court's ability to issue a final order or judgment in the Adversary Proceeding. If this Motion for Leave is granted, the Court will only be permitted to issue proposed findings of fact and conclusions of law with respect to these claims, which would require approval by the District Court after *de novo* review of all challenged findings. *See In re Coudert Bros. LLP*, 2011 WL 5593147, at *13; Amended Order. Accordingly, Plaintiffs cannot show any prejudice as a result of amendment. *See In re Teleservices Group, Inc.*, 456 B.R. at 340 ("I perceive no prejudice to Trustee if I at this time were to convert my endeavor to a report and recommendation so that a district court

---

6   FED. R. CIV. P. 15 applies to this adversary proceeding through FED. R. BANKR. P. 7015. When a motion to amend is filed outside the confines of a scheduling order, the movant must also show "good cause" for the delay. *See* FED. R. CIV. P. 16(b)(4) (applied to this adversary proceeding through FED. R. BANKR. P. 7016); *Estate of Ratcliffe v. Pradera Realty Co.*, No. 05 Civ. 10272 (JFK), 2007 WL 3084977, at *4 (S.D.N.Y. Oct. 19, 2007). Although there have been several case management orders issued in this Adversary Proceeding, the deadline for fact and expert discovery has, in practice, been modified by the parties for the necessity of managing the case. For example, Plaintiffs' document production has continued unabated well after the June 24, 2011 deadline imposed by the Fourth Amended Case Management Order. The deadline for amending a pleading is tied to the close of fact discovery. Fourth Am. Case Management Order ¶ 6. Therefore, it is not clear that Rule 16(b)(4) applies. Even if it does apply, however, good cause has been met, as outlined above.

judge may later make his or her own independent assessment of Trustee's claim and Huntington's defenses.").

23.    A finding by this Court that Defendants are not entitled to assert their lack of consent, withdraw their consent, or amend their complaint, however, will result in grave prejudice to Defendants.   Defendants are constitutionally entitled to have an Article III court issue all final orders and judgments on Plaintiffs' multi-billion dollar claims.   Although this right can be waived, consent "should only be found when it is fully knowing."   *Adelphia Recovery Trust*, 2012 WL 264180, at *5-7.   Defendants did not know, and could not have known, when they filed their Answer, that they were entitled to having the entire claim finally adjudicated by an Article III court.   Accordingly there has been no "fully knowing" waiver of consent.   Holding Defendants to their pre-*Stern* conduct, would amount to an unjustified denial of their ability to assert their constitutional rights.

## CONCLUSION

24.    For the foregoing reasons, Defendants respectfully request that this Court (1) take notice of the fact that Defendants do not consent to the Court issuing final orders and judgments on Plaintiffs' fraudulent transfer claims; and (2) grant Defendants leave to (i) withdraw their consent to the Court issuing final orders and judgments on Plaintiffs' "non-core" fiduciary duty claim, and (ii) amend their Answer to reflect the lack of consent to final adjudication.

Houston, Texas
Dated:  March 2, 2012

/s/ Melanie Gray

| | |
|---|---|
| Richard A. Rothman (RR 0507) | Melanie Gray (*admitted pro hac vice*) |
| Bruce S. Meyer (BM 3506) | Lydia Protopapas (LP 8089) |
| WEIL, GOTSHAL & MANGES LLP | Jason W. Billeck (*admitted pro hac vice*) |
| 767 Fifth Avenue | WEIL, GOTSHAL & MANGES LLP |
| New York, New York 10153 | 700 Louisiana, Suite 1600 |
| Telephone:    (212) 310-8000 | Houston, Texas   77002 |
| Facsimile:     (212) 310-8007 | Telephone:    (713) 546-5000 |
| | Facsimile:     (713) 224-9511 |
| Thomas R. Lotterman (*admitted pro hac vice*) | James J. Dragna (*admitted pro hac vice*) |
| Duke K. McCall, III (*admitted pro hac vice*) | BINGHAM MCCUTCHEN LLP |
| BINGHAM MCCUTCHEN LLP | 355 South Grand Avenue, Suite 4400 |
| 2020 K Street, NW | Los Angeles, California   90071 |
| Washington, DC 20006 | Telephone:    (213) 680-6400 |
| Telephone:    (202) 373-6000 | Facsimile:     (213) 680-6499 |
| Facsimile:     (202) 373-6001 | |
| | *Counsel to Defendants* |

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Defendants' Notification of Lack of Consent to Final Adjudication of Fraudulent Transfer Claims and Motion for Leave Regarding Fiduciary Duty Claim** was served on the following counsel of record on March 2, 2012, as indicated below:

*Via email jonathan.henes@kirkland.com*
Jonathan S. Henes
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022

*Via email jeffrey.zeiger@kirkland.com*
Jeffrey J. Zeiger
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654

*Via email joseph.pantoja@usdoj.gov and robert.yalen@usdoj.gov*
Joseph Pantoja
Robert Yalen
Assistant U.S. Attorney
SOUTHERN DISTRICT OF NEW YORK
86 Chambers Street
New York, New York 10007

*Via email david.zott@kirkland.com*
David J. Zott
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654


Houston, Texas
Dated: March 2, 2012

 */s/ Rene Olvera*
Rene Olvera