Melanie Gray (*admitted pro hac vice*)
Lydia Protopapas (LP 8089)
Jason W. Billeck (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas   77002
Telephone:   (713) 546-5000
Facsimile:   (713) 224-9511

James J. Dragna (*admitted pro hac vice*)
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California   90071
Telephone:   (213) 680-6400
Facsimile:   (213) 680-6499

Richard A. Rothman (RR 0507)
Bruce S. Meyer (BM 3506)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York   10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

Thomas R. Lotterman (*admitted pro hac vice*)
Duke K. McCall, III (*admitted pro hac vice*)
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC   20006
Telephone:   (202) 373-6000
Facsimile:   (202) 373-6001

*Counsel to Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, *et al.*, | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. Pro. No. 09-01198 (ALG) |
| | ) | |
| ANADARKO PETROLEUM CORPORATION and KERR-MCGEE CORPORATION, KERR-MCGEE OIL & GAS CORPORATION, KERR-MCGEE WORLDWIDE CORPORATION, KERR-MCGEE INVESTMENT CORPORATION, KERR-MCGEE CREDIT LLC, KERR-MCGEE SHARED SERVICES COMPANY LLC, and KERR-MCGEE STORED POWER COMPANY LLC, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | |
| | ) | |
| TRONOX INC., TRONOX WORLDWIDE LLC, TRONOX LLC, KERR-MCGEE CORPORATION and ANADARKO PETROLEUM CORPORATION, | ) ) ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND FACTS........................................................................................... 2

    A.    Procedural History .................................................................................. 2

    B.    The CMOs, The Answer And Discovery............................................... 3

    C.    The Summary Judgment Motion ........................................................... 5

    ARGUMENT .............................................................................................. 6

I.    If § 546(e) Is An Affirmative Defense, It Has Been Preserved By The Affirmative
Defenses Set Forth In The Answer ................................................................... 6

    A.    The Answer Preserved The § 546(e) Defense Because It Included The
Defense Of "Failure To State A Claim Upon Which Relief May Be
Granted".................................................................................................. 8

    B.    The § 546(e) Defense Has Been Preserved Under Rule 8(c) Because
Plaintiffs Had Knowledge Of All Facts Relevant To The Defense And The
Answer Included A Defense Stating That Plaintiffs' Claims Are Barred To
The Extent Authorized By Law ............................................................. 10

II.    In The Alternative, Leave To Amend The Answer To Specifically Plead A
§ 546(e) Affirmative Defense Should Be Granted ......................................... 13

    A.    The Proposed Amendment Is Not Being Sought In Bad Faith Or For A
Dilatory Purpose ................................................................................... 15

    B.    The Proposed Amendment Will Not Unduly Prejudice Plaintiffs...................... 16

    C.    Defendants Have Not Unduly Delayed In Seeking The Amendment ................. 21

    D.    The Proposed Amendment Is Not Futile ............................................. 23

III.    To The Extent The "Good Cause" Standard Of Rule 16(b) Applies, It Has Been
Met .................................................................................................................. 23

    CONCLUSION........................................................................................... 27

**DEFENDANTS' MOTION FOR AN ORDER CONFIRMING THAT DEFENDANTS HAVE PRESERVED THE DEFENSE CODIFIED BY SECTION 546(E) OF THE BANKRUPTCY CODE OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND THEIR ANSWER TO THE SECOND AMENDED ADVERSARY COMPLAINT TO INCLUDE SUCH DEFENSE**

TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

Anadarko Petroleum Corporation, Kerr-McGee Corporation, Kerr-McGee Oil & Gas Corporation, Kerr-McGee Worldwide Corporation, Kerr-McGee Investment Corporation, Kerr-McGee Credit LLC, Kerr-McGee Shared Services Company LLC and Kerr-McGee Stored Power Company LLC (collectively, the "Defendants"), file this Motion for An Order Confirming that Defendants Have Preserved The Defense Codified by Section 546(e) of the Bankruptcy Code or, in the Alternative, for Leave to Amend their Answer to the Second Amended Adversary Complaint to Include Such Defense (the "Motion"), and respectfully represent:

## PRELIMINARY STATEMENT

By letter dated February 21, 2012, Defendants advised the Court and the above-named plaintiffs in this Adversary Proceeding (the "Plaintiffs") that they intended to move for summary judgment on the ground that § 546(e) of title 11 of the United States Code (the "Bankruptcy Code") protects the transfers Plaintiffs seek to avoid in this action.  By letter dated February 22, 2012, Plaintiffs advised the Court and Defendants that they objected to Defendants' assertion of § 546(e) on the ground that it is an affirmative defense which Defendants failed to preserve.  On February 24, 2012, Defendants moved for partial summary judgment on three grounds, including § 546(e) of the Bankruptcy Code.  In accordance with the Court's suggestion at the February 23, 2012 Rule 7056-1 pre-motion conference, Defendants hereby file this Motion seeking an adjudication that (i) Defendants preserved the safe harbor defense codified in § 546(e) of the Bankruptcy Code in their Answer (as hereinafter defined), and (ii) if Defendants did not preserve such defense, they should be permitted leave to amend their Answer to include such defense.

Defendants preserved § 546(e)'s safe harbor defense by pleading in the Answer that the Complaint failed to state a claim upon which relief may be granted, a defense which Defendants may

raise for the first time at trial pursuant to FED. R. CIV. P. 12(h)(2). Defendants also pled that Plaintiffs'

claims are barred because they were authorized by law, thereby negating any claim that assertion of

Defendants' § 546(e) defense is an unfair surprise. Alternatively, Defendants easily satisfy the

requirements for leave to amend pleadings pursuant to FED. R. CIV. P. 15(a)(2). Moreover, even if the

Court finds that there is an operative scheduling order in this case, there is "good cause" under FED. R.

CIV. P. 16(b) to allow Defendants' proposed amendment.

## <u>BACKGROUND FACTS</u>

### A.    Procedural History

1.    On May 12, 2009, Plaintiffs filed their original complaint alleging various causes

of action against two of the Defendants now named in this action.[1]  On July 31, 2009, the named

Defendants moved to dismiss the complaint, and on April 27, 2010, the Court entered an order dismissing

certain of the causes asserted in the original complaint (the "<u>First Dismissal Order</u>").[2]

2.    On April 28, 2010, Plaintiffs filed their first amended complaint re-asserting

certain causes of action dismissed, without prejudice, by the First Dismissal Order.[3]  On May 19, 2010

and May 26, 2010, respectively, the named Defendants (i) filed their answer denying certain counts of the

first amended complaint, and (ii) moved to dismiss the remaining counts.[4]

3.    On January 11, 2011, Plaintiffs filed an unopposed motion for leave of court

seeking to amend their first amended complaint in order to add five new defendants.[5]    On

February 1, 2011, the Court entered an order granting Plaintiffs' requested pleading amendment, and on

February 7, 2011, Plaintiffs filed their second amended complaint (the "<u>Complaint</u>").[6]

---

[1]    Dkt. No. 1.

[2]    Dkt. No. 125.

[3]    Dkt. Nos. 128 and 125.

[4]    Dkt. Nos. 130 and 131.

[5]    Dkt. No. 199.

[6]    Dkt. No. 223.

4.      On May 27, 2011, the Court entered its order (the "Second Dismissal Order"), which dismissed certain counts of the first amended complaint, with prejudice, and ordered Defendants to file an answer to the Complaint within two weeks, *i.e.*, by June 10, 2011.[7]   Defendants complied with the Court's order by filing their answer to the Complaint (the "Answer") on June 10, 2011.[8]

**B.      The CMOs, The Answer And Discovery**

5.      This action has, at various times, been governed by a series of superseding Case Management Orders ("CMOs") negotiated by the parties and approved by the Court.   The last CMO to be agreed upon by the parties, and approved by the Court, was the Fourth Amended Case Management Order (the "Fourth CMO").[9]   The Fourth CMO, which was entered by the Court on May 13, 2011, provided that all pleadings be amended no later than 60 days prior to the close of fact discovery, which was to be completed on June 24, 2011.   Accordingly, pursuant to the Fourth CMO, all pleadings were to be amended on or before April 25, 2011, a date that had already elapsed at the time the Fourth CMO was entered.

6.      On May 27, 2011 (*i.e.*, two weeks after the Fourth CMO was entered), the Court issued its Second Dismissal Order which required Defendants to file their Answer by June 10, 2011.[10]   In accordance with the Second Dismissal Order (and notwithstanding the earlier pleading amendment deadline set forth in the Fourth CMO), Defendants answered the Complaint.   The Answer asserted numerous affirmative defenses, including that (i) "[t]he Second Amended Complaint fails to state a claim upon which relief can be granted" and (ii) "Plaintiffs' claims are barred, in whole or in part, to the extent that any of the alleged transfer(s) were authorized by law or court order."[11]   By designating these

---

[7]      Dkt. No. 233.

[8]      Dkt. No. 235.

[9]      Dkt. No. 230.

[10]      Dkt. No. 233.

[11]      Dkt. No. 235, at 35-37.

assertions as "defenses," Defendants did not suggest that "such matters are not elements of Plaintiffs' *prima facie* case against Defendants."[12]  Defendants also reserved their right to amend the Answer to assert further defenses "when and if, in the course of their investigation, discovery, or preparation for trial it becomes appropriate."[13]

       7.    During the course of this litigation, Plaintiffs propounded many interrogatories to Defendants, but did not include a contention interrogatory requesting the legal or factual bases of any defense pled in the Answer.

       8.    For some time now, the parties have been negotiating the terms of a Fifth Amended Case Management Order (the "Fifth CMO"), which has not yet been submitted to the Court for approval.  To the extent the deadline for amending pleadings was not otherwise overridden by the Court's Second Dismissal Order, the Fifth CMO is similar to the Fourth CMO insofar as it provides that pleadings shall be amended no later than 60 days prior to the close of fact discovery.  Notwithstanding that both the Fourth and Fifth CMOs provide that fact discovery was to have been completed on June 24, 2011, there have been voluminous and nearly continuous document productions since that date.[14]  As reflected on Exhibit A, Plaintiffs have produced approximately one million documents on multiple days of several months (including July and August 2011 and January 2012) since the purported June 24, 2011 "close" of fact discovery.  Similarly, Defendants have produced approximately 4,500 documents (consisting of approximately 45,000 pages) since the close of discovery.  Many more thousands of documents have been produced by the government and third parties since the purported close of fact discovery.  Additionally, both parties have taken certain fact depositions well after June 24, 2011.

---

[12]    Dkt. No. 235, at 35.

[13]    Dkt. No. 235, at 35.

[14]    *See* Document Production Chart, attached hereto as Exhibit A (listing the dates of various document productions in this case).

### C.    The Summary Judgment Motion

9.    Pursuant to negotiations concerning the terms of the Fifth CMO, the parties agreed that dispositive motions would be filed on or before February 24, 2012.

10.    On February 21, 2012, Defendants requested a pre-motion conference pursuant to Rule 7056-1(a) of the Local Bankruptcy Rules for the Southern District of New York in connection with their partial summary judgment motion seeking the dismissal of Plaintiffs' actual and constructive fraudulent transfer claims under § 546(e) of the Bankruptcy Code.[15]    On February 22, 2012, Plaintiffs' counsel responded that Defendants had waived their § 546(e) defense by failing to raise it in previous motions to dismiss or to plead it as an affirmative defense.[16]    At the Rule 7056-1 pre-motion conference held on February 23, 2012, the Court suggested that Defendants file this Motion.    To avoid any argument concerning whether Defendants timely filed all dispositive motions by the agreed deadline, Defendants filed their motion for partial summary judgment on February 24, 2012, which motion included arguments relating to Bankruptcy Code § 546(e).[17]    The portion of the summary judgment motion addressing the safe harbor protections of Bankruptcy Code § 546(e) shall hereinafter be referred to as the "Summary Judgment Motion."

---

[15]    Dkt. No. 301.

[16]    Dkt. No. 303.

[17]    Dkt. No. 307.

## ARGUMENT

**I.    If § 546(e) Is An Affirmative Defense,[18] It Has Been Preserved By The Affirmative Defenses Set Forth In The Answer**

11.    The pleading of defenses is governed by several Federal Rules of Civil Procedure (the "Rules"), including: (i) FED. R. CIV. P. 8(b), which provides that a party must state its defenses in "short and plain terms;"[19] (ii) FED. R. CIV. P. 8(c), which requires that "[i]n responding to a pleading, a party must affirmatively state any . . . affirmative defense," including the 18 illustrative defenses enumerated in the rule;[20] (iii) FED. R. CIV. P. 12(b), which clarifies that even though defenses must generally "be asserted in [any] responsive pleading," certain enumerated defenses listed in Rule 12(b)(1)-(7) may alternatively be asserted by motion;[21] and (iv) FED. R. CIV. P. 12(h), which segregates the seven Rule 12(b) defenses into three separate categories and provides different waiver rules for each.  In particular, Rule 12(h)(1) provides that the defenses listed in Rule 12(b)(2)-(5) are waived if not raised in

---

[18]    Courts often characterize an "affirmative defense" as one that rests on matters outside the scope of the plaintiff's *prima facie* case.  *See, e.g., United States v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1253 (2d Cir. 1989).  A defense that merely negates an element of the plaintiff's *prima facie* case is therefore not an affirmative defense.  *SLC Turnberry, Ltd. v. The Am. Golfer, Inc.*, 240 F.R.D. 50, 55 (D. Conn. 2007).  While some courts have referred to § 546(e) as an "affirmative defense," they have done so without analyzing the issue or articulating the basis for such conclusion.  *See, e.g., In re Adelphia Commc'ns Corp.*, 452 B.R. 484, 488-89 (Bankr. S.D.N.Y. 2011) (accepting defense counsel's concession that it was seeking leave to amend an answer to add § 546(e) of the Bankruptcy Code as an affirmative defense); *In re Laurel Valley Oil Co.*, No. 05-64330, 2009 WL 1758741, at *2-3 (Bankr. N.D. Ohio June 16, 2009) (defendant did not dispute that a § 546(e) defense is an "affirmative defense.").  As one court explained, however, where the applicability of § 546(e) may be determined on the face of the complaint, it may not be appropriately characterized as an affirmative defense.  *See In re Bernard L. Madoff Inv. Sec., LLC*, 440 B.R. 243, 266 (Bankr. S.D.N.Y. 2010) (stating that § 546(e) is often properly characterized as an affirmative defense except where the defense can be applied on the face of the complaint).  As hereinafter explained, Defendants submit that the defense can be applied on the face of the Complaint.

[19]    *See also Colon ex rel. Molina v. BIC USA, Inc.*, 136 F. Supp. 2d 196, 200 (S.D.N.Y. 2000).

[20]    The enumerated affirmative defenses include: accord and satisfaction; arbitration and award; assumption of risk; contributory negligence; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow servant; laches; license; payment; release; res judicata; statute of frauds; statute of limitations; and waiver.

[21]    The enumerated defenses that may be asserted by motion include: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19.

an appropriate and timely Rule 12(b) motion or responsive pleading.[22]   Rule 12(h)(2), in turn, provides

that the defenses listed in Rule 12(b)(6) (*i.e.*, failure to state a claim upon which relief may be granted)

and Rule 12(b)(7), as well as a claim for failure to state a legal defense, may be raised (i) by responsive

pleading, (ii) in a 12(c) motion[23] or (iii) at trial.[24]  Finally, Rule 12(h)(3) provides that the defense of lack

of subject matter jurisdiction listed in Rule 12(b)(1) may be raised at any time.

12.     In discussing the defenses covered by Rule 12(h)(2), Wright & Miller have

explained,

> Rule 12(h)(2) expressly preserves three defenses against waiver during the
> pleading, motion, discovery, and trial stages of the action.   These [include]
> the Rule 12(b)(6) failure to state a claim for relief [and two others which] . . .
> have been singled out by the rulemakers for special treatment because they
> are obviously of greater importance than the defenses governed by Rule
> 12(h)(1) . . . [as they] are more closely enmeshed with the substantive merits
> of the lawsuit.   They therefore deserve greater consideration in terms of their
> preservation beyond the embryonic stage of the litigation.[25]

13.     In adopting this observation, the Supreme Court has further explained that,

"[o]rdinarily, under the Bankruptcy Rules, as under the Civil Rules, a defense is lost if it is not included

in the answer or amended answer . . . unless it is protected by Rules 12(h)(2) or (h)(3) or by the successful

invocation of the liberal amendment policy of Rule 15.   Rules 12(h)(2) and (3) prolong the life of certain

defenses . . . [such that] the issue [may] be raised at . . . the trial on the merits."[26]   Pursuant to Rule

12(h)(2), Defendants' assertion of the § 546(e) defense is timely.

---

[22]   FED. R. CIV. P. 12(h)(1).

[23]   A Rule 12(c) motion is a "Motion for Judgment on the Pleadings," which may be filed "[a]fter the pleadings
are closed—but early enough not to delay trial."   Following the filing of an answer, a defendant continues to
have a right to assert a defense based upon the failure to state a claim upon which relief may be granted
pursuant to Rule 12(c).   The right persists even if the defendant failed to assert a defense of failure to state a
claim upon which relief can be granted pursuant to a motion to dismiss under Rule 12(b)(6).   *See* FED. R.
CIV. P. 12(h)(2).

[24]   Fed. R. Civ. P. 12(h)(2).

[25]   5C Charles Alan Wright et al., Federal Practice and Procedure § 1392 (3d ed. 1998).

[26]   *Kontrick v. Ryan*, 540 U.S. 443, 458-59 (2004).

**A.    The Answer Preserved The § 546(e) Defense Because It Included The Defense Of
"Failure To State A Claim Upon Which Relief May Be Granted"**

14.    The very first defense pled in the Answer is that "[t]he Second Amended
Complaint fails to state a claim upon which relief may be granted."[27]    Because there is little controversy
concerning whether the defense embodied in § 546(e) is properly invoked as a failure to state a claim
upon which relief may be granted,[28] Rule 12(h)(2) permits the defense to be raised at any time during the
course of the litigation, including trial.    This conclusion is not altered merely because the defendant has
not described the particular theory underlying its defense of failure to state a claim for relief.    Indeed,
courts regularly find that an answer's omission of a specific affirmative defense will not waive the
defense where it is based on failure to state a claim for relief.[29]    Any other conclusion would render Rule

---

[27]    Dkt. No. 235, at 36.

[28]    *See, e.g., In re Appleseed's Intermediate Holdings, LLC*, No. 11-cv-00807, 2012 WL 683563, at *8 (D. Del. Mar. 1, 2012) (considering on a Rule 12(b)(6) motion whether payments made as part of a levered buyout were "settlement payments" under § 546(e)); *Picard v. Katz*, 462 B.R. 447, 451 (S.D.N.Y. 2011) (granting Rule 12(b)(6) motion to dismiss preference and constructive fraudulent transfer claims pursuant to § 546(e)); *In re Enron Corp.*, 323 B.R. 857, 869-70 (Bankr. S.D.N.Y 2005) (finding that analysis of whether § 546(e) barred recovery was appropriate on a Rule 12(b)(6) motion because the § 546(e) limitation "appear[ed] on the face of the complaint"); *In re Hechinger Inv. Co. of Del.*, 274 B.R. 71, 86 (D. Del. 2002) (granting Rule 12(b)(6) motion to dismiss fraudulent conveyance claims under § 546(e)); *In re Plassein Int'l Corp.*, 366 B.R. 318, 322 (Bankr. D. Del. 2007) *aff'd*, 388 B.R. 46 (D. Del. 2008) *aff'd*, 590 F.3d 252 (3d Cir. 2009) (granting a Rule 12(b)(6) motion to dismiss fraudulent transfer claims as "settlement payments" under § 546(e)); *In re Loranger Mfg. Corp.*, 324 B.R. 575, 585-86 (Bankr. W.D. Pa. 2005) (granting a Rule 12(b)(6) motion to dismiss an avoidance action on the ground that a debtor's wire transfer was a settlement payment under § 546(e)); *PHP Liquidating, LLC v. Robbins*, 291 B.R. 592 (D. Del. 2003) (holding, on a Rule 12(b)(6) motion, that stock redemptions were settlement payments under § 546(e), but that § 546(e) did not apply because the plaintiff was not a trustee or debtor in possession who could invoke § 546(e)'s limitations); *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656, 675-77 (D.R.I. 1998) (considering whether § 546(e) applied to payments made in connection with a leveraged buyout on a Rule 12(b)(6) motion); *In re Norstan Apparel Shops, Inc.*, 367 B.R. 68, 74-77 (Bankr. E.D.N.Y. 2007) (determining on a Rule 12(b)(6) motion that payments made in connection with a leveraged buyout were settlement payments under § 546(e)).

[29]    *See, e.g., Moodie v. Fed. Reserve Bank of N.Y.*, 861 F. Supp. 10, 11-13 (S.D.N.Y. 1994), *aff'd*, 58 F.3d 879 (2d Cir. 1995) (stating that the defense of failure to state a claim "may be made as late as 'at the trial on the merits,' [and] 'if a party makes a preliminary motion under Rule 12 and fails to include one of the Rule 12(h)(2) objections, he has not waived it . . . even if these defenses are not interposed in any pleading, they made be the subject of . . . a motion to dismiss at trial'") (quoting FED. R. CIV. P. 12(h)(2); 5A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1392, at 759-60 (2d ed. 1990)); *PHI, Inc. v. Office & Prof'l Emps. Int'l Union*, No. 06-1469, 2010 WL 3034712, at * 2 (W.D. La. July 30, 2010) (holding that failure to state a claim for relief based on claims being barred by statute was not waived despite being omitted from defendant's answer and being raised for the first time at trial because such defense was preserved under Rule 12(h)(2)); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 400 (4th Cir. 2011) (defense based on sufficiency of a Clean Water Act notice letter was not waived where defendant raised it before the district court disposed of merits of complaint, because it was adequately preserved under Rule

12(h)(2) superfluous because it would result in the more onerous waiver provisions of Rule 8(c) displacing the more lenient provisions of Rule 12(h)(2) despite the rulemakers' intended "special treatment" of the "[more] important[t]" and more "substantive" defenses covered by Rule 12(h)(2).[30] Accordingly, the fact that Defendants' Answer did not reference the specific Bankruptcy Code section on which they base their defense of failure to state a claim for relief did not result in a waiver of their § 546(e) defense pursuant to Rule 8(c). Rather, under Rule 12(h)(2), the defense is expressly preserved and may not only be raised at the summary judgment stage of these proceedings, but also at trial.[31] Accordingly, Defendants' assertion of a § 546(e) defense pursuant to the Summary Judgment Motion is timely.

---

12(h)(2)'s requirement that challenges to legal sufficiency of claims be made "at trial"); *Bowen v. Pan Am. World Airways, Inc.*, 474 F. Supp. 563, 567 (S.D.N.Y. 1979) (concluding that pursuant to Rule 12(h)(2), "the defense of failure to state a claim may be made by motion for judgment on the pleadings or even at the trial on the merits . . . no trial has been had in either of these cases. Thus, defendants' motions are not untimely."); *Lehman Trading Corp. v. J & H Stolow, Inc.*, 184 F. Supp. 21, 22 (S.D.N.Y. 1960) ("A defendant has a choice of two ways to raise the point of failure of the plaintiff to state a claim upon which relief can be granted. He may . . . assert the defense by motion . . . [or,] under Rule 12(h), make the 'defense' at the trial on the merits."); *McLaughlin v. Curtis Pub. Co.*, 5 F.R.D. 87, 87 (S.D.N.Y. 1950) ("The failure of a complaint to state a claim makes it vulnerable at any stage of the action, and a motion for its dismissal upon such ground can be made, in my opinion, at any time, before or after pleading, or upon the trial."); *Snead v. Dept. of Soc. Servs. of the City of N.Y.*, 409 F. Supp. 995, 1000 (S.D.N.Y. 1975) (stating "[t]he clear thrust of Rule [12(h)(2)] is that a failure to state a claim may be raised at any time before a disposition on the merits but not after"); *see also Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (explaining that defendant's failure to include an affirmative defense in its answer does not prohibit the court from subsequently considering such defense *sua sponte*).

[30]    5C Charles Alan Wright et al., Federal Practice and Procedure § 1392.

[31]    Defendants submit that although their § 546(e) defense was raised in a summary judgment motion, rather than a post-answer Rule 12(c) motion for judgment on the pleadings, Defendants' motion may nonetheless be treated as a Rule 12(c) motion based on the Complaint's failure to state a claim upon which relief may be granted. This is because the summary judgment motion is in fact predicated entirely on documents that may be considered on a Rule 12(b)(6) or Rule 12(c) motion. *See, e.g.*, *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 730-31 (Bankr. S.D.N.Y. 2008) (finding that courts may consider "any . . . statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed or known to plaintiff and upon which it relied in brining suit") (citations omitted); *LPR, SRL v. Challenger Overseas, LLC*, No. 99 Civ. 8883, 2000 WL 973748, at *1 (S.D.N.Y. July 13, 2000) (citations omitted) (court "may consider documents referenced in the complaint and documents that are in the plaintiff's possession or that plaintiff knew of and relied on in bringing suit"). Accordingly, to the extent the Court declines to grant the alternative forms of relief sought in the subsequent sections of this Motion, Defendants request that the Summary Judgment Motion be treated as a Rule 12(c) motion for judgment on the pleadings.

**B.    The § 546(e) Defense Has Been Preserved Under Rule 8(c) Because Plaintiffs Had Knowledge Of All Facts Relevant To The Defense And The Answer Included A Defense Stating That Plaintiffs' Claims Are Barred To The Extent Authorized By Law**

15.    The purposes served by the Rule 8(c) pleading requirements are to: (i) "provid[e] the opposing party with notice of the claim or defense to be litigated" and thereby prevent unfair surprise;[32] and (ii) facilitate a decision on the merits rather than "mere technicalities."[33]    Accordingly, while Rule 8(c) generally provides for the waiver of an affirmative defense not timely asserted in an answer, such pleading omission "need not result in a waiver when the [notice] policy behind the rule is not violated."[34]    In particular, where an opposing party has knowledge of the facts giving rise to the omitted affirmative defense, courts regularly permit assertion of the defense on the ground that it will not unfairly surprise the opposing party.[35]    Here, Plaintiffs, at all times, had knowledge of the facts forming the basis of the § 546(e) defense as the defense is based entirely on Plaintiffs' own allegations, SEC filings and documents in Plaintiffs' possession.[36]

---

[32]    *See Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d at 1255 (explaining that the main purpose of Rule 8(c) is to protect litigants from unfair surprise).

[33]    *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citation omitted).

[34]    *In re Glenn*, 108 B.R. 70, 73 (Bankr. W.D. Pa. 1989) (citing 2A MOORE'S FEDERAL PRACTICE, ¶ 8.27[3] at 186 (1989)); *see also Curry v. City of Syracuse*, 316 F.2d 324, 331 (2d Cir. 2003) (purpose of Rule 8(c) in assuring adequate notice and an opportunity to respond was served where plaintiff was permitted to file a sur-reply to the summary judgment reply brief where defendant first raised the affirmative defense of collateral estoppel); *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1350-52 (11th Cir. 2007) (finding that the reality of whether plaintiff had notice of the omitted defense must be considered before finding a waiver); *Aucoin v. RSW Holdings, LLC*, 476 F. Supp. 2d 608, 612 (M.D. La. 2007) (technical failure to comply with Rule 8(c) is not fatal where the defense is raised in a manner that does not result in unfair surprise); *Cline v. Hanby*, No. 2:05 0885, 2006 WL 3692647, at *9 (S.D. W. Va. Dec. 13, 2006) (stating the "Fourth Circuit has . . . recognized that if an affirmative defense is raised in a manner that does not result in unfair surprise to the opposing party, failure to comply with Rule 8(c) will not result in a waiver of the defense") (citation omitted).

[35]    *See Pane v. RCA Corp.*, 868 F.2d 631, 637 (3d Cir. 1989) (where defense was referred to in pre-trial motions, plaintiff was not unfairly surprised even though defendant had failed to specifically assert the defense in the answer); *Expertise, Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir. 1987) (statute of limitations defense was not waived even though defendant failed to assert it in the answer where the defense was included in a pre-trial order).

[36]    *See generally* the Summary Judgment Motion and the corresponding Undisputed Statement of Facts.

16.     Plaintiffs' knowledge of all matters pertinent to the safe harbor defense, combined with the fact that the twelfth defense listed in the Answer states, "Plaintiffs' claims are barred, in whole or in part, to the extent that any of the alleged transfer(s) were authorized by law"[37] collectively warrant the conclusion that Plaintiffs cannot be unfairly surprised by Defendants' reliance on § 546(e) of the Bankruptcy Code.   Indeed, Plaintiffs cannot complain that Defendants are asserting a Bankruptcy Code provision "authorizing" the challenged transfers when Defendants expressly pled a defense based on the transfers being "authorized by law."[38]   The fact that the Answer does not enumerate the specific Bankruptcy Code section on which the authorization is based does not undermine this conclusion because courts have expressly found that generalized statements concerning activities authorized by law will preserve an affirmative defense based on a more specific provision of that law.

17.     For example, in *Colon v. BIC USA, Inc.*,[39] the court held that a preemption defense was not waived even though the defendant failed to "specifically use the word 'preemption'" in its answer.   Rather, where the defendant pled that the allegedly defective product "met and/or exceeded the applicable federal and industry standard," such generalized pleading was sufficient to place plaintiffs on notice of the preemption defense.[40]   Similarly, in *LPR, SRL v. Challenger Overseas,* the defendants pled that the parties' dispute was governed by the terms and conditions of a bill of lading, but did not specifically reference the mandatory forum selection clause in that bill of lading.   In rejecting the plaintiff's assertion that the defendants had waived their defense of improper venue, the court found that the general, non-specific language of the answer sufficiently safeguarded plaintiff against any unfair surprise.[41]

---

[37]     Dkt. No. 235, at 36.

[38]     Defendants note that Plaintiffs could have, but did not, serve contention interrogatories inquiring as to the specific bases for Defendants' assertion that the transfers were authorized by law.

[39]     *Colon*, 136 F. Supp. 2d at 200.

[40]     *Id.*

[41]     *Challenger Overseas*, 2000 WL 973748, at *6.

18.     Moreover, in the bankruptcy context, it has been recognized that "[w]hen a defendant is sued pursuant to a specific provision of the Bankruptcy Code, there are divergent opinions on whether the defendant must specifically allege grounds that provide a defense to the action under the particular [section of the] statute."[42]   While these divergent opinions primarily arise in the context of dischargeability actions, in the one opinion specifically relating to the pleading of a § 546(e) defense, the court concluded that regardless of whether the answer contained generalized, specific or no language at all concerning the defense, it was "doubtful" that the plaintiff would be "unfairly surprised" by its assertion.[43]

19.     Moreover, the Third and Tenth Circuits have held, respectively, that failure to plead either a specific section of ERISA or a limitations defense would not result in waiver where the specific section of ERISA and the limitations defense were later referenced in pre-trial motions or orders.[44]   Similarly, the Fifth Circuit has held that failure to plead the affirmative defense of offset does not result in a waiver where the matter is later addressed in a motion in limine.[45]   In the present case, the parties have agreed that pre-trial motions, including motions in limine, may be filed as late as March 16, 2012 (*i.e.*, approximately two months before the earliest possible trial date), yet Defendants raised the safe harbor defense approximately three months before the earliest possible trial date.   Such timing affords Plaintiffs adequate notice and opportunity to respond to what is essentially a purely legal issue and assures that they will not be "unfairly surprised."[46]

---

[42]     8 NORTON BANKR. L. & PRAC. 3d § 161:9 (2012).

[43]     *Adelphia*, 452 B.R. at 490.

[44]     *Pane*, 868 F.2d at 637; *Expertise, Inc.*, 810 F.2d at 973; *see also Fitzgerald v. Mallinckrodt, Inc.*, 681 F. Supp. 404, 405 (E.D. Mich. 1987) (finding that an affirmative defense is preserved when it is raised in a pre-trial order).

[45]     *See Lubke v. City of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006) ("Regardless of whether the city pled offset, however, both parties addressed the issue in their pretrial motions in limine.")

[46]     *See, e.g.*, *Curry*, 316 F.3d at 331 (the purpose of requiring that an affirmative defense be pled is to provide notice and an opportunity to respond, which purposes are served by allowing an opposing party to submit a summary judgment sur-reply brief); *Ins. Co. of N. Am. v. S/S "Cape Charles,"* No. 92 Civ. 6184, 1994 WL 263592, at *2 (S.D.N.Y. June 3, 1994) (finding that plaintiff was not unfairly surprised by illegality defense

20.     Consistent with the preceding authorities, the fact that the Answer did not specify the particular Bankruptcy Code section that "authorizes" the transfers should not waive the § 546(e) defense because there was a generalized pleading sufficient to place Plaintiffs on notice that the transfers were authorized by the Bankruptcy Code; Plaintiffs possessed all of the facts and information relevant to the defense; and Plaintiffs will now have ample opportunity to respond to Defendants' assertion of the defense.    Given that the purpose of Rule 8(c) in assuring the absence of "unfair surprise" has been satisfied, the Court should find that the § 546(e) defense was preserved by the twelfth defense enumerated in the Answer.

## II.    In The Alternative, Leave To Amend The Answer To Specifically Plead A § 546(e) Affirmative Defense Should Be Granted

21.     As the preceding discussion reflects, many courts conclude that no waiver occurs under Rule 8(c) when the notice policy behind the rule is satisfied.    Other courts, however, require a litigant to satisfy the pleading amendment requirements of Rule 15(a)(2) before permitting a litigant to assert an affirmative defense not included in its answer.[47]    Rule 15(a)(2) provides that, absent consent of the opposing party, a litigant must obtain leave of court to amend a pleading, which the "court should freely give" when "justice so requires."[48]    The Supreme Court has characterized this "free granting of

---

where defendant raised the issue three months before trial and plaintiff therefore had adequate opportunity to respond).

[47]    As noted *supra*, the Fourth CMO (entered by the Court on May 13, 2011), and the Fifth CMO (which has not been entered by the Court, but under which the parties generally have been operating), both provide for a pleading amendment deadline of 60 days before the close of the June 24, 2011 fact discovery deadline.    Even so, the April 25, 2011 pleading amendment deadline (i) had elapsed by the time the Fourth CMO was entered; (ii) was overridden, at least in part, when the Court entered its Second Dismissal Order ordering Defendants to file their Answer by June 10, 2011; and (iii) is tied to a June 24, 2011 fact discovery cut-off date even though fact discovery has occurred continuously since that cut-off date.    Given the foregoing, Defendants submit that it is unclear whether their assertion of a § 546(e) defense is in fact untimely, however, for purposes of the relief sought in this section of the Motion, Defendants assume, without conceding, that (i) § 546(e) is an affirmative defense and (ii) they must amend their Answer in order to assert that affirmative defense.

[48]    FED. R. CIV. P. 15(a)(2) states that absent an amendment satisfying the requirements of Rule 15(a)(1), "a party may amend its pleading only with the opposing party's written consent or the court's leave.    The court should freely give leave when justice so requires."

leave" language as a "mandate [] to be heeded" because it effectuates the spirit and purpose of the Rules in promoting a decision on the merits rather than mere technicalities.[49]   As described by the Court,

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.  "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."[50]

22.     The rule that leave should be freely granted "has been reinforced by innumerable judicial pronouncements by the federal appellate and district courts alike."[51]   The Second Circuit, in particular, has stated "it is 'rare' that leave should be denied, especially when there has been no prior application to amend."[52]   Other courts within this jurisdiction have further recognized "a general presumption in favor of permitting amendment"[53] and that amendments should be denied under only "limited circumstances."[54]   The liberal amendment policy does not, of course, mean that amendments will be granted in all instances.  Rather, a court may deny leave if the amendment (i) is sought for dilatory purposes or is made in bad faith; (ii) would unduly prejudice the opposing party; (iii) has been unduly delayed; or (iv) would be futile.[55]   In applying these factors, however, a court "may not impose arbitrary restrictions on the availability of amendments or use its discretion in a way that undermines the basic policy of the rule."[56]   Defendants submit they are entitled to leave to amend the Answer because

---

[49]   *Foman v. Davis,* 371 U.S. 178, 181-82 (1962).

[50]   *Id.* (citing *Conley v. Gipson*, 355 U.S. 41, 48 (1957)).

[51]   6 Charles Alan Wright et al., Federal Practice and Procedure § 1484 (3d ed. 1998).

[52]   *Cimino v. Glaze*, 228 F.R.D. 169, 171 (W.D.N.Y. 2005) (quoting *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

[53]   *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 298 (S.D.N.Y. 2000) (quoting *Foman*, 371 U.S. at 182).

[54]   *Cashman v. Montefiore Med. Ctr.*, No. 92 Civ. 4551, 1993 WL 227700, at *2 (S.D.N.Y. June 21, 1993).

[55]   *A.V. by Versace, Inc.*, 87 F. Supp. 2d at 297-98; *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96 (S.D.N.Y. 2010).

[56]   6 Charles Alan Wright et al., Federal Practice and Procedure § 1487 (3d ed. 1998).

the amendment (a) is not being sought in bad faith or for dilatory purpose, (b) will not unduly prejudice

Plaintiffs, (c) has not been unduly delayed and (d) will not be futile.

A.    **The Proposed Amendment Is Not Being Sought In Bad Faith Or For A Dilatory Purpose**

23.    There is no evidence Defendants are seeking an amendment in "bad faith," to

obtain "tactical advantage"[57] or for a dilatory purpose.   Rather, Defendants seek leave to specifically

plead a defense relevant to the serious allegations lodged against them and to assure that this case is

determined on its substantive merits.   Defendants did not intentionally withhold information relevant to

the defense that was known to them and unknown to Plaintiffs.[58]   Indeed, Defendants believe their

asserted defenses are broad enough to encompass § 546(e), however, now that Plaintiffs have challenged

Defendants' right to assert § 546(e), Defendants have no choice but to seek leave to amend their Answer.

24.    Moreover, as the history of this case clearly reflects, Defendants have never acted

in bad faith, have never sought to delay these proceedings and have in fact repeatedly accommodated

_Plaintiffs'_ multiple requests for delay.   In particular, Defendants agreed to Plaintiffs' (i) first request to

extend the discovery completion and trial date by nine months;[59]   (ii) second request to extend the

discovery completion date by four-and-a-half months and the trial date by six months;[60] and (iii) third

request to extend the discovery completion date and trial date by an additional three months.[61]   In

addition, Defendants agreed not to oppose Plaintiffs' request to amend their complaint to add five new

Defendants to the suit, notwithstanding that all information bearing on their status as transferees was

---

[57]    _See, e.g., Duncan v. Coll. of New Rochelle_, 174 F.R.D. 48, 50 (S.D.N.Y. 1997).

[58]    _See, e.g._, _Block v. First Blood Assoc's_, 988 F.2d 344, 351 (2d Cir. 1993) (finding no bad faith where defendants did not withhold facts upon which their untimely limitations defense was based); _Adelphia_, 452 B.R. at 493 (denying amendment because the defendant chose to "'lay low' and hold back on a defense upon which it presumably would later rely.").

[59]    Dkt. No. 115.

[60]    _See_ Dkt. Nos. 152 and 160.   While Defendants opposed certain aspects of Plaintiffs' requested extensions, they nonetheless agreed to the overall extension of the trial and other corresponding dates.   Dkt. Nos. 155 and 158.

[61]    Dkt. No. 224.

available to Plaintiffs from the outset of this litigation.[62]   Unlike Plaintiffs, Defendants have not sought

repeated extensions of the case management deadlines nor have they previously sought to amend their

pleadings.[63]   In short, Defendants have at all times conducted themselves in good faith, have never

sought to delay these proceedings and have repeatedly accommodated *Plaintiffs'* requests for delay.

Given the foregoing, there can be no doubt that Defendants have not now suddenly elected to seek an

amendment in bad faith or for a dilatory purpose.   As more fully discussed below, the absence of a

dilatory purpose is further made plain by the fact that the proposed amendment will not in fact delay these

proceedings.[64]   Accordingly, there is no basis for finding that Defendants are seeking the proposed

amendment in bad faith or for a dilatory purpose.

### B.     The Proposed Amendment Will Not Unduly Prejudice Plaintiffs

25.     "[P]rejudice alone is insufficient to justify a denial of leave to amend; rather, the

necessary showing is '*undue* prejudice to the opposing party.'"[65]   "The rule in this Circuit has been to

allow a party to amend its pleading in the absence of a showing *by the nonmovant* of prejudice . . . ."[66]

In the instant case, Plaintiffs cannot show that they will be unduly prejudiced by Defendants' assertion of

§ 546(e) in a timely filed summary judgment motion.   It is well-established in this jurisdiction and

elsewhere that a plaintiff will not be unduly prejudiced by an affirmative defense which is first raised on

---

[62]   Dkt. No. 200.

[63]   *See Ricciuti,* 941 F.2d at 123 (stating that leave to amend should rarely be denied when there has been no prior application to amend); *Thompson v. N.Y. Life Ins. Co.*, 644 F.2d 439, 444 (5th Cir. Unit B May 1981) (stating that the policy to freely allow amendments under Rule 15(a) is "certainly strongest where the motion challenged is the first motion to amend").   While Defendants submitted a motion within the last several days seeking an amendment to state their position with respect to whether they consent to this Court's ability to enter final orders, they did so in order to comply with a newly proposed local rule requiring as much.   *See* Proposed Rule 7012-1; *see also* General Order M-431.

[64]   *See, e.g., Duling,* 265 F.R.D. at 99 (where the litigation will not be unduly delayed by the amendment, there can be no basis for finding that the movant is seeking the amendment for a dilatory purpose).

[65]   *A.V. by Versace, Inc.*, 87 F. Supp. 2d at 299 (quoting *Foman*, 371 U.S. at 182) (emphasis in original).

[66]   *Block,* 988 F.2d at 350 (emphasis added).

summary judgment as long as the plaintiff is afforded sufficient time to respond to the motion.[67]    Indeed,

courts routinely find that where a plaintiff has adequate notice and opportunity to respond to a defense

which is first asserted in a summary judgment motion, the purpose of Rule 8(c) in preventing unfair

surprise is satisfied and the liberal amendment policy of Rule 15(a)(2) militates in favor of the court

addressing the substantive merits of the defense.[68]    Here, Plaintiffs will have the same amount of time to

respond to the § 546(e) defense as they will all other defenses raised by Defendants in their summary

judgment motion.    Moreover, even if Plaintiffs obtain an extension of the relevant briefing deadlines, the

need for such extension will not give rise to "undue prejudice."[69]    As such, Plaintiffs will not be unduly

---

[67]    *See Curry*, 316 F.2d at 331 (purpose of Rule 8(c) in assuring adequate notice and opportunity to respond was satisfied where plaintiff was permitted to file a sur-reply to the summary judgment reply brief which first raised the collateral estoppel defense); *Monahan,* 214 F.3d at 284 (officers were not unduly prejudiced by the district court's decision to allow the city to assert *res judicata* defense for the first time at the summary judgment stage of the proceedings); *Rose v. Amsouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004) (holding the district court properly considered merits of an estoppel defense first asserted at summary judgment where plaintiffs had an opportunity to respond substantively and did not formally object in pleadings); *In re Singh*, 434 B.R. 298, 305 (Bankr. E.D.N.Y. 2010) (stating "[i]t is well-established in this Circuit that an affirmative defense may be asserted even at summary judgment where the party opposing the affirmative defense has the opportunity to respond effectively to that defense, and has otherwise suffered no prejudice"); *Steinberg v. Columbia Pictures Indus., Inc.*, 663 F. Supp. 706, 715 (S.D.N.Y. 1987) ("[A]bsent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time.") (citation omitted); *In re 1301 Conn. Ave. Assocs.*, 126 B.R. 823, 826-27 (Bankr. D.D.C. 1991) (permitting defendant to raise an affirmative defense for the first time during oral argument on its summary judgment motion where the case relied upon for the applicability of the defense was decided one month after the answer was filed, the issues implicated were primarily legal and the plaintiff had been given the opportunity to brief the issue); *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1374 (3d Cir. 1993) (an immunity defense raised by the defendant for the first time on summary judgment was not waived where the plaintiff had sufficient opportunity to respond); *Kingsville Dodge, LLC v. Almy*, No. CCB-07-154, 2007 WL 2332699, at *3-4 (D. Md. July 30, 2007) (permitting an affirmative defense to be raised for the first time on summary judgment); *Palmer v. Garuti*, No. 06-CV-795, 2009 WL 413129, at *7-8 (D. Conn. Feb. 17, 2009) (permitting good faith defense to be raised for the first time on summary judgment where both parties had the opportunity to brief the issue and address it in oral argument); *Sultan v. Lincoln Nat'l Corp.*, No. 03-5190, 2006 WL 1806463, at *13 (D.N.J. June 30, 2006) (permitting defendant to assert preemption defense for the first time on summary judgment where the issue presented was largely legal); *Astor Holdings Inc. v. Roski*, 325 F. Supp. 2d 251, 260-61 (S.D.N.Y. 2003) (where party "had an opportunity to respond, and has in fact responded, to [the  affirmative defenses] . . . they will be considered on their merits"); *Kelly v. A1 Tech.*, 09 Civ. 962, 2010 U.S. Dist. LEXIS 37807, at *57-58 (S.D.N.Y. Apr. 8, 2010) (affirmative defense would be considered where it was raised on summary judgment and opposing party filed a responsive submission).

[68]    *See* n.67 *supra*.

[69]    *See, e.g., Curry*, 316 F.3d at 331 (permitting defense to be raised in a summary judgment reply memorandum and finding that a court may grant "leave, and additional time, to file a sur-reply," thus "providing notice and an opportunity to respond" and avoiding any prejudice to the plaintiff while still allowing the district court to properly consider the affirmative defense); *In re 1301 Conn. Ave. Assocs.*, 126 B.R. at 826-27 (permitting party to assert affirmative defense not raised in a prior pleading where opposing party was afforded a period of ten

prejudiced by Defendants' assertion of the § 546(e) safe harbor defense and leave to amend the Answer should be granted.

26.    Further, in evaluating "undue prejudice" more generally, courts consider whether "assertion of the new . . . defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."[70]    None of these circumstances will result if Defendants are permitted to file the proposed amendment to the Answer.

27.    First, the proposed amendment will not require Plaintiffs to expend significant additional resources to conduct discovery.    In fact, no additional resources will be expended to conduct discovery because no additional discovery is needed to address the § 546(e) issues.    Rather, the minimal evidence relevant to the determination—whether the challenged transfers constitute settlement payments or payments in connection with a securities contract, and whether transfers were made by, to or for the benefit of, a financial institution or a financial participant—is apparent from the face of the Complaint, the public record and/or documents already produced.[71]

28.    Moreover, even if Plaintiffs persuade the Court that some additional discovery is needed, at least one court has properly observed that the discovery implicated by § 546(e) is "relatively modest" as the defense is "in substance a legal one."[72]    Even if, however, some additional discovery is needed, "[t]he burden of further discovery . . . is not a satisfactory basis to deny [a] motion to amend" and

---

days to brief the newly raised issue); *In re Fryer*, 172 B.R. 1020, 1022 (Bankr. S.D. Ga. 1994), *judgment entered by* 183 B.R. 322 (Bankr. S.D. Ga. 1995) (permitting party to assert affirmative defense not raised in prior pleading where opposing party had adequate notice and an opportunity to address the issue).

[70]    *Block,* 988 F.2d at 350 (quotations omitted).

[71]    *See* Defendants' Undisputed Statement of Facts ¶¶ 12-14, 16, 19, 23-24, 27-28, 31-33, 42.

[72]    *Adelphia*, 452 B.R. at 490.

"the need for new discovery is not sufficient to constitute undue prejudice on its own."[73]    In addition,

because discovery is, and has been, ongoing since the purported "close" of fact discovery,[74] the need for

additional discovery on the § 546(e) defense would not "have a material effect on the timing of the

determination of this controversy."[75]    Accordingly, consideration of the § 546(e) defense will not require

Plaintiffs to expend significant additional resources conducting discovery nor will it delay these

proceedings.

29.    Further, there is no risk that Plaintiffs will not have adequate opportunity to

prepare for trial because § 546(e) is "in substance a legal [defense]"[76] that requires only a straightforward

application of the law.    "The fact that a proposed amendment would add new issues is normally not

prejudicial unless the opposing party would be confronted with some unique difficulty in defending

against the new issues."[77]    Here, Plaintiffs will not be confronted with any unique difficulties in

defending against a § 546(e) defense, particularly given that the proposed amendment raises a matter that

is "related closely to the original claims"[78] and Plaintiffs already "had knowledge of the facts giving rise

to the [new defense.]"[79]    Moreover, "the fact that an amendment will require a party to invest additional

---

[73]    *Duling*, 265 F.R.D at 100-01 (citations omitted); *see also Duncan,* 174 F.R.D. at 50 (finding no undue prejudice where the additional discovery necessitated by the amendment would be minimal); *A.V. by Versace, Inc.*, 87 F. Supp. 2d at 299 ("[E]ven if discovery were prolonged, 'the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.'") (quoting *Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d at 1255).

[74]    *See* Exhibit A.    Moreover, to the extent the Court is inclined to permit Plaintiffs limited additional discovery relevant to the § 546(e) defense, Defendants agree to provide such discovery (if any) on an expedited basis so that there is no delay in the trial setting.

[75]    *Adelphia,* 452 B.R. at 490.

[76]    *Id.*

[77]    *Duling*, 265 F.R.D. at 102; *see also Fryer*, 172 B.R. at 1022 (adequate notice and opportunity to prepare for and respond to a defense eliminates any undue prejudice).

[78]    *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

[79]    *Monahan*, 214 F.3d at 284; *see also id.* (noting that in *Block*, "we permitted defendants to assert an affirmative defense in their motion for summary judgment four years after the complaint was filed because plaintiffs had knowledge of the facts giving rise to the defense").    In the instant case, Plaintiffs first encountered the possibility of a § 546(e) defense when the prepetition lenders asserted the defense on September 23, 2009 in

resources in litigation is not sufficient grounds for its denial."[80]   Indeed, the Second Circuit has expressly held that "[t]he [mere] fact that one party . . . spen[ds] time and money preparing for trial will usually not be deemed prejudice sufficient to warrant a deviation from the rule broadly allowing amendment to pleadings."[81]   Accordingly, no cognizable prejudice will result to Plaintiffs under the first prong of the test for "undue prejudice."

30.    Second, the proposed amendment will not delay, let alone "significantly delay," this proceeding.[82]   Defendants filed the Summary Judgment Motion on the agreed deadline for dispositive motions and the § 546(e) defense may therefore be decided in accordance with the currently scheduled timetable.   Defendants are not requesting an extension of the CMO, nor is one necessary given that the motion implicates a legal issue which requires no new discovery.   Moreover, even if the briefing schedule on the § 546(e) defense were to be extended and/or supplemented, such extension and/or supplementation would be so minimal that it would not result in "undue prejudice."[83]

31.    The proposed amendment may significantly expedite, not "significantly delay," this action.   A finding that the challenged transfers are not avoidable as a matter of law would profoundly shorten and streamline any trial on the remaining issues in this case.   As the *Adelphia* court observed, the most significant harm that Plaintiffs would suffer "would be [their] inability to enjoy a victory as to the

---

their Motion to Dismiss the Adversary Complaint filed by the Official Committee of Unsecured Creditors. *See* Case No. 09-10156, Dkt. No. 16.   While in 2009 the § 546(e) defense was generally available (especially to financial institutions like the prepetition lenders), as discussed further below, the applicability of the § 546(e) defense in circumstances analogous to the pending litigation did not become apparent until *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V., ING VP*, 651 F.3d 329, 334 (2d Cir. 2011), and cases interpreting this decision, were issued.

[80]    *Duling*, 265 F.R.D at 101 (citing *Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 386 (2d Cir. 1968)).

[81]    *Block*, 988 F.2d at 351.

[82]    *Id.* at 350.

[83]    *Duling*, 265 F.R.D at 101 (stating "the need to supplement the briefing of a motion is generally not enough to constitute prejudice"); *Middle Atl. Utils. Co.*, 392 F.2d at 386 (holding that "[t]he burden of further . . . motions" is not prejudicial); *United States v. Int'l Bus. Mach.*, 66 F.R.D. 223, 231 (S.D.N.Y. 1975) (holding that even a "potential extension of trial time . . . does not rise to the level of legal prejudice").

Safe Harbor Defense before judicial consideration of the defense's merits. That, of course, is not cognizable prejudice under Rule 15(a)."[84]   Accordingly, no cognizable prejudice will result to Plaintiffs under the second prong of the test for "undue prejudice."

32.    The third factor courts consider in evaluating "undue prejudice" is whether assertion of the defense will prevent the plaintiff from bringing a timely action in another jurisdiction. This factor, which generally applies to the untimely assertion of a limitations defense, has no application to the pending facts.   Accordingly, application of all relevant factors clearly reflect that Plaintiffs will not suffer any "undue prejudice" as a result of the proposed amendment.

### C.    Defendants Have Not Unduly Delayed In Seeking The Amendment

33.    The Second Circuit has held that mere delay, even substantial delay, is not sufficient to deny leave to amend a pleading absent a showing of bad faith or prejudice.[85]   As explained above, Defendants' request is not being made in bad faith and Plaintiffs will not be prejudiced by the amendment.   Moreover, the period of delay since the filing of the Answer and the time when Plaintiffs were apprised of Defendants' intention to assert the § 546(e) defense (*i.e.*, eight months) is not "undue" as the Second Circuit has regularly permitted amendments after much greater periods of delay in the absence of prejudice to the plaintiff.[86]

34.    Moreover, where, as here, there is no evidence of bad faith or prejudice, "even vague or 'thin' reasons are sufficient"[87] to explain a litigant's delay.   In the instant case, there is more than a "thin" reason explaining any delay.   Defendants' Answer was timely filed on June 10, 2011.

---

[84]    *Adelphia*, 452 B.R. at 491.

[85]    *See, e.g.*, *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (stating "we know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend") (quotation omitted); *see also Fluor Corp.*, 654 F.2d at 845-46 (same).

[86]    *See, e.g.*, *Richardson*, 825 F.2d at 653 n.6 (recounting cases where amendments were permitted three, four and five years after the filing of the answer) (citations omitted); *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) (permitting amendment of answer to assert additional affirmative defense after seven-year delay).

[87]    *Duling*, 265 F.R.D. at 98 (citing *Town of New Windsor v. Tesa Tuck, Inc.*, 919 F.Supp 662, 677 (S.D.N.Y. 1996); *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995)).

Approximately three weeks later, the Second Circuit issued its opinion in *Enron Creditors Recovery Corp. v. Alfa, S.A.B. De C.V., ING VP,* which held that courts should look to § 546(e)'s plain language rather than its legislative history in determining whether § 546(e) protects a transfer from avoidance.[88] By focusing on the plain language of the statute, the Second Circuit expanded application of § 546(e) in a manner that the dissenting judge described as "extraordinarily broad."[89]

35.    *Enron* changed the law in three important ways that Defendants could not have anticipated when they filed their Answer.    First, the decision made clear that the phrase "commonly used in the securities trade," only modified the last clause of § 741(8), thereby expanding the definition of settlement payment.[90]    Second, the court held that a "settlement payment" does not require a purchase or sale of a security, only the transfer of cash or securities.[91]    Finally, the court held § 546(e) is not limited to payments that involve financial intermediaries taking title to securities during the course of a transaction.[92]    Defendants could not have made these arguments at the time they filed their Answer because *Enron* presented a matter of first impression, never previously decided by any court of appeals, let alone the Second Circuit.[93]

36.    The Second Circuit has held "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice,"[94] so it follows that with a shorter delay, the required prejudice showing is greater.    Although a change in the law might not justify amendment to the pleadings if the period of delay is very lengthy (as in *Adelphia,* where there was a four

---

[88]    *Enron Creditors Recovery Corp.*, 651 F.3d at 335.

[89]    *Id.* at 347 (Koeltl, D.J., dissenting).

[90]    *Id.* at 335-36.

[91]    *Id.* at 336-38.

[92]    *Id.* at 338.

[93]    *See id.* at 339 ("The issue resolved in this case has never been decided previously by any court of appeals.") (Koeltl, D.J., dissenting).

[94]    *Block*, 988 F.2d at 350 (internal quotation marks omitted).

year delay),[95] here, Defendants are seeking leave only eight months after their answer was filed. Because the length of the delay was a matter of months and Plaintiffs cannot make the required heightened showing of prejudice required by such a short period of delay, the delay factor does not warrant denial of the requested amendment.   Accordingly, this factor weighs in favor of the requested amendment.

### D.    The Proposed Amendment Is Not Futile

37.    A motion for leave to amend may be denied on the ground of "futility" only when the proposed amendment appears, on its face, to be frivolous.[96]   As set forth in detail in the Summary Judgment Motion, the transfers at issue satisfy the requirements of § 546(e) in multiple ways, any one of which is sufficient to prevent avoidance of the transfers.   Accordingly, the amendment would not be "futile."

38.    Because all four factors considered by courts in determining whether to allow an amendment weigh in Defendants' favor, the Court should grant Defendants' request for relief.

## III.    To The Extent The "Good Cause" Standard Of Rule 16(b) Applies, It Has Been Met

39.    Rule 16(b)(4) of the Federal Rules provides that a court-approved scheduling order "may be modified only for good cause and with the judge's consent."   As noted *supra*, this Court entered the Fourth CMO on May 13, 2011.[97]   Not long thereafter, the parties began negotiating the terms of the Fifth CMO.   As Plaintiffs' counsel explained at the November 14, 2011 pre-trial conference, "the past few months, we've been in a lot of discussions with our opponents in terms of modifying the case management order to take account of, really, the existing case realities and what we've been doing over

---

[95]    *Adelphia*, 452 B.R. at 492-93 (denying defendant leave to amend after four year delay).

[96]    *See Slavin v. Benson*, 493 F. Supp. 32, 33 (S.D.N.Y. 1980) (granting leave to amend answer while noting that "[i]t is not necessary at this time to decide whether defendant [] can succeed with the affirmative defense," as long as the defense is not "clearly meritless"); *T&N PLC v. Fred S. James & Co. of N.Y., Inc.*, No. 89 Civ. 7688, 1991 WL 190581, at *2 (S.D.N.Y. Sept. 16, 1991) ("[T]he court need not finally determine the merits of a proposed claim or defense, but merely satisfy itself that it is colorable and not frivolous.") (quotation omitted).

[97]    Dkt. No. 230.

the last five or six months."[98]   The parties have generally been operating under the terms of the Fifth

CMO referenced by counsel at the November hearing.[99]   The Fifth CMO has not, however, been entered

by the Court and the terms of that CMO have not been finalized by the parties.   Because the parties are

not, and have not been, operating under the terms of a court-approved scheduling order, Defendants do

not believe that they are required to demonstrate "good cause" for relief from the terms of any court-

approved order.[100]   If, however, the Court concludes that Rule 16(b) does apply under the pending

circumstances, Defendants submit that there is "good cause" to permit Defendants to file the proposed

amendment.

40.    Where Rule 16(b) applies, a court must balance the liberal amendment standard

of Rule 15(a)(2) with the "good cause" requirement of Rule 16(b).[101]   "Good cause is measured by the

moving party's diligence in attempting to meet the deadline set by the Court."[102]   In determining the

existence of "good cause," courts in this Circuit consider the "diligence" of the moving party and "other

relevant factors including, in particular, whether allowing the amendment of the pleading . . . will

prejudice [the non-moving party]."[103]   Courts have found a lack of good cause where the moving party

"had knowledge of the facts and circumstances in the case for a period of several years and could have

---

[98]    *See* the November 14, 2011 Hearing Transcript at 8:17-21 (emphasis added).

[99]    On November 10, 2011 Plaintiffs filed their Notice of Agenda in anticipation of the November 14, 2011 Pretrial Conference and attached the draft Fifth CMO reflecting certain proposed changes to the Fourth CMO. *See* Dkt. No. 278.

[100]    *See Adelphia*, 452 B.R. at 491 (stating "[a]lthough Rule 15(a) governs the amendment of pleadings, *where a scheduling order has been entered*, Rule 16(b) also may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleading has passed") (quotation omitted) (emphasis added).

[101]    *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-41 (2d Cir. 2000).

[102]    *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 607 F. Supp. 2d 600, 602 (S.D.N.Y. 2009) (citing *Parker*, 204 F.3d at 340).

[103]    *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

made their motion within the specified time period."[104]    Defendants are guilty of no such lack of

diligence, and, as discussed above, the proposed amendment will not prejudice Plaintiffs.

41.    Merely missing a deadline, by itself, cannot be grounds to deny a finding of good

cause, or Rule 16(b) motions would never be granted.   Indeed, in all cases denying motions to amend

under Rule 16(b), a finding of lacking diligence requires more than merely missing a court-ordered

deadline.[105]   Defendants have been diligent in all proceedings before this Court and have complied with

all court-ordered deadlines.   When Defendants filed the Answer, they diligently included all available

defenses and submitted it in a timely fashion pursuant to this Court's order.[106]   This is not a case where

granting Defendants leave to amend would "undermine the court's ability to control its docket, disrupt the

agreed-upon course of the litigation, and reward the indolent and cavalier."[107]    Indeed, Defendants'

actions have been anything but "indolent" or "cavalier."   Defendants have not intentionally flouted the

CMO or asserted the § 546(e) defense "for tactical reasons"[108]  as did the defendant in *Adelphia*.

There, the court explained,

> the Court additionally thinks it should affirmatively find an absence of "good
> cause" when considering the underlying tactical decision.   In substance,
> [defendant] . . . intentionally thought it could "lay low" and hold back on a
> defense upon which it presumably would later rely.   That was unfair to
> [defendant's] adversary, and is offensive to the Court . . . Did [defendant] regard
> deadlines for pleadings under scheduling orders to be of no significance, and
> want a secret hedge against dealing with the issues on the merits?   The Court is
> not of the mind to reward tactics of that character, or, more specifically, to

---

[104]    *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 150 (S.D.N.Y. 2003).

[105]    *See Compania Embotelladora del Pacifico*, 607 F. Supp. 2d at 602 (finding a lack of good cause to amend where "any allegations . . . were known or should have been known . . . long before the instant action was filed"); *Adelphia*, 452 B.R. at 493 (finding a lack of good cause where the defendant made an intentional tactical decision to assert a § 546(e) defense after the scheduling order deadline); *NAS Elecs., Inc.*, 262 F. Supp. 2d at 150 (finding a lack of good cause where the plaintiffs had knowledge of the facts of the case for "several years" before seeking to amend their complaint).

[106]    Dkt. No. 235.

[107]    *Parker*, 204 F.3d at 340 (citations and internal quotation marks omitted).

[108]    *Adelphia*, 452 B.R. at 492.

determine that [defendant's] decision now to discontinue those tactics constitutes "good cause."[109]

42.    Unlike in *Adelphia*, where the defendant (i) engaged in gamesmanship by attempting to characterize § 546(e) as a jurisdictional challenge; (ii) failed to plead any defense other than laches, waiver, estoppel, good faith and reasonably equivalent value;[110] and (iii) did not plead that the complaint failed to state a claim for relief or that the transfers were authorized by law, Defendants have not engaged in gamesmanship and have not failed to plead the defenses necessary to preserve the protections of § 546(e).    Moreover, based on those preserved defenses, Defendants have properly elected to pursue their § 546(e) rights based on the Second Circuit's recent expansion of the applicable law. Although Defendants filed a timely Summary Judgment Motion several months after the issuance of the *Enron* decision, that period was one during which Defendants were actively briefing, arguing, preparing and furthering multiple other motions and matters in this case, and thus, such "delay" may be viewed (if anything), as the result of an inadvertent omission, not an attempt on the part of Defendants to "lay low," or gain a "secret hedge."[111]    There is simply no evidence of bad faith on the part of Defendants and in fact the evidence is much to the contrary.

43.    Moreover, the several month interlude following the filing of the Answer and the Summary Judgment Motion differs significantly from the facts in *Adelphia*—where the court denied leave to amend four years after the scheduling order deadline[112]—and other cases where the moving party had knowledge of the grounds for its proposed amendment for "several years."[113]    As recounted *supra*, Defendants asserted their § 546(e) defense in a timely filed Summary Judgment Motion, which was based

---

[109]    *Id.* at 493.

[110]    *See* Adv. Pro. No. 04-03295, Dkt. No. 4.

[111]    *Adelphia*, 452 B.R. at 493

[112]    *Id.*

[113]    *See NAS Elecs., Inc.,* 262 F. Supp. 2d at 150 (denying leave to amend where plaintiffs had "knowledge of the facts and circumstances in the case for a period of several years."); *see also Topps Co., Inc. v. Cadbury Stani S.A.I.C.,* No. 99 Civ. 9437, 2002 WL 31014833, at *1-3 (S.D.N.Y. Sept. 10, 2002) (granting a motion to amend complaint made nearly three years after filing initial pleading).

on a Second Circuit decision that significantly expanded the scope of the defense set forth in § 546(e) of

the Bankruptcy Code, and was not issued until approximately three weeks after they filed their Answer.

Thereafter, lower courts in this jurisdiction confirmed their view of the expansiveness of the Second

Circuit's decision.[114]    Accordingly, to the extent there was any "delay" it was short-lived, not prejudicial

to Plaintiffs and the result of a developing and changing body of law.

44.    Finally, the Court must balance Rule 16(b)'s "good cause" requirement with the

directive that leave to amend be "freely" granted under Rule 15(a).[115]    As discussed above, Defendants

readily satisfy the requirements for granting leave to amend pursuant to Rule 15(a).[116]    In light of the

powerful case law favoring Defendants' ability to amend the Answer pursuant to Rule 15(a) and the lack

of prejudice to Plaintiffs, the Court should also allow the proposed amendment pursuant to Rule 16(b).

### CONCLUSION

WHEREFORE, Defendants request that the Court grant this Motion, and any and all

other relief which the Court deems just and appropriate.

Houston, Texas
Dated:  March 6, 2012

|  |  |
|---|---|
|  | _/s/  Lydia Protopapas_ |
| Richard A. Rothman (RR 0507) | Melanie Gray (*admitted pro hac vice*) |
| Bruce S. Meyer (BM 3506) | Lydia Protopapas (LP 8089) |
| WEIL, GOTSHAL & MANGES LLP | Jason W. Billeck (*admitted pro hac vice*) |
| 767 Fifth Avenue | WEIL, GOTSHAL & MANGES LLP |
| New York, New York 10153 | 700 Louisiana, Suite 1600 |
| Telephone:  (212) 310-8000 | Houston, Texas   77002 |
| Facsimile:  (212) 310-8007 | Telephone:  (713) 546-5000 |
|  | Facsimile:  (713) 224-9511 |

---

[114]    *See In re Quebecor World (USA) Inc.*, 453 B.R. 201, 214 (Bankr. S.D.N.Y. 2011) (stating that "the impact of [*Enron*] on avoidance actions may be quite far reaching").

[115]    *Parker*, 204 F.3d at 339.

[116]    *See* Section II *supra*.

Thomas R. Lotterman (*admitted pro hac vice*)
Duke K. McCall, III (*admitted pro hac vice)*
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Telephone:   (202) 373-6000
Facsimile:   (202) 373-6001

James J. Dragna (*admitted pro hac vice)*
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California   90071
Telephone:   (213) 680-6400
Facsimile:   (213) 680-6499
*Counsel to Defendants*

Exhibit A

US_ACTIVE:\43934957\06\15337.0004

EXHIBIT A:  DOCUMENT PRODUCTIONS MADE AFTER JUNE 24, 2011[1]

### PRODUCTIONS BY DEFENDANTS

| Date of Production | Document Count | Page Count |
|---|---|---|
| 7/21/2011 | 1,240 | 12,699 |
| 9/2/2011 | 1,089 | 14,775 |
| 9/16/2011 | 290 | 3,226 |
| 9/30/2011 | 733 | 8,060 |
| 10/6/2011 | 102 | 2,429 |
| 10/11/2011 | 849 | 3,413 |
| 10/11/2011 | 443 | 981 |
| 10/27/2011 | 5 | 5 |
| 12/27/2011 | 2 | 6 |
| 12/27/2011 | 4 | 4 |
| 12/30/2011 | 1 | 1 |
| **TOTAL:** | **4,758** | **45,599** |

### PRODUCTIONS BY PLAINTIFFS

| Date of Production | Document Count | Page Count |
|---|---|---|
| 6/30/2011 | 17 | 43 |
| 7/13/2011 | 33 | 6,028 |
| 7/15/2011 | 6,498 | 39,042 |
| 7/19/2011 | 962,461 | 1,204,385 |
| 7/20/2011 | 374 | 3,614 |
| 8/2/2011 | 641 | 3,286 |
| 8/2/2011 | 339 | 9,197 |
| 8/11/2011 | 1 | 2 |
| 10/6/2011 | 167 | 2,555 |
| 12/20/2011 | 11,699 | 86,802 |
| 1/19/2012 | 1,563 | 7,796 |
| 1/27/2012 | 1,203 | 3,796 |
| **TOTAL:** | **984,996** | **1,366,546** |

---

[1]   The document and page counts reflected herein are estimates of productions made after the close of fact discovery.  These estimates are for reference only and are not intended to represent the full scope of the parties' productions.  Some documents were withheld due to privilege, and subsequently redesignated as non-privileged.    Where possible, Defendants did not include such redesignated documents in these estimates.    Similarly, where productions included native versions of previously produced documents, Defendants excluded these documents from the counts included herein.  Where Defendants received permission to produce documents on a third party's behalf, Defendants have categorized those documents as produced by Defendants.

## PRODUCTIONS BY THIRD PARTIES

| Date of Production[2] | Producing Party | Document Count | Page Count |
|---|---|---|---|
| 6/27/2011 | Tollison Law Firm | 30 | 46 |
| 6/30/2011 | Donald Shandy | 75,921 | 202,879 |
| 7/11/2011 | United States | 8,038 | 76,344 |
| 7/11/2011 | Powell Law Group | 3 | 10 |
| 7/13/2011 | Powell Law Group | 9 | 9 |
| 7/13/2011 | Donald Shandy | 14,910 | 35,505 |
| 7/15/2011 | United States | 12,728 | 104,743 |
| 7/30/2011 | United States | 135 | 1,889 |
| 8/2/2011 | United States | 21,341 | 137,657 |
| 8/12/2011 | United States | 434 | 6,630 |
| 8/12/2011 | United States | 29 | 654 |
| 8/17/2011 | Donald Shandy | 32 | 223 |
| 8/19/2011 | United States | 573 | 8,055 |
| 8/22/2011 | Ernst & Young | 278 | 4,372 |
| 8/31/2011 | United States | 4 | 117 |
| 9/10/2011 | United States | 19 | 33 |
| 9/20/2011 | United States | 5 | 26 |
| 9/23/2011 | General Electric Company/United Nuclear Corp. | 11,492 | 61,486 |
| 9/29/2011 | UBS | 246 | 2,608 |
| 10/20/2011 | United States | 1 | 5 |
| 10/25/2011 | United States | 19 | 857 |
| 12/11/2011 | Alvarez & Marsal | 1,500 | 30,656 |
| 12/12/2011 | Alvarez & Marsal | 5,976 | 60,525 |
| 1/14/2012 | Alvarez & Marsal | 642 | 2,310 |
| 2/6/2012 | Grant Thornton | 72 | 3,246 |
| 2/6/2012 | International Business Management Associates | 2 | 134 |
| 2/29/2012 | Millennium Inorganic | 664 | 4,215 |
| **TOTAL:** | | 155,103 | 745,234 |

---

[2]    These dates are approximations and reflect either the actual date of production or the date productions were added to Defendants' document management database.  Where Defendants could not verify that the actual productions occurred after June 24, 2011, Defendants excluded such production from this Exhibit.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Defendants' Motion for an Order Confirming that Defendants Have Preserved the Defense Codified by Section 546(e) of the Bankruptcy Code or, in the Alternative, for Leave to Amend Their Answer to the Second Amended Adversary Complaint to Include Such Defense** was served on the following counsel of record on March 6, 2012, as indicated below:

*Via email jonathan.henes@kirkland.com*
Jonathan S. Henes
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022

*Via email jeffrey.zeiger@kirkland.com*
Jeffrey J. Zeiger
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654

*Via email joseph.pantoja@usdoj.gov
and robert.yalen@usdoj.gov*
Joseph Pantoja
Robert Yalen
Assistant U.S. Attorney
SOUTHERN DISTRICT OF NEW YORK
86 Chambers Street
New York, New York 10007

*Via email david.zott@kirkland.com*
David J. Zott
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654

Houston, Texas
Dated: March 6, 2012

 */s/ Gayle E. Mitchel*
Gayle E. Mitchel