Hearing Date: April 24, 2012 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: April 2, 2010 4:00 p.m. (Prevailing Eastern Time)

Melanie Gray (*admitted pro hac vice*)
Lydia Protopapas (LP 8089)
Jason W. Billeck (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Thomas R. Lotterman (*admitted pro hac vice*)
Duke K. McCall, III (*admitted pro hac vice*)
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Telephone: (202) 373-6000
Facsimile: (202) 373-6001

Richard A. Rothman (RR 0507)
Bruce S. Meyer (BM 3506)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

James J. Dragna (*admitted pro hac vice*)
BINGHAM MCCUTCHEN LLP
335 South Grand Avenue, Suite 4400
Los Angeles, California 90071
Telephone: (213) 680-6400
Facsimile: (213) 680-6499

*Counsel to Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | Chapter 11 |
| **TRONOX INCORPORATED, *et al.*,** | Case No. 09-10156 (ALG) |
| **Debtors.** | Jointly Administered |
| **TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC,** | Adv. Pro. No. 09-01198 (ALG) |
| **Plaintiffs,** | |
| v. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE* AND MOTION FOR RELIEF UNDER FRCP 36(a)(6)** |
| **ANADARKO PETROLEUM CORPORATION and KERR-MCGEE CORPORATION, KERR-MCGEE OIL & GAS CORPORATION, KERR-MCGEE WORLDWIDE CORPORATION, KERR-MCGEE INVESTMENT CORPORATION, KERR-MCGEE CREDIT LLC, KERR-MCGEE SHARED SERVICES COMPANY LLC, AND KERR-MCGEE STORED POWER COMPANY LLC** | |
| **Defendants.** | |
| **THE UNITED STATES OF AMERICA,** | |
| **Plaintiff-Intervenor,** | |
| v. | |
| **TRONOX, INC., TRONOX WORLDWIDE LLC, TRONOX LLC, KERR-MCGEE CORPORATION and ANADARKO PETROLEUM CORPORATION,** | |
| **Defendants.** | |

# I.
# INTRODUCTION

Since this case began almost three years ago, Plaintiffs Tronox and the United States have repeatedly asserted that it revolves around Tronox's liability for environmental and toxic tort claims at 2,800 sites—virtually every parcel of property ever owned, operated, leased, or used by any of Tronox's alleged predecessors. Now, with trial approaching, it is clear that only 372 sites are truly at issue.

During discovery, Plaintiffs produced evidence of the nature and extent of Tronox's alleged liability for only a small fraction of the 2,800 sites. Defendants then served Requests for Admission aiming to establish, once and for all, that there is no evidence about Tronox's liability for the bulk of those sites. But Plaintiffs objected to the requests and limited their responses to the 372 sites for which their environmental expert assigned Tronox a positive liability (called the "Costed Sites," for short). Plaintiffs later said that they intend to raise all 2,800 sites at trial by arguing that their expert's "estimate of contingent liabilities is conservative because it does not include liabilities for sites for which Tronox's expert did not assign costs."

Defendants bring this motion *in limine* to restrict Plaintiffs' proof at trial, either directly or indirectly, to the 372 Costed Sites. Plaintiffs cannot opine on, speculate about, or otherwise address Tronox's liability for thousands of sites for which their experts assigned no costs, particularly after refusing to produce concrete evidence about the nature and extent of Tronox's alleged environmental liabilities at those sites. If allowed, Plaintiffs' tactic would bog down the trial and force Defendants to prove (with little to go on) that Tronox will not incur future costs at over 2,200 sites. Moreover, because Plaintiffs have improperly refused to answer Defendants' Requests for Admission about all sites except the 372 Costed Sites, the Court should order "that the matter is admitted" as to the sites Plaintiffs left out of their answers. Fed. R. Civ. P. 36(a)(6).

1

## II.
## BACKGROUND

One significant issue in this case is the estimate of Tronox's contingent environmental and toxic tort liabilities at the time of the IPO in November 2005. To determine that amount, Defendants need to know (i) *which sites* Plaintiffs claim Tronox is liable for, and (ii) *why* Plaintiffs think Tronox is liable for them.

Plaintiffs have claimed that Tronox had contingent liabilities for nearly every property they can connect with one of Tronox's predecessors. While the precise number has fluctuated, from early on Plaintiffs have pegged about 2,800 sites as being at issue. *See* Exh. A to Decl. of Duke K. McCall, III (hereinafter "Decl.") (8/10/10 Transcript pp. 15); Exh. B to Decl. (12/22/10 Transcript pp. 39-40). If anyone had the necessary information about the nature and extent of Tronox's alleged liabilities for those sites, it would be Tronox and the United States. Defendants therefore asked Plaintiffs for CERCLA notices and communications between Tronox and government agencies, site evaluations and disclosures, evidence of site-ownership history, and many other things. Decl. ¶¶ 4, 9, 11. Plaintiffs, however, objected to the discovery efforts as overbroad, then answered with mere lists of sites and their approximate locations, and then (after a motion to compel) produced limited documents related to environmental and toxic tort liabilities *at a very small fraction of sites on their lists*. Decl. ¶ 5.

Due to the uncertainty over which sites are truly at issue, Defendants insisted that the Third Amended Case Management Order include a provision setting a final deadline of March 2011 for Plaintiffs to "identify each environmental and toxic tort site that any or all of their experts will rely upon, value, estimate, or issue an opinion concerning, or with respect to which [Plaintiffs] will otherwise present testimony or evidence, in connection with this lawsuit." Decl. ¶ 9. Claiming to comply with that obligation, Plaintiffs generated a list of 2,772 sites in March

2

2011. Decl. ¶ 10. Yet, demonstrating just how little they actually know about those sites, Plaintiffs "identified" more than 1,000 of them with only an unspecific reference to a city and/or state, that is, they provided no specific street address. *Id.*

Defendants continued to press Plaintiffs about the basis for alleging that Tronox was liable at nearly 2,800 sites and so served Requests for Admission seeking to nail down basic information about the sites. For example, Defendants asked Plaintiffs to admit for certain sites (i) that Tronox's predecessors never owned or operated them; (ii) that the United States never incurred any remediation costs; and (iii) that the United States never issued any CERCLA notices of liability. Decl. ¶ 11. Consistent with Civil Procedure Rule 36, Defendants' goal in serving the Requests for Admission was "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial," 8B *Federal Practice & Procedure* § 2252, by asking Plaintiffs to admit that most of the sites they claimed are at issue are, in fact, not at issue.

Before responding to the Requests for Admission, Plaintiffs produced their expert reports on Tronox's environmental and toxic tort liabilities as of the IPO. Decl. ¶¶ 14, 21. Counsel for the United States had previously told the Court that those reports would be the vehicle through which Plaintiffs would "develop[] and divulge[]" information about all the sites at issue. Decl. ¶ 8. Yet, neither report values, estimates, or sets forth an expert opinion concerning the vast majority of the 2,772 sites on Plaintiffs' list. The report by Dr. Neil Ram of Roux Associates specifically addresses just 536 sites and concludes that Tronox is liable for environmental response costs at only 372 sites (*i.e.* the Costed Sites) and has zero liability at 164 sites. Decl. ¶¶ 15, 16. Dr. Ram did not even attempt to assign Tronox liability for the other 2,200 sites on Plaintiffs' list (called the "Uncosted Sites," for short). Decl. ¶ 17. (Plaintiffs' toxic tort expert,

3

Dr. Martin of NERA, assigned toxic tort liabilities for only a subset of the 372 Costed Sites. (Decl. ¶ 21.)

Plaintiffs then responded to Defendants' Requests for Admission *but only as to the 372 Costed Sites*. Tronox objected that the requests were "overly broad and unduly burdensome to the extent" they sought "information concerning sites which Plaintiffs' environmental expert, Dr. Ram, has not assigned specific costs or sites that Dr. Ram has not used to assign specific costs to other sites." Decl. ¶ 12. Tronox therefore limited its responses "to sites for which Dr. Ram has assigned specific costs or sites that Dr. Ram used to assign specific costs to other sites." *Id.* The United States similarly restricted its answers. Decl. ¶ 13.

In short, despite claiming for years that nearly 2,800 sites are at issue in this case, Plaintiffs have put forward evidence of Tronox's alleged liability for only the 372 Costed Sites. This, despite Defendants' efforts to obtain discovery about *all* sites through documents requests, interrogatories, a motion to compel, the Case Management Order, and Requests for Admission. Defendants discussed the discrepancy with Plaintiffs and asked that they either provide a complete response to the Requests for Admission or stipulate not to rely upon or offer evidence about all 2,800 sites at trial. Plaintiffs refused, asserting that "it is unduly burdensome to require Tronox to investigate various issues at thousands of sites to which Tronox has not assigned costs for its solvency analysis." Decl. ¶ 23. Plaintiffs also made clear their intent to bring up all 2,800 sites at trial by arguing that their "estimate of contingent liabilities is conservative because it does not include liabilities for sites for which Tronox's expert did not assign costs." *Id.*

4

# III.
# ARGUMENT

A. **Plaintiffs Should Be Barred From Speculating At Trial About Tronox's Possible Liability At The 2,200 Uncosted Sites.**

At trial, Plaintiffs intend to argue that all 2,800 sites on their list are at issue and that their overall "estimate of contingent liabilities is conservative because it does not include liabilities for" each site on the list. Decl. ¶ 23. Plaintiffs should be barred from making that argument and otherwise relying upon the 2,200 Uncosted Sites that Dr. Ram did not evaluate. Despite having every opportunity to produce genuine, admissible evidence in support of their claims about those sites, Plaintiffs have produced none. Plaintiffs' approach will waste time and judicial resources.

As a general matter, "speculative and remote possibilities cannot become a guide for the ascertainment of value in judicial ascertainment of the truth." *Wilson v. United States*, 350 F.2d 901, 909 (10th Cir. 1965). Such speculation is inadmissible, even when put into an expert report. Because an expert cannot form an opinion out of nothing, the Federal Rules of Evidence bar purported expert opinions that are speculative and not "based upon sufficient facts or data." Fed. R. Ev. 702; *see Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 590 (1993) (for Rule 702, expert testimony must be "more than subjective belief or unsupported speculation"); *see also Horton v. W. T. Grant Co.*, 537 F.2d 1215, 1218 (4th Cir. 1976) ("[R]elevant testimony from a qualified expert may be received if and only if he is in possession of such facts as would enable him to express a reasonably accurate conclusion as distinguished from mere conjecture."). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see, e.g.*, *Lippe v. Bairnco Corp.*, 288 B.R. 678, 689 (S.D.N.Y. 2003) (excluding proposed testimony of valuation experts that was "based solely on their say-so").

5

Plaintiffs' position that Tronox has some unquantified amount of liability for the Uncosted Sites is exactly that kind of inadmissible speculation. In arguing that all 2,800 sites are relevant to this case, Plaintiffs simply repeat Dr. Ram's assertion that he underestimated Tronox's environmental liability because he "assigned no costs" to Tronox for about 2,200 sites. Decl. ¶¶ 17, 18, 24 (identifying "(i) 25 'pipeline' sites; (ii) 656 mining related sites … ; (iii) 196 undisclosed AgChem sites … ; (iv) 1228 service stations; (v) 71 undisclosed waste disposal sites; and (vi) 34 'other' domestic sites"). Yet, in explaining why he assigned Tronox no costs for those Uncosted Sites, Dr. Ram essentially concedes that the question whether Tronox has environmental liabilities for them can be answered only with speculation. Referring to 656 mining related sites, for instance, Dr. Ram states that he did not attempt to assign Tronox costs for the majority of them "because site-specific information with which to develop cost elements was lacking" and because, despite being engaged in the effort for two years, he "did not have sufficient time to conduct site inspections at these sites to determine whether or not historical mine features are present." *Id.*

Rule 702 bars Dr. Ram's assertion that Plaintiffs' unsubstantiated allegations about the Uncosted Sites *by themselves* make his estimate of Tronox's total environmental liabilities conservative. Dr. Ram did not evaluate those sites because Plaintiffs gave him no evidence that those sites are even relevant to this case. Like Dr. Ram, Defendants are not aware of any information about Tronox's alleged liability for those sites. And by all appearances, Plaintiffs are not aware of any such information either, or else they would have answered Defendants' Requests for Admission as to the Uncosted Sites instead of objecting about having to undertake a sizable investigation to craft a proper response. *See* Decl. ¶ 23.

6

Plaintiffs will likely counter that the absence of evidence about Tronox's liability for the Uncosted Sites goes to the *weight* of Dr. Ram's opinion, not its *admissibility*.  Exh. K to Decl. (letter from Jeffrey J. Zeiger, Kirkland & Ellis LLP, to Duke K. McCall, III, Bingham McCutchen LLP (Nov. 11, 2011) (stating that "Tronox is free to argue that its estimate of contingent liabilities is conservative because it does not include liabilities for sites for which Tronox's expert did not assign costs, just as Defendants are free to argue, for example, that Tronox has not presented evidence of CERCLA notices from the EPA concerning such sites.")). But the problem here is not that Plaintiffs and Defendants have conflicting views about the facts or data Dr. Ram relied upon.  *Cf. Raskin v. The Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[D]isputes as to the validity of the underlying data go to the weight of the evidence.").  The problem is that Dr. Ram did not rely upon any facts or data, so Defendants cannot avail themselves of "the traditional and appropriate means of attacking shaky but admissible evidence," such as "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."  *Daubert*, 509 U.S. at 596.

For that reason, allowing Plaintiffs to speculate (through Dr. Ram) that Tronox might be liable for environmental remediation or toxic torts at the 2,200 Uncosted Sites would needlessly waste time and risk undue delay of the trial.  *See* Fed. R. Ev. 403.  Defendants' only means to rebut such speculation would be to go site by site and, with little information available, prove a negative, such as that a site does *not* exist, that there is *no* evidence of contamination, or that there is *no* evidence remediation would be required.  Plaintiffs cannot deny that it would be burdensome for Defendants to address each of the Uncosted Sites at trial because Plaintiffs themselves objected to the magnitude of the burden every time Defendants sought information about those sites in discovery.

7

In short, Plaintiffs cannot be allowed to allege that the 2,200 Uncosted Sites are at issue, frustrate and object to Defendants' efforts to learn about them all during fact discovery, then argue at trial (on the back of their expert's nakedly speculative testimony) that Tronox *might* be liable for those sites. Accordingly, Dr. Ram's purported expert opinion about the 2,200 Uncosted Sites is inadmissible, and Plaintiffs should be barred from arguing, either directly or indirectly, that their "estimate of contingent liabilities is conservative because it does not include liabilities for" those sites.[1]

**B.     The Court Should Deem The Unanswered Requests For Admission Admitted.**

After fact discovery showed that Plaintiffs' allegations about Tronox's possible liability for 2,800 sites are inflated and unsupported, Defendants served Requests for Admission to establish the absence of basic information necessary for evaluating whether Tronox in fact is liable for environmental and toxic torts at the sites. This was an appropriate effort to narrow issues for trial by confirming Defendants' conclusion that Plaintiffs have no evidence, let alone disputed evidence, supporting their allegations. *See Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir. 1966) ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."). In response, Plaintiffs answered only as to the 372 Costed Sites, objecting that "it is unduly burdensome … to investigate various issues at thousands of sites… ." Decl. ¶¶ 12, 13, 23. Under Rule 36(a)(6), the Court should hold that Plaintiffs' answers and objections to Defendants' Request for Admissions are insufficient.

Plaintiffs cannot carry their burden of "persuad[ing] the court that there is a justification for the objection," 8B *Federal Practice and Procedure* § 2263 (3d ed. 2010), because Plaintiffs cannot adequately explain why it is burdensome for them to provide basic information about

---

[1]     Defendants reserve their rights to challenge Dr. Ram's opinion about other sites.

8

sites *they have put at issue*. The mere fact that Defendants' requests are "extensive and likely cover a large percentage of the issues in the case" is not by itself "inappropriate, since the purpose of Requests for Admissions is not necessarily to obtain information but to narrow issues for trial." *Diederich v. Dep't of the Army*, 132 F.R.D. 614, 616 (S.D.N.Y. 1990). "Objections that the number of requests are numerous or that they attempt to cover the entire case will not, therefore, be sustained." *Id.* Furthermore, where, as here, requests for admission are amenable to simple yes-or-no answers based on information Plaintiffs should have (if it even exists), "the extent to which attorneys' investigation of the facts is necessary or burdensome is *not* a basis for objection… ." *Id*. at 619 (emphasis in original).

Plaintiffs are the ones who alleged that thousands of Uncosted Sites are relevant to this case in the first place. If, in fact, it is difficult for Plaintiffs to answer Defendants' Requests for Admission, Plaintiffs have only themselves to blame. *See Wiwa v. Anderson*, 2009 WL 1457142 at *5 (S.D.N.Y.) ("When assessing the sufficiency of a party's responses, a court considers whether … any qualifications are demanded by, and made in, good faith."). The Court therefore should order "that the matter is admitted," Fed. R. Civ. P. 36(a)(6), and should deem Defendants' Requests for Admission admitted as to all sites that Plaintiffs' answers failed to address.

## IV.
## CONCLUSION

The Court should grant Defendants' motion *in limine* and their Rule 36(a)(6) motion.

| | |
|---|---|
| March 12, 2012 | Respectfully submitted, |
| | */s/ Duke K. McCall, III* |
| Melanie Gray (*admitted pro hac vice*) | Thomas R. Lotterman (*admitted pro hac vice*) |
| Lydia Protopapas (LP 8089) | Duke K. McCall, III (*admitted pro hac vice*) |
| Jason W. Billeck (*admitted pro hac vice*) | Bingham McCutchen LLP |
| Weil, Gotshal & Manges LLP | 2020 K Street, NW |
| 700 Louisiana, Suite 1600 | Washington, DC 20006 |
| Houston, Texas 77002 | Telephone: (202) 373-6000 |
| Telephone: (713) 546-5000 | Facsimile: (202) 373-6001 |
| Facsimile: (713) 224-9511 | |
| Richard A. Rothman (RR 0507) | James J. Dragna (*admitted pro hac vice*) |
| Bruce S. Meyer (BM 3506) | Bingham McCutchen LLP |
| Weil, Gotshal & Manges LLP | 335 South Grand Avenue, Suite 4400 |
| 767 Fifth Avenue | Los Angeles, California 90071 |
| New York, New York 10153 | Telephone: (213) 680-6400 |
| Telephone: (212) 310-8000 | Facsimile: (213) 680-6499 |
| Facsimile: (212) 310-8007 | |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 12, 2012, a true and correct copy of the foregoing was served on the following counsel of record by ECF and/or as indicated below:

**Via email jeffrey.zeiger@kirkland.com and jzeiger@kirkland.com**

Jeffrey J. Zeiger
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654

**Via email joseph.pantoja@usdoj.gov**

Joseph A. Pantoja
Assistant United States Attorney
86 Chambers Street
New York, NY 10007

                      */s/ Duke K. McCall, III*
                      Duke K. McCall, III