# EXHIBIT G

KIRKLAND & ELLIS LLP
David J. Zott, P.C. *(admitted pro hac vice)*
Jeffrey J. Zeiger *(admitted pro hac vice)*
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel for the Anadarko Litigation Trust*[1]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| TRONOX INCORPORATED, *et al.*, | Case No. 09-10156 (ALG) |
| Debtors. | Jointly Administered |
| | |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | |
| Plaintiffs, | |
| v. | |
| ANADARKO PETROLEUM CORPORATION *et al.*, | Adversary Proceeding No. 09-01198 (ALG) |
| Defendants. | |
| | |
| THE UNITED STATES OF AMERICA, | |
| Plaintiff-Intervenor, | |

---

[1] Pursuant to the Anadarko Litigation Trust Agreement, which was approved by the Court on February 14, 2011 (Dkt. No. 2812), the Anadarko Litigation Trust was appointed as the representative of each of the Plaintiff Debtors' estates, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, with the power and right to prosecute this matter. By the same agreement and Order, the Anadarko Litigation Trust was "deemed substituted" for the Debtor Plaintiffs in this matter "as the party in such litigation."

v. )
)
)
TRONOX, INC., TRONOX WORLDWIDE )
LLC, TRONOX LLC, KERR-McGEE )
CORPORATION, and ANADARKO )
PETROLEUM CORPORATION, )
)
Defendants. )
)

## PLAINTIFF'S COMBINED RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST REQUEST FOR ADMISSIONS AND FIFTH SET OF INTERROGATORIES

Pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the Local Rules of the United States Bankruptcy Court for the Southern District of New York, the Anadarko Litigation Trust ("Plaintiff") hereby responds and objects to Defendants' First Request for Admissions and Fifth Set of Interrogatories as follows:[2]

## GENERAL OBJECTIONS

1.     Plaintiff objects to Defendants' definitions, instructions, requests for admissions ("Requests"), and Fifth Set of Interrogatories ("Interrogatories") to the extent that they seek information protected from disclosure by the attorney-client privilege, attorney work product doctrine, joint defense or joint prosecution privilege, or by any other applicable privilege or immunity from production. Nothing contained in Plaintiff's responses to Defendants' Requests or Interrogatories is intended to be, or in any way should be deemed to be, a waiver of any such privilege or immunity. Any inadvertent disclosure of information protected by the attorney-client privilege, prepared in anticipation of litigation or trial, or otherwise protected or immune

---

[2] Plaintiff's responses to the Interrogatories, which ask Plaintiff to "state in detail the bases for Plaintiff's failure to admit each request for admission," are incorporated in their responses to Defendants' requests for admissions.

from discovery shall not constitute a waiver of any privilege or other basis for objecting to the production of such material or its subject matter. Plaintiff expressly reserves the right to object to the use or introduction of such information at trial.

2.      Plaintiff objects to Defendants' definitions, instructions, Requests, and Interrogatories to the extent that they are overly broad, unduly burdensome, and/or seek information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

3.      Plaintiff objects to Defendants' definitions, instructions, Requests, and Interrogatories to the extent they purport to impose obligations on Plaintiff that exceed its obligations under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, or the Local Rules.

4.      Plaintiff objects to Defendants' definitions, instructions, and Requests to the extent that the information Plaintiff knows or can readily obtain is insufficient to enable it to admit or deny a Request despite Plaintiff's reasonable inquiry.

5.      Plaintiff objects to Defendants' definitions, instructions, Requests, and Interrogatories to the extent that they are vague, ambiguous and unclear, including Defendants' use of terms that are not defined and/or not otherwise susceptible to any single meaning.

6.      Plaintiff objects to Defendants' definitions, instructions, Requests, and Interrogatories to the extent that they seek to impose obligations to provide publicly available information, information that is equally or more easily available to Defendants than it is to Plaintiff, or information that Plaintiff has already provided in response to other discovery requests.

7.      Plaintiff objects to Defendants' Requests because they purport to require Plaintiff

to answer the Requests "under oath." Fed. R. Civ. P. 36 does not require Plaintiff to answer Defendants' Requests under oath. Accordingly, Plaintiff's verification is limited to its interrogatory responses, which explain the bases for Plaintiff's denials of Defendants' Requests and are incorporated herein.

8.    Plaintiff objects to the Interrogatories because they are not comprised of only one interrogatory as Defendants suggest. Further, Plaintiff objects because Defendants have exceeded the maximum number of 25 interrogatories allowed under Fed. R. Civ. P. 33(a)(1).

9.    Plaintiff reserves its right to amend, modify, and/or supplement its responses at any time prior to the trial in the above-captioned adversary proceeding.

## RESPONSES AND SPECIFIC OBJECTIONS

### Request to Admit No. 1

Admit that Plaintiffs identified the sites listed in Exhibit 1 pursuant to paragraph 8(a) of the Court's Case Management Orders, but omitted these sites from its subsequent disclosures pursuant to paragraph 8(c) of the Court's Case Management Orders.

### Response

Subject to and without waiving its General Objections, Plaintiff responds as follows. Plaintiff denies Request No. 1 with respect to the sites identified on Exhibit 1 as the "Kerr-Mcgee Claim" and the "Unknown - Kerr-Mcgee Prop." Plaintiff did not omit these sites from its disclosures pursuant to paragraph 8(c) of the Court's Case Management Orders. Plaintiff also denies that it omitted from subsequent disclosures the site described in Chapter 5.4.5 of Dr. Ram's report, titled "Griffin Burning Station, Bowman, North Dakota." Plaintiff omitted from subsequent disclosures the reference to "Griffin Burn Station" to avoid duplication after confirming that "Griffin Burn Station" referred to the same site as the "Bowman" site, which

4

Plaintiff included in subsequent disclosures.  Plaintiff otherwise admits Request No. 1.

**Request to Admit No. 2**

Admit that the sites listed in Exhibit 2 were allocated cash funding and/or other consideration under the Consent Decree and Environmental Settlement Agreement, but were omitted from Plaintiffs' subsequent disclosures pursuant to paragraph 8(c) of the Court's Case Management Order.

**Response**

Plaintiff objects to Request No. 2 because the Consent Decree and Environmental Settlement Agreement is inadmissible under Federal Rule of Evidence 408, and therefore Request No. 2 seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving this objection and its General Objections, Plaintiff responds as follows.  Plaintiff denies Request No. 2 with respect to the site identified on Exhibit 2 as the "Dupage County Landfill Site," which is not referenced in the Consent Decree and Environmental Settlement Agreement.  Plaintiff also denies that any sites on Exhibit 2 other than the "Welsbach and General Gas Mantle Superfund Site" were allocated cash funding or specifically allocated other consideration in the Consent Decree and Environmental Settlement Agreement.  Rather, under Paragraph 126(a) of the Consent Decree and Environmental Settlement Agreement, all sites on Exhibit 2 other than the "Welsbach and General Gas Mantle Superfund Site," the "Dupage County Landfill Site," and the "New Perryman" site are included within a category of sites—"Other Sites"—for which the Multistate Trust received 3 percent of any proceeds from this litigation.  Similarly, the "Gore, OK" site (a.k.a., the "Gore Site") was included in a group of Oklahoma sites that received a fixed cash payment and percentage of the proceeds from this litigation.  (Consent Order and Environmental

Settlement ¶¶ 117(u), 125(t))  Further, the "New Perryman" site was not specifically allocated cash funding or specifically allocated other consideration under the Consent Order and Environmental Settlement, but rather was included in a category of sites—"Owned Service Stations"—to which the Consent Order and Environmental Settlement allocated a fixed amount of cash funding and a percentage of the proceeds from this litigation.  (*Id.* ¶¶ 10(f)(xxvii), 124(bb))  Plaintiff otherwise admits Request No. 2.

**Request to Admit No. 3**

Admit that, as of November 28, 2005, neither Kerr-McGee Corporation and/or its subsidiaries and affiliates, nor Tronox and/or its subsidiaries and affiliates, had received any written notice from the U.S. Environmental Protection Agency, pursuant to CERCLA (including, but not limited to, any general notice letters or special notice letters under Section 107 of CERCLA) for the sites listed in Exhibit 3.

**Response**

Plaintiff objects to Request No. 3 as overly broad and unduly burdensome to the extent it seeks information concerning sites for which Plaintiff's environmental expert, Dr. Ram, has not assigned specific costs or sites that Dr. Ram has not used to assign specific costs to other sites. Accordingly, Plaintiff's response to Request No. 3 is limited to sites for which Dr. Ram has assigned specific costs or sites that Dr. Ram used to assign specific costs to other sites. Moreover, Exhibit 3 lists hundreds of sites.  Plaintiff's response is based on available information and Plaintiff reserves its rights to supplement or amend its response.  Subject to and without waiving these objections and its General Objections, Plaintiff responds as follows. Plaintiff admits that, with respect to those sites on Exhibit 3 for which Dr. Ram has assigned specific costs or that Dr. Ram used to assign specific costs to other sites, neither Kerr-McGee

Corporation and/or its subsidiaries or affiliates, nor Tronox Incorporated and/or its subsidiaries or affiliates, had received written notice from the U.S. Environmental Protection Agency pursuant to CERCLA as of November 28, 2005, except with respect to:

- Juniper Uranium Mine, Toluemne County:  Kerr-McGee Corporation received a CERCLA section 104(e) request from the U.S. Environmental Protection Agency regarding this site on August 14, 2002.

- DuSable Park (associated with Streeterville):  Kerr-McGee Corporation and the U.S. Environmental Protection Agency were in discussions regarding this site prior to November 28, 2005, including through an August 31, 2001 letter in which the EPA discussed the results of testing performed by Kerr-McGee and stated that it did not agree with Kerr-McGee's conclusion that a site-wide cleanup was not required.

- Williamston, NC (Big "O" Jamboree Music Club Site):  A September 22, 1986 order from the U.S. Environmental Protection Agency identified Kerr-McGee Corporation as a past owner/operator under CERCLA.

In addition, the EPA sent Kerr-McGee Chemical Corporation a general notice of potential liability in April 1996 concerning the Lindsey Light II site, which is related to the downtown Chicago sites on Exhibit 3 numbered 331-346.

**Request to Admit No. 4**

Admit that, since November 28, 2005, neither Kerr-McGee Corporation and/or its subsidiaries and affiliates, nor Tronox and/or its subsidiaries and affiliates, had received any written notice from the U.S. Environmental Protection Agency, pursuant to CERCLA (including, but not limited to, any general notice letters or special notice letters under Section 107 of CERCLA) for the sites listed in Exhibit 4.

**Response**

Plaintiff objects to Request No. 4 because Exhibit 4 does not purport to list sites for which EPA did not provide a notice since November 28, 2005 as the Request represents, but

rather purports to list "sites with no EPA CERCLA notice before or since 11/28/2005." Plaintiff also objects to Request No. 4 as overly broad and unduly burdensome to the extent it seeks information concerning sites for which Plaintiff's environmental expert, Dr. Ram, has not assigned specific costs or sites that Dr. Ram has not used to assign specific costs to other sites. Accordingly, Plaintiff's response to Request No. 4 is limited to sites for which Dr. Ram has assigned specific costs or sites that Dr. Ram used to assign specific costs to other sites. Plaintiff also objects to the term "written notice" as vague and ambiguous as it is not clear whether the term includes proofs of claim filed by or on behalf of the EPA. For purposes of this request, Plaintiff has excluded proofs of claim filed in the above-captioned bankruptcy case from the definition of written notice. Moreover, Exhibit 4 lists hundreds of sites. Plaintiff's response is based on available information and Plaintiff reserves its rights to supplement or amend its response. Subject to and without waiving these objections and its General Objections, Plaintiff responds as follows. Plaintiff admits that, with respect to those sites on Exhibit 4 for which Dr. Ram has assigned specific costs or that Dr. Ram used to assign specific costs to other sites, neither Kerr-McGee Corporation and/or its subsidiaries or affiliates, nor Tronox Incorporated and/or its subsidiaries or affiliates, have received written notice from the U.S. Environmental Protection Agency pursuant to CERCLA since November 28, 2005, except with respect to:

- Red Mountain, AZ:  On March 15, 2006, the U.S. Forest Service sent a section 104(e) request pursuant to CERCLA to Kerr-McGee Corporation.

- Lukachukai Mountains, AZ :  On April 21, 2008, the U.S. EPA sent a section 104(e) request pursuant to CERCLA to Tronox.

- Flat Top, SD:  In August 2009, Tronox received a request for information from the U.S. EPA.

**Request to Admit No. 5**

Admit that, as of November 28, 2005, neither Kerr-McGee Corporation and/or its

subsidiaries and affiliates, nor Tronox and/or its subsidiaries and affiliates, had received any written claim or assessment for the sites listed in Exhibit 5.

**Response**

Plaintiff objects to Request No. 5 as overly broad and unduly burdensome to the extent it seeks information concerning sites for which Plaintiff's environmental expert, Dr. Ram, has not assigned specific costs or sites that Dr. Ram has not used to assign specific costs to other sites. Accordingly, Plaintiff's response to Request No. 5 is limited to sites for which Dr. Ram has assigned specific costs or sites that Dr. Ram used to assign specific costs to other sites. Moreover, Exhibit 5 lists hundreds of sites. Plaintiff's response is based on available information and Plaintiff reserves its rights to supplement or amend its response. Plaintiff also objects to Request No. 5 because the term "written claim or assessment" is vague and ambiguous. For purposes of this response, Plaintiff interprets "written claim or assessment" to mean a lawsuit or written demand for payment. Subject to and without waiving these objections and its General Objections, Plaintiff responds as follows. Plaintiff admits that, with respect to those sites on Exhibit 5 for which Dr. Ram has assigned specific costs or that Dr. Ram used to assign specific costs to other sites, neither Kerr-McGee Corporation and/or its subsidiaries or affiliates, nor Tronox Incorporated and/or its subsidiaries or affiliates, had received a written claim or assessment as of November 28, 2005, except with respect to:

- Portsmouth, VA: In 1990, the site's then-current owner submitted a claim to Kerr-McGee Corporation for $360,000 in past and future remediation costs.

- North Haven,CT: In 1999, Kerr-McGee and IMC Global, Inc. entered into an agreement with the U.S. Environmental Protection Agency to pay $775,000 for past costs incurred in the remediation of the North Haven site.

- Williamston, NC Big "O" Jamboree Music Club: On October 31, 1994, Olin Corporation and Kerr-McGee Chemical entered into a settlement agreement and release.

- Mt. Canaan Full Gospel Church, AL (associated with Birmingham, AL): A lawsuit

9

against Kerr-McGee Refining Corporation relating to pollution from the neighboring Birmingham site was initiated in 2003.

## Request to Admit No. 6

Admit that, as of November 28, 2005, Plaintiff-Intervenor had not incurred any response costs, as that term is defined under CERCLA, for the sites listed in Exhibit 6.

## Response

Plaintiff objects to Request No. 6 to the extent that the information Plaintiff knows or can readily obtain is insufficient to enable it to admit or deny Request No. 6 despite Plaintiff's reasonable inquiry. Plaintiff's response is based on its reasonable inquiry into the truth or falsity of Request No. 6, including Plaintiff's review of the United States of America's First Amended Responses and Objections to Anadarko Petroleum Corporation's and Kerr-McGee Corporation's First Set of Interrogatories dated April 13, 2011 ("USA's First Amended Responses"). Plaintiff also objects to Request No. 6 as overly broad and unduly burdensome to the extent it seeks information concerning sites for which Plaintiff's environmental expert, Dr. Ram, has not assigned specific costs or sites that Dr. Ram has not used to assign specific costs to other sites. Accordingly, Plaintiff's response to Request No. 6 is limited to sites for which Dr. Ram has assigned specific costs or sites that Dr. Ram used to assign specific costs to other sites. Moreover, Exhibit 6 lists hundreds of sites. Plaintiff's response is based on available information and Plaintiff reserves its rights to supplement or amend its response. Subject to and without waiving these objections and its General Objections, Plaintiff responds as follows. Plaintiff admits that, with respect to those sites on Exhibit 6 for which Dr. Ram has assigned specific costs or that Dr. Ram used to assign specific costs to other sites, Plaintiff-Intervenor had not incurred any response costs as of November 28, 2005 for the following sites:

- Hattiesburg

- Texarkana

- Columbus

- Rome

- Beaumont

- Mt. Vernon

- Meridian

- North Haven

- Calhoun

- Dubach

- Anniston

- Port Chester

- Clermont

- McFarland

- Mobile

- Cotton Valley Refinery

- Jericho

- Cottondale

- Searles Valley

- The service station sites numbered 49-332 and 1392-2671 on Exhibit 6

- Birmingham

- Bloomington

- Bogalusa

- DeRidder

- Edwardsville

- Hugo

- Jackson

- Marion

- Fort Pierce, FL

- Tampa, FL

- Tifton, GA

- Rushville, IN

- Baltimore, MD

- Cambridge, MA

- Philadelphia Waterfront Site

- AP&CC Trona Plant

- Flat Top, SD

- Mansfield Canyon, AZ

- Red Mountain, AZ

- Bowman, ND

- Powder Springs, GA

- Louisville, KY

- Wynnewood, OK

Plaintiff denies that, with respect to those sites on Exhibit 6 for which Dr. Ram has assigned specific costs or that Dr. Ram used to assign specific costs to other sites, Plaintiff-

Intervenor had not incurred any response costs as of November 28, 2005 for the following sites:

- The Downtown Chicago sites numbered 333-351 on Exhibit 6: According to the USA's First Amended Responses (Response to Request No. 2), "the Federal Government has incurred costs of investigation and response actions at the Lindsay Light-Streeterville Area Sites through November 28, 2005 in the amount of $1,360,072.30."

- Lukachukai, AZ; Cliffside-Section 36, NM; Section 1 (13N-9W) mined through Cliffside, NM; Section 10 (14N-10W), NM; Section 17 (14N-9W), NM; Section 18 (14N-9W) mined through Section 17, NM; Section 19 (14N-9W), NM; Section 20 (14N-9W) mined through Section 17, NM; Section 22 (14N-10W) heap leach, NM; Section 24 (14N-10W) heap leach, NM; Section 26 (14N-9W) mined through Section 35 and Sandstone, NM; Section 26 (14N-10W) mined through Section 24, NM; Section 29 (14N-9W) mined through Section 32 shaft, NM; Section 29 mined through Section 30 shaft, NM; Section 29 mined through Section 33, NM; Section 30 (14N-9W), NM; Section 30W (14N-9W), NM; Section 31 (14N-9W) mined through Section 32 shaft, NM; Section 32 (14N-9W), NM; Section 32 (15N-11W) (NE1/4, D. Begay allotment) minted through Moe #5 decline, NM; Section 33 (15N-11W), Moe #5, West Ranch Mine, NM; Section 33 (14N-9W) Branson Heap Leach, NM; and Section 35 (14N-9W Elizabeth Shaft), NM: According to the USA's First Amended Responses (Response to Request No. 7), "the Federal Government has incurred costs in connection with investigation and response actions at mines in and near the Navajo Nation, including certain Ambrosia Lake area mines, the Church Rock mine …, and the Lukachukai area mines" and some of these costs were incurred prior to November 28, 2005.

- Colorado School of Mines, CO: Plaintiff's denial is based on the United States of America's Responses and Objections to Defendants' First Request for Admissions to Plaintiff-Intervenor.

- Soda Springs, ID: Plaintiff's denial is based on the United States of America's Responses and Objections to Defendants' First Request for Admissions to Plaintiff-Intervenor.

With respect to those sites on Exhibit 6 for which Dr. Ram has assigned specific costs or that Dr. Ram used to assign specific costs to other sites but that are not specifically referenced in the admissions or denials above, despite Plaintiff's reasonable inquiry concerning Request No. 6, the information Plaintiff knows or can readily obtain is insufficient to enable it to admit or deny Request No. 6.

**Request to Admit No. 7**

Admit that, as of November 28, 2005, no funding had been authorized by the U.S.

Environmental Protection Agency for the sites listed in Exhibit 7.

**<u>Response</u>**

Plaintiff objects to Request No. 7 to the extent that the information Plaintiff knows or can readily obtain is insufficient to enable it to admit or deny Request No. 7 despite Plaintiff's reasonable inquiry. Plaintiff also objects to Request No. 7 as overly broad and unduly burdensome to the extent it seeks information concerning sites for which Plaintiff's environmental expert, Dr. Ram, has not assigned specific costs or sites that Dr. Ram has not used to assign specific costs to other sites. Accordingly, Plaintiff's response to Request No. 7 is limited to sites for which Dr. Ram has assigned specific costs or sites that Dr. Ram used to assign specific costs to other sites. Moreover, Exhibit 7 lists hundreds of sites. Plaintiff's response is based on available information and Plaintiff reserves its rights to supplement or amend its response. Plaintiff further objects to the phrase "funding had been authorized" as vague and ambiguous. For purposes of this response, Plaintiff interprets "funding has been authorized" to refer to Superfund sites that have been placed on the National Priority List ("NPL") by the EPA or sites located within Superfund sites that have been placed on the NPL by the EPA. Subject to and without waiving these objections or its General Objections, Plaintiff responds as follows. Plaintiff admits that, with respect to those sites on Exhibit 7 for which Dr. Ram has assigned specific costs or that Dr. Ram used to assign specific costs to other sites, the EPA had not placed such sites on the NPL as of November 28, 2005, with the exception of:

- Soda Springs, ID: According to the EPA's Superfund website (http://www.epa.gov/superfund/sites/query/queryhtm/nplfin.htm), the Soda Springs site was added to the NPL on October 4, 1989.

- Pickettville, FL: According to the EPA's Superfund website (http://www.epa.gov/superfund/sites/query/queryhtm/nplfin.htm), the Pickettville site was added to the NPL on September 8, 1993.

- Eston Chemical Plant, Torrance CA:   As set forth in Dr. Ram's report, the Eston

14

Chemical Plant site is located within the Del Amo Superfund Site. According the EPA's Superfund website (http://www.epa.gov/superfund/sites/query/queryhtm/nplfin.htm), the Del Amo Superfund Site was listed on September 5, 2002.

- Banta Hill, CO: As set forth in Dr. Ram's Report, the Banta Hill site is located within the Central City/Clear Creek Superfund Site. According the EPA's Superfund website (http://www.epa.gov/superfund/sites/query/queryhtm/nplfin.htm), the Central City/Clear Creek Superfund Site was listed on September 8, 1993.

- Brine Service Site, Corpus Christi TX: According the EPA's Superfund website (http://www.epa.gov/superfund/sites/query/queryhtm/nplfin.htm), the Brine Service Site was added to the NPL on September 5, 2002.

## Request to Admit No. 8

Admit that, since November 28, 2005, no funding has been authorized by the U.S. Environmental Protection Agency for the sites listed in Exhibit 8.

## Response

Plaintiff objects to Request No. 8 because Exhibit 8 does not purport to list sites for which EPA has not authorized funding since November 28, 2005 as the Request represents, but rather purports to list "Sites with No U.S. EPA Authorized Funding Before or Since 11/28/2005." Plaintiff also objects to Request No. 8 to the extent that the information Plaintiff knows or can readily obtain is insufficient to enable it to admit or deny Request No. 8 despite Plaintiff's reasonable inquiry. Plaintiff further objects to Request No. 8 as overly broad and unduly burdensome to the extent it seeks information concerning sites for which Plaintiff's environmental expert, Dr. Ram, has not assigned specific costs or sites that Dr. Ram has not used to assign specific costs to other sites. Accordingly, Plaintiff's response to Request No. 8 is limited to sites for which Dr. Ram has assigned specific costs or sites that Dr. Ram used to assign specific costs to other sites. Moreover, Exhibit 8 lists hundreds of sites. Plaintiff's response is based on available information and Plaintiff reserves its rights to supplement or amend its response. Plaintiff further objects to the phrase "funding has been authorized" as vague and

ambiguous. For purposes of this response, Plaintiff interprets "funding has been authorized" to refer to Superfund sites that have been placed on the NPL by the EPA or sites located within Superfund sites that have been placed on the NPL by the EPA. Subject to and without waiving these objections or its General Objections, Plaintiff responds as follows. Plaintiff admits that, with respect to those sites on Exhibit 8 for which Dr. Ram has assigned specific costs or that Dr. Ram used to assign specific costs to other sites, the EPA has not placed such sites on the NPL since November 28, 2005.

**Request to Admit No. 9**

Admit that Old Kerr-McGee has never held title to any of the sites listed in Exhibit 9.

**Response**

Plaintiff objects to Request No. 9 on the ground that it is vague and ambiguous because the term "Old Kerr-McGee" does not indicate whether Old Kerr-McGee's predecessors should be included within the scope of the response. For purposes of this response, Plaintiff has included Old Kerr-McGee's predecessors. Plaintiff also objects to Request No. 9 on the grounds that it is vague and ambiguous because certain of the sites listed in Exhibit 9 are offsite areas that were impacted by operations at sites that Old Kerr-McGee or its predecessors owned or operated. For purposes of this response, Plaintiff is only identifying sites for which Old Kerr-McGee or its predecessors held title and not offsite areas impacted by such sites. Plaintiff further objects to Request No. 9 as overly broad and unduly burdensome to the extent it seeks information concerning sites for which Plaintiff's environmental expert, Dr. Ram, has not assigned specific costs or that Dr. Ram has not used to assign specific costs to other sites. Accordingly, Plaintiff's response to Request No. 9 is limited to sites for which Dr. Ram has assigned specific costs or sites that Dr. Ram used to assign specific costs to other sites. Moreover, Exhibit 9 lists hundreds

of sites.  Plaintiff's response is based on available information and Plaintiff reserves its rights to supplement or amend its response.  Subject to and without waiving these objections and its General Objections, Plaintiff responds to Request No. 9 as follows.  Plaintiff admits that, with respect to sites on Exhibit 9 for which Dr. Ram has assigned specific costs or that Dr. Ram used to assign specific costs to other sites, neither Old Kerr-McGee nor any of its predecessors held title to such sites with the exception of:

- (W.C.) Rare Earths Facility
- Chicago Dock (LLII)
- Lindsey Light I
- Henderson Facility
- Hanover, MA
- Trona Plant, Trona, CA
- Ace Co-Generation Plant (Argus Plant), Trona, CA
- Westend Plant, Trona, CA
- WECCO Chemical Plant, Los Angeles, CA
- WECCO R&D Laboratory, Culver City, CA
- Searles Lake, Trona, CA
- Trona Railroad, Trona, CA
- Eston Chemical Plant, Vernon, CA
- Eston Chemical Plant, Torrance, CA
- Searles Valley, CA

Old Kerr-McGee held title in each of the sites listed above by virtue of its merger with American Potash and Chemical Company in 1967.

- Lukachukai, AZ

- Bowman, ND

- Juniper, CA

- Flat Top, SD

- Mansfield Canyon, AZ

- Banta Hill, CO

- Red Mountain, AZ

- Red Mountain, CO

- Pinal County, AZ

- Bristol Mine, NV

- Castleton Mine, NV

Old Kerr-McGee held title in the sites above by virtue of mining claims or leases to the above sites (or groups of sites) acquired by Old Kerr-McGee and/or its predecessors.

- Soda Springs, ID

- Churchrock, NM

- Cliffside-Section 36, NM

- Section 1 (13N-9W) mined through Cliffside, NM

- Section 10 (14N-10W), NM

- Section 17 (14N-9W), NM

- Section 18 (14N-9W) mined through Section 17, NM

- Section 19 (14N-9W), NM

- Section 20 (14N-9W) mined through Section 17, NM

- Section 22 (14N-10W) heap leach, NM

- Section 24 (14N-10W) heap leach, NM

- Section 26 (14N-9W) mined through Section 35 and Sandstone, NM

- Section 26 (14N-10W) mined through Section 24, NM

- Section 29 (14N-9W) mined through Section 32 shaft, NM

- Section 29 mined through Section 30 shaft, NM

- Section 29 mined through Section 33, NM

- Section 30 (14N-9W), NM

- Section 30W (14N-9W), NM

- Section 31 (14N-9W) mined through Section 32 shaft, NM

- Section 32 (14N-9W), NM

- Section 32 (15N-11W) (NE1/4, D. Begay allotment) mined through Moe #5 decline, NM

- Section 33 (15N-11W), Moe #5, West Ranch Mine, NM

- Section 33 (14N-9W) Branson Heap Leach, NM

- Section 35 (14N-9W Elizabeth Shaft), NM

Old Kerr-McGee held title in the sites above by virtue of its 1964 merger with Kermac Nuclear Fuels Corp., which owned or leased these sites.

- Calhoun, LA:  In 1967, Old Kerr-McGee acquired a one-half ownership interest in the Calhoun gas plant.  In 1973, Old Kerr-McGee acquired the remaining half interest and took over operations.

- Colorado School of Mines (Table Mountain/Amax R&D Center):  Kerr-McGee Oil Industries, predecessor to Kerr-McGee Corporation, had an ownership interest in this site beginning with its acquisition in 1957.

- Wynnewood, OK:  Kerr-McGee Oil Industries, Inc., predecessor to Kerr-McGee Corporation, owned and operated this site beginning with its acquisition in 1945.

## Request to Admit No. 10

Admit that Old Kerr-McGee has never operated the sites (as the term "operated" is defined under CERCLA) listed in Exhibit 10.

**Response**

Plaintiff objects to Request No. 10 on the ground that it is vague and ambiguous because the term "Old Kerr-McGee" does not indicate whether Old Kerr-McGee's predecessors should be included within the scope of the response. For purposes of this response, Plaintiff has included Old Kerr-McGee's predecessors. Plaintiff also objects to Request No. 10 on the grounds that it is vague and ambiguous because certain of the sites listed in Exhibit 10 are offsite areas that were impacted by operations at sites that Old Kerr-McGee or its predecessors owned or operated. For purposes of this response, Plaintiff is only identifying sites for which Old Kerr-McGee or its predecessors held title and not offsite areas impacted by such sites. Plaintiff further objects to Request No. 10 because the term "operated" is vague and ambiguous and is not defined by CERCLA. For purposes of its response, Plaintiff interprets "operated" as defined in *United States v. Bestfoods*, 524 U.S. 51, 66-67 (1998) ("[A]n operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations."). Plaintiff also objects to Request No. 10 as overly broad and unduly burdensome to the extent it seeks information concerning sites for which Plaintiff's environmental expert, Dr. Ram, has not assigned specific costs or that Dr. Ram has not used to assign specific costs to other sites. Accordingly, Plaintiff's response to Request No. 10 is limited to sites for which Dr. Ram has assigned specific costs or sites that Dr. Ram used to assign specific costs to other sites. Moreover, Exhibit 10 lists hundreds of sites. Plaintiff's response is based on available information and Plaintiff reserves its rights to supplement or amend its response. Subject to and without waiving these objections and its General Objections, Plaintiff responds as follows. With respect to sites on Exhibit 10 for which Dr. Ram has assigned specific costs or that Dr. Ram used

to assign specific costs to other sites, Plaintiff admits that Old Kerr-McGee or its predecessors have never operated such sites with the exception of:

- (W.C.) Rare Earths Facility
- Chicago Dock (LLII)
- Lindsey Light I
- Henderson Facility
- Hanover, MA
- Trona Plant, Trona, CA
- Ace Co-Generation Plant (Argus Plant), Trona, CA
- Westend Plant, Trona, CA
- WECCO Chemical Plant, Los Angeles, CA
- WECCO R&D Laboratory, Culver City, CA
- Searles Lake, Trona, CA
- Trona Railroad, Trona, CA
- Eston Chemical Plant, Vernon, CA
- Eston Chemical Plant, Torrance, CA
- Searles Valley, CA
- Massachusetts Military Reserve, MA

Old Kerr-McGee was an operator of each of the sites listed above by virtue of its merger with American Potash and Chemical Company in 1967.

- Bowman, ND
- Juniper, CA
- Flat Top, SD
- Mansfield Canyon, AZ

- Banta Hill, CO

- Red Mountain, AZ

- Red Mountain, CO

- Pinal County, AZ

- Bristol Mine, NV

- Castleton Mine, NV

Old Kerr-McGee operated the sites above pursuant to mining claims and leases to the above sites

(or groups of sites) acquired by Old Kerr-McGee and/or its predecessors.

- Soda Springs, ID

- Churchrock, NM

Old Kerr-McGee was an operator of the sites above by virtue of its 1964 merger with Kermac

Nuclear Fuels Corp., which owned and operated both sites.

- Calhoun, LA:  In 1967, Old Kerr-McGee acquired a one-half ownership interest in the Calhoun gas plant.  In 1973, Old Kerr-McGee acquired the remaining half interest and took over operations.

- Colorado School of Mines (Table Mountain/Amax R&D Center):  Kerr-McGee Oil Industries, Inc., predecessor to Kerr-McGee Corporation, was an operator of a research and development center at this site beginning with its acquisition in 1957.

- Wynnewood, OK:  Kerr-McGee Oil Industries, Inc., predecessor to Kerr-McGee Corporation, owned and operated this site beginning with its acquisition in 1945.

**Request to Admit No. 11**

Admit that, after the HS Resources Acquisition and before Project Focus, subsidiaries of

Kerr-McGee Operating Corporation included Kerr-McGee Oil & Gas Corporation, Nemo

Pipeline Company, White Shoal Corporation, Kerr-McGee Eire Exploration Ltd., Kerr-McGee

Oil & Gas Onshore LLC, and Sun Pennsylvania Limited Partnership.

**Response**

Subject to and without waiving its General Objections, Plaintiff responds as follows. Plaintiff admits that, after the HS Resources Acquisition and before Project Focus, Kerr-McGee Oil & Gas Corporation and Kerr-McGee Eire Exploration Ltd. were subsidiaries of Kerr-McGee Operating Corporation. Plaintiff further admits that, after the HS Resources Acquisition and before Project Focus, Kerr-McGee Operating Corporation had a 1% interest in Sun Pennsylvania Limited Partnership. Plaintiff further admits that after the HS Resources Acquisition and before Project Focus, Nemo Pipeline Company was a subsidiary of Kerr-McGee Oil & Gas Corporation and that Kerr-McGee Oil & Gas Corporation had a 64.5% interest in White Shoal Corporation. Plaintiff denies that after the HS Resources Acquisition and before Project Focus, Kerr-McGee Oil & Gas Onshore LLC was a subsidiary of Kerr-McGee Operating Corporation. Kerr-McGee Oil & Gas Onshore LLC was not formed until December 16, 2005.

**Request to Admit No. 12**

Admit that, after the HS Resources Acquisition and before Project Focus, subsidiaries of Kerr-McGee Rocky Mountain Corporation included Kerr-McGee Energy Services Corporation (f/k/a HS Energy Services, Inc.), an Oklahoma corporation, HS Partners, Inc., a California corporation, Resource Gathering Systems, Inc., a California corporation, SouthTech Exploration, L.L.C., a Delaware limited liability company, and Kerr-McGee Gathering LLC (f/k/a HS Gathering L.L.C.), a Colorado limited liability company.

**Response**

Subject to and without waiving its General Objections, Plaintiff responds as follows. Plaintiff admits that Kerr-McGee Energy Services Corporation (f/k/a HS Energy Services, Inc.), HS Partners, Inc., Resource Gathering Systems, Inc., SouthTech Exploration, L.L.C., and Kerr-

McGee Gathering LLC (f/k/a HS Gathering L.L.C.) were each subsidiaries of Kerr-McGee Rocky Mountain Corporation after the HS Resources Acquisition and before Project Focus.

**Request to Admit No. 13**

Admit that Kerr-McGee Oil & Gas Corporation, Nemo Pipeline Company, White Shoal Pipeline Corporation, Kerr-McGee Eire Exploration Ltd., Kerr-McGee Oil & Gas Onshore LLC, Sun Pennsylvania Limited Partnership, Kerr-McGee Energy Services Corporation (f/k/a HS Energy Services, Inc.), an Oklahoma corporation, HS Partners, Inc., a California corporation, Resource Gathering Systems, Inc., a California corporation, SouthTech Exploration, L.L.C., a Delaware limited liability company, and Kerr-McGee Gathering LLC (f/k/a HS Gathering L.L.C.), a Colorado limited liability company, were engaged in the E&P Business.

**Response**

Plaintiff objects to Request No. 13 because it does not specify the relevant time period. Subject to and without waiving this objection and its General Objections, Plaintiff responds as follows. Plaintiff admits that for at least some time Kerr-McGee Oil & Gas Corporation, White Shoal Pipeline Corporation, Kerr-McGee Eire Exploration Ltd., Kerr-McGee Oil & Gas Onshore LLC, Resource Gathering Systems, Inc., and SouthTech Exploration, L.L.C. were engaged in the E&P Business. Plaintiff lacks knowledge or information to admit or deny whether the following entities listed in this Request were at any time engaged in the E&P Business: Nemo Pipeline Company, Sun Pennsylvania Limited Partnership, Kerr-McGee Energy Services Corporation (f/k/a HS Energy Services, Inc.), HS Partners, Inc., and Kerr-McGee Gathering LLC (f/k/a HS Gathering L.L.C.), a Colorado limited liability company. With respect to these entities, Plaintiff has made reasonable inquiry concerning this Request and the information Plaintiff knows or can readily obtain is insufficient to admit or deny this Request.

**Request to Admit No. 14**

Admit that the written agreements listed in Exhibit 11 reflect transfers of equity in subsidiaries of Kerr-McGee Corporation.

**Response**

Subject to and without waiving its General Objections, Plaintiff admits Request No. 14.

**Request to Admit No. 15**

Admit that, on November 27, 2005, all subsidiaries of Kerr-McGee Oil & Gas Corporation were engaged in the E&P Business.

**Response**

Subject to its General Objections, Plaintiff responds as follows. Plaintiff admits that on November 27, 2005, subsidiaries of Kerr-McGee Oil & Gas Corporation were engaged in the E&P Business. Plaintiff lacks knowledge or information to admit or deny whether, on November 27, 2005, "all subsidiaries" of Kerr-McGee Oil & Gas Corporation were engaged in the E&P Business. Plaintiff has made reasonable inquiry concerning this Request and the information Plaintiff knows or can readily obtain is insufficient to admit or deny this Request in its entirety.

**Request to Admit No. 16**

Admit that, on November 27, 2005, neither Kerr-McGee Chemical Worldwide LLC nor any of its subsidiaries were engaged in the E&P Business.

**Response**

Subject to and without waiving its General Objections, Plaintiff admits that on November 27, 2005, neither Kerr-McGee Chemical Worldwide LLC nor any of its subsidiaries were engaged in the E&P Business. Kerr-McGee Chemical Worldwide LLC and its subsidiaries,

however, became solely responsible on November 28, 2005 for significant legacy environmental and retiree liabilities associated with discontinued operations related to the E&P Business, including offshore contract drilling operations, refining, and petroleum product manufacturing and marketing.

**Request to Admit No. 17**

Admit that, pursuant to Project Focus, TiO2 Assets were transferred to Kerr-McGee Chemical Worldwide LLC.

**Response**

Plaintiff objects to Request No. 17 to the extent the term "TiO2 Assets" is vague and ambiguous. Subject to and without waiving this objection and its General Objections, Plaintiff responds as follows. As set forth in greater detail in the June 24, 2011 Expert Report of Jack F. Williams, Plaintiff admits that as part of Project Focus, Kerr McGee-Chemical Worldwide LLC received certain TiO2 Assets from Kerr-McGee. The specific TiO2 Assets transferred from Kerr-McGee to Kerr-McGee Chemical Worldwide LLC as of December 31, 2002 or thereafter are provided in Exhibit 8 to the June 24, 2011 Expert Report of Jack F. Williams.

**Request to Admit No. 18**

Admit that the sites referred to as the "secret sites" in the Second Amended Complaint were disclosed in the virtual data room related to the IPO and/or efforts to sell parts of Kerr-McGee Corporation's business in 2005.

**Response**

Plaintiff objects to Request No. 18 because the term "secret sites" is not specifically defined. For purposes of this Response, Plaintiff interprets the term "secret sites" as those sites identified in Exhibit 18 to the Deposition of John Reichenberger, dated March 23, 2011.

Plaintiff also objects to Request No. 18 as vague and ambiguous because it does not specify what information concerning the secret sites was disclosed or to whom information concerning the secret sites was disclosed.    Request No. 18 is also vague and ambiguous because it does not define the "virtual data room."    Accordingly, for purposes of these responses, Plaintiff interprets "virtual data room" as the "KMG Chemical" virtual data room hosted by Merrill Corporation in connection with the IPO of Tronox Incorporated and the potential sale of Kerr-McGee Corporation's chemical business in 2005 (the "VDR").

Subject to and without waiving these objections and its General Objections, Plaintiff responds as follows.  Plaintiff admits that Kerr-McGee's November 10, 1998 response to an EPA Request for Information regarding the Manville, New Jersey site was included in the VDR, and that historical transactional documents attached to this response included a list of properties that included the secret sites.  Plaintiff also admits that the VDR included certain aerial maps and/or photographs of the secret sites, and that some of the aerial maps purported to state current ownership information.    Plaintiff further admits that the VDR included a number of environmental reports concerning the secret site in Indianapolis, Indiana that formerly was owned and operated by Indiana Creosoting Company.

Plaintiff, however, denies Request No. 18 to the extent it seeks an admission that Kerr-McGee disclosed its or its subsidiaries' potential liability in connection with the secret sites in the VDR.  For example, the VDR did not include Kerr-McGee memoranda concerning Kerr-McGee's 2002 investigation into potential liability in connection with the secret sites.  The secret sites were not disclosed in Tronox's Form S-1 registration statement.

**Request to Admit No. 19**

Admit that former Tronox General Counsel, Roger Addison, and current Tronox General

Counsel, Michael Foster, knew of the sites referred to as the "secret sites" in the Second Amended Complaint, prior to and at the time of the IPO.

**Response**

Plaintiff objects to Request No. 19 because the term "knew of" is vague and ambiguous. Plaintiff further objects to Request No. 19 to the extent it suggests that Roger Addison and Michael Foster were employees of or counsel to Tronox prior to the IPO of Tronox Incorporated, on November 28, 2005. In addition, for purposes of this Response, "secret sites" refers to those sites identified in Exhibit 18 to the Deposition of John Reichenberger, dated March 23, 2011.

Subject to and without waiving these objections or its General Objections, Plaintiff responds as follows. Plaintiff admits that Roger Addison and Michael Foster were included in the distribution of a July 29, 2005 e-mail that listed ten of the secret sites. Plaintiff further admits that Roger Addison testified that he "was told about" the secret sites some time in 2005. These sites were not disclosed in Tronox's Form S-1 registration statement.

**Request to Admit No. 20**

Admit that former Tronox General Counsel, Roger Addison, and current Tronox General Counsel, Michael Foster, knew of the sites referred to as the "undisclosed agricultural chemical sites" in the Second Amended Complaint, prior to and at the time of the IPO.

**Response**

Plaintiff objects to Request No. 20 because the term "undisclosed agricultural chemical sites" is not specifically defined. For purposes of this response, Plaintiff interprets the term "undisclosed agricultural chemical sites" as those sites identified in Exhibit 42 to the Deposition of Roger Addison, dated July 13-15, 2010. Plaintiff also objects to Request No. 20 because the term "knew of" is vague and ambiguous. Plaintiff further objects to Request No. 20 to the extent

it suggests that Roger Addison and Michael Foster were employees of or counsel to Tronox prior to the IPO.

Subject to and without waiving these objections or its General Objections, Plaintiff responds as follows. Plaintiff admits Request No. 20 to the extent that Roger Addison and Michael Foster were included in the distribution of an August 12, 2005 e-mail that attached disclosure schedules that included a list of approximately 260 former retail, warehouse, and agricultural blending sites in connection with the potential sale of Kerr-McGee's chemical business to Apollo Management. Plaintiff, however, denies Request No. 20 to the extent it suggests that Roger Addison and Michael Foster were fully aware of the potential liability of Kerr-McGee Corporation or its subsidiaries for the sites referred to as the "undisclosed agricultural chemical sites" in the Second Amended Complaint. As Roger Addison testified, Kerr-McGee knew that it had legacy agricultural chemical sites but did not investigate its potential liability in connection with those sites. These sites were not disclosed in Tronox's Form S-1 registration statement.

**Request to Admit No. 21**

Admit that Tronox's 2005 Adjusted EBITDA amount as reflected in Tronox's 2005 10-K exceeded the 2005 Adjusted EBITDA projection made in the November 2005 Lenders' Meeting Presentation (previously marked as Adams Ex. 37, Tab 4).

**Response**

Subject to and without waiving its General Objections, Plaintiff admits Request No. 21. The Adjusted EBITDA amount reflected in Tronox's Form 10-K for the year ended December 31, 2005 exceeded the 2005 Adjusted EBITDA forecast made in the November 2005 Lender's Meeting Presentation by $4 million.

**Request to Admit No. 22**

Admit that, on November 28, 2005, Tronox owned over 200 patents and other in-process research and development.

**Response**

Plaintiff objects to Request No. 22 because the phrases "owned" and "other in-process research and development" are vague and ambiguous.    Subject to and without waiving this objection and its General Objections, Plaintiffs responds as follows.  As set forth in Tronox's Amendment No. 6 to Form S-1, Plaintiff admits that, on November 28, 2005, Tronox held over 200 patents worldwide as well as other intellectual property.

**Request to Admit No. 23**

Admit that, on or after November 28, 2005, Kerr-McGee Corporation paid Restructuring Tax and Restructuring Adjustment incurred by Tronox.

**Response**

Subject to and without waiving its General Objections, Plaintiff admits Request No. 23. Pursuant to the terms of the Tax Sharing Agreement dated November 28, 2005, entered into between Kerr-McGee and Tronox, Kerr-McGee was liable for 100% of any Restructuring Tax and any Restructuring Adjustment as a result of Tronox's separation from Kerr-McGee, provided that Kerr-McGee's aggregate liability for such Restructuring Taxes and Restructuring Adjustment did not exceed $17 million.  Kerr-McGee reimbursed Tronox approximately $0.7 million for Restructuring Tax and Restructuring Adjustment incurred by Tronox, however, such taxes would not have been incurred if the IPO and subsequent Spin-off of Tronox from Kerr-McGee had not been completed.

**Request to Admit No. 24**

Admit that, on or after November 28, 2005, Tronox received insurance proceeds under Parent Insurance Policies.

**Response**

Plaintiff objects to Request No. 24 to the extent the phrase "insurance proceeds" is vague and ambiguous.    Subject to and without waiving this objection and its General Objections, Plaintiff admits that on or after November 28, 2005, Tronox received insurance reimbursements under certain Parent Insurance Policies.

**Request to Admit No. 25**

Admit that, on or after November 28, 2005, the Tronox Pension Trust included assets transferred from the Kerr-McGee Pension Trust.

**Response**

Subject to its General Objections, Plaintiff admits that pursuant to the terms of the Employee Benefits Agreement dated November 28, 2005 entered into between Kerr-McGee and Tronox, on or after November 28, 2005, certain assets from the Kerr-McGee Pension Trust were transferred to the Tronox Pension Trust in connection with the assumption by the Tronox Retirement Plan of liabilities relating to the Transferred Individuals as that term is defined in the Employee Benefits Agreement.    Notwithstanding any "assets" transferred from the Kerr-McGee Pension Trust to the Tronox Pension Trust, pursuant to the Employee Benefits Agreement, Tronox also assumed certain employee benefits liabilities including liabilities for employees of discontinued businesses who never worked for Tronox and were unrelated to the chemical business.    The amount of Tronox's unfunded and underfunded pension and Other Post Employment Benefits obligations as of November 28, 2005 was approximately $185.5 million.

**Request to Admit No. 26**

Admit that, on or after November 28, 2005, Tronox was not required to repay intercompany indebtedness owed to its former parent.

**Response**

Subject to and without waiving its General Objections, Plaintiff denies Request No. 26. There was no "intercompany indebtedness" owed by Tronox to Kerr-McGee on or after November 28, 2005. As set forth in greater detail in the June 24, 2011 Expert Report of Jack F. Williams, as of September 30, 2005, Tronox purportedly had cumulatively borrowed $274 million from Kerr-McGee but these fundings were treated by Kerr-McGee as equity contributions to Tronox as opposed to debt owed to Kerr-McGee by Tronox.

**Request to Admit No. 27**

Admit that Tronox obtained a $450 million credit facility in connection with the IPO.

**Response**

Subject to and without waiving its General Objections, Plaintiff admits that Tronox entered into a $450 million senior secured credit facility consisting of a $200 million six-year term loan facility and a $250 million five-year revolving credit facility in connection with the IPO.

**Request to Admit No. 28**

Admit that, between 2006-2008, Tronox made capital expenditures at its Uerdingen, Germany facility; Botlek, Netherlands facility; Hamilton, Mississippi, facility; Chandala, Australia facility; and Savannah, Georgia facility.

**Response**

Subject to and without waiving its General Objections, Plaintiff admits Request No. 28.

Tronox had capital expenditures at Uerdingen, Botlek, and Hamilton in 2006; Botlek and Kwinana in 2007; and Kwinana and Savannah in the first quarter of 2008.

**Request to Admit No. 29**

Admit that, after the Spinoff, Tronox evaluated an acquisition of the inorganic chemicals business of Lyondell Chemical Company.

**Response**

Subject to and without waiving its General Objections, Plaintiff admits Request No. 29.

**Request to Admit No. 30**

Admit that, after the Spinoff, Tronox approved an expansion at the Tiwest Joint Venture chloride-route $TiO_2$ pigment plant at Kwinana, Western Australia.

**Response**

Subject to and without waiving its General Objections, Plaintiff admits Request No. 30.

**Request to Admit No. 31**

Admit that Tronox prepaid principal on its long-term debt in the amount of $11.1 million in 2006 and $64.9 million in 2007, of which approximately $28 million were optional prepayments.

**Response**

Subject to and without waiving its General Objections, Plaintiff denies Request No. 31. The amounts stated in the Request are inaccurate. Tronox prepaid principal of $8.0 million on its long-term debt in 2006 (*see* Tronox 2006 10-K for the Year Ended December 31, 2006 at F-25) and $61.4 million in 2007 (*see* Tronox 2006 10-K for the Year Ended December 31, 2007 at F-25). The majority of these prepayments were mandatory under Tronox's credit agreement. Tronox's only optional prepayments were an $8.0 million prepayment of principal on its long-

term debt in December 2006 after receiving an $8.9 million arbitration award and a $20.0 million prepayment of principal on its long-term debt in October 2007 from the proceeds of a securitization of Tronox's U.S. accounts receivables.

## Request to Admit No. 32

Admit that Tronox declared dividends during each quarter of 2006 and 2007 and the first quarter of 2008.

## Response

Subject to and without waiving its General Objections, Plaintiff denies Request No. 32. Tronox did not declare a dividend for the second quarter of 2006 or the second quarter of 2007 based on Tronox's 2006 and 2007 10-Ks.

## Request to Admit No. 33

Admit that the price of Tronox's publicly traded Class A common shares on November 2, 2005 was $14.30, and on March 31, 2006 was $16.96.

## Response

Subject to and without waiving its General Objections, Plaintiff admits that Tronox's publicly traded Class A common shares were traded at $16.96 on March 31, 2006, but otherwise denies this Request. Tronox's Class A common shares were not publicly traded on November 2, 2005, and therefore did not have a public trading price.

## Request to Admit No. 34

Admit that the price of Tronox's publicly traded Class A common shares reached a high of $19.

## Response

Subject to and without waiving its General Objections, Plaintiff denies Request No. 34.

Although Tronox's publicly traded Class A common shares did trade for $19, Request No. 34 does not accurately reflect the trading history of Tronox's publicly traded Class A common shares.

**Request to Admit No. 35**

Admit that, as stated in its 10-Ks filed for the years ending December 31, 2006 and December 31, 2007, Tronox's reported cash environmental expenditures for the years 2006 and 2007 were less than it had projected.

**Response**

Plaintiff objects to Request No. 35 because the term "projected" is vague and ambiguous. Subject to and without waiving this objection and its General Objections, Plaintiff denies Request No. 35 because it does not specify the projections to which it refers. Thus, despite Plaintiff's reasonable inquiry concerning Request No. 35, the information Plaintiff knows or can readily obtain is insufficient to admit or deny the Request.

**Request to Admit No. 36**

Admit that for the years 2006 and 2007, Tronox reported net-cash environmental expenditures (net of any third party reimbursements) totaling no more than $52 million, as stated in Exhibit 99.2 to the 8-K filed July 30, 2008.

**Answer**

Subject to and without waiving its General Objections, Plaintiff admits that Exhibit 99.2 to Tronox's Form 8-K filed with the Securities & Exchange Commission on July 30, 2008 states that Tronox's "net pretax spend" for "environmental" totaled $52 million for the years 2006 and 2007, which was net of all reimbursements, including a one-time settlement payment of $20.5 million related to the Henderson, Nevada site.

**Request to Admit No. 37**

Admit that Tronox's reserves for environmental remediation decreased from $216.5 million as stated in the 10-Q filed for the period ending March 30, 2006 to $170.7 million as stated in the 10-Q filed for the period ending September 30, 2008.

**Answer**

Subject to and without waiving its General Objections, Plaintiff admits that the Form 10-Qs referenced in Request No. 37 contain the numbers stated in the Request, but denies Request No. 37 to the extent that it seeks an admission that the reserves for environmental remediation stated in Tronox's Form 10-Qs for the periods ending March 30, 2006 and September 30, 2008 were accurate. Tronox concluded that its financial statements for those periods should no longer be relied upon because it failed to establish adequate reserves as required by applicable accounting pronouncements, as stated in Tronox's May 5, 2009 Form 8-K publicly filed with the Securities & Exchange Commission.

**Request to Admit No. 38**

Admit that the Botlek Plant is owned and operated by Reorganized Tronox.

**Answer**

Subject to and without waiving its General Objections, Plaintiff admits Request No. 38.

Date:   August 5, 2011                          Respectfully submitted,


                                                 /s/ Jeffrey J. Zeiger
                                                David J. Zott, P.C.
                                                Jeffrey J. Zeiger
                                                KIRKLAND & ELLIS LLP
                                                300 North LaSalle
                                                Chicago, Illinois 60654
                                                Telephone:  (312) 862-2000
                                                Facsimile:  (312) 862-2200

                                                *Counsel for the Anadarko Litigation Trust*

## **VERIFICATION**

David H. DeCelles, being first duly sworn, deposes and says that he is an attorney with the law firm of Kirkland & Ellis LLP, counsel to the Anadarko Litigation Trust; that he verifies for and on behalf of the Anadarko Litigation Trust, to the best of his knowledge, information, and belief, the responses to Defendants' Fifth Set of Interrogatories as incorporated in the foregoing Plaintiff's Combined Responses and Objections to Defendants' First Request for Admissions and Fifth Set of Interrogatories; that he is duly authorized to do so; that not all matters stated therein are within his personal knowledge; and that he knows and/or has been informed and believes the information stated therein is true.

Subscribed and sworn to before me this 5th day of August, 2011.

NOTARY PUBLIC

"OFFICIAL SEAL"
Sheri J. Gorniak
Notary Public, State of Illinois
My Commission Expires June 18, 2014

My Commission Expires:

June 18, 2014

## CERTIFICATE OF SERVICE

I, David H. DeCelles, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that on this 5th day of August 2011, I caused a true and correct copy of the foregoing PLAINTIFF'S COMBINED RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST REQUEST FOR ADMISSIONS AND FIFTH SET OF INTERROGATORIES to be served upon the following:

**Via U.S. Mail and Electronic Mail**

Melanie Gray
Jason W. Billeck
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, Texas 77002

Thomas R. Lotterman
Duke K. McCall III
Bingham McCutchen LLP
2020 K Street NW
Washington, DC  20006

*Counsel for Defendants*

**Via Electronic Mail**

Robert William Yalen
Assistant United States Attorney
86 Chambers Street
New York, New York 10007

*Counsel for the United States of America*

/s/ David H. DeCelles

# EXHIBIT H

PREET BHARARA
United States Attorney for the
Southern District of New York
By:    ROBERT WILLIAM YALEN
       JOSEPH A. PANTOJA
Assistant United States Attorneys
United States Attorney's Office
86 Chambers Street
New York, New York  10007
Telephone (212) 637-2722
Facsimile (212) 637-2686
E-mail: robert.yalen@usdoj.gov

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE:

|  |  |
|---|---|
|        TRONOX INCORPORATED, et al., | Bankr. Case No. 09-10156 (ALG) |
|  | (Jointly Administered) |
|        Debtors. |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TRONOX INCORPORATED, TRONOX
WORLDWIDE LLC f/k/a Kerr-McGee Chemical
Worldwide LLC, and TRONOX LLC f/k/a Kerr-
McGee Chemical LLC,

       Plaintiffs,

|  |  |
|---|---|
|     - against - | Adversary Proceeding |
|  | No. 09-01198 (ALG) |

ANADARKO PETROLEUM CORPORATION
and KERR-MCGEE CORPORATION,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE UNITED STATES OF AMERICA,

|  |  |
|---|---|
|        Plaintiff-Intervenor, | THE UNITED STATES OF |
|  | AMERICA'S RESPONSES AND |
|     - against - | OBJECTIONS TO DEFENDANTS' |
|  | FIRST REQUEST FOR ADMISSIONS |
|  | TO PLAINTIFF-INTERVENOR |

TRONOX, INC., TRONOX WORLDWIDE LLC,
TRONOX LLC, KERR-MCGEE
CORPORATION, and ANADARKO
PETROLEUM CORPORATION,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Pursuant to Rule 36 of the Federal Rules of Civil Procedure ("Federal Rules"), as made applicable to this adversary proceeding pursuant to Rule 7036 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), Plaintiff-Intervenor the United States of America (the "United States"), by and through its attorney, Preet Bharara, United States Attorney for the Southern District of New York, provides these responses ("Responses") to Defendants' First Request for Admission, dated May 24, 2011 (the "Requests"), as follows:

<u>**GENERAL OBJECTIONS AND RESERVATIONS**</u>

A.    The United States objects to the Requests, including the definitions and instructions set forth in the Requests, to the extent they seek information protected from discovery under the attorney-client privilege, work-product doctrine, deliberative process privilege, law enforcement privilege, confidential business information privilege, confidential report privilege, the privilege for information given to the United States on a pledge of confidentiality, and/or the common interest privilege or joint prosecution privilege, or that is otherwise privileged or protected from disclosure.

B.    The United States objects to the Requests, including the definitions and instructions set forth in the Requests, to the extent that they purport to require the disclosure of information beyond the scope required by Rules 26 and 36 of the Federal Rules, including but not limited to information not relevant to the subject matter involved in the pending action or not reasonably calculated to lead to the discovery of admissible evidence.

C.    The United States objects to the Requests, including the definitions and instructions set forth in the Requests, as beyond the scope of Rule 36 of the Federal Rules to the extent that they purport to require the Responses to be made under oath.

D.      The United States objects to the Requests, including the definitions and
instructions set forth in the Requests, to the extent that they purport to require disclosure for
environmental sites other than those for which Roux Associates has assigned specific costs in its
expert report in this adversary proceeding.  To such extent, the Requests are overbroad and
unduly burdensome.  The United States will answer Requests 3 to 37 solely with respect to sites
as to which Roux Associates has assigned specific costs.

E.       The United States objects to the Requests, including  the definitions and
instructions set forth in the Requests, to the extent they call for the production of information not
in the possession, custody or control of the Environmental Protection Agency ("EPA"), the
Nuclear Regulatory Commission ("NRC"), the United States Forest Service ("Forest Service"),
the United States Fish and Wildlife Service ("Fish and Wildlife Service"), the United States
Bureau of Land Management ("BLM"), the National Oceanic and Atmospheric Administration
("NOAA"), or the United States Department of Defense, including the United States Army, the
United States Navy, and the United States Air Force ("DOD"), on the grounds that such
production is overbroad and unduly burdensome.

F.      The United States objects to the Requests, including the definitions and
instructions set forth in the Requests, to the extent that they are overly broad, unduly
burdensome, vague, ambiguous, not relevant to the claim or defense of any party, and not
reasonably calculated to lead to the discovery of relevant information or admissible evidence.

G.      The United States objects to the Requests, including the definitions and
instructions set forth in the Requests, to the extent that they seek information that has been
obtained by the United States in confidential settlement discussions that have not yet been
completed.

3

H.     The Requests are being answered subject to the limitation that the investigation and review by the United States of relevant information in this adversary proceeding are ongoing.  The United States further states that its answers to the Requests are based on the best available information based on a reasonable search of records and reasonable inquiries.  The United States expressly reserves the right to supplement, clarify, revise or correct any or all of the responses herein at any time.  By making the following responses to the Requests, the United States does not waive, and hereby expressly reserves, the right to assert any and all objections as to the admissibility of such responses into evidence at the trial of this adversary proceeding, or in any other proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, Rule 408 of the Federal Rules of Evidence, and privilege.  Furthermore, the United States provides the responses herein without in any manner implying or admitting that any Request or any response thereto is relevant or material to the subject matter of this adversary proceeding.

I.     The United States reserves the right to object to the use of its responses to the Requests in any proceeding other than the above-captioned adversary proceeding.

<u>**SPECIFIC RESPONSES AND OBJECTIONS**</u>

Subject to the foregoing general objections and reservations, the United States responds to the Requests as follows:

<u>**Request No. 1**</u>

**Admit that Plaintiff-Intervenor identified the sites listed in Exhibit 1 pursuant to paragraph 8(a) of the Court's Case Management Orders and/or in its Responses and Objections to Anadarko Petroleum Corporation's and Kerr-McGee Corporation's First Set of Interrogatories dated August 26, 2010, but omitted these sites from its subsequent disclosures pursuant to paragraph 8(c) of the Court's Case Management Orders and/or in its First Amended Responses and Objections to Anadarko Petroleum Corporation's and Kerr-McGee Corporation's First Set of Interrogatories dated April 13, 2011.**

<u>**Response to Request No. 1**</u>

The United States objects to the Request as vague and ambiguous.  The United States further objects that, to the extent this request purports to request admissions regarding environmental sites other than those for which Roux Associates has assigned specific costs in its expert report in this adversary proceeding, the request is overbroad and unduly burdensome.

The United States additionally objects that its disclosures pursuant to the Case Management Order and the First Set of Interrogatories speak for themselves.  Nothing in this Response to Request No. 1 modifies or alters the information contained in those prior disclosures.

Subject to the foregoing objections, general objections, and reservations, the United States responds to the Request as follows: The United States admits that the specific site names listed in Exhibit 1 were disclosed to defendants by the "identified sources" identified on Exhibit 1 but were omitted from subsequent disclosures, except for Panamint Valley Quarry and the Laura Lode Mining Patent Claims; however, the United States denies the Request to the extent it

5

asks for an admission that each of these sites no longer is a site appearing on the subsequent

disclosures of the United States.  Many of the specific site names listed on Exhibit 1 were

removed from subsequent disclosures not because the site itself was removed from those

subsequent disclosures but rather because it was determined that there were multiple variations

in a site's name, multiple names for a single site and/or a need for corrections to a site name, and

accordingly the sites associated with such site names continue to appear in the subsequent

disclosures of the United States.  As to such sites, the subsequent disclosures simply clarified

terminology.  The United States refers the defendants to the subsequent disclosures themselves

for a list of the sites contained therein.

### Request to Admit No. 2

**Admit that the sites listed in Exhibit 2 were allocated cash funding and/or other
consideration under the Consent Decree and Environmental Settlement Agreement,
but were omitted from Plaintiff-Intervenor's subsequent disclosures pursuant to
paragraph 8(c) of the Court's Case Management Orders and/or from the
Plaintiff-Intervenor's First Amended Responses and Objections to Anadarko
Petroleum Corporation's and Kerr-McGee Corporation's First Set of
Interrogatories dated April 13, 2011.**

### Response to Request No. 2

The United States objects to the Request as vague and ambiguous.  The United States

further objects to the undefined phrase "were allocated cash funding and/or other consideration"

as vague and ambiguous.  The United States also objects that, to the extent this Request purports

to request admissions regarding environmental sites other than those for which Roux Associates

has assigned specific costs in its expert report in this adversary proceeding, the request is

overbroad and unduly burdensome.

The United States additionally objects that the contents of the Environmental Settlement

Agreement, and the disclosures of the United States pursuant to the Case Management Order and

6

the First Set of Interrogatories speak for themselves.  Nothing in this Response to Request No. 2 modifies or alters the information contained in those prior disclosures.

Subject to the foregoing objections, general objections, and reservations, the United States responds to the Request, solely as to sites on Exhibit 2 for which Roux Associates has assigned specific costs in its expert report as follows:  The United States admits that each of the specific site names listed in Exhibit 2 is listed in the Attachments to the Environmental Settlement Agreement except for "Panamint Valley Quarry," "Ambrosia Lake U Mines, WY," and "New Perryman - Fee 128, Perryment SEC 1-17N-12E (35ac)," although specific site names are listed for "Panamint Valley," in "Inyo, CA," and "Ambrosia Lake U Mines" in "Ambrosia Lake, NM," and "New Perryman" in "New Perryman, OK."  The United States incorporates by reference the Environmental Settlement Agreement to explain the treatment of each of the sites on Exhibit 2 pursuant to the Environmental Settlement Agreement.

The United States admits that the specific site names listed in Exhibit 2 were not included in subsequent disclosures by the United States, except for Panamint Valley Quarry and the Laura Lode Mining Patent Claims; however, the United States denies the Request to the extent it asks for an admission that each of these sites no longer is a site appearing on the subsequent disclosures of the United States.  Many of the specific site names listed on Exhibit 2 were removed from subsequent disclosures not because the site itself was removed from those subsequent disclosures but rather because it was determined that there were multiple variations in a site's name, multiple names for a single site and/or a need for corrections to a site name, and accordingly the sites associated with such site names continue to appear in the subsequent disclosures of the United States.  As to such sites, the subsequent disclosures simply clarified

terminology.  The United States refers defendants to the subsequent disclosures themselves for a

list of the sites contained therein.

**Request No. 3**

**Admit that, as of November 28, 2005, neither Kerr-McGee Corporation and/or its
subsidiaries and affiliates, nor Tronox and/or its subsidiaries and affiliates, had
received any written notice from the U.S. Environmental Protection Agency,
pursuant to CERCLA (including, but not limited to, any general notice letters or
special notice letters under Section 107 of CERCLA) for the sites listed in Exhibit 3.**

**Response to Request No. 3**

The United States objects to the Request as vague and ambiguous and unduly

burdensome.

The United States further objects that, to the extent this request purports to request

admissions regarding environmental sites other than those for which Roux Associates has

assigned specific costs in its expert report in this adversary proceeding, the request is overbroad

and unduly burdensome.  The United States will answer this Request only with respect to sites

on Exhibit 3 for which Roux Associates has assigned such specific costs.

The United States additionally objects to the request to the extent it purports to request

information on "any written notice" pursuant to CERCLA "including, but not limited to, any

general notice letters or special notices letters under Section 107 of CERCLA."  This request is

vague, ambiguous, and unduly burdensome, as there are many forms of formal or informal notice

that EPA may provide to a private party concerning matters at a site, ranging from (and

including but not limited to) informal correspondence by EPA staff members to formal

documents such as Unilateral Administrative Orders.  For the purpose of responding to this

request, the United States will construe this undefined request as applying only to the specific

8

types of written notice identified in the request:  to general notice letters and special notice letters.[*]

Additionally, the United States objects to this request to the extent that it purports to require the United States to respond with respect to the date that any entity "received" a notice, as the date of receipt is not typically known by the United States and would be unduly burdensome, if not impossible, for the United States to learn.  Accordingly, the United States will construe this Request to ask about the date that any such notice was *sent* by EPA.

The United States further states that its answer to this Request is based on a reasonable search of records and consultation with agency personnel.  Because of the breadth of the Request, both in terms of number of sites and in terms of time-frame (i.e., from the enactment of CERCLA in 1980 through 2005), the answer of the United States to this Request is necessarily limited to the best available information based on a reasonable search.

Subject to the foregoing objections, general objections, and reservations, the United States responds as follows:  The United States admits that as of November 28, 2005, it had not sent special or general notices to Kerr-McGee Corporation and/or its subsidiaries and affiliates, or Tronox and/or its subsidiaries and affiliates, for sites on Exhibit 3 as to which Roux Associates has assigned specific costs in its expert report, except that on or about April 18, 1996, EPA sent Kerr-McGee Chemical Corporation a general notice letter for the sites known as the Lindsay Light II sites, which include site numbers 331 and 333 through 347 on Exhibit 3.

---

[*]Additionally, the United States objects that contrary to the statements in the request, "special notice letters" are not issued pursuant Section 107 of CERCLA, but rather pursuant Section 122 of CERCLA, and "general notice letters" are not issued pursuant to a specific section of CERCLA, but rather pursuant to general agency practice.

The response to this Request is based on the best information reasonably available. The investigation and review by the United States into the sites at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request No. 4**

**Admit that, since November 28, 2005, neither Kerr-McGee Corporation and/or its subsidiaries and affiliates, nor Tronox and/or its subsidiaries and affiliates, have received any written notice from the U.S. Environmental Protection Agency, pursuant to CERCLA (including, but not limited to, any general notice letters or special notice letters under Section 107 of CERCLA) for the sites listed in Exhibit 4.**

**Response to Request No. 4**

The United States objects to the Request as vague and ambiguous and unduly burdensome.

The United States further objects that, to the extent this request purports to request admissions regarding environmental sites other than those for which Roux Associates has assigned specific costs in its expert report in this adversary proceeding, the request is overbroad and unduly burdensome. The United States will answer this Request only with respect to sites on Exhibit 4 for which Roux Associates has assigned such specific costs.

The United States additionally objects to the request to the extent it purports to request information on "any written notice" pursuant to CERCLA "including, but not limited to, any general notice letters or special notices letters under Section 107 of CERCLA." This request is vague, ambiguous, and unduly burdensome, as there are many forms of formal or informal notice that EPA may provide to a private party concerning matters at a site, ranging from (and including but not limited to) informal correspondence by EPA staff members to formal documents such as Unilateral Administrative Orders. For the purpose of responding to this

10

request, the United States will construe this undefined request as applying only to the specific

types of written notice identified in the request:  to general notice letters and special notice

letters.[**]

Additionally, the United States objects to this request to the extent that it purports to

require the United States to respond with respect to the date that any entity "received" a notice,

as the date of receipt is not typically known by the United States and would be unduly

burdensome, if not impossible, for the United States to learn.  Accordingly, the United States

will construe this Request to ask about the date that any such notice was *sent* by EPA.

The United States further states that its answer to this Request is based on a reasonable

search of records and consultation with relevant personnel.  Because of the breadth of the

Request, both in terms of number of sites and in terms of time-frame (i.e., any time since

November 28, 2005), the answer of the United States to this Request is necessarily limited to the

best available information based on a reasonable search because of the breadth of the Request.

Subject to the foregoing objections, general objections, and reservations, the United

States responds as follows:  The United States admits that subsequent to November 28, 2005, it

has not sent special or general notice letters to Kerr-McGee Corporation and/or its subsidiaries

and affiliates, or Tronox and/or its subsidiaries and affiliates, for sites on Exhibit 4 as to which

Roux Associates has assigned specific costs in its expert report.

The response to this Request is based on the best information reasonably available.  The

investigation and review by the United States into the sites at issue in this case is ongoing, and

---

[**]As with the prior Request, the United States objects to the characterization of special
notice letters and general notice letters as having been issuing pursuant to Section 107 of
CERCLA.

the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request No. 5**

**Admit that, as of November 28, 2005, Plaintiff-Intervenor had not incurred any response costs, as that term is defined under CERCLA, for the sites listed in Exhibit 5.**

**Response to Request No. 5**

The United States objects to the Request as vague and ambiguous and unduly burdensome.

The United States further objects that, to the extent this request purports to request admissions regarding environmental sites other than those for which Roux Associates has assigned specific costs in its expert report in this adversary proceeding, the request is overbroad and unduly burdensome. The United States will answer this Request only with respect to sites on Exhibit 5 for which Roux Associates has assigned such specific costs.

The United States further states that its answer to this Request is based on a reasonable search of its records and consultation with relevant personnel. Because of the breadth of the Request, both in terms of number of sites and in terms of time-frame (i.e., any time between the enactment of CERCLA in 1980 and November 28, 2005), the answer of the United States to this Request is necessarily limited to the best available information based on a reasonable search.

The United States further states that the Request is unreasonably burdensome to the extent that it purports to require the United States to determine whether any costs incurred, but not charged to the site in question, might also qualify as response costs under CERCLA under the circumstances, including but not limited to costs incurred by EPA's regional RCRA branches, management costs that, for reasons of administrative convenience, have not been

12

allocated to specific sites, or preliminary assessment or other costs not allocated to a specific site. Accordingly, for the purpose of this answer, the United States construes the request to cover only response costs collectible under CERCLA that have been tracked by EPA or other federal agencies for cost recovery with respect to one of the sites in question.

The United States further states that its answer to this Request is based on a reasonable search of records and consultation with relevant personnel. Because of the breadth of the Request in terms of number of sites and in terms of time-frame, the answer of the United States to this Request is necessarily limited to the best available information based on a reasonable search.

Subject to the foregoing objections, general objections, and reservations, the United States responds to the Request as follows: The United States admits that as of November 28, 2005, it had not incurred response costs, collectible under CERCLA, that were tracked by EPA or other federal agencies for cost recovery for the sites on Exhibit 5 for which Roux Associates has assigned specific costs in its expert report, except that:

- The United States has incurred response costs at mines in and near the Navajo Nation, including mines in the Lukachukai and Ambrosia Lake areas. Some of the costs were incurred prior to November 28, 2005, as indicated in those prior disclosures.

- The United States incurred response costs prior to November 28, 2005, at various of the Lindsay Light Removal Sites listed on Exhibit 5, including but not limited to site numbers 333-349 and 351 on Exhibit 5.

- The United States incurred response costs at the Colorado School of Mines Research Institute site in connection with a cleanup completed in 1997.

- The United States incurred response costs at the Soda Springs site prior to November 28, 2005.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States into the sites at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request No. 6**

**Admit that, as of November 28, 2005, no funding had been authorized by the U.S. Environmental Protection Agency for the sites listed in Exhibit 6.**

**Response to Request No. 6**

The United States objects to the Request as vague and ambiguous and unduly burdensome.

The United States further objects that, to the extent this request purports to request admissions regarding environmental sites other than those for which Roux Associates has assigned specific costs in its expert report in this adversary proceeding, the request is overbroad and unduly burdensome.

The United States is unable to answer this Request because the phrase "funding has been authorized by the U.S. Environmental Protection Agency" is undefined, vague and ambiguous. EPA's ability to expend funds at given sites is governed by various statutes, regulations, and administrative policies and procedures.  As a result, this Request, to the extent that it is answerable at all, cannot be answered without undue burden.

**Request to Admit No. 7**

**Admit that, since November 28, 2005, no funding has been authorized by the U.S. Environmental Protection Agency for the sites listed in Exhibit 7.**

**Response to Request No. 7**

The United States objects to the Request as vague and ambiguous and unduly burdensome.

The United States further objects that, to the extent this request purports to request admissions regarding environmental sites other than those for which Roux Associates has assigned specific costs in its expert report in this adversary proceeding, the request is overbroad and unduly burdensome.

The United States is unable to answer this Request because the phrase "funding has been authorized by the U.S. Environmental Protection Agency" is undefined, vague and ambiguous. EPA's ability to expend funds at given sites is governed by various statutes, regulations, and administrative policies and procedures.  As a result, this Request, to the extent that it is answerable at all, cannot be answered without undue burden.

**Request to Admit No. 8**

**Admit that Old Kerr-McGee has never held title to any of the sites listed in Exhibit 8.**

**Response to Request No. 8**

The United States objects to the Request as vague and ambiguous and unduly burdensome.

The United States further objects that, to the extent this request purports to request admissions regarding environmental sites other than those for which Roux Associates has assigned specific costs in its expert report in this adversary proceeding, the request is overbroad

15

and unduly burdensome.  The United States will answer this Request only with respect to sites on Exhibit 8 for which Roux Associates has assigned such specific costs.

Subject to the foregoing objections, general objections, and reservations, the United States responds to the Request, solely as to sites on Exhibit 8 for which Roux Associates has assigned specific costs in its expert report as follows:  The United States incorporates by reference the August 5, 2011 response of the Anadarko Litigation Trust to Request for Admission No. 9 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

### Request to Admit No. 9

**Admit that Old Kerr-McGee has never operated the sites (as the term "operated" is defined under CERCLA) listed in Exhibit 9.**

### Response to Request No. 9

The United States objects to the Request as vague and ambiguous and unduly burdensome.

The United States further objects that, to the extent this request purports to request admissions regarding environmental sites other than those for which Roux Associates has assigned specific costs in its expert report in this adversary proceeding, the request is overbroad and unduly burdensome.  The United States will answer this Request only with respect to sites on Exhibit 9 for which Roux Associates has assigned such specific costs.

16

Subject to the foregoing objections, general objections, and reservations, the United States responds to the Request, solely as to sites on Exhibit 9 for which Roux Associates has assigned specific costs in its expert report as follows:  The United States incorporates by reference the August 5, 2011 response of the Anadarko Litigation Trust to Request for Admission No. 10 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 10**

**Admit that, after the HS Resources Acquisition and before Project Focus, subsidiaries of Kerr-McGee Operating Corporation included Kerr-McGee Oil & Gas Corporation, Nemo Pipeline Company, White Shoal Pipeline Corporation, Kerr-McGee Eire Exploration Ltd., Kerr-McGee Oil & Gas Onshore LLC, and Sun Pennsylvania Limited Partnership.**

**Response to Request No. 10**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 11 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 11**

**Admit that, after the HS Resources Acquisition and before Project Focus, subsidiaries of Kerr-McGee Rocky Mountain Corporation included Kerr-McGee Energy Services Corporation (f/k/a HS Energy Services, Inc.), an Oklahoma corporation, HS Partners, SouthTech Exploration, L.L.C., a Delaware limited liability company, and Kerr-McGee Gathering LLC (f/k/a HS Gathering L.L.C.), a Colorado limited liability company.**

**Response to Request No. 11**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows: The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 12 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available. The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 12**

**Admit that Kerr-McGee Oil & Gas Corporation, Nemo Pipeline Company, White Shoal Pipeline Corporation, Kerr-McGee Eire Exploration Ltd., Kerr-McGee Oil & Gas Onshore LLC, Sun Pennsylvania Limited Partnership, Kerr-McGee Energy Services Corporation (f/k/a HS Energy Services, Inc.), an Oklahoma corporation, HS Partners, Inc., a California corporation, Resource Gathering Systems, Inc., a California corporation, SouthTech Exploration, L.L.C., a Delaware limited liability company, and Kerr-McGee Gathering LLC (f/k/a HS Gathering L.L.C.), a Colorado limited liability company, were engaged in the E&P Business.**

**Response to Request No. 12**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows: The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 13 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The

investigation and review by the United States of the matters at issue in this case is ongoing, and

the United States expressly reserves its right to supplement, clarify, revise, or correct this

response at any time.

### Request to Admit No. 13

**Admit that the written agreements listed in Exhibit 10 reflect transfers of equity in subsidiaries of Kerr-McGee Corporation.**

### Response to Request No. 13

Subject to the foregoing general objections and reservations, the United States responds

to the Request as follows:  The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 14 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The

investigation and review by the United States of the matters at issue in this case is ongoing, and

the United States expressly reserves its right to supplement, clarify, revise, or correct this

response at any time.

### Request to Admit No. 14

**Admit that, on November 27, 2005, all subsidiaries of Kerr-McGee Oil & Gas Corporation were engaged in the E&P Business.**

### Response to Request No. 14

Subject to the foregoing general objections and reservations, the United States responds

to the Request as follows:  The United States incorporates by reference the August 5, 2011

19

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 15 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The

investigation and review by the United States of the matters at issue in this case is ongoing, and

the United States expressly reserves its right to supplement, clarify, revise, or correct this

response at any time.

**Request to Admit No. 15**

**Admit that, on November 27, 2005, neither Kerr-McGee Chemical Worldwide LLC
nor any of its subsidiaries were engaged in the E&P Business.**

**Response to Request No. 15**

Subject to the foregoing general objections and reservations, the United States responds

to the Request as follows:  The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 16 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The

investigation and review by the United States of the matters at issue in this case is ongoing, and

the United States expressly reserves its right to supplement, clarify, revise, or correct this

response at any time.

20

### Request to Admit No. 16

**Admit that, pursuant to Project Focus, TiO2 Assets were transferred to Kerr-McGee Chemical Worldwide LLC.**

### Response to Request No. 16

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 17 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

### Request to Admit No. 17

**Admit that the sites referred to as the "secret sites" in the Second Amended Complaint were disclosed in the virtual data room related to the IPO and/or efforts to sell parts of Kerr-McGee Corporation's business in 2005.**

### Response to Request No. 17

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 18 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and

the United States expressly reserves its right to supplement, clarify, revise, or correct this

response at any time.

### Request to Admit No. 18

**Admit that former Tronox General Counsel, Roger Addison, and current Tronox General Counsel, Michael Foster, knew of the sites referred to as the "secret sites" in the Second Amended Complaint, prior to and at the time of the IPO.**

### Response to Request No. 18

Subject to the foregoing general objections and reservations, the United States responds

to the Request as follows:  The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 19 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The

investigation and review by the United States of the matters at issue in this case is ongoing, and

the United States expressly reserves its right to supplement, clarify, revise, or correct this

response at any time.

### Request to Admit No. 19

**Admit that former Tronox General Counsel, Roger Addison, and current Tronox General Counsel, Michael Foster, knew of the sites referred to as the "undisclosed agricultural chemical sites" in the Second Amended Complaint, prior to and at the time of the IPO.**

### Response to Request No. 19

Subject to the foregoing general objections and reservations, the United States responds

to the Request as follows:  The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 20 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 20**

**Admit that Tronox's 2005 Adjusted EBITDA amount as reflected in Tronox's 2005 10-K exceeded the 2005 Adjusted EBITDA projection made in the November 2005 Lenders' Meeting Presentation (previously marked as Adams Ex. 37, Tab 4).**

**Response to Request No. 20**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 21 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 21**

**Admit that, on November 28, 2005, Tronox owned over 200 patents and other in-process research and development.**

**Response to Request No. 21**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 22 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The

investigation and review by the United States of the matters at issue in this case is ongoing, and

the United States expressly reserves its right to supplement, clarify, revise, or correct this

response at any time.

**Request to Admit No. 22**

**Admit that, on or after November 28, 2005, Kerr-McGee Corporation paid
Restructuring Tax and Restructuring Adjustment incurred by Tronox.**

**Response to Request No. 22**

Subject to the foregoing general objections and reservations, the United States responds

to the Request as follows:  The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 23 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The

investigation and review by the United States of the matters at issue in this case is ongoing, and

the United States expressly reserves its right to supplement, clarify, revise, or correct this

response at any time.

24

**Request to Admit No. 23**

**Admit that, on or after November 28, 2005, Tronox received insurance proceeds under Parent Insurance Policies.**

**Response to Request No. 23**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 24 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 24**

**Admit that, on or after November 28, 2005, the Tronox Pension Trust included assets transferred from the Kerr-McGee Pension Trust.**

**Response to Request No. 24**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 25 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

### Request to Admit No. 25

**Admit that, on or after November 28, 2005, Tronox was not required to repay intercompany indebtedness owed to its former parent.**

### Response to Request No. 25

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 26 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

### Request to Admit No. 26

**Admit that Tronox obtained a $450 million credit facility in connection with the IPO.**

### Response to Request No. 26

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 27 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 27**

**Admit that, between 2006-2008, Tronox made capital expenditures at its Uerdingen, Germany facility; Botlek, Netherlands facility; Hamilton, Mississippi, facility; Chandala, Australia facility; and Savannah, Georgia facility.**

**Response to Request No. 27**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 28 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 28**

**Admit that, after the Spinoff, Tronox evaluated an acquisition of the inorganic chemicals business of Lyondell Chemical Company.**

**Response to Request No. 28**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 29 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and

the United States expressly reserves its right to supplement, clarify, revise, or correct this

response at any time.

**Request to Admit No. 29**

**Admit that, after the Spinoff, Tronox approved an expansion at the Tiwest Joint
Venture chloride-route TiO2 pigment plant at Kwinana, Western Australia.**

**Response to Request No. 29**

Subject to the foregoing general objections and reservations, the United States responds

to the Request as follows:  The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 30 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The

response to this Request is based on the best information reasonably available.  The investigation

and review by the United States of the matters at issue in this case is ongoing, and the United

States expressly reserves its right to supplement, clarify, revise, or correct this response at any

time.

**Request to Admit No. 30**

**Admit that Tronox prepaid principal on its long-term debt in the amount of $11.1
million in 2006 and $64.9 million in 2007, of which approximately $28 million were
optional prepayments.**

**Response to Request No. 30**

Subject to the foregoing general objections and reservations, the United States responds

to the Request as follows:  The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 31 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 31**

**Admit that Tronox declared dividends during each quarter of 2006 and 2007 and the first quarter of 2008.**

**Response to Request No. 31**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 32 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 32**

**Admit that the price of Tronox's publicly traded Class A common shares on November 2, 2005 was $14.30, and on March 31, 2006 was $16.96.**

**Response to Request No. 32**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 33 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 33**

**Admit that the price of Tronox's publicly traded Class A common shares reached a high of $19.**

**Response to Request No. 33**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 34 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 34**

**Admit that, as stated in its 10-Ks filed for the years ending December 31, 2006 and December 31, 2007, Tronox's reported cash environmental expenditures for the years 2006 and 2007 were less than it had projected.**

**Response to Request No. 34**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows:  The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 35 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available. The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 35**

**Admit that for the years 2006 and 2007, Tronox reported net-cash environmental expenditures (net of any third party reimbursements) totaling no more than $52 million, as stated in Exhibit 99.2 to the 8-K filed July 30, 2008.**

**Response to Request No. 35**

Subject to the foregoing general objections and reservations, the United States responds to the Request as follows: The United States incorporates by reference the August 5, 2011 response, including any objections, of the Anadarko Litigation Trust to Request for Admission No. 36 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available. The investigation and review by the United States of the matters at issue in this case is ongoing, and the United States expressly reserves its right to supplement, clarify, revise, or correct this response at any time.

**Request to Admit No. 36**

**Admit that Tronox's reserves for environmental remediation decreased from $216.5 million as stated in the 10-Q filed for the period ending March 30, 2006 to $170.7 million as stated in the 10-Q filed for the period ending September 30, 2008.**

**Response to Request No. 36**

Subject to the foregoing general objections and reservations, the United States responds

to the Request as follows:  The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 37 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The

investigation and review by the United States of the matters at issue in this case is ongoing, and

the United States expressly reserves its right to supplement, clarify, revise, or correct this

response at any time.

**Request to Admit No. 37**

**Admit that the Botlek Plant is owned and operated by Reorganized Tronox.**

**Response to Request No. 37**

Subject to the foregoing general objections and reservations, the United States responds

to the Request as follows:  The United States incorporates by reference the August 5, 2011

response, including any objections, of the Anadarko Litigation Trust to Request for Admission

No. 38 of the First Requests for Admissions to Plaintiffs, dated May 24, 2011.

The response to this Request is based on the best information reasonably available.  The

investigation and review by the United States of the matters at issue in this case is ongoing, and

the United States expressly reserves its right to supplement, clarify, revise, or correct this

response at any time.

Dated: New York, New York
     August 5, 2011

                    PREET BHARARA
                    United States Attorney
                    Attorney for the United States of America

By:

                    ROBERT WILLIAM YALEN
                    JOSEPH A. PANTOJA
                    Assistant United States Attorneys
                    Telephone: (212) 637-2722
                    Facsimile: (212) 637-2686
                    E-mail: robert.yalen@usdoj.gov

# EXHIBIT I

**EXECUTIVE SUMMARY**

This report provides my estimate of the future costs as of November 2005 that Tronox likely would incur for environmental sites that Kerr-McGee Corporation or its affiliates or predecessors[1] owned, operated and/or used for waste disposal (the "Kerr-McGee Sites"). Specifically, I have estimated the present value of the costs, as of November 2005, for necessary and appropriate environmental response actions remaining at the Kerr-McGee Sites, apportioned to Kerr-McGee/Tronox, based on information that was known or knowable as of November 2005. Based upon the information and data contained in this report, my more than thirty years of experience in environmental engineering, assessment, site remediation and cost estimating, and my educational background, I, Dr. Neil M. Ram, have formed the following opinions, the bases of which are set forth in detail below, to a reasonable degree of engineering and scientific certainty.

1.    It is my opinion, to a reasonable degree of engineering and scientific certainty, that the estimated present value of the cost, as of November 2005, for necessary and appropriate environmental response actions remaining at the Kerr-McGee Sites, apportioned to Kerr-McGee/Tronox, based on information that was known or knowable as of November 2005 was:

| Present Value of Future Costs Related To Kerr-McGee Sites[2] | | |
|---|---|---|
| | **Low** | **High** |
| Sites included in Schedule 2.5(a) of the Master Separation Agreement | $984M | $1.084B |
| Undisclosed Sites | $557M | $642M |
| **TOTAL[3]** | **$1.541B** | **$1.726B** |

---

[1]    The background section to each chapter includes information regarding the specific Kerr-McGee entity or predecessor entity that owned, operated or disposed of waste at each specific site. Elsewhere in this report, the name "Kerr-McGee" is used broadly to refer to Kerr-McGee Corporation and its affiliates and predecessors. See **Appendix A-1** for a summary of former Kerr-McGee companies.

[2]    The abbreviations K (thousand), M (million) and B (billion) are used in this report.

[3]    Note totals presented in tables throughout this report may not add up exactly due to rounding.

**ROUX ASSOCIATES, INC.**                              - 1 -                              TRO1829.0001M000.115/R-Ex

(ii)   Roux Associates' cost estimate includes four components: Ammonium Perchlorate water ($97.5M); Ammonium Perchlorate solids ($7.0M); Environmental Conditions Assessment ($48.2M); and Process pond ($0.4M); and

(iii)   Continued operation of the groundwater remediation system at the Site for at least 30 years was necessary as of November 2005 because, among other reasons:

- Site data in 2005 indicated that perchlorate levels in surface water of the Las Vegas Wash and groundwater from the Seep well field exceeded Nevada's provisional action level of 18 µg/L for perchlorate;

- Perchlorate concentrations in surface water from the Las Vegas Wash remained three to more than five times higher than the Nevada provisional action limit of 18 µg/L for perchlorate;

- In 2005, a significant perchlorate source area remained on site and had not been fully characterized; and

- Perchlorate levels in the Las Vegas Wash near the Seep were relatively flat (i.e. no significant change in concentration was observed) from about mid-2003 to through 2005 indicating that continued plume containment was necessary.

14. Roux Associates' cost estimate of $1.541B to $1.726B for the Kerr-McGee Sites is conservative for numerous reasons set forth in the chapters of the report below, including:

(a)   Roux Associates' cost estimate only includes costs for 372 sites.  Roux Associates has assigned a cost of $0 to 164 sites and has not assigned any costs to more than 2,000 of the Kerr-McGee Sites.  The pie charts to the right and below[14] show the types of sites for which Roux Associates either assigned a cost of $0 or no costs.  The sites for which Roux Associates assigned no costs include:



---

[14]   U = undisclosed sites

(i)  25 "pipeline" sites;

(ii)  656 mining related sites (including 178 uranium sites and 225 non-uranium sites);

(iii)  196 undisclosed AgChem sites (including farm centers, land parcels, and warehouses);

(iv)  1228 service stations;

(v)  71 undisclosed waste disposal sites; and

(vi)  34 "other" domestic sites



(b)  Roux Associates did not include an estimate for costs of litigation of environmental issues related to the Kerr-McGee Sites;

(c)  Roux Associates did not include cost elements for replacing major treatment system components at the majority of the 2.5(a) sites where treatment systems were included in the cost basis, because initial capital costs were not available in project documents upon which to estimate such replacement costs. Significant costs to replace major system components would likely be incurred at larger treatment systems, such as those operating at the REF, Calhoun and Texarkana sites. Replacement costs were only included for the Henderson and Cleveland sites



because these were the only two sites where initial capital costs were provided in project documents;

(d)  Environmental regulations are generally becoming more stringent over time, which will lead to increased costs;

(e)  Roux Associates did not include any intramural cost elements (i.e. expenditures made by the USEPA that are internal to the agency such as payroll, travel, and supplies) when relying on estimates from the Congressional Report[15] as a metric for certain response actions. Inclusion of intramural costs would further increase the total cost of each response action metric. Further, EPA metrics do not include costs for long-term O&M (~$2M year for a "mega site" and $400K/year for a "non-mega" site as defined in the Congressional Report) or for 5-year reviews; and

---

[15]  Probst and D. Konisky (2001) "Superfund's Future: What Will it Cost": A Report to Congress, Resources for the Future, Washington, DC, ISBN 1-891853-39-22001, RFF Press, Washington, DC

### 5.4.13  Other Mining-Related Sites

In addition to the 12 undisclosed Kerr-McGee mining sites heretofore discussed in **Section 5.4**, there are an additional 656 undisclosed mining-related sites in Kerr-McGee's portfolio of environmental legacy sites (collectively referred to herein as the "Other Mining-Related Sites") that were not disclosed in Schedule 2.5(a) of the Master Separation Agreement (See **Appendix E-12**).   For a variety of reasons, discussed below, Roux Associates has not estimated the present value of the cost for necessary and appropriate environmental response actions remaining at the Other Mining-Related Sites as of November 2005.   However, that does not mean it is Roux Associates' opinion that the present value of the cost for necessary and appropriate environmental response actions remaining at the Other Mining-Related Sites as of November 2005 is $0.   On the contrary, the present value of the cost for necessary and appropriate environmental response actions remaining at the Other Mining-Related Sites as of November 2005 is, more likely than not, millions of dollars.  Roux Associates has conservatively elected not to quantify the amount at this time, for the reasons discussed below.

As discussed in the introduction to **Section 5.4**, a total of 675 Kerr-McGee mining-related sites were determined to constitute Kerr-McGee's environmental legacy portfolio based upon documents reviewed by Roux Associates.   These are listed in **Appendix E-2**.   Of these 675 mining-related sites, four were discussed in **Section 4.5**, three were discussed in **Section 5.3**, and 12 sites have heretofore been discussed in **Section 5.4**.   The remaining 656 sites constitute the Other Mining-Related Sites.   The present value of the cost for necessary and appropriate environmental response actions remaining at these sites as of November 2005 was not estimated by Roux Associates for a variety of reasons.   As shown in the table below, costs for future response actions at some sites have been and/or will be borne by other parties pursuant to government programs (e.g., UMTRCA) or contractual agreements (e.g., PSAs).   For other sites, response action costs were not estimated because of location (i.e., outside of the United States) or because Roux Associates deemed it unlikely that Kerr-McGee would have to incur response action costs in the future (e.g., Petrotomics site, coal sites).   For the majority of sites, however, costs for necessary and appropriate environmental response actions were not estimated because site-specific information with which to develop cost elements was lacking and Roux Associates did not have sufficient time to conduct site inspections at these sites to determine whether or not historical mine features are present.

# EXHIBIT J

**BINGHAM**

Duke K. McCall, III
Direct Phone:  202.373.6607
Direct Fax:     202.373.6443
duke.mccall@bingham.com

October 11, 2011

**BY ELECTRONIC MAIL**

Jeffrey J. Zeiger
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654

Robert W. Yalen
Assistant United States Attorney
United States Attorney's Office
86 Chambers Street
New York, New York 10007

Re:  *Tronox, Inc. v. Anadarko Petroleum Corp.*, Adv. Proc. No.
       **09-01198 (ALG)**

Gentlemen:

I write to follow up on our discussion concerning the responses and objections of the Litigation Trust and the United States (collectively the "Plaintiffs") to Defendants' First Request for Admissions ("Requests for Admission").

Although Defendants have a number of concerns regarding Plaintiffs' objections and responses to the Requests for Admission, Defendants' primary concerns are:  (1) the failure of the Litigation Trust and United States to respond to the Requests for Admission to the extent the requests address sites for which Plaintiffs' environmental expert, Dr. Ram, has not "assigned specific costs" or has not "used to assign specific costs to other sites;" and (2) the failure of the United States to provide any response to Requests for Admission Nos. 6 and 7.

As we discussed, both the Litigation Trust and the United States have limited their responses to the Requests for Admission to a subset of the sites identified in the Request for Admission, but neither the Litigation Trust nor the United States has been able to explain the limitation invoked.  Indeed, the Litigation Trust and the United States describe the limitation in their responses differently--the United States limits its responses to those sites for which Dr. Ram has "assigned specific costs," while the Litigation Trust purports to include as well those sites Dr. Ram "used to assign specific costs to other sites."  When we spoke, neither the Litigation Trust nor the United States

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
2020 K Street NW
Washington, DC
20006-1806

T +1.202.373.6000
F +1.202.373.6001
bingham.com

A/74510994.2

Jeffrey J. Zeiger
Robert W. Yalen
October 11, 2011
Page 2

was able to explain what these limitations actually mean--neither the Litigation Trust nor the United States was able identify the specific sites included or excluded from Plaintiffs' responses to the Requests for Admission. Defendants are entitled to a clear identification of the sites Plaintiffs have addressed in their responses to the Requests for Admission and a clear identification of the sites Plaintiffs seek to exclude from their responses to the Requests for Admission.

Moreover, unless Plaintiffs are willing to stipulate that they will not seek to introduce any testimony or evidence concerning the sites excluded from their responses to the Requests for Admission, Plaintiffs' cannot limit their responses to a subset of the sites identified in the Requests for Admission. The Requests for Admission list only those sites Plaintiffs specifically disclosed pursuant to Paragraph 8 of the Case Management Order as sites that: (i) Plaintiffs' "experts will rely upon, value, estimate, or issue an opinion concerning;" or (ii) with respect to which Plaintiffs "will otherwise present testimony or evidence." Having disclosed all of the sites listed in the Requests for Admission as sites that Plaintiffs' "experts will rely upon, value, estimate, or issue an opinion concerning" or with respect to which Plaintiffs "will otherwise present testimony or evidence," Plaintiffs cannot now seek to limit discovery to the small subset of these sites that Plaintiffs' expert has been able to assign specific costs to. Defendants are entitled to responses to their Requests for Admission for all sites that Plaintiffs' "experts will rely upon, value, estimate, or issue an opinion concerning" or with respect to which Plaintiffs "will otherwise present testimony or evidence."

During our telephone conference, we also discussed the United States' failure to provide any response to Requests for Admission Nos. 6 and 7 (both which request that the United States admit that no funding had been authorized by the U.S. Environmental Protection Agency for specific sites as of certain dates). The United States refused to answer these requests based on its claim that the phrase "funding authorized by the U.S. Environmental Protection Agency" is ambiguous. Defendants do not agree that this phrase is ambiguous or that any ambiguity would excuse the failure of the United States to provide any response. Indeed, because the United States has greater knowledge than Defendants as to how agencies of the United States allocate or authorize funding for specific projects, an attempt to avoid responding to such requests based on an assertion that Defendants failed to use the right words is particularly inappropriate. By way of further explanation, these requests ask the United States to admit that the U.S. Environmental Protection Agency had not (as of the dates specified) budgeted, allocated, earmarked or set aside any monies for any investigation or response activities at the sites listed in the Requests for Admission.

Jeffrey J. Zeiger
Robert W. Yalen
October 11, 2011
Page 3

Please let us know if Plaintiffs will supplement their response to the Requests for
Admission to address these deficiencies.

Sincerely yours,

Duke K. McCall, III

# EXHIBIT K

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

Jeffrey J. Zeiger
To Call Writer Directly:
(312) 862-3237
jeffrey.zeiger@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

November 11, 2011

**By Electronic Mail**

Duke K. McCall, III
Bingham McCutchen LLP
2020 K Street NW
Washington, D.C. 20006-1806

Re:    *Tronox, Inc. v. Anadarko Petroleum Corp.*, Adv. Pro. No. 09-01198

Dear Duke:

I write to respond to your October 11, 2011 letter concerning Plaintiff's Combined
Responses and Objections to Defendants' First Request for Admissions and Fifth Set of
Interrogatories, served on August 5, 2011. Specifically, your letter addresses Defendants'
concern about certain RFA responses in which Tronox limits its response "to sites for which Dr.
Ram has assigned specific costs or sites that Dr. Ram has used to assign specific costs to other
sites."

As an initial matter, you request a "clear identification" of the sites that are included and
excluded from Tronox's responses based on this limitation. Table E-2 to Dr. Neil Ram's expert
report, attached as Exhibit A, includes all sites or groups of sites for which Dr. Ram has assigned
specific costs, which are designated with an amount greater than $0 in the column titled "Roux
Associates' Present Value." The individual sites that comprise the three groups of sites assigned
specific costs that are identified in Table E-2—the Schedule 2.5(a) Service Station Sites, the
Other Blending Sites, and the Non-Owned Service Stations—are identified respectively in the
materials from Dr. Ram's report attached as Exhibits B-D.[1]  In addition, the sites that Dr. Ram
has used to assign specific costs to other sites, but for which Dr. Ram has not assigned specific
costs, are the Williamston, NC, Portsmouth, VA, and North Haven, CT ag-chem blending
centers.

Further, we disagree with your contention that "Plaintiffs cannot limit their responses to a
subset of the sites identified in" Defendants' RFAs. As indicated in Tronox's objections to
Defendants' RFAs, it is unduly burdensome to require Tronox to investigate various issues at

---

[1]    The "Other Blending Sites" are included in the "Blending Facilities" listed in Table 5-2, attached as Exhibit C.

Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai      Washington, D.C.

# KIRKLAND & ELLIS LLP

Duke McCall
November 11, 2011
Page 2

thousands of sites to which Tronox has not assigned costs for its solvency analysis.  Nor will
Tronox stipulate that it "will not seek to introduce any testimony or evidence concerning the sites
excluded from their responses" to Defendants' unduly burdensome RFAs.  Tronox is free to
argue that its estimate of contingent liabilities is conservative because it does not include
liabilities for sites for which Tronox's expert did not assign costs, just as Defendants are free to
argue, for example, that Tronox has not presented evidence of CERCLA notices from the EPA
concerning such sites.

Please let me know if you have any questions.

Sincerely,

Jeffrey J. Zeiger

JJZ/nmj

# EXHIBIT L



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York  10007*

January 19, 2012

<u>By E-mail</u>
Duke K. McCall III
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006

      Re:    *Tronox Incorporated, et al. v. Anadarko Petroleum Corp., et al.*,
               <u>Adv. Pro. No. 09-01198 (ALG)</u>

Dear Mr. McCall:

      I am writing to respond to address certain discovery matters.

***Responses to Requests for Admissions***

      In defendants' October 11, 2011 letter concerning the *United States of America's Responses and Objections to Defendants' First Request for Admissions to Plaintiff-Intervenor*, dated August 5, 2011 (the "Responses"), defendants state that they are unable to understand the meaning of the Government's limitation of certain responses to sites "for which Roux Associates has assigned specific costs in its expert report."  To address your concerns, the Government hereby refers defendants to – and incorporates by reference – the description of the sites for which Neil Ram of Roux Associates has assigned specific costs provided by the Litigation Trust contained in the second paragraph of the first of two letters sent by it to defendants on November 11, 2011, attached hereto as Exhibit A.

      Additionally, defendants have asked the Government for a further response to Request No. 6 and Request No. 7 of the requests for admission, which are the following:

      <u>Request to Admit No. 6</u>
      Admit that, as of November 28, 2005, no funding had been authorized by the
      U.S. Environmental Protection Agency for the sites listed in Exhibit 6.

      <u>Request to Admit No. 7</u>
      Admit that, since November 28, 2005, no funding has been authorized by the
      U.S. Environmental Protection Agency for the sites listed in Exhibit 7.

      The Government reiterates the objections to these requests contained in its Responses. Among other objections, EPA's ability to expend funds is governed by various statutes,

regulations, and administrative policies and procedures and the meaning of "authorized" is therefore vague and ambiguous. Additionally, the Requests, to the extent that they are answerable at all, cannot be answered without undue burden and, among other things, it would be unduly burdensome to require a response as to sites other than those for which Roux Associates has assigned specific costs in its expert report. Unlike funds *expended* by EPA, about which we have previously provided information, funds *authorized* are not tracked in a reasonably comprehensive and accessible database available to us.

In their October 11 letter, defendants purported to clarify their requests by explaining that the phrase "funding had been authorized by [EPA]" should be read to mean that EPA had "budgeted, allocated, earmarked or set aside any monies for any investigation or response activities." October 11 letter at 2. As revised, Requests No. 6 and 7 remain vague, ambiguous, and unduly burdensome. We have determined that EPA's data systems do not collect in any reasonably comprehensive and accessible way the information requested. Additionally, these requests continue to be unduly burdensome to the extent they relate to sites other than those for which Roux Associates has assigned specific costs in its expert report.

In an effort to respond to your Requests, we have made reasonable inquiry of individuals with knowledge of EPA's data systems. We have determined that, for sites for which Roux Associates has assigned specific costs in its expert report, the information known or readily obtained is generally insufficient for us to admit or deny Requests No. 6 and 7, and we therefore neither admit nor deny these requests in general. However, based on our inquiries, we are able to answer the Request as follows with respect to several sites. Specifically:

- the Government denies Request No. 6 as to Soda Springs (Ex. 6, #23), Pickettville (Ex. 6, #46), Red Mountain, Colorado (Ex. 6, #680), and Del Amo (Ex. 6, #1324), as to which our search of EPA data suggests that funds were obligated before November 28, 2005; and

- the Government denies Request No. 7 as to Soda Springs (Ex. 7, #20), Pickettville (Ex. 7, #43), Bogalusa (Ex. 7, #371), Jackson (Ex. 7, #378), Del Amo (Ex. 6, #1320), and Wynnewood (Ex. 7, #2415), as to which our search of EPA data systems suggests that funds were obligated after November 28, 2005.

### *Interrogatories*

It has come to our attention that EPA has expended the following funds at sites for which we have not previously provided statements of costs incurred, and we supplement our interrogatory answers accordingly:

- $16,541 in FY 2011 for Bogalusa;
- $55,832 between FY 1991 and FY 2002 for Red Mountain, CO (an amount subsequently reduced by a credit of $19); and
- $344 between FY2006 and FY2009 with respect to the Wynnewood Refinery.

2

These numbers are net of any credits, recoveries, or interest.

### *Document Production*

      I am enclosing a copy of the final document regarding the Hanover, Massachusetts site that we have previously indicated we were reviewing for production.

      I am also enclosing a small number of documents we have located relating to Bogalusa, Lousiana, and Red Mountain, Colorado, as well as a short index of additional hard-copy documents that can be made available for inspection for the Red Mountain site and the Wynnewood Refinery site.  Based on the descriptions in these indices, we do not expect that defendants will be interested in inspecting the files; however, please lease let us know if they are.

      Finally, it has come to our attention that two emergency removals occurred at the Wynnewood Refinery, one each in 2006 and 2007.  These removals were emergency responses to fires rather than broader-scale cleanup activity.  Information concerning these incidents is available at http://www.epaosc.org/site/site_profile.aspx?site_id=2930 and http://www.epaosc.org/site/site_profile.aspx?site_id=2249.  It appears to us that it is unlikely that defendants will desire documents relating to these incidents; if defendants believe documents concerning these incidents should be produced, please let us know so we can discuss the matter.

### *Certain Sites*

      It has come to our attention that Neil Ram's expert report makes reference to federal involvement at a few sites for which he has assigned specific costs but for which the Government has not produced documents or detailed past costs information:  the Searles Valley sites, the Eston Chemicals/20231 S. Vermont Avenue / Del Amo site, and the Pickettville Road site.  We have reviewed those sections of the expert report that relate to these site and have concluded that, in light of the type of federal activity and the nature and amount of claimed liability, it would be unduly burdensome to collect, produce, or review such files or to provide detailed cost information concerning activity at these sites.[1]

### *Clawback*

      Pursuant to the Federal Rules of Civil Procedure and protective orders in force in this case, we hereby claw back the document with Bates numbers US2229138-40 as an inadvertently

---

    [1] We do hereby disclose, based on information at hand, that EPA has expended a total of $10,005,634 through FY 2011 at the multiparty Del Amo site and that EPA has expended a total of $596,146 through FY 2011 at the multiparty Pickettville site.

produced privileged document.  This document is protected by the attorney work product doctrine and, in part, by attorney-client privilege.

We are happy to answer any questions you may have about any of these matters.

Very truly yours,

PREET BHARARA
United States Attorney

By: _____

ROBERT WILLIAM YALEN
Assistant United States Attorney
Tel. No. (212) 637-2722
Fax No. (212) 637-2686
Email:  robert.yalen@usdoj.gov

cc:    Jeffrey Zeiger, Esq. (by email)

4