KIRKLAND & ELLIS LLP
David J. Zott, P.C. *(admitted pro hac vice)*
Jeffrey J. Zeiger *(admitted pro hac vice)*
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel for the Anadarko Litigation Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| TRONOX INCORPORATED, *et al.*, | ) Case No. 09-10156 (ALG) |
| | ) Jointly Administered |
| Reorganized Debtors. | ) |
| | ) |
| | ) |
| TRONOX INCORPORATED, | ) |
| TRONOX WORLDWIDE LLC | ) |
| f/k/a Kerr-McGee Chemical Worldwide LLC, | ) |
| and TRONOX LLC f/k/a Kerr-McGee | ) |
| Chemical LLC,[1] | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adversary Proceeding No. 09-01198 (ALG) |
| | ) |
| ANADARKO PETROLEUM | ) |
| CORPORATION *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

[1] Pursuant to the Anadarko Litigation Trust Agreement, which was approved by the Court on February 14, 2011 (Dkt. No. 2812), the Anadarko Litigation Trust was appointed as the representative of each of the Plaintiff Debtors' estates, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, with the power and right to prosecute this matter. By the same agreement and Order, the Anadarko Litigation Trust was "deemed substituted" for the Debtor Plaintiffs in this matter "as the party in such litigation."

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) )  ) |
| Plaintiff-Intervenor, | ) ) |
| v. | ) ) |
| TRONOX, INC.,<br>TRONOX WORLDWIDE LLC,<br>TRONOX LLC,<br>KERR-MCGEE CORPORATION, and<br>ANADARKO PETROLEUM<br>CORPORATION, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT SEEKING DISMISSAL
OF (I) CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS
INVOLVING TRANSFERS MADE BY TRONOX LLC; (II) ANADARKO
PETROLEUM CORPORATION AS A SUBSEQUENT TRANSFEREE
WITH RESPECT TO ALL ALLEGED FRAUDULENT TRANSFERS; AND
(III) ALL ACTUAL AND CONSTRUCTIVE FRAUDULENT TRANSFER
<u>CLAIMS PROTECTED BY SECTION 546(e) OF THE BANKRUPTCY CODE</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

STATEMENT OF FACTS ................................................................................................................. 3

STANDARD OF REVIEW ................................................................................................................ 3

ARGUMENT ....................................................................................................................................... 4

    I.      Defendants' Own Discovery Responses Prove That Anadarko Is A
           Subsequent Transferee. ............................................................................................. 4

          A.     By Defendants' own admission, some of the fraudulently
                  transferred assets have been transferred to Anadarko ................................ 5

          B.     Anadarko is a subsequent transferee by virtue of its dominion and
                  control over the fraudulently transferred assets. ........................................ 8

    II.     Defendants Failed to Plead the Section 546(e) Defense. ........................................ 10

CONCLUSION ................................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................................... 4

*Bonded Financial Services, Inc. v. European American Bank*,
  838 F.2d 890 (7th Cir. 1988) ......................................................................................... 9, 10

*Chambers v. TRM Copy Ctrs. Corp.*,
  43 F.3d 29 (2d Cir. 1994) ................................................................................................... 4

*Citizens Bank of Clearwater v. Hunt*,
  927 F.2d 707 (2d Cir. 1991) ........................................................................................... 3, 4

*Fischl v. Armitage*,
  128 F.3d 50 (2d Cir. 1997) ................................................................................................. 4

*Golden Pacific Bancorp. v. F.D.I.C.*,
  375 F.3d 196 (2d Cir. 2004) ............................................................................................... 4

*Hoxworth v. Blinder, Robinson & Co.*,
  903 F.2d 186 (3d Cir. 1990) ............................................................................................... 7

*In re 360Networks (USA) Inc.*,
  338 B.R. 194 (Bankr. S.D.N.Y. 2005) ................................................................................ 9

*In re Bullion Reserve of N. Am.*,
  922 F.2d 544 (9th Cir. 1991) .............................................................................................. 8

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*,
  130 F.3d 52 (2d Cir. 1997) ........................................................................................... 9, 10

*In re Omnicom Group Inc. Secs. Litig.*,
  597 F.3d 501 (2d Cir. 2010) ............................................................................................... 3

*In re Whaley*,
  229 B.R. 767 (Bankr. D. Minn. 1999) ................................................................................ 8

*Securities Investor Protection Corp.. v. Stratton Oakmont, Inc.*,
  234 B.R. 293 (Bankr. S.D.N.Y. 1999) ................................................................................ 9

*Tronox, Inc. v. Anadarko Petroleum Corp.*,
  429 B.R. 73 (Bankr. S.D.N.Y. 2010) ............................................................................. 9, 10

*United States v. Landau*,
  155 F.3d 93 (2d Cir. 1998) ............................................................................................... 10

*United States v. Sperry Corp.*,
  493 U.S. 52 (1989) ............................................................................................................. 7

**Statutes**

11 U.S.C § 550(a)(1) .............................................................................................................. 8, 9

11 U.S.C. § 550 ......................................................................................................................... 10

11 U.S.C. § 550(a) ........................................................................................................... 8
11 U.S.C. § 550(a)(2) .................................................................................................. 8, 9
Bankruptcy Code § 546(e) ............................................................................ 2, 3, 10, 11
OKLAHOMA STATUTE ANNOTATED, title 18 § 1100.2 ................................................... 7

**Rules**

Federal Rule of Civil Procedure 56(a) ...................................................................... 3, 4
Federal Rule of Civil Procedure 56(e) ......................................................................... 4
Local Bankruptcy Rule 7056-1 ............................................................................... 1, 10
Local Bankruptcy Rule 7056-1(c) ................................................................................ 3

## INTRODUCTION

At the November 2011 pretrial conference, this Court suggested that the parties limit any future summary judgment motions to issues that, if decided in advance, would "materially improve the efficiency and reduce some of the issues" for trial. (11/14/11 Tr. [Dkt. No. 286] at 12) This is consistent with the Local Bankruptcy Rules, which recognize that summary judgment motions often waste the resources of the Court and the parties because "it would be more cost-effective to resolve all issues at trial" and an "objective examination would reveal triable issues of fact." L. Bankr. R. 7056-1, cmt. Undeterred, Defendants filed a motion for partial summary judgment that is unnecessary, raises issues they previously waived or that would not materially narrow the scope of issues for trial even if granted, and asks the Court to rule on issues that it may never need to reach even following trial.

Defendants spend nine pages and 39 footnotes spinning arguments as to why they are entitled to summary judgment on Plaintiff's constructive fraud claims *to the extent they involve transfers from Tronox LLC*—one of *three* Tronox plaintiffs asserting constructive fraud claims. To be blunt, this simply does not matter. Dismissal of Tronox LLC's constructive fraud claims will have no bearing on the issues at trial. Plaintiff's core claim has always been that Defendants transferred billions of dollars of assets out of Old Kerr-McGee (n/k/a Plaintiff Tronox Worldwide LLC) to the Kerr-McGee Defendants, leaving behind only a small single-product chemical business in a highly-cyclical industry to attempt to satisfy billions of dollars of legacy environmental, tort and retiree liabilities Kerr-McGee had created over decades. The fact that Defendants did not also strip Tronox Worldwide LLC's sole remaining operating unit, Tronox LLC, is beside the point. In fact, the only impact that granting this portion of Defendants'

motion would have is to *increase* Plaintiff's damages claim.[2]  Accordingly, Plaintiff is willing to stipulate to the dismissal of Tronox LLC's Count II and Count III of the Second Amended Complaint (now inherited by the Anadarko Litigation Trust as successor-in-interest).[3]

Second, Defendants move for partial summary judgment on fraudulent transfer claims against Defendant Anadarko Petroleum Corporation as a subsequent transferee.  In the event that Plaintiff is successful at trial, this issue may be moot if the Kerr-McGee Defendants can satisfy the resulting judgment as Defendants previously have indicated.  Regardless, Defendants' motion should be summarily denied because it is based on a flawed premise.  Defendants' repeated claims that "none of the assets that were the subject of the initial Project Focus and/or IPO transfers were later transferred to Anadarko" are directly contradicted by Defendants' own interrogatory responses.  (Defs.' Mot. ¶ 18)  Those responses make clear that some of the fraudulently transferred assets were later transferred to Anadarko.  In addition, this Court previously has held that Anadarko has dominion and control over the fraudulently transferred assets and is therefore a subsequent transferee.  Defendants' implicit request for the Court to reconsider its prior ruling should be denied.

Finally, Defendants include a placeholder for a potential summary judgment motion based on § 546(e) of the Bankruptcy Code.  (*See* Defs.' Mot. at 2 n.2 ("In order to avoid any

---

[2]  Defendants argue that Tronox LLC received more assets than it transferred as a result of Project Focus and the IPO.  Thus, eliminating transfers involving Tronox LLC decreases the inflows to Tronox *more than* it decreases the outflows.  In other words, the shortfall at the transfer date, and therefore the potential damages, becomes even *larger*.

[3]  Defendants have not moved for judgment on Tronox Inc.'s or Tronox Worldwide's Count II claims (as inherited by the Anadarko Litigation Trust), which cover the vast majority of the transfers relevant to Count II, and Plaintiff's stipulation is not intended to affect any other portion of Count II.  Defendants also have not moved for judgment on Tronox Inc.'s or Tronox Worldwide's Count III claims (as inherited by the Anadarko Litigation Trust), and Plaintiff's stipulation is not intended to affect any other portion of Count III.  Defendants similarly have not moved to exclude evidence regarding the value of the assets or liabilities of Tronox LLC, which is still relevant to Plaintiff's remaining claims.  The stipulation will be included in the Joint Pretrial Order, which is scheduled to be filed with the Court on May 1, 2012.

argument about whether Defendants have timely filed all dispositive motions by the deadline..., Defendants are including their request for summary judgment relief under § 546(e) herein. Defendants request that the Court carry their § 546(e) summary judgment arguments until the Court rules" on Defendants' affirmative defense motion.))  This very narrow and wholly inapplicable exception is an affirmative defense that Defendants failed to plead.  Seeking to save their now-waived defense, Defendants recently filed a separate motion to amend their answer, which Plaintiff will oppose.  Because Defendants have waived this affirmative defense, no response is necessary here.  Plaintiff will address Defendants' arguments regarding § 546(e) in opposing Defendants' motion to amend on the grounds that amendment would be futile.

## STATEMENT OF FACTS

Plaintiff's statement of facts in support of this motion ("Pl.'s SOF") is attached as Exhibit A and incorporated herein.  Plaintiff's SOF responds to Defendants' Statement of Undisputed Material Facts ("Defs.' SOF") in correspondingly numbered paragraphs and, in addition, sets out additional material facts relevant to the motion, including facts as to which there is a genuine issue to be tried.  *See* L. Bankr. R. 7056-1(c).

## STANDARD OF REVIEW

Summary judgment is only appropriate when "there is no genuine dispute as to any material fact and … the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Thus, the moving party must identify which materials "it believes demonstrate the absence of a genuine issue of material fact." *In re Omnicom Group Inc. Secs. Litig.*, 597 F.3d 501, 510 n.3 (2d Cir. 2010). "After such a *prima facie* showing, the non-moving party must respond with 'specific

3

facts showing that there is a genuine issue for trial.'" *Golden Pacific Bancorp. v. F.D.I.C.*, 375 F.3d 196, 200 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)). In adjudicating a summary judgment motion, "the facts and the inferences to be drawn from them are considered in the light most favorable to the non-moving party." *Citizens Bank*, 927 F.2d at 710; *see also Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.").

When deciding a motion for summary judgment, "[t]he court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

## ARGUMENT

**I.    Defendants' Own Discovery Responses Prove That Anadarko Is A Subsequent Transferee.**

Defendants incorrectly claim that the "undisputed evidence in this case establishes that Anadarko is not a subsequent transferee" and that "Anadarko continues to own *only* the stock of New Kerr-McGee." (Defs.' Mot. ¶¶ 17, 19 (emphasis added)) Defendants' own written discovery responses prove the exact opposite. As Defendants admit in their discovery responses, some of the fraudulently transferred assets, initially transferred to Kerr-McGee, were later transferred to Anadarko. Separately, as this Court previously held, Anadarko continues to exercise dominion and control over the remaining assets, qualifying it as a subsequent transferee. Either basis is sufficient to deny Defendants' request for summary judgment.

4

### A. By Defendants' own admission, some of the fraudulently transferred assets have been transferred to Anadarko.

Plaintiff's core claims seek billions of dollars in oil and gas assets that were fraudulently transferred from Tronox to Kerr-McGee to prevent environmental and tort creditors from collecting against the assets. To obtain more information about the location and value of the fraudulently transferred oil and gas assets, on October 7, 2010, Plaintiff served its Second Set of Interrogatories on Defendants. (Pl.'s SOF ¶ 56) Among other things, Plaintiff asked Defendants to identify each of the fraudulently transferred assets and to "[i]dentify each and every owner of each individual Transferred Asset from the time of Tronox's ownership of the specific asset to the present day." (*Id.* ¶ 58) Defendants served their interrogatory responses on November 19, 2010, and attached a table to their responses that listed, among other things, the "Current Owner/Ownership History." (*Id.* ¶ 59) Because Defendants' responses were deficient in some respects, Plaintiff asked Defendants to provide revised interrogatory responses, which Defendants did on May 20, 2011. (*Id.* ¶¶ 60–63)

Defendants' written discovery responses, as revised, indicate that, after Anadarko's acquisition of Kerr-McGee, some of the fraudulently transferred assets were transferred out of Kerr-McGee to Anadarko Petroleum Corporation. For example, prior to the fraudulent transfers, Kerr-McGee Operating Corp. (now known as Tronox Worldwide LLC) owned 100% of the membership interests (*i.e.*, was the sole member) of Kerr-McGee Foundation Corporation. (*Id.* ¶ 66) The membership interests were then transferred to Kerr-McGee Worldwide. (*Id.*) As a result, ownership of Kerr-McGee Foundation was transferred from Tronox Worldwide LLC to Kerr-McGee Worldwide. In their interrogatory responses, Defendants admitted that the Kerr-McGee Foundation was "thereafter merged into Anadarko Foundation on or about October 1, 2008" and that Anadarko Petroleum Corporation "is currently the sole member of Anadarko

5

Foundation." (*Id*. ¶¶ 64, 66)  Thus, ownership of the Kerr-McGee Foundation was transferred directly to Anadarko Petroleum Corporation.  Put differently, while Kerr-McGee Worldwide formerly held all of the fraudulently transferred membership interests in Kerr-McGee Foundation, Anadarko Petroleum Corporation now holds all of the fraudulently transferred membership interests directly.  This is a "subsequent transfer" under any definition and Defendants' own discovery responses provide the "who, when, and how" of the transfer.  (*See* Defs.' Mot. at 14 n.52 (citing *In re Allou Distribs., Inc.*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007))

      Likewise, Defendants' interrogatory responses reveal other subsequent transfers of the fraudulently transferred assets to Anadarko entities.  These transfers further belie Defendants' claims that "none of the assets that were the subject of the initial Project Focus and/or IPO transfers were later transferred to Anadarko" and "the assets transferred by Plaintiffs to Kerr-McGee Defendants remain the assets of those entities." (Defs.' Mot. ¶¶ 18, 21)  For example, Defendants stated that the 5,000 shares of Kerr-McGee Americas Ltd., initially fraudulently transferred from Tronox Worldwide LLC to defendant Kerr-McGee Worldwide (a wholly owned subsidiary of New Kerr-McGee), were later "transferred to Anadarko Offshore Holding Company" on June 17, 2008.  (Pl.'s SOF ¶ 66)  The underlying entity itself was then subsequently "merged with and into Anadarko Brazil Investment I LLC on December 15, 2009."[4]  (*Id*. ¶ 66)  Kerr-McGee Worldwide's shares of Kerr-McGee Benin Ltd.—another fraudulently transferred asset—are now owned by "Anadarko Global Funding I Company." (*Id*.)  Finally, Atlantic Exploration & Production Ltd., a fraudulently transferred entity previously held

---

[4] Notably, this merger was completed *after* this Adversary Proceeding was filed, negating Anadarko's ability to even claim that, as a subsequent transferee, it lacked knowledge of the potential voidability of the fraudulent transfers.

6

by Kerr-McGee Worldwide, was subsequently "merged into Anadarko Brazil Investment II LLC on September 23, 2008." (*Id.*)

In addition to the direct transfers described above, Defendants' interrogatory responses suggest that other indirect transfers of the fraudulently transferred assets were made to Anadarko. Some of the oil and gas subsidiaries whose stock was fraudulently transferred in connection with Project Focus were later "dissolved" by Kerr-McGee and/or Anadarko. (*Id.* ¶ 67) Under Oklahoma corporate law, after paying off creditors, the remaining assets, including any cash, of a dissolved corporation are distributed to shareholders (*i.e.* Defendants). OKL. ST. ANN., tit. 18 § 1100.2 (2012). Meanwhile, Anadarko's cash flow increased in 2006 and its public filings attribute the increase to the Kerr-McGee acquisition. (Pl.'s SOF ¶ 69) Anadarko's public filings also reveal that it used cash generated from the sale of Kerr-McGee assets to repay $1 billion of Anadarko's own debt. (*Id.* ¶¶ 68, 70) At the very least, Anadarko's dissolution of some of the fraudulently transferred assets and subsequent use of Kerr-McGee cash or assets presents a genuine issue of fact as to whether Anadarko was a transferee of certain fraudulently transferred assets.[5]

In sum, Defendants have admitted that at least some of the Project Focus assets—the subject of many of Plaintiff's fraudulent transfer claims—were subsequently transferred directly to Anadarko Petroleum Corporation. For other assets, Anadarko's public filings and post-

---

[5] Likewise, Anadarko's post-acquisition activities present a genuine fact issue as to whether the cash proceeds of the Tronox IPO and Debt Offering, which were fraudulently transferred to Kerr-McGee at the time of the IPO, were subsequently transferred to Anadarko. Defendants argue that "New Kerr-McGee immediately used all such proceeds to pay down its own indebtedness" and therefore "New Kerr-McGee no longer held the cash that was transferred to it in the IPO and Anadarko therefore could not have been a subsequent transferee of such property." (Defs.' Mot. at 17 n.68) But cash is fungible. *See, e.g., United States v. Sperry Corp.*, 493 U.S. 52, 62 n.9 (1989) ("Unlike real or personal property, money is fungible."); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 195–96 (3d Cir. 1990) ("Legally as well as economically, money is fungible."). Anadarko's post-acquisition policies suggest that Kerr-McGee cash was transferred to Anadarko, resulting in a subsequent transfer.

7

acquisition policies create a triable issue as to whether Anadarko was a subsequent transferee of the assets. For each of these independent reasons, Anadarko's motion for summary judgment on this issue should be denied.

### B. Anadarko is a subsequent transferee by virtue of its dominion and control over the fraudulently transferred assets.

As explained above, Kerr-McGee's *post-acquisition* transfers of certain of the Project Focus assets to Anadarko results in Anadarko being a subsequent transferee. That *alone* defeats Defendants' summary judgment motion. Ignoring their own fatal admissions, Defendants spend much of their motion arguing why Anadarko's acquisition of Kerr-McGee in August 2006 does not qualify Anadarko as a subsequent transferee. (*See, e.g.*, Defs.' Mot. ¶ 20) These arguments also miss the mark and amount to nothing more than a plea for this Court to reconsider its prior opinion rejecting these very same arguments when Defendants made them the first time.

There has never been any dispute that Anadarko acquired New Kerr-McGee's stock in August 2006 for approximately $19 billion. (Defs.' Mot. ¶ 20; Defs.' SOF ¶ 37)[6] Defendants previously argued in their motion to dismiss that this acquisition did not make Anadarko liable on Plaintiff's fraudulent transfer claims as a subsequent transferee. (9/21/09 Defs.' Reply in Supp. of Mot. to Dismiss [Dkt. No. 67] at 30) The Court already considered this argument and rejected it:

> In the present case, Anadarko acquired New Kerr-McGee shortly after the spin-off. As the parent and purchaser of New Kerr-McGee, Anadarko had dominion and control over the relevant assets. . . . For purposes of this motion to dismiss,

---

[6] Likewise, there does not appear to be any dispute that the Kerr-McGee Defendants were initial transferees of the transferred assets and Defendants' motion does not argue otherwise. Because a trustee can proceed against either an "initial transferee," 11 U.S.C. § 550(a)(1) , or "any immediate or mediate transferee of such initial transferee," *id*. § 550(a)(2), the Kerr-McGee Defendants remain proper defendants regardless of the subsequent transfers. *In re Bullion Reserve of N. Am.*, 922 F.2d 544, 546–47 (9th Cir. 1991) ("[T]he trustee can recover from both the initial transferee and any secondary transferee, as well as from any entity for whose benefit the initial transfer was made."); *In re Whaley*, 229 B.R. 767, 773 (Bankr. D. Minn. 1999) ("As a general rule, § 550(a) imposes liability on all recipients in a chain of transfers of fraudulently-conveyed property.").

8

> the Complaint adequately pleads that Anadarko is a subsequent transferee and a proper defendant to the fraudulent conveyance claims.

*Tronox, Inc. v. Anadarko Petroleum Corp.*, 429 B.R. 73, 110 (Bankr. S.D.N.Y. 2010).

Nothing has changed since the Court's prior decision that would upset that ruling. The facts of Anadarko's acquisition of New Kerr-McGee are not in dispute, just as they were not in dispute at the time of the Court's prior decision. Defendants provide no reason for the Court to reconsider its prior ruling.

Moreover, the Court's original ruling was based on sound law. Numerous courts, including the Second Circuit, have applied the "dominion and control" test adopted by the Seventh Circuit in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988), to determine who is a transferee of a fraudulent transfer or preference. *See, e.g.*, *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57 (2d Cir. 1997) (adopting the "dominion and control test"); *In re 360Networks (USA) Inc.*, 338 B.R. 194, 202 (Bankr. S.D.N.Y. 2005) (Gropper, J.) (finding that the defendant had "dominion and control over the Payments, and the right to apply them as it wished" and rejecting Defendant's argument that it was not a transferee).

Defendants' attempts (relegated to a single footnote) to distinguish this law are unavailing. First, Defendants argue that the "'dominion and control' test articulated in *Bonded*... does not govern the pending issue because it applies only to transferee determinations made under § 550(a)(1) [initial transferees], not (a)(2) ["mediate" or subsequent transferees]." (Defs.' Mot. at 17 n.69) But one of Defendants' cited cases from the Southern District of New York Bankruptcy Court holds the exact opposite: "The *Bonded* interpretation of 'transferee' applies not only to initial transferees but to subsequent transferees as well." *Secs. Inv. Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 313 nn.8 & 9 (Bankr. S.D.N.Y. 1999) (cited in Defs.'

9

Mot. at 15 n.53) ("[I]t is clear from *Bonded* that the judicial definition [of transferee] was meant to apply across the board, to immediate and mediate transferees as well."); *see also Tronox*, 429 B.R. at 110 (noting that the dominion and control test applies to subsequent transferees). Second, Defendants argue that the "dominion and control" test was "intended to *limit*, not enlarge" liability of transferees. (Defs.' Mot. at 17 n. 69 (emphasis in original)) In reality, it does neither; it simply serves to determine who is a transferee under § 550. For similar reasons, Defendants' third argument—that the *Bonded* test only applies to entities that received a transfer—misses the mark.[7] (*Id.*) The *Bonded* test applies to determine *whether* an entity has received a transfer. *In re Finley, Kumble*, 130 F.3d at 56 (noting that the *Bonded* test applies to determine which recipients are "transferees."). Here, as the Court previously recognized, Anadarko exercised (and still does exercise) dominion and control over the fraudulently transferred assets. Because Anadarko is free to use the fraudulently transferred assets to buy "lottery tickets or uranium stocks," *Bonded*, 838 F.2d at 894, it is a subsequent transferee and Defendants' motion on this issue should be denied.

## II.     Defendants Failed to Plead the Section 546(e) Defense.

Defendants also include a placeholder in their summary judgment motion based on § 546(e) of the Bankruptcy Code. Defendants failed to plead this affirmative defense in their Answer (or to raise it at any prior point in this case) and therefore it is waived. *United States v. Landau*, 155 F.3d 93, 107 (2d Cir. 1998) (holding that affirmative defense that was first raised by defendants in summary judgment motion was waived). At the Local Bankruptcy Rule 7056-1 Pre-Motion Conference, the Court advised Defendants that they should move to amend their

---

[7]   In any event, Defendants' argument that the "dominion and control" test cannot apply to "a party [that] has never in fact 'receive[d] the transfer'" does not help them because Anadarko *did* receive transfers of some assets. *See supra* § I.A.

10

pleadings if they wished to pursue this issue on summary judgment. (Defs.' Mot. at 2 n.2) Defendants nonetheless included this issue in their partial summary judgment motion "to avoid any argument about whether Defendants . . . timely filed all dispositive motions" and asked that "the Court carry their § 546(e) summary judgment arguments until the Court rules on Defendants'" motion to amend their answer. (*Id.*) Defendants have now moved to amend their answer and Plaintiff will oppose that motion. Because Defendants have waived this affirmative defense, no response is necessary here. But, for avoidance of doubt, Plaintiff's opposition to Defendants' motion to amend will argue, among other things, that Defendants' amendment would be futile because Defendants' § 546(e) defense fails on the merits. Plaintiff hereby incorporates those arguments herein.

## CONCLUSION

Because each of the issues presented by Defendants' motion is either moot, wrong as a matter of fact and law, or waived (pending resolution of Defendants' motion to amend their answer), Defendants' motion should be denied.

Dated: March 26, 2012

Respectfully submitted,

*/s/ David J. Zott, P.C.*

David J. Zott, P.C. *(admitted pro hac vice)*
Jeffrey J. Zeiger *(admitted pro hac vice)*
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel for the Anadarko Litigation Trust*

11

# CERTIFICATE OF SERVICE

I, Jeffrey J. Zeiger, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that on this 26th day of March 2012, I caused a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT SEEKING DISMISSAL OF (I) CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS INVOLVING TRANSFERS MADE BY TRONOX LLC; (II) ANADARKO PETROLEUM CORPORATION AS A SUBSEQUENT TRANSFEREE WITH RESPECT TO ALL ALLEGED FRAUDULENT TRANSFERS; AND (III) ALL ACTUAL AND CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS PROTECTED BY SECTION 546(e) OF THE BANKRUPTCY CODE** to be served upon the following:

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

Melanie Gray
Jason W. Billeck
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, TX 77002

*Counsel for Defendants*

**VIA ELECTRONIC MAIL**

Robert William Yalen
Assistant United States Attorney
86 Chambers Street
New York, NY 10007

*Counsel for the United States of America*

                                                      */s/ Jeffrey J. Zeiger*