KIRKLAND & ELLIS LLP
David J. Zott, P.C. *(admitted pro hac vice)*
Jeffrey J. Zeiger *(admitted pro hac vice)*
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel for the Anadarko Litigation Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| TRONOX INCORPORATED, *et al.*, | ) Case No. 09-10156 (ALG) |
| | ) Jointly Administered |
| Reorganized Debtors. | ) |
| | ) |
| | ) |
| TRONOX INCORPORATED, | ) |
| TRONOX WORLDWIDE LLC | ) |
| f/k/a Kerr-McGee Chemical Worldwide LLC, | ) |
| and TRONOX LLC f/k/a Kerr-McGee | ) |
| Chemical LLC,[1] | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adversary Proceeding No. 09-01198 (ALG) |
| | ) |
| ANADARKO PETROLEUM | ) |
| CORPORATION *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

[1]    Pursuant to the Anadarko Litigation Trust Agreement, which was approved by the Court on February 14, 2011 (Dkt. No. 2812), the Anadarko Litigation Trust was appointed as the representative of each of the Plaintiff Debtors' estates, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, with the power and right to prosecute this matter.  By the same agreement and Order, the Anadarko Litigation Trust was "deemed substituted" for the Debtor Plaintiffs in this matter "as the party in such litigation."

|                                              |     |
| -------------------------------------------- | --- |
| THE UNITED STATES OF AMERICA,                | )   |
|                                              | )   |
|     Plaintiff-Intervenor, | )   |
|                                              | )   |
|   v.                               | )   |
|                                              | )   |
| TRONOX, INC.,                                | )   |
| TRONOX WORLDWIDE LLC,                        | )   |
| TRONOX LLC,                                  | )   |
| KERR-MCGEE CORPORATION, and                  | )   |
| ANADARKO PETROLEUM                           | )   |
| CORPORATION,                                 | )   |
|                                              | )   |
|     Defendants.          | )   |
|                                              | )   |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' NOTIFICATION OF LACK OF CONSENT TO FINAL ADJUDICATION OF FRAUDULENT TRANSFER CLAIMS AND MOTION FOR LEAVE REGARDING FIDUCIARY DUTY CLAIM

In their June 2011 answer to Plaintiff's complaint, Defendants expressly "consent[ed] to the entry of final orders or judgment by this Court." (Answer ¶ 13) Now, more than eight months later and on the eve of trial, Defendants attempt to retract their consent based on the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). (Defs.' Notification of Lack of Consent [Dkt. No. 308] ("Notification")) Defendants' last-minute change of heart should be rejected for several reasons.

First, Defendants *explicitly* consented to this Court's entry of final judgment in their Answer. In doing so, Defendants knowingly waived whatever Article III rights they had, and *Stern* does not somehow render Defendants' consent invalid. Second, Defendants' conduct in this case following *Stern* independently establishes their consent to this Court's final adjudication of Plaintiff's claims. Defendants actively litigated this case for more than eight months after *Stern* without seeking to clarify or amend the consent in their Answer. Defendants

2

even asked the Court to enter summary judgment in their favor—rather than submit proposed findings of fact and conclusions of law—capping Plaintiff's recovery on its fraudulent conveyance claims.  Only after Defendants lost, and this Court entered partial summary judgment for Plaintiff, did Defendants raise for the first time their supposed lack of consent. Defendants' conduct can only be read as a tactical response to this Court's denial of Defendants' motion to cap Plaintiff's claims.

Third, Defendants cannot show good cause to withdraw their consent or amend their Answer because they delayed eight months after *Stern* before seeking to withdraw their consent for tactical reasons.  Withdrawal is also inappropriate because it would significantly prejudice Plaintiff by further delaying Plaintiff's recovery on its claims and forcing it to incur additional costs litigating before the district court to obtain final judgment.  Accordingly, Defendants should be held to their consent to this Court's final adjudication of Plaintiff's claims.

Finally, although the Court need not reach this issue given Defendants' consent, *Stern* does not remove the Court's authority to enter final judgment on Plaintiff's fraudulent conveyance claims.  Holding otherwise would be inconsistent with the Supreme Court's expressly limited holding in *Stern*.

## I.      Defendants Explicitly Consented To Final Adjudication Of All Claims By This Court.

It is well-established that a party can waive its right to adjudication by an Article III court, either explicitly or implicitly.  *See, e.g., Peretz v. United States*, 501 U.S. 923, 936 (1991) ("[L]itigants may waive their personal right to have an Article III judge preside over a civil trial."); *In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138 (2d Cir. 1987) (holding that defendant implicitly consented to bankruptcy court's adjudication of allegedly non-core claims).

3

Here, Defendants explicitly consented to this Court entering final judgment on all of Plaintiff's claims in both of their answers. Defendants' consent was not limited to the entry of final judgment on non-core claims. Rather, after indicating that Plaintiff had both core and non-core claims, "Defendants consent[ed] to the entry of final orders or judgment by this Court pursuant to Rule 7012(b)." (5/19/10 Defs.' Original Answer ¶ 13 [Dkt. No. 130]; 6/10/11 Defs.' Answer to Pls.' 2d Am. Compl. ¶ 13 [Dkt. No. 235] (the "Answer"))[2] Indeed, Defendants gave their plain and unequivocal consent to this Court's final adjudication of all Plaintiff's claims—including Plaintiff's core fraudulent conveyance claims—despite the Supreme Court's pending decision in *Stern*[3] and then-existing federal appellate case law holding that Article III precludes bankruptcy courts from entering final judgments in fraudulent conveyance actions in the absence of the parties' consent. *See Tex. Gen. Petroleum Corp. v. Leyh*, 52 F.3d 1330, 1337 (5th Cir. 1995). Further, as Defendants concede, they expressly consented to this Court's final adjudication of Plaintiff's breach of fiduciary duty claim even though it was non-core and Defendants were clearly entitled to an Article III court for that claim at the time they filed their Answer. (Notification ¶ 17) Thus, Defendants knowingly and expressly waived whatever

---

[2] Contrary to Defendants' suggestion (Notification ¶¶ 4-5), the Answer's reference to Federal Rule of Bankruptcy Procedure Rule 7012(b) does not somehow limit the scope of Defendants' consent. Rule 7012(b) directs defendants to state whether they consent to the bankruptcy court's final adjudication of *non-core claims*, and thus did not require Defendants to consent to the Court's final adjudication of *all* claims. Fed. R. Bankr. P. 7012(b) ("If the response is that a proceeding is non-core, [the responsive pleading] shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge."). The fact that Defendants chose to provide a broader consent than was required under the rules is further evidence of their explicit consent to final adjudication of all claims by this Court.

[3] In *In re Marshall*, 600 F.3d 1037, 1057 (9th Cir. 2010), the Ninth Circuit held that a counterclaim to a proof of claim was not "core," even though it was defined as "core" in 28 U.S.C. § 157(b)(2)(C), due to Article III concerns. At the time Defendants served their Answer to Plaintiff's Second Amended Complaint, the Supreme Court already had granted the petition for a writ of certiorari to review the Ninth Circuit's holding and heard oral arguments in the case. *Stern v. Marshall*, 131 S. Ct. 63 (Sept. 28, 2010) (granting petition for writ of certiorari). To the extent there is any question about the sufficiency of Defendants' consent in their Answer, or their ongoing post-*Stern* consent, the Court should permit limited discovery into what Defendants and their sophisticated bankruptcy counsel knew about the state of the law and when they knew it, followed by an evidentiary hearing, as the Court suggested at the March 22, 2012 pre-trial conference. (3/22/12 Tr. at 67 [Dkt. No. 327])

4

Article III rights they had when they filed their Answer.  The Supreme Court's subsequent decision in *Stern* does not somehow invalidate that consent.

*In re Olde Prairie Block Owner, LLC*, 457 B.R. 692 (Bankr. N.D. Ill. 2011), demonstrates that Defendants' explicit consent to this Court's entry of final judgment is valid and binding.  In that case, months prior to the Supreme Court's decision in *Stern*, the debtor "expressly consented in [its] pleadings to entry of final judgments by a Bankruptcy Judge on all of Debtor's counterclaims, even if any were determined to be non-core matters."  457 B.R. at 695-96.[4]  The court held that, even if *Stern* entitled the debtor to an Article III court for certain of its counterclaims, the debtor's pre-*Stern* explicit consent effectively waived its right to an Article III court for those counterclaims.  *Id*. at 701-02.  Here, just as in *Olde Prairie Block Owner*, Defendants expressly consented to the Court's entry of final orders and judgments on all of Plaintiff's claims without regard to whether Plaintiff's claims were core or non-core.  Accordingly, *Stern* does not somehow render Defendants' consent a nullity.

Defendants erroneously cite several cases for the proposition that "pre-*Stern* conduct cannot be the basis for finding consensual waiver of a party's right to having an Article III court finally adjudicate its claims."  (Notification ¶ 12)  None of the Defendants' cases stands for this broad proposition.  Nor, in contrast to this case, do any of Defendants' cases involve a party's express consent to the bankruptcy court's final adjudication of claims.[5]  Indeed, one of the cases

---

[4]    The debtor's consent in *Olde Prairie Block Owner*, attached hereto as Exhibit A, was dated November 12, 2010.

[5]    In *Adelphia Recovery Trust v. FLP Group, Inc.*, 2012 WL 264180, at *5 (S.D.N.Y. Jan. 30, 2012), the court found that the defendants' concession that claims were "core" when opposing withdrawal of the reference was not implied consent to final adjudication by a bankruptcy judge.  In *Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 471 (S.D.N.Y. 2011), the court determined that the defendants' efforts to obtain review of the bankruptcy court's ruling did not constitute consent.  In *In re Coudert Brothers, LLP*, 2011 WL 5593147, at *12 (Bankr. S.D.N.Y. Sept. 23, 2011), the defendants "failed to identify any indicia of implied consent," much less express consent.  Similarly, *In re Teleservices Group, Inc.*, 456 B.R. 318, 338-39 (Bankr. W.D. Mich. 2011), does not discuss any facts that might give rise to a finding of consent.

cited by Defendants, *Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
462 B.R. 457 (S.D.N.Y. 2011), recognizes that a party's express consent to final judgment in a
pre-*Stern* pleading is valid and binding. *Id*. at 471 (citing *Olde Prairie Block Owner*, where the
parties "expressly consented in their pleadings to entry of final judgments," as an example of
"real consent to Article I final adjudication"). Accordingly, Defendants' express consent to this
Court's final adjudication of Plaintiff's claims—without distinguishing between core and non-
core claims—effectively waived any Article III rights they had.

## II.   Defendants Consented To Entry Of Final Judgment By The Court After *Stern*.

Apart from Defendants' explicit consent in their Answer, Defendants' conduct in the
course of the litigation after the Supreme Court decided *Stern* unambiguously establishes their
implicit consent to this Court's final adjudication of Plaintiff's claims. *See In re Custom
Contractors, LLC*, 462 B.R. 901, 909 (Bankr. S.D. Fla. 2011) ("Consent can . . . be implied from
a litigant's course of conduct."), citing *Stern*, 131 S. Ct. at 2608. Defendants—represented by
sophisticated bankruptcy counsel who were well aware of *Stern*[6]—actively litigated this case for
more than eight months following *Stern* without seeking to withdraw or clarify the unqualified
consent in their Answer. As the Supreme Court held in *Stern*, if Defendants "believed that the
Bankruptcy Court lacked the authority to decide [Plaintiffs'] claim[s] . . ., then [they] should
have said so—and said so promptly." 131 S. Ct. at 2608 (holding that party consented to the
bankruptcy court's adjudication of a claim by failing to contest the bankruptcy court's authority
in the course of litigation).

---

[6]   For example, the day after *Stern* was decided, Weil, Gotshal, & Manges LLP posted an article on the decision
on its "Bankruptcy Blog," attached as Exhibit B, which, among other things, noted that the decision would
likely have a "very real impact . . . on what claims can be heard by a bankruptcy judge."

6

Moreover, over three months after *Stern* was decided, Defendants moved the Court to enter partial summary judgment capping Plaintiff's recovery on its fraudulent conveyance claims. (9/30/11 Cross-Motion for Partial Summary Judgment ¶ 4 [Dkt. No. 268]) Defendants' request for partial summary judgment on Plaintiff's fraudulent conveyance claims—as opposed to asking the Court to submit proposed findings of fact and/or conclusions of law for review by the district court—is flatly inconsistent with their current position that they have not consented to the Court's entry of final judgment on those claims. Similarly, nowhere in Defendants' response to Plaintiff's motion for partial summary judgment did Defendants contend that the Court lacked authority to enter an order granting summary judgment in favor of Plaintiff (*id.*), nor did Defendants object to the Court's order doing just that. Only after they lost the cap issue—and the Court entered partial summary judgment against them—have Defendants become *Stern* converts. Thus, in their recent partial summary judgment motion, Defendants raised their newly-minted lack of consent and asked the Court to submit proposed findings of fact and conclusions of law rather than enter a final order. (2/24/12 Defs.' Mot. for Partial Summary Judgment, p. 3 n.4 [Dkt. No. 307]) In light of this conduct, Defendants have impliedly consented to this Court's final adjudication of Plaintiff's claims.[7]

Defendants' last-minute attempt to disavow their explicit and ongoing consent to this Court's final adjudication seeks to create an unfair "heads I win, tails you lose" scenario for Plaintiff. Defendants did not give notice of their lack of consent until they lost their motion for

---

[7]    *See, e.g., Custom Contractors*, 462 B.R. at 909 (finding that a party's active litigation of the case for more than a year and motion for partial summary judgment demonstrated its implied consent to entry of final orders by the bankruptcy court); *In re G.S.F. Corp.*, 938 F.2d 1467, 1477 (1st Cir. 1991) (holding that parties consented to the bankruptcy court's final adjudication of an action by submitting stipulation and releases to the bankruptcy court for entry as a final judgment), overruled on other grounds by *Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992); *In re GB Herndon & Assoc., Inc.*, 459 B.R. 148, 158 (Bankr. D.D.C. 2011) (party waived right to Article III adjudication where it failed to contend that the bankruptcy court lacked authority to enter a final decision in its response to a summary judgment motion).

summary judgment to cap Plaintiff's recovery.  As evidenced by their active litigation in this case for eight months after *Stern* without seeking to clarify or amend the consent in their Answer, and their request for a judgment from this Court capping Plaintiff's recovery, Defendants would have been happy to have the Court enter a judgment in their favor finally adjudicating the cap issue.  Only after they lost have Defendants asserted lack of consent and sought to deprive Plaintiff of a final judgment by this Court.   The Court should reject Defendants' tactics and hold them to their consent.

**III.    Defendants Cannot Show Good Cause To Withdraw Their Consent And Amend Their Answer.**

Defendants cannot show good cause to withdraw their consent to this Court's final adjudication of Plaintiff's claims and amend their Answer.  *See Olde Prairie Block Owner*, 457 B.R. at 702 ("Withdrawal of consent . . . require[s] a motion and a showing of good cause."). First, Defendants cannot explain why they delayed more than eight months after *Stern* and until the eve of trial to seek to withdraw their consent and amend their Answer.  *See In re Peacock II*, 455 B.R. 810, 813 (M.D. Fla. 2011) (noting "the closer a party is to trial, the more scrutiny is warranted" in denying a party's request to revoke consent and amend answer).   Further, Defendants' request should be denied regardless of *Stern* because it is a "late-day tactical change of heart" in that it seeks to replace this Court with the district court as the final adjudicator of Plaintiff's claims only after the Court denied Defendants' partial summary judgment motion to cap Plaintiff's recovery.  *In re Bayonne Med. Ctr.*, 2011 WL 5900960, at *6 (Bankr. D.N.J. Nov. 1, 2011) (denying request to withdraw consent after argument on summary judgment motions as a "late-day tactical change of heart" and a "variation on forum shopping"); *In re Peacock II*, 455 B.R. at 813 n.4 (noting that "forum shopping can *never* be cause for leave to withdraw consent to the bankruptcy court's adjudicative authority").   Finally, Defendants cannot show good cause

because Defendants' withdrawal of their consent would significantly prejudice Plaintiff. Plaintiff decided to prosecute its claims to final adjudication before this Court in part to obtain the most efficient and expeditious recovery on behalf of its beneficiaries—environmental and tort creditors who desperately need the proceeds from this litigation. Withdrawal of Defendants' consent would delay Plaintiff's recovery and force Plaintiff to incur substantial additional expense to litigate and obtain a final judgment before the district court.

Nor can Defendants show good cause to amend their Answer. The Case Management Order states that "[p]leadings may be amended no later than 60 days prior to the close of fact discovery," and further states that "[a]ll fact discovery . . . shall be completed by June 24, 2011." (*See* 5th Am. CMO ¶¶ 6-7 [Dkt. No. 331]) Because Defendants seek to amend their Answer after the amendment deadline in the Case Management Order, they must show "good cause." (*See* 5th Am. CMO ¶ 13); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *In re Adelphia Commc'ns Corp.*, 452 B.R. 484, 494 (Bankr. S.D.N.Y. 2011).[8] The principal factor in determining whether "good cause" exists is a defendant's diligence in bringing the amendment. *Id.* at 496 (noting that "[w]hether good cause exists turns on the 'diligence of the moving party.'"). Here, far from acting diligently to amend their Answer in light of *Stern*, Defendants waited more than eight months after *Stern* was

---

[8] Defendants admit that "the deadline for amending a pleading is tied to the close of fact discovery," and that the "deadline imposed by" the CMO for fact discovery is June 24, 2011 (Notification, p. 12 n.6), yet still profess "it is unclear that Rule 16(b)(4) applies" because "Plaintiffs' production has continued unabated well after the June 24, 2011 deadline imposed by the Fourth Amended Case Management Order." However, the "close of fact discovery" under the CMO was clearly June 24, 2011. That date has never been extended. Defendants' half-hearted argument that the close of fact discovery does not occur until the last document is actually produced makes no sense and would render the pleading deadline a nullity. In a case of this magnitude, it is common for both parties voluntarily to produce some documents after the close of fact discovery. That is what happened here. As will be set forth in more detail in Plaintiff's opposition to Defendants' other motion to amend, nearly all of the documents voluntarily produced by Plaintiff after the close of fact discovery are either (1) documents that Plaintiff made available to Defendants prior to the close of fact discovery and Defendants only requested after the close of discovery, (2) re-productions of previously produced documents, (3) documents previously withheld as privileged, or (4) documents that were not even in existence at the close of fact discovery.

decided before requesting amendment.  Defendants offer no excuse for this lengthy delay, nor

could they.  Accordingly, Defendants request for leave to amend should be denied.[9]

## IV.    *Stern* Does Not Remove This Court's Authority To Enter Final Judgments In This Action.

Defendants contend that *Stern* precludes the Court from finally adjudicating Plaintiff's

fraudulent conveyance claims absent the parties' consent.  (Notification ¶ 7)  The Court need not

determine whether *Stern* impacts fraudulent conveyance claims because—as discussed above—

Defendants have expressly and by their conduct consented to the Court's entry of final judgment

on Plaintiff's claims.  In the event the Court does reach this issue, however, Defendants' reading

of *Stern* should be rejected.[10]

It is undisputed that Congress provided this Court with authority to enter final judgment

on Plaintiff's fraudulent conveyance claims.  *See* 28 U.S.C. § 157(b)(2)(H) (providing that

bankruptcy courts may "hear and determine" various "core proceedings," including "proceedings

to determine, avoid, or recover fraudulent conveyances.").   Contrary to Defendants' assertion,

several courts have held that *Stern* does not remove the Court's statutory authority to finally

adjudicate those claims.  *See, e.g., In re Madoff*, ___ F. Supp. 2d ____, 2012 WL 990829, at *12

n.5 (S.D.N.Y. 2012) (rejecting argument that the bankruptcy court lacked authority to enter final

judgment on trustee's fraudulent conveyance claims under *Stern*); *In re Direct Resp. Media, Inc.*,

___ B.R. ____, 2012 WL 112503, at *10 (Bankr. D. Del. 2012) ("*Stern* does not remove the

---

[9]   Defendants also cannot satisfy the Rule 15(a)(2) standard for amendments to pleadings.  As discussed above, Defendants have unduly delayed in seeking to amend their Answer and allowing Defendants to amend their Answer to withdraw consent would unduly prejudice Plaintiff.  *See City of New York v. Group Health Inc.*, 649 F.3d 151, 157-58 (2d Cir. 2011) (affirming decision to deny motion to amend due to "undue delay" and "undue prejudice").

[10]   The United States does not join in section IV of this brief.  Also, there may be additional reasons why this Court can still enter a final judgment on the United States' Complaint-in-Intervention following *Stern*.  The United States and Plaintiff reserve their rights with respect to the application of *Stern* to the claims contained in the Complaint-in-Intervention.

bankruptcy court's authority to enter final judgments on core matters [other than state law counterclaims asserted under § 157(b)(2)(C)], including the authority to finally adjudicate preference and fraudulent conveyance actions . . . ."); *In re Custom Contractors,* 462 B.R. at 908 (similar); *In re Peacock II*, 455 B.R. at 812 (similar); *In re Bujak*, 2011 WL 5326038, at *2-5 (Bankr. D. Idaho Nov. 3, 2011) (similar).

Rather, *Stern*'s narrow holding is simply that bankruptcy courts lack the constitutional authority to enter a final judgment on state law counterclaims that are not resolved in the process of ruling on a creditor's proof of claim. *Stern*, 131 S. Ct. at 2620. The district court decisions that Defendants rely on do not square with *Stern*'s narrow holding.[11] Indeed, "*Stern* is replete with language emphasizing that the ruling should be limited to the unique circumstances of that case." *In re Salander O'Reilly Galleries*, 453 B.R. 106, 115-16 (Bankr. S.D.N.Y. 2011). For example, the Supreme Court stated in *Stern* that the Bankruptcy Act of 1984 exceeded Article III's limitation on the exercise of judicial power "*in one isolated respect*." 131 S. Ct. at 2620 (emphasis added). The Supreme Court also agreed that "the question presented [in *Stern* was] a 'narrow' one" and stated that its holding would not "meaningfully change[] the division of labor" between district courts and bankruptcy courts. *Id*. Given that bankruptcy courts' "adjudication of fraudulent transfer and avoidance actions is a basic feature of that division of labor," *Stern* should be limited to the narrow issue before the Supreme Court in that case, and should not be extended to Plaintiff's fraudulent conveyance claims. *In re Madoff*, ___ F. Supp. 2d ____, 2012

---

[11]    In addition, these district court decisions are not binding on this Court. *See In re 400 Madison Ave. Ltd. P'ship*, 213 B.R. 888, 890 n.2 (Bankr. S.D.N.Y. 1997). These decisions are also factually inapposite because they did not involve a party's explicit consent or consent implied by a motion for summary judgment. *See Adelphia Recovery Trust*, 2012 WL 264180, at *5 (finding that defendants' concession that claims were "core" when opposing withdrawal of the reference was not implied consent to final adjudication by a bankruptcy judge); *Dev. Specialists*, 462 B.R. at 471 (defendants' efforts to obtain review of the bankruptcy court's ruling did not constitute consent); *Dev. Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP*, 2011 WL 6780600, at *2-3 (S.D.N.Y. Dec. 23, 2011) (noting "there is no suggestion in the record [the defendant] ever consented to allow [the bankruptcy court] to adjudicate [the plaintiff's] claims against it").

WL 990829, at *12 n.5; *see also Custom Contractors*, 462 B.R. at 908 (declining to extend *Stern* to fraudulent conveyance actions, which would "upend the division of labor between the district and bankruptcy courts that has been in effect for nearly 30 years"); *Bujak*, 2011 WL 5326038, at *2 (noting that the court "should carefully apply *Stern's* holding in its cases, and refrain from extending that holding to facts different from those in *Stern*").[12]

## CONCLUSION

For all the foregoing reasons, the Court should find that Defendants have waived Article III adjudication of Plaintiff's claims and deny Defendants' request to withdraw their consent and amend the Answer.

Dated:  April 2, 2012                    Respectfully submitted,

                                         /s/  *David J. Zott, P.C.*

                                         David J. Zott, P.C. *(admitted pro hac vice)*
                                         Jeffrey J. Zeiger *(admitted pro hac vice)*
                                         KIRKLAND & ELLIS LLP
                                         300 North LaSalle Street
                                         Chicago, Illinois  60654
                                         Telephone: (312) 862-2000
                                         Facsimile: (312) 862-2200

                                         *Counsel for the Anadarko Litigation Trust*

---

[12]    *Stern* also recognizes that the bankruptcy court may enter final judgment on an action that "stems from the bankruptcy itself."    *Stern*, 131 S. Ct. at 2618.   Here, the Court has authority to enter final judgment on Plaintiff's fraudulent conveyance action because it "arises under § 544 which is a federal bankruptcy cause of action stemming from the bankruptcy itself."   *Custom Contractors,* 462  B.R. at 907.

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey J. Zeiger, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that on this 2nd day of April 2012, I caused a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' NOTIFICATION OF LACK OF CONSENT TO FINAL ADJUDICATION OF FRAUDULENT TRANSFER CLAIMS AND MOTION FOR LEAVE REGARDING FIDUCIARY DUTY CLAIM** to be served upon the following:

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

Melanie Gray
Jason W. Billeck
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, TX 77002

*Counsel for Defendants*

**VIA ELECTRONIC MAIL**

Robert William Yalen
Assistant United States Attorney
86 Chambers Street
New York, NY 10007

*Counsel for the United States of America*

<u>    /s/ Jeffrey J. Zeiger            </u>