**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, *et al.*, | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC,[1] | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Adversary Proceeding No. 09-01198 (ALG) |
| | ) | |
| ANADARKO PETROLEUM CORPORATION, *et al*., | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRONOX, INC., TRONOX WORLDWIDE LLC, TRONOX LLC, KERR-McGEE CORPORATION, and ANADARKO PETROLEUM CORPORATION, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

---

[1] Pursuant to the Anadarko Litigation Trust Agreement, which was approved by the Court on February 14, 2011 (Dkt. No. 2812), the Anadarko Litigation Trust was appointed as the representative of each of the Plaintiff Debtors' estates, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, with the power and right to prosecute this matter. By the same agreement and Order, the Anadarko Litigation Trust was "deemed substituted" for the Debtor Plaintiffs in this matter "as the party in such litigation."

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF THE AVOCA WITNESSES

Contrary to the entire premise of Defendants' motion, Plaintiff has no intention of litigating any individual creosote case at trial in this action, and it will not call any of its witnesses for that purpose. Rather, all of the witnesses that Defendants seek to exclude — two tort claimants (David Perks and Leonard Ash, Sr.) and the former mayor of Avoca, Pennsylvania (James Haddock) — will provide testimony relevant to issues at the core of this fraudulent transfer case: the value of the tort liabilities that contributed to Tronox's insolvency at the time of its separation from Kerr-McGee. Defendants do not even suggest that the proposed testimony is irrelevant; nor could they given the breadth of relevance in federal court. FED. R. EVID. 401.

Mr. Perks and Mr. Ash are but two examples of the more than 9,000 plaintiffs who had outstanding creosote lawsuits against Kerr-McGee as of November 2005 and whose claims carried the potential for significant adverse verdicts against the company. After living two blocks from Kerr-McGee's Avoca wood treatment plant since 1977 and coaching Little League for 16 years in the creosote-soaked baseball fields next to the plant, Mr. Perks was diagnosed with bladder cancer in 2001. Since then, he has suffered through years of painful treatment and its related effects, including losing his job and medical insurance, and leaving his family deeply in debt. Similarly, Mr. Ash, another long-time resident of the community, has battled skin cancer and skin lesions for the past 10 years, enduring multiple disfiguring surgeries on his face and hands.

The testimony of these two individuals demonstrates that the legacy tort liabilities are not "phantom" liabilities, as Defendants have many times contended, but rather deadly serious claims by real people who were seeking, and reasonably expecting, significant recoveries from Kerr-McGee as of November 2005. This testimony also supports the estimate of Plaintiff's tort

liability expert, Dr. Denise Martin of NERA, and, indeed, demonstrates how her estimate is conservative. Dr. Martin has valued the pending and future creosote claims at an average of just $5,100 per claim. Obviously, the claims of plaintiffs such as Mr. Perks and Mr. Ash are worth many multiples of that amount. Moreover, just one or two punitive damage verdicts in the pending creosote cases could have quickly exceeded Dr. Martin's entire estimate (approximately $360 million) for all pending and future creosote liabilities.

By the same token, this testimony underscores how the analysis of Defendants' tort liability expert, Dr. Thomas Vasquez, is patently unreasonable. Dr. Vasquez values claims that were pending as of November 2005 at an average of $1,500/per claim, which is only a third of the value at which these types of claims had been resolved historically, and a drop in the bucket compared to what plaintiffs such as Mr. Perks and Mr. Ash reasonably could have recovered in court.

Testimony from former Mayor James Haddock is also relevant to evaluating Kerr-McGee's liabilities as of November 2005. He witnessed first-hand both Kerr-McGee's attempts to conceal its environmental problems and how the Avoca community was harmed by Kerr-McGee's conduct. After Kerr-McGee closed its Avoca plant in 1996, Mayor Haddock spent several years obtaining financial incentives and engaging in other efforts to help Kerr-McGee sell or redevelop its former wood treating site, which was in the center of town. Kerr-McGee, however, rejected his efforts at every turn. Only after several years did it become clear why: in 1999, a Kerr-McGee employee finally told Mayor Haddock that the company did not want to redevelop the site because of concerns over environmental contamination. In other words, redevelopment would bring these environmental issues to the forefront and attract the attention of federal and state regulators.

This is one of several examples at sites across the country where Kerr-McGee went to great lengths to conceal its liabilities and frustrate efforts by environmental and other authorities.

2

Given that Defendants are claiming in this action that many of the environmental sites posed little risk to Tronox because regulators were not knocking at the door and no response actions were imminent, Kerr-McGee's efforts to ensure that known environmental issues at its sites were not discovered are particularly relevant in this case.  Indeed, after Kerr-McGee admitted there were environmental problems at its Avoca site, Mayor Haddock personally demanded an investigation by the Pennsylvania Department of Environmental Protection and personally witnessed his community launch a class action lawsuit against Kerr-McGee.  Mayor Haddock also later recruited attorney Robert Powell to represent a second wave of tort plaintiffs in Avoca, knowing of Mr. Powell's skills as a trial lawyer and looking for someone who would achieve better results than the relatively small settlements of the initial class action litigation.

As noted, Defendants do not actually challenge the relevance of these witnesses' testimony, but instead claim they would be a "waste of time." (Mot. at 1)  If that is really Defendants' concern, however, Plaintiff is willing to agree to a total time limit per side to ensure that each side either uses its time wisely or suffers the consequences. Plaintiff has made this proposal to Defendants several times, but to no avail.

It also bears noting that Defendants' comparison of testimony from Mr. Perks, Mr. Ash and Mayor Haddock to the testimony excluded from Mr. Powell is wholly inapt.  These Avoca witnesses all have personal knowledge of how Kerr-McGee impacted their community and the nature of the claims that remained outstanding against Kerr-McGee as of November 2005. While Mr. Powell testified in his capacity as a lawyer who came in after the fact to represent the Avoca plaintiffs, Mr. Perks, Mr. Ash and Mayor Haddock are all percipient witnesses with first-hand knowledge of what it meant to live in Kerr-McGee's backyard and how motivated these and other plaintiffs were to seek justice through the courts.

Finally, Defendants include a footnote to request the exclusion of testimony from Edith Hood (and, by implication, Perry Charley[1]), but they say nothing of substance in support of their demand. The Court should reject this entirely cursory request, for which Defendants have not offered — and cannot offer — any justification. To be clear, Plaintiff is not seeking to litigate a uranium case any more than it seeks to litigate a creosote case. The point is that these Navajo witnesses, like the Avoca witnesses, have first-hand knowledge of the scale and scope of the liabilities Kerr-McGee was facing when it chose to dump them on Tronox in November 2005. These liabilities bear directly on Tronox's insolvency at the time of the IPO. Mr. Charley has spent his life attempting to clean up the toxic legacy that Kerr-McGee and other uranium mining companies left on Navajo land. Ms. Hood worked at a Kerr-McGee mine and, like Mr. Charley, has since devoted herself to attempting to clean up Navajo land. Both Mr. Charley and Ms. Hood have testified before Congress on these very issues.

For all of these reasons, Defendants' motion should be denied.

Dated:  April 6, 2012

Respectfully submitted,

/s/ David J. Zott, P.C.

David J. Zott, P.C.
Jeffrey J. Zeiger
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654-3406
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel for the Anadarko Litigation Trust*

---

[1]  Although Defendants appear to suggest otherwise (Mot. at 1-2 n.2), Plaintiff has disclosed Perry Charley as a witness who will appear through deposition testimony. Per the Case Management Order, Plaintiff timely served its affirmative designations for Perry Charley's deposition on March 2, 2012.

4

## CERTIFICATE OF SERVICE

I, Jeffrey J. Zeiger, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that on this 6th day of April 2012, I caused a true and correct copy of the foregoing Plaintiff's Opposition to Defendants' Motion *in Limine* to Exclude Testimony of the Avoca Witnesses to be served upon the following:

**Via U.S. Mail and Electronic Mail**

Melanie Gray
Jason W. Billeck
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, Texas 77002

*Counsel for Defendants*

**Via Electronic Mail**

Robert William Yalen
Assistant United States Attorney
86 Chambers Street
New York, New York 10007

*Counsel for the United States of America*

                                                 /s/ Jeffrey J. Zeiger