Melanie Gray (*admitted pro hac vice*)  
Lydia Protopapas (LP 8089)  
Jason W. Billeck (*admitted pro hac vice*)  
WEIL, GOTSHAL & MANGES LLP  
700 Louisiana, Suite 1600  
Houston, Texas 77002  
Telephone: (713) 546-5000  
Facsimile: (713) 224-9511  

James J. Dragna (*admitted pro hac vice*)  
BINGHAM MCCUTCHEN LLP  
355 South Grand Avenue, Suite 4400  
Los Angeles, California 90071  
Telephone: (213) 680-6400  
Facsimile: (213) 680-6499  

Kenneth N. Klee (KK 5910)  
David M. Stern *(admitted pro hac vice)*  
KLEE, TUCHIN, BOGDANOFF & STERN LLP  
1999 Avenue of the Stars, 39th Floor  
Los Angeles, California 90067  
Telephone: (310) 407-4000  
Facsimile: (310) 407-9090  

Richard A. Rothman (RR 0507)  
Bruce S. Meyer (BM 3506)  
WEIL, GOTSHAL & MANGES LLP  
767 Fifth Avenue  
New York, New York 10153  
Telephone: (212) 310-8000  
Facsimile: (212) 310-8007  

Thomas R. Lotterman (*admitted pro hac vice*)  
Duke K. McCall, III (*admitted pro hac vice*)  
BINGHAM MCCUTCHEN LLP  
2020 K Street, NW  
Washington, DC 20006  
Telephone: (202) 373-6000  
Facsimile: (202) 373-6001  

*Counsel to Defendants*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| TRONOX INCORPORATED, *et al.*, | Case No. 09-10156 (ALG) |
| Debtors. | Jointly Administered |
| TRONOX INCORPORATED, TRONOX WORLDWIDE LLC f/k/a Kerr-McGee Chemical Worldwide LLC, and TRONOX LLC f/k/a Kerr-McGee Chemical LLC, | |
| Plaintiffs, | |
| v. | |
| ANADARKO PETROLEUM CORPORATION and KERR-MCGEE CORPORATION, KERR-MCGEE OIL & GAS CORPORATION, KERR-MCGEE WORLDWIDE CORPORATION, KERR-MCGEE INVESTMENT CORPORATION, KERR-MCGEE CREDIT LLC, KERR-MCGEE SHARED SERVICES COMPANY LLC, and KERR-MCGEE STORED POWER COMPANY LLC | Adv. Pro. No. 09-01198 (ALG) |
| Defendants. | |
| THE UNITED STATES OF AMERICA, | |
| Plaintiff-Intervenor, | |
| v. | |
| TRONOX, INC., TRONOX WORLDWIDE LLC, TRONOX LLC, KERR-MCGEE CORPORATION and ANADARKO PETROLEUM CORPORATION, | |
| Defendants. | |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT SEEKING DISMISSAL OF (I) CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS INVOLVING TRANSFERS MADE BY TRONOX LLC; (II) ANADARKO PETROLEUM CORPORATION AS A SUBSEQUENT TRANSFEREE WITH RESPECT TO ALL ALLEGED FRAUDULENT TRANSFERS; AND (III) ALL ACTUAL AND CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS PROTECTED BY SECTION 546(e) OF THE BANKRUPTCY CODE**

TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

Anadarko Petroleum Corporation, Kerr-McGee Corporation, Kerr-McGee Oil & Gas Corporation, Kerr-McGee Worldwide Corporation, Kerr-McGee Investment Corporation, Kerr-McGee Credit LLC, Kerr-McGee Shared Services Company LLC and Kerr-McGee Stored Power Company LLC (collectively, the "Defendants"), file this Reply (the "Reply") to Plaintiffs' Opposition (the "Response") to Defendants' Motion for Partial Summary Judgment Seeking Dismissal of (I) Constructive Fraudulent Transfer Claims in Counts II and III of Plaintiffs' Amended Adversary Complaint (the "Complaint") Involving Transfers Made by Tronox LLC; (II) Anadarko Petroleum Corporation as a Subsequent Transferee with Respect to All Alleged Fraudulent Transfers; and (III) All Actual and Constructive Fraudulent Transfer Claims Protected by Section 546(e) of the Bankruptcy Code (the "Motion") and respectfully represent:

**PRELIMINARY STATEMENT**

Plaintiffs fail to raise a genuine issue of material fact with respect to any of the issues upon which Defendants moved for summary judgment. First, by agreeing "to stipulate to the dismissal of Tronox LLC's Count II and III" constructive fraudulent transfer claims, Plaintiffs have conceded that Tronox LLC received REV.[1] Plaintiffs, however, nonetheless disparage Defendants for filing a purportedly "unnecessary" Motion and then seek to distance themselves from their concession by urging

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion. Attached hereto as Exhibit A is a reply to Plaintiffs' response to Defendants' undisputed statement of facts and supplement in support of the Motion (the "Reply SOF").

that Tronox LLC's claims "simply do[] not matter."[2] Apart from the fact that Plaintiffs have spent three-and-a-half years prosecuting claims which they now assert "do not matter," Plaintiffs' concession has critically important implications for both the actual and constructive fraudulent transfer claims in this case. While Plaintiffs allege that Defendants sought to hinder, delay or defraud tort and environmental creditors, they have now conceded that the very entity to which they ascribe the overwhelming majority of the tort and environmental liabilities actually received hundreds of millions of dollars more than it gave in connection with the allegedly "fraudulent" transfers. Moreover, removing Tronox LLC from Plaintiffs' consolidated solvency, REV and damages analysis both underscores the flawed nature of that aggregated approach and lays bare Plaintiffs' failure to assess the independent liabilities of each of the two remaining Plaintiffs.

Second, Plaintiffs do not establish that Anadarko[3] is a subsequent transferee. The fact that *de minimis* property was later transferred to one or more of Anadarko's *affiliates* does not make *Anadarko* a subsequent transferee. Plaintiffs have failed to raise "concrete particulars" and "specific facts" that are sufficiently comprehensible to permit a response if they wish to defeat summary judgment.

Third, the "dominion and control" doctrine, or the "mere conduit" defense as it is known in the Second Circuit, does not alter the requirement that a subsequent transferee *actually receive* a transfer, and such receipt is in fact a prerequisite to application of the doctrine. When, as here, an entity has never received the property that was the subject of the initial transfers, the "dominion and control" doctrine has no application whatsoever. Accordingly, for the reasons described herein and in the Motion, the relief requested by Defendants should be granted.

---

[2] Response at 1.

[3] Except where otherwise noted, "Anadarko" refers to Defendant, Anadarko Petroleum Corporation.

2

**ARGUMENT**

I.   **Plaintiffs' Agreement to Dismiss Constructive Fraudulent Transfer Claims Involving Transfers Made by Tronox LLC Demonstrates the Invalidity of Plaintiffs' Remaining Actual and Constructive Fraudulent Transfer Claims**

1.   In conceding that they cannot prevail on those portions of Counts II and III alleging constructive fraudulent transfers made by Tronox LLC,[4] Plaintiffs state that "this simply does not matter," "is beside the point," and "will have no bearing on the issues at trial."[5] To the contrary, Plaintiffs' concession not only matters, it both validates the very point of Defendants' Motion and bears directly upon the actual and constructive fraudulent transfer claims that will be tried in this case.[6]

2.   First, by eliminating one of the three entities pursuing constructive fraudulent transfer claims, Plaintiffs have necessarily emasculated the consolidated approach upon which their solvency,[7] REV and damage theories[8] are based—namely, the evaluation of three aggregated corporate entities rather than three separate and independent corporate entities. Far from being "beside the point," the error of this consolidated approach is *precisely* Defendants' point. As the Motion explained (without

---

[4]   The entity now known as Tronox LLC was previously known as Kerr-McGee Chemical LLC. For simplicity, this Reply refers to this entity, at all times, as "Tronox LLC."

[5]   Response at 1.

[6]   Although Plaintiffs have agreed to dismiss all constructive fraudulent transfer claims involving transfers made by Tronox LLC (Response at 2), Defendants are in fact entitled to judgment (or a report and recommendation), not dismissal. *See, e.g., Giguere's Supermarkets, Inc. v. Hannaford Bros. Co.*, No. 81-2043-MA, 1983 WL 1788, at * 2 (D. Mass. Feb. 7, 1983) (denying plaintiffs' motion for dismissal without prejudice because, *inter alia*, it had been filed after defendants moved for summary judgment and holding that such motion "should not be used to circumvent a prospective and imminent ruling on summary judgment and the subsequent effects of such a ruling."). The proposal to dismiss Tronox LLC's constructive fraudulent transfer claims is nevertheless acceptable to Defendants provided that the dismissal is with prejudice and is based on the recognition that Tronox LLC received REV (as determined on an independent, non-consolidated entity basis). Defendants object to dismissal to the extent Plaintiffs are merely seeking to avoid the factual and legal conclusions that justify Defendants' requested relief.

[7]   *See* June 24, 2011 Expert Report of Grant W. Newton, PhD. at 1 (stating "at the request of the Plaintiffs, I addressed the question of whether, as of the Solvency Date, Tronox [defined as Tronox Inc., Tronox Worldwide LLC, and Tronox LLC collectively] was insolvent. . . .").

[8]   *See* June 24, 2011 Expert Report of Jack F. Williams, JD at 1 (defining "Tronox" collectively as Tronox Incorporated, Tronox Worldwide and Tronox LLC).

3

a single refutation by Plaintiffs), a consolidated solvency, REV and damages analysis contravenes both the plain language of § 544(b) and the interpretative case law of this jurisdiction. Plaintiffs' flawed analytical framework pertains not only to Tronox LLC, but also to the remaining two Plaintiffs in this case. Indeed, in carrying out their analysis with respect to the remaining Plaintiffs, Defendants submit that Plaintiffs are required to demonstrate the value of the tort and environmental claims to which *each* (rather than all) of them were subject.[9]

    3.  For example, at the time of Project Focus, Plaintiff Tronox Worldwide LLC f/k/a Kerr-McGee Operating Corp. ("Tronox Worldwide"), held assets consisting largely of equity interests in subsidiary companies engaged in E&P, chemical, and other businesses.[10] Some of these equity interests had no value at all (*i.e.*, in the case of certain subsidiaries whose businesses had been discontinued), while others had substantial value. The value available to Tronox Worldwide's creditors was therefore comprised of the combined net positive value of its equity interests (plus any other assets held by it directly). This value was not available to pay any and all creditors who happened to hold a claim against an affiliate or subsidiary of Tronox Worldwide, but was instead available only to those creditors who held claims *against Tronox Worldwide itself*. Plaintiffs would obscure this elementary principle by assigning all Legacy Liabilities to each and every Plaintiff. Plaintiffs, however, are required to establish the value of *each* of Tronox Worldwide's and Tronox Inc.'s liabilities. In making these showings, Plaintiffs may not conscript the liabilities of Tronox LLC merely because they would prefer to inflate the value of its affiliates' obligations. Plaintiffs' concession with respect to Tronox LLC's receipt of REV now makes

---

[9] Responding to criticisms of this consolidated approach, Plaintiffs' experts filed rebuttal reports referring to entity-by-entity conclusions drawn from an unexplained analysis. *See, e.g.*, Dec. 16, 2011 Rebuttal Report of Grant W. Newton, PhD. at Appendix D, Table D1; Dec. 16, 2011 Rebuttal and Supplemental Expert Report of Jack F. Williams, JD at 10-18.

[10] In addition to its equity interests, Tronox Worldwide held certain non-operating assets, including cash, rights to net operating loss carryforwards and interests in real estate and associated assets. *See* Nov. 3, 2011 Expert Report of Jeff D. Balcombe, CPA at Appendix E at 22-26; June 24, 2011 Expert Report of Grant W. Newton, PhD. at 47-50.

4

that plain. Accordingly, such a concession not only "matters," it both validates Defendants' primary "point" and bears directly upon how the "issues" of solvency, REV and damages "are [to be] tri[ed]" in this case.[11]

        4.      Second, by acknowledging that Tronox LLC received far more value than it gave in connection with the challenged transfers, Plaintiffs have greatly undermined their theory that there was an actual intent to hinder, delay or defraud tort and environmental creditors. Plaintiffs themselves assign nearly *all* of the tort liabilities and the bulk of the environmental liabilities to Tronox LLC and lower-tier subsidiaries.[12] Far from being "beside the point," the fact that Tronox LLC received hundreds of millions of dollars more than it gave is *precisely* Defendants' point. If, in fact, Defendants intended to hinder, delay or defraud tort and environmental creditors, Plaintiffs will need to explain why Defendants purposefully bolstered the very entity that held approximately 97% of the tort liabilities and 59% of the environmental liabilities.[13] If anything, these transfers indicate Defendants' actual intent to *benefit* tort and environmental creditors. Accordingly, Plaintiffs' concession again validates Defendants' primary "point" and remains deeply significant to the issues that will be tried in this case.

## II. Plaintiffs Fail to Establish a Genuine Issue of Material Fact as to Whether Anadarko is a Subsequent Transferee

        5.      Plaintiffs do not raise a genuine issue of material fact as to whether Anadarko is a subsequent transferee of any transfer made in connection with either Project Focus or the IPO. In urging

---

[11] Plaintiffs also assert that the dismissal of Tronox LLC's constructive fraudulent transfer claims will actually *increase* damages by eliminating from their consolidated entity analysis the net gains realized by Tronox LLC in connection with Project Focus. Response at 2 n.2. The suggestion is that they may concede the impropriety of the consolidated approach for Tronox LLC, while continuing to employ it in evaluating the two remaining Plaintiffs in this case. Contrary to Plaintiffs' assumption, each transferor must be evaluated independently and their concession that Tronox LLC received REV affirmatively *decreases* their asserted damages claim by eliminating the approximately $78.9 million in transfers made by Tronox LLC in connection with Project Focus. *See* Nov. 3, 2011 Expert Report of Jeff D. Balcombe, CPA at 42-43 (valuing Tronox LLC's outbound transfers as of Plaintiffs' preferred November 28, 2005 transfer date).

[12] *See* Dec. 16, 2011 Rebuttal Report of Grant W. Newton, PhD. at Appendix D, Table D1 (allocating to Tronox LLC and its lower-tier subsidiaries 97% of the tort liabilities and 59% of the environmental liabilities).

[13] *See id.*

5

that "some of the fraudulently transferred assets, initially transferred to Kerr-McGee, were later transferred to Anadarko,"[14] Plaintiffs identify a handful of assets transferred in connection with Project Focus that were subsequently transferred to, and/or merged into, subsidiaries of Anadarko. Plaintiffs' identification of assets subsequently transferred to *subsidiaries* of Anadarko does not render Anadarko a subsequent transferee.[15] Plaintiffs cannot make their case by obliterating the distinctions between legal entities required by law.[16] As is patent from the face of the Response, Plaintiffs fail to identify a single asset transferred pursuant to either Project Focus or the IPO that was later transferred to Anadarko.[17]

---

[14] Response at 4.

[15] Plaintiffs ambiguously refer to "Anadarko" and/or "Anadarko Petroleum Corporation"—sometimes as a standalone entity and sometimes as a combined entity comprised of itself and all of its subsidiaries. Anadarko Petroleum Corporation—a single, standalone corporation—is the only defendant named in this action that was not previously a member of the Kerr-McGee corporate family.

[16] Motion at ¶¶ 10 (quoting *Regency Holdings (Cayman), Inc. v. Microcap Fund, Inc. (In re Regency Holdings (Cayman), Inc.)*, 216 B.R. 371, 375 (Bankr. S.D.N.Y. 1998)) (explaining that pursuant to basic corporate independence principles, a parent and its subsidiary are "separate entities, having separate assets and liabilities" and "[t]he parent's ownership of . . . the subsidiary does not make the subsidiary's assets the parent's"); 19-20 (citing *In re Beck Indus., Inc.*, 479 F.2d 410, 415-16 (2d Cir. 1973) (stating that a parent's ownership of the equity interest of a subsidiary does not mean the subsidiary's assets are also the parent's), cert. denied, 414 U.S. 858 (1973); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 645 (Tex. 1996) ("The purchaser of stock in a corporation does not purchase any portion of the corporation's assets, nor is a sale of all the stock of a corporation a sale of the physical properties of the corporation."); *LaRose Mkt., Inc. v. Sylvan Ctr., Inc.*, 530 N.W.2d 505, 508 (Mich. 1995) ("[A] corporate lessor's stock sale, standing alone, does not constitute a 'sale' of corporate real estate . . . ."); *Engel v. Teleprompter Corp.*, 703 F.2d 127, 134 (5th Cir. 1983) ("[T]ransfer of the stock of a parent corporation does not affect the ownership of assets held by a subsidiary."); *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) ("[A] parent corporation . . . is not liable for the acts of its subsidiaries.").

[17] Although Plaintiffs argue that "[t]he Court has already considered . . . and rejected" the argument that Anadarko did not become a subsequent transferee by virtue of its acquisition of Kerr-McGee, the reality is that the arguments made in Defendants' initial motion to dismiss are not the same as those that are now being made on summary judgment. *Compare* 11/10/09 Hr'g Tr. at 43:16-45:9 (arguing that Plaintiffs did not plead that the assets subject to the initial 2002 transfers were the *same assets* that were subsequently transferred to Anadarko in 2006) *with* Motion at ¶ 18 (arguing that the assets subject to the initial 2002 transfers were not subsequently transferred to Anadarko *at all*). Moreover, even if the Court *had* previously adjudicated the very same issue presented in these summary judgment proceedings, such fact is entirely irrelevant to whether the pending matter is properly before the Court. *See, e.g., McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000) (holding that a decision on a motion to dismiss does not bind the court on a later summary judgment motion); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 759 F. Supp. 2d 417, 424 (S.D.N.Y. 2010) ("[C]ourts have long recognized the distinction between pre-discovery motions, based on an undeveloped record, and post-discovery motions for summary judgment."); *FSQ, Inc. v. Integrated Health Servs., Inc. (In re Integrated Health Servs., Inc.)*, 358 B.R. 637, 641 (Bankr. D. Del. 2007) (holding that the court was not bound by its earlier decision on a motion to dismiss on a later summary judgment motion).

6

A. **Direct Transfers of Project Focus and IPO Assets**

6. Plaintiffs erroneously suggest that because (1) Kerr-McGee Foundation ("KMF") (an entity whose stock was transferred pursuant to Project Focus) merged into Anadarko Foundation ("AF") and (2) Anadarko is the sole member of AF, the "ownership of . . . [KM] Foundation was transferred directly to Anadarko Petroleum Corporation."[18] Setting aside the fact that both KMF and AF are § 501(c)(3) not-for-profit corporations whose charitable assets cannot be recovered by Plaintiffs,[19] merely pointing to the merger of KMF with a subsidiary of Anadarko does not demonstrate that KMF's equity interest was subsequently transferred *to* Anadarko. On the contrary, in a merger transaction, the surviving corporation (AF) receives the assets and liabilities of the target corporation (KMF), the shareholder of the target corporation (Kerr-McGee Shared Services Company LLC) receives consideration for its equity interest (which is subsequently cancelled), and the shareholder of the surviving corporation (Anadarko) receives nothing.[20] Accordingly, the merger of KMF into AF did not result in the receipt by Anadarko, as the sole member of AF (the surviving corporation), of any stock or other asset. Rather, the assets of KMF were transferred to AF, and the membership interests of KMF were cancelled. Anadarko is therefore not a subsequent transferee of any equity interest or other asset transferred pursuant to Project Focus.[21]

---

[18] Response at 5-6.

[19] Plaintiffs may not avoid and recover (i) non-pecuniary membership interests in either KMF, an Oklahoma non-profit corporation, or AF, a Texas non-profit corporation, or (ii) their charitable assets, which applicable law requires (A) may only be distributed in furtherance of a charitable purpose (not to pay creditors of Plaintiffs' estates) and (B) may not be distributed to any members, trustees, officers, or other private parties even upon dissolution. *See, e.g.,* I.R.C. § 501(c)(3) (stating "No part of the net earnings of a section 501(c)(3) corporation may inure to the benefit of any private shareholder…"); OKLA. STAT. ANN. tit. 18, § 1006 (stating that the articles of incorporation of a not-for-profit must state "that the corporation does not afford pecuniary gain, incidentally or otherwise, to its members"); TEX. BUS. ORGS. CODE ANN. § 22.001 ("'Nonprofit corporation' means a corporation no part of the income of which is distributable to a member, director, or officer of the corporation.").

[20] *See* 1 Eleanor Fox & Byron Fox, Corporate Acquisitions and Mergers § 5B.01 (2011).

[21] Plaintiffs also argue that "Anadarko's post-acquisition activities present a genuine fact issue as to whether the cash proceeds of the Tronox IPO and Debt Offering . . . were subsequently transferred to Anadarko." Response

7.     Plaintiffs' remaining allegations concerning subsequent asset transfers to Anadarko are even more tenuous. For example, Plaintiffs argue that the transfers and/or mergers of the equity interests of three Kerr-McGee entities, namely (i) Kerr-McGee Americas Ltd., (ii) Kerr-McGee Benin Ltd. and (iii) Atlantic Exploration and Production Ltd. to or into four Anadarko affiliates (Anadarko Offshore Holding Company, Anadarko Brazil Investment I LLC, Anadarko Global Funding I Company and Anadarko Brazil Investment II LLC), constitute subsequent transfers to Anadarko.[22] It is apparent from the face of Plaintiffs' allegations, however, that the transfers were not made to Anadarko, but to subsidiaries of Anadarko—subsidiaries which are not named as defendants in this action. A subsequent transfer of assets to a subsidiary of Anadarko does not make Anadarko a subsequent transferee.[23] Accordingly, Plaintiffs' assertion that Anadarko may be held accountable under § 550(a)(2) fails on its face.

### B.     "Indirect Transfers" of Project Focus Assets

8.     Plaintiffs also argue that Anadarko is a subsequent transferee of certain "indirect transfers."[24] Plaintiffs, however, fail to elucidate the facts relating to these so called "indirect transfers"

---

at 7 n.5. Although Plaintiffs acknowledge that New Kerr-McGee's public filings reflect that it "immediately used all such proceeds to pay down its own indebtedness," and that New Kerr-McGee therefore no longer held the cash when it was acquired by Anadarko (*id.* (citing Motion at 17 n.68)), Plaintiffs respond by citing two cases stating that "money is fungible." *Id.* (citations omitted). Whether or not money is fungible, however, is irrelevant to the analysis of whether Anadarko is a subsequent transferee of the cash proceeds of the IPO. The fact that cash is fungible does not mean that once a party receives a transfer in the form of cash, all of its future cash transactions may be considered subsequent transfers of the initial cash it received. Such an argument finds no support in the cases cited by Plaintiffs. Because New Kerr-McGee used the cash proceeds generated from the Tronox IPO and Debt Offering to pay its own debt prior to being acquired by Anadarko, such cash could not have been subsequently transferred to Anadarko. Whether or not cash is fungible is beside the point.

[22]   Response at 6-7.

[23]   *See supra* note 16 (supporting the principle that a parent corporation is a distinct legal entity from its subsidiaries).

[24]   Response at 7.

8

or to even describe the legal theory (let alone the legal authority) that would permit an action against Anadarko based on these purported indirect transfers.

9. For example, while Plaintiffs assert that (1) "oil and gas subsidiaries whose stock was fraudulently transferred in connection with Project Focus were later 'dissolved,'"[25] and that (2) "[u]nder Oklahoma corporate law, after paying off creditors, the remaining assets [of a dissolved corporation] . . . are distributed to shareholders,"[26] Plaintiffs fail to identify the purportedly "dissolved" entities, their shareholders or the excess assets that might have been distributed to them.[27] Instead, Plaintiffs hypothesize that if some unidentified "dissolved" entity had some unidentified excess assets, those excess assets might have been distributed under some unidentified corporate law to some unidentified shareholder. A series of vague and unsubstantiated "what ifs" will not create a genuine issue of material fact that will defeat summary judgment. As explained by the Second Circuit, "[t]o avoid summary judgment . . . a plaintiff must do more than whet the curiosity of the court; he must support vague accusation and surmise with concrete particulars."[28] Because Plaintiffs have failed in such effort, their reliance on purported "indirect transfers" must be rejected.

10. Had Plaintiffs been specific, it would be clear that Anadarko was not the shareholder of any "dissolved" oil and gas entity whose stock was transferred pursuant to Project Focus.

---

[25] *Id.*

[26] Response at 7 (citing OKLA STAT. ANN., tit. 18 § 1100.2 (2012)).

[27] Because Plaintiffs do not identify any of the entities that were allegedly dissolved, it is unclear whether Oklahoma law is relevant to Plaintiffs' argument. Under a basic tenant of corporate law referred to as the "internal affairs doctrine," a corporation's internal actions, including formation and dissolution, are governed by the laws of the state where it is incorporated. *See First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 621 (1983); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996). Defendants are not aware of any Kerr-McGee oil and gas subsidiary that is or was incorporated under Oklahoma law.

[28] *Applegate v. Top Assocs., Inc.*, 425 F.2d 92, 96 (2d Cir. 1970); *see also Dressler v. MV Sandpiper*, 331 F.2d 130, 132-33 (2d Cir. 1964) (stating that a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response...must set forth specific facts showing that there is a genuine issue for trial.").

9

As Defendants demonstrated in the Motion, the only Kerr-McGee entity in which Anadarko holds (or has ever held) an equity interest is New Kerr-McGee.[29] Therefore, if any oil and gas entity with excess assets was ever dissolved, Anadarko would not have been the shareholder to which such dissolved entity would have distributed its excess assets.[30] Thus, it is clear that Anadarko did not receive excess assets resulting from the dissolution of any oil and gas entity whose stock was transferred pursuant to Project Focus.

11. Plaintiffs also point to Anadarko's 2006 public filings (1) attributing increased cash flow to "the Kerr-McGee acquisition" and (2) indicating that Anadarko "used cash generated from the sale of Kerr-McGee assets to repay $1 billion of Anadarko's own debt"[31] as evidence of "indirect transfers" to Anadarko. Neither statement, however, would make Anadarko a subsequent transferee under § 550(a)(2). With respect to the reported increase in cash flow due to the "Kerr-McGee acquisition," common sense dictates that Anadarko's inclusion of the newly acquired companies' operating results would necessarily increase Anadarko's consolidated financial metrics, including, *inter alia*, its cash flow. Anadarko's public reporting of such increase does not suggest that any asset, other than the equity interest of New Kerr-McGee, was transferred to Anadarko.[32]

12. Furthermore, the use of proceeds resulting from the sale of a Kerr-McGee entity's assets to reduce Anadarko's debt does not give rise to liability under § 550(a)(2). In January

---

[29] *See* Motion at ¶ 20.

[30] The United States Supreme Court has made clear that Anadarko is not a shareholder of the subsidiaries of New Kerr-McGee merely because it owns the equity interest of New Kerr-McGee. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets and, as a result, does not own subsidiary corporations in which the corporation holds an interest."); *see also Certainteed Corp. v. Fed. Ins. Co.*, 913 F. Supp. 351, 357 (E.D. Pa. 1995) (citing *Sabre v. United Traction & Elec. Co.*, 225 F. 601, 603-04 (D.R.I. 1915) ("Neither as a matter of form nor as a matter of substance can the [shareholder of a corporate parent] be regarded as a shareholder, or entitled to claim the rights of a shareholder in any one of the lessor companies. He is merely a shareholder in a corporate owner of all the stock of the [subsidiary], each of which is still a distinct corporation whose individual existence cannot be ignored.").

[31] Response at 7.

[32] *See supra* note 16.

2006 (*i.e.,* seven months prior to Anadarko's acquisition of New Kerr-McGee), New Kerr-McGee announced that Kerr-McGee Oil and Gas Corp. ("KMOG") had entered into an agreement with W&T Offshore, Inc. ("W&T") to sell certain of its Gulf of Mexico shelf properties (the "Shelf Assets") for approximately $1.3 billion (the "Shelf Agreement").[33]  The sale of the Shelf Assets to W&T was executed via the merger of a wholly-owned subsidiary of KMOG with and into a wholly-owned subsidiary of W&T.[34]  Anadarko therefore was not a party to the Shelf Agreement and did not receive any of the Shelf Assets.  Accordingly, even if the Shelf Assets had been transferred pursuant to Project Focus (which they were not), Anadarko was not a subsequent transferee of any Shelf Assets.

13. Moreover, even if Anadarko had "benefited" from the transfer of the Shelf Assets by applying the proceeds of the sale to reduce its debt, it *still* would not be a subsequent transferee for at least two distinct and independently sufficient reasons.  First, § 550(a) provides that a trustee may recover an avoided transfer from (1) "the initial transferee . . . or the entity for whose benefit such transfer was made;" or (2) "any immediate or mediate [*i.e.*, subsequent] transferee of such initial transferee."[35]  Under the plain language of this provision, a trustee may recover from an entity for whose benefit an initial transfer is made, but he may not recover from an entity for whose benefit a *subsequent* transfer is made.[36]

---

[33] *See* Kerr-McGee Corp. Current Report Form 8-K filed Jan. 24, 2006, at Item 1.01.  Reply SOF ¶ 71.

[34] *See id.*

[35] 11 U.S.C. § 550(a)(1) and (2).

[36] *See Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 56 (2d Cir. 1997) (stating that a plaintiff in a fraudulent transfer action may "recover from the initial transferee and its subsequent transferees, or from any entity for whose benefit the *initial* transfer was made.") (emphasis added); *Bonded Fin. Servs., Inc. v. European Am. Bank,* 838 F.2d 890, 896 (7th Cir. 1988) (discussing the difference between recipients and beneficiaries of fraudulent transfers and stating that "[s]omeone who receives the money later on is not an 'entity for whose benefit such transfer was made;' only a person who receives a benefit from the *initial* transfer is within this language.") (emphasis added); *Danning v. Miller (In re Bullion Res. of N. Am.)*, 922 F.2d 544, 547 (9th Cir. 1991) ("A reading of subsection (a)(1) in conjunction with the remainder of section 550 leads to the conclusion that the phrase 'or the entity for whose benefit such transfer was made' refers to those who receive a benefit as a result of the initial transfer from the debtor—not as the result of a subsequent transfer.") (quoting *Merrill v. Dietz (In re Universal Clearing House Co.)*, 62 B.R. 118, 128 n.12 (D. Utah 1986)).

11

Rather, a subsequent transferee may only be liable if it has actually received a subsequent transfer.[37] Because Anadarko received (at most) a benefit resulting from the transfer of the Shelf Assets, rather than the actual assets, § 550 does not permit a recovery from Anadarko as a subsequent transferee.[38]

14. Second, because a KMOG affiliate that is not a Plaintiff herein was the transferor of the sale proceeds to Anadarko, Plaintiffs may not avoid or recover the transferred proceeds.[39] Indeed, as previously noted, a parent company and its subsidiaries are separate legal entities, and "[t]he parent's ownership of all of the shares of the subsidiary does not make the subsidiary's assets the parent's."[40] Accordingly, Plaintiffs' reliance on asset transfers made to entities other than Anadarko and vague and unsubstantiated claims of "indirect transfers" do not constitute "*specific facts* showing that there is a genuine issue for trial."[41] Accordingly, this Court should dismiss Anadarko from all actual and constructive fraudulent transfer claims asserted in the Complaint.

---

[37] *In re Finley,* 130 F.3d at 57 (discussing the liability of a guarantor for whose benefit a subsequent transfer was made and explaining that the guarantor "would escape the strict liability that (a)(1) contemplates (being neither the courier [the initial transferee] nor an entity that benefits from the courier's receipt of the property), as well as liability under (a)(2) as an 'immediate or mediate transferee' (having never itself physically received the property")  (citing *In re Universal Clearing House Co.*, 62 B.R. at 128 n.12). When the initial transferee benefit prong of § 550(a)(1) is properly implicated, courts find that "[i]t is not enough that an entity benefit from the transfer; [instead,] the transfer must have been made *for his benefit.*"  *In re Bullion Res. of N. Am.*, 922 F.2d at 547 (citations omitted) (emphasis added). Given that KMOG entered into the Shelf Agreement approximately seven months before Anadarko acquired New Kerr-McGee, it is clear that KMOG did not sell its Shelf Assets in order to benefit Anadarko.

[38] The same reasoning applies to the transfers of the equity interests of Kerr-McGee Americas Ltd., Kerr-McGee Benin Ltd., Atlantic Exploration and Production Ltd. and KMF. That is, even if the subsequent transfers were made for the benefit of Anadarko, because Anadarko did not itself actually receive the transferred assets, § 550(a)(2) does not authorize a recovery from Anadarko.

[39] Motion at ¶ 9 (citing *Lippe v. Bairnco Corp.*, 230 B.R. 906, 914 (S.D.N.Y. 1999) ("plaintiffs seek to void not the transfer of Keene's property, but the transfer of *Bairnco*'s property . . . [but because] Keene did not own or have any interest in [Bairnco's property] . . . Keene lacks standing to challenge the conveyance"); *see also Rubin v. Mfrs. Hanover Trust Co.*, 661 F.2d 979, 993 (2d Cir. 1981) (same); *Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 80, 95 (S.D.N.Y. 2008) (finding that trustee of one debtor's estate could not prosecute an avoidance action for the benefit of an affiliated debtor's estate because creditors of the affiliated debtor's estate did not hold any economic interest in the debtor's estate).

[40] *In re Regency Holdings (Cayman), Inc.*, 216 B.R. at 375 (citations omitted); *see also supra* note 16.

[41] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (emphasis added).

### III. The "Dominion and Control" Or "Mere Conduit" Defense Does Not Change the Conclusion that Anadarko is Not a Subsequent Transferee

15. As explained above and in the Motion, Anadarko is not a subsequent transferee of any fraudulently transferred property because, *inter alia*, (i) the plain language of § 550(a)(2) requires that fraudulently transferred property *actually be transferred to* a subsequent transferee before liability may lie;[42] (ii) principles of corporate independence provide that a corporate parent's ownership of a subsidiary does not make the subsidiary's assets the parent's; and (iii) common sense dictates that Anadarko cannot be liable as a subsequent transferee when, as here, the Kerr-McGee Defendants were the initial transferees of the challenged transfers and the only Defendants that held the transferred property.[43] Plaintiffs ignore each and every one of these arguments and instead assert that Anadarko is a subsequent transferee "by virtue of its dominion and control over the fraudulently transferred assets."[44]

16. The "dominion and control" test, which was articulated by the Seventh Circuit in *Bonded Financial Services*,[45] and has been adopted in various forms by other circuits,[46] holds that in order to qualify as an initial transferee under § 550(a)(1), a party must not only *receive* the fraudulently transferred property, it must also have "dominion over the money or other asset [and] the right to put the money to one's own purposes."[47] The *Bonded* test therefore limits the liability of initial transferees who

---

[42] Motion at ¶ 19.

[43] *See* Motion at ¶ 21. Although the Response references certain discrete assets that were transferred to affiliates of Anadarko, the Kerr-McGee Defendants still hold the vast majority of the assets at issue. *See* Williams Report at Exhibit 3 (reflecting that the discrete asset transfers involving Kerr-McGee Americas, Ltd., Kerr-McGee Benin Ltd. and Atlantic Exploration and Production Ltd. were valued in the relatively *de minimis* amounts of approximately $7 million, $4 million and $0, respectively).

[44] *See* Response at 8.

[45] *Bonded*, 838 F.2d at 893.

[46] *See In re Finley,* 130 F.3d at 58 ("We [the Second Circuit] join these other circuits in adopting the 'mere conduit' test for determining who is an initial transferee under § 550(a)(1).") (footnote omitted).

[47] *Bonded*, 838 F.2d at 893.

13

do in fact receive fraudulently transferred property (such as escrow agents, law firms and banks),[48] but who nonetheless lack the ability to use the property for their own benefit.[49] The doctrine is inapplicable to the pending facts because it (i) has never been applied where a purported transferee has not in fact received the fraudulently transferred property; and (ii) is a defense used to limit, not enlarge, the liability of a transferee who could not use the property received by it for its own benefit.

17.    Plaintiffs have not cited, and Defendants have not found, a single case that has permitted recovery against a subsequent transferee absent actual receipt of the fraudulently transferred property. Many courts applying the *Bonded* test have expressly held that "in order to be a transferee of the debtor's funds, one must (1) *actually receive* the funds *and* (2) have full dominion and control over them for one's own account."[50] The Second Circuit held—in the very case that it adopted the "mere

---

[48] *See Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re The Warnaco Group, Inc.)*, No. 01 B 41643, 2006 WL 278152, *6 (S.D.N.Y. Feb. 2, 2006) (listing check couriers, banks, law firms holding funds in trust accounts and law firms acting as escrow agents as parties held to be mere conduits); *McHale v. Boulder Capital LLC (In re The 1031 Tax Group, LLC)*, 439 B.R. 47, 69 (Bankr. S.D.N.Y. 2010) (holding that an entity acting as a "financial intermediary" is a mere conduit and not an initial transferee); *Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.)*, 287 B.R. 98, 106 (Bankr. S.D.N.Y. 2002) (holding that an escrow agent was a "mere conduit" because it "never had control over the dividend payments or the right to use them"); *Official Comm. of Unsecured Creditors of Toy King Distribs., Inc. v. Liberty Sav. Bank, FSB (In re Toy King Distribs., Inc.)*, 256 B.R. 1, 144-45 (Bankr. M.D. Fla. 2000) ("Typically, a conduit is a commercial enterprise that has handled the debtor's transfer to a third party consistent with its normal handling of other commercial transactions.") (citation omitted).

[49] *See, e.g., In re Finley*, 130 F.3d at 59 (holding that an insurance broker was a mere conduit because it did not have the right to put funds to its own use but was obligated to transmit them directly to the insurer); *Sec. First Nat'l Bank v. Brunson (Matter of Coutee)*, 984 F.2d 138, 141 (5th Cir. 1993) (holding that a law firm "lacked the requisite dominion" to be found a transferee of funds in its client trust account where it "had no legal right to put the funds to its own use").

[50] *Bailey v. Big Sky Motors (In re Ogden)*, 314 F.3d 1190, 1204 (10th Cir. 2002) (quotation omitted) (emphasis added); *see also Richardson v. F.D.I.C. (In re M. Blackburn Mitchell Inc.)*, 164 B.R. 117, 126 (Bankr. N.D. Cal. 1994) ("In order to be a transferee of the debtor's funds, one must (1) actually receive the funds, *and* (2) have full dominion and control over them for one's own account, as opposed to receiving them in trust or as agent for someone else.") (emphasis in original); *Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 102 (Bankr. D. Del. 2010) (holding that a plaintiff must in fact be a transferee of fraudulently transferred property in order for the *Bonded* test to apply); *Southmark Corp. v. Schulte, Roth & Zabel, L.L.P.*, 242 B.R. 330, 338 (N.D. Tex. 1999) ("Under the dominion or control test, a party is not considered an initial transferee *of a transfer received directly from the debtor* unless that party [also] gains actual dominion or control over the funds.") (emphasis added) (citations omitted); *Fleet Acquisition Corp. v. Pony Express Delivery Servs., Inc. (In re Pony Express Delivery Servs., Inc.)*, 440 F.3d 1296, 1300 (11th Cir. 2006) (stating that the proper inquiry focuses upon "whether the *recipient of* an avoidable transfer of assets is

14

conduit" doctrine—that a transferee "must itself physically receive[] the [fraudulently transferred] property" if it is to be liable as a subsequent transferee.[51] The notion that "dominion and control" alone is sufficient for a finding of § 550(a) liability is therefore contrary to the law of this circuit.[52] Because Anadarko did not *actually receive* the property alleged to have been fraudulently transferred by Plaintiffs, it is not a subsequent transferee. Nothing in *Bonded* or any other decision adopting the mere conduit/dominion and control test eliminates this most fundamental requirement, and for this reason alone, Plaintiffs' claim against Anadarko fails.[53]

---

the initial transferee.") (emphasis added) (citing *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 705 (11th Cir. 2005); *Bonded*, 838 F.2d at 893; *Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.)*, 892 F.2d 26, 28 (4th Cir. 1989); *In re Bullion Reserve of N. Am.*, 922 F.2d at 548-49; *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 974 F.2d 712, 722 (6th Cir. 1992); *In re Coutee*, 984 F.2d at 140-41; *Malloy v. Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*, 33 F.3d 42, 44 (10th Cir. 1994); *In re Finley*, 130 F.3d at 58)).

[51] *In re Finley*, 130 F.3d at 57 (citing *In re Universal Clearing House Co.*, 62 B.R. at 128 n.12 and holding that where an initial transferee transfers assets to a subsequent transferee, the guarantor of the subsequent transferee cannot itself be "an 'immediate or mediate transferee' [under § 550(a)(2)] having never itself physically received the property"); *see also Rupp v. Markgraf*, 95 F.3d 936, 939-40 (10th Cir. 1996) (holding that even though the debtor's principal caused the debtor to make a transfer for his benefit, he was not a transferee because the fraudulently transferred property was not actually conveyed to him); *Tese-Milner v. Brune (In re Red Dot Scenic, Inc.)*, 293 B.R. 116, 121-22 (S.D.N.Y. 2003) (holding that a corporate officer who forced the debtor corporation to make a payment in satisfaction of the officer's personal debt was not an initial transferee because the fraudulently transferred property was not actually conveyed to him); *Faulkner v. Kornman (In re The Heritage Org., L.L.C.)*, 413 B.R. 438, 497 (Bankr. N.D. Tex. 2009) (stating that in determining whether a person is a subsequent transferee, "th[e] Court must first decide if Steadfast's loan to Kornman is a [subsequent] 'transfer' under § 550.").

[52] Indeed, when a parent company has been found liable as a transferee of a subsidiary debtor's assets, the parent company in fact received the transferred assets and thereafter exercised control over those assets by using them for its own purposes. *See, e.g., Erie Marine Enters., Inc. v. Nationsbank, N.A. (In re Erie Marine Enters., Inc.)*, 216 B.R. 529, 536 (Bankr. W.D. Pa. 1998) (holding that when the debtor's parent instructed the debtor's customers to make payments directly to the parent and the parent thereafter used the funds to pay a loan unrelated to the debtor, the parent was a transferee who exercised dominion and control over the transferred assets).

[53] Plaintiffs' claim also fails because they have not presented any evidence that Anadarko actually exercised "dominion and control" over the *transferred assets*, as opposed to the *transferor* of the transferred assets. *See Rupp*, 95 F.3d at 940 ("It is clear that the *Bonded* court's discussion of dominion and control refers to dominion and control over the funds after the disputed transfer, not dominion and control over the transferor before the transfer.") (citing *Bonded*, 838 F.2d at 890). Despite the requirement that the purported transferee actually control the transferred assets, Plaintiffs have merely asserted that Anadarko purchased the stock of Kerr-McGee Corporation and therefore *could have* exercised dominion and control over it and its subsidiary's assets. *See* Complaint ¶¶ 148, 159, 167 (alleging that Anadarko's post-transfer purchase of Kerr-McGee Corporation's

15

18. Use of the doctrine here would subvert its purpose by using it as a sword to *enlarge* liability where none would otherwise exist, rather than (as intended) a defense[54] designed to *limit* liability that would in fact exist absent application of the doctrine. Plaintiffs have not cited, and Defendants have not found, a single case employing the doctrine in the offensive manner now requested by Plaintiffs. The *Bonded* court clearly viewed its ruling as a means of limiting liability even where all other requirements of § 550(a) have been satisfied,[55] not as a means to excise the otherwise applicable limitations of the statute. This conclusion is consistent with the manner in which courts within this circuit apply the doctrine—namely, in the negative, asking not whether a party *is* a transferee because it exercised dominion and control over the transferred property, but whether it *is not* a transferee because it did not exercise dominion and control over the transferred property.[56] Because the "mere conduit"

---

stock "benefited" Anadarko by permitting it to "exercise[] dominion and control over the fraudulently conveyed assets"). Plaintiffs present no evidence that Anadarko in fact exercised dominion and control over the transferred assets.

[54] *See, e.g.*, *Official Comm. of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Servs., Inc. (In re 360networks (USA) Inc.)*, 338 B.R. 194, 200 (Bankr. S.D.N.Y. 2005) (describing the doctrine as the "Conduit Defense"); *In re The Warnaco Group, Inc.,* 2006 WL 278152, at *6 (describing the doctrine as the "'Mere Conduit' Defense to § 550(a) Liability"); *Morris v. Sampson Travel Agency, Inc. (In re U.S. Interactive, Inc.)*, 321 B.R. 388, 395 (Bankr. D. Del. 2005) (describing the doctrine as the "mere conduit defense"); *Dev. Specialists, Inc. v. Hamilton Bank, N.A. (In re Model Imperial, Inc.)*, 250 B.R. 776, 801 (Bankr. S.D. Fla. 2000) (describing the doctrine as the "'mere conduit' defense").

[55] *See Bonded*, 838 F.2d at 892 (justifying the doctrine by listing other limitations on fraudulent transfer recoveries and commenting that "[t]here have always been limits on the pursuit of transfers"); *see also In re Model Imperial, Inc.*, 250 B.R. at 801 (stating that the "mere conduit" defense *limits* liability by "immuniz[ing] a good faith recipient of an otherwise avoidable transfer") (citation omitted).

[56] *See Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 14-15 (S.D.N.Y. 2007) ("Rather than stating that a party is an initial transferee if it exercises 'dominion and control' over the funds, the Second Circuit's version of the test states that a party is *not* an initial transferee if it was a 'mere conduit' of the funds.") (citation omitted); *see also Geltzer v. D'Antona (In re The Cassandra Group)*, 312 B.R. 491, 496 (Bankr. S.D.N.Y. 2004) ("Where an entity does not deal directly with the debtor but acts only as an innocent conduit of funds in a commercial transaction, that party should not be characterized as an initial transferee within the meaning of section 550.") (citations omitted); *Hooker Atlanta (7) Corp. v. Hocker (In re Hooker Invs., Inc.)*, 155 B.R. 332, 337 (Bankr. S.D.N.Y. 1993) ("Parties that act as conduits and simply facilitate the transfer of funds or property from the debtor to a third party generally are not deemed initial transferees for purposes of section 550 of the Code.") (citation omitted).

16

defense is uniformly applied in a manner that limits, not expands, the liability that would otherwise exist under the statute, Plaintiffs' unprecedented request to employ the doctrine offensively must be rejected.

19. Finally, while the mere conduit doctrine generally applies in determining whether an initial transferee is liable under § 550(a)(1), at least one court has stated, without discussion, that the doctrine may also apply to a determination under § 550(a)(2).[57] Whether this *dicta* is correct or incorrect is of no import, however, because, like all other courts, the *Stratton Oakmont* court clearly stated that a subsequent transferee "must have dominion and control over the funds or property [it] _receives_."[58] Under this formulation of § 550(a)(2), Anadarko is not a subsequent transferee because it never received the property subject to the challenged transfers. Accordingly, regardless of whether the mere conduit doctrine applies to only initial transferees or to both initial and subsequent transferees, *Stratton Oakmont* is unavailing, and Plaintiffs' actual and constructive fraudulent transfer claims against Anadarko must be dismissed.

## IV. Plaintiffs Do Not Address Defendants' § 546(e) Defense

20. The Response does not address Defendants' substantive § 546(e) arguments. In response to Plaintiffs' suggestion at the March 22, 2012 pre-trial conference that they were not required to respond unless and until the Court granted Defendants' Motion for an Order Confirming that Defendants Have Preserved the Defense Codified by Section 546(e) of the Bankruptcy Code, or, in the Alternative for Leave to Amend the Answer to the Second Amended Adversary Complaint to Include Such Defense (the "Motion to Confirm"),[59] the Court cautioned Plaintiffs that they might be "walking a line that's a little too fine."[60] Thereafter, Plaintiffs filed their Opposition to the Motion to Confirm and addressed the § 546(e)

---

[57] *Secs. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 313 nn.8 & 9 (Bankr. S.D.N.Y. 1999).

[58] *Id.* at 313 n.9 (emphasis added).

[59] Dkt. No. 310.

[60] March 22, 2012 Hr'g Tr. at 60:18-19.

17

arguments made by Defendants.[61] Accordingly, while Plaintiffs did not respond to the § 546(e) arguments in their Response (which was due on March 26, 2012), they did respond to such arguments on April 6, 2012. Defendants will therefore reply to such arguments in their corresponding reply brief rather than herein.

## CONCLUSION

WHEREFORE, Defendants request that the Court grant the Motion, and any and all other relief which the Court deems just and appropriate.

Houston, Texas
Dated: April 16, 2012

 /s/ Lydia Protopapas

| | |
|---|---|
| Richard A. Rothman (RR 0507) | Melanie Gray (*admitted pro hac vice*) |
| Bruce S. Meyer (BM 3506) | Lydia Protopapas (LP 8089) |
| WEIL, GOTSHAL & MANGES LLP | Jason W. Billeck (*admitted pro hac vice*) |
| 767 Fifth Avenue | WEIL, GOTSHAL & MANGES LLP |
| New York, New York 10153 | 700 Louisiana, Suite 1600 |
| Telephone: (212) 310-8000 | Houston, Texas 77002 |
| Facsimile: (212) 310-8007 | Telephone: (713) 546-5000 |
| | Facsimile: (713) 224-9511 |
| Thomas R. Lotterman (*admitted pro hac vice*) | James J. Dragna (*admitted pro hac vice*) |
| Duke K. McCall, III (*admitted pro hac vice*) | BINGHAM MCCUTCHEN LLP |
| BINGHAM MCCUTCHEN LLP | 355 South Grand Avenue, Suite 4400 |
| 2020 K Street, NW | Los Angeles, California 90071 |
| Washington, DC 20006 | Telephone: (213) 680-6400 |
| Telephone: (202) 373-6000 | Facsimile: (213) 680-6499 |
| Facsimile: (202) 373-6001 | *Counsel to Defendants* |
| | Kenneth N. Klee (KK 5910) |
| | David M. Stern *(admitted pro hac vice)* |
| | KLEE, TUCHIN, BOGDANOFF & STERN LLP |
| | 1999 Avenue of the Stars, 39th Floor |
| | Los Angeles, California 90067 |
| | Telephone: (310) 407-4000 |
| | Facsimile: (310) 407-9090 |

---

[61] Dkt. No. 340.

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment Seeking Dismissal of (I) Constructive Fraudulent Transfer Claims Involving Transfers Made By Tronox LLC; (II) Anadarko Petroleum Corporation as a Subsequent Transferee With Respect to All Alleged Fraudulent Transfers; and (III) All Actual and Constructive Fraudulent Transfer Claims Protected By Section 546(e) of the Bankruptcy Code was served on the following counsel of record on April 16, 2012, as indicated below:

*Via email jonathan.henes@kirkland.com*
Jonathan S. Henes
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022

*Via email jeffrey.zeiger@kirkland.com*
Jeffrey J. Zeiger
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654

*Via email joseph.pantoja@usdoj.gov and robert.yalen@usdoj.gov*
Joseph Pantoja
Robert Yalen
Assistant U.S. Attorney
SOUTHERN DISTRICT OF NEW YORK
86 Chambers Street
New York, New York 10007

*Via email david.zott@kirkland.com*
David J. Zott
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654

Houston, Texas
Dated: April 16, 2012

*/s/ Rene Olvera*
Rene Olvera