# Exhibit A

#2314

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br><br>Tronox Worldwide LLC | Case Number:<br><br>09-10169 (ALG) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>Anadarko Petroleum Corporation and its Affiliates | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>*(If known)* |
| Name and address where notices should be sent:<br><br>Anadarko Petroleum Corporation<br>Attn: Jennifer Gadd Edwards, Esq.<br>1201 Lake Robbins Drive<br>The Woodlands, Texas 77380<br><br>Telephone number:  (832) 636-1000 | Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br>☒ Date Stamped Copy Returned<br>☐ No self addressed stamped envelope<br>☐ No copy to return<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** Unliquidated amount. *See attached.*<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim. |
| **2. Basis for Claim:** Contractual indemnification and other obligations. *See attached.*<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **3. Last four digits of any number by which creditor identifies debtor:** _____<br><br>**3a.** Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☒ Other<br>Describe:<br><br>Value of Property:$_____ Annual Interest Rate___%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $_____ Basis for perfection: _____<br><br>Amount of Secured Claim: $ Unliquidated Setoff Rights_____ Amount Unsecured: $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:**<br><br>$_____ |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| DATE:<br><br>8/10/09 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY<br><br>RECEIVED<br><br>AUG 11 2009<br><br>KURTZMAN CARSON CONSULTAN |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# WEIL, GOTSHAL & MANGES LLP

700 LOUISIANA
SUITE 1600
HOUSTON, TEXAS 77002-2784
(713) 546-5000
FAX: (713) 224-9511

AUSTIN
BEIJING
BOSTON
BUDAPEST
DALLAS
DUBAI
HONG KONG
FRANKFURT
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

DIRECT LINE
713-546-5328
rene.olvera@weil.com

August 10, 2009

**BY FEDERAL EXPRESS**

Kurtzman Carson Consultants LLC
Attn:  Tronox Claims Processing Center
2335 Alaska Avenue
El Segundo, California 90245

Re:  Anadarko Petroleum Corporation – Proofs of Claim

Enclosed for filing are Anadarko Petroleum Corporation's proofs of claim to be filed in connection with the following Tronox Incorporated debtor cases.  Please file-stamp one set and return in the Federal Express envelope which also includes a prepaid packing slip.

Tronox Luxembourg S.ar.l., Case No. 09-10155
Tronox Incorporated, Case No. 09-10156
Cimarron Corporation, Case No. 09-10157
Southwestern Refining Company, Inc., Case No. 09-10158
Transworld Drilling Company, Case No. 09-10159
Triangle Refineries, Inc., Case No. 09-10160
Triple S Environmental Management Corporation, Case No. 09-10161
Triple S Mineral Resources Corporation, Case No. 09-10162
Triple S Refining Corporation, Case No. 09-10163
Triple S, Inc., Case No. 09-10164
Tronox Finance Corp., Case No. 09-10165
Tronox Holdings, Inc., Case No. 09-10166
Tronox LLC, Case No. 09-10167
Tronox Pigment (Savannah) Inc., Case No. 09-10168
Tronox Worldwide LLC, Case No. 09-10169

Best regards,

Rene Olvera
Business Finance & Restructuring Paralegal

## ATTACHMENT TO PROOF OF CLAIM[1]

### *Background*

1.    Kerr-McGee Corporation ("Kerr-McGee")[2] and/or certain of its affiliates and Tronox Incorporated ("Tronox") and/or certain of its affiliates are parties to, among other agreements, that certain (i) Master Separation Agreement (together with any and all annexes, appendices and agreements ancillary thereto, and any amendments thereof, the "MSA"), dated November 28, 2005, among Kerr-McGee, Kerr-McGee Worldwide Corporation ("Kerr-McGee Worldwide") and Tronox; (ii) Assignment, Assumption, and Indemnity Agreement (the "Indemnity Agreement"), dated December 31, 2002, between Kerr-McGee Oil and Gas Corporation ("Kerr-McGee Oil & Gas") and Kerr-McGee Chemical Worldwide LLC ("Kerr-McGee Chemical"); and (iii) Assignment Agreement (the "Assignment Agreement"), dated December 31, 2002, between Kerr-McGee Chemical and Kerr-McGee Oil & Gas.  True and correct copies of the MSA, the Indemnity Agreement, and the Assignment Agreement are attached as Exhibit A, Exhibit B, and Exhibit C, respectively to the proof of claim filed by Anadarko Petroleum Corporation and its affiliates against Tronox in Case No. 09-10156 (ALG).

2.    Kerr-McGee and its existing subsidiaries were acquired by Anadarko Petroleum Corporation (collectively, "Anadarko") in August 2006.

---

[1]    The documents supporting this proof of claim are voluminous and therefore are not attached hereto. Instead, each such document has been attached as Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E and Exhibit F to the proof of claim filed by Anadarko Petroleum Corporation and its affiliates against Tronox Incorporated in Case No. 09-10156(ALG).

[2]    Kerr-McGee refers to the company as it existed after the internal restructuring implemented in May 2001 pursuant to an Agreement and Plan of Merger, dated May 13, 2001, whereby the company that was then known as Kerr-McGee ("Old Kerr-McGee") became a subsidiary of the company currently known as Kerr-McGee.  As part of the restructuring, Old Kerr-McGee was renamed Kerr-McGee Operating Corporation and subsequently changed its name to Kerr-McGee Chemical (defined below).

3.     On January 12, 2009 (the "Petition Date"), Tronox and certain of its

affiliated debtors (collectively, the "Debtors")[3] each commenced a voluntary case under chapter

11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court"). As set forth in the Bankruptcy Court's order

dated January 13, 2009, the Debtors' chapter 11 cases are being jointly administered pursuant to

Rule 1015 of the Federal Rules of Bankruptcy Procedure.

4.     Pursuant to section 1102 of the Bankruptcy Code, the United States

Trustee for the Southern District of New York appointed a (i) statutory committee of unsecured

creditors (the "Creditors' Committee") on January 21, 2009 and (ii) committee of equity holders

(the "Equity Committee") on March 13, 2009.

5.     On May 12, 2009, certain of the Debtors commenced an adversary

proceeding (the "Adversary Proceeding") and filed a complaint (the "Complaint") against

Anadarko and Kerr-McGee asserting claims for, among other things, fraudulent transfer, civil

conspiracy, breach of fiduciary duty, equitable subordination and disallowance of any claims

filed by Anadarko and/or Kerr-McGee. *See* Adv. Pro. No. 09-1198, Docket No. 1.

6.     The United States of America (the "Government") filed a motion to

intervene in the Adversary Proceeding, along with its proposed complaint-in-intervention

asserting claims under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3301, et seq.

against Anadarko, Kerr-McGee, and certain of the Debtors. *See* Adv. Pro. No. 09-1198, Docket

No. 5. In addition, both the Creditors' Committee and the Equity Committee filed motions to

---

[3]     The Debtors in these cases are Tronox Luxembourg S.ar.L; Tronox Incorporated; Cimarron Corporation;
Southwestern Refining Company, Inc.; Transworld Drilling Company; Triangle Refineries, Inc.; Triple S
Environmental Management Corporation; Triple S, Inc.; Triple S Minerals Resources Corp.; Triple S
Refining Corporation; Tronox LLC; Tronox Finance Corp.; Tronox Holdings, Inc.; Tronox Pigments
(Savannah) Inc.; and Tronox Worldwide LLC.

intervene in the Adversary Proceeding. *See* Adv. Pro. No. 09-1198, Docket Nos. 19 and 21, respectively.

7.     Pursuant to an order of the Bankruptcy Court dated June 15, 2009, the Government was permitted to intervene in the Adversary Proceeding and on June 17, 2009, the Government filed its complaint-in-intervention (the "Government Complaint"). *See* Adv. Pro. No. 09-1198, Docket Nos. 22 and 25, respectively.

8.     Pursuant to an order of the Bankruptcy Court dated July 14, 2009, the Creditors' Committee was permitted to intervene in the Adversary Proceeding. *See* Adv. Pro. No. 09-1198, Docket No. 41.

9.     On July 31, 2009, Anadarko and Kerr-McGee filed motions to dismiss the Complaint and the Government Complaint. *See* Adv. Pro. No. 09-1198, Docket Nos. 45 and 47, respectively.

***The Indemnity Agreement and Assignment Agreement***

10.     As of the date of the Indemnity Agreement and Assignment Agreement, Kerr-McGee Oil & Gas and Kerr-McGee Chemical were wholly owned subsidiaries of Kerr-McGee. Kerr-McGee Oil & Gas was the direct parent of certain subsidiaries that comprised and operated Kerr-McGee's oil and gas exploration and production business (the "E&P Business") and Kerr-McGee Chemical was the direct parent of certain subsidiaries that comprised and operated Kerr-McGee's chemical business and certain discontinued businesses (collectively, the "Chemical Business").

11.     Pursuant to the Assignment Agreement, Kerr-McGee Chemical assigned "all of its right, title and interest in and to all properties, real, personal, corporeal or incorporeal, absolute or contingent, and any and all rights, benefits and privileges, whether known or

unknown, express or implied, absolute or contingent and whether due or to become due" arising

out of the E&P Business and any liabilities assumed by Kerr-McGee Oil & Gas under the

Indemnity Agreement (discussed below).  Assignment Agreement § 1.

12.    Pursuant to the Indemnity Agreement, which is annexed to the

Assignment Agreement as Appendix A, Kerr-McGee Oil and Gas assumed all of the obligations

and liabilities arising out of the E&P Business (collectively, the "E&P Liabilities"), other than

those that had already been assumed by a third party prior to execution of the Indemnity

Agreement.  Indemnity Agreement §§ 1(a), 2.  The E&P Liabilities expressly excluded any

liabilities or obligations related to the "contract drilling business or the crude oil and associated

feed stock refining and petroleum product manufacturing and marketing business" that were

previously conducted by Kerr-McGee Chemical or its affiliates or predecessors.  *Id.*  Kerr-

McGee Chemical retained such liabilities, as well as

> any obligations, liabilities or commitments of any nature . . .
> arising out of or incurred in connection with any businesses,
> operations, and assets, or properties currently or previously
> conducted or owned by [Kerr-McGee Chemical], its [a]ffiliates
> or its predecessors . . . regardless of their nature, and whether
> known or unknown, express or implied, absolute or contingent
> and whether due or to become due.

(collectively, the "Chemical & Other Liabilities").  *Id.* at § 1(b).

13.    In addition to the assumption and assignment of liabilities, the Indemnity

Agreement provides for reciprocal indemnity obligations between the parties.  Accordingly,

Kerr-McGee Chemical (now known as Tronox Worldwide)[4] is required to indemnify Kerr-

McGee Oil & Gas with respect to "any and all actual losses, liabilities, damages, judgments,

settlements and expenses (including reasonable attorneys' fees) incurred by [Kerr-McGee Oil &

---

[4]    On or about September 12, 2005, Kerr-McGee Chemical changed its name to Tronox Worldwide LLC
("Tronox Worldwide"), which is now a wholly-owned subsidiary of Tronox and a debtor herein.

Gas]" that relate to the Chemical & Other Liabilities.  *Id.* at § 3.  Similarly, Kerr-McGee Oil &

Gas is required to indemnify Kerr-McGee Chemical with respect to "any and all actual losses,

liabilities, damages, judgments, settlements and expenses (including reasonable attorneys' fees)

incurred by [Kerr-McGee Chemical]" that relate to the E&P Liabilities.  *Id.*

   14. Each of Kerr-McGee Chemical and Kerr-McGee Oil & Gas is required to

give prompt, written notice to the other of any third party claim giving rise to an indemnity

obligation, along with an estimated amount of any such claim.  *Id.*  Subject to certain conditions,

the party from whom indemnification is sought has the right to assume the defense of any such

third party claim by giving notice to the party seeking indemnification within 60 days of being

notified of such claim.  *Id.*

### *The Master Separation Agreement*

   15. The MSA was executed on November 28, 2005 in connection with the

separation of the Chemical Business from the E&P Business.  Tronox had previously been

formed to effectuate the separation and, as contemplated by the MSA, all of Kerr-McGee's

interests in the existing Chemical Business were transferred to Tronox.

   16. In addition, Kerr-McGee Worldwide (the former parent of the Chemical

Business) and Tronox agreed to reciprocal indemnity obligations in connection with liabilities

arising from the separated businesses.  Pursuant to section 5.1 of the MSA, Tronox is required to

indemnify Kerr-McGee, its affiliates and each of their respective past and present directors,

officers and employees, and each of their heirs, executors, successors, and assigns from and

against, *inter alia*, any and all liabilities relating to (i) the Chemical & Other Liabilities, (ii) any

businesses, operations or assets previously or currently conducted or owned by Tronox or any of

its predecessors (other than the E&P Liabilities), and (iii) any obligations of Tronox under any

agreement entered into in connection with the MSA, including without limitation, the Tax

Sharing Agreement, Employee Benefits Agreement, and the Transition Services Agreement

(collectively, the "Tronox Liabilities").  Similarly, Kerr-McGee Worldwide is required to

indemnify Tronox, its affiliates and each of their respective directors, officers, and employees,

and each of their heirs, executors, successors and assigns from and against, *inter alia*, any and all

liabilities relating to the E&P Liabilities.  MSA § 5.2.

      17.    The MSA also sets forth the procedures to be followed when a party seeks

indemnification under the MSA.  In particular, the party requesting indemnification must give

the party from whom indemnification is sought written notice containing (i) a description and

estimated amount (if known) of any liabilities incurred or expected to be incurred by the

requesting party, whether they arise from matters solely between the parties or third-party

claims, (ii) an explanation of the basis for the indemnity request (to the extent of known facts),

and (iii) a demand for payment of such liabilities.  MSA § 5.3.  Upon receiving written notice of

a third-party claim or action that may trigger an obligation to indemnify, the party from whom

indemnification is sought may assume the control or defense of such claim or action after

providing written notice to the party requesting indemnification.  *Id.*

### *Anadarko's and Kerr-McGee's Claims Against Tronox*

**A.    Claims Related to Certain Litigation Costs For Which Tronox is Liable**

      18.    Prior to the Petition Date, certain litigation was filed naming Tronox,

Kerr-McGee, Anadarko, and/or one or more of their affiliates as defendants and asserting claims

for, among other things, personal injury, environmental liabilities, and property damage.  Certain

of the claims (collectively, the "Tronox-Related Claims") asserted against Kerr-McGee and/or

Anadarko or their affiliates arise from the Tronox Liabilities and, in accordance with the MSA, are liabilities for which Tronox is required to indemnify Kerr-McGee and/or Anadarko.

19.    Prior to the Petition Date, either Kerr-McGee or Anadarko notified Tronox of the Tronox-Related Claims and requested that Tronox defend, indemnify and hold it harmless against such claims, in accordance with the MSA.  Tronox accepted in writing the defense and indemnity obligations related to the Tronox-Related Claims, or had otherwise been defending such claims, in accordance with the terms of the MSA.  A non-exclusive list of the litigation in which the Tronox-Related Claims have been asserted is attached as Exhibit D and certain of the respective letters wherein Tronox agreed to assume the control and defense of the Tronox-Related Claims are attached as Exhibit E to the proof of claim filed by Anadarko against Tronox in Case No. 09-10156 (ALG).

20.    Despite having previously acknowledged in writing that the underlying liabilities asserted in certain of the litigation arise from the Tronox Liabilities and, as a result, having accepted the defense and indemnity obligations for the Tronox-Related Claims, Tronox has advised Kerr-McGee and/or Anadarko that it will not defend the Tronox-Related Claims on a going-forward basis.  As such, Kerr-McGee and/or Anadarko or their affiliates must now defend the pending Tronox-Related Claims and may be required in the future to defend similar claims for which Tronox is liable.  Moreover, Kerr-McGee and/or Anadarko or their affiliates may be required to defend similar claims arising from the Tronox Liabilities for which they have not notified Tronox and requested indemnification and/or Tronox has not accepted the defense and indemnity obligations.  Accordingly, Anadarko, Kerr-McGee and each of their respective affiliates (as applicable) hereby assert a claim for any and all costs that have been or may be incurred or paid in connection with the Tronox-Related Claims and any similar claims that are

currently pending or that may subsequently arise (including, but not limited to, any defense

costs; attorneys' fees permitted by law, contract, or otherwise; settlement costs, damages or

judgments assessed against Anadarko, Kerr-McGee or their affiliates; and any related interest

thereon) to the extent the costs are not characterized as administrative claims and are instead

characterized as prepetition claims.  The defense costs incurred to date by Anadarko, Kerr-

McGee and/or their affiliates in connection with the pending Tronox-Related Claims are

included in Exhibit D to the proof of claim filed by Anadarko against Tronox in Case No. 09-

10156 (ALG).

### B.    Other Litigation Claims

21.    As set forth in Tronox's Schedules of Assets and Liabilities and

Statements of Financial Affairs, Tronox is involved in numerous pending and/or threatened

lawsuits and administrative proceedings arising out of its current or former business operations.

*See* Global Notes Pertaining to All Debtors' Schedules of Assets and Liabilities and Statements

of Financial Affairs at Global Note 19 and Schedule F – Creditors Holding Unsecured

Nonpriority Claims (Main Case, Docket No. 275); Statement of Financial Affairs, Question 4.a.

(Main Case, Docket No. 276).  The proceedings are pending in various jurisdictions, involve

numerous plaintiffs and include claims for, among other things, "personal injuries, property

damages, breach of contract, injury to the environment, including natural resource damages, and

non-compliance with, or lack of properly updated or renewed, permits."  Tronox Inc., Annual

Report (Form 10-K), at 13 (Mar. 14, 2008); Schedule F – Creditors Holding Unsecured

Nonpriority Claims (Main Case, Docket No. 275); Statement of Financial Affairs, Question 4.a.

(Main Case, Docket No. 276).  In addition, Tronox has indicated that "there may be thousands of

unknown claimants who may have environmental, personal injury, property or any other

[c]laims" against it.  Tronox's Motion for Entry of an Order (A) Setting Bar Dates for Filing

Proofs of Claim, (B) Approving the Form and Manner for Filing Proofs of Claim and (C) Approving Notice Thereof at ¶ 20 (Main Case, Docket No. 399).

22.     To the extent that Anadarko or any of its subsidiaries, including Kerr-McGee and its subsidiaries, are (or become) a defendant in any of the foregoing pending proceedings or any similar proceedings arising in the future, and damages or judgments are assessed against any such parties and/or they are required to pay any damages to the respective plaintiffs in the proceedings, Anadarko hereby asserts a claim against Tronox for any such costs, as well as any other costs (including any attorneys' fees permitted by law, contract, or otherwise), to the extent that the costs arise from, or relate to, the Tronox Liabilities.

**C.     Claims Related to Settlement Agreements and Consent Decrees Under Which Anadarko May be Liable**

23.     The Debtors have indicated that they are parties to settlement agreements with third parties that are potentially responsible for, among other things, environmental remediation costs, and/or are bound by consent decrees together with those parties for such costs. *See* Global Notes Pertaining to All Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs at Global Note 19 (Main Case, Docket No. 275). The Debtors have also indicated that the settlement agreements and consent decrees provide for contribution and/or recovery of costs from each such third party. *Id.* To the extent that Anadarko or any of its subsidiaries, including Kerr-McGee and its subsidiaries, are (or become) parties to any such settlement agreement or consent decree and/or are required to pay any environmental remediation or other related costs thereunder, Anadarko hereby asserts a claim against Tronox for such costs to the extent that the costs arise from, or relate to, the Tronox Liabilities.

**D.      Claims Related to Environmental Remediation Costs**

24.      In accordance with the MSA, Tronox is required to pay environmental remediation costs with respect to any sites associated with any former businesses or assets operated by Tronox or its predecessors-in-interest (other than the E&P Business).[5] *See* MSA §§ 2.5(a) and (i), Indemnity Agreement § 1(b).  A non-exclusive list of the sites for which Tronox is responsible (collectively, the "Tronox Sites") pursuant to the MSA, Indemnity Agreement, or otherwise, is attached as Exhibit F to the proof of claim filed by Anadarko against Tronox in Case No. 09-10156 (ALG).  In addition, Tronox is obligated to indemnify Anadarko for, *inter alia*, any costs it incurs related to the Tronox Sites. *See* MSA § 5.1.

25.      Certain governmental and regulatory agencies have notified Anadarko that they are investigating whether Anadarko or its affiliates may be responsible for environmental cleanup and remediation costs associated with certain Tronox Sites.  Further, upon information and belief, Tronox has defaulted on its obligation to perform remediation activities and pay remediation costs related to certain of the Tronox Sites.  To the extent that Anadarko or any of its subsidiaries, including Kerr-McGee and its subsidiaries, pays or incurs (i) any costs associated with remediation and/or related activities at any Tronox Sites, including the Tronox Sites identified below; and/or (ii) other remediation and related costs arising in connection with the Tronox Sites and/or the Tronox Liabilities (collectively, the "Remediation Costs"), Tronox is required to indemnify Anadarko for those costs, in accordance with the terms of the MSA.  Accordingly, Anadarko hereby asserts a claim against Tronox for any such Remediation Costs (exclusive of any reimbursement costs paid by Anadarko pursuant to the MSA).

---

[5]      Certain of these costs may be subject to reimbursement by Anadarko. *See* MSA § 2.5.

1.    **The Brine Site**

26.    Anadarko has been notified by the Environmental Protection Agency (the "EPA") that it may be responsible for environmental remediation costs associated with the Brine Service Company site (the "Brine Site") located in Corpus Christi, Texas, which is made up of former waste disposal pits, mainly containing metal deposits, including barium, cadmium, chromium, lead, and mercury. Southwestern Refining Company, Inc., which was formerly a Kerr-McGee subsidiary and is now a subsidiary of Tronox, previously operated a refinery that contributed waste to the Brine Site. Although the refinery was sold in 1995, the liabilities (if any) associated with the refinery were incurred by Tronox and/or its predecessors-in-interest. The Indemnity Agreement memorializes the retention by Tronox and its predecessors-in-interest of such liabilities. *See* Indemnity Agreement at § 1(b). Accordingly, any liabilities associated with the Brine Site are Tronox Liabilities. *See* MSA § 5.1.

27.    The EPA alleges that the waste disposal pits at the Brine Site caused toxic run-off that has contaminated Tule Lake, a nearby wetland area, which flows into (and may have contaminated) other bodies of water. Anadarko and the seven other corporations (which include Tronox) identified by the EPA as potentially responsible parties have been negotiating an administrative order of consent with the EPA regarding its investigation and feasibility study related to the environmental damage and clean up required for the Brine Site. Tronox has recently withdrawn from these negotiations. Based on the negotiations with the EPA, the parties currently estimate that an investigation and feasibility study regarding the environmental damage at the Brine Site will cost in excess of $1,000,000, while an investigation and feasibility study regarding Tule Lake will cost approximately $835,000. In addition, the EPA has indicated that it has already spent approximately $491,000 in oversight costs in connection with actual remedial

work at the Brine Site and expects to spend an additional $500,000 in the future for oversight costs. The scope and costs of any clean up activities that may ultimately be undertaken in connection with the Brine Site and/or Tule Lake is currently unknown, but the parties anticipate that the cost will be in the millions of dollars.

28.     To the extent that Anadarko is required to pay any costs associated with the Brine Site that arise from or relate to the Tronox Liabilities, including costs related to remediation activities, Anadarko hereby asserts a claim against Tronox for any such costs.

### 2.     The Texarkana Site

29.     Anadarko has been notified by the State of Texas and Federal Natural Resources Trustees[6] (collectively, the "Trustees") that they intend to perform a natural resources damage assessment and restoration plan in connection with the operation of a former wood treating facility located in Texarkana, Bowie County, Texas (the "Texarkana Site"). The Trustees assert that hazardous chemicals, including polycylic hydrocarbons, metal and other constituents associated with the process of preserving wood, were released from the Texarkana Site at levels that are potentially or actually harmful to natural resources in Days, Waggoner and Howard Creeks. The natural resources that have been harmed, or are at risk for harm, may include wildlife, fisheries, water quality, sediments and plant communities in and along the creeks. The Trustees have determined that further assessment of the damages is warranted and that restoration of the injured resources is feasible. It is unclear, however, what response actions will be required and the costs for such actions.

---

[6]     The Federal Natural Resource Trustees consist of the United States Department of Interior, represented by the United States Fish and Wildlife Services and the Texas Parks and Wildlife Department, the Texas General Land Office and the Texas Commission on Environmental Quality, represented by the State of Texas.

30.    A former Kerr-McGee subsidiary (and predecessor-in-interest to Tronox) that was part of the Chemical Business owned and operated the Texarkana Site, which was decommissioned in 2004.  As such, the liabilities (if any) associated with the Texarkana Site were incurred by Tronox and/or its predecessors-in-interest.  The Indemnity Agreement memorializes the retention by Tronox and its predecessors-in-interest of such liabilities.  *See* Indemnity Agreement at § 1(b).  Accordingly, any liabilities associated with the Texarkana Site are Tronox Liabilities.  *See* MSA § 5.1.

31.    Anadarko has informed the Trustees that neither it nor its affiliates are liable for the damages arising from the operation of the Texarkana Site.  To the extent, however, that Anadarko is required to pay costs associated with the Texarkana Site, including costs related to any such remediation activities, Anadarko hereby asserts a claim against Tronox for any such costs.

**3.    The Church Rock and Navajo Nation Sites**

32.    The EPA is currently investigating the actual or threatened release of hazardous substances at uranium mining and milling sites located in McKinley County, New Mexico (the "Church Rock Site") and in and around the Navajo Nation (the "Navajo Nation Sites") in order to determine the nature and extent of any contamination, assess the effects of such contamination, and identify activities and parties that contributed to the contamination.  The EPA has requested information from Anadarko, pursuant to section 104(e)(2) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (as amended, "CERCLA"), regarding the ownership and operation of the uranium mining and milling facilities at the Church Rock Site and the Navajo Nation Sites.

33.     A former Kerr-McGee subsidiary (and predecessor-in-interest to Tronox) that was part of Kerr-McGee's nuclear business, which was a discontinued business within the Chemical Business, previously operated the uranium mines at the Church Rock and/or Navajo Nation Sites. While Tronox and its predecessors-in-interest have sold the mining rights with respect to the Church Rock and/or Navajo Nation Sites, the liabilities (if any) associated with the sites were incurred by Tronox and/or its predecessors-in-interest. The Indemnity Agreement memorializes the retention by Tronox and its predecessors-in-interest of such liabilities. *See* Indemnity Agreement at § 1(b). Accordingly, any liabilities associated with the Church Rock and/or Navajo Nation Sites are Tronox Liabilities. *See* MSA § 5.1.

34.     As the EPA's claim is in the investigation phase, the scope of any clean up activities that may be undertaken at the Church Rock Site and Navajo Nation Sites is currently unknown. To the extent that Anadarko is ultimately required to pay any costs associated with the Church Rock Site and/or Navajo Nation Sites, including costs related to remediation activities, Anadarko hereby asserts a claim against Tronox for any such costs.

**4.     The Tower Chemical Site**

35.     The EPA is investigating the actual or threatened release of hazardous substances, pollutants or contaminants, or hazardous wastes on or around a former pesticide manufacturing facility located near Clermont, Lake County, Florida (the "Tower Chemical Site"). The EPA alleges that the Tower Chemical Site discharged acidic wastewater into an unlined percolation/evaporation pond that ultimately overflowed and ran into the Gourd Neck of Lake Apopka and harmed vegetation and aquatic animals. The EPA also alleges that waste was burned and buried at the Tower Chemical Site and that high levels of certain pesticides and related contaminants were found at the site. The EPA indicated that temporary measures were

taken in 1983, and permanent measures were taken in 2006, to address the groundwater, soil and sediment contamination at the Tower Site.

36.    The EPA advised Anadarko that it received information indicating that Kerr-McGee may have conducted business with, or sent materials to, the Tower Site.  The EPA has requested information from Anadarko, pursuant to section 104(e)(2) of CERCLA, regarding the materials that may have been generated, treated, stored, disposed of at, or transported to, the Tower Site and the nature or extent of a release or threatened release of a hazardous substance or pollutant, or contaminant at, or from, the Tower Site.

37.    A former Kerr-McGee subsidiary (and predecessor-in-interest to Tronox) that was part of the Chemical Business may have conducted business with, or sent materials to, the Tower Chemical Site.  As such, the liabilities (if any) associated with the Tower Chemical Site were incurred by Tronox and/or its predecessors-in-interest.  The Indemnity Agreement memorializes the retention by Tronox and its predecessors-in-interest of such liabilities.  *See* Indemnity Agreement at § 1(b).  Accordingly, any liabilities associated with the Tower Chemical Site are Tronox Liabilities.  *See* MSA § 5.1.

38.    As the EPA's claim is in the investigation phase, it is currently unknown whether there will be clean up activities at the Tower Chemical Site, or the costs related to any such clean up.  To the extent that Anadarko is ultimately required to pay any costs associated with the Tower Chemical Site, including costs related to remediation activities, Anadarko hereby asserts a claim against Tronox for any such costs.

### 5.    The Ambrosia Lake Site

39.    Tronox's predecessors-in-interest owned and operated a uranium ore processing facility located in McKinley County, New Mexico (the "Ambrosia Lake Site").

While the Ambrosia Lake Site was sold in 1989 to Rio Algom Mining LLC ("Rio Algom"), Tronox's predecessor-in-interest agreed to, among other things, indemnify Rio Algom for environmental costs related to the site.  Upon information and belief, Rio Algom has sued Tronox seeking $120 million for pension and environmental remediation costs related to the Ambrosia Lake Site.  Additionally, upon information and belief, the Ambrosia Lake Site is currently in reclamation and being restored to its natural state.

40.    The liabilities (if any) associated with the Ambrosia Lake Site were incurred by Tronox and/or its predecessors-in-interest.  The Indemnity Agreement memorializes the retention by Tronox and its predecessors-in-interest of such liabilities.  *See* Indemnity Agreement at § 1(b).  Accordingly, any liabilities associated with the Ambrosia Lake Site are Tronox Liabilities.  *See* MSA § 5.1.  To the extent that Anadarko is required to pay any costs associated with the Ambrosia Lake Site, including costs related to reclamation and remediation activities, Anadarko hereby asserts a claim against Tronox for any such costs.

**E.    Claims for Other Costs Associated With the Tronox Liabilities**

41.    In accordance with the MSA, Tronox is obligated to indemnify Anadarko for any costs that it incurs arising from or relating to the Tronox Liabilities.  *See* MSA § 5.1.  To the extent that Anadarko or any of its subsidiaries, including Kerr-McGee and its subsidiaries, is required to pay any costs (other than reimbursement costs pursuant to the MSA) associated with the Tronox Liabilities, whether such costs relate to remediation activities at the Tronox Sites, litigation, or otherwise, Anadarko hereby asserts a claim against Tronox for all such costs.

**F.    Claims Arising From Agreements Between Tronox and Anadarko, and Each of Their Respective Affiliates**

42.    Tronox and/or certain of its affiliates are parties to various agreements with Anadarko and/or Kerr-McGee or certain of their affiliates, including the MSA, Indemnity

Agreement, and Assignment Agreement.  In accordance with the MSA, Tronox has, among other obligations, the exclusive right and responsibility to "direct, control, manage, and participate in the investigation of the physical circumstances surrounding any [Tronox Site] or the clean-up, governmental response, removal or remediation required by any Environmental Laws at any such site." *See* MSA § 2.5(i)(x).  Upon information and belief, Tronox has ceased or refused to perform remediation activities at certain of the Tronox Sites and, therefore, is currently in breach of its obligations under the MSA.  Accordingly, Anadarko hereby asserts a claim for breach of the MSA and seeks damages related to such breach.  To the extent Tronox is otherwise in breach of the MSA, Indemnity Agreement, Assignment Agreement or any other agreements between the parties, Anadarko hereby asserts a claim for any such current breach and any future breach thereof and seeks damages related to each such breach.

43.     Anadarko also asserts a claim for any other costs that it may incur or pay which arise from or relate to obligations of Tronox and/or its affiliates under the MSA, Indemnity Agreement, Assignment Agreement or any other agreements between the parties.

### G.    Claims for Subrogation

44.     To the extent that Anadarko or any of its subsidiaries, including Kerr-McGee and its subsidiaries, is (i) liable with the Debtors on any third-party claim related to a Tronox Liability and (ii) pays such claim to the third-party, section 509(a) of the Bankruptcy Code provides that Anadarko may subrogate to the rights of such creditor to the extent of the payment.  Accordingly, Anadarko hereby asserts a right of subrogation to the rights of any such creditor.

### H.    Claims for Costs Associated with Securities Fraud Litigation

45.     On July 10, 2009 and July 21, 2009, securities class action lawsuits (collectively, the "Class Action Lawsuits") were filed in the United States District Court for the

Southern District of New York against Anadarko, Kerr-McGee, and certain current or former

officers and directors of Kerr-McGee and Tronox.  The Class Action Lawsuits were brought on

behalf of all purchasers of Tronox's common stock between November 28, 2005 and January 12,

2009 and allege, among other things, that the defendants are liable as participants in a fraudulent

scheme that operated as a fraud on purchasers of Tronox common stock by disseminating

materially false and misleading statements and/or concealing material adverse facts related to

Tronox's business, the environmental and tort liabilities for which it was responsible, and its

financial condition.

46.    With respect to the registration statement and prospectus filed with the

Securities and Exchange Commission in connection with the initial public offering of Tronox

shares, Tronox is primarily liable for any "untrue statement or alleged untrue statement of a

material fact therein, or omission or alleged omission to state a material fact therein, which is

necessary to make the statements contained therein not misleading, in any case to the extent

relating to [Tronox]" and is required to indemnify Anadarko for any liabilities related thereto.

*See* MSA §§ 5.1(ii) and (v).  As such, to the extent that Anadarko or any of its subsidiaries,

including Kerr-McGee and its subsidiaries, are liable for any claims asserted in the Class Action

Lawsuits or any similar lawsuits that might be filed against them, Anadarko hereby asserts a

claim against Tronox for any and all costs related thereto, including attorneys' fees to the extent

permitted by law.

I.    **Claims Related to Avoided Transfers**

47.    In the Complaint, Tronox asserts that certain asset and other transfers

among Kerr-McGee or its affiliates and Tronox or its affiliates, including any assignments and

transfers in connection with the Assignment Agreement and the Indemnity Agreement

(collectively, the "Transfers"), should be avoided pursuant to section 544 of the Bankruptcy

Code and the Oklahoma Uniform Fraudulent Transfer Act. *See* Complaint at ¶¶ 126-152. To the extent that any such Transfers are avoided, Tronox will be responsible for any liabilities and obligations that were assigned to Kerr-McGee or its affiliates pursuant to such agreements— namely, the liabilities and obligations associated with the E&P Business. As such, Anadarko hereby expressly reserves its right to assert a claim against Tronox for any and all liabilities resulting from the avoidance of such Transfers, including any liabilities that Anadarko and/or Kerr-McGee have paid in reliance on the effectiveness of such transfers.

### J.    Claims Related to Kerr-McGee Quebec ULC

48.    Kerr-McGee Quebec ULC ("Kerr-McGee Quebec") was a subsidiary of Kerr-McGee that operated within the company's battery business. On or about December 13, 2006, Kerr-McGee Quebec was dissolved. Anadarko has recently been advised by the Canada Revenue Agency (the "CRA") that Tronox has paid payroll taxes and filed payroll tax reports with the CRA under the name Kerr-McGee Quebec and the business number previously associated with Kerr-McGee Quebec. Kerr-McGee Quebec has, however, never been a subsidiary of Tronox.

49.    Upon information and belief, Tronox ceased making payments to the CRA in May or June 2008. To the extent that Anadarko or any of its subsidiaries, including Kerr-McGee, incurs or pays any costs (of any nature) associated with Tronox's use of Kerr-McGee Quebec's business name and/or number, Anadarko hereby asserts a claim for any and all such costs.

### *Reservation of Rights*

50.    Anadarko reserves the right to amend and/or supplement this claim and to assert any and all other claims of whatever kind or nature it has, or that it may have at any time. The filing of this claim shall not be deemed a waiver of any such claims. Additionally, to the

extent that Anadarko raises any additional claims, such claims may be based on provisions of the

MSA, Indemnity Agreement and/or the Assignment Agreement that are not specifically

described herein, and/or any provision(s) of any other agreement(s) with the Debtors that

Anadarko deems relevant to such claims.

      51.    Nothing contained herein shall be construed as a waiver of Anadarko's

right to treat any claim set forth herein as an administrative claim, to the extent any such claim is

in fact an administrative claim pursuant to section 503 of the Bankruptcy Code.