# Exhibit C

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF New York | Claim #14256  Date Filed: 9/11/2010  **PROOF OF CLAIM** |

| Name of Debtor:<br><br>Tronox Worldwide LLC | Case Number:<br><br>09-10169 (ALG) |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>Anadarko Petroleum Corporation and its Affiliates | ☑ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:** 2314 & 14140<br>(*If known*) |

Name and address where notices should be sent:

Anadarko Petroleum Corporation
Attn: Jennifer Gadd Edwards, Esq.
1201 Lake Robbins Drive
The Woodlands, Texas 77380

Telephone number:  (832) 636-1000

Filed on:  8/11/2009 & 9/11/2009

■ **Date Stamped Copy Returned**
☐ **No self addressed stamped envelope**
☐ **No copy to return**

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** *See attached.*

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Rejection damages, contractual indemnification, and other obligations.
    *See attached.*
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a.** Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**  ☐ Real Estate    ☐ Motor Vehicle  ☒ Other
**Describe:**

**Value of Property:**$_____  **Annual Interest Rate**____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $_____   **Basis for perfection:** _____

**Amount of Secured Claim:** $ Unliquidated Setoff Rights   **Amount Unsecured:** $_____

**6.  Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7.  Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary

DO NOT SEND ORIGINAL DOCUMENTS. AT

If the documents are not available, please explain:

0910169100911000000000001

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adju...

| DATE:<br><br>Sept. 10, 2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY<br><br>**RECEIVED**<br><br>SEP 1 1 2010<br><br>KURTZMAN CARSON CONSULTANTS |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

# WEIL, GOTSHAL & MANGES LLP

700 LOUISIANA
SUITE 1600
HOUSTON, TEXAS 77002-2784
(713) 546-5000
FAX: (713) 224-9511

AUSTIN
BEIJING
BOSTON
BUDAPEST
DALLAS
DUBAI
HONG KONG
FRANKFURT
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

DIRECT LINE
713-546-5166
chris.lopez@weil.com

September 10, 2010

**BY FEDERAL EXPRESS**

Kurtzman Carson Consultants LLC
Attn:  Tronox Claims Processing Center
2335 Alaska Avenue
El Segundo, California 90245

Re:  Anadarko Petroleum Corporation – Proofs of Claim

  Enclosed for filing are Anadarko Petroleum Corporation's proofs of claim to be filed in connection with the following Tronox debtor cases.  Please file-stamp one set and return in the enclosed Federal Express envelope, which includes a prepaid packing slip.

Tronox Luxembourg S.ar.l., Case No. 09-10155
Tronox Incorporated, Case No. 09-10156
Cimarron Corporation, Case No. 09-10157
Southwestern Refining Company, Inc., Case No. 09-10158
Transworld Drilling Company, Case No. 09-10159
Triangle Refineries, Inc., Case No. 09-10160
Triple S Environmental Management Corporation, Case No. 09-10161
Triple S Mineral Resources Corporation, Case No. 09-10162
Triple S Refining Corporation, Case No. 09-10163
Triple S, Inc., Case No. 09-10164
Tronox Finance Corp., Case No. 09-10165
Tronox Holdings, Inc., Case No. 09-10166
Tronox LLC, Case No. 09-10167
Tronox Pigment (Savannah) Inc., Case No. 09-10168
Tronox Worldwide LLC, Case No. 09-10169

Best regards,

Christopher M. Lopez

US_ACTIVE:\43495005\01\15337.0004

# ANADARKO - PROOF OF CLAIM CALCULATION
SUMMARY

| | Liquidated Amount | Unliquidated Amount |
|---|---|---|
| Tronox-Related Claims & Associated Costs | $560,428 | $0 |
| Additional Tronox-Related Claims & Associated Costs | 2,216,940 | 10,168,703 |
| Adversary Proceeding Costs | 59,156,981 | 47,568,991 |
| Tronox E&P Defense Costs | 0 | 15,768,918 |
| Oryx Costs - Litigation | 0 | 87,911,704 |
| Oryx Costs - Remediation | 0 | 111,012,044 |
| Securities Litigation Costs | 1,969,283 | 3,030,717 |
| Mississippi Tax Commission Claim | 2,699,230 | 0 |
| Federal RAR Claim | 5,448,335 | 0 |
| Additional Claims Relating to the TSA | 0 | Undetermined |
| Employee Benefit Claims | 0 | At least $25.1MM |
| Response Costs | 0 | Up to 5.1BN |
| Brine Site Contribution Claim | 267,338 | Up to 24.0MM |
| Costs Associated with Tronox Liabilities | 0 | Undetermined |
| Claims Related to Kerr-McGee Quebec ULC | 0 | Undetermined |
| Claims for Subrogation | 0 | Undetermined |
| Bankruptcy Code Section 502(h) Claim | 0 | Undetermined |
| Internal Anadarko Time | Undetermined | Undetermined |
| **Total** | **$72,318,535** | **Undetermined** |

Note: Anadarko reserves the right to supplement or amend this Exhibit, including adjusting any amounts listed herein.

## ATTACHMENT TO AMENDED PROOF OF CLAIM[1]

1.    On January 12, 2009 (the "Petition Date"), Tronox Incorporated ("Tronox") and certain of its affiliates (collectively, the "Debtors")[2] commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.    Pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the Southern District of New York appointed a (i) statutory committee of unsecured creditors (the "Creditors' Committee") on January 21, 2009 and (ii) committee of equity holders (the "Equity Committee") on March 13, 2009.[3]

3.    On September 11, 2009, Anadarko Petroleum Corporation ("Anadarko"), on behalf of itself, Kerr-McGee Corporation ("Kerr-McGee"),[4] and their affiliates, filed Proofs of Claim Nos. 14132-14146 (collectively, the "Proofs of Claim"). The Proofs of Claim assert general unsecured and secured claims against the Debtors relating to, *inter alia*, the Debtors' liabilities and indemnity obligations to Anadarko and Kerr-McGee under the following agreements:

---

[1]    The exhibits supporting this Amended Proof of Claim are voluminous and therefore are not attached hereto. Instead, such exhibits have been attached to the Amended Proof of Claim filed by Anadarko Petroleum Corporation and its affiliates against Tronox Incorporated in Case No. 09-10156 (ALG) and are expressly incorporated herein.

[2]    The Debtors in these cases are Tronox; Tronox Luxembourg S.ar.L; Cimarron Corporation; Southwestern Refining Company, Inc.; Transworld Drilling Company; Triangle Refineries, Inc.; Triple S Environmental Management Corporation; Triple S, Inc.; Triple S Minerals Resources Corp.; Triple S Refining Corporation; Tronox LLC; Tronox Finance Corp.; Tronox Holdings, Inc.; Tronox Pigments (Savannah) Inc.; and Tronox Worldwide LLC.

[3]    Docket Nos. 76 and 244.

[4]    Kerr-McGee refers to the company as it existed after consummation of the Agreement and Plan of Merger, dated May 13, 2001, whereby the company that was then known as Kerr-McGee Corporation ("Old Kerr-McGee") became a subsidiary of the company currently known as Kerr-McGee. In conjunction with such merger agreement, Old Kerr-McGee was renamed Kerr-McGee Operating Corporation and subsequently changed its name to Kerr-McGee Chemical (as defined herein).

- Assignment, Assumption, and Indemnity Agreement (the "Indemnity Agreement"), dated December 31, 2002, between Kerr-McGee Oil and Gas Corporation ("Kerr-McGee Oil & Gas") and Kerr-McGee Chemical Worldwide LLC ("Kerr-McGee Chemical");

- Assignment Agreement (the "Assignment Agreement"), dated December 31, 2002, between Kerr-McGee Chemical and Kerr-McGee Oil & Gas; and

- Master Separation Agreement (the "Master Separation Agreement"), dated November 28, 2005, among Kerr-McGee, Kerr-McGee Worldwide Corporation ("Kerr-McGee Worldwide") and Tronox (together with any and all annexes, appendices and agreements ancillary thereto, and any amendments thereof, including, as defined therein, the Indemnity Agreement, Assignment Agreement, Transition Services Agreement, Transitional License Agreement, Registration Rights Agreement, Tax Sharing Agreement, and Employee Benefits Agreement, the "MSA");[5]

## The Assignment Agreement and the Indemnity Agreement

4.      As of the date of the Indemnity Agreement and Assignment Agreement, Kerr-McGee Oil & Gas and Kerr-McGee Chemical were wholly-owned subsidiaries of Kerr-McGee.  Kerr-McGee Oil & Gas was the direct parent of certain subsidiaries that comprised and operated Kerr-McGee's oil and gas exploration and production business (the "E&P Business") and Kerr-McGee Chemical was the direct parent of certain subsidiaries that comprised and operated Kerr-McGee's chemical business and certain discontinued businesses (collectively, the "Chemical Business").

5.      Pursuant to the Assignment Agreement, Kerr-McGee Chemical assigned (to the extent not previously assigned) to Kerr-McGee Oil & Gas "all of its right, title and interest in and to all properties, real, personal, corporeal or incorporeal, absolute or contingent, and any and all rights, benefits and privileges, whether known or unknown, express or implied, absolute or

---

[5]      A true and correct copy of the MSA is attached as Exhibit A to the Amended Proof of Claim filed by Anadarko and its affiliates against Tronox in Case No. 09-10156 (ALG).

contingent and whether due or to become due" arising out of the E&P Business and any liabilities assumed by Kerr-McGee Oil & Gas under the Indemnity Agreement.[6]

6.    Pursuant to the Indemnity Agreement, which is annexed to the Assignment Agreement as Appendix A, Kerr-McGee Oil & Gas assumed (to the extent not previously assumed) all of the obligations and liabilities arising out of the E&P Business (collectively, the "E&P Liabilities"), other than those that had already been assumed by a third party prior to execution of the Indemnity Agreement.[7]    The E&P Liabilities include, but are not limited to, liabilities relating to the business operations of Oryx Energy Company ("Oryx") and its subsidiaries, a worldwide independent oil and gas exploration and production company that merged with and into Old Kerr-McGee in 1999 (the "Oryx Liabilities").[8]    In an apparent effort to ensure that the Oryx Liabilities were assumed entirely by Kerr-McGee Oil & Gas (to the extent not previously assumed), the Indemnity Agreement expressly enumerated the Oryx Liabilities as part of the E&P Liabilities.

7.    The E&P Liabilities, however, expressly exclude any liabilities or obligations related to the non-E&P "contract drilling business or the crude oil and associated feed stock refining and petroleum product manufacturing and marketing business" that were previously conducted by Kerr-McGee Chemical or its affiliates or predecessors.[9]    Instead, Kerr-McGee Chemical retained such liabilities, as well as:

> any obligations, liabilities or commitments of any nature . . .
> arising out of or incurred in connection with any businesses,
> operations, and assets, or properties currently or previously
> conducted or owned by [Kerr-McGee Chemical], its [a]ffiliates or

---

[6]    Assignment Agreement § 1.

[7]    Indemnity Agreement §§ 1(a), 2.

[8]    Indemnity Agreement § 1.

[9]    Indemnity Agreement § 1.

its predecessors . . . regardless of their nature, and whether known
or unknown, express or implied, absolute or contingent and
whether due or to become due.

(collectively, the "Chemical & Other Liabilities").[10]

    8.    The Indemnity Agreement also provides for reciprocal indemnity obligations

between the parties. Kerr-McGee Chemical (now known as Tronox Worldwide)[11] is required to

indemnify Kerr-McGee Oil & Gas, KM Investment Corporation, Kerr-McGee Worldwide, Kerr-

McGee, and each of their respective subsidiaries (other than Kerr-McGee Chemical and its

subsidiaries), with respect to "any and all actual losses, liabilities, damages, judgments,

settlements and expenses (including reasonable attorneys' fees)" incurred by Kerr-McGee Oil &

Gas that relate to the Chemical & Other Liabilities.[12] Similarly, Kerr-McGee Oil & Gas is

required to indemnify Kerr-McGee Chemical and each of its subsidiaries with respect to "any

and all actual losses, liabilities, damages, judgments, settlements and expenses (including

reasonable attorneys' fees)" incurred by Kerr-McGee Chemical that relate to the E&P

Liabilities.[13]

    9.    Kerr-McGee Chemical and Kerr-McGee Oil & Gas are required to give

prompt, written notice to each other of any third party claim giving rise to an indemnity

obligation, along with an estimated amount of any such claim.[14] Subject to certain conditions,

the party from whom indemnification is sought has the right to assume the defense of any such

---

[10]    Indemnity Agreement § 1(b).

[11]    On or about September 12, 2005, Kerr-McGee Chemical changed its name to Tronox Worldwide LLC
("Tronox Worldwide"), which is now a wholly-owned subsidiary of Tronox and a Debtor.

[12]    Indemnity Agreement § 3.

[13]    Indemnity Agreement § 3.

[14]    Indemnity Agreement § 3.

third party claim by giving notice to the party seeking indemnification within 60 days of being

notified of such claim.[15]

## The Master Separation Agreement

10.    The Master Separation Agreement was executed on November 28, 2005 in

connection with the separation of the Chemical Business from the E&P Business.  Tronox was

formed to effectuate the separation and, as contemplated by the Master Separation Agreement,

all of Kerr-McGee's interests in the existing Chemical Business were transferred to Tronox.  The

Master Separation Agreement incorporated ancillary agreements between Kerr-McGee and

Tronox, including, but not limited to, the Indemnity Agreement and the Assignment Agreement.

11.    Pursuant to Section 2.5(h) of the Master Separation Agreement, except with

respect to certain specified obligations, Tronox and its affiliates (collectively, the "Tronox Group")

agreed to release and indemnify Kerr-McGee and its affiliates (collectively, the "Parent Group")

and hold them harmless from any investigation, liability, claim, lawsuit or any other type of

administrative or judicial action, whether known or unknown, actual or contingent, accrued or

unaccrued, against Kerr-McGee and the Parent Group that relates to the violation of any

environmental law or regulation, whether now existing or later enacted, in respect of the present

or former assets, properties or operations of the Tronox Group.[16]

12.    In addition, Kerr-McGee Worldwide (the former parent of the Chemical

Business) and Tronox agreed to reciprocal indemnity obligations in connection with liabilities

arising from the separated businesses.  Pursuant to Section 5.1 of the Master Separation

Agreement, Tronox is required to indemnify Kerr-McGee, each member of the Parent Group,

and each of their respective past and present directors, officers and employees, and each of their

---

[15]    Indemnity Agreement § 3.

[16]    Master Separation Agreement § 2.5(h).

heirs, executors, successors, and assigns from and against, *inter alia*, the following obligations

and liabilities (collectively, the "Tronox Liabilities"):

- the Chemical & Other Liabilities;

- any liabilities or obligations arising under or relating to businesses, operations or assets previously or currently conducted or owned by Tronox or any of its predecessors (other than the E&P Liabilities);

- any obligations of Tronox under any agreement entered into in connection with the Master Separation Agreement, Tax Sharing Agreement, Employee Benefits Agreement, and the Transition Services Agreement (as defined in the Master Separation Agreement);

- any Business Guarantees that are not replaced with Substitute Guarantees, or with respect to which Kerr-McGee or any member of the Parent Group has any liability or obligation after the Closing Date (each as defined in the Master Separation Agreement); and

- with respect to the IPO Registration Statement, the Prospectus or any registration statement or other document related to the Section 355 Transaction (each as defined in the Master Separation Agreement ), any liabilities or obligations arising under or relating to any untrue statement or alleged untrue statement of a material fact, or omission or alleged omission to state a material fact therein, which is necessary to make the statements contained therein not misleading, in any case to the extent relating to the Tronox Group.[17]

    13.    Similarly, Kerr-McGee Worldwide is required to indemnify Tronox, its

affiliates and each of their respective directors, officers, and employees, and each of their heirs,

executors, successors and assigns from and against, *inter alia*, any and all liabilities relating to

the E&P Liabilities.[18]

### *The Adversary Proceeding*

    14.    On May 12, 2009, certain of the Debtors commenced an adversary

proceeding (the "Adversary Proceeding") and filed a complaint (the "Complaint") against

Anadarko and Kerr-McGee asserting claims for, among other things, fraudulent transfer, civil

---

[17]    Master Separation Agreement § 5.1(i)-(v).

[18]    Master Separation Agreement § 5.2.

conspiracy, breach of fiduciary duty, equitable subordination and disallowance of any claims

filed by Anadarko and/or Kerr-McGee.[19]

15.    On May 21, 2009, the United States of America (the "Government") filed a

motion to intervene in the Adversary Proceeding.[20]  On June 12, 2009, the Creditors' Committee

and the Equity Committee filed individual motions to intervene in the Adversary Proceeding.[21]

16.    On June 15, 2009, the Bankruptcy Court entered an order permitting the

Government to intervene in the Adversary Proceeding.[22]  On June 17, 2009, the Government

filed its complaint-in-intervention (the "Government Complaint").[23]  The Government Complaint

asserts claims under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3301, et seq.,

against Anadarko, Kerr-McGee, and certain of the Debtors.

17.    On July 14, 2009, the Bankruptcy Court entered an order permitting the

Creditors' Committee to intervene in the Adversary Proceeding.[24]

18.    On July 31, 2009, Anadarko and Kerr-McGee filed motions to dismiss the

Complaint and the Government Complaint.[25]  On March 31, 2010 and April 30, 2010,

respectively, the Bankruptcy Court issued an opinion and order pursuant to which it (A)

dismissed, without prejudice, Tronox's claims for (i) civil conspiracy, (ii) aiding and abetting

fraudulent conveyance, (iii) breach of fiduciary duty as a promoter, (iv) equitable subordination

pursuant to Bankruptcy Code section 510(c), (v) equitable disallowance, (vi) disallowance

pursuant to Bankruptcy Code section 502(e)(1)(B), and (vii) disallowance under Bankruptcy

---

[19]    Adv. Pro. No. 09-1198, Docket No. 1.

[20]    Adv. Pro. No. 09-1198, Docket No. 5.

[21]    Adv. Pro. No. 09-1198, Docket Nos. 19 and 21, respectively.

[22]    Adv. Pro. No. 09-1198, Docket No. 22.

[23]    Adv. Pro. No. 09-1198, Docket No. 25.

[24]    Adv. Pro. No. 09-1198, Docket No. 41.

[25]    Adv. Pro. No. 09-1198, Docket Nos. 45 and 47, respectively.

Code section 502(d); and (B) dismissed, with prejudice, Tronox's (i) claim for unjust enrichment and (ii) demand for punitive damages in connection with its fraudulent conveyance claims.[26]

19.   On April 28, 2010, Tronox filed an amended Complaint (the "Amended Complaint").[27] Tronox alleges in the Amended Complaint that certain asset and other transfers among Kerr-McGee or its affiliates and Tronox or its affiliates, including certain transfers made in connection with the MSA (collectively, the "Transfers"), should be avoided pursuant to sections 544 and 548 of the Bankruptcy Code and the Oklahoma Uniform Fraudulent Transfer Act.[28]

20.   On May 26, 2010, Anadarko and Kerr-McGee filed a motion to dismiss the Amended Complaint (the "May 2010 Motion to Dismiss").[29] As of the date of this Amended Proof of Claim, the Bankruptcy Court has not ruled on the relief requested in the May 2010 Motion to Dismiss.

### *The Debtors' Rejection of the MSA*

21.   On June 30, 2010, Anadarko and Kerr-McGee filed a motion (the "Motion to Compel")[30] seeking the entry on an order compelling the Debtors to assume or reject the MSA pursuant to section 365 of the Bankruptcy Code.

22.   On August 12, 2010, the Bankruptcy Court approved a stipulation and agreed order (the "Rejection Order") rejecting the MSA as of July 22, 2010 (the "Rejection

---

[26]    *See* Memorandum of Opinion, Adv. Pro. No. 09-01198, Docket. No. 117 (Mar. 31, 2010); Order Denying in Part and Granting in Part Defendants' Motion to Dismiss Plaintiffs' Adversary Complaint, Adv. Pro. No. 09-1198, Docket No. 126 (Apr. 30, 2010).

[27]    *See* Adv. Pro. No. 09-1198, Docket No. 123 (hereinafter referenced as the Amended Complaint).

[28]    Amended Complaint ¶¶ 135-162.

[29]    Adv. Pro. No. 09-1198; Docket No. 131.

[30]    Docket No. 1676.

Date").[31] The Rejection Order provides that Anadarko and Kerr-McGee may assert damages arising from the rejection of the MSA within 30 days of the August 12, 2010 entry of the Rejection Order.

23.    In accordance with the Rejection Order, Anadarko, on behalf of itself, Kerr-McGee, and their affiliates, hereby file Amended Proofs of Claim that supplement the Proofs of Claim and assert the rejection damages and other claims herein and therein.

### *Anadarko And Kerr-McGee's Claims Against The Debtors*

**A.    Rejection Damages For Tronox-Related Claims**

24.    Prior to the Petition Date, Tronox, Kerr-McGee, Anadarko, and/or one or more of their affiliates were named as defendants in litigation involving claims for, among other things, personal injury, environmental liabilities, and property damage.  Certain of these claims asserted against Kerr-McGee and/or Anadarko or their affiliates arise from or relate to Tronox Liabilities (collectively, the "Tronox-Related Claims").

**1.    Tronox-Related Claims Not Defended by Tronox**

25.    Prior to the Petition Date, in accordance with the MSA, either Kerr-McGee or Anadarko properly notified Tronox of the Tronox-Related Claims and requested that Tronox defend, indemnify and hold them harmless against such claims.  Tronox acknowledged in writing that the underlying liabilities asserted in the litigation arose from Tronox Liabilities and either accepted the defense and indemnity obligations related to the Tronox-Related Claims or otherwise defended such claims.  A non-exclusive list of the litigation in which Tronox-Related Claims have been asserted is attached to the Amended Proof of Claim filed by Anadarko and its affiliates against Tronox in Case No. 09-10156 (ALG) as Exhibit B and certain of the respective

---

[31]    Docket No. 1856.

letters wherein Tronox agreed to assume the control and defense of the Tronox-Related Claims

are attached to the Amended Proof of Claim filed by Anadarko and its affiliates against Tronox

in Case No. 09-10156 (ALG) as Exhibit C.

26.    Despite having accepted the defense of, and indemnity obligations associated

with, the Tronox-Related Claims, on or after the Petition Date Tronox advised Kerr-McGee

and/or Anadarko that it would no longer defend litigation involving Tronox-Related Claims on a

going-forward basis.  As such, Kerr-McGee and/or Anadarko or their affiliates have been

obligated to defend the Tronox-Related Claims and may be required in the future to defend

against additional Tronox-Related Claims.[32]

27.    Sections 2.5(h) and 5.1 of the Master Separation Agreement require Tronox

to defend and indemnify Kerr-McGee and/or Anadarko for costs relating to litigation based on

Tronox-Related Claims.  In addition, Section 3 of the Indemnity Agreement requires Tronox to

defend and indemnify Kerr-McGee and/or Anadarko for Tronox-Related Claims involving

Chemical & Other Liabilities.

28.    Therefore, Anadarko, Kerr-McGee, and each of their respective affiliates (as

applicable) assert a rejection damages claim in the aggregate amount of $560,428 for outside

counsel fees and expenses, and other litigation and legal costs, plus additional amounts for

internal Anadarko time.  These amounts reflect the costs incurred and/or paid from the Petition

Date through July 2010 for litigation based on Tronox-Related Claims that Anadarko and/or

Kerr-McGee tendered to Tronox prepetition pursuant to the MSA, but which Tronox refused to

defend postpetition.  The rejection damages claim for these Tronox-Related Claims is detailed on

---

[32]    Anadarko expressly denies liability for any Tronox-Related Claims, whether or not described in this
Amended Proof of Claim or any related exhibit.

Exhibit B to the Amended Proof of Claim filed by Anadarko and its affiliates against Tronox in Case No. 09-10156 (ALG).

## 2.    Claims For Additional Tronox-Related Claims

29.    Anadarko, Kerr-McGee, and each of their respective affiliates are also parties to additional litigation based on Tronox-Related Claims that were incorrectly filed against Anadarko, Kerr-McGee, or their respective affiliates, instead of Tronox.  These litigation claims were not tendered to Tronox in accordance with the MSA because of, among other things, the automatic stay in these chapter 11 cases.

30.    As noted above, Sections 2.5(h) and 5.1 of the Master Separation Agreement require Tronox to defend and indemnify Kerr-McGee and/or Anadarko for costs relating to litigation based on Tronox-Related Claims.  In addition, Section 3 of the Indemnity Agreement requires Tronox to defend and indemnify Kerr-McGee and/or Anadarko for Tronox-Related Claims involving Chemical & Other Liabilities.  Accordingly, Anadarko, Kerr-McGee and each of their respective affiliates (as applicable) assert a rejection damages claim in the aggregate amount of $2,216,940 for outside counsel fees and expenses, and other litigation costs, plus additional amounts for internal Anadarko time, for costs incurred and/or paid from the Petition Date through July 2010 in connection with these additional lawsuits based on Tronox-Related Claims

31.    Anadarko, Kerr-McGee, and each of their respective affiliates also assert a contingent rejection damages claim in the aggregate amount of $10,168,703 for costs that may be incurred for these Tronox-Related Claims (including, but not limited to, any defense costs; attorneys' fees; settlement costs; damages; or judgments assessed against Anadarko, Kerr-McGee, or their affiliates) to the extent such costs are not characterized as administrative claims

and, instead, are characterized as prepetition claims. The rejection damages claim for these
additional Tronox-Related Claims is further detailed on Exhibit D to the Amended Proof of
Claim filed by Anadarko and its affiliates against Tronox in Case No. 09-10156 (ALG).

### 3.    Other Litigation Claims Involving Tronox Liabilities

32.    Tronox's Schedules of Assets and Liabilities provide that Tronox is involved
in numerous pending and/or threatened lawsuits and administrative proceedings arising out of its
current or former business operations.[33] The proceedings are pending in various jurisdictions,
involve numerous plaintiffs and include claims for, among other things, "personal injuries,
property damages, breach of contract, injury to the environment, including natural resource
damages, and non-compliance with, or lack of properly updated or renewed, permits."[34] In
addition, Tronox has indicated that "there may be thousands of unknown claimants who may
have environmental, personal injury, property or any other [c]laims" against it.[35]

33.    To the extent that Anadarko or any of its subsidiaries, including Kerr-McGee
and its subsidiaries, are (or become) a defendant in any of the foregoing pending proceedings or
any similar proceedings, and damages or judgments are assessed against any such parties and/or
they are required to pay any damages to the respective plaintiffs in the proceedings, Anadarko,
Kerr-McGee and each of their respective affiliates (as applicable) hereby assert a contingent
rejection damages claim for any such costs, as well as any other costs (including any attorneys'
fees), to the extent that the costs arise from, or relate to, the Tronox Liabilities.

---

[33]    See Global Notes Pertaining to All Debtors' Schedules of Assets and Liabilities at Global Note 19 and
Schedule F – Creditors Holding Unsecured Nonpriority Claims (Main Case, Docket No. 275); Statement of
Financial Affairs, Question 4.a. (Main Case, Docket No. 276).

[34]    Tronox Inc., Annual Report (Form 10-K), at 13 (Mar. 14, 2008); Schedule F – Creditors Holding Unsecured
Nonpriority Claims (Main Case, Docket No. 275); Statement of Financial Affairs, Question 4.a. (Main Case,
Docket No. 276).

[35]    Tronox's Motion for Entry of an Order (A) Setting Bar Dates for Filing Proofs of Claim, (B) Approving the
Form and Manner for Filing Proofs of Claim and (C) Approving Notice Thereof at ¶ 20 (Main Case, Docket
No. 399).

B.    **Rejection Damages Claims For Costs Incurred And/Or Paid In The Adversary Proceeding**

34.    Tronox alleges in the Amended Complaint that Kerr McGee's transfer of the E&P Business to Kerr-McGee Oil & Gas in 2002 and the subsequent 2005 spin-off of Tronox from Kerr-McGee pursuant to, *inter alia*, the MSA was a two-step plan devised by Old Kerr McGee.[36]  Through the Adversary Proceeding, Tronox seeks, *inter alia*, to avoid the Transfers effected pursuant to the MSA and certain of those relating to the E&P Business (the "E&P Assets"), and recover monetary damages, including interest and costs and expenses incurred in the Adversary Proceeding.[37]  In addition, the Debtors seek damages for Kerr-McGee's alleged breach of its fiduciary duty as a promoter, aiding and abetting a breach of fiduciary duty, and civil conspiracy.[38]  For example, Tronox alleges that Kerr-McGee breached its fiduciary duties to Tronox, Tronox's minority shareholders, and Tronox's creditors by, *inter alia*, making disclosures in the Registration Statement that were "materially misleading."[39]

35.    As evidenced by the May 2010 Motion to Dismiss and Anadarko's Original Answer to the Amended Complaint,[40] Anadarko and Kerr-McGee deny all of the material allegations in the Amended Complaint.[41]  Regardless, Anadarko and Kerr-McGee have been required to spend millions of dollars defending themselves against Tronox's allegations. Pursuant to, *inter alia*, Sections 2.5(h) and 5.1 of the Master Separation Agreement and Section 3 of the Indemnity Agreement, Anadarko and Kerr-McGee are entitled to be indemnified by the

---

[36]    Amended Complaint ¶¶ 4-8.

[37]    Tronox's Response to the Motion to Compel ¶ 2 (citing Amended Complaint ¶¶ 1-11, 46-50 and 135-97) [Docket No. 1720].

[38]    Amended Complaint ¶¶ 163-197.

[39]    Amended Complaint ¶¶ 104-110; 163-178.

[40]    Adv. Pro. No. 09-1198, Docket Nos. 130 and 131, respectively.

[41]    Anadarko Petroleum Corporation and Kerr-McGee Corporation's Original Answer to Plaintiffs' Amended Adversary Complaint, Adv. Pro. No. 09-01198, Docket No. 130 (May 19, 2010).

Debtors under the MSA for the costs incurred or paid in connection with the Adversary Proceeding.

36. Accordingly, Anadarko and Kerr-McGee assert a rejection damages claim against Tronox in the aggregate amount of $59,156,981, plus additional amounts for internal Anadarko time, for the costs incurred and/or paid defending themselves from the Petition Date through July/August 2010 in connection with the Adversary Proceeding.

37. Anadarko and Kerr Mc-Gee also assert a contingent rejection damages claim against the Debtors in the aggregate amount of $47,568,991 for future costs that are expected to be incurred in connection with the Adversary Proceeding (including, but not limited to, any defense costs; attorneys' fees; settlement costs; damages; or judgments assessed against Anadarko, Kerr-McGee, or their affiliates). The rejection damages claim for costs incurred and/or paid in the Adversary Proceeding are further detailed on Exhibit E to the Amended Proof of Claim filed by Anadarko and its affiliates against Tronox in Case No. 09-10156 (ALG). Anadarko also expressly reserves its right to assert a claim against the Debtors for any and all liabilities resulting from the avoidance of any Transfer, including any liabilities that Anadarko and/or Kerr-McGee have paid in reliance on the effectiveness of such Transfer.

## C.    Contingent Rejection Damages Relating to E&P Liabilities

38. Kerr-McGee Oil & Gas has all of the rights, title, interest, and E&P Liabilities relating to the E&P Business. In accordance with the MSA, Anadarko, Kerr-McGee, and their respective affiliates, and not Tronox, have satisfied all E&P Liabilities (including, but not limited to, defense costs, attorneys' fees, settlement costs, damages, and judgments) incurred in defending Tronox in litigation wherein Tronox is or was named as a defendant based on claims relating to the E&P Business (the "Tronox E&P Defense Costs"), including particularly those relating to the Oryx Liabilities (the "Oryx Costs").

39.  If, however, the Bankruptcy Court invalidates the stock transfers alleged by Tronox to have been effected pursuant to the MSA[42] and rules that Tronox is entitled to the return of all or part of these stock transfers, then Anadarko, Kerr-McGee, and their affiliates reserve the right to assert a claim against the Debtors for, *inter alia*, (i) the costs incurred and/or paid from the Petition Date for satisfying these E&P Liabilities for the Debtors; (ii) the E&P Liabilities associated with the E&P Assets from the date of the stock transfers; and (iii) any and all damages awarded in the Adversary Proceeding for avoidance of any transfers of the E&P Assets.

40.  At a minimum, Anadarko, Kerr-McGee, and each of their respective affiliates assert a rejection damages claim for $15,503,918, plus additional amounts for internal Anadarko time, for the costs incurred and/or paid from the Petition Date through July 2010 on Tronox E&P Defense Costs.  Anadarko, Kerr-McGee, and each of their respective affiliates also assert a contingent rejection damages claim against the Debtors in the aggregate amount of $265,000 for additional Tronox E&P Defense Costs that may be incurred in the future to the extent such costs are not characterized as administrative claims and, instead, are characterized as prepetition claims.  The rejection damages claim for Tronox E&P Defense Costs are further detailed on Exhibit F to the Amended Proof of Claim filed by Anadarko and its affiliates against Tronox in Case No. 09-10156 (ALG).

41.  Anadarko, Kerr-McGee, and each of their respective affiliates also assert a contingent rejection damages claim for $123,664,731, plus additional amounts for internal Anadarko time, for the costs incurred and/or paid from the Petition Date through July 2010 for Oryx Costs.  Anadarko, Kerr-McGee, and each of their respective affiliates further assert a

---

[42] Anadarko and Kerr-McGee are not aware of any E&P Assets that were transferred pursuant to the Assignment Agreement.  Tronox, however, has taken the position in the Adversary Proceeding that such assets were in fact transferred pursuant thereto. *See* Amended Complaint ¶ 75.

contingent rejection damages claim against the Debtors in the aggregate amount of $75,259,017

for additional Oryx Costs that may be incurred in the future to the extent such costs are not

characterized as administrative claims and, instead, are characterized as prepetition claims.[43]

The rejection damages claim for Oryx Costs are further detailed on Exhibit G to the Amended

Proof of Claim filed by Anadarko and its affiliates against Tronox in Case No. 09-10156 (ALG).

**D.    Rejection Damages Claims For Costs Associated With Securities Fraud Litigation**

42.    On July 10, 2009 and July 21, 2009, securities class action lawsuits

(collectively, the "Class Action Lawsuits") were filed in the United States District Court for the

Southern District of New York against Anadarko, Kerr-McGee, and certain current and/or

former officers and directors of Kerr-McGee and Tronox. The Class Action Lawsuits were

brought on behalf of all purchasers of Tronox's common stock between November 28, 2005 and

January 12, 2009 and allege, among other things, that the defendants are liable as participants in

a fraudulent scheme that operated as a fraud on purchasers of Tronox common stock by

disseminating materially false and misleading statements and/or concealing material adverse

facts related to Tronox's business, the environmental and tort liabilities for which it was

responsible, and its financial condition.

43.    The claims asserted in the Class Action Lawsuits are based upon the

registration statement (the "Registration Statement") and prospectus filed with the Securities and

Exchange Commission in connection with the initial public offering of Tronox shares. Under the

MSA Tronox is liable for any "untrue statement or alleged untrue statement of a material fact

therein, or omission or alleged omission to state a material fact therein, which is necessary to

---

[43]    Nothing herein shall preclude the assertion of claims for any amounts paid and/or incurred in connection with the E&P Business and E&P Liabilities that are unrelated to the Tronox E&P Defense Costs and/or the Oryx Costs, whether herein or in the Adversary Proceeding.

make the statements contained therein not misleading, in any case to the extent relating to

[Tronox]" and is required to indemnify Kerr-McGee for any liabilities related thereto.[44]

      44.   Accordingly, Anadarko, on behalf of Kerr-McGee, asserts a rejection

damages claim in the aggregate amount of $1,969,283 for outside counsel fees and expenses, and

other litigation and legal costs, plus additional amounts for internal Anadarko time, against

Tronox for the costs incurred to date defending Tronox in the Class Action Lawsuits.  Anadarko

also asserts a contingent rejection damages claim against Tronox in the aggregate amount of

$3,030,717 for future costs that may be incurred defending Tronox in the Class Action Lawsuits,

or any similar lawsuits that might be filed against them, after the Rejection Date.  The rejection

damages claim for these costs are further detailed on Exhibit H to the Amended Proof of Claim

filed by Anadarko and its affiliates against Tronox in Case No. 09-10156 (ALG).

      45.   Finally, to the extent that Anadarko and/or any of its subsidiaries, including

Kerr-McGee and its subsidiaries, are held liable for any claims asserted in the Class Action

Lawsuits or any similar lawsuits that might be filed against them, Anadarko hereby asserts a

claim against Tronox for any and all costs related thereto, including attorneys' fees.

**E.**    **Rejection Damages Claims Arising Under The Tax Sharing Agreement**

      46.   Tronox and Kerr-McGee are parties to that certain Tax Sharing Agreement,

dated as of November 28, 2005 (the "TSA"), which is a part of the MSA.  Pursuant to the TSA,

Tronox designated Kerr-McGee as its agent for the purpose of "taking any and all actions . . .

necessary or incidental to (i) the filing of any Federal Tax or Combined Tax Return . . . (ii) the

claiming of any refund, credit or offset of Federal Tax or Combined Tax . . . (iii) the control of

any proceeding and (iv) the making of any payments to, or collecting refunds from, any Taxing

---

[44]   Master Separation Agreement § 5.1(ii) and (v).

Authority" related to Federal Taxes (as defined in the TSA) or state, local or foreign income or

franchise taxes filed on an affiliated, combined, consolidated or unitary return with Kerr-McGee

for the taxable periods ending prior to Tronox's separation from Kerr-McGee.[45]   Accordingly,

Kerr-McGee was required to prepare and file such tax returns for the pre-separation periods and

the tax liabilities are to be apportioned between Kerr-McGee and Tronox as set forth in the TSA.

    47.   To the extent that any such tax return is subject to "audit, review,

examination, assessment, deficiency or any other administrative or judicial proceeding for the

purpose or effect of redetermining any Taxes," Kerr-McGee has the sole right to, among other

things, contest, litigate and settle any adjustment that is made or proposed in connection

therewith.[46]   With respect to income or franchise tax returns filed by Kerr-McGee on an

affiliated, consolidated, combined or unitary basis with a taxing authority in the state of

Mississippi, Tronox has the sole right to control any tax contest related thereto.[47]   In the event of

an upward adjustment of Tronox's tax liability, Tronox is obligated to indemnify Kerr-McGee

for such liability.[48]

## 1.    The MS Tax Commission Claim

    48.   Prior to Tronox's separation from Kerr-McGee, Kerr-McGee filed franchise

tax returns on a combined basis with the Mississippi State Tax Commission (the "MS Tax

Commission") on behalf of itself and its subsidiaries.  Subsequently, the MS Tax Commission

conducted an audit of the tax returns and assessed franchise taxes, interest and penalties in the

approximate amount of (i) $4.1 million against Kerr-McGee Worldwide, as filing parent for its

---

[45]      TSA § 2.02.

[46]      TSA § 4.02.

[47]      TSA, p.2.

[48]      TSA § 3.03.

subsidiaries (which then included Tronox and its affiliates), for the January 2002 through December 2004 assessment period and (ii) $1.3 million against Kerr-McGee Operating Corporation, n/k/a Tronox Worldwide, for the January 2001 through December 2001 assessment period.

49.    Prior to the Petition Date, on information and belief, Tronox determined that its business activities in the state of Mississippi contributed to approximately 99% of the assessed taxes. Tronox protested the tax assessments and participated in the initial protest hearing. After the Petition Date, Tronox submitted its Petition to Appeal the tax assessment to the MS Tax Commission. Thereafter, the MS Tax Commission indicated its willingness to settle the tax dispute. Tronox initially notified Kerr-McGee that it would not prosecute the protest going forward or participate in settlement negotiations with the MS Tax Commission, which required Kerr-McGee to prosecute the dispute and negotiate with the MS Tax Commission. Tronox subsequently informed Kerr-McGee that although it would not participate in settlement negotiations, it would nonetheless assist Kerr-McGee in its efforts to settle the dispute.

50.    In April 2010, Kerr-McGee and the MS Tax Commission reached an agreement whereby the taxes, interest and penalties assessed against Kerr-McGee Worldwide were reduced to $2,702,000 and the taxes, interest and penalties assessed against Tronox Worldwide were abated. Tronox informed Kerr-McGee in writing that it did not object to Kerr-McGee's settlement of the tax dispute. Thereafter, Kerr-McGee paid the settlement amount to the MS Tax Commission. Kerr-McGee also incurred $24,495.69 in outside counsel fees and expenses, and other litigation and legal costs, in connection with the dispute.

51.    Pursuant to Section 3.03 of the TSA and Section 5.1 of the Master Separation Agreement, Tronox is required to pay Kerr-McGee for its share of the taxes and the

attorneys' fees incurred in connection with the tax dispute. Accordingly, Anadarko hereby asserts a claim in the amount of $2,674,980 for Tronox's 99% share of the assessed taxes and $24,250.73 for Tronox's 99% share of the attorneys' fees.

**2.    The Federal RAR Claim**

52.    Kerr-McGee also filed affiliated, consolidated, combined or unitary state or local income or franchise tax returns with taxing authorities in, among other jurisdictions, California, Illinois, Indiana, Louisiana, Massachusetts, and Oregon for the 1995, 1996, 1997, 1998, and 2000 taxable years. Kerr-McGee has received Federal Revenue Agent Reports (the "Federal RAR") indicating that adjustments were being made to Kerr-McGee's federal taxable income for these years. Because Kerr-McGee's federal taxable income forms the basis for determining its state taxable income, Kerr-McGee was required to recalculate its state taxable income and prepare amended state tax returns for the years that were impacted by the Federal RAR.

53.    Kerr-McGee has determined that the Federal RAR adjustments require an approximately $5.74 million increase to its state income tax liability, including interest and penalties. Of this amount, $5,448,335 is attributable to Tronox. As such, Tronox is required to indemnify Kerr-McGee for such amounts pursuant to the TSA and the Master Separation Agreement. Anadarko hereby asserts a rejection damages claim against the Debtors for such amounts. The chart attached as Exhibit I to the Amended Proof of Claim filed by Anadarko and its affiliates against Tronox in Case No. 09-10156 (ALG) reflects the states in which the tax returns were filed, the amount of the required state income tax liability adjustments, and the amounts attributable to Tronox.

54.    Finally, Anadarko asserts a contingent rejection damages claim against the Debtors for future costs that may be incurred after the Rejection Date relating to Tronox's liabilities under the TSA.

**F.    Rejection Damages Claims Arising Under The Employee Benefits Agreement**

55.    Tronox and Kerr-McGee are parties to that certain Employee Benefits Agreement, dated as of November 28, 2005 (the "EBA"), which is also a part of the MSA. The EBA addressed the allocation of assets, liabilities, and responsibilities between Kerr-McGee and Tronox with respect to individuals who became employees of Tronox (each a "Transferred Individual").

56.    Pursuant to the EBA, Tronox agreed to establish, or cause to establish, certain employee-related plans (the "Tronox Employee Benefit Plans") for Transferred Individuals, including, but not limited to, the following:

- **Defined Benefit Retirement Plans**.  Tronox agreed to establish, or cause to be established, a Tronox Incorporated Retirement Plan and a Tronox Pension Trust, which are qualified under section 401(a) of the Internal Revenue Code of 1986, as amended, or any successor federal income tax law (the "Tax Code") and exempt under section 501(a) of the Tax Code (Sections 2.03 and 4.01).  All liabilities relating to Transferred Individuals under Kerr-McGee's retirement plan were transferred to and assumed by the Tronox Incorporated Retirement Plan (Section 4.02).  In connection with the assumption of such liabilities, Kerr-McGee transferred over $450 million in retiree assets from Kerr-McGee's pension trust to the Tronox Pension Trust (Section 4.03);

- **Defined Contribution Retirement Plans**.  Tronox agreed to establish, or cause to be established, a savings investment plan and related trust, which are qualified under section 401(a) of the Tax Code and exempt under section 501(a) of the Tax Code (Sections 2.03 and 5.01);

- **Health and Welfare Plans**.  Tronox agreed to establish, or cause to be established, the Tronox Health and Welfare Plans, which include, *inter alia*, the following: medical plan, dental plan, vision plan, disability plan, life insurance plan, workers' compensation plan, leave of absence plans, employee-assistance plan, health benefits for certain Transferred Individuals who are members of the United Mine Workers of America ("UMWA Benefits"), and Medicare Part B premium reimbursements for certain Transferred Individuals (Sections 2.03 and 6.01-6.16);

- **Stock-Based Compensation**. Tronox agreed to establish, or cause to be established, the Stock Plan, which provided vested and unvested stock options and restricted stock grants for certain Transferred Individuals (Sections 2.03 and 7.01-7.03);

- **Executive Benefits**. Tronox agreed to establish, or cause to be established, a Tronox Benefits Restoration Plan, which includes the Tronox Incorporated Defined Benefit Restoration Plan, the Tronox Incorporated Defined Contribution Savings Restoration Plan, and the establishment of related trusts such as the Tronox Rabbi Trust. To fund a portion of the Tronox Rabbi Trust, Kerr-McGee transferred over $4.4 million from Kerr-McGee's executive benefit plans that were payable on account of Transferred Individuals to the Tronox Rabbi Trust. (Sections 2.03 and 8.01-8.03);

- **Non-U.S. Employees and Employee Benefit Plans**. Kerr-McGee and Tronox intended that, to the fullest extent permitted by law, certain Kerr-McGee non-U.S. benefit plans would be transferred to Tronox, to the extent not already sponsored by Tronox or a Tronox related entity.

57. Pursuant to Section 2.01 of the EBA, Tronox agreed to pay, perform, fulfill, and discharge all liabilities (regardless of when or where such liabilities arose or arise or were or are incurred) relating to the Tronox Employee Benefit Plans.[49] Section 2.04 further provides that if any liabilities to be assumed by Tronox under the EBA are not effectively assumed and, instead, are retained by the corresponding Kerr-McGee employee benefit plan, then the amount of assets transferred to the trust relating to such Tronox Employee Benefit Plan from the trust relating to the corresponding Kerr-McGee employee benefit plan shall be recomputed and assets shall be transferred by the trust relating to such Tronox Employee Benefit Plan to the trust relating to such Kerr-McGee employee benefit plan so as to place each such trust in the position it would have been in had the initial asset transfer been made in accordance with such recomputed amount of assets.[50]

58. On September 1, 2010, the Debtors filed the First Amended Joint Plan of Reorganization of Tronox, Inc. et al. Pursuant to Chapter 11 of the Bankruptcy Code (the

---

[49] *See* EBA § 2.01.

[50] *See* EBA § 2.04.

"Amended Plan").[51]  Article V(I) of the Amended Plan states that the Debtors will assume the

Tronox Incorporated Retirement Plan pursuant to section 365 of the Bankruptcy Code, continue

to provide Tronox employees with a defined contribution 401(k) Savings Investment Plan, and

continue the Tronox Incorporated Defined Contribution Savings Restoration Plan.

59.  In addition, on August 31, 2010 the Bankruptcy Court approved a Stipulation

And Agreed Order Between The Debtors And The Pension Benefit Guaranty Corporation

("PBGC") Resolving Objections To Proofs Of Claim Nos. 1014, 11332, And 1133 (the "PBGC

Order").[52]  Pursuant to the PBGC Order (i) Tronox, as a reorganized debtor, will assume the

Tronox Incorporated Retirement Plan; (ii) the Tronox Pension Plan will be continued in

accordance with its own terms; and (iii) reorganized Tronox shall satisfy the minimum funding

standards pursuant to 26 U.S.C. §§ 412 and 430, and 29 U.S.C. §§ 1082 and 1083 and be liable

for the payment of PBGC premiums in accordance with Title IV of the Employee Retirement

Income Security Act ("ERISA"), subject to any and all applicable rights and defenses of the

Debtors, and administer the Tronox Pension Plan in accordance with the provisions of ERISA

and the Tax Code.[53]

60.  While it appears that the Debtors intend to honor some liabilities under the

Employee Benefit Plans,[54] it also appears that the Debtors do not intend to satisfy all liabilities

associated with Transferred Individuals.  In particular, Article V(I) of the Amended Plan states

that the Debtors will terminate the Tronox Incorporated Defined Benefit Restoration Plan.

Moreover, the Debtors filed omnibus objections, which have been granted by the Bankruptcy

---

[51]    Docket No. 1947.

[52]    Docket No. 1943.

[53]    PBGC Order, p.2.

[54]    Anadarko reserves the right to seek additional damages against Tronox to the extent Tronox fails to honor its
obligations in contravention to the PBGC Order and/or the Amended Plan.

Court, terminating their retiree life insurance program and seeking relief to avoid paying retiree

life insurance benefits for specified Transferred Individuals.[55]

61.    In light of the rejection of the MSA, Anadarko and Kerr-McGee have

incurred and will continue to incur costs addressing Tronox employment-related liabilities for

which Tronox agreed to indemnify Kerr-McGee.    For example, Anadarko has recently spent a

significant amount of time responding to inquiries from Transferred Individuals whose benefits

were terminated by Tronox regarding their status and/or eligibility under the Tronox and Kerr-

McGee employee benefit plans.  Pursuant to the EBA, Tronox is responsible for the liabilities

associated with these Transferred Individuals.  However, Kerr-McGee is now unable to seek

indemnity for the claims being asserted by these Transferred Individuals.  Accordingly,

Anadarko asserts a claim for the internal costs incurred in connection with responding to, and

defending itself, against such claims.

62.    Moreover, Kerr-McGee may also incur costs relating to Medicare Part B

premium reimbursements and the termination of Tronox's retiree life insurance program.

Anadarko and Kerr-McGee are not responsible, or liable in any way, for Tronox's liabilities

under the EBA or for any obligations relating to Transferred Individuals, except as expressly

provided in the EBA.  As such, any prospective costs of defense, investigation, settlement and

judgment incurred and/or paid by Anadarko and Kerr-McGee constitute rejection damages for

which Tronox is liable.

63.    Pursuant to, *inter alia*, Sections 2.01 and 2.04 of the EBA and Section 5.1 of

the Master Separation Agreement, Tronox agreed to satisfy liabilities associated with Tronox

Employee Benefit Plans for Transferred Individuals and to indemnify Kerr-McGee for such

---

[55]    *See, e.g.,* Docket Nos. 1401 and 1684.  The Bankruptcy Court orders granting these objections are located at
Docket Nos. 1677 and 1816.

liabilities.[56] Therefore, Anadarko, Kerr-McGee, and their affiliates, assert a contingent rejection

damages claim in the aggregate amount of $25.1 million against the Debtors, consisting of $1.1

million for potential Medicare Part B premium reimbursements and $24 million for potential

costs associated with the termination of Tronox's retiree life insurance program.  Anadarko also

asserts a contingent rejection damages claim against the Debtors for additional costs (including,

but not limited to, any defense costs; attorneys' fees; settlement costs; damages; or judgments

assessed against Anadarko, Kerr-McGee, or their affiliates) that Anadarko, Kerr-McGee, or their

affiliates incur after the Rejection Date relating to Tronox's liabilities under the EBA.

> 64.    Anadarko, Kerr-McGee, and their affiliates' rejection damages also include
claims against any Tronox trust holding assets to satisfy the liabilities for any Transferred

Individual.  Anadarko, Kerr-McGee, and their affiliates reserve the right to request that Tronox

transfer assets from one or more Tronox trust to the appropriate Anadarko/Kerr-McGee trust(s)

to satisfy claims arising under a Tronox Employee Benefit Agreement on account of Transferred

Individuals and/or that Tronox satisfy any such liabilities by withdrawing funds directly from the

appropriate Tronox trust.  To the extent Tronox fails to do so, Anadarko reserves the right to

assert a claim for such funds.

## G.    Contingent Rejection Damages Claims Related To Environmental Response Costs

> 65.    Section 2.5(h) of the Master Separation Agreement provides that Tronox
releases and indemnifies Kerr-McGee and the Parent Group and holds them harmless from any

investigation, liability, claim, lawsuit or any other type of administrative or judicial action, whether

known or unknown, actual or contingent, accrued or unaccrued, against Kerr-McGee and the

Parent Group that relates to the operation or violation of any environmental law or regulation,

---

[56]    *See* EBA §§ 2.01, 2.04; Master Separation Agreement § 5.1.

whether now existing or later enacted, in respect of the present or former assets, properties or operations of Tronox or the Tronox Group.[57]

66.   In addition, under Section 5.1 of the Master Separation Agreement, Tronox is required to pay environmental remediation costs, and indemnify Kerr-McGee and the Parent Group, with respect to any sites associated with any former businesses or assets operated by Tronox or its predecessors-in-interest (other than the E&P Business).[58]   Finally, Section 3 of the Indemnity Agreement requires Tronox to defend and indemnify Kerr-McGee and the Parent Group for Tronox-Related Claims involving Chemical & Other Liabilities.   A non-exclusive list of the sites for which Tronox is responsible (collectively, the "Tronox Sites") pursuant to the MSA is attached as Exhibit J to the Amended Proof of Claim filed by Anadarko and its affiliates against Tronox in Case No. 09-10156 (ALG).

67.   Federal, state, local, tribal and quasi-governmental agencies have filed more than 120 proofs of claim against Tronox asserting over $5 billion in liabilities plus additional undetermined amounts, certain of which have been purportedly settled pursuant to a global settlement under the Amended Plan.[59]   Certain of these governmental and regulatory agencies have notified Kerr-McGee that they were investigating whether Kerr-McGee or its affiliates may be responsible for environmental cleanup and remediation costs associated with certain Tronox Sites.   Further, upon information and belief, Tronox has defaulted on its obligation to perform remediation activities and pay remediation costs related to certain of the Tronox Sites.

68.   To the extent that Anadarko or any of its subsidiaries, including Kerr-McGee and its subsidiaries, incurs and/or pays any costs associated with (i) the defense of any

---

[57]   Master Separation Agreement § 2.5(h).

[58]   Prior to the Rejection Date, certain of these costs were subject to reimbursement by Kerr-McGee. *See* Master Separation Agreement § 2.5.

[59]   Amended Disclosure Statement (defined below), p.7.

demand, investigation, request, action, lawsuit, judicial, administrative, or other proceeding relating to the Tronox Sites; and/or (ii) the investigation, remediation, reclamation, restoration, response, or other action relating to the Tronox Sites and/or the Tronox Liabilities (collectively, the "Response Costs"), Anadarko, on behalf of itself, Kerr-McGee and their affiliates, asserts a rejection damages claim for indemnity and other obligations in accordance with the terms of the MSA.

69.    In addition to Kerr-McGee's contractual indemnity claim arising under the MSA, Anadarko also asserts a claim for contribution and reimbursement against the Debtors, including Southwestern Refining Company, Inc. ("Southwestern"), for environmental costs associated with the Brine Service Company site located in Corpus Christi, Texas (the "Brine Site").

## The Brine Site Contribution Claim

70.    The Brine Site is made up of former waste disposal pits, mainly containing metal deposits, including barium, cadmium, chromium, lead, and mercury. Southwestern, which was formerly a Kerr-McGee subsidiary and is now a subsidiary of Tronox and a debtor-in-possession, previously operated a refinery that allegedly contributed waste to the Brine Site. Although the refinery was sold in 1995, the liabilities associated with the refinery were incurred by Tronox and/or its predecessors-in-interest. The Indemnity Agreement memorializes the retention by Tronox and its predecessors-in-interest of such liabilities.[60] Accordingly, any liabilities associated with the Brine Site are Tronox Liabilities.[61]

71.    Even so, Anadarko was notified by the Environmental Protection Agency (the "EPA") that it may be separately and independently responsible for environmental

---

[60]    Indemnity Agreement § 1(b).

[61]    Master Separation Agreement § 5.1.

remediation costs associated with the Brine Site.[62]   The EPA alleges that the waste disposal pits

at the Brine Site caused toxic run-off that has contaminated Tule Lake, a nearby wetland area,

which flows into (and may have contaminated) other bodies of water.   Anadarko, Southwestern,

and certain other corporations identified by the EPA as potentially responsible parties began

negotiating an administrative order of consent with the EPA regarding its investigation and

feasibility study related to the environmental damage and clean up of the Brine Site.   On or about

June 14, 2009, Southwestern withdrew from these negotiations.   Anadarko and five other

potentially responsible parties (the "Brine Parties") subsequently entered into an Administrative

Order on Consent effective as of October 21, 2009 (the "Consent Order").

   72.   The Brine Parties' non-contingent claims relating to the Brine Site are, at a

minimum, $1,604,331, consisting of $491,144 in past costs incurred by the EPA; $1,040,000 for

an environmental consultant's remedial investigation and feasibility study required by the

Consent Order; and $73,187 for the project coordinator's work through 2010.   Based on a cost-

sharing agreement among the Brine Parties, each Brine Party is required to pay one-sixth of these

amounts.   Anadarko hereby asserts a non-contingent claim for contribution for Tronox's one-

sixth share (i.e., $267,388.50) of these costs.[63]

   73.   The scope and costs of any clean up activities that may ultimately be

undertaken in connection with the Brine Site and/or Tule Lake is currently unknown, but

according to proofs of claim filed by five Brine Parties, it could reach up to approximately $24

million.[64]   To the extent Anadarko is required to satisfy any future Response Costs associated

---

[62]   Anadarko's potential liability for costs associated with the Brine Site are unrelated to its ownership of Kerr-McGee.

[63]   Anadarko reserves the right to adjust the costs set forth herein as it obtains more current information.

[64]   See, e.g. Proofs of Claim Nos. 2183, 2211, 2356, 2656, and 2670.

with the Brine Site, Anadarko hereby asserts a rejection damages claim for contribution and

reimbursement from the Debtors.

**H.    Claims Related To Settlement Agreements And Consent Decrees Under Which Anadarko May Be Liable**

74.    Tronox's First Amended Disclosure Statement Regarding the Plan (the

"Amended Disclosure Statement") provides that Tronox has reached a global settlement with

"(a) the United States, through the Department of Justice, on behalf of other federal agencies and

in consultation with state, local, tribal and quasi-governmental authorities asserting

Environmental Claims against Tronox; (b) the Nevada Parties; (c) the Creditors' Committee; (d)

certain representatives for Holders of Tort Claims; and (e) the Ad Hoc Noteholders' Committee,

including certain holders of Unsecured Notes controlling more than 58% in principal amount of

the Unsecured Notes."[65]  The Amended Disclosure Statement further provides that the

restructuring transactions contemplated by the global settlement, which are embodied in the

Amended Plan, resolve Tronox's liability for "Environmental Claims and Tort Claims—the

significant 'legacy liabilities' Tronox incurred in connection with its spinoff from Kerr-McGee

Corporation and which are the subject of the pending Anadarko Litigation."[66]  The substantive

agreements relating to the global settlement are to be included in the Plan Supplement (as

defined in the Amended Plan).[67]  Tronox states that the global settlement resolves approximately

$4.9 billion, plus unliquidated amounts, of environmental liabilities associated with the Tronox

Sites.[68]

---

[65]    Amended Disclosure Statement, p.2.

[66]    Amended Disclosure Statement, p.3.

[67]    Amended Plan, pp. 10-11.

[68]    Amended Disclosure Statement, p.30.

75. The Debtors have also indicated that (i) they are parties to settlement agreements with third parties that are potentially responsible for, among other things, environmental remediation costs, and/or are bound by consent decrees together with those parties for such costs and (ii) the settlement agreements and consent decrees provide for contribution and/or recovery of costs from each such third party.[69] Sections 2.5 and 5.1 of the Master Separation Agreement require Tronox to indemnify Kerr-McGee and/or Anadarko to the extent that Anadarko or any of its subsidiaries, including Kerr-McGee and its subsidiaries, are (or become) parties to any such settlement agreement or consent decree and/or are required to pay any environmental remediation or other related costs thereunder. Anadarko, Kerr-McGee and their affiliates hereby asserts a rejection damages claim against Tronox for any such costs and/or liabilities.

## I.    Contingent Rejection Damages Claims For Other Costs Associated With Tronox Liabilities

76. Section 5.1 of the Master Separation Agreement requires Tronox to indemnify Kerr-McGee for any costs relating to the Tronox Liabilities.[70] To the extent that Anadarko or any of its subsidiaries, including Kerr-McGee and its subsidiaries, is required to satisfy any Response Costs or other costs associated with Tronox Liabilities, whether such costs relate to Tronox Sites or otherwise, Anadarko, on behalf of itself, Kerr-McGee, and their affiliates, hereby asserts a contingent rejection damages claim against Tronox for all such costs.

## J.    Claims Related To Kerr-McGee Quebec ULC

77. Kerr-McGee Quebec ULC ("Kerr-McGee Quebec") was a subsidiary of Kerr-McGee that operated within the company's battery business. On or about December 13,

---

[69]    Global Notes Pertaining to All Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs at Global Note 19 (Main Case, Docket No. 275).

[70]    Master Separation Agreement § 5.1.

2006, Kerr-McGee Quebec was dissolved. Anadarko has been advised by the Canada Revenue Agency (the "CRA") that Tronox has paid payroll taxes and filed payroll tax reports with the CRA under the name Kerr-McGee Quebec and the business number previously associated with Kerr-McGee Quebec. Kerr-McGee Quebec has, however, never been a subsidiary of Tronox.

78.   Upon information and belief, Tronox ceased making payments to the CRA in May or June 2008. To the extent that Anadarko or any of its subsidiaries, including Kerr-McGee, incurs or pays any costs (of any nature) associated with Tronox's use of Kerr-McGee Quebec's business name and/or number, Anadarko hereby asserts a claim for any and all such costs.

## K.    Claims For Subrogation

79.   To the extent that Anadarko or any of its subsidiaries, including Kerr-McGee and its subsidiaries, is (i) liable with the Debtors on any third-party claim related to a Tronox Liability and (ii) pays such claim to the third-party, section 509(a) of the Bankruptcy Code provides that Anadarko may subrogate to the rights of such creditor to the extent of the payment. Accordingly, Anadarko hereby asserts a right of subrogation to the rights of any such creditor.

## L.    Setoff/Recoupment

80.   Anadarko, Kerr-McGee, and their affiliates assert a claim for setoff and recoupment for all or a portion of their claims against the Debtors, including rejection damages claims and interest (if applicable), against any monetary damages awarded to the Debtors in the Adversary Proceeding. This Amended Proof of Claim shall constitute a request for the right to perform a setoff in satisfaction of Article VIII(E) of the Amended Plan.

## M.    Request for Estimation of Contingent and/or Unliquidated Claims

81.   Section 502(c) of the Bankruptcy Code requires the Bankruptcy Court to estimate contingent or unliquidated claims where failing to do so would unduly delay

administration of a debtor's case.[71]  Estimation of claims is also an expedient method for setting

the amount of an undetermined claim that might possibly receive a distribution from the estate.[72]

82.    According to the Amended Plan, creditors holding "Allowed" claims as of

the "Rights Expiration Date" are "Eligible Holders" who may participate in the "Rights

Offering" described in the Amended Plan.[73]  As of the date of this Amended Proof of Claim, the

Rights Expiration Date has not been set by the Bankruptcy Court, but it appears Tronox intends

to request 5:00 p.m. (PT) on November 5, 2010, which unduly prejudices Anadarko's right to

fully and fairly participate in the Rights Offering.

83.    The Debtors should not have the right to preclude Anadarko, Kerr-McGee,

and their affiliates from participating in the Rights Offering simply because their claims may not

be adjudicated and allowed on an expedited basis before the Rights Offering Date.   Therefore, to

the extent necessary to permit Anadarko and Kerr-McGee's participation in the Rights Offering,

on behalf of themselves and their affiliates, Anadarko and Kerr-McGee hereby request

estimation of certain of the contingent and unliquidated claims asserted in this Amended Proof of

Claim pursuant to section 502(c) of the Bankruptcy Code prior to the Rights Expiration Date.[74]

---

[71]    See 11 U.S.C. § 502(c); *Frito-Lay, Inc. v. LTV Steel Co.* (*In re Chateaugay Corp.*), 10 F.3d 944, 957 (2d Cir. 1993); *In re Thomson McKinnon Secs., Inc.*, 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992).

[72]    *In re Thomson McKinnon Secs.*, 143 B.R. at 619.

[73]    Amended Plan, Article A(4); A(47); and A(143).

[74]    Anadarko and Kerr-McGee filed an objection to the Debtors' Motion For An Order (A) Authorizing Tronox To Enter Into (I) A Plan Support Agreement And (II) An Equity Commitment Agreement, And To Pay Certain Fees In Connection Therewith, And (B) Approving Procedures For A Rights Offering (Docket No. 1994) and have argued that the expedited timeframe proposed by the Debtors for the allowance of claims prior to the Rights Expiration Date unfairly prejudices Anadarko and Kerr-McGee's rights. To the extent Anadarko and Kerr-McGee's objection is denied and it becomes necessary to fully adjudicate all or any portion of their claims prior to the Rights Expiration Date, this Amended Proof of Claim shall constitute a request for estimation of the contingent and/or unliquidated portions of such claims.

### *Reservation of Rights*

84.  Anadarko, Kerr-McGee, and their affiliates reserve the right to amend and/or supplement this Amended Proof of Claim, including any related exhibits, to, *inter alia*, (i) assert any and all other claims of whatever kind or nature it has, or that it may have at any time under any applicable law, whether legal or equitable, and/or (ii) adjust the amount of damages for any claim asserted against the Debtors, whether listed in this Amended Proof of Claim or any exhibit. To the extent that any rejection damages claims are determined to be claims that do not arise from the rejection of the MSA, such claims shall nonetheless be deemed to be general unsecured claims through the filing of this Amended Proof of Claim (to the extent such claims are not otherwise properly characterized as administrative expense claims).

85.  Additionally, to the extent that Anadarko, Kerr-McGee, or their affiliates raise any additional claims, such claims may be based on provisions of the MSA that are not specifically described herein, any provision(s) of any other agreement(s) with the Debtors that Anadarko, Kerr-McGee, or their affiliates deem relevant to such claims.

86.  Nothing in this Amended Proof of Claim shall be deemed an admission of any liability by Anadarko, Kerr-McGee, and their affiliates with respect to any Tronox Liabilities or any other claims for which Tronox is liable and/or agreed to indemnify Kerr-McGee and its affiliates.

87.  Nothing contained herein shall be construed as a waiver of Anadarko, Kerr-McGee, or their affiliates' rights to treat any claim set forth herein as an administrative expense claim, to the extent any such claim is in fact entitled to such treatment pursuant to section 503 of the Bankruptcy Code.