**Exhibit B**

Table of Contents

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D. C. 20549**

# FORM 10-Q

**(Mark One)**

**[ X ]  QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934**

**For the quarterly period ended June 30, 2012**

or

**[  ]  TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934**

**For the transition period from       to**

**Commission File No. 1-8968**

# ANADARKO PETROLEUM CORPORATION

(Exact name of registrant as specified in its charter)

| **Delaware** | **76-0146568** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**1201 Lake Robbins Drive, The Woodlands, Texas 77380-1046**

(Address of principal executive offices)

Registrant's telephone number, including area code **(832) 636-1000**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   Yes ☒   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer," and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☒   Accelerated filer ☐   Non-accelerated filer ☐   Smaller reporting company ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐   No ☒

The number of shares outstanding of the Company's common stock as of July 31, 2012, is shown below:

| **Title of Class** | **Number of Shares Outstanding** |
|---|---|
| Common Stock, par value $0.10 per share | 499,678,984 |

Table of Contents

## TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| **PART I** | | | |
| Item 1. | Financial Statements | | |
| | Consolidated Statements of Income for the Three and Six Months Ended June 30, 2012 and 2011 | | 2 |
| | Consolidated Statements of Comprehensive Income for the Three and Six Months Ended June 30, 2012 and 2011 | | 3 |
| | Consolidated Balance Sheets as of June 30, 2012, and December 31, 2011 | | 4 |
| | Consolidated Statement of Equity for the Six Months Ended June 30, 2012 | | 5 |
| | Consolidated Statements of Cash Flows for the Six Months Ended June 30, 2012 and 2011 | | 6 |
| | Notes to Consolidated Financial Statements | | 7 |
| Item 2. | Management's Discussion and Analysis | | 26 |
| | Financial Results | | 29 |
| | Operating Results | | 39 |
| | Liquidity and Capital Resources | | 41 |
| Item 3. | Quantitative and Qualitative Disclosures About Market Risk | | 45 |
| Item 4. | Controls and Procedures | | 46 |
| **PART II** | | | |
| Item 1. | Legal Proceedings | | 47 |
| Item 1A. | Risk Factors | | 47 |
| Item 2. | Unregistered Sales of Equity Securities and Use of Proceeds | | 48 |
| Item 6. | Exhibits | | 49 |

Table of Contents

## ANADARKO PETROLEUM CORPORATION
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
#### (Unaudited)

**10.  Contingencies (Continued)**

In November 2011, the Company's Board of Directors (Board) received a letter from a purported shareholder demanding that the Board investigate, address, remedy, and commence derivative proceedings against certain officers and directors for their alleged breach of fiduciary duty related to the Deepwater Horizon events. The Board has considered this demand and in February 2012 determined that it would not be in the best interest of the Company to pursue the issues alleged in the demand letter. In March 2012, the Company's Board received a similar demand letter from a purported shareholder supplementing an original demand that had been made by the shareholder in September 2010 related to the Deepwater Horizon events. The Board has considered this demand and in April 2012 determined that it would not be in the best interest of the Company to pursue the issues alleged in the demand letter.

Given the various stages of these proceedings, the Company currently cannot assess the probability of losses, or reasonably estimate a range of any potential losses, related to ongoing proceedings. The Company intends to vigorously defend itself, its officers, and its directors in each of these proceedings, and will avail itself of any and all indemnities provided by BP against civil damages.

*Remaining Liability Outlook*  It is reasonably possible that the Company may recognize additional Deepwater Horizon event-related liabilities for potential fines and penalties, shareholder claims, and certain other claims not covered by the indemnification provisions of the Settlement Agreement; however, the Company does not believe that any potential liability attributable to the foregoing items, individually or in the aggregate, will have a material impact on the Company's consolidated financial position, results of operations, or cash flows. This assessment takes into account certain qualitative factors, including the subjective and fault-based nature of CWA penalties, the Company's indemnification by BP against certain damage claims as discussed above, BP's creditworthiness, the merits of the shareholder claims, and directors and officers insurance coverage related to outstanding shareholder claims.

The Company will continue to monitor the MDL and other legal proceedings discussed above as well as federal investigations related to the Deepwater Horizon events, including review of the preliminary investigatory findings recently announced by the U.S. Chemical Safety Board. The Company cannot predict the nature of evidence that may be discovered during the course of legal proceedings and investigations, the timing of discovery, or the timing of completion of any legal proceedings or investigations.

Although the Company is fully indemnified by BP against OPA damage claims, NRD claims and assessment costs, and certain other potential liabilities, the Company may be required to recognize a liability for these amounts in advance of or in connection with recognizing a receivable from BP for the related indemnity payment. In all circumstances, however, the Company expects that any additional indemnified liability that may be recognized by the Company will be subsequently recovered from BP itself or through the guarantees of BPCNA or BP p.l.c.

**Tronox Litigation**  In January 2009, Tronox Incorporated (Tronox), a former subsidiary of Kerr-McGee Corporation (Kerr-McGee), which is a current subsidiary of Anadarko, and certain of Tronox's subsidiaries filed voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York. Subsequently, in May 2009, Tronox and certain of its affiliates filed a lawsuit against Anadarko and Kerr-McGee asserting a number of claims, including claims for actual and constructive fraudulent conveyance (Adversary Proceeding). Tronox alleges, among other things, that it was insolvent or undercapitalized at the time it was spun off from Kerr-McGee and seeks, among other things, to recover damages, including interest, in excess of $18.9 billion from Kerr-McGee and Anadarko, as well as litigation fees and costs. In accordance with Tronox's Plan of Reorganization, the Adversary Proceeding is being prosecuted by the Anadarko Litigation Trust. Pursuant to the Anadarko Litigation Trust Agreement, the Anadarko Litigation Trust was "deemed substituted" for Tronox in the Adversary Proceeding as the party in such litigation. For purposes of this Form 10-Q, references to "Tronox" after February 2011 refer to the Anadarko Litigation Trust. For additional disclosure related to the Tronox Litigation, see *Note 16 —Contingencies—Tronox Litigation* in the *Notes to the Consolidated Financial Statements* included in the Company's Annual Report on Form 10-K for the year ended December 31, 2011.

The U.S. government was granted authority to intervene in the Adversary Proceeding, and in May 2009 asserted separate claims against Anadarko and Kerr-McGee under the Federal Debt Collection Procedures Act (FDCPA Complaint). In April 2012, Anadarko and Kerr-McGee filed an answer to the FDCPA Complaint.

18

**Table of Contents**

**ANADARKO PETROLEUM CORPORATION**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
**(Unaudited)**

**10.  Contingencies (Continued)**

In February 2012, the Company filed a motion for partial summary judgment seeking dismissal of several claims, including all actual and constructive fraudulent transfer claims protected by Section 546(e) of the U.S. Bankruptcy Code. The court has not yet ruled on that issue. Trial began in May 2012 and is expected to last through September 2012.

The Company's recent attempts to resolve the Adversary Proceeding through mediation and settlement discussions have reached an impasse and at this time the Company believes the likelihood of settlement is remote. The Company now considers litigation the probable form of final resolution of the Adversary Proceeding. Previously, the Company believed it probable that the parties would reach a settlement on reasonable terms and thus the Company considered a loss, via settlement, related to the Adversary Proceeding probable. Based on this assumption, a $275 million loss contingency was accrued in the first quarter of 2012, which increased the Company's total estimated contingent loss accrual related to the Adversary Proceeding to $525 million as of March 31, 2012. Due to the change in the Company's opinion as to the probable form of resolution of this matter, the Company reversed the settlement-based $525 million contingent loss accrual related to this matter in the second quarter of 2012.

The Company remains confident in the merits of its position, and continues to vigorously defend the claims asserted in the Adversary Proceeding. The Company does not believe a loss resulting from litigating the Adversary Proceeding is probable. Accounting guidance requires that contingent losses be probable in nature for loss recognition to be appropriate. Accordingly, the Company's Consolidated Balance Sheet as of June 30, 2012, does not include a loss-contingency liability related to the litigation of the Adversary Proceeding.

Although the Company does not consider a loss related to the litigation of the Adversary Proceeding probable, it is reasonably possible that the Company could incur a loss as a result of litigating this matter. Despite the plaintiffs' damage claims in excess of $18.9 billion, the Company currently believes a reasonable range of potential loss is zero to $1.4 billion. The low end of the Company's estimated range of potential loss is based on the Company's current belief that it will more likely than not prevail in defending against the claims asserted in the Adversary Proceeding. The high end of the Company's estimated range of potential loss represents the amount of consideration received by Kerr-McGee at the time of the Tronox spin-off, approximately $985 million, plus interest thereon.

The Company's estimated range of potential loss is based on the Company's opinion regarding the current status of and likelihood of final resolution through litigation and could change as a result of developments in the Adversary Proceeding, or if the likelihood of settlement ceases to be remote. The Company's ultimate financial obligation resulting from resolution of the Adversary Proceeding could vary, perhaps materially, from the Company's above-stated estimated range of potential loss.

Separately, in July 2009, a consolidated class action complaint was filed in the New York District Court on behalf of purported purchasers of Tronox's equity and debt securities between November 21, 2005, and January 12, 2009, against Anadarko, Kerr-McGee, several former Kerr-McGee officers and directors, several former Tronox officers and directors, and Ernst & Young LLP (Securities Case). The complaint alleges causes of action arising under Sections 10(b) and 20(a) of the Exchange Act for purported misstatements and omissions regarding, among other things, Tronox's environmental-remediation and tort-claim liabilities. The plaintiffs allege, among other things, that these purported misstatements and omissions are contained in certain of Tronox's public filings, including filings made in connection with Tronox's initial public offering. The plaintiffs seek an unspecified amount of compensatory damages, including interest thereon, as well as litigation fees and costs. Certain parties, including Anadarko, Kerr-McGee, and the former Kerr-McGee officers and directors, reached a tentative settlement in this matter in April 2012, subject to approval by the court. The tentative settlement amount will be directly funded by the insurers for Tronox, Anadarko, and Kerr-McGee. As a result, offsetting gains and losses have been recorded to reflect the impact of the tentative settlement of the Securities Case.

19