KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH  45202
Telephone:     (513) 579-6400
Facsimile:     (513) 579-6457
Jason V. Stitt, Esq. (*admitted pro hac vice*)
Bethany P. Recht, Esq. (*admitted pro hac vice*)
*Counsel for Garretson Resolution Group, Inc.,*
*as Tronox Incorporated Tort Claims Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re ) | |
| ) | Chapter 11 |
| TRONOX INCORPORATED, *et al.*, ) | Case No. 09-10156 (ALG) |
| ) | Jointly Administered |
| Reorganized Debtors. ) | |
| ) | |
| ) | |
| TRONOX INCORPORATED, ) | |
| TRONOX WORLDWIDE LLC ) | |
| f/k/a Kerr-McGee Chemical Worldwide LLC, ) | |
| and TRONOX LLC f/k/a Kerr-McGee ) | |
| Chemical LLC, ) | |
| ) | Adversary Proceeding No. 09-01198 (ALG) |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| KERR-McGEE CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

| | |
|---|---|
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Intervenor, | ) |
| | ) |
| v. | ) |
| | ) |
| TRONOX, INC., | ) |
| TRONOX WORLDWIDE LLC, | ) |
| TRONOX LLC, | ) |
| KERR-MCGEE CORPORATION, and | ) |
| ANADARKO PETROLEUM | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### JOINDER OF THE TRONOX INCORPORATED TORT CLAIMS TRUST TO PLAINTIFFS' OBJECTION TO DEFENDANTS' 502(h) CLAIM AND SUPPLEMENTAL MEMORANDUM

Jason V. Stitt, Esq. (*admitted pro hac vice*)
Bethany P. Recht (*admitted pro hac vice*)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Telephone:       (513) 579-6400
Facsimile:       (513) 579-6457

*Counsel for the Tronox Incorporated Tort Claims Trust*

2

For all of the reasons set forth in the Objection to Defendants' 502(h) Claim and Supplemental Memorandum ("Objection") filed by the Anadarko Litigation Trust ("Plaintiffs"), the Garretson Resolution Group, Inc. ("GRG"), in its capacity as the Tort Claims Trustee of the Tronox Incorporated Tort Claims Trust ("Tort Trust"), respectfully requests that the Court enter a final judgment at the high end of the damages range set forth in Plaintiffs' Objection ($20,773,030,067). Further, as the recipient of 12% of the total proceeds from this adversary proceeding, the Tort Trust believes that judgment in this amount is appropriate as set forth below.

Pursuant to the Global Settlement, the Tort Trust agreed to release all tort claims against the Debtors in exchange for (1) $12,500,000 cash, (2) the net proceeds of any insurance settlements or recoveries, or the right to such proceeds from any insurance policies providing coverage for the benefit of holders of tort claims, and (3) 12% of the total proceeds from this adversary proceeding, in accordance with the Anadarko Litigation Trust Agreement. In doing so, the Tort Trust agreed to accept a contingent asset as the vast majority of the tort claimants' consideration under the Plan, bearing the risk that the litigation could be unsuccessful.

This Global Settlement allowed Debtors to successfully reorganize and, importantly, enabled non-environmental and non-tort creditors to be paid nearly in full. Defendants now seek to try to upend the deal that formed the basis for Tronox's Plan of Reorganization. Under the alternatives that Defendants propose in their Supplemental Memorandum on Their 502(h) Claim and Offset (Dkt. No. 623), the tort claims would be capped based on either the amount of known or knowable environmental and tort claims as of 2005 that the Court found at trial ($1.757 billion "Scenario B") or the overall "creditor shortfall" ($850 million "Scenario A"). *Id.* at 21. As extensively discussed in Plaintiffs' Objection, the Defendants cannot use hindsight in an effort to

artificially cap Plaintiffs' recovery.  Instead, Plaintiffs' recovery should be determined based on

the estimated values of the assets and creditor claims at the time of confirmation.

The level of post-confirmation tort claims filed with and allowed by the Tort Trust

highlights the error in Defendants' hindsight based arguments.  At confirmation, the Debtors

estimated that the tort claims liability was approximately $500,000,000 to $1,000,000,000.  This

estimate has already proven to be inadequate.  Since becoming effective in February 2011, the

Tort Trust has been processing tort claims in accordance with its governing documents and the

Plan of Reorganization.  To date, the Tort Trust has processed and is scheduled to pay 7,611

claims, for a total of $1,369,000,000 (an average claim value of $179,000 per claim).[1]  These

claimants are suffering from a variety of diseases ranging from skin cancer, lung cancer, breast

cancer, cardiovascular disease, asthma and other respiratory diseases.  Importantly, the values

being assigned to the claims are scheduled values that were negotiated and agreed upon as part of

the Plan of Reorganization and approved by the Court—values that were intended to allow the

tort creditors to be paid nearly in full.

The majority of the Tort Trust's claims arise out of creosote exposure in Avoca,

Pennsylvania where Defendants operated a wood treatment plant.  The former mayor of Avoca,

James Haddock, testified extensively at trial about Defendants' continued concealment of the

environmental issues caused by their plant. For example, Mr. Haddock testified that when

operating the facility, the Defendants touted the environmental safety at the plant, and even

represented that the Defendants "step up to the plate" with respect to environmental issues.  (See,

Haddock Direct 6/12/12 Tr. 2239:10-18.)  After shutting down the plant in 1996, Defendants

---

[1] The $1,369,000,000 in scheduled claims is the current amount – the Tort Trust anticipates significantly more claims.  There is still in excess of $175,000,000 in claims that have been filed but not yet allowed, and additional claims continue to be filed with the Tort Trust.

continually provided Avoca's mayor with various reasons as to why it was not selling or redeveloping the property. (*Id.* at 2237:11-19.) It was not until 1999—three years later—that Defendants disclosed to the mayor *for the first time* that it was not selling or redeveloping the land due to concerns about liability resulting from environmental conditions at the property. (*Id.* at 2237:30-2239:5, 2239:13-2240:24.) As Mr. Haddock explained in his testimony, by failing to disclose the environmental issues at the property, Defendants had lied to the entire town: "when you lie to the mayor of a community you lie to the entire community." (*Id.* at 2245:11–20.)

The toxic legacy Debtors left in Avoca, and the needs of the victims suffering from that legacy, is unfortunately evident from the Tort Trust claims. More than 4,000 of the 7,611 claims allowed by the Tort Trust are creosote claims asserted by Avoca claimants. The aggregate amount of these claims is $949,000,000 (an average of $218,000 per claim) based on scheduled values approved as part of the bankruptcy plan. (Tronox Inc. Tort Claims Trust Distribution Procedures at Sch. B.) The premise underlying these values was to pay the tort victims amounts comparable to the arbitration awards they had been obtaining against Debtors between the IPO date and the chapter 11 filing. The Avoca claimants were achieving considerable success, securing awards that were far larger than those that had prevailed pre-IPO, and their attorney planned a new wave of claims. (Op. at 113.) By all accounts, therefore, the Avoca claimants could have expected to recover in the amount of the scheduled values but for Debtors' bankruptcy. A recovery at the low end of range proposed by the Court, however, will result in the Avoca claimants, and indeed all of the tort creditors, receiving less than 50% of the scheduled amount of claims to date. A judgment in the range requested by Defendants would be a fraction of that. This would be a windfall to the Defendants at the expense of the tort claimants—who have suffered enough at Defendants' hands.

5

Accordingly, the Tort Trust respectfully joins the Plaintiffs in requesting judgment at the

damages range set forth in Plaintiffs' Objection and Proposed Final Judgment.

Dated:  February 12, 2014                          Respectfully submitted,

                                                   /s/ *Bethany P. Recht*
                                                   Jason V. Stitt, Esq. (*admitted pro hac vice*)
                                                   Bethany P. Recht (*admitted pro hac vice*)
                                                   KEATING MUETHING & KLEKAMP PLL
                                                   One East Fourth Street, Suite 1400
                                                   Cincinnati, Ohio  45202
                                                   Telephone:      (513) 579-6400
                                                   Facsimile:      (513) 579-6457

                                                   *Counsel for the Tronox Incorporated Tort
                                                   Claims Trust*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 12, 2014, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/ *Bethany P. Recht*
Bethany P. Recht