Melanie Gray (*admitted pro hac vice*)
Lydia Protopapas (LP 8089)
Jason W. Billeck (*admitted pro hac vice*)
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002-5242
Telephone:    (713) 651-2600
Facsimile:    (713) 651-2700

Gregory Silbert (GS 0033)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone:    (212) 310-8000
Facsimile:    (212) 310-8007

P. Sabin Willett (*admitted pro hac vice*)
Thomas R. Lotterman (*admitted pro hac vice*)
James J. Dragna (*admitted pro hac vice*)
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA 02110-1726
Telephone:    (617) 951-8000
Facsimile:    (617) 951-8736

Kenneth N. Klee (KK 5910)
David M. Stern (*admitted pro hac vice*)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090

*Counsel to Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) Chapter 11 |
| TRONOX INCORPORATED, et al., | ) Case No. 09-10156 (ALG) |
| Debtors. | ) Jointly Administered |
| TRONOX INCORPORATED, et al., | ) |
| Plaintiffs, | ) |
| v. | ) |
| KERR-MCGEE CORPORATION, et al., | ) |
| Defendants. | ) Adv. Pro. No. 09-01198 (ALG) |
| THE UNITED STATES OF AMERICA, | ) |
| Plaintiff-Intervenor, | ) **DEFENDANTS' REPLY MEMORANDUM ON THEIR 502(h) CLAIM AND OFFSET** |
| v. | ) |
| TRONOX, INC., et al., | ) |
| Defendants. | ) |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 2

I.     A DILUTED 2.8% MULTIPLIER IS IMPROPER........................................... 2

     A.    The Plain Meaning Of The Plan Precludes Dilution ............................... 2

     B.    Plaintiffs' Speculation About What "Would Have" Happened At
           Confirmation Is Irrelevant And Erroneous ............................................ 4

     C.    No Other Legal Or Equitable Principle Supports Dilution.................................... 5

II.    PLAINTIFFS' NEW 68% MULTIPLIER IS CONTRARY TO THE PLAN.................. 7

III.   THE COURT SHOULD ALLOW DEFENDANTS' 502(h) CLAIM ........................... 9

     A.    Defendants' 502(h) Claim Is Not An Equity Interest In The Debtors.................. 9

     B.    Defendants' 502(h) Claim Cannot Be Equitably Subordinated Or
           Disallowed ................................................................................. 11

IV.   PLAINTIFFS' UNPROVED, POST-PETITION ESTIMATES HAVE NO
     BEARING ON THE AMOUNT OF DEFENDANTS' 502(h) CLAIM ....................... 12

     A.    Plaintiffs' Rationalizations For Their $4 Billion Estimate Lack Merit .............. 12

     B.    Plaintiffs Have Not Proved Their $4 Billion Estimate ......................................... 14

     C.    Quantifying Defendants' 502(h) Claim As Of November 2005 Does Not
           Contradict The Court's Summary Judgment Holding ......................................... 16

V.    PLAINTIFFS ARE NOT ENTITLED TO POST-TRANSFER APPRECIATION........ 17

VI.   PLAINTIFFS MISSTATE THE LAW OF PREJUDGMENT INTEREST ................... 18

CONCLUSION.................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

*Adelphia Recovery Trust v. Bank of Am., N.A.*,
   390 B.R. 80 (Bankr. S.D.N.Y. 2008) ........................................................................3

*ASARCO LLC v. Am. Mining Corp.*,
   404 B.R. 150 (Bankr. S.D. Tex. 2009) ...................................................................10

*Bailey v. Glover*,
   88 U.S. 342 (1874)....................................................................................................5

*Blue Planet Software, Inc. v. Games Int'l, LLC*,
   334 F. Supp. 2d 425 (S.D.N.Y. 2004)....................................................................11

*Carl L. Bucki, as Trustee of the Estate of Cardon Realty Corp. v. Singleton* (*In re*
   *Cardon Realty Corp.*),
   146 B.R. 72 (Bankr. W.D.N.Y. 1992) .....................................................................19

*Charter Asset Corp. v. Victory Mkts., Inc.* (*In re Victory Mkts., Inc.*),
   221 B.R. 298 (B.A.P. 2d Cir. 1998).........................................................................3

*Duffy v. Futter* (*In re Futter Lumber Corp.*),
   Nos. 09-73291-478, ADV 11-9055-478, 2011 WL 5417094 (Bankr. E.D.N.Y.
   Nov. 8, 2011) ...........................................................................................................14

*Furlong v. Shalala*,
   156 F.3d 384, 392 (2d Cir. 1998)............................................................................11

*Gardner v. Shell W. E&P, Inc.*,
   No. CJ-1995-234L, 2008 WL 2785582 (Okla. Dist. Apr. 16, 2008)......................20

*Goldman Sachs Execution & Clearing, L.P. v. Off. Unsecured Creditors Comm.*
   *of Bayou Grp., LLC*,
   491 F. App'x 201 (2d Cir. 2012) .............................................................................19

*Gowan v. HSBC Mort. Corp.* (*In re Dreier LLP*),
   No. 08-15051, 2012 WL 4867376 (Bankr. S.D.N.Y. Oct. 12, 2012) ......................10

*Gowan v. Wachovia Bank, N.A.* (*In re Dreier LLP*),
   453 B.R. 499 (Bank. S.D.N.Y. 2011) ......................................................................11

*Harbinger Capital Partners LLC v. Ergen* (*In re LightSquared Inc.*),
   504 B.R. 321 (Bankr. S.D.N.Y. 2013)....................................................................12

*Hecht Co. v. Bowles*,
   321 U.S. 321 (1944).................................................................................................10

*Hirsch v. Penn. Textile Corp.* (*In re Centennial Textiles, Inc.*),
    227 B.R. 606 (Bankr. S.D.N.Y. 1998 ) ..................................................................11

*Home Fire Ins. Co. v. Barber*,
    93 N.W. 1024 (Neb. 1903)...............................................................................11

*Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*,
    547 U.S. 651 (2006)..........................................................................................5

*In re Armstrong World Indus. Inc.*,
    432 F.3d 507 (3d Cir. 2005).............................................................................6

*In Re Bankvest Capital Corp.*,
    375 F. 3d 51 (1st Cir. 2004)...........................................................................10

*In re CNB Int'l, Inc.*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008), *aff'd in part, rev'd in part*, 440 B.R.
    31 (W.D.N.Y. 2010) ..............................................................................18, 19

*In re Colonial Realty, Co.*,
    226 B.R. 513 (Bankr. D. Conn. 1998) ........................................................17, 18

*In re Oneida, Ltd.*,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009) ............................................................14

*In re Palermo*,
    739 F.3d 99 (2d Cir. 2014).............................................................................18

*In re Patriot Seeds, Inc.*,
    No. 03-84217, 2010 WL 381620 (Bankr. C.D.Ill. Jan. 20, 2010) .........................15

*In re Payroll Express Corp.*,
    Nos. 92-43150, 98-8405, 2005 WL 3789326 (Bankr. S.D.N.Y. July 28, 2005) ...................18

*In re Prince*,
    85 F.3d 314 (7th Cir. 1996) ............................................................................8

*In re Tronox Inc.*,
    429 B.R. 73 (Bankr. S.D.N.Y. 2010) ..............................................................19

*James B. Downing & Co. v. Agri Dairy Prods., Inc.* (*In re James B. Downing &
Co.*),
    74 B.R. 906 (Bankr. N.D. Ill. 1987) ...............................................................17

*Jones v. UNUM Life Ins. Co. of Am.*,
    223 F.3d 130, 139 (2d Cir.2000).....................................................................19

*Kepler v. Sec. Pac. Hous. Servs.* (*In re McLaughlin*),
    183 B.R. 171 (Bankr. W.D. Wis. 1995)................................................................17

*Kipperman v. Onex Corp.*,
    411 B.R. 805 (Bankr. N.D. Ga. 2009) ..................................................................13

*Kothe v. R.C. Taylor Trust*,
    280 U.S. 224 (1930)..............................................................................................5

*Kuehner v. Irving Trust Co.*,
    299 U.S. 445 (1937)..............................................................................................5

*LaBrum & Doak v. Brown (In re LaBrum & Doak, LLP)*,
    225 B.R. 93 (Bankr. E.D. Pa. 1998) ....................................................................12

*Law v. Siegel*,
    No. 12-5196, 2014 WL 813702 (U.S. Mar. 4, 2014)...........................................12

*MC Asset Recovery LLC v. Southern Co.*,
    No. CIV.A.1:06-cv-0417B, 2006 WL 5112612 (N.D. Ga. Dec. 11, 2006)...........13

*Pepper v. Litton*,
    308 U.S. 295 (1939)............................................................................................12

*Phillips v. Hedges*,
    124 P.3d 227 (Okla. 2005)...................................................................................20

*Quinlan v. Koch Oil Co.*,
    25 F.3d 936 (10th Cir. 1994) ..............................................................................20

*Sampsell v. Imperial Paper & Color Corp.*,
    313 U.S. 215 (1941)..............................................................................................5

*Shanbour v. Phillips 66 Natural Gas Co.*,
    864 P.2d 815 (Okla. 1993)...................................................................................19

*Strickland Tower Maint., Inc. v. AT&T Commc'ns, Inc.*,
    128 F.3d 1422 (10th Cir. 1997) ..........................................................................20

*Tronox, Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*,
    464 B.R. 606 (Bankr. S.D.N.Y. 2012).............................................................14, 16

STATUTES

11 U.S.C. § 101(10)(B).............................................................................................9

11 U.S.C. § 502(b) .................................................................................................12

11 U.S.C. § 502(h) ................................................................................ *passim*

11 U.S.C. § 1129(b)(1) .........................................................................5

28 U.S.C. § 1961(b) ..............................................................................19

Okla. Stat. Ann. tit. 15, § 266 ..............................................................19

## OTHER AUTHORITIES

4 COLLIER ON BANKRUPTCY ¶ 502.03[11] (16th ed. 2013) ..........................12

H.R. REP. NO. 95-595, 1st Sess. (1977) ..............................................6

## INTRODUCTION

Defendants' Supplemental Memorandum on their 502(h) Claim and Offset ("Defts. 502(h) Br.") demonstrated how the terms of Tronox's Plan of Reorganization (the "Plan"), the law, and equitable principles defeat a massively diluted 2.8% multiplier. Plaintiffs' memorandum in response ("Pltfs. 502(h) Br.") has little to say on dilution, the primary issue the Court specifically directed the parties to address. *See* Slip Op. at 166. Plaintiffs argue that the Plan terms control, but cite no Plan provision that mandates or even permits dilution. That is because none exists. Plaintiffs acknowledge that Article IV.C.5 of the Plan does not authorize dilution. And other Plan provisions expressly exclude Defendants' 502(h) claim from Class 3 and thus preclude adding the claim to the Class 3 claims base. The Court should reject dilution, as it should reject Plaintiffs' alternative request for a 68% multiplier. The plain terms of the Plan, the law, and governing remedial principles require setting the multiplier at no less than 100%.

Instead of focusing on dilution as the Court requested, Plaintiffs assail the Court's findings and rulings on the restorative principle. They attack the Court's holding that, just as Plaintiffs can recover the entire net value of the transferred property (the "E&P assets") as of November 2005 ($14.459 billion) on behalf of the estate, Defendants can in turn file a 502(h) claim against the estate for the "the residual value of the E&P assets after their debts, including the legacy liabilities, were paid in full." Slip Op. at 143. Plaintiffs' plea for reconsideration is out of place and meritless. Contrary to Plaintiffs' contention, the restorative principle does not limit their fraudulent-transfer recovery on account of an equity interest Defendants had in the debtors. Rather, to restore the parties to their pre-transfer positions as required, the Court recognized a claim for the value Defendants would have held had the transfers never happened. *Id.* at 143, 147. None of Plaintiffs' arguments undermines that holding.

The Court, therefore, should allow Defendants' 502(h) claim, and the amount of the claim should conform to the Court's findings regarding Tronox's liabilities as of November 2005. The unproved, nonbinding estimates in Tronox's 2010 Disclosure Statement (the "Disclosure Statement") are irrelevant. Plaintiffs implicitly concede the point, as all their damages scenarios purport to calculate damages as of November 2005, not as of 2010. *See* Pltfs. 502(h) Br. at 25.

Finally, Plaintiffs ask for appreciation and prejudgment interest. Their request for appreciation (1) contradicts the Court's holding that their recovery be valued as of November 2005, (2) is contrary to the restorative principle, and (3) is flawed on the merits. Plaintiffs' request for prejudgment interest misstates the law and, as a result, asks for more interest than is proper.

For the reasons presented below and in Defendants' opening memorandum, the principal net judgment should be $850 million. As instructed by the Court, *see* Slip Op. at 166, Defendants submit as Exhibit 1 a proposed counter-form of judgment to that effect.[1]

## ARGUMENT

## I.    A DILUTED 2.8% MULTIPLIER IS IMPROPER.

### A.    The Plain Meaning Of The Plan Precludes Dilution.

Under Article IV.C.5 of the Plan, Defendants' offset against the recovery in this adversary proceeding equals the amount of their 502(h) claim "multiplied by the percentage recovery to Allowed Class 3 General Unsecured Claims." DX 2568 at 119–120 (Plan at Art. IV.C5). Plaintiffs argue that "the percentage recovery" should be 2.8% because, though all Class 3 creditors recovered at least 100%, Defendants' 502(h) claim should be added to the Class 3 "claims base" from which the percentage recovery is derived.

---

[1] By submitting this proposed counter-form of judgment, Defendants do not abandon, forfeit, or otherwise waive any argument (1) that any judgment against them for any amount on any claim is improper and should be vacated or reversed, (2) that this Court lacks constitutional authority to enter judgment on any claim against them, or (3) that this Court lacks statutory authority to enter proposed findings of fact and conclusions of law on core claims against them. Defendants expressly reserve their rights to make all such arguments and to challenge the findings of fact and conclusions of law underlying the judgment, including but not limited to arguments about the appropriate multiplier.

Despite arguing that dilution is "mandated by the terms of the Plan," Pltfs. 502(h) Br. at 12, Plaintiffs point to no Plan term that mandates or supports such a result. The provision that addresses the multiplier, Article IV.C.5, shows that the parties did not agree on dilution, and the parties expressly reserved their rights to argue what the law requires. Defts. 502(h) Br. at 5–7. Plaintiffs concede the point: the parenthetical in Article IV.C.5 takes no position on the issue of dilution but "left [it] open." Pltfs. 502(h) Br. at 12.

The law requires that the Plan be enforced according to its terms. *See Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 80, 88 (S.D.N.Y. 2008); *Charter Asset Corp. v. Victory Mkts., Inc.* (*In re Victory Mkts., Inc.*), 221 B.R. 298, 303 (B.A.P. 2d Cir. 1998); *see also* Slip Op. at 143. The Plan's definition provisions expressly and intentionally exclude Defendants' 502(h) claim from Class 3. *See* Defts. 502(h) Br. at 7 (citing DX 2568 at 99, 111) (defining General Unsecured Claims as "any Unsecured Claim . . . that is not . . . the Anadarko Section 502(h) Claim"). Because the 502(h) claim is not a Class 3 claim at all, it is not an "Allowed" Class 3 claim and therefore cannot be added to the claims base from which "the percentage recovery to Allowed Class 3 General Unsecured Claims" is derived. Under the Plan, then, the multiplier cannot be diluted.

Noting that the Plan's definitions do "not change the nature" of the 502(h) claim, Plaintiffs argue that the definitions reflect the parties' intent merely to "defer[]" the claim "until after the litigation concluded and not impact the timing of distributions to Class 3 creditors." Pltfs. 502(h) Br. at 13. The definitions do not "defer" anything. The definitions exclude the 502(h) claim in plain words to enable Class 3 to receive an immediate distribution without a reserve. In equally plain words, Article IV.C.5 draws the multiplier from the actual recovery of "Allowed Class 3" claims. If the parties intended the 502(h) claim to be a Class 3 claim that was merely

3

deferred, they would not have used language of exclusion.  The 502(h) claim cannot be classified

as a Class 3 claim—not at confirmation, not on the Plan's Effective Date, and not now.

> **B.  Plaintiffs' Speculation About What "Would Have" Happened At Confirmation Is Irrelevant And Erroneous.**

The plain meaning of the Plan also refutes a second theory Plaintiffs advance:  that the

claim "would have" been part of Class 3 at confirmation "absent the agreement [in Article

IV.C.5] to defer the claim."  Pltfs. 502(h) Br. at 13.  Plaintiffs contend that their hypothetical ap-

proach follows not from the Plan, but from the Court's Opinion—in particular, the Court's

statement that Defendants' 502(h) claim "should be calculated in the same manner as if it were a

claim allowed in the Plan."  *See id.* at 12–13 (quoting Slip Op. at 146).  That statement dealt only

with the quantification of the 502(h) claim, not how the Plan determines the multiplier.[2]

Plaintiffs' hypothetical contradicts the Plan's distributive scheme.  Because the 502(h)

claim is excluded from Class 3, it has no impact on Class 3.  Creditors agreed to associate the

claim with Classes 4 and 5 by making it operate as an offset against the fraudulent-transfer re-

covery.  Creditors did not agree—and Class 3 creditors never would have agreed—to dilute

Class 3 with a multibillion dollar 502(h) claim without also receiving proceeds of the recovery

from which it flowed.  That would have given Classes 4 and 5 a windfall.  And had the 502(h)

claim been classified in Class 3, Defendants would not have agreed to "deferral" without a re-

serve, which would have resulted in a massive disparity between their recovery and that of their

class.

---

[2] Plaintiffs cite Defendants' September 14, 2010 Objection to the Disclosure Statement, *see* Pltfs. 502(h) Br. at 13, but that objection undermines their position.  The version of the Plan under consideration then was silent as to clas-sification of the 502(h) claim, and did not contain the Article IV.C.5 multiplier.  *See* Bankr. Dkt. No. 2161.  During the hearing, the parties resolved the objection with changes that appeared in the solicitation version of the Plan filed on October 1.  *See* Bankr. Dkt. No. 2196.  For the first time, the Plan required that the claim be treated as an offset, introduced the multiplier, and excluded the 502(h) claim from Class 3.  That exclusion responded to the September 14 objection.

The text of Article IV.C.5 shows that the parties wanted Defendants to recover ratably with Class 3 creditors, yet be paid only from the fraudulent-transfer recovery. One way to accomplish those ends would have been to follow the usual approach, allocating both the fraudulent-transfer recovery and Defendants' 502(h) claim to Class 3 (the horse-and-cart analogy, *see* Defts. 502(h) Br. at 8–9). However, to ensure that Class 3 creditors would not be put on hold while this litigation proceeded, the parties did something else—they excluded the 502(h) claim from Class 3, treated the claim as an offset to any fraudulent-transfer recovery, and weighted the offset according to Class 3's actual recovery. In no circumstance can Plaintiffs' speculation be reconciled with the text of the Plan or any realistic assessment of the parties' interests.

### C.    No Other Legal Or Equitable Principle Supports Dilution.

The Court's confirmation order held that the Plan was consistent with the Bankruptcy Code. *See* Dkt. No. 2568 at ¶ 22. Thus, Article IV.C.5 must be read according to its plain terms and the Code's core principles. The most fundamental of those is equality of distribution.[3] *See Bailey v. Glover*, 88 U.S. 342, 346 (1874); *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006) ("[T]he Bankruptcy Code aims, in the main, to secure equal distribution among creditors.") (citing *Kothe v. R.C. Taylor Trust*, 280 U.S. 224, 227 (1930)).[4] That principle permeates the Code and should be the Court's overarching consideration for determining distributions to creditors. *See, e.g.*, 11 U.S.C. § 1129(b)(1) (providing that chapter 11 plans of reorganization must "not discriminate unfairly, and [be] fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan"); *id.* at § 1129(b)(2) (providing that, in satisfying the "fair and equitable" condition set forth in section

---

[3] As the Court's opinion makes clear, the Plan's treatment of Defendants' 502(h) claim does "not imply a waiver by defendants of their right to be treated in the same manner as other general unsecured creditors." Slip Op. at 144.

[4] *See also Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941) ("[T]he theme of the Bankruptcy Act is equality of distribution."); *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 451 (1937) (noting that the "object of bankruptcy laws is the equitable distribution of the debtor's assets amongst his creditors").

1129(b)(1), a debtor's chapter 11 plan must provide for equitable treatment of each and all of a debtor's secured claims, unsecured claims, and interests, *i.e.*, treatment pursuant to the absolute priority rule); *see also id.* at §§ 547(b) & 550 (providing for the avoidance and recovery of preferential transfers to achieve equality of distribution among creditors); *id.* at § 726(b) (requiring distribution in a liquidation be "*pro rata* among claims of the kind specified in each such particular paragraph"); H.R. REP. NO. 95-595, 1st Sess. at 177–178 (1977) (stating that promoting equality of distribution among creditors was one of Congress' prime objectives in enacting the Code).

In keeping with the equality-of-distribution principle, Section 502(h) guarantees equality by putting a claim arising from the recovery of avoided transfers on equal footing with prepetition claims. *See* 11 U.S.C. § 502(h). Article IV.C.5 must be interpreted consistently. Its obvious goal is to treat Defendants' 502(h) claim on full parity with Class 3. Yet diluting the multiplier to 2.8% would create massive inequality, as no Class 3 creditor expected to, or actually did, receive so little.[5] Indeed, no unsecured claim in any class received so little. Defendants' 502(h) claim, then, should be treated no worse.

Plaintiffs' responses miss the mark. They first contend that Defendants' 502(h) claim need not be treated equally with other claims because it should be disallowed entirely. *See* Pltfs. 502(h) Br. at 15. But whether the 502(h) claim should be allowed (it should be, *see* Part III, *infra*) has no impact on what multiplier should be applied to the claim after it has been allowed.

Plaintiffs contend that a 2.8% multiplier would not be punitive because Defendants agreed that their 502(h) claim might be reduced. Pltfs. 502(h) Br. at 15. The agreement in Article IV.C.5 simply ensures that Defendants' recovery on their 502(h) claim would match Class

---

[5] Creditors must have expected full recovery because even equity received a distribution under the Plan. *See In re Armstrong World Indus. Inc.*, 432 F.3d 507, 512 (3d Cir. 2005) (explaining the absolute priority rule).

3's recovery, whatever it turned out to be. The multiplier could reduce the claim or increase it, depending on whether Class 3 recovered less or more than 100%. In agreeing to the multiplier, Defendants did not waive their objections to its size, but expressly reserved their rights "with respect to the extent of the dilutive effect." *See* DX 2568 at 119–120.

Plaintiffs argue that dilution of the 502(h) claim is equitable because Defendants thought they would prevail and never have to file a 502(h) claim in the first place. *See* Pltfs. 502(h) Br. at 14. There is no support in the Plan for this *non sequitur*; Defendants' expectations have nothing to do with calculating the percentage recovery to Class 3 creditors. The argument seems to be a pretext for citing SEC filings that have no bearing on dilution.[6]

## II.    PLAINTIFFS' NEW 68% MULTIPLIER IS CONTRARY TO THE PLAN.

Plaintiffs attack the Court's proposed use of an 89% multiplier, which was based on the Disclosure Statement's midpoint of estimated recoveries for Class 3 creditors *who participated in the rights offering*. *See* Slip Op. at 147–148. Instead, they urge the use of the midpoint of estimated recoveries for Class 3 creditors *who did not participate in the offering—68%*. *See* Pltfs. 502(h) Br. at 16. Their argument is meritless and should be rejected.

Plaintiffs provide no reason for ignoring the Class 3 rights offering, and none exists. Article IV.C.5's description of the multiplier draws no distinction between creditors who participated in the rights offering and those who did not. It refers to "the percentage recovery to Allowed Class 3 General Unsecured Claims." And *all holders* of allowed Class 3 claims received the option to participate in the rights offering. *See* DX 2568 at 111–112 (Plan at Art. II.B.3). Setting the multiplier at 68% would deprive Defendants' 502(h) claim of that option, in violation of Plan

---

[6] Defendants' expectations were not unreasonable; even the United States believes that Defendants could still prevail and that it might obtain "zero recovery." U.S. 502(h) Br. at 4; *see* Plfts. 502(h) Br. at 14 (the "ultimate recovery in this litigation" was unknown at confirmation and "is still not known today").

and Bankruptcy Code principles, including the principle of equal treatment.  It is merely an attempt by Plaintiffs to artificially lower the value of Defendants' offset.

As Defendants have shown, the Court must give effect to the plain language of the Plan, which defines the multiplier to be "*the* percentage recovery to Allowed Class 3 General Unsecured Claims," that is, the recovery Class 3 creditors actually received *as a class* when the Plan became legally effective.  *See* Defts. 502(h) Br. at 17–18.  Determining the actual recovery realized by Class 3 does not, as Plaintiffs contend, revise the Plan's text or "re-assess equity."  Pltfs. 502(h) Br. at 19.  Rather, it simply applies the text as written.  Plaintiffs' authorities recognize that stock prices from shortly after confirmation are better measures of value at confirmation than are pre-confirmation estimates.  *See In re Prince*, 85 F.3d 314, 319–320 (7th Cir. 1996) (holding that a sale price from four months after confirmation "is likely to represent a reasonably accurate estimation of the present value of Dr. Prince's stock on the date of confirmation") (cited at Pltfs. 502(h) Br. at 5, 19).  Confirmed plans that distribute stock often calculate recoveries based on facts as they exist after confirmation.[7]

The estimates in the Disclosure Statements are nonbinding, both on their face and as a matter of law.  *See* Defts. 502(h) Br. at 15 (citing case law and disclaimers in the Disclosure Statement); *see also* p. 14, *infra* (same).  Had the parties wanted to base the multiplier on those estimates, they would have referred to the Disclosure Statement expressly—a document that existed at the time and was known to all parties.  Plaintiffs do not dispute the disclaimers in the

---

[7] *See, e.g., In re Dana Corp., Inc.*, No. 06-10354 (BRL), Third Amended Disclosure Statement With Respect to Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession, at 55 [Docket No. 6669], Order Confirming Plan entered 12/26/2007 [Docket No. 7509] (Bankr. S.D.N.Y. 2007) (plan providing for post-confirmation valuation of distributed equity in reorganized debtors using volume weighted average pricing model to equalize distributions after plan effective date); *In re Adelphia Communications Corp.*, No. 02-41729 (REG), Second Disclosure Statement Supplement Relating to Fifth Amended Joint Chapter 11 Plan for Adelphia Communications Corporation and Certain Affiliated Debtors, at 93-94 [Docket No. 12,198, ex. C], Order confirming plan entered 1/5/2007 [Docket No. 12,952] (Bankr. S.D.N.Y. 2002) (plan providing for distribution of a fraction of shares to parties on the effective date based on a deemed valuation of the stock, while remaining shares were held back and a post-effective date valuation administered to "true up" certain creditors after the plan had become effective).

Disclosure Statement, the case law, or the accuracy of Defendants' evidence that *all* allowed Class 3 claims recovered more than 100% at the moment the Plan became legally effective—regardless of whether they participated in the rights offering. Indeed, all Class 3 creditors recovered more than 300%. *See* Defts. 502(h) Br. at 18. If the Court uses the Disclosure Statement figures, it should select the estimate from the range that is the most accurate, *i.e.*, that most closely approximates the actual recovery. Accordingly, Defendants' offset must be at least 100% of their 502(h) claim.

## III.    THE COURT SHOULD ALLOW DEFENDANTS' 502(h) CLAIM.

Plaintiffs' arguments for disallowing the 502(h) claim attack the Court's ruling on the restorative principle. They have offered no basis for the Court to reconsider that ruling. Yet because it is the focus of Plaintiffs' memorandum, Defendants respond briefly.

### A.    Defendants' 502(h) Claim Is Not An Equity Interest In The Debtors.

Under the law and the Plan, Defendants are "creditors," and their 502(h) claim is a "claim." *See* 11 U.S.C. § 101(10)(B) (defining "creditor" as anyone with a 502(h) claim); *id.* at § 101(5)(A) (defining "claim" as any right to payment); *see also* DX 2568 at 115 (Plan at Art. III.D); *id.* at 93 (Plan at Art. I.A.9). Plaintiffs argue that Defendants' 502(h) claim should be disallowed because it actually is an equity interest in a debtor masquerading as a claim. *See* Pltfs. 502(h) Br. at 1–3, 7–11. The Court, however, did not hold that Defendants' 502(h) claim springs from an equity interest in the debtors. Defendants held no equity interest in the debtors when they filed voluntary petitions for relief in 2009. Defendants filed no proofs of interest and have never asserted one. Defendants are solely creditors.

Defendants' 502(h) claim—for "the residual value of the E&P assets after their debts, including the legacy liabilities, were paid in full," Slip Op. at 143—springs from the fraudulent-transfer recovery and the restorative principle. *See id.* at 135–136. That principle aims to restore

the parties to the positions they occupied before the avoided transfers. *See id.* at 143. Plaintiffs argue that only the *estate* has a right to be restored. *See* Pltfs. 502(h) Br. at 4, 15. The case law, however, indicates otherwise. *See, e.g., ASARCO LLC v. Am. Mining Corp.*, 404 B.R. 150 (Bankr. S.D. Tex. 2009) ("The Court, having found the transaction to be fraudulent, has the power to put the *parties* back where they were before the transaction.") (emphasis added); *Gowan v. HSBC Mort. Corp.* (*In re Dreier LLP*), No. 08-15051, 2012 WL 4867376, at *3 (Bankr. S.D.N.Y. Oct. 12, 2012) ("Section 502(h) is based on the principle of fraudulent transfer law that the return of a fraudulent transfer restores the *parties* to the *status quo*.") (emphasis added); *In Re Bankvest Capital Corp.*, 375 F. 3d 51 (1st Cir. 2004) (party restored to pre-transfer position after receiving avoidable transfer for no consideration). Unless the *parties* are restored to their pre-transfer positions, none of them is truly restored: one will receive a penalty; the other a premium.

Plaintiffs argue that the restorative principle is novel and that a 502(h) claim should be only for a return of consideration or for a claim revived by a fraudulent-transfer recovery. *See* Pltfs. 502(h) Br. at 8. The Court already has rejected this argument, explaining that the precedents apply the same restorative principle repeatedly and that the circumstances of this case call for its application here. *See* Slip Op. at 138–143. "The essence of equity" is that it extends to cover new situations. *Hecht Co. v. Bowles*, 321 U.S. 321, 329–330 (1944).

The Court's findings of fact establish the inequity that arises from the estate's recovery of $14.459 billion and thus establish the necessity for Defendants' 502(h) claim.[8] In 2002, Tronox Worldwide transferred the E&P assets to its shareholder, Kerr-McGee. Slip Op. at 135. Had the transfers been avoided then, the residual value "would have been available to New Kerr-McGee as equity after payment of the legacy liabilities." *Id.* at 147. Yet in 2005, Kerr-McGee sold its

---

[8] Because a 502(h) claim arises from "the recovery of property," 11 U.S.C. § 502(h), Defendants' filing and calculation of their claim does not contradict their position that a $14.459 billion recovery should not have been awarded in the first place. Defendants reserve their rights to challenge the lawfulness and magnitude of the recovery.

shares in Tronox Worldwide to Tronox Inc., which knew it was buying a company without E&P assets. *Id.* at 12–14. Because the Court "collapsed" the 2002 transfers with the 2005 transfers, *id.* at 34, 39, 141, the result is a recovery by Tronox Inc. (and Plaintiffs as its assignees under the Plan) of billions of dollars' worth of E&P assets it never had any right or expectation to receive. *Cf. Home Fire Ins. Co. v. Barber*, 93 N.W. 1024, 1032 (Neb. 1903).

Defendants' 502(h) claim is not defeated simply because Tronox Inc. assigned its fraudulent-transfer claim to Plaintiffs. In assigning the claim, the Plan did not purport to grant Plaintiffs "an uncapped recovery in this case." U.S. 502(h) Br. at 3. Not that it could have: "[a]n assignee generally may not acquire more rights than were possessed by the assignor and 'simply stands in the shoes of the assignor.'" *Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d 425, 433 (S.D.N.Y. 2004) (quoting *Furlong v. Shalala*, 156 F.3d 384, 392 (2d Cir. 1998)); *see* 6 Am. Jur. 2d Assignments §§ 118, 145 (2008). Plaintiffs received Tronox's fraudulent-transfer claim subject to all limitations and defenses Defendants could have asserted against Tronox, including a 502(h) claim arising from the recovery.

### B.    Defendants' 502(h) Claim Cannot Be Equitably Subordinated Or Disallowed.

Plaintiffs mention equitable subordination and disallowance only in a footnote, which incorporates only one sentence and one footnote from their post-trial briefs. *See* Pltfs. 502(h) Br. at 11, n.6 (citing Pltfs. Post-Trial Reply at 105 & n.38). At this point, Plaintiffs have all but abandoned those arguments—with good reason. A plaintiff cannot obtain a fraudulent-transfer recovery from a defendant *and* equitably subordinate the defendant's 502(h) claim based on the same wrongdoing. *See Gowan v. Wachovia Bank, N.A.* (*In re Dreier LLP*), 453 B.R. 499, 517 (Bankr. S.D.N.Y. 2011); *Hirsch v. Penn. Textile Corp.* (*In re Centennial Textiles, Inc.*), 227 B.R. 606, 611 (Bankr. S.D.N.Y. 1998 ). And even assuming that an offset right may be subordinated, there is no class to which the 502(h) claim could be subordinated because all creditor classes will

11

be paid in full after the adversary proceeding.  *See LaBrum & Doak v. Brown (In re LaBrum &*

*Doak, LLP)*, 225 B.R. 93, 102 (Bankr. E.D. Pa. 1998).  Equitable disallowance is even more

groundless, as Plaintiffs have not even tried to explain why this Court should be the first to equi-

tably disallow a 502(h) claim.[9]

## IV.    PLAINTIFFS' UNPROVED, POST-PETITION ESTIMATES HAVE NO BEAR-ING ON THE AMOUNT OF DEFENDANTS' 502(h) CLAIM.

### A.    Plaintiffs' Rationalizations For Their $4 Billion Estimate Lack Merit.

Defendants' memorandum noted a discrepancy in the proposed calculation of their 502(h)

claim.  *See* Defs. 502(h) Br. at 11–16.  The restorative principle aims to restore Defendants "to

the positions they held *before the transfers*."  Slip Op. at 143 (emphasis added).  Yet the pro-

posed calculation used Plaintiffs' unproved, $4 billion estimate of the legacy liabilities as of

2010, years *after the transfers*.  *Id.* at 146–147; *see* Defs. 502(h) Br. at 10 n.2 (noting that the

Disclosure Statement estimates may be as of either 2009 or 2010).  The Court's findings of fact

are that Tronox's liabilities were much less in 2005—$1.757 billion (net present value) of legacy

liabilities and a net creditor shortfall of $850 million.  *See* Slip Op. at 111, 114, 120.

Plaintiffs argue that Defendants' 502(h) claim must be quantified now as if it had been

quantified at the time of Plan confirmation, when their $4 billion estimate was all there was and

the figures Plaintiffs proved at trial were still "unknown."  *See* Pltfs. 502(h) Br. at 17.  No matter

when Defendants' 502(h) claim is quantified, the question for the Court is the same—what "re-

sidual value" would Defendants have had as of the time of the transfers if those transfers had not

---

[9] Section 502(b) provides that a bankruptcy court "shall allow" 502(h) claims except in discrete circumstances.  11 U.S.C. § 502(b).  Because a bankruptcy court cannot exercise statutory or inherent powers in ways that "contravene specific statutory provisions," *Law v. Siegel*, No. 12-5196, 2014 WL 813702, *5 (U.S. Mar. 4, 2014), the Code "does not permit equitable disallowance of claims that are otherwise allowable under section 502(b) of the Bank-ruptcy Code."  *Harbinger Capital Partners LLC v. Ergen (In re LightSquared Inc.)*, 504 B.R. 321, 329 (Bankr. S.D.N.Y. 2013).  The only precedent for equitable disallowance—*Pepper v. Litton*, 308 U.S. 295 (1939)—was de-cided under the Bankruptcy Act, not the Code, and no court since has equitably disallowed a claim.  *See LightSquared*, 504 B.R. at 337-338; 4 COLLIER ON BANKRUPTCY ¶ 502.03[11] (16th ed. 2013).

taken place.  Even if Plaintiffs had proved, before confirmation, the accuracy of their $4 billion

estimate of the legacy liabilities as of 2010, that sum has no bearing on the amount of Tronox's

liabilities in 2005, when the transfers occurred.

Relying on inapposite cases, Plaintiffs suggest that "estate assets and creditor claims must

be valued at the time of confirmation" and therefore can only be based on pre-confirmation esti-

mates included in the Disclosure Statement.  *See* Pltfs. 502(h) Br. at 17, citing *Kipperman v. On-

ex Corp.*, 411 B.R. 805, 876 (N.D. Ga. 2009) (stating that "for purposes of absolute priority rule"

plan assets must be valued "at the time of confirmation"); *MC Asset Recovery LLC v. Southern

Co.*, No. CIV.A.1:06-cv-0417B, 2006 WL 5112612, *3 n.5 (N.D. Ga. Dec. 11, 2006) (stating

that the value of a plaintiff's avoidance recovery should not vary based on fluctuations in the

debtor's post-effective date stock price).  Neither opinion addresses the propriety of using infor-

mation that becomes available post-confirmation in determining the value of a 502(h) claim.

Section 502(h) claims arise from recovery of property in an avoidance proceeding.  *See*

11 U.S.C. § 502(h).  Such a claim could not sensibly be based on estimates or facts contradicting

the facts found in the proceeding.  Otherwise, the Court would not be able to use any of its find-

ings to quantify Defendants' 502(h) claim.  Even Plaintiffs do not go that far.  All of their dam-

ages scenarios depend on the Court's findings of the value *of the E&P assets*.  *See* Pltfs. 502(h)

Br. at 25.  Plaintiffs therefore cannot object to calculating the amount of the 502(h) claim from

the Court's findings of the amount *of the legacy liabilities*.

Plaintiffs ultimately concede that the Court must determine "net damages *as of Nov. 28,

2005*."  Pltfs. 502(h) Br. at 25 (emphasis added).  It follows that Defendants' 502(h) claim—a

component of the net damages—cannot be calculated from an estimate of Plaintiffs' claims *as of*

13

*2010.*  The 502(h) claim must be calculated from the Court's findings of the amount of Plaintiffs' claims as of November 2005 and the net creditor shortfall as of the same date.

Plaintiffs' remaining argument against correcting the calculation of Defendants' 502(h) claim is that using the Court's findings "would create perverse incentives for other corporations" and establish a rule that "the more you steal, the more you keep."  *See* Pltfs. 502(h) Br. at 21. The United States echoes Plaintiffs' argument, asking the Court to punish Defendants as wrong-doers.  *See* U.S. 502(h) Br. at 9.  Yet, as Plaintiffs elsewhere admit, restoration and the entirety of fraudulent-transfer law have nothing to do with deterrence or punishment.  *See* Pltfs. 502(h) Br. at 3–4 (citing *Tronox, Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 464 B.R. 606, 618 (Bankr. S.D.N.Y. 2012).  Restoring "residual value" to a party does not, as Plaintiffs imply, promote theft.  It simply returns to the party what it already had.

### B.    Plaintiffs Have Not Proved Their $4 Billion Estimate.

The amount of Defendants' 502(h) claim is not an affirmative defense Defendants had the burden to prove during the adversary proceeding.  *See* Pltfs. 502(h) Br. at 17.  The claim aris-es after the adversary proceeding, from the "recovery of property."  11 U.S.C. § 502(h).  Per Bankruptcy Code Section 502(a) and Rule 3001(f), the 502(h) claim is based on the Court's find-ings and is *prima facie* valid unless Plaintiffs rebut it with proven facts.  *See, e.g.*, *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (an objector to a proof of claim "bears the initial burden of persuasion" to produce "evidence equal in force to the prima facie case").

Plaintiffs offer no facts to support their $4 billion estimate.  The only document they cite is the Disclosure Statement.  Its estimates are replete with disclaimers.  *See* DX 2522 at 79, 82–83 & nn 7, 10, & 11.  And unproved assertions in a *debtor's* disclosure statement are not binding on *creditors* in an adversary proceeding.  *See Duffy v. Futter (In re Futter Lumber Corp.)*, Nos. 09-73291-478, ADV 11-9055-478, 2011 WL 5417094, at *6 (Bankr. E.D.N.Y. Nov. 8, 2011) (a

14

disclosure statement does not have the same binding effect as a confirmed plan); *In re Patriot Seeds, Inc.*, No. 03-84217, 2010 WL 381620, at *25 (Bankr. C.D. Ill. Jan. 20, 2010) (a "disclosure statement is not binding on creditors" in an adversary proceeding).

Plaintiffs implicitly admit that the $4 billion estimate exceeds the actual amount of their claims as of 2005. Rather than proving the estimate's accuracy, they argue that they deserve a premium for the time, cost, and risk of litigating the fraudulent-transfer claim. *See* Pltfs. 502(h) Br. at 19–21; *see also* Tort Claims Trust 502(h) Br. at 3. The Tort Claims Trust and the United States go further. With no factual support, the Trust asks for $4 billion because it already has "processed and is scheduled to pay" an amount of claims that exceeds its share of the estimate. *Id.* at 4–5. The United States asks for $4 billion, arguing that future remediation costs *might* exceed the estimate and that, if they do, the United States will "bear the burden." *See* U.S. 502(h) Br. at 7–9. None of those pleas can change the facts found by the Court. None is evidence of the 2005 value of the E&P assets, the legacy liabilities, or the net creditors shortfall, so none can decrease the amount of Defendants' 502(h) claim and offset.

The United States argues that the Court should use $4 billion because the findings of fact ($1.757 billion of legacy liabilities and $850 million net creditor shortfall) were based only on information that Plaintiffs' expert, Dr. Ram, thought was "known and knowable" as of November 2005. U.S. 502(h) Br. at 6–7. The United States insists that Dr. Ram's valuation was merely a lower bound on the amount of Tronox's environmental liabilities in November 2005. *Id.* This is another veiled request for reconsideration. The Court characterized Dr. Ram's valuation as "comprehensive," Slip Op. at 105, not as "conservative," U.S. 502(h) Br. at 6. The government's speculation that Tronox's liabilities might have totaled $4 billion as of November 2005 is

just that—speculation, which does not suffice as evidence to rebut the amount of Defendants' 502(h) claim.

If Plaintiffs' 2010 estimates mattered, and if they had produced evidence in support of their estimates, the amount of the 502(h) claim would be disputed, requiring an evidentiary hearing. The dispute would have to be resolved just like any other that arose before "the date of the filing of the petition." 11 U.S.C. § 502(h). But since the Court already found the facts necessary to quantify the 502(h) claim, and since Plaintiffs have no contrary facts, a hearing is unnecessary. *See* Defts. 502(h) Br. at 16.

### C.    Quantifying Defendants' 502(h) Claim As Of November 2005 Does Not Contradict The Court's Summary Judgment Holding.

Plaintiffs argue that calculating the "residual value" as of November 2005 "is nothing more than a final attempt to impose the 'cap' on fraudulent transfer recoveries" the Court rejected at summary judgment. *See* Pltfs. 502(h) Br. at 18; U.S. 502(h) Br. at 3, 5–6; *see also* Tort Claims Trust 502(h) Br. at 3. Plaintiffs are mistaken. The Court awarded Plaintiffs an uncapped $14.459 billion recovery. The issue now is how Defendants will share in the recovery via their 502(h) claim, which is governed by the Plan (which mandates sharing via the offset), the law, and the restorative principle.

At summary judgment, Defendants presented legal and equitable arguments to limit avoidance and recovery to the amount of unpaid creditor claims. Then as now, Plaintiffs argued that there are no limits. Although the Court disagreed with Defendants, it also disagreed with Plaintiffs "that there is no cap on [their] potential recovery." *In re Tronox*, 464 B.R. at 617. The Court noted that Section 502(h) and "other damages provisions" might, as a practical matter, reduce Plaintiffs' ultimate recovery. *Id.* The Opinion and Defendants' 502(h) claim are fully in accord.

16

## V.    PLAINTIFFS ARE NOT ENTITLED TO POST-TRANSFER APPRECIATION.

Although the Second Circuit has not yet taken a position on whether appreciation is appropriate, a bankruptcy court in this circuit, as well as other courts, have found that the amount to be recovered is the "value of the property at the time of transfer." *In re Colonial Realty, Co.*, 226 B.R. 513, 525 (Bankr. D. Conn. 1998); *see also Kepler v. Sec. Pac. Hous. Servs. (In re McLaughlin)*, 183 B.R. 171, 177 (Bankr. W.D. Wis. 1995); *James B. Downing & Co. v. Agri Dairy Prods., Inc. (In re James B. Downing & Co.),* 74 B.R. 906, 911 (Bankr. N.D. Ill. 1987). Consistent with these cases, and notwithstanding Plaintiffs' contrary authority, the appreciation Plaintiffs seek is unwarranted and would undermine the Court's findings regarding the restorative principle.

Specifically, as the Court instructed, the intent of Defendants' 502(h) claim is to put the parties in the position they would have been in had the transfers not occurred. Slip. Op. at 142-143. In this case, all value restored to Tronox above the $850 million net creditor shortfall in 2005 would be returned to Defendants. Slip. Op. at 143 (noting that Defendants are entitled to "the residual value of the E&P assets after their debts, including the legacy liabilities, were paid in full"). As a result, post-2005 appreciation on that value likewise is properly Defendants'. To hold as the Plaintiffs' suggest would set Defendants' share of the restored value at 2005 levels, while awarding Plaintiffs post-2005 appreciation on *all* of the restored value – including residual value the Court held should go to Defendants. This would not restore the parties to the positions they would have experienced had the transfers not occurred.

Defendants therefore ask that the Court deny Plaintiffs' request for reconsideration of the Court's refusal to award Plaintiffs appreciation on the avoided transfers from 2005 until the date

17

of Professor Williams's trial testimony.[10]  Finally, to the extent Plaintiffs seeks to recover for the

time value of money on the 2005 net creditor shortfall of $850 million, it must seek prejudgment

interest, not appreciation per its brief, under and consistent with the law as set forth below.  *See*

*In re Colonial Realty Co.*, 226 B.R. at 526; *In re CNB Int'l, Inc.*, 393 B.R. 306, 335-36 (Bankr.

W.D.N.Y. 2008), *aff'd in part, rev'd in part*, 440 B.R. 31 (W.D.N.Y. 2010).

## VI.    PLAINTIFFS MISSTATE THE LAW OF PREJUDGMENT INTEREST.

An award of prejudgment interest is not automatic, and Plaintiffs have not attempted to

show that one is necessary.  It is not.  Plaintiffs' claims are for *future* costs, and as the Court not-

ed, the costs have not changed since 2005.  *See* Slip Op. at 147 n.126.  Damages alone therefore

should be "more than adequate to compensate . . . for any delay."  *In re Payroll Express Corp.*,

Nos. 92-43150, 98-8405, 2005 WL 3789326 at * 4 (Bankr. S.D.N.Y. July 28, 2005) (Gropper, J.).

If, however, the Court decides to award prejudgment interest, it should do so under feder-

al law.  Prejudgment interest in a fraudulent-transfer case brought under the Bankruptcy Code

may be awarded under either applicable state law or federal law, depending on which is "the

source of the law underlying plaintiffs' claims."  *In re Palermo*, 739 F.3d 99, 106–108 & n.5 (2d

Cir. 2014).  Here, Plaintiffs have maintained that federal law governs their *remedies* and that Ok-

lahoma law applies only insofar as the Code adopts it to *avoid* the 2002 and 2005 transfers.  *See*

Plaintiff's Motion for Partial Summary Judgment Regarding Plaintiff's Recovery Under Section

550(a) of the Bankruptcy Code, Dkt. No. 257 at 1, 6-7; *see also In re CNB Int'l*, 393 B.R. at

335–336 (awarding prejudgment interest at the federal rate in a case under Sections 544 and 550).

And the Court rested its Opinion in part on the FDCPA (28 U.S.C. § 3301 *et seq.*), *see* Slip Op.

---

[10] Plaintiffs' post-trial brief argued for this same appreciation.  *See* Pltfs. Post-Trial Br. at 107.  After considering
this briefing, the Court did not award Plaintiffs the requested appreciation.

at 42–47, a purely *federal* cause of action for which *Oklahoma* prejudgment interest may not be awarded.

Under federal law, prejudgment interest usually runs from the date of demand. *See Carl L. Bucki, as Trustee of the Estate of Cardon Realty Corp. v. Singleton* (*In re Cardon Realty Corp.*), 146 B.R. 72, 81 (Bankr. W.D.N.Y. 1992). If the Court awards prejudgment interest, the federal post-judgment interest rate in effect on the date of Plaintiffs' adversary complaint (0.53%) is an appropriate rate to use in this case; during the adversary proceeding, the rate averaged much less and was higher only for one week in June 2009 (0.56%). *See Goldman Sachs Execution & Clearing, L.P. v. Off. Unsecured Creditors Comm. of Bayou Grp., LLC*, 491 F. App'x 201, 206–207 (2d Cir. 2012) (affirming prejudgment interest award based on post-judgment interest statute, 28 U.S.C. § 1961) (citing *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir.2000)); *cf. In re CNB Int'l*, 393 B.R. at 335–336 (averaging federal post-judgment interest rates in effect over the course of a seven-year case).[11]

Seeking a higher award, Plaintiffs demand prejudgment interest under Oklahoma law, where the statutory interest rate for contract actions is 6%. *See* Okla. Stat. Ann. tit. 15, § 266; *see also In re Tronox Inc.*, 429 B.R. 73, 111–112 (Bankr. S.D.N.Y. 2010) (holding that Oklahoma treats fraudulent-transfer claims as contract actions). Unlike federal prejudgment interest, Oklahoma prejudgment interest runs from the date Plaintiffs demanded *a sum certain*, which need not be the date Plaintiffs filed their complaint. *See Shanbour v. Phillips 66 Natural Gas Co.*, 864 P.2d 815, 816–818 (Okla. 1993) ("[P]rejudgment interest is due only from the time the [plaintiff] demanded repayment and backed up its demand with figures."). Plaintiffs appear to recognize both this rule and the fact that the adversary complaint did not demand a sum certain, so they calculate interest under Oklahoma law from the date Prof. Williams testified in June

---

[11] Federal interest may be compounded annually. *See* 28 U.S.C. § 1961(b).

2012. *See* Pltfs. 502(h) Br. at 23. But the sum was not certain even then because the factfinder still had to "weigh conflicting evidence in order to determine the precise amount of damages due to the plaintiff." *Strickland Tower Maint., Inc. v. AT&T Commc'ns, Inc.*, 128 F.3d 1422, 1429 (10th Cir. 1997). Here, "the measure of damages" "may be the most complex issue in this case." Slip Op. at 133. Although the Court resolved the value of the E&P assets in its Opinion, *id.* at 133–136, it has not yet resolved the amount of Defendants' offset against the recovery, so there still is no determination of "the precise amount of damages due to" Plaintiffs.

In addition to misapplying Oklahoma's "sum certain" requirement, Plaintiffs incorrectly state that interest under Oklahoma law is compounded annually. *See* Pltfs. 502(h) Br. at 25 n.17. Prejudgment interest in Oklahoma is not compounded because the relevant statutes do not specifically provide for compounding. *See Quinlan v. Koch Oil Co.*, 25 F.3d 936, 941 (10th Cir. 1994); *Phillips v. Hedges*, 124 P.3d 227 (Okla. 2005) (holding that interest is not compounded in the absence of specific language or legislative intent to the contrary); *see, e.g.*, *Gardner v. Shell W. E&P, Inc.*, No. CJ-1995-234L, 2008 WL 2785582 (Okla. Dist. Apr. 16, 2008) (expressly awarding simple interest under the relevant Oklahoma statutory provision). If the Court concludes that an award of prejudgment interest is proper under Oklahoma law, the rate would be 6% simple. Yet as stated above, no prejudgment interest is necessary in this case.

## CONCLUSION

The Court should (1) allow Defendants' 502(h) claim; (2) quantify the claim using the Court's finding of $850 million as the net creditor shortfall in 2005; (3) set Defendants' offset at at least 100% of their 502(h) claim; and (4) award Plaintiffs no appreciation or prejudgment interest. *See* Defts. 502(h) Br. at Table 5 (labeling the outcome that results from those holdings "Scenario A"). Consistent with those conclusions, Defendants submit a proposed counter-form of judgment, as instructed by the Court, in the principal net amount of $850 million.

March 14, 2014                                        Respectfully submitted,


                                                     /s/   P. Sabin Willett
Melanie Gray (*admitted pro hac vice*)               P. Sabin Willett (*admitted pro hac vice*)
Lydia Protopapas (LP 8089)                           Thomas R. Lotterman (*admitted pro hac vice*)
Jason W. Billeck (*admitted pro hac vice*)           James J. Dragna (*admitted pro hac vice*)
WINSTON & STRAWN LLP                                 BINGHAM MCCUTCHEN LLP
1111 Louisiana Street, 25th Floor                    One Federal Street
Houston, TX 77002-5242                               Boston, MA 02110-1726
Telephone:    (713) 651-2600                          Telephone:    (617) 951-8000
Facsimile:    (713) 651-2700                          Facsimile:    (617) 951-8736

Gregory Silbert (GS 0033)                            Kenneth N. Klee (KK 5910)
WEIL, GOTSHAL & MANGES LLP                           David M. Stern (*admitted pro hac vice*)
767 Fifth Avenue                                     KLEE, TUCHIN, BOGDANOFF & STERN LLP
New York, NY 10153                                   1999 Avenue of the Stars, 39th Floor
Telephone:    (212) 310-8000                          Los Angeles, CA 90067
Facsimile:    (212) 310-8007                          Telephone:    (310) 407-4000
                                                     Facsimile:    (310) 407-9090

*Counsel to Defendants*

CERTIFICATE OF SERVICE

    I hereby certify that the foregoing **Defendants' Reply Memorandum on Their 502(h) Claim and Offset** was served on the following counsel of record on March 14, 2014, as indicated below:

| *Via email jonathan.henes@kirkland.com* <br> Jonathan S. Henes <br> KIRKLAND & ELLIS LLP <br> 601 Lexington Avenue <br> New York, New York 10022 | *Via email jeffrey.zeiger@kirkland.com* <br> Jeffrey J. Zeiger <br> KIRKLAND & ELLIS LLP <br> 300 North LaSalle Street <br> Chicago, Illinois 60654 |
|---|---|
| *Via email joseph.pantoja@usdoj.gov* <br> *and robert.yalen@usdoj.gov* <br> Joseph Pantoja <br> Robert Yalen <br> Assistant U.S. Attorney <br> SOUTHERN DISTRICT OF NEW YORK <br> 86 Chambers Street <br> New York, New York 10007 | *Via email david.zott@kirkland.com* <br> David J. Zott <br> KIRKLAND & ELLIS LLP <br> 300 North LaSalle Street <br> Chicago, Illinois 60654 |

New York, New York                  */s/ Stephen Scotch-Marmo*
Dated: March 14, 2014                Stephen Scotch-Marmo