David J. Zott, P.C. (*admitted pro hac vice*)
Andrew A. Kassof, P.C. (AK7079)
Jeffrey J. Zeiger (*admitted pro hac vice*)
James R.P. Hileman (*admitted pro hac vice*)

*Counsel to Plaintiff Anadarko Litigation Trust*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| TRONOX INCORPORATED, *et al.*, | ) Case No. 09-10156 (ALG) |
| | ) Jointly Administered |
| Reorganized Debtors. | ) |
| | ) |
| | ) |
| TRONOX INCORPORATED, | ) |
| TRONOX WORLDWIDE LLC | ) |
| f/k/a Kerr-McGee Chemical Worldwide LLC, | ) |
| and TRONOX LLC f/k/a Kerr-McGee | ) |
| Chemical LLC,[1] | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adversary Proceeding No. 09-01198 (ALG) |
| | ) |
| KERR-McGEE CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

[1]   Pursuant to the Anadarko Litigation Trust Agreement, which was approved by the Court on February 14, 2011 (Dkt. No. 2812), the Anadarko Litigation Trust was appointed as the representative of each of the Plaintiff Debtors' estates, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, with the power and right to prosecute this matter.  By the same agreement and Order, the Anadarko Litigation Trust was "deemed substituted" for the Debtor Plaintiffs in this matter "as the party in such litigation."

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Intervenor, | ) |
| | ) |
| v. | ) |
| | ) |
| TRONOX, INC., | ) |
| TRONOX WORLDWIDE LLC, | ) |
| TRONOX LLC, | ) |
| KERR-MCGEE CORPORATION, and | ) |
| ANADARKO PETROLEUM | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## NOTICE OF CORRECTION
## TO SETTLEMENT AGREEMENT

On April 3, 2014, the United States lodged with the Court the Settlement Agreement among Plaintiff, Defendants, and the United States.  (Dkt. No. 635)  Since that filing, the parties identified minor typographical and other errors in the Settlement Agreement and exhibits that they have since corrected by agreement.   Therefore, Plaintiff files this notice to submit the Settlement Agreement, Execution Version As Corrected, which is attached as Exhibit 1.  The corrected Settlement Agreement also will be attached to the Joint Motion of Plaintiff Anadarko Litigation Trust and Defendants Seeking a Report and Recommendation Recommending Approval of the Settlement Agreement Resolving the Adversary Proceeding and Issuance of an Injunction Enjoining Certain Persons from Asserting Certain Claims.  As stated in the United States' Notice of Lodging (Dkt. No. 635), after the conclusion of the public comment period, the United States will file with the Court any comments received, as well as responses to the

1

comments, and at that time, if appropriate, will request that the Court approve the Settlement

Agreement.


Dated:  April 9, 2014                          Respectfully submitted,

                                               /s/ Jeffrey J. Zeiger
                                               KIRKLAND & ELLIS LLP
                                               David J. Zott, P.C. (*admitted pro hac vice*)
                                               Andrew A. Kassof, P.C. (AK 7079)
                                               Jeffrey J. Zeiger (*admitted pro hac vice*)
                                               James R.P. Hileman (*admitted pro hac vice*)
                                               300 North LaSalle
                                               Chicago, Illinois  60654-3406
                                               Telephone:    (312) 862-2000
                                               Facsimile:    (312) 862-2200

                                               *Counsel for the Anadarko Litigation Trust*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey J. Zeiger, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746,

that on this 9th day of April 2014, I caused a true and correct copy of the foregoing Notice of

Correction to Settlement Agreement to be served upon the following:

**Via ECF and Electronic Mail**

Melanie Gray
Jason W. Billeck
Winston & Strawn LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002-5242

Thomas Lotterman
P. Sabin Willett
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110

*Counsel for Defendants*

Robert William Yalen
Assistant United States Attorney
86 Chambers Street
New York, New York 10007

*Counsel for the United States of America*

*/s/ Jeffrey J. Zeiger*

# **EXHIBIT 1**

## **Settlement Agreement, Execution Version As Corrected**

[Attached]

*EXECUTION VERSION, AS CORRECTED*

**SETTLEMENT AGREEMENT**

# Table of Contents

PREAMBLE .................................................................................................................... 1

RECITALS ...................................................................................................................... 2

1.      Definitions.................................................................................................... 7

2.      Lodging, Stay, Settlement Process, Termination, and Effective Date................. 17

3.      Payment of Settlement Proceeds and Exchange of Other Consideration ........... 23

4.      Mutual Releases and Covenants Not to Sue ...................................................... 25

5.      Representations of the Parties........................................................................... 34

6.      Affirmative Covenants...................................................................................... 36

7.      Entire Agreement ............................................................................................. 40

8.      Effect if Void ................................................................................................... 40

9.      Confidentiality ................................................................................................. 41

10.     Remedies.......................................................................................................... 41

11.     Reservation of Rights....................................................................................... 42

12.     Notice ............................................................................................................... 44

13.     Miscellaneous .................................................................................................. 46

## PREAMBLE

THIS SETTLEMENT AGREEMENT (the "*Agreement*" or "*Settlement Agreement*") is made on April 3, 2014, by and among (1) the Anadarko Litigation Trust (the "*Litigation Trust*"), by and through its authorized representative and trustee, John C. Hueston (the "*Litigation Trustee*"), not individually but solely in his representative capacity as Litigation Trustee; (2) the United States of America, in its capacity as plaintiff-intervenor in the Adversary Proceeding (as defined below) pursuant to its Complaint-in-Intervention (as defined below), and acting for and on behalf of the United States Environmental Protection Agency ("*U.S. EPA*"), the United States Department of Agriculture, acting through the United States Forest Service (the "*Forest Service*"), the United States Department of the Interior ("*DOI*"), acting through the Fish and Wildlife Service and the Bureau of Land Management, the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration ("*NOAA*"), the United States Department of Defense, including the United States Department of the Army, United States Army Corps of Engineers, United States Department of the Navy, and United States Department of the Air Force ("*DOD*"), and the Nuclear Regulatory Commission ("*NRC*"); and (3) Anadarko Petroleum Corporation, Kerr-McGee Corporation, Anadarko US Offshore Corporation (f/k/a Kerr-McGee Oil & Gas Corporation), Kerr-McGee Worldwide Corporation, KM Investment Corporation (improperly named as Kerr-McGee Investment Corporation in the Second Amended Adversary Complaint (as defined below)), Kerr-McGee Shared Services Company LLC, Kerr-McGee Credit LLC[1], and Kerr-McGee Stored Power Company LLC (collectively, "*Anadarko*," and each individually an "*Anadarko Entity*").

## RECITALS

A.      On January 12, 2009, Tronox Incorporated and certain of its affiliates
(collectively, the "***Debtors***") commenced chapter 11 cases (the "***Chapter 11 Cases***") in the
United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy
Court***").    On November 30, 2010, the Bankruptcy Court confirmed the Debtors' First Amended
Joint Plan of Reorganization (as defined below) (the "***Plan***").    On February 14, 2011, the Plan
became effective.

B.      In the Chapter 11 Cases, the United States, other governmental entities, and other
Persons filed Proofs of Claim (as defined below) against the Debtors on account of, among other
things, alleged environmental claims, obligations, and/or liabilities at certain of the Covered
Sites (as defined below) (as to such Proofs of Claims filed by the United States and other
governmental entities, the "***Bankruptcy Environmental Claims***," and as to such Proofs of Claim
filed by other Persons, the "***Bankruptcy Indirect Environmental Claims***").    Various tort
claimants filed Proofs of Claim against the Debtors on account of alleged tort liabilities,
including for personal injury and property damage (the "***Bankruptcy Tort Claims***" and, together
with the Bankruptcy Environmental Claims and the Bankruptcy Indirect Environmental Claims,
the "***Bankruptcy Claims***").    The Bankruptcy Claims were (or will be) resolved or addressed
pursuant to the Plan and related agreements, including the Environmental Settlement Agreement
(as defined below), the Cimarron Environmental Response Trust Agreement, the Multistate
Environmental Response Trust Agreement, the Nevada Environmental Response Trust
Agreement, the Savannah Environmental Response Trust Agreement, the West Chicago
Environmental Response Trust Agreement, and the Tort Claims Trust Agreement (each as

---

[1] Kerr-McGee Credit LLC was dissolved in 2007.   At the time of dissolution, Kerr-McGee Worldwide

defined below and collectively, but excluding the Plan and the Environmental Settlement

Agreement, the "***Environmental and Tort Trust Agreements***"), and the Litigation Trust

Agreement (as defined below), and other prior proceedings of the Bankruptcy Court.

C.    There are two complaints against Anadarko currently being jointly litigated in

*Tronox Inc., et al. v. Kerr-McGee Corporation, et al. (In re Tronox Inc.)*, Adv. Proc. No.

09-01198 (Bankr. S.D.N.Y.):

(i)    the Second Amended Adversary Complaint (the "***Second Amended***

***Adversary Complaint***"), originally commenced during the Chapter 11 Cases by certain of the

Debtors but assigned and transferred to, and currently prosecuted by, the Litigation Trust for the

benefit of its beneficiaries (including the United States) pursuant to the Plan, the Litigation Trust

Agreement, and the Environmental Settlement Agreement, and which, at the time of trial,

asserted claims including: actual fraudulent transfer under Bankruptcy Code §§ 544(b) and

550(a); constructive fraudulent transfer under Bankruptcy Code §§ 544(b) and 550(a);

constructive fraudulent transfer under Bankruptcy Code §§ 548 and 550(a); breach of fiduciary

duty; equitable subordination; and equitable disallowance; and which originally asserted claims

for civil conspiracy, aiding and abetting fraudulent conveyance, unjust enrichment, disallowance

of claims pursuant to § 502(d) of the Bankruptcy Code, and disallowance of contingent

indemnity claims pursuant to § 502(e)(1)(B) of the Bankruptcy Code; and

(ii) the Complaint-In-Intervention (the "***Complaint-in-Intervention***") filed by the

United States, asserting claims under the FDCPA (as defined below).

D.      The Plan, Litigation Trust Agreement, and Environmental Settlement Agreement

assigned, as provided in the Confirmation Order (as defined below) (including, but not limited to,

---

Corporation was its sole member.

paragraphs 126, 127 and 131) and the Litigation Trust Agreement (including, but not limited to, sections 2(a)(iii), 2(a)(viii), 2(b) and 4(b)(iv)), all of the Debtors' respective rights and interests in the Adversary Proceeding (as defined below, but excluding the Complaint-in-Intervention) and any claim or cause of action of the Debtors related thereto, whether or not asserted in the Adversary Proceeding, to the Litigation Trust for the benefit of the entities listed in Section 1(d) of the Litigation Trust Agreement, which include the Tort Claims Trust (the "*Tort Claims Trust*"), the Cimarron Environmental Response Trust ("*Cimarron Trust*"), the Multistate Environmental Response Trust (the "*Multistate Trust*"), the Nevada Environmental Response Trust (the "*Nevada Trust*"), the Savannah Environmental Response Trust ("*Savannah Trust*") (the Tort Claims Trust, Cimarron Trust, Multistate Trust, Nevada Trust and Savannah Trust, along with the West Chicago Environmental Response Trust ("*West Chicago Trust*"), are hereafter, collectively, the "*Environmental and Tort Trusts*" and each individually an "*Environmental and Tort Trust*"), and certain governmental entities that had asserted Bankruptcy Environmental Claims against the Debtors (collectively, "*Litigation Trust Beneficiaries*" and each individually a "*Litigation Trust Beneficiary*").   Pursuant to the Plan, Litigation Trust Agreement, Environmental Settlement Agreement, and Environmental and Tort Trust Agreements (other than the West Chicago Environmental Response Trust Agreement), the Litigation Trust Beneficiaries and beneficiaries of the Environmental and Tort Trusts (together with the Litigation Trust Beneficiaries, the "*Beneficiaries*" and each individually a "*Beneficiary*") are entitled to have paid, on account of their Bankruptcy Environmental Claims and Bankruptcy Tort Claims, specified allocations (the "*Distribution Scheme*") of a share of the net proceeds of any recovery from the Adversary Proceeding, the principal allocation of which involves payment of approximately 88% of the net proceeds of any recovery on account of Bankruptcy Environmental Claims and payment of

4

approximately 12% of the net proceeds of any recovery on account of Bankruptcy Tort Claims, with subsidiary allocations on account of the Bankruptcy Environmental Claims and Bankruptcy Tort Claims governed by the Environmental Settlement Agreement, Litigation Trust Agreement, and the Environmental and Tort Trust Agreements (other than the West Chicago Environmental Response Trust Agreement).

E.    The Bankruptcy Claims and the Adversary Proceeding relate to, among other things, tort claims and environmental claims, causes of action and obligations asserted against the Debtors in respect of the Covered Sites (as defined below).    As and to the extent described more fully in the Environmental Settlement Agreement, the Distribution Scheme provides that approximately 88% of the net proceeds generated from the Adversary Proceeding will be distributed to trusts created to conduct Environmental Actions at one or more Covered Sites and to federal, state, or tribal governments in satisfaction of claims for costs previously expended or to be expended at Covered Sites or for Environmental Actions expected to be performed at Covered Sites.

F.    On May 8, 2012, the Bankruptcy Court held that Anadarko Petroleum Corporation was entitled to summary judgment dismissing it from the Adversary Proceeding. The other Anadarko Entities ("***Anadarko Trial Defendants***") remained subject to the claims in the Adversary Proceeding.    An order has not yet been entered reflecting the dismissal of Anadarko Petroleum Corporation with prejudice.

G.    From May 15, 2012 to September 13, 2012, the Bankruptcy Court held trial with respect to claims against the Anadarko Trial Defendants.

H.    On December 12, 2013, the Bankruptcy Court issued its Memorandum Opinion, After Trial (the "***Decision***"), finding the Anadarko Trial Defendants liable under the Second

5

Amended Adversary Complaint for actual and constructive fraudulent conveyances, but not liable for breach of fiduciary duty.    The Bankruptcy Court requested and has received further briefing on issues respecting the amount of damages.    The Decision is not a final judgment and, to date, the Bankruptcy Court has not issued a final judgment.

I.        This Agreement represents a compromise and settlement of disputed claims, asserted and unasserted.    In the absence of this Agreement, Anadarko would exercise its rights to seek further review and/or appeal in connection with the Adversary Proceeding.

J.        On August 11, 2009, Anadarko filed Proofs of Claim (as defined below) against the Debtors, which it subsequently amended on September 11, 2009 and September 11, 2010. Also, on January 13, 2014, Kerr-McGee Corporation, pursuant to the Decision, filed a claim under section 502(h) of the Bankruptcy Code on behalf of itself and the other Anadarko Trial Defendants.

K.        The Parties agree to settle, compromise and resolve their disputes related to the Adversary Proceeding, including the Trust Derivative Claims as if such Trust Derivative Claims were already asserted and now pending against the Anadarko Released Parties, and to address other matters, as and to the extent provided herein.

L.        This Agreement will settle, compromise, resolve and close the Adversary Proceeding and settle, compromise, resolve and extinguish the Trust Derivative Claims, any claims that were asserted or that could have been asserted in the Second Amended Adversary Complaint, and the claims asserted in the Complaint-in-Intervention and the claims that could have been asserted in the Complaint-in-Intervention relating to the subject matter of the Adversary Proceeding, together and on a global basis, to the extent provided herein.

M.     This Agreement is fair and reasonable and in the public interest, and is an appropriate means of resolving these matters as it, among other things, will enable the investigation, remediation, cleanup, and recovery of natural resource damages and other compensation with respect to Covered Sites as and to the extent provided by the Distribution Scheme, and provide for payment on account of Bankruptcy Tort Claims as and to the extent provided by the Distribution Scheme, and as and to the extent provided herein.

NOW THEREFORE, without any final adjudication of any issue of fact or law, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, by their attorneys and/or authorized officials, hereby agree as follows:

## AGREEMENT

1.     Definitions.

1.1.     "*9019 Recommendation Motion*" shall have the meaning set forth in Section 2.3.3.

1.2.     "*Adversary Proceeding*" shall mean the adversary proceeding pending in the Bankruptcy Court captioned *Tronox Incorporated, et al. v. Anadarko Petroleum Corporation, et al.,* Adversary Proceeding No. 09-01198 (ALG), including the claims asserted in the Second Amended Adversary Complaint, all claims and/or remedies that a Debtor transferred to the Litigation Trust that were asserted or could have been asserted in this adversary proceeding, and the claims asserted in the Complaint-in-Intervention and that could have been asserted in the Complaint-in-Intervention relating to the subject matter of this adversary proceeding.

1.3.     "*AEA*" shall mean the Atomic Energy Act of 1954, 42 U.S.C. § 2011 et seq.

1.4.    "*Affiliate*" shall have the meaning given to such term in 11 U.S.C. § 101(2), except that for an entity that is not a debtor in a bankruptcy case, this definition shall be construed as if it were.

1.5.    "*Agreement*" or "*Settlement Agreement*" shall have the meaning set forth in the preamble hereto.

1.6.    "*Anadarko*" and "*Anadarko Entity*" shall have the meanings set forth in the preamble hereto.

1.7.    "*Anadarko Covenant Parties*" shall mean Anadarko and Anadarko's successors, their affiliates and predecessors (listed on **Schedule 1**), assigns, and all of their past, present and future directors, officers, managers, members and employees, but only to the extent that the alleged liability of such successor, affiliate, predecessor, assign, director, officer, manager, member, or employee is based on its status as and in its capacity as a successor, affiliate, predecessor, assign, director, officer, manager, member or employee of Anadarko.

1.8.    "*Anadarko Party*" shall mean any entity included under either Section 1.7 or 1.9.

1.9.    "*Anadarko Released Parties*" shall mean Anadarko and each of its Affiliates, and each of their respective predecessors, successors, and assigns, all of their past, present, and future officers, directors, employees, managers, members, agents, attorneys and other representatives.

1.10.    "*Anadarko Trial Defendants*" shall have the meaning set forth in Recital F.

1.11.    "*Approval Motion*" and "*Approval Order*" shall have the meanings set forth in Section 2.3.3.

1.12. "***Assignment Agreement***" shall mean the agreement entitled "Assignment Agreement" dated as of December 31, 2002 between Kerr-McGee Chemical Worldwide LLC and Kerr-McGee Oil & Gas Corporation.

1.13. "***Assignment, Assumption, and Indemnity Agreement***" shall mean the agreement entitled "Assignment, Assumption, and Indemnity Agreement" dated as of December 31, 2002 between Kerr-McGee Chemical Worldwide LLC and Kerr-McGee Oil & Gas Corporation.

1.14. "***Bankruptcy Claims***" shall have the meaning set forth in Recital B.

1.15. "***Bankruptcy Code***" shall mean title 11 of the U.S. Code, 11 U.S.C. §§ 101-1532, as hereinafter amended.

1.16. "***Bankruptcy Court***" shall have the meaning set forth in Recital A.

1.17. "***Bankruptcy Environmental Claims***" and "***Bankruptcy Tort Claims***" shall have the meanings set forth in Recital B.

1.18. "***Beneficiaries***" shall have the meaning set forth in Recital D.

1.19. "***Business Day***" and "***Business Days***" shall mean any day other than a Saturday, Sunday or other day on which banks in New York City are authorized or required by law to close.

1.20. "***CAA***" shall mean the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, as hereinafter amended.

1.21. "***CERCLA***" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675, as hereinafter amended.

1.22. "***Chapter 11 Cases***" shall have the meaning set forth in Recital A.

1.23. "***Cimarron Environmental Response Trust Agreement***" shall mean the Environmental Response Trust Agreement entered into by and among the Debtors, the Cimarron

9

Trustee, and certain other entities, an execution copy of which was approved by the Bankruptcy

Court on February 14, 2011 [Case No. 09-10156 (ALG), Dkt. No. 2812].    This term shall also

include all schedules, exhibits and attachments thereto.

1.24.    "*Cimarron Trust*" shall have the meaning set forth in Recital D.

1.25.    "*Complaint-in-Intervention*" shall have the meaning set forth in Recital C.

1.26.    "*Confirmation Order*" shall mean the Findings of Fact, Conclusions of Law

and Order Confirming    The First Amended Joint Plan of Reorganization of Tronox Incorporated et

al. Pursuant to Chapter 11 of the Bankruptcy Code (Case No. 09-10156, Dkt. No. 2567).

1.27.    "*Covered Sites*" shall mean any and all Sites (i) listed in Attachments A-1,

A-2, A-3, A-4, B, D, and E of the Environmental Settlement Agreement, (ii) referenced in the Tort

Claims Trust Agreement, including all schedules and attachments thereto, (iii) which were the subject

of any Bankruptcy Claim, or (iv) listed in Appendix 4 to the Written Direct of Dr. Neil Ram (Adv.

Proc. Dkt. No.417-9).

1.28.    "*CWA*" shall mean the Clean Water Act, 33 U.S.C. §§ 1251-1387, as

hereinafter amended.

1.29.    "*Debtors*" shall have the meaning set forth in Recital A and shall include

Tronox Incorporated; Tronox Luxembourg S.ar.l; Cimarron Corporation; Southwestern Refining

Company, Inc.; Transworld Drilling Company; Triangle Refineries, Inc.; Triple S, Inc.; Triple S

Environmental Management Corporation; Triple S Minerals Resources Corporation; Triple S

Refining Corporation; Tronox LLC; Tronox Finance Corp.; Tronox Holdings, Inc.; Tronox

Pigments (Savannah) Inc.; and Tronox Worldwide LLC.

1.30.    "*Decision*" shall have the meaning set forth in Recital H.

1.31.    "***Defendants***" shall mean any and all of the defendants named in the Second Amended Adversary Complaint or the Anadarko Entities named as defendants in the Complaint-in-Intervention or both.

1.32.    "***Distribution Scheme***" shall have the meaning set forth in Recital D.

1.33.    "***District Court***" shall mean the United States District Court for the Southern District of New York.

1.34.    "***DOD***" shall have the meaning set forth in the preamble hereto.

1.35.    "***DOI***" shall have the meaning set forth in the preamble hereto.

1.36.    "***E&P Business***" shall have the meaning provided in the Assignment Agreement and the Assignment, Assumption, and Indemnity Agreement.

1.37.    "***Effective Date***" shall have the meaning set forth in Section 2.4.1.

1.38.    "***Environmental Actions***" shall have the meaning given to such term in the Environmental Settlement Agreement, except that (i) the following words are omitted from the first sentence of that definition: "that occur after the Effective Date and," (ii) the last sentence is deleted in its entirety, and (iii) the term is not limited to the Sites identified in that definition; provided further that Environmental Actions at a Site include those relating to releases of hazardous substances from a portion of the Site and all areas affected by migration of such substances from the Site.

1.39.    "***Environmental and Tort Trusts***" shall have the meaning set forth in the Recital D.

1.40.    "***Environmental and Tort Trust Agreements***" shall have the meaning set forth in Recital B.

1.41.    "***Environmental Motion***" shall have the meaning set forth in Section 2.3.2.

11

1.42.    "***Environmental Settlement Agreement***" shall mean the Consent Decree and

Environmental Settlement Agreement entered into by and among the Debtors, the United States,

and certain other entities, which was approved by the Bankruptcy Court on January 26, 2011 [Case

No. 09-10156 (ALG), Dkt. No. 2747], as amended by the First Amendment to Consent Decree and

Environmental Settlement Agreement, which was approved by the Bankruptcy Court on February

14, 2011 [Case No. 09-10156 (ALG), Dkt. No. 2812].    This term shall also include all schedules,

exhibits and attachments thereto.

1.43.    "***Execution***" shall be deemed to have occurred upon delivery of all executed

signature pages to all Parties.

1.44.    "***FDCPA***" shall mean Subchapter D of the Federal Debt Collection

Procedures Act, 28 U.S.C. §§ 3301-3308, as hereinafter amended.

1.45.    "***Final***" shall have the meaning set forth in Section 2.3.5.

1.46.    "***Forest Service***" shall have the meaning set forth in the preamble hereto.

1.47.    "***Initial Settlement Amount***" shall have the meaning set forth in Section 3.1.

1.48.    "***Interest***" shall have the meaning set forth in Section 3.3.

1.49.    "***Litigation Trust***" and "***Litigation Trustee***" shall have the meanings set forth

in the preamble hereto.

1.50.    "***Litigation Trust Agreement***" shall mean the Anadarko Litigation Trust

Agreement entered into by and among the Debtors, the Litigation Trustee, the United States, certain

of the Litigation Trust Beneficiaries, and certain other entities, an execution copy of which was

approved by the Bankruptcy Court on February 14, 2011 [Case No. 09-10156 (ALG), Dkt. No.

2812].    This term shall also include all schedules, exhibits and attachments thereto.

1.51.    "*Litigation Trust Beneficiaries*" shall have the meaning set forth in Recital D.

1.52.    "*Lodging Date*" shall mean the date this Agreement is lodged with the Bankruptcy Court in accordance with Section 2.1.

1.53.    "*Multistate Environmental Response Trust Agreement*" shall mean the Environmental Response Trust Agreement entered into by and among the Debtors, the Multistate Trustee, and certain other entities, an execution copy of which was approved by the Bankruptcy Court on February 14, 2011 [Case No. 09-10156 (ALG), Dkt. No. 2812].    This term shall also include all schedules, exhibits and attachments thereto.

1.54.    "*Multistate Trust*" shall have the meaning set forth in Recital D.

1.55.    "*Nevada Environmental Response Trust Agreement*" shall mean the Environmental Response Trust Agreement entered into by and among the Debtors, the Nevada Trustee, and certain other entities, an execution copy of which was approved by the Bankruptcy Court on February 14, 2011 [Case No. 09-10156 (ALG), Dkt. No. 2812].    This term shall also include all schedules, exhibits and attachments thereto.

1.56.    "*Nevada Trust*" shall have the meaning set forth in Recital D.

1.57.    "*NOAA*" shall have the meaning set forth in the preamble hereto.

1.58.    "*NRC*" shall have the meaning set forth in the preamble hereto.

1.59.    "*NRD*" shall mean damages or costs incurred as a result of any injury to, destruction of, loss of, or loss of use of natural resources, as defined in 33 U.S.C. § 2701(20) and as used in 42 U.S.C. 9607(f), or in any other comparable federal law, including any and all natural resource damages assessment costs and restoration actions.

13

1.60. "*OPA*" shall mean the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701-2762, as hereinafter amended.

1.61. "*Parties*" shall mean the Litigation Trust, the United States on behalf of U.S. EPA, DOD, DOI (on behalf of the Bureau of Land Management and the Fish and Wildlife Service), the Forest Service, NOAA, and NRC, and each Anadarko Entity.

1.62. "*Party*" shall mean any one of the Parties described in Section 1.61.

1.63. "*Payment Date*" shall have the meaning set forth in Section 3.1.

1.64. "*Person*" shall mean any individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government, tribe, tribal nation, political subdivision, department, instrumentality or agency thereof, and any other business or legal entity.

1.65. "*Plan*" shall mean the Debtors' First Amended Joint Plan of Reorganization, as attached as an exhibit to the Bankruptcy Court's Findings of Fact, Conclusions of Law and Order Confirming the First Amended Joint Plan of Reorganization [Case No. 09-10156 (ALG), Dkt. No. 2567].

1.66. "*Plan Effective Date*" shall mean February 14, 2011.

1.67. "*Proof of Claim*" shall mean any proof of claim, or writing with similar effect, filed in the Chapter 11 Cases, whether timely filed or not, pursuant to section 501 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 3001, and/or any order of the Bankruptcy Court in the Chapter 11 Cases.

1.68. "*RCRA*" shall mean the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-6992k, as hereinafter amended.

1.69.    "*Reorganized Debtors*" shall have the meaning given to such term in the Plan.

1.70.    "*Report and Recommendation*" shall have the meaning set forth in Section 2.3.3.

1.71.    "*SDWA*" shall mean the Safe Drinking Water Act, 42 U.S.C. § 300f *et seq.*, as hereinafter amended.

1.72.    "*Savannah Environmental Response Trust Agreement*" shall mean the Environmental Response Trust Agreement entered into by and among the Debtors, the Savannah Trustee, and certain other entities, an execution copy of which was approved by the Bankruptcy Court on February 14, 2011 [Case No. 09-10156 (ALG), Dkt. No. 2812].    This term shall also include all schedules, exhibits and attachments thereto.

1.73.    "*Savannah Trust*" shall have the meaning set forth in Recital D.

1.74.    "*Second Amended Adversary Complaint*" shall mean the complaint referred to in Recital C.

1.75.    "*Settlement Proceeds*" shall have the meaning set forth in Section 3.1.

1.76.    "*Settlement Approval Process*" shall have the meaning set forth in Section 2.2.

1.77.    "*Site*" shall mean "facility," as that term is defined in CERCLA Section 101(9), 42 U.S.C. § 9601(9), as hereinafter amended.

1.78.    "*Stay*" shall have the meaning set forth in Section 2.2.

1.79.    "*Tort Claims Trust*" shall have the meaning set forth in Recital D.

1.80.    "*Tort Claims Trust Agreement*" shall mean the Tronox Incorporated Tort Claims Trust Agreement entered into by and among Tronox Incorporated, Garretson Resolution

15

Group, Inc., solely in its capacity as Tort Claims Trustee, and Wilmington Trust Company, solely in its capacity as Delaware Trustee, as amended [which are filed at Case No. 09-01198 (ALG), Dkt. No. 634]. This term shall also include all schedules, exhibits and attachments thereto.

1.81.   "*Trust Advisory Board*" shall have the meaning given to such term in the Litigation Trust Agreement.   For the avoidance of doubt, members of the Trust Advisory Board as of the date of this Agreement are the Garretson Resolution Group, Inc., Greenfield Environmental Multistate Trust LLC, Le Petomane XXVII, Inc., Karen Cordry, Kathleen A. Roberts, and Pamela Esterman.

1.82.   "*Trust Derivative Claims*" shall mean any and all claims and/or remedies that are held and/or controlled by, and which were or could have been asserted by, the Litigation Trust against any Anadarko Released Party, seeking relief or recovery arising from harm to any Debtor or any Debtor's estate, based on any legal theory including, without limitation, such claims and/or remedies under federal or state law, statutory or common law, in equity or otherwise, arising out of or in any way related to (i) the Adversary Proceeding; (ii) the Chapter 11 Cases; (iii) the Bankruptcy Claims; (iv) the Covered Sites; and/or (v) any Anadarko Released Party's ownership, management, operation, status, tenure, conduct, omission, action or inaction at any time as a stockholder, affiliate, owner, partner, member, manager, director, officer, employee, servant, agent, representative, attorney, creditor, successor, assign or other relationship with a Debtor and/or any of its predecessors, in each case, including, without limitation, such claims and/or remedies that are actions, causes of action, lawsuits, suits, claims, counterclaims, cross-claims, liabilities, interests, judgments, obligations, rights, demands, debts, damages, losses, grievances, promises, remedies, liens, attachments, garnishments, prejudgment and post-judgment interest, costs and expenses (including attorneys' fees and costs incurred or to be incurred), including Unknown Claims to the

16

maximum extent allowed under the law, whether pled or unpled, fixed or contingent, choate or inchoate, matured or unmatured, foreseen or unforeseen, accrued or unaccrued, past, present or future for fraudulent transfer, fraudulent conveyance, preference, turnover, breach of fiduciary duty, negligence, gross negligence, mismanagement, civil conspiracy, aiding and abetting, unjust enrichment, constructive trust, equitable subordination, equitable disallowance, agency, joint venture, alter ego, corporate veil piercing, usurpation of corporate opportunity, successor liability, breach of contract, fraud, intentional, reckless or negligent misrepresentation, contribution, indemnity, and all other such claims and/or remedies.

1.83.    "***Unknown Claims***" shall mean any and all claims that the owner of the claim is not aware of or does not suspect to exist for any reason.

1.84.    "***United States***" shall mean the United States of America and each department, agency, and instrumentality of the United States.

1.85.    "***U.S. EPA***" shall have the meaning set forth in the preamble hereto.

1.86.    "***West Chicago Environmental Response Trust Agreement***" shall mean the Environmental Response Trust Agreement entered into by and among the Debtors, the West Chicago Trustee, and certain other entities, an execution copy of which was approved by the Bankruptcy Court on February 14, 2011 [Case No. 09-10156 (ALG), Dkt. No. 2812].    This term shall also include all schedules, exhibits and attachments thereto.

2.    <u>Lodging, Stay, Settlement Process, Termination, and Effective Date</u>.

2.1.    <u>Lodging of Agreement</u>.    Within ten (10) Business Days of the date of Execution of this Agreement by all Parties hereto, the United States shall lodge this Agreement with the Bankruptcy Court and, as soon as practicable thereafter, submit for publication a notice for public comment in the Federal Register regarding this Agreement.

2.2.    Stay.    Contemporaneously with the lodging of this Agreement with the Bankruptcy Court, the Litigation Trust, the United States, and Anadarko shall jointly seek from the Bankruptcy Court a stay (the "*Stay*") of the Adversary Proceeding to allow for implementation of this Agreement (the "*Settlement Approval Process*"), which Stay shall remain in place until either (i) the termination of this Agreement or (ii) dismissal with prejudice of the Adversary Proceeding in accordance with Section 6.5, whichever occurs first.

2.3.    Approval Motions, Public Comment, Rule 9019.

2.3.1.   The United States, in its discretion, may terminate this Agreement if the public comments regarding this Agreement, following notice in the Federal Register, disclose facts or considerations that indicate that this Agreement is inappropriate, improper or inadequate, by providing a notice of termination to all Parties in accordance with Section 12.

2.3.2.   Promptly after the close of the public comment period, if the United States determines not to terminate this Agreement, the United States shall file in the Bankruptcy Court a motion (the "*Environmental Motion*") (i) seeking a report and recommendation recommending approval of this Agreement pursuant to the applicable fairness standards with respect to the covenants not to sue under environmental law, which report and recommendation the Parties will request to be contained in the same report and recommendation sought by the 9019 Recommendation Motion (as defined below), and (ii) requesting oral argument.

2.3.3.   Within ten (10) Business Days after Execution of this Agreement by all Parties hereto, the Litigation Trust and Anadarko shall file in the Bankruptcy Court a motion, together with one or more supporting affidavits, (the "*9019 Recommendation Motion*") (substantially in the form attached hereto as **Exhibit A**, which shall include a form of dismissal

18

with prejudice) pursuant to Federal Rule of Bankruptcy Procedure 9019 and other applicable law

(i) seeking a report and recommendation recommending approval of the settlement embodied by

this Agreement pursuant to the applicable fairness standards under Federal Rule of Bankruptcy

Procedure 9019 and other applicable law, which report and recommendation the parties will

request to be contained in the same report and recommendation sought by the Environmental

Motion (the combined report and recommendation sought by the Environmental Motion and the

9019 Recommendation Motion, the "***Report and Recommendation***"), and (ii) requesting a

hearing in connection with the 9019 Recommendation Motion, which hearing the Parties shall

request to take place simultaneously with any oral argument on the Environmental Motion.

Promptly after the Bankruptcy Court issues a Report and Recommendation which recommends

entry of an order by the District Court approving this Agreement, the Litigation Trust and

Anadarko shall seek approval of the Report and Recommendation by the District Court,

consistent and in compliance with the District Court's Amended Standing Order of Reference, 12

Misc. 00032 (S.D.N.Y. Jan. 31, 2012), by filing a motion (the "***Approval Motion***") or taking

such other actions as may be necessary to request that the District Court review and approve the

Report and Recommendation and issue an order (the "***Approval Order***") (substantively identical

to the form attached hereto as **Exhibit B**) approving the Report and Recommendation and

determining that this Agreement meets the applicable fairness standards under Federal Rule of

Bankruptcy Procedure 9019 and the applicable fairness standards with respect to the covenants

not to sue under environmental law.   Without limiting the foregoing, the proposed Approval

Order submitted to the District Court shall include:

> (a)  findings of fact and conclusions of law determining that notice of this
>
>      Agreement has been complete and adequate;

(b) a determination that the terms of this Agreement are fair, just and appropriate;

(c) an injunction pursuant to, *inter alia*, 28 U.S.C. § 1651, § 105(a) of the

Bankruptcy Code and Bankruptcy Rules 7001 and 7065, permanently

enjoining (i) any Debtor(s), (ii) any creditor of any Debtor who filed or could

have filed a claim in the Chapter 11 Cases, (iii) any other Person whose claim

(A) in any way arises from or is related to the Adversary Proceeding, (B) is a

Trust Derivative Claim, or (C) is duplicative of a Trust Derivative Claim, and

(iv) any Person acting or purporting to act as an attorney for any of the

preceding from asserting against any Anadarko Released Party (I) any Trust

Derivative Claims or (II) any claims that are duplicative of Trust Derivative

Claims, whether or not held or controlled by the Litigation Trust, or whether

or not the Litigation Trust could have asserted such claims against any

Anadarko Released Party; provided, however, that such Approval Order shall

also include the following language: "The injunction herein shall not apply to

or bar the following: (i) any criminal liability; (ii) any liability arising under

Title 26 of the United States Code (Internal Revenue Code) or state tax laws;

(iii) any liability arising under federal or state securities laws; (iv) any action to

enforce a covenant not to sue, release, or agreement not to seek reimbursement

contained in the Settlement Agreement; (v) any liability that an Anadarko

Released Party might have that does not arise from or through a liability of a

Debtor; (vi) any liability of an Anadarko Released Party due to its status or acts

or omissions since November 28, 2005 as a/an (A) owner, (B) operator, (C)

discharger, (D) lessee, (E) permittee, (F) licensee, (G) person in charge,

(H)  holder of a right of use and easement, (I) arranger for disposal or

treatment, (J) transporter, or (K) person who generates, handles, transports,

treats, stores or disposes of solid or hazardous waste; (vii) any liability relating

to the E&P Business or the stored power or battery business (including, but not

limited to, as owned or operated by U.S. Avestor LLC and Kerr-McGee Stored

Power Company LLC[2]); and (viii) any liability that any Anadarko Released

Party retained, received or assumed pursuant to the Assignment Agreement or

Assignment, Assumption, and Indemnity Agreement.   For the avoidance of

doubt, to the extent that a liability of an Anadarko Released Party excluded

from the injunction herein by the preceding sentence would be a liability for

which such Anadarko Released Party would be jointly and severally liable with

others, including but not limited to one or more Debtors or Reorganized

Debtors, under applicable law, nothing in this injunction is intended to alter any

such applicable principles of joint and several liability where otherwise

provided by law.   The injunction herein does not apply to the Litigation Trust

and the United States, which are providing releases and covenants not to sue in

the Settlement Agreement."

Subject to Section 2.3.1, the United States shall file statements in support of this Agreement in

the Bankruptcy Court and the District Court.

2.3.4.   Anadarko shall serve the 9019 Recommendation Motion (and, if

applicable, the Approval Motion) on the Litigation Trust Beneficiaries and all other Persons

---

[2] Provided, however, that as it relates to Kerr-McGee Stored Power Company LLC, Section 2.3.3(c)(vii) is
applicable only to the extent that such liability, if any, relates to or arises from the stored power or battery business.

currently or previously appearing on the most recent version of the Bankruptcy Court's Rule

2002 service list and on the service list in the Adversary Proceeding.   Anadarko may supplement

this service with such additional service or publication it deems appropriate.   Anadarko shall be

solely responsible for all fees and costs incurred in providing the notice described in this

Section   2.3.4.

   2.3.5.   For the purpose of this Agreement, any court order (including the

Approval Order) becomes "***Final***" when it is no longer subject to appeal, rehearing,

reconsideration, or petition for certiorari because (i) the time for all such appeals, motions for

rehearing or reconsideration, and petitions for certiorari has expired, (ii) no appeal, motion for

rehearing or reconsideration, or petition for certiorari is pending in the District Court, the Court

of Appeals for the Second Circuit or the U.S. Supreme Court with respect to such order, and

(iii) all issues, if any, remanded to a court with respect to such order have been addressed in an

order on remand that is itself Final.

   2.4.   <u>Effective Date</u>.

   2.4.1.   The effective date of this Agreement is the date on which an

Approval Order entered by the District Court approving the Report and Recommendation

recommending approval of this Agreement becomes Final (the "***Effective Date***").   Promptly

thereafter, Anadarko shall serve a notice that this Agreement has become effective on the

Persons listed in the first sentence of Section 2.3.4 and, in Anadarko's discretion, on any

additional Persons.   Anadarko shall be solely responsible for all fees and costs incurred in

providing the foregoing notices.

   2.4.2.   This Agreement shall become effective on the Effective Date,

except for Sections 2.1, 2.2, 2.3, 2.5, 5, 6.1, 6.3, 7, 8, 9, 10, 11, 12, and 13 of this Agreement,

which Sections shall, subject to Section 2.3.1, become effective upon Execution of this

Agreement by all Parties.

    2.5.   <u>Termination</u>.

    2.5.1.  In the event that an order denying the Environmental Motion, the

9019 Recommendation Motion, or the Approval Motion (if applicable) becomes Final, or in the

event that the United States exercises its right to terminate this Agreement under Section 2.3.1,

then this Agreement shall terminate and be null and void (except that Sections 8 and 9 shall

survive termination of this Agreement), and each of the Parties' respective interests, rights,

remedies and defenses shall be fully restored without prejudice.

    2.5.2.  Upon termination of this Agreement, the Stay will terminate.

    3.   <u>Payment of Settlement Proceeds and Exchange of Other Consideration</u>.

    3.1.   No later than two (2) Business Days after the Effective Date (the "***Payment***

***Date***"), Anadarko shall cause Five Billion One Hundred Fifty Million Dollars ($5,150,000,000.00)

(the "***Initial Settlement Amount***") in cash plus Interest thereon from the Lodging Date as provided

in Section 3.3 (collectively, the "***Settlement Proceeds***"), to be timely paid to the Litigation Trust by

wire transfer(s) of immediately available funds pursuant to wire instructions, which shall be

provided to Anadarko by the Litigation Trust at least ten (10) Business Days in advance of the

Payment Date.

    3.2.   Anadarko and the Litigation Trust agree that the Initial Settlement Amount

represents a principal sum of $3,980,665,791.37 and 6% simple interest per annum thereon from

May 12, 2009 until the Lodging Date.   The United States has not agreed that the Settlement

Proceeds are allocable to principal and/or interest, and the United States is not bound by the

designation in this Agreement of allocations of the Settlement Proceeds to principal and/or interest.

3.3.    For the purpose of Section 3.1, "*Interest*" shall be calculated by multiplying the Initial Settlement Amount by the applicable interest rate for each interest period.    The interest rate to be used commencing on the Lodging Date and for the first 180 days thereafter shall be 1.50%.    Thereafter, the interest rate shall be the sum of the One Month London Interbank Offered Rate ("*One Month LIBOR*")[3] plus 1.50% as in effect from time to time for each one month interest period commencing on the 181st day after the Lodging Date.    All interest shall be computed without compounding.

3.4.    The payment of the Settlement Proceeds as contemplated in Section 3.1 hereof and the releases and other consideration provided herein to the Litigation Trust are in full, complete, and final satisfaction and payment of any and all claims and causes of action of the Litigation Trust against the Anadarko Released Parties that are released in Section 4.1 in this Agreement, including any entitlement to legal fees and costs through the Payment Date.    The covenants not to sue and other consideration provided herein to the United States are in full, complete, and final satisfaction and payment of any and all claims and causes of action of the United States against the Anadarko Covenant Parties to the extent that the United States has provided covenants not to sue in Sections 4.2.1.1 through 4.2.1.7 herein, subject to the reservations thereto and terms of this Agreement, in each case, including any entitlement of the United States to legal fees and costs incurred through the Payment Date.    For avoidance of doubt, nothing herein compromises legal entitlements (if any) to any legal fees and costs incurred in connection with any action to enforce or compel compliance with this Agreement after the Payment Date.

---

[3] "LIBOR" means the rate appearing on Reuters Screen "LIBOR01" Page as of 11:00 A.M. London time, two Business Days prior to the date of such interest period, as the annualized rate for the offering of United States Dollar deposits with a maturity of thirty days. In the event that such LIBOR01 rate does not appear on such page (or

3.5.    The Litigation Trust shall have the sole responsibility and obligation to cause the Settlement Proceeds to be allocated and distributed to the Litigation Trust Beneficiaries consistent with the Litigation Trust Agreement.

4.    <u>Mutual Releases and Covenants Not to Sue</u>.

4.1.    <u>Releases</u>.

4.1.1.    <u>Releases by Litigation Trust</u>.    Upon the payment required by Section 3.1, and effective on the Payment Date without further action by any Party, the Litigation Trust hereby fully, finally, and forever irrevocably releases, discharges, extinguishes, and covenants not to sue, seek an injunction, or take administrative action against any Anadarko Released Party, from and against any and all manner of actions, causes of action, lawsuits, suits, claims, counterclaims, cross-claims, indemnification claims, contribution claims, liabilities, interests, judgments, obligations, rights, demands, debts, damages, losses, grievances, promises, remedies, liens, attachments, garnishments, prejudgment interest, costs and expenses (including attorneys' fees and costs incurred or to be incurred) in law, equity or otherwise, of whatever kind or nature (including Unknown Claims), whether pled or unpled, fixed or contingent, choate or inchoate, matured or unmatured, foreseen or unforeseen, accrued or unaccrued past, present or future, that are held and/or controlled by the Litigation Trust and then existing or thereafter arising out of, accruing from or relating to (i) the Chapter 11 Cases (including the Bankruptcy Claims), (ii) the Adversary Proceeding, (iii) the Covered Sites, or (iv) the Trust Derivative Claims.

---

otherwise on such screen) the LIBOR rate shall be determined by reference to such other comparable Reuters Screen providing a public LIBOR rate.

4.1.2    Releases by Anadarko.

4.1.2.1    Releases by Anadarko.    Upon the payment required by Section 3.1, and effective on the Payment Date without further action by any Party, Anadarko hereby fully, finally, and forever irrevocably releases, discharges, extinguishes, and covenants not to sue the Litigation Trustee, the Litigation Trust and each of its past, present, and future employees, agents, managers, attorneys and other representatives, including but not limited to the current and future Litigation Trustee and current and future members of the Trust Advisory Board, from and against any and all manner of actions, causes of action, lawsuits, suits, claims, counterclaims, cross-claims, indemnification claims, contribution claims, liabilities, interests, judgments, obligations, rights, demands, debts, damages, losses, grievances, promises, remedies, liens, attachments, garnishments, prejudgment interest, costs and expenses (including attorneys' fees and costs incurred or to be incurred) in law, equity or otherwise, of whatever kind or nature (including Unknown Claims), fixed or contingent, choate or inchoate, matured or unmatured, foreseen or unforeseen, accrued or unaccrued past, present or future, then existing or thereafter arising out of, accruing from or relating to (i) the Chapter 11 Cases (including the Bankruptcy Claims), (ii) the Adversary Proceeding, (iii) the Covered Sites, or (iv) the Trust Derivative Claims or claims, if any, which are duplicative of such Trust Derivative Claims, whether or not held or controlled by the Litigation Trust, or whether or not the Litigation Trust could have asserted such claims against any Anadarko Released Party.

4.1.2.2    Claim for Reimbursement And Other Rights.    Effective on the Payment Date, and without further action by any Party, Anadarko releases, discharges, extinguishes and waives any claim for reimbursement of the Settlement Proceeds against any other Party, any Beneficiary, or the Environmental and Tort Trusts.    For the avoidance of doubt, the release

contained in this section includes a release of any claim that Anadarko has or may have against any other Party, any Beneficiary, or the Environmental and Tort Trusts to offset or reduce the funds recovered in the Adversary Proceeding, including but not limited to any claim pursuant to § 502(h) of the Bankruptcy Code.   Notwithstanding the above, in the event that any Beneficiary (other than the United States) or any Environmental and Tort Trust asserts claims or causes of action against the Anadarko Covenant Parties or Anadarko Released Parties that have been enjoined by the Approval Order, the Anadarko Covenant Parties and Anadarko Released Parties retain all of their rights and defenses against such claims, including but not limited to any right of setoff and recoupment from such Beneficiary or Environmental and Tort Trust.

4.1.3   With respect to any and all claims released hereby, each of the Parties providing releases stipulates and agrees that, upon the date the releases provided in Sections 4.1.1 and 4.1.2 hereof become effective, the Parties providing releases shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by law or statute, whether federal, state, municipal, local, tribal, foreign or other, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

4.1.4   It is the intention of the Parties providing releases that, notwithstanding the provisions of California Civil Code § 1542 or any similar provisions, rights and benefits conferred by law, and notwithstanding the possibility that the Parties providing releases or their counsel may discover or gain a more complete understanding of the facts, events or law that, if

presently known or fully understood, would have affected the decision to enter into this

Agreement, any and all release of claims, including Unknown Claims, shall be fully, finally, and

forever settled.    Each of the Parties providing releases acknowledges that the inclusion of

Unknown Claims herein was separately bargained for and was a key and material element of this

Agreement.

      4.2.   <u>Covenants Not to Sue</u>.

          4.2.1.   <u>Covenants by United States</u>.

              4.2.1.1.   <u>Derivative Claims</u>.    The United States on behalf of U.S.

EPA, DOD, DOI, the Forest Service, NOAA, and NRC, and for purposes of this Agreement

only, agrees, accepts and recognizes that (i) the Litigation Trust owns, controls and has the

exclusive right to settle and compromise the Trust Derivative Claims; (ii) the United States on

behalf of U.S. EPA, DOD, DOI, the Forest Service, NOAA, and NRC does not own, control or

have the right to settle and compromise the Trust Derivative Claims; and (iii) following the

Litigation Trust's settlement and release of the Trust Derivative Claims, the United States on

behalf of U.S. EPA, DOD, DOI, the Forest Service, NOAA, and NRC will have no right,

standing or ability to assert, prosecute, recover or make any demand with respect to the Trust

Derivative Claims.    For the purpose of this paragraph, the term "Trust Derivative Claims" shall

not be construed to include the claims asserted in the Complaint-in-Intervention.

              4.2.1.2   <u>Common Law and FDCPA Claims</u>.    Upon the

payment required by Section 3.1, and effective on the Payment Date without further action by

any Party, and except as specifically provided in Section 11 (Reservation of Rights), the United

States (on behalf of U.S. EPA, DOD, DOI, the Forest Service, NOAA, and NRC) covenants not

to sue or assert any common law civil claims or causes of action against the Anadarko Covenant

28

Parties for any claims that are Trust Derivative Claims relating to (1) the Covered Sites, including Environmental Actions at the Covered Sites, (2) the United States' Proofs of Claim, (3) the Bankruptcy Claims, (4) the Chapter 11 Cases, (5) the Adversary Proceeding, or (6) claims, if any, which are duplicative of such Trust Derivative Claims, whether or not held or controlled by the Litigation Trust, or whether or not the Litigation Trust could have asserted such claims against any Anadarko Released Party.    Additionally, upon the payment required by Section 3.1, and effective on the Payment Date without further action by any Party, and except as specifically provided in Section 11 (Reservation of Rights), the United States covenants not to sue or assert a claim or cause of action against the Anadarko Covenant Parties under the FDCPA, including, without limitation, the claims asserted in the Complaint-In-Intervention, to recover on a debt that is an environmental liability at a Covered Site where such claim or cause of action arises from the transactions at issue in this case.

          4.2.1.3.    <u>Statutory and Regulatory Claims and Causes of Action – U.S. EPA</u>.    Upon the payment required by Section 3.1, and effective on the Payment Date without further action by any Party, and except as specifically provided in Section 11 (Reservation of Rights), the United States on behalf of the U.S. EPA covenants not to sue or assert any civil claims or causes of action or to take administrative action against the Anadarko Covenant Parties pursuant to CERCLA, RCRA, CWA, SDWA, OPA and CAA with respect to Covered Sites, including but not limited to any such civil claims, causes of action or administrative actions relating to: (1) any and all costs of Environmental Actions (including NRD), (2) the United States' Proofs of Claim, (3) the Bankruptcy Claims, (4) the Chapter 11 Cases, and/or (5) the Adversary Proceeding.

4.2.1.4. <u>Statutory and Regulatory Claims and Causes of Action – Forest Service</u>. Upon the payment required by Section 3.1, and effective on the Payment Date without further action by any Party, and except as specifically provided in Section 11 (Reservation of Rights), the United States on behalf of the Forest Service covenants not to sue or assert any civil claims or causes of action or to take administrative actions against the Anadarko Covenant Parties pursuant to CERCLA with respect to Covered Sites, including but not limited to any such civil claims, causes of action or administrative action relating to: (1) any and all costs of Environmental Actions (including NRD), (2) the United States' Proofs of Claim, (3) the Bankruptcy Claims, (4) the Chapter 11 Cases, and/or (5) the Adversary Proceeding.

4.2.1.5. <u>Statutory and Regulatory Claims and Causes of Action – NRC</u>.   Upon the payment required by Section 3.1, and effective on the Payment Date without further action by any Party, and except as specifically provided in Section 11 (Reservation of Rights), the United States on behalf of NRC covenants not to sue or assert any civil claims or causes of action or to take administrative actions against the Anadarko Covenant Parties pursuant to the AEA with respect to Covered Sites, including but not limited to any such civil claims, causes of action or administrative action relating to: (1) any and all costs of Environmental Actions under the AEA, (2) the United States' Proofs of Claim, (3) the Bankruptcy Claims, (4) the Chapter 11 Cases, and/or (5) the Adversary Proceeding.

4.2.1.6. <u>Statutory and Regulatory Claims and Causes of Action – DOD</u>. Upon the payment required by Section 3.1, and effective on the Payment Date without further action by any Party, and except as specifically provided in Section 11 (Reservation of Rights), the United States on behalf of DOD covenants not to sue or assert any civil claims or causes of action or to take administrative actions against Anadarko pursuant to CERCLA with

respect to the sites identified on **Schedule 2-A**, including but not limited to any such civil claims,

causes of action or administrative action relating to: (1) any and all costs of Environmental Actions

(excluding NRD), (2) the United States' Proofs of Claim, (3) the Bankruptcy Claims, and (4) the

Chapter 11 Cases, and/or (5) the Adversary Proceeding.    For the avoidance of doubt, the covenant

not to sue provided by this Section 4.2.1.6 does not cover NRD.    This covenant extends only to

Anadarko and does not extend to any third parties (including without limitation Anadarko

Covenant Parties other than Anadarko, National Coating Corporation and the Massachusetts

Institute of Technology).    The United States on behalf of DOD specifically reserves any and all

rights it may have to bring actions against potentially responsible parties other than Anadarko, as

well as any defenses it may have with respect to any claims and causes of action brought against it.

      4.2.1.7.    <u>Statutory and Regulatory Claims and Causes of Action – DOI and NOAA</u>.    Upon the payment required by Section 3.1, and effective on the

Payment Date without further action by any Party, and except as specifically provided in Section

11 (Reservation of Rights), the United States on behalf of DOI and NOAA covenants not to sue or

assert any civil claims or causes of action or to take administrative action against the Anadarko

Covenant Parties pursuant to CERCLA, OPA, and CWA with respect to the sites identified on

**Schedule 2-B**, including but not limited to any such civil claims, causes of action or administrative

actions relating to: (1) any and all costs of Environmental Actions (including NRD), (2) the United

States' Proofs of Claim, (3) the Bankruptcy Claims, (4) the Chapter 11 Cases, and/or (5) the

Adversary Proceeding.

      4.3.     <u>Covenant Not to Sue by Anadarko</u>.

      4.3.1.    Upon the payment required by Section 3.1, and effective on the

Payment Date without further action by any Party, Anadarko covenants not to sue the United

States, any Beneficiary, or the Environmental and Tort Trusts for any offset or reduction of the

recovery in the Adversary Proceeding, including but not limited to any claim pursuant to

§ 502(h) of the Bankruptcy Code, and covenants not to sue and waives any claim for

reimbursement of the Settlement Proceeds against the United States, any Beneficiary, or the

Environmental and Tort Trusts.

        4.3.2.   Upon the payment required by Section 3.1, and effective on the

Payment Date without further action by any Party, Anadarko covenants not to sue or assert any

civil claims or causes of action against the United States, any Beneficiary, or the Environmental

and Tort Trusts with respect to the Covered Sites, including but not limited to any claims under

the Bankruptcy Code, any direct or indirect claim for reimbursement from the Superfund

(established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507), through CERCLA

Sections 106(b)(2), 107, 111, 112, 113, 42 U.S.C. §§ 9606(b), 9607, 9611, 9612, 9613, RCRA,

or any other provision of law; any claims and causes of action against the United States, any

Beneficiary, or the Environmental and Tort Trusts, including any of their, departments, agencies

or instrumentalities pursuant to Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607, 9613, or

any claim for reimbursement of the Settlement Proceeds; any claims or causes of action arising

out of the response activities at such Covered Sites; and any claims relating to (1) the Covered

Sites, including Environmental Actions at the Covered Sites, (2) the United States' Proofs of

Claim, (3) the Bankruptcy Claims, (4) the Chapter 11 Cases, (5) the Adversary Proceeding or (6)

the Trust Derivative Claims or claims, if any, which are duplicative of such Trust Derivative

Claims, whether or not held or controlled by the Litigation Trust, or whether or not the Litigation

Trust could have asserted such claims against any Anadarko Released Party.   Nothing in this

Agreement shall be construed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611 or 40 C.F.R. § 300.700(d).

4.3.3.  Notwithstanding Sections 4.1.2.1, 4.1.2.2, 4.3.1, and 4.3.2, in the event that any Beneficiary (other than the United States) or any of the Environmental and Tort Trusts assert claims or causes of action against the Anadarko Covenant Parties or Anadarko Released Parties that have been enjoined by the Approval Order, the Anadarko Covenant Parties and Anadarko Released Parties retain all of their rights and defenses against such claims, including but not limited to any right of setoff and recoupment from such Beneficiary or Environmental and Tort Trust.

4.4.    Contribution Protection.

4.4.1.  The Parties agree that upon the Approval Order becoming Final, this Agreement will constitute a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, and that Anadarko is entitled, as of the Payment Date and upon the payment required by Section 3.1, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. §§ 9613(f)(2), or as otherwise provided by law for matters addressed in this Agreement.

4.4.2.  For purposes of Section 4.4.1, the matters addressed are as follows: (i) all Environmental Actions (other than NRD) taken or to be taken, and all costs incurred or to be incurred, by the United States or any potentially responsible party, at or in connection with the Covered Sites and all areas affected by migration of hazardous substances from the Covered Sites, and (ii) NRD claims, including but not limited to restoration and assessment costs, asserted by the United States on behalf of DOI or NOAA at any of the sites identified on **Schedule 2-B**.

Matters addressed in this Agreement do not include any matters that are the subject of the reservations of rights set forth in Section 11.

4.5.    <u>Transferred Contribution Rights</u>.    To the extent that any of the Debtors or the Debtor's estates transferred any contribution rights to the Litigation Trust pursuant to the Plan and the Environmental and Tort Trust Agreements, the Litigation Trust shall not pursue such contribution rights against third-parties where such third-party could reasonably be expected to assert a claim against the Anadarko Covenant Parties or Anadarko Released Parties in connection therewith; provided, however, that if the Litigation Trust does pursue any such claim against a third-party, and such third-party asserts a claim against an Anadarko Covenant Party or Anadarko Released Party, the Litigation Trust shall immediately transfer and assign such contribution rights to the Anadarko Party against whom the claim is being asserted.

4.6.    <u>Non-Waiver</u>.    Nothing herein shall be construed as a release or waiver by any Party of any other Party's obligations or agreements under this Agreement, or of any claims arising out of, resulting from or related to a breach of this Agreement by any Party.

5.    <u>Representations of the Parties</u>.

5.1.    Each of the Parties separately represents and warrants to each of the other Parties that, subject to Section 2.3.1, it has the requisite power and authority to (a) enter into this Agreement, (b) provide covenants not to sue and/or release the claims (including Unknown Claims) it is providing covenants for and/or releasing pursuant to this Agreement and (c) perform the obligations imposed on it by this Agreement in accordance with the terms and conditions of this Agreement.

5.2.    Each of the Parties separately represents and warrants to each of the other Parties that the execution of, and the performance of the obligations contemplated by, this

Agreement has been approved by duly authorized representatives of the Party.    Without limiting

the foregoing, the Litigation Trustee represents that his authorization is evidenced by a true and

complete copy of the Litigation Trust's resolution attached hereto as **Exhibit C**.    Without limiting

the foregoing, each Anadarko Entity represents that its authorization is evidenced by a true and

complete copy of its resolution attached hereto as **Exhibit D**.

      5.3.    Each of the Parties separately represents and warrants to each of the other

Parties that it has expressly authorized its undersigned representative to execute this Agreement on

the Party's behalf as its duly authorized agent.

      5.4.    Each of the Parties other than the United States separately represents and

warrants to each of the other Parties that (i) this Agreement has been thoroughly negotiated and

analyzed by each Party and/or its counsel and has been executed and delivered in good faith,

pursuant to arm's-length negotiations, and for good and valuable consideration, (ii) it is not relying

upon any statements, understandings, representations, expectations, or agreements other than those

expressly set forth in this Agreement (including all of its exhibits and schedules), (iii) it has had the

opportunity to be represented and advised by legal counsel in connection with this Agreement,

which Agreement it makes voluntarily and of its own choice and not under coercion or duress, (iv)

it has made its own investigation of the facts and is relying upon its own knowledge and the advice

of its counsel, and (v) it knowingly waives any and all claims that this Agreement was induced by

any misrepresentation or non-disclosure.

      5.5.    This Agreement shall be binding upon and will inure to the benefit of each of

the Parties and its successors in interest, heirs, executors and/or administrators.

      5.6.    The Litigation Trust represents and warrants that its entry into this

Agreement complies with the Litigation Trust Agreement, including, but not limited to,

Section   4(c) thereof.

5.7.    The Litigation Trust further represents and warrants that the Litigation Trust succeeded to, as and after the Plan Effective Date, any and all claims against the Anadarko Released Parties related to the claims, issues and subject matter of the Adversary Proceeding which were held, owned and/or controlled by one or more Debtors before the Plan Effective Date, and that the Litigation Trust has not since the Plan Effective Date sold, assigned, transferred, encumbered, hypothecated, abandoned, conveyed or otherwise disposed of any claims received by the Litigation Trust from Debtors pursuant to the Plan, all of which are being settled, compromised and released herein.

5.8.    The Parties agree and stipulate that each Party is relying upon these representations and warranties in entering into this Agreement.    Furthermore, the Parties agree that these representations and warranties are a material inducement to entering into this Agreement. These representations and warranties shall survive the Execution of this Agreement indefinitely without regard to statutes of limitations.

5.9.    To the extent that these representations and warranties are made by the United States, they are made subject to the results of the public comment process and the right of the United States to terminate this Agreement after the public comment period as provided in Section 2.3.1.

6.    Affirmative Covenants.

6.1.    Effectuation of Agreement.    Each Party other than the United States agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate this Agreement and to preserve its validity and enforceability and to refrain from taking any actions that are inconsistent therewith.    In the event that any action or proceeding of any type

36

whatsoever is commenced or prosecuted by any Person not a Party hereto in any court,

administrative proceeding or other venue to invalidate, violate or prevent the validity, enforcement,

or carrying out of all or any of the provisions of this Agreement or to object to the motions seeking

the Stay or the Report and Recommendation or the Approval Motion (if applicable) (including

without limitation the injunctive provision therein), or to appeal, reverse or vacate the entry of the

Stay, Report and Recommendation or Approval Order, each Party other than the United States

mutually agrees, represents, warrants, and covenants to cooperate fully in opposing such action or

proceeding.   This obligation shall only continue as long as the Litigation Trust exists as a state law

entity.

      6.2.   <u>Cooperation</u>.

      6.2.1.   The Litigation Trust represents, warrants, covenants and agrees

that it will, within five (5) Business Days of any request made by Anadarko, cooperate with and

support Anadarko's efforts to enforce the Approval Order; provided, however, that Anadarko

shall not request, and the Litigation Trust shall not be required to comply with a request for,

cooperation or support in seeking to have a court determine whether a claim is a Trust Derivative

Claim, or a claim which is duplicative of such Trust Derivative Claim, whether or not held or

controlled by the Litigation Trust, or whether or not the Litigation Trust could have asserted such

claims against any Anadarko Released Party, or otherwise enjoined by the Approval Order if the

Litigation Trust reasonably and in good faith believes that Anadarko's legal position with respect

to such characterization lacks a good faith basis.   This obligation of cooperation and support

shall continue as long as the Litigation Trust exists as a state law entity.

      6.2.2.   Anadarko will pay the Litigation Trust's attorneys' fees and

costs actually incurred in cooperating and supporting Anadarko's efforts as set forth in Section

6.2.1, and Anadarko further acknowledges and agrees that (a) any request by Anadarko that the

Litigation Trustee provide cooperation as specified in Section 6.2.1 shall be in writing and

directed to the Litigation Trustee, and such request also must be reasonable, precise and definite,

so that the nature and extent of the cooperation sought by Anadarko is clearly specified to the

Litigation Trustee; (b) the attorneys' fees for the Litigation Trustee, and others assisting the

Litigation Trustee who work at the Litigation Trustee's law firm, shall be calculated using the

then-applicable billing rates for such persons, and Anadarko acknowledges that the applicable

billing rates for the Litigation Trustee, and any other attorneys, legal assistants, clerks and other

timekeepers who work at the Litigation Trustee's law firm vary, and the law firm adjusts these

rates from time to time (typically in each new calendar year); (c) if Anadarko seeks cooperation

from the Litigation Trustee, then Anadarko shall pay the Litigation Trustee an evergreen retainer

deposit of $100,000.00 (one-hundred thousand dollars) to secure payment of the Litigation

Trustee's attorney's fees and costs, the Litigation Trustee shall be entitled to apply the evergreen

retainer deposit to the balance due on Litigation Trustee's bills for any cooperation performed

pursuant to this paragraph, Anadarko shall replenish the evergreen retainer deposit so that the

minimum deposit required by the Litigation Trustee ($100,000.00) is maintained so long as the

specific matter is open, and the Litigation Trustee shall return any unearned fees upon conclusion

of the requested cooperation; and (d) the Litigation Trustee does not control and is not

responsible for the decisions and actions of any other person or entity, including without

limitation any other Party and any Beneficiary.

   6.3. <u>Reasonable Best Efforts</u>. All Parties other than the United States shall use

reasonable best efforts in connection with the Settlement Approval Process, including to obtain

entry of the Stay, the Report and Recommendation and the Approval Order.

6.4.    <u>Documents</u>.    All Parties shall, within thirty (30) days of the Effective Date,

substantially comply with the requirements of paragraph 21 of the Agreed Protective Order (Case

No. 09-10156, Dkt. No. 248) and paragraph 10(d) of the Second Agreed Protective Order (Case No.

09-10156, Dkt. No. 2626); provided, however, that nothing in this Section 6.4 is intended to prevent

a Party from seeking a further protective order from the Bankruptcy Court seeking relief from such

obligations, as permitted by paragraph 20 of the Agreed Protective Order and paragraph 10(c) of the

Second Agreed Protective Order; and provided further that, to the extent that paragraph 21 of the

Agreed Protective Order is limited in its application to the United States by the Order respecting the

Agreed Protective Order entered by the Court on August 12, 2009 [Case No. 09-10156, Dkt. No.

622], such limitations continue to apply.

6.5.    <u>Dismissal of Adversary Proceeding</u>.    Within five (5) Business Days after the

Payment Date and the payment required by Section 3.1, the Litigation Trust and the United States

shall timely commence taking in good faith and diligence all steps necessary to cause the Adversary

Proceeding to be dismissed with prejudice, including filing (if necessary) a motion with the

Bankruptcy Court seeking dismissal with prejudice.

6.6.    <u>Settlement Proceeds</u>.    The Parties agree that the Settlement Proceeds and

other consideration provided by Anadarko herein will resolve the Adversary Proceeding on the

terms stated herein, with approximately 88% of the net proceeds distributed pursuant to the

Distribution Scheme as and to the extent set forth in the Litigation Trust Agreement, Environmental

Settlement Agreement and the Environmental and Tort Trust Agreements for the benefit of trusts

created to conduct Environmental Actions at one or more Covered Sites and to federal, state, or

tribal governments in satisfaction of claims for costs previously expended, or to be expended, at

Covered Sites or for Environmental Actions expected to be performed at Covered Sites, and

approximately 12% of the net proceeds distributed to the Tort Trust on account of Bankruptcy Tort Claims.

7.      <u>Entire Agreement</u>.    This Agreement (and the exhibits and schedules hereto) constitutes a single integrated written contract that expresses the entire agreement and understanding between and among the Parties with respect to matters that are the subject of this Agreement; provided, however, that nothing herein shall modify the Environmental Settlement Agreement, the Environmental and Tort Trust Agreements, the Litigation Trust Agreement, or the Plan.    This Agreement supersedes all prior communications, settlements, and understandings among the Parties and their representatives regarding the matters addressed by this Agreement.    Except as explicitly set forth in this Agreement, there are no representations, warranties, promises, statements, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms. If the facts or law related to the subject matter of this Agreement are found hereafter to be other than is now believed by any of the Parties, then each of them expressly accepts and assumes the risk of such possible difference of fact or law and agrees that this Agreement nonetheless shall be and remain effective according to its terms.

8.      <u>Effect if Void</u>.

8.1.      In the event that this Agreement shall be determined, by a Final order of a court of competent jurisdiction, to be null and void, this Agreement shall be of no force whatsoever except with respect to the provisions contained in this Section 8 and Section 9.

8.2.      Each of the Parties agrees that, in the event this Agreement becomes null and void, no statement made by or on behalf of any Party (including by its counsel) in connection with the negotiation of this Agreement, or the terms of this Agreement, including any exhibits, schedules

40

and appendices thereto, as well as drafts thereof, whether or not any such statements would otherwise be confidential, shall be used by any Party or Person in any future proceeding as a purported admission or concession with respect to any factual or legal contention or position, or of the validity of any claim or defense to any claim.

9.    <u>Confidentiality</u>.    Settlement negotiations leading up to the Execution of this Agreement and all related discussions and negotiations are confidential and shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any similar local rules and state law provisions, as well as being subject to all applicable protections provided by statutes or laws relating to the confidentiality, exemption from discovery, and inadmissibility into evidence in any legal, court, regulatory, or administrative proceedings of statements, communications, and documents relating to the mediation of the Adversary Proceeding.    Except as necessary in Anadarko's, the United States' or the Litigation Trustee's discretion in the Settlement Approval Process, negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except in an action or proceeding to enforce or for breach of the terms of this Agreement, or pursuant to an order of any court of competent jurisdiction.    Notwithstanding anything to the contrary, this Agreement will not be interpreted to prohibit the United States from disclosing otherwise confidential information if such disclosure is compelled in a judicial proceeding, required by law, or otherwise reasonably required in the exercise of a non-discretionary government duty or obligation.

10.    <u>Remedies</u>.    The Parties agree that each Party's sole remedy for breach of this Agreement shall be the remedy of specific performance; provided, however, that the Litigation Trust and the United States reserve their rights to seek damages for any failure by Anadarko to

41

pay the Settlement Proceeds.

      11.    <u>Reservation of Rights</u>.

      11.1.    The settlement embodied by this Agreement shall not in any way prejudice the rights of the Anadarko Released Parties to seek contribution, indemnity, reimbursement and/or insurance against or from a Person that is not a Party, not one of the Environmental and Tort Trusts, or not a Beneficiary.

      11.2.    The mutual releases and covenants not to sue set forth in Section 4 do not pertain to any matters or Persons other than those expressly specified therein.  The United States reserves, and this Agreement is without prejudice to, all rights against the Anadarko Covenant Parties and the Anadarko Released Parties with respect to all matters other than those for which covenants are specifically provided in Sections 4.2.1.1 through 4.2.1.7.  Except as expressly provided herein, the United States also specifically reserves and this Agreement is without prejudice to: (i) any criminal liability; (ii) any liability arising under Title 26 of the United States Code (Internal Revenue Code) or state tax laws; (iii) any liability arising under federal or state securities laws; (iv) any action to enforce the terms of this Agreement; (v) any liability that the Anadarko Covenant Parties might have that does not arise from or through a liability of a Debtor; (vi) any liability of an Anadarko Covenant Party due to its status or acts or omissions since November 28, 2005 as a/an (A) owner, (B) operator, (C) discharger, (D) lessee, (E) permittee, (F) licensee, (G) person in charge, (H) holder of a right of use and easement, (I) arranger for disposal or treatment, (J) transporter, or (K) person who generates, handles, transports, treats, stores or disposes of solid or hazardous waste; (vii) any liability relating to the E&P Business or the stored power or battery business (including, but not limited to, as

owned or operated by U.S. Avestor LLC and Kerr-McGee Stored Power Company LLC[4]); and (viii) any liability that any Anadarko Covenant Party retained, received or assumed pursuant to the Assignment Agreement or Assignment, Assumption, and Indemnity Agreement.   For the avoidance of doubt, to the extent that a reserved liability of an Anadarko Covenant Party referred to in subparts (i)-(viii) would be a liability for which such Anadarko Covenant Party would be jointly and severally liable with others, including but not limited to one or more Debtors or Reorganized Debtors, under applicable law, nothing in this Agreement is intended to alter any such applicable principles of joint and several liability where otherwise provided by law.

11.3.    In the event that an Anadarko Covenant Party that is not a signatory hereto brings an action against the United States relating to the Covered Sites or any Trust Derivative Claim or a claim, if any, which is duplicative of such Trust Derivative Claim, whether or not held or controlled by the Litigation Trust or whether or not the Litigation Trust could have asserted such claims against any Anadarko Released Party, any covenant with respect to such Covered Site or the subject matter of such Trust Derivative Claim or other such claim which is duplicative provided by the United States to such Anadarko Covenant Party shall be null and void and have no force or effect.

11.4.    Anadarko reserves, and this Agreement is without prejudice to, all rights against the United States with respect to (a) all matters other than those set forth in Section 4.3, and (b) any action to enforce its rights under the terms of this Agreement.    In addition, Anadarko's covenant not to sue under Section 4.3 shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Section 11, but only to the extent that Anadarko's claims and causes of action arise from the same response action, response

---

[4] Provided, however, that as it relates to Kerr-McGee Stored Power Company LLC, Section 11.2 (vii) is applicable only to the extent that such liability, if any, relates to or arises from the stored power or battery business.

costs, damages or other relief that the United States is seeking pursuant to the applicable

reservations.

11.5.    Except as expressly set forth herein, the Parties reserve all claims, demands,

and causes of action, either judicial or administrative, past or future, in law or equity, which they

may have against all other Persons for any matter arising at or relating in any manner to the

Covered Sites, and/or claims addressed, released, or with respect to which covenants not to sue

have been provided herein.

11.6.    Nothing in this Agreement shall be deemed to limit the authority of the

United States or any State to take response or natural resource assessment action under Section 104

of CERCLA, 42 U.S.C. § 9604, or any other applicable federal or state environmental laws, or to

alter the applicable legal principles governing judicial review of any action taken by the United

States or a State pursuant to that authority.    Nothing in this Agreement shall be deemed to limit the

information-gathering authority of the United States or a State under Sections 104 and 122 of

CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable federal or state environmental laws,

or to excuse Anadarko from any disclosure or notification requirements imposed by CERCLA or

any other applicable federal or state environmental laws.

11.7.    For the avoidance of doubt, none of the covenants not to sue or releases

provided herein relate to or affect any liability that any Anadarko Released Party or Anadarko

Covenant Party may have in connection with In re: Oil Spill by the Oil Rig Deepwater Horizon in

the Gulf Of Mexico, on April 20, 2010, MDL No. 2179 (E.D.La.).

12.    Notice.    Any and all notices to be provided pursuant to this Agreement shall be

in writing and sent by electronic mail and also sent by overnight delivery service.    Such notices

shall be sent to the individuals listed below, or to such other individuals as the respective party

may designate in writing from time to time:

**For Anadarko:**

Anadarko Petroleum Corporation
Office of the General Counsel
1201 Lake Robbins Drive
The Woodlands, TX 77380

cc:    Jennifer Gadd Edwards
       Amanda M. McMillian
       David J. Owens
       Robert K. Reeves

**For the Litigation Trust and the Litigation Trustee:**

John C. Hueston, Litigation Trustee
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067

cc:    David J. Zott, P.C.
       Jeffrey J. Zeiger
       Kirkland & Ellis LLP
       300 North LaSalle
       Chicago, IL 60654

**For the United States:**

Robert Yalen, AUSA
U.S. Attorney's Office – SDNY
86 Chambers St., 3rd Floor
New York, NY 10028

        and

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611 Washington, DC   20044
Ref. DOJ File No. 90-11-3-09688

and

Craig Kaufman
Attorney-Advisor
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

13.    <u>Miscellaneous</u>.

13.1.    Except as expressly provided herein, this Agreement cannot be amended, altered, or modified except by a written agreement duly executed by each and every then-existing Party or its successors or assigns.

13.2.    The Bankruptcy Court and District Court shall retain jurisdiction to resolve (or recommend resolution to the extent that the Bankruptcy Court does not have final order authority) disputes in connection with, and to enforce, this Agreement.

13.3.    Except as otherwise provided, this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York excluding the laws applicable to conflicts or choice of law, except to the extent that federal law preempts.

13.4.    This Agreement has been negotiated by each of the Parties and/or their respective legal counsel, and legal or equitable principles that might require the construction of this Agreement or any of its provisions against the Party responsible for drafting this Agreement shall not apply in any construction or interpretation of this Agreement.

13.5.    This Agreement may be executed in counterpart originals, all of which, when so executed and taken together, shall be deemed an original and all of which shall constitute one and the same instrument, provided, however, that if an attorney, or purported authorized official for a party, is executing on behalf of a client or a Party, then such attorney, or purported authorized official, hereby represents to all parties that he or she has the power to bind such client or Party.

46

Each counterpart may be delivered by facsimile or email (as a pdf attachment), and a faxed or emailed signature shall have the same force and effect as an original signature.

13.6.    Nothing in this Agreement shall be construed as a consent by Anadarko to final order authority of the Bankruptcy Court or any admission or consent by any other Party that the Bankruptcy Court does not have final order authority.

13.7.    Except to the extent expressly set forth herein, including without limitation any covenant not to sue or release provided herein and any agreement not to seek reimbursement provided herein, nothing in this Agreement shall be construed to create any third-party beneficiary rights.   Notwithstanding the preceding sentence, to the extent that a covenant not to sue, release or agreement not to seek reimbursement provided herein to a Person that is not a Party, such covenant not to sue, release, or agreement not to seek reimbursement shall inure to the benefit of such Person and its successors in interest, heirs, executors and/or administrators.

13.8.    If, for any reason, any provision of this Agreement is determined, by a Final order of a court of competent jurisdiction entered subsequent to the Effective Date, to be invalid or unenforceable or violative of any applicable law or regulation, such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and this Agreement shall be construed, performed and enforced as if the reformed provision had been included in this Agreement at inception; provided, however, that the United States must approve any such modification to this Agreement.

13.9.    The captions and headings in this Agreement are for convenience of reference only and shall not define or limit the provisions hereof.

13.10.   No course of dealing or delay or omission on the part of any Party in exercising any right under this Agreement shall operate as a waiver thereof or otherwise be prejudicial thereto.

13.11.   Nothing herein is intended to modify the Environmental Settlement Agreement, Environmental and Tort Trust Agreements, the Litigation Trust Agreement, the Plan, or the Confirmation Order.

**SIGNATURES ARE ON THE FOLLOWING PAGES**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the date first

written above.

Anadarko Litigation Trust, by and through its Trustee and
authorized representative, John C. Hueston

Anadarko Petroleum Corporation

By: _____

Name: R. A. Walker
Title:   Chairman, President and Chief Executive Officer


Kerr-McGee Corporation

By: _____

Name: Robert K. Reeves
Title:   Executive Vice President


Anadarko US Offshore Corporation (f/k/a Kerr-McGee Oil & Gas Corporation)

By: _____

Name: Robert K. Reeves
Title:   Executive Vice President


Kerr-McGee Worldwide Corporation

By: _____

Name: Robert K. Reeves
Title:   Executive Vice President


KM Investment Corporation

By: _____

Name: Robert K. Reeves
Title:   Executive Vice President


Kerr-McGee Shared Services Company LLC

By: _____

Name: Robert K. Reeves
Title:   Executive Vice President

Kerr-McGee Stored Power Company LLC

By: _____
Name:   Robert K. Reeves
Title:   Executive Vice President

FOR THE UNITED STATES OF AMERICA:


PREET BHARARA
United States Attorney
for the Southern District of New York

By: _____

Name: Robert William Yalen
Title:   Assistant United States Attorney
         86 Chambers Street, Third Floor
         New York, NY 10007


By: _____

Name: Robert G. Dreher
Title:   Acting Assistant Attorney General
         Environment and Natural Resources Division
         U.S. Department of Justice


By: _____

Name: Alan S. Tenenbaum
Title:   National Bankruptcy Coordinator
         Katherine M. Kane
         Frederick S. Phillips
         Senior Attorneys

         Marcello Mollo
         Erica H. Pencak
         Trial Attorneys
         Environmental Enforcement Section
         Environment and Natural Resources Division
         U.S. Department of Justice
         P.O. Box 7611
         Ben Franklin Station
         Washington, DC 20044

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date: 4/3/14

CYNTHIA GILES
Assistant Administrator for Enforcement
   and Compliance Assurance
U.S. Environmental Protection Agency

Date: 4/2/14

CRAIG KAUFMAN
Attorney-Advisor
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Date: 4/2/14

LYNNE DAVIES
Attorney-Advisor
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

*Tronox and U.S. v. Anadarko Petroleum Corp. (In re: Tronox Inc.)*, Adv. Pro. 09-1198

## SCHEDULE 1

## ANADARKO AFFILIATES AND PREDECESSORS

| Entity | Jurisdiction | Parent |
|---|---|---|
| HS Partners, Inc. | California | Kerr-McGee Rocky Mountain Corporation |
| Kerr-McGee Energy Services Corporation | Delaware | Kerr-McGee Rocky Mountain Corporation |
| Kerr-McGee Foundation Corporation | Oklahoma | Kerr-McGee Shared Services Company LLC |
| Kerr-McGee Gathering LLC | Colorado | Kerr-McGee Rocky Mountain Corporation |
| Kerr-McGee L.P. Corporation | Delaware | Kerr-McGee Oil & Gas Corporation |
| Kerr-McGee Leasing Corporation | Delaware | Kerr-McGee Credit LLC |
| Kerr-McGee Natural Gas, Inc. | Delaware | Kerr-McGee Oil & Gas Corporation |
| Kerr-McGee Oil & Gas Onshore LLC | Delaware | Kerr-McGee L.P. Corporation |
| Kerr-McGee Oil & Gas Onshore LP | Delaware | Kerr-McGee Oil & Gas Onshore LLC |
| Kerr-McGee Oil & Gas (Shelf) LLC | Delaware | Kerr-McGee Oil & Gas Corporation |
| Kerr-McGee Onshore Holding LLC | Delaware | WHL, Inc. |
| Kerr-McGee Onshore LLC | Delaware | WHL, Inc. |
| Kerr-McGee Rocky Mountain Corporation | Delaware | Kerr-McGee Oil & Gas Corporation |
| Kerr-McGee Rocky Mountain LLC | Delaware | Kerr-McGee Oil & Gas Corporation |
| Kerr-McGee Stored Power Corporation | Nevada | Kerr-McGee Stored Power Company LLC |
| Kerr-McGee Worldwide Corporation | Delaware | Kerr-McGee Corporation |
| KM Transportation Leasing Corporation | Delaware | Kerr-McGee Leasing Corporation |
| KM-Insurance Company | Oklahoma | Kerr-McGee Shared Services Company LLC |
| KM Land, LLC | Oklahoma | Kerr-McGee Shared Services Company LLC |
| Oryx Crude Trading & Transportation Limited Partnership | Delaware | Kerr-McGee L.P. Corporation Kerr-McGee Oil & Gas Onshore LLC |
| Oryx Crude Trading & Transportation, Inc. | Delaware | Kerr-McGee Oil & Gas Corporation |
| Oryx Development -II, L.P. | Delaware | Kerr-McGee Oil & Gas Onshore LP |
| Oryx Development Limited Partnership | Delaware | Kerr-McGee Oil & Gas Onshore LP |
| Oryx Energy Payroll Company | Delaware | Kerr-McGee Oil & Gas Corporation |
| Oryx Gas Marketing Company | Delaware | Kerr-McGee Oil & Gas Corporation |
| Oryx Gas Marketing Limited Partnership | Delaware | Kerr-McGee L.P. Corporation Kerr-McGee Oil & Gas Onshore LLC |
| Oryx Pipeline Company | Delaware | Kerr-McGee Oil & Gas Corporation |
| Oryx Pipeline Limited Partnership | Delaware | Kerr-McGee L.P. Corporation Kerr-McGee Oil & Gas Onshore LLC |
| Oryx Services Company | Delaware | Kerr-McGee Oil & Gas Corporation |
| P&P Land Co. | Oklahoma | Kerr-McGee Chemical Worldwide, LLC |

| | | |
|---|---|---|
| Resource Gathering Systems, Inc. | California | Kerr-McGee Rocky Mountain Corporation |
| Sendero Gas Pipeline, Inc. | Texas | Kerr-McGee Oil and Gas Onshore LP |
| Southtech Exploration, L.L.C. | Delaware | Kerr-McGee Rocky Mountain Corporation (50%) |
| Sun Offshore Gathering Company | Delaware | Kerr-McGee Oil & Gas Corporation |
| Sun Offshore Gathering Limited Partnership | Delaware | Kerr-McGee L.P. Corporation Kerr-McGee Oil & Gas Onshore LLC |
| Sun Pennsylvania Limited Partnership | Delaware | Kerr-McGee L.P. Corporation Kerr-McGee Oil & Gas Corporation |
| US Avestor, LLC | Delaware | Kerr-McGee Stored Power Company LLC (50%) |
| Walter & Westport International LLC | Colorado | Kerr-McGee Oil and Gas Onshore LP |
| Westport Argentina LLC | Colorado | Kerr-McGee Oil and Gas Onshore LP |
| Westport Canada LLC | Delaware | Kerr-McGee Oil and Gas Onshore LP |
| Westport Field Services, L.L.C. | Delaware | Kerr-McGee (Nevada) LLC |
| Westport Overriding Royalty LLC | Colorado | Kerr-McGee Oil and Gas Onshore LP |
| White Shoal Pipeline Corporation | Delaware | Kerr-McGee Oil & Gas Corporation Torch Energy Marketing, Inc. Case-Pomeroy Oil Corporation |
| Whitecap Pipeline Company, L.L.C. | Delaware | Kerr-McGee Oil & Gas Corporation |
| WHL, Inc. | Delaware | Kerr-McGee Oil & Gas Corporation |

### SCHEDULE 2-A

### U.S. COVERED SITES-DOD

### NON-NRD

| Colloquial Site Name | Full Site Name | Site Location |
|---|---|---|
| Fireworks Site | National Fireworks Site, Hanover, MA | MA |
| Henderson Site | Tronox LLC Henderson Facility | NV |
| MMR Site | Massachusetts Military Reservation, Cape Cod, MA | MA |

**SCHEDULE 2-B**

**U.S. COVERED SITES- DOI and NOAA**

**NRD**

| COLLOQUIAL SITE NAME | FULL SITE NAME | SITE LOCATION |
|---|---|---|
| Ambrosia Lake | Rio Algom Mines and Quivira Mill Site, McKinley County, NM<br>Ambrosia Lake Facility, Grants, NM | NM |
| Beaumont | International Creosoting State Superfund Site, Beaumont, TX | TX |
| Churchrock | Northeast Churchrock Quivira Mines (#1 and #1E), McKinley County, NM | NM |
| Fireworks Site | National Fireworks Site, Hanover, MA | MA |
| Hattiesburg | Former Gulf States Creosoting Site, Hattiesburg, MS | MS |
| Jacksonville Ag Chem | Kerr-McGee Chemical LLC, Jacksonville, FL | FL |
| Jericho | Stoller Chemical Site, Jericho, SC | SC |
| Kress Creek | Kerr-McGee Kress Creek/West Branch DuPage River Site, DuPage County, IL | IL |
| Manville | Federal Creosote Superfund Site, Manville, NJ | NJ |
| Milwaukee | Moss-American Site, Milwaukee, WI | WI |
| Navassa/Wilmington | Kerr-McGee Chem Corp Site, Navassa, NC | NC |
| North Haven | Schiavone Site, North Haven, CT<br>Universal Drive Site, North Haven, CT | CT |
| Rome | Success Drive Parcels/MGS Site, Rome, Oneida County, NY | NY |
| Sandstone | Kettle River Company – Creosote Plant Site, Sandstone, Pine County, MN | MN |
| Savannah | Kerr-McGee Pigments (Savannah) Inc., Savannah, GA | GA |
| Searles Lake | Searles Valley Minerals/Searles Lake, San Bernardino County, CA<br>Boiler Ash Site or Argus Boiler Ash Pile<br>American Potash & Chemical Corporation, Trona, CA | CA |
| Texarkana | Tronox, Texarkana Facility and Associated Properties Located at 2513 Buchanan Road, Texarkana, TX<br>Kerr-McGee Chemical LLC, Forest Products Division, Texarkana, TX<br>Texarkana Wood Preserving Facility, Texarkana, TX | TX |

**SCHEDULE 2-B (CONT'D)**

**U.S. COVERED SITES- DOI and NOAA**

**NON-NRD**

| SHORT SITE NAME | FULL SITE NAME | SITE LOCATION |
|---|---|---|
| Bristol Mine | Bristol Mine, Pioche, NV | NV |
| Caselton Mine | Caselton Tailings Site, Lincoln County, NV<br>Kerr-McGee Caselton Site, Pioche, NV | NV |
| Spencer Mine | Spencer Mine, 13N 9W, McKinley County, NM | NM |

9