*COUNSEL OF RECORD LISTED ON SIGNATURE BLOCK*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| TRONOX INCORPORATED, *et al.*, | ) | Case No. 09-10156 (ALG) |
| | ) | Jointly Administered |
| Reorganized Debtors. | ) | |
| | ) | |
| | ) | |
| TRONOX INCORPORATED, | ) | |
| TRONOX WORLDWIDE LLC | ) | |
| f/k/a Kerr-McGee Chemical Worldwide LLC, | ) | |
| and TRONOX LLC f/k/a Kerr-McGee | ) | |
| Chemical LLC,[1] | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 09-01198 (ALG) |
| | ) | |
| KERR-McGEE CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

[1]    Pursuant to the Anadarko Litigation Trust Agreement, which was approved by the Court on February 14, 2011 (Dkt. No. 2812), the Anadarko Litigation Trust was appointed as the representative of each of the Plaintiff Debtors' estates, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, with the power and right to prosecute this matter. By the same agreement and Order, the Anadarko Litigation Trust was "deemed substituted" for the Debtor Plaintiffs in this matter "as the party in such litigation."

|  | ) |
| --- | --- |
| THE UNITED STATES OF AMERICA, | ) |
|  | ) |
| Plaintiff-Intervenor, | ) |
|  | ) |
| v. | ) |
|  | ) |
| TRONOX, INC., | ) |
| TRONOX WORLDWIDE LLC, | ) |
| TRONOX LLC, | ) |
| KERR-MCGEE CORPORATION, and | ) |
| ANADARKO PETROLEUM | ) |
| CORPORATION, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## JOINT MOTION OF PLAINTIFF ANADARKO LITIGATION TRUST AND DEFENDANTS SEEKING A REPORT AND RECOMMENDATION RECOMMENDING APPROVAL OF THE SETTLEMENT AGREEMENT RESOLVING THE ADVERSARY PROCEEDING AND ISSUANCE OF AN INJUNCTION ENJOINING CERTAIN PERSONS FROM ASSERTING CERTAIN CLAIMS

The Anadarko Litigation Trust (the "***Litigation Trust***"), as successor to Debtors Tronox

Incorporated, Tronox Worldwide LLC, and Tronox LLC in the above-captioned adversary

proceeding,[2] and Anadarko Petroleum Corporation, Kerr-McGee Corporation, Anadarko US

Offshore Corporation (f/k/a Kerr-McGee Oil & Gas Corporation), Kerr-McGee Worldwide

Corporation, KM Investment Corporation (improperly named as Kerr-McGee Investment

Corporation), Kerr-McGee Credit LLC,[3] Kerr-McGee Shared Services Corporation, and Kerr-

---

[2]     Pursuant to the Anadarko Litigation Trust Agreement, which was approved by the Court on February 14, 2011 (Dkt. No. 2812), the Anadarko Litigation Trust was appointed as the representative of each of the Plaintiff Debtors' estates, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, with the power and right to prosecute this matter. By the same agreement and Order, the Anadarko Litigation Trust was "deemed substituted" for the Debtor Plaintiffs in this matter "as the party in such litigation."

[3]     Kerr-McGee Credit LLC was dissolved in 2007. At the time of dissolution, Kerr-McGee Worldwide Corporate was its sole member.

McGee Stored Power Company LLC (collectively, "*Anadarko*," and each individually an

"*Anadarko Entity*"),[4] by their undersigned counsel, hereby move the Court to issue a report and

recommendation pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure that, *inter*

*alia*, makes certain findings as set forth in paragraph I of the proposed District Court approval

order (the "*Approval Order*") (attached hereto as *Exhibit B*) and recommends entry of the

Approval Order by the District Court (in a form substantively identical to *Exhibit B*), which (I)

approves the Settlement Agreement (the "*Settlement Agreement*"),[5] dated April 3, 2014, by and

among (1) the Litigation Trust, (2) the United States of America (the "*United States*"),[6] in its

capacity as plaintiff-intervenor in the Adversary Proceeding pursuant to its Complaint-in-

Intervention and acting for and on behalf of:

- the United States Environmental Protection Agency ("*U.S. EPA*"),

- the United States Department of Agriculture, acting through the United States Forest Service ("*Forest Service*"),

- the United States Department of the Interior ("*DOI*"), acting through the Fish and Wildlife Service and the Bureau of Land Management,

- the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration ("*NOAA*"),

- the United States Department of Defense, including the United States Department of the Army, United States Army Corps of Engineers, United States Department of the Navy, and United States Department of the Air Force ("*DOD*"), and

- the Nuclear Regulatory Commission ("*NRC*");

---

[4]    On May 8, 2012, the Court held that Anadarko Petroleum Corporation was entitled to summary judgment dismissing it from the Adversary Proceeding, but as of the date hereof has not issued a dismissal order.

[5]    A copy of the Settlement Agreement is attached to the Motion as *Exhibit A*.  All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.  The Motion summarizes the terms of the Settlement Agreement.  In the event of any conflict between this summary and the Settlement Agreement, the Settlement Agreement shall control.

[6]    Although the United States is not a party to this Motion, it is a signatory to the Settlement Agreement.

and (3) Anadarko, and (II) *issues an injunction pursuant to, inter alia, 28 U.S.C. §§ 1367 & 1651, § 105(a) of the Bankruptcy Code and Bankruptcy Rules 7001 and 7065, enjoining certain persons from asserting certain claims against any Anadarko Released Party as described more fully below and in the Settlement Agreement*.

In support of this motion, the Litigation Trust and Anadarko respectfully state:

## PRELIMINARY STATEMENT

1.      Following years of litigation, the Litigation Trust, the United States, and Anadarko have reached a settlement that resolves the Adversary Proceeding and provides cash funding to the direct and indirect beneficiaries of the Litigation Trust on account of their Bankruptcy Environmental Claims and Bankruptcy Tort Claims.  The Settlement Agreement provides for the Litigation Trust to receive Five Billion One Hundred Fifty Million Dollars ($5,150,000,000.00) plus interest in cash, the net proceeds of which will be distributed to the Litigation Trust Beneficiaries in accordance with the Distribution Scheme and related provisions as set out in the Litigation Trust Agreement, in order to resolve the Adversary Proceeding on the terms stated in the Settlement Agreement and as described below.  The Settlement Agreement removes the inherent uncertainty and litigation risk present in the Adversary Proceeding and any potential appeals for all Parties, and, to the extent provided by the Distribution Scheme, will enable the investigation, remediation, cleanup, and recovery of natural resource damages and other compensation with respect to certain environmental sites, and provide for payment on account of Bankruptcy Tort Claims.

2.      The United States has lodged the Settlement Agreement with the Bankruptcy Court and promptly will publish a notice for public comment thereon in the Federal Register. After the close of the public comment period, and subject to its rights to terminate the Settlement Agreement based on public comments received, the United States promptly will file a separate

4

motion with this Court seeking findings in the Report and Recommendation sought by this Motion recommending approval of the Settlement Agreement under applicable environmental law (the "***Environmental Motion***").

## BACKGROUND

3.      On January 12, 2009, Tronox Incorporated and certain of its affiliates (collectively, the "***Debtors***") commenced chapter 11 cases (the "***Chapter 11 Cases***") in the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***"). On November 30, 2010, the Bankruptcy Court confirmed the Debtors' First Amended Joint Plan of Reorganization (the "***Plan***"). On February 14, 2011, the Plan became effective.

4.      In the Chapter 11 Cases, the United States, other governmental entities, and other Persons filed Proofs of Claim against the Debtors on account of, among other things, alleged environmental claims, obligations, and/or liabilities at certain of the Covered Sites (as to such Proofs of Claims filed by the United States and other governmental entities, the "***Bankruptcy Environmental Claims***," and as to such Proofs of Claim filed by other Persons, the "***Bankruptcy Indirect Environmental Claims***"). Various tort claimants filed Proofs of Claim against the Debtors on account of alleged tort liabilities, including for personal injury and property damage (the "***Bankruptcy Tort Claims***" and, together with the Bankruptcy Environmental Claims and the Bankruptcy Indirect Environmental Claims, the "***Bankruptcy Claims***"). The Bankruptcy Claims were (or will be) resolved or addressed pursuant to the Plan and related agreements, including the Environmental Settlement Agreement, the Cimarron Environmental Response Trust Agreement, the Multistate Environmental Response Trust Agreement, the Nevada Environmental Response Trust Agreement, the Savannah Environmental Response Trust Agreement, the West Chicago Environmental Response Trust Agreement, and the Tort Claims Trust Agreement (collectively, but excluding the Plan and the Environmental Settlement

Agreement, the "*Environmental and Tort Trust Agreements*"), and the Litigation Trust

Agreement, and other prior proceedings of the Bankruptcy Court.

5.      There are two complaints against Anadarko currently being jointly litigated in the

Adversary Proceeding:

> (i)      the Second Amended Adversary Complaint, originally commenced during the Chapter 11 Cases by certain of the Debtors but assigned and transferred to, and currently prosecuted by, the Litigation Trust for the benefit of its beneficiaries (including the United States) pursuant to the Plan, the Litigation Trust Agreement, and the Environmental Settlement Agreement, and which, at the time of trial, asserted claims including: actual fraudulent transfer under Bankruptcy Code §§ 544(b) and 550(a); constructive fraudulent transfer under Bankruptcy Code §§ 544(b) and 550(a); constructive fraudulent transfer under Bankruptcy Code §§ 548 and 550(a); breach of fiduciary duty; equitable subordination; and equitable disallowance; and which originally asserted claims for civil conspiracy, aiding and abetting fraudulent conveyance, unjust enrichment, disallowance of claims pursuant to § 502(d) of the Bankruptcy Code, and disallowance of contingent indemnity claims pursuant to § 502(e)(1)(B) of the Bankruptcy Code; and

> (ii)     the Complaint-in-Intervention filed by the United States, asserting claims under the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3301-3308 (the "*FDCPA*").

6.      The Plan, Litigation Trust Agreement, and Environmental Settlement Agreement

assigned, as provided in the Confirmation Order (including, but not limited to, paragraphs 126,

127 and 131) and the Litigation Trust Agreement (including, but not limited to, sections 2(a)(iii),

2(a)(viii), 2(b) and 4(b)(iv)), all of the Debtors' respective rights and interests in the Adversary

Proceeding (but excluding the Complaint-in-Intervention) and any claim or cause of action of the

Debtors related thereto, whether or not asserted in the Adversary Proceeding, to the Litigation

Trust for the benefit of the entities listed in Section 1(d) of the Litigation Trust Agreement,

which include the Tort Claims Trust (the "*Tort Claims Trust*"), the Cimarron Environmental

Response Trust (the "*Cimarron Trust*"), the Multistate Environmental Response Trust (the

"*Multistate Trust*"), the Nevada Environmental Response Trust (the "*Nevada Trust*"), the

Savannah Environmental Response Trust (the "*Savannah Trust*") (the Tort Claims Trust,

6

Cimarron Trust, Multistate Trust, Nevada Trust and Savannah Trust, along with the West Chicago Environmental Response Trust (the "*West Chicago Trust*"), are hereafter, collectively, the "*Environmental and Tort Trusts*" and each individually an "*Environmental and Tort Trust*"), and certain governmental entities that had asserted Bankruptcy Environmental Claims against the Debtors (collectively, "*Litigation Trust Beneficiaries*" and each individually a "*Litigation Trust Beneficiary*").    Pursuant to the Plan, Litigation Trust Agreement, Environmental Settlement Agreement, and Environmental and Tort Trust Agreements (other than the West Chicago Environmental Response Trust Agreement), the Litigation Trust Beneficiaries and beneficiaries of the Environmental and Tort Trusts (together with the Litigation Trust Beneficiaries, the "*Beneficiaries*" and each individually a "*Beneficiary*") are entitled to have paid, on account of their Bankruptcy Environmental Claims and Bankruptcy Tort Claims, specified allocations (the "*Distribution Scheme*") of a share of the net proceeds of any recovery from the Adversary Proceeding, the principal allocation of which involves payment of approximately 88% of the net proceeds of any recovery on account of Bankruptcy Environmental Claims and payment of approximately 12% of the net proceeds of any recovery on account of Bankruptcy Tort Claims, with subsidiary allocations on account of the Bankruptcy Environmental Claims and Bankruptcy Tort Claims governed by the Environmental Settlement Agreement, Litigation Trust Agreement, and the Environmental and Tort Trust Agreements (other than the West Chicago Environmental Response Trust Agreement).

7.    The Bankruptcy Claims and the Adversary Proceeding relate to, among other things, tort claims and environmental claims, causes of action and obligations asserted against the Debtors in respect of the Covered Sites.  As and to the extent described more fully in the Environmental Settlement Agreement, the Distribution Scheme provides that approximately 88%

7

of the net proceeds generated from the Adversary Proceeding will be distributed to trusts created to conduct Environmental Actions at one or more Covered Sites and to federal, state, or tribal governments in satisfaction of claims for costs previously expended or to be expended at Covered Sites or for Environmental Actions expected to be performed at Covered Sites.

8.    The Parties agree to settle, compromise and resolve the Adversary Proceeding, including the Trust Derivative Claims as if such Trust Derivative Claims were already asserted and now pending against the Anadarko Released Parties, and to address other matters, as and to the extent provided in the Settlement Agreement.    The Settlement Agreement represents a compromise and settlement of disputed claims, asserted and unasserted.    In the absence of this settlement, Anadarko would seek further review and/or appeal in connection with the Adversary Proceeding.    The Settlement Agreement will settle, compromise, resolve and close the Adversary Proceeding and settle, compromise, resolve, and extinguish the Trust Derivative Claims, any claims that were asserted or that could have been asserted in the Second Amended Adversary Complaint, the claims asserted in the Complaint-in-Intervention, and the claims that could have been asserted in the Complaint-in-Intervention relating to the subject matter of the Adversary Proceeding, together and on a global basis to the extent provided in the Settlement Agreement.

## ADVERSARY PROCEEDING

9.    On May 12, 2009, certain of the Debtors commenced the Adversary Proceeding against certain of the Anadarko Entities.  [Adv. Dkt. No. 1].  On May 21, 2009, the United States filed its Motion to Intervene, seeking to assert claims under the FDCPA.  [Adv. Dkt. No. 5].  The Court granted the United States' motion and, on June 17, 2009, the United States filed its Complaint-in-Intervention against certain of the Anadarko Entities.  [Adv. Dkt. No. 25].

10.    On July 31, 2009, Anadarko filed a motion to dismiss the Debtors' Adversary Complaint.  [Adv. Dkt. No. 45].  In an opinion issued March 31, 2010, and an order issued on

April 30, 2010, the Court granted Anadarko's motion to dismiss with respect to Counts IV, V, VI, VII, VIII, IX, X, XI, and the Debtors' request for punitive damages. [Adv. Dkt. Nos. 117 & 125]. Count VII was dismissed with prejudice, and Counts VIII through XI were dismissed without prejudice to renewal in connection with the claims allowance process. The Court denied the Motion with respect to Counts I, II, and III, and dismissed Counts IV (breach of fiduciary duty), V (aiding and abetting breach of fiduciary duty), and VI (civil conspiracy) without prejudice and with leave to replead.

11.    On July 31, 2009, Anadarko filed its Motion to Dismiss the Government's Complaint-in-Intervention asserting, *inter alia*, that the United States lacked standing to assert fraudulent transfer claims that are property of the Debtors' estate, and the United States' fraudulent transfer claims were barred by the statute of limitations. [Adv. Dkt. No. 47]. On October 20, 2009, the Court issued an Order Staying Defendants' Motion to Dismiss the Government's Complaint-in-Intervention. [Adv. Dkt. No. 72].

12.    On February 7, 2011, the Debtors filed their Second Amended Adversary Complaint, adding certain Kerr-McGee subsidiaries as defendants. [Adv. Dkt. No. 223].

13.    On May 27, 2011, the Court entered its Order Denying in Part and Granting In Part Defendants' Motion to Dismiss Counts IV, V, and VI of the Second Amended Adversary Complaint, dismissing Counts V and VI with prejudice. [Adv. Dkt. No. 233].

14.    On August 31, 2011, Plaintiff filed its Motion for Partial Summary Judgment Regarding Plaintiff's Recovery Under Section 550(a) of the Bankruptcy Code (the "***550 Motion***"). [Adv. Dkt. No. 257]. On September 30, 2011, Anadarko filed its Response to the 550 Motion and a Cross-Motion for Partial Summary Judgment Limiting Plaintiffs' Potential

Damage Award Pursuant to Sections 544, 548 and 550(a) of the Bankruptcy Code.  [Adv. Dkt. No. 268].

15.    On January 20, 2012, the Bankruptcy Court denied Anadarko's cross-motion for partial summary judgment and granted the 550 Motion in part.  [Adv. Dkt. No. 295].

16.    On February 24, 2012, Anadarko filed its Motion for Partial Summary Judgment Seeking Dismissal of (I) Constructive Fraudulent Transfer Claims Involving Transfers Made By Tronox LLC; (II) Anadarko Petroleum Corporation as a Subsequent Transferee With Respect To All Alleged Fraudulent Transfers; and (III) All Actual and Constructive Fraudulent Transfer Claims Protected By Section 546(e) of the Bankruptcy Code (the "***Motion for Partial Summary Judgment***").  [Adv. Dkt. No. 307].

17.    On May 8, 2012, the Bankruptcy Court held that Anadarko Petroleum Corporation was entitled to summary judgment dismissing it from the Adversary Proceeding. The other Anadarko Entities (the "***Anadarko Trial Defendants***") remained subject to the claims in the Adversary Proceeding.  An order has not yet been entered reflecting the dismissal of Anadarko Petroleum Corporation with prejudice.

18.    In the May 4, 2012 Joint Pretrial Order, Plaintiffs stipulated to dismissal of all constructive fraudulent transfer claims involving transfers made by Tronox LLC and therefore the Court was not required to rule on that portion of Anadarko's Motion for Partial Summary Judgment.  [Adv. Dkt. No. 383].

19.    On March 2, 2012, Anadarko filed its Notification of Lack of Consent to Final Adjudication of Fraudulent Transfer Claims and Notice of Motion for Leave Regarding Fiduciary Duty Claim stating that Anadarko did not consent to final order authority of the Bankruptcy Court to enter a final order in the Adversary Proceeding.  [Adv. Dkt. No. 308].

20.    On March 7, 2012, Anadarko filed its Motion for an Order Confirming that Defendants Have Preserved the Defense Codified by Section 546(e) of the Bankruptcy Code or, in the Alternative, for Leave to Amend Their Answer to the Second Amended Adversary Complaint to Include Such Defense.  [Adv. Dkt. No. 310].

21.    From May 15, 2012 to September 13, 2012, the Court held trial with respect to claims against the Anadarko Trial Defendants.  On December 12, 2013, the Court issued its Memorandum Opinion, After Trial (the "***Decision***"), finding the Anadarko Trial Defendants liable under the Second Amended Adversary Complaint for actual and constructive fraudulent conveyances, but not liable for breach of fiduciary duty.  The Court requested and has received further briefing on issues respecting the amount of damages.  [Adv. Dkt. No. 622].  The Decision is not a final judgment and the Bankruptcy Court has not issued a final judgment.

22.    On January 13, 2014, Kerr-McGee Corporation, pursuant to the Decision, filed a claim under section 502(h) of the Bankruptcy Code on behalf of itself and the other Anadarko Trial Defendants.  [Adv. Dkt. No. 623].  The Litigation Trust filed objections to this 502(h) claim on February 12, 2014.  [Adv. Dkt. No. 624].  Anadarko also previously filed Proofs of Claim against the Debtors on August 11, 2009, which it subsequently amended on September 11, 2009 and September 11, 2010.

## JURISDICTION AND CHAPTER 11 CASES

23.    This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334.  The Parties to the Settlement Agreement have agreed that this Court should treat this motion as a related matter for purposes of 28 U.S.C. § 157.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is Bankruptcy Rule 9019.

24.    This Court has the power to issue a report and recommendation approving the Settlement Agreement.[7]  Amended Standing Order of Reference, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

25.    This Court has expressly retained exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, including jurisdiction to (i) "adjudicate, decide or resolve any motions, adversary proceedings (including the Anadarko Litigation), contested or litigated matters, Causes of Action and any other matters, and grant or deny any applications involving a Tronox Debtor that may be pending on the Effective Date," and (ii) "hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan."  Plan, Article XI [Bankr. Dkt. No. 2567]; *see also* Findings of Fact, Conclusions of Law and Order Confirming the First Amended Joint Plan of Reorganization [Bankr. Dkt. No. 2567] (the "***Confirmation Order***") at ¶ 159.  The Confirmation Order likewise provides this Court with exclusive jurisdiction to "issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan." Confirmation Order at ¶ 159.  The Confirmation Order further contemplates that the parties to the Anadarko Litigation may seek approval of any settlement pursuant to Bankruptcy Rule 9019(a) before this Court.  *Id.* at ¶ 131.  Hence, this Court's jurisdiction extends to this motion and encompasses the issuance of a Report and Recommendation recommending approval of the terms of the Settlement Agreement and the issuance of an injunction by the District Court as set forth herein.

---

[7]    By submitting this motion, Defendants do not abandon, forfeit, or otherwise waive any argument that this Court lacks authority to enter judgment on any claim against them.

26.     On June 13, 2013, the Court issued its Final Decree Pursuant To Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022 Closing Chapter 11 Cases [Bankr. Dkt. No. 2979], which closed all of the Chapter 11 Cases other than that of Tronox Incorporated, and provides that "the Court shall retain jurisdiction over any matter pending in Tronox's chapter 11 cases, including the Anadarko Litigation.  The parties in the Anadarko Litigation may raise any issues related to the Anadarko Litigation in the pending adversary proceeding (Adv. Proc. No. 09-01198 (ALG)) and in connection with the case of Tronox Incorporated without the need to reopen any closed cases."

## THE SETTLEMENT AGREEMENT AND PERMANENT INJUNCTION

27.     The Litigation Trust, along with the United States, vigorously pursued the claims asserted in the Adversary Proceeding.  After mediation and extensive good-faith efforts pre-trial, during trial, and post-trial to resolve these claims, the settlement embodied by the Settlement Agreement was reached.  The Settlement Agreement, which is attached in its entirety as *Exhibit A* hereto, includes the following provisions:[8]

(a)     The United States, in its discretion, may terminate the Settlement Agreement if the public comments regarding the Settlement Agreement, following notice in the Federal Register, disclose facts or considerations that indicate that the Settlement Agreement is inappropriate, improper, or inadequate.

(b)     The Effective Date of the Settlement Agreement shall not occur until after the following have occurred:

1.      the Bankruptcy Court shall issue a Report and Recommendation recommending the approval of the Settlement Agreement and the issuance of an injunction enjoining certain persons from asserting Trust Derivative Claims and claims that are duplicative of Trust Derivative Claims;

2.      the U.S. District Court for the Southern District of New York shall issue an order approving the Report and Recommendation and enjoining  the

---

[8]    To the extent there is any conflict between the terms of the Settlement Agreement and the summary of its terms in this motion, the Settlement Agreement controls.

Trust Derivative Claims and claims that are duplicative of Trust Derivative Claims as described herein and in the Settlement Agreement; and

3.  the District Court's Approval Order shall become Final. The Effective Date of the Settlement Agreement is the date on which such Approval Order becomes Final.

(c)  No later than two (2) Business Days after the Effective Date (the "***Payment Date***"), Anadarko shall cause Five Billion One Hundred Fifty Million Dollars ($5,150,000,000.00) in cash plus interest thereon from the Lodging Date as provided in Sections 3.1 and 3.3 (collectively, the "***Settlement Proceeds***") to be timely paid to the Litigation Trust by wire transfer(s) of immediately available funds. The Litigation Trust shall have the sole responsibility and obligation to cause the Settlement Proceeds to be allocated and distributed to the Litigation Trust Beneficiaries consistent with the Litigation Trust Agreement.

(d)  Within five (5) Business Days following receipt of the Settlement Proceeds, the Litigation Trustee and the United States shall commence taking all steps necessary to cause the Adversary Proceeding to be dismissed with prejudice, including by seeking entry of an order dismissing the adversary proceeding with prejudice substantially in the form attached as *Exhibit C* hereto.

(e)  As set forth more completely in Section 4.1.1, upon the payment of the Settlement Proceeds, the Litigation Trust fully, finally, and forever irrevocably releases any Anadarko Released Party from and against any and all claims that are held and/or controlled by the Litigation Trust and then existing or thereafter arising out of, accruing from or relating to (i) the Chapter 11 Cases (including the Bankruptcy Claims), (ii) the Adversary Proceeding, (iii) the Covered Sites, or (iv) the Trust Derivative Claims.

(f)  As set forth more completely in Section 4.1.2.1, upon the payment of the Settlement Proceeds, Anadarko fully, finally, and forever irrevocably releases the Litigation Trustee, the Litigation Trust, and each of its past, present and future employees, agents, managers, attorneys and other representatives, including but not limited to the current and future Litigation Trustee and current and future members of the Trust Advisory Board, from and against any and all claims then existing or thereafter arising out of, accruing from or relating to (i) the Chapter 11 Cases (including the Bankruptcy Claims), (ii) the Adversary Proceeding, (iii) the Covered Sites, or (iv) the Trust Derivative Claims or claims, if any, which are duplicative of Trust Derivative Claims, whether or not held or controlled by the Litigation Trust, or whether or not the Litigation Trust could have asserted such claims against any Anadarko Released Party.

(g)  As set forth more completely in Sections 4.2.1.1 through 4.2.1.7 of the Settlement Agreement, upon the payment of the Settlement Proceeds, the United States covenants not to sue the Anadarko Covenant Parties or, in the case of 4.2.1.6,

14

Anadarko for certain common law claims that are Trust Derivative Claims and certain statutory claims with respect to Covered Sites.

(h)     As set forth more completely in Section 4.3.1, upon the payment of the Settlement Proceeds, Anadarko covenants not to sue the United States, any Beneficiary, or the Environmental and Tort Trusts for any offset or reduction of the recovery in the Adversary Proceeding, including but not limited to any claim pursuant to § 502(h) of the Bankruptcy Code, and covenants not to sue and waives any claim for reimbursement of the Settlement Proceeds against the United States, any Beneficiary, or the Environmental and Tort Trusts.

(i)     As set forth more completely in Section 4.3.2, upon the payment of the Settlement Proceeds, Anadarko covenants not to sue or assert any civil claims or causes of action against the United States, any Beneficiary, or the Environmental and Tort Trusts with respect to the Covered Sites.

(j)     As set forth more completely in Section 4.4, the Parties agree that, upon the Approval Order becoming Final, the Settlement Agreement will constitute a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, and that Anadarko is entitled, upon payment of the Settlement Proceeds, to protection from contribution actions or claims as provided by Section 113(f)(2), of CERCLA, 42 U.S.C. §§ 9613(f)(2), or as otherwise provided by law for matters addressed in the Settlement Agreement.

(k)     As set forth more completely in Section 4.5, to the extent that any of the Debtors or the Debtor's estates transferred any contribution rights to the Litigation Trust pursuant to the Plan and the Environmental and Tort Trust Agreements, the Litigation Trust shall not pursue such contribution rights against third-parties where such third-party could reasonably be expected to assert a claim against the Anadarko Covenant Parties or Anadarko Released Parties in connection therewith; provided, however, that if the Litigation Trust does pursue any such claim against a third-party, and such third-party asserts a claim against an Anadarko Covenant Party or Anadarko Released Party, the Litigation Trust shall immediately transfer and assign such contribution rights to the Anadarko Party against whom the claim is being asserted.

(l)     Subject to certain limitations set forth in Section 6.2, the Litigation Trust agrees to cooperate with and support Anadarko's efforts to enforce the Approval Order.

(m)    The Bankruptcy Court and District Court shall retain jurisdiction to resolve (or recommend resolution to the extent that the Bankruptcy Court does not have final order authority) disputes in connection with, and to enforce, the Settlement Agreement.

(n)     In the event that the Settlement Agreement shall be determined, by a Final order of a court of competent jurisdiction, to be null and void, the Settlement

Agreement shall be of no force whatsoever except with respect to the provisions contained in Sections 8 and 9.

28.    As part of the Settlement Agreement, the Parties are seeking a Report and Recommendation recommending issuance of a permanent injunction as follows: "Pursuant to 28 U.S.C. §§ 1367 & 1651, § 105(a) of the Bankruptcy Code and Bankruptcy Rules 7001 and 7065, (i) any Debtor(s), (ii) any creditor of any Debtor who filed or could have filed a claim in the Chapter 11 Cases, (iii) any other Person whose claim (A) in any way arises from or is related to the Adversary Proceeding, (B) is a Trust Derivative Claim, or (C) is duplicative of a Trust Derivative Claim, and (iv) any Person acting or purporting to act as an attorney for any of the preceding is hereby permanently enjoined from asserting against any Anadarko Released Party (I) any Trust Derivative Claims or (II) any claims that are duplicative of Trust Derivative Claims, whether or not held or controlled by the Litigation Trust, or whether or not the Litigation Trust could have asserted such claims against any Anadarko Released Party.  The injunction herein shall not apply to or bar the following: (i) any criminal liability; (ii) any liability arising under Title 26 of the United States Code (Internal Revenue Code) or state tax laws; (iii) any liability arising under federal or state securities laws; (iv) any action to enforce a covenant not to sue, release, or agreement not to seek reimbursement contained in the Settlement Agreement; (v) any liability that an Anadarko Released Party might have that does not arise from or through a liability of a Debtor; (vi) any liability of an Anadarko Released Party due to its status or acts or omissions since November 28, 2005 as a/an (A) owner, (B) operator, (C) discharger, (D) lessee, (E) permittee, (F) licensee, (G) person in charge, (H) holder of a right of use and easement, (I) arranger for disposal or treatment, (J) transporter, or (K) person who generates, handles, transports, treats, stores or disposes of solid or hazardous waste; (vii) any liability relating to the E&P Business or the stored power or battery business (including, but not limited to, as owned or

operated by U.S. Avestor LLC and Kerr-McGee Stored Power Company LLC[9] ); and (viii) any liability that any Anadarko Released Party retained, received or assumed pursuant to the Assignment Agreement or Assignment, Assumption, and Indemnity Agreement.   For the avoidance of doubt, to the extent that a liability of an Anadarko Released Party excluded from the injunction herein by the preceding sentence would be a liability for which such Anadarko Released Party would be jointly and severally liable with others, including but not limited to one or more Debtors or Reorganized Debtors, under applicable law, nothing in this injunction is intended to alter any such applicable principles of joint and several liability where otherwise provided by law.   The injunction herein does not apply to the Litigation Trust and the United States, which are providing releases and covenants not to sue in the Settlement Agreement."

29.     In an effort to provide broad notice of the Settlement Agreement and requested injunction, Anadarko has agreed to serve this motion on the Litigation Trust Beneficiaries and all other Persons currently or previously appearing on the most recent version of the Bankruptcy Court's Rule 2002 service list and on the service list in the Adversary Proceeding.   Anadarko may supplement this service with such additional service or publication it deems appropriate. Anadarko shall be solely responsible for all fees and costs incurred in providing the aforementioned notices.

## ARGUMENT

### The Settlement Agreement Should Be Approved Under Bankruptcy Rule 9019

**I.      The Controlling Legal Standard Under Bankruptcy Rule 9019**

30.     This Court has the power to recommend approval of the Settlement Agreement. Bankruptcy Rule 9019(a) provides, in pertinent part, "[o]n motion by the trustee and after notice

---

[9]      Provided, however, that as it relates to Kerr-McGee Stored Power Company LLC, subpart (vii) is applicable only to the extent that such liability, if any, relates to or arises from the stored power or battery business.

17

and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

*See In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (approving a post-confirmation settlement of fraudulent transfer claims under Rule 9019).

31.    The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *In re Drexel Burnham Lambert Grp., Inc.* 134 B.R. 493, 505 (Bankr. S.D.N.Y. 1991). Discretion may be exercised by the court "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.,* 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). A proposed compromise and settlement implicates the issue of whether it is "fair and equitable, and in the best interest of the [debtor's] estate." *In re Best Prods., Co.,* 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted). A settlement must not "fall below the lowest point in the range of reasonableness." *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

32.    The following factors are considered in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; (iii) the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement; and (iv) the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 292 (2d Cir. 1992); *In re Ionosphere Clubs, Inc.*, 156 B.R.

414, 428 (S.D.N.Y. 1993); *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); *In re Best Prods. Co.*, 168 B.R. at 50.

33.     A court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise." *TMT Trailer*, 390 U.S. at 424-25.  A court need not conduct a full independent investigation. *In re Drexel Burnham Lambert Grp., Inc.,* 134 B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact ….  The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

34.     The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *In re Drexel Burnham Lambert Grp.*, *Inc.,* 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord Ashford Hotels, Ltd.,* 226 B.R. at 802 ("Significantly, that test does not contemplate that [the court] substitute [its] judgment for the Trustee's, but only that [the court] test his choice for reasonableness….  If the Trustee chooses one of two reasonable choices, [the court] must approve that choice, even if, all things being equal, [the court] would have selected the other.").  In order to evaluate the necessary facts, a court may rely on the opinion of the trustees, settlement parties and professionals.  *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010); *see also In re Best Prods. Co.*, 168 B.R. at 50.

35.     There is no requirement that "the value of the compromise … be dollar-for-dollar the equivalent of the claim." *In re Ionosphere Clubs, Inc.*, 156 B.R. at 427.

**II.    The Settlement Agreement Meets the Legal Standard Established Under Rule 9019**

36.    The Settlement Agreement represents an integrated and comprehensive resolution of highly complex and disputed claims.  Anadarko, the Litigation Trust, and the United States have comprehensively analyzed and considered the issues relating to the Adversary Proceeding and the releases and covenants not to sue granted in the Settlement Agreement, and, for the United States, subject to the public comment process, have concluded that, in light of the numerous benefits of the Settlement Agreement, the settlement embodied therein is fair and equitable and represents a reasonable resolution of highly complex issues.

37.    Absent this settlement, all Parties face inherent and significant litigation risk and costs.  The Settlement Agreement also enables Anadarko, the Litigation Trust, and the United States to avoid the risks and costs associated with an extended period of potential appellate review of the Decision and other rulings by the Bankruptcy Court.  Continued appellate litigation would likely take years and substantial expenditures to fully prosecute, with no certainty of recovery by the Litigation Trust or United States, much less any certainty of a greater recovery than that provided under the Settlement Agreement without all of the attendant delay of payment. *See* Declaration of John C. Hueston, Litigation Trustee (attached hereto as *Exhibit D*) (the "***Hueston Decl.***") ¶ 4

38.    By contrast, if the Settlement Agreement is approved, the Litigation Trust will receive, within a relatively short time-frame, a substantial recovery of Five Billion One Hundred Fifty Million Dollars ($5,150,000,000.00) plus Interest in cash, the net proceeds of which will be distributed to the Beneficiaries on account of their Bankruptcy Environmental Claims and Bankruptcy Tort Claims in accordance with the Distribution Scheme.  *See id.* ¶ 5.

39.     Anadarko, the Litigation Trust, and the United States expended considerable resources and time negotiating the Settlement Agreement and have made material concessions in order to reach an agreement.  In entering into the Settlement Agreements, they have assessed the probability of success in the Adversary Proceeding, and considered the contested legal and factual issues in dispute in consultation with their attorneys.

40.     Finally, the Parties have negotiated the Settlement Agreements at arm's length to reach a fair resolution of their disputes.  The settlement is not the product of fraud or collusion. The Parties have all been represented by competent and experienced professionals.  Significant resources have been invested by the Parties in evaluating the Settlement Agreement.  The Settlement Agreement is the product of well-informed judgment and satisfies the standards for approval.

41.     Accordingly, Anadarko and the Litigation Trust submit that the Settlement Agreement is well within the range of reasonableness and the Court should recommend that the District Court approve it.  *See id.* ¶ 6.

### The Injunction Should Be Approved

**III.    An Injunction Under Section 105(a) is Warranted and Necessary**

42.     The Litigation Trust and Anadarko also seek a recommendation that the District Court enter a narrowly tailored injunction as set forth above, without which the settlement embodied by the Settlement Agreement will not occur.

43.     This Court has subject matter jurisdiction to recommend issuance of the injunction because the claims that the Parties seek to enjoin are derivative claims which the Litigation Trust has "exclusive standing" to assert in the first instance.  *Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 429 B.R. 423, 430 (Bankr. S.D.N.Y. 2010).

44.     Pursuant to 28 U.S.C. § 1334(b), District Courts (and therefore Bankruptcy Courts) have original jurisdiction over civil proceedings "arising under," "arising in" and "related to" cases under title 11.  28 U.S.C. § 1334(b); *see also In re Adelphia Commc'ns Corp.*, 2006 WL 1529357, at *6 (Bankr. S.D.N.Y. June 5, 2006).  "Related to" jurisdiction to enjoin a third party dispute exists where the subject of the third party dispute is property of the estate or the dispute would have an effect on the estate.  *In re Johns-Manville Corp.*, 517 F.3d 52, 65 (2d Cir. 2008), *vacated & remanded on other grounds*, 557 U.S. 137, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009), *aff'g in part & rev'g in part*, 600 F.3d 135 (2d Cir. 2010); *In re Delta Airlines, Inc.*, 374 B.R. 516, 525 (S.D.N.Y. 2007).

45.     The Second Circuit has recently affirmed an injunction of duplicative or derivative claims by a Bankruptcy Court similar to the one sought here.  In *In re Bernard L. Madoff Inv. Securities LLC*, the Second Circuit upheld a permanent injunction issued by the Bankruptcy Court barring duplicative or derivative claims in connection with a settlement between the trustee and the defendants of fraudulent transfer claims.  740 F.3d 81 (2d. Cir. 2014).  The Second Circuit agreed with the lower courts that certain putative class actions were barred as duplicative and derivative of claims asserted in the trustee's complaint.  The Second Circuit stated: "We have defined so-called 'derivative claims' in the context of bankruptcy as ones that 'arise[ ] from harm done to the estate' and that 'seek [ ] relief against third parties that pushed the debtor into bankruptcy.'  In assessing whether a claim is derivative, we inquire into the factual origins of the injury and, more importantly, into the nature of the legal claims asserted.  While a derivative injury is based upon 'a secondary effect from harm done to [the debtor],' an injury is said to be 'particularized' when it can be 'directly traced to [the third party's] conduct.'" *Id.* at 89 (internal citations omitted); *see also In re Dewey & LeBoeuf LLP*,

478 B.R. 627, 644-45 (Bankr. S.D.N.Y. 2012) (approving a settlement with former partners of a law firm with a related injunction against derivative claims).

46.    The parties request an injunction nearly identical to that upheld by the Second Circuit in *In re Madoff*.  Like the injunction that was upheld there, the injunction sought here, "by its own terms, is limited to third party claims based on derivative or duplicative liability or claims that could have been brought by the Trustee against the" released parties.  *In re Madoff*, 740 F.3d at 89.  Subject to certain limitations, the Parties seek the issuance of an injunction by the District Court permanently enjoining "(i) any Debtor(s), (ii) any creditor of any Debtor who filed or could have filed a claim in the Chapter 11 Cases, (iii) any other Person whose claim (A) in any way arises from or is related to the Adversary Proceeding, (B) is a Trust Derivative Claim, or (C) is duplicative of a Trust Derivative Claim, and (iv) any Person acting or purporting to act as an attorney for any of the preceding … from asserting against any Anadarko Released Party (I) any Trust Derivative Claims or (II) any claims that are duplicative of such Trust Derivative Claims, whether or not held or controlled by the Litigation Trust, or whether or not the Litigation Trust could have asserted such claims against any Anadarko Released Party."   (*See Ex. A)* "Insofar as such claims are truly duplicative or derivative, they undoubtedly have an effect on the bankruptcy estate and, thus, are subject to the Bankruptcy Court's jurisdiction."  *In re Madoff*, 740 F.3d at 89.[10]

---

[10]    In addition, because the derivative claims included in the requested injunction are property of the estate, the Trustee has "exclusive standing" to assert such causes of action. *Sec. Investor Prof. Corp. v. Bernard L. Madoff Inc. Sec. LLC,* 429 B.R. 423, 430-31 (Bankr. S.D.N.Y. 2010); *McHale v. Alvarez (In re The 1031 Tax Grp., LLC),* 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008); *Goldin v. Primavera Familienstiftung, Tag Assocs. Ltd. (In re Granite Partners L.P.),* 194 B.R. 318, 324-25 (Bankr. S.D.N.Y. 1996). The Second Circuit has stated that "[i]f a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *Sec. Investor Prot. Corp.,*  429 B.R. at 4303 (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 701 (2d Cir. 1989)); *see also In re Emoral, Inc.* 740 F.3d 875, 880 (3d Cir. 2014) (discussing whether a cause of action belongs to the estate, and stating that "state law causes of

23

47.     In addition to the above authorities, the proposed injunction is consistent with the injunction entered by the court in *In re Dreier LLP*, which excluded from the scope of the injunction actions where there was an independent basis on which to bring suit. 429 B.R. 112, 132-34 (Bankr. S.D.N.Y. 2010), aff'd, 2010 WL 3835179, at *4-5 (S.D.N.Y. Sept. 10, 2010) (upholding injunction and endorsing pro rata distribution for similarly situated victims of a Ponzi scheme). The court in *In re Dreier LLP* addressed jurisdiction in the context of derivative claims. Marc S. Dreier, who was the sole equity partner of Dreier LLP, committed fraud against his clients by selling them sham promissory notes. *Id*. at *117. GSO, an investment manager for certain purchasers of notes, transferred over a hundred million dollars to Dreier LLP accounts. *Id*. at *119-20. After the fraud was discovered, Dreier and Dreier LLP filed bankruptcy cases. In an effort to settle potential avoidance actions against GSO, the Chapter 11 Trustee and Chapter 7 Trustee, along with GSO, entered into a settlement agreement, whereby GSO would contribute over $10 million of value to the debtors' estates in exchange for a release and injunction against third-party claims. *Id*. at *120. The court first found that it "plainly" had jurisdiction to bar general creditors of the estates from seeking to recover their claims from the funds transferred by Dreier LLP to GSO. *Id*. at *131-32. The court relied on the principles stated in *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992), which recognized that the automatic stay barred an action by the FDIC to recover property that the debtor had transferred before bankruptcy, and *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 850 (Bankr. S.D.N.Y. 1994), which held that a bankruptcy trustee alone has standing to maintain avoidance actions. *Id*. at *131-32. Based on these principles, the court reasoned that the bankruptcy court could permanently enjoin "derivative" creditor claims on avoidance funds because "[a]bsent that

---

action for successor liability, just as for alter ego and veil-piercing causes of action, are properly characterized as property of the bankruptcy estate.").

power, the Trustees will be hampered in their ability to pursue and ultimately settle fraudulent transfer claims from a transferee fearful of paying twice for the same transfer—once on the Trustees' claim and a second time on the derivative claim." *Id.* at *132 (citing *SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Lambert Grp., Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992).[11] An injunction is appropriate to avoid the re-litigation of claims asserted on behalf of all creditors of the Debtors that have been resolved by the Litigation Trust, particularly where the Litigation Trustee has resolved those claims in a manner that provides substantial funding to creditors on account of their Bankruptcy Environmental Claims and Bankruptcy Tort Claims in accordance with the Distribution Scheme embodied in the Court-approved Plan and Environmental and Tort Trust Agreements.

48.     If Trust Derivative Claims (or claims duplicative of Trust Derivative Claims) were allowed to be asserted, claimants would be permitted to side-step the jurisdiction of this Court, and the mechanisms and compromises approved in the Plan, Litigation Trust Agreement, and the Environmental and Tort Trust Agreements.  Permitting parties with claims derivative of those owned and settled by the Litigation Trust to prosecute such claims would also create the potential for double recovery.

49.     The injunction is narrowly tailored, applying only with respect to those claims that are derivative of the claims owned by the Litigation Trust or duplicative of such claims. Given the fact that the injunction and releases are "narrowly drawn and are necessary to prevent relitigation of precisely the claims that were negotiated and resolved by the Settlement

---

[11]   The Court in Dreier went on to determine that the injunction sought exceeded the Court's jurisdiction for reasons not applicable in this case.  Following that decision, the Dreier trustee filed a renewed motion for approval of the settlement agreement with a more tailored injunction. By order dated June 8, 2010, the Court approved the settlement and entered the injunction sought by the Dreier trustee [Case No. 08-15051 (SMB) ECF No. 610].

Agreement," *In re Delta Airlines, Inc.*, 374 B.R. at 526, this Court has the authority to grant the injunction sought.

## NOTICE

50.     Notice of this motion has been or promptly will be given to the Litigation Trust Beneficiaries and all other Persons currently or previously appearing on the most recent version of the Bankruptcy Court's Rule 2002 service list and the service list in the Adversary Proceeding.  Although Anadarko may supplement this service with such additional service or publication as it deems appropriate, the Litigation Trust and Anadarko submit that no other or further notice need be given and respectfully requests that the Court find that such notice is proper and sufficient.

## NO PRIOR REQUEST

51.     No previous request for the relief sought herein has been made to this or to any other Court.

## CONCLUSION AND RELIEF SOUGHT

52.     The Litigation Trust and Anadarko submit that the Court should issue the Report and Recommendation recommending that the Settlement Agreement be approved for two principal reasons: (a) to avoid further lengthy and burdensome litigation, and (b) because it represents a reasonable compromise of the claims in the Adversary Proceeding and provides substantial funding to the Litigation Trust, the net proceeds of which will be paid to the Beneficiaries on account of their Bankruptcy Environmental Claims and Bankruptcy Tort Claims.  Accordingly, because the Settlement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Litigation Trust and Anadarko respectfully request that the Court:

(i)     grant the Motion and issue the Report and Recommendation recommending approval of the Agreement and the issuance of the permanent injunction as set forth herein; and

(ii)    schedule a hearing on the Motion, which hearing the parties respectfully request to take place at the same time as any oral argument on the Environmental Motion.

New York, New York                          Respectfully submitted,
Dated:  April 9, 2014

                                            */s/ David J. Zott, P.C.*

                                            David J. Zott, P.C. (*admitted pro hac vice*)
                                            Andrew A. Kassof, P.C. (AK 7079)
                                            Jeffrey J. Zeiger (*admitted pro hac vice*)
                                            James R.P. Hileman (*admitted pro hac vice*)
                                            Kirkland & Ellis LLP
                                            300 North LaSalle
                                            Chicago, Illinois  60654-3406
                                            Telephone:    (312) 862-2000
                                            Facsimile:    (312) 862-2200

                                            *Counsel for the Anadarko Litigation Trust*

                                            John C. Hueston, Litigation Trustee
                                            Irell & Manella LLP
                                            1800 Avenue of the Stars, Suite 900
                                            Los Angeles, California 90067
                                            Telephone:  (310) 277-1010
                                            Facsimile:  (310) 203-7199

                                            *Anadarko Litigation Trustee*

                                            */s/ Thomas R. Lotterman*
                                            Thomas R. Lotterman (*admitted pro hac vice*)
                                            Bingham McCutchen LLP
                                            2020 K Street NW
                                            Washington, DC 20006-1806
                                            Telephone: (617) 951-8000
                                            Facsimile: (617) 951-8736

                                            Kenneth N. Klee (KK 5910)
                                            David M. Stern (*admitted pro hac vice*)
                                            Klee, Tuchin, Bogdanoff & Stern LLP
                                            1999 Avenue of the Stars, 39th Floor
                                            Los Angeles, CA 90067

27

Telephone: (310) 407-4000
Facsimile: (310) 407-9090

*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 9th day of April, 2014, a true and correct copy of the foregoing was served on:

**Via Electronic Mail**

Robert William Yalen
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
*Counsel for the United States of America*

*/s/ Jeffrey J. Zeiger*
Jeffrey J. Zeiger