UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| TRONOX INCORPORATED, *et al.*, | : | Case No. 19-10156 (MEW) |
| | : | Confirmed Cases |
| Debtor. | : | |
| | : | |
| TRONOX INCORPORATED, | : | |
| TRONOX WORLDWIDE LLC | : | |
| f/k/a Kerr-McGee Chemical Worldwide LLC, | : | |
| and TRONOX LLC f/k/a Kerr-McGee Chemical, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | Adv. Pro. 09-1198 (MEW) |
| | : | |
| KERR-McGEE CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| THE UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff-Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| TRONOX, INC., | : | |
| TRONOX WORLDWIDE LLC, TRONOX LLC, | : | |
| KERR-McGEE CORPORATION, and | : | |
| ANADARKO PETROLEUM CORPORATION, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**BENCH DECISION DENYING MOTION TO REOPEN
CHAPTER 11 CASE AND ADVERSARY PROCEEDING**

APPEARANCES:

ORTIZ & ORTIZ, LLP
*Counsel for the NAACP*
Astoria, New York
   By: Norma Ortiz, Esq.

WILBUR COLOM, ESQ.
*Special Counsel to the NAACP*
Columbus, Mississippi
   By: Wilbur Colom, Esq.

KEATING MUETHING & KLEKAMP PLL
*Counsel for Tronox Incorporated Tort Claims Trust*
Cincinnati, Ohio
   By: Robert G. Sanker, Esq.
      Bethany P. Recht

UNITED STATES DEPARTMENT OF JUSTICE
*Counsel for Plaintiff-Intervenor United States of America*
Washington, D.C.
   By: Alan S. Tenenbaum, Esq.
   -and-
New York, New York
   By: Robert Yalen, Esq.
      Peter Aronoff, Esq.
      Lawrence Fogelman, Esq.

MORGAN, LEWIS & BOCKIUS LLP
*Counsel for Anadarko and Kerr-McGee Entities*
Washington, D.C.
   By: Thomas R. Lotterman, Esq.
      Duke McCall, III, Esq.
   -and-
Philadelphia, PA
   By: Matthew C. Ziegler, Esq.

BRYAN CAVE LEIGHTON PAISNER LLP
*Counsel for the Trustee*
New York, New York
   By: Philip Karmel, Esq.
      David Unseth, Esq.
      Khaled Tarazi, Esq.

ARENT FOX LLP
*Counsel for Cynthia Brooks, President of Greenfield Environmental Trust Group*
Boston, Massachusetts
   By: Nicholas Nesgos, Esq.

GEORGIA OFFICE/ATTORNEY GENERAL
*Counsel for the Georgia Attorney General*
Atlanta, Georgia
   By: Whitney Groff, Esq.

**HON. MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

     This is the final version of a bench decision that I announced in open court on February 10, 2021. This final version has been edited to correct errors in transcription and inadvertent errors and omissions that I made in the course of my dictation.

     I have before me a motion by the National Association for the Advancement of Colored People (the "NAACP") to reopen adversary proceeding number 09-01198 and also to reopen the chapter 11 cases of Tronox Incorporated and its affiliates, and to permit the NAACP to intervene as an interested party. That was the original relief that was specified, though it has changed a bit and now seems to be mostly a request for discovery, as I will discuss.

     Tronox Incorporated and its affiliates filed voluntary chapter 11 petitions on January 12, 2009. The Court confirmed the first amended joint plan of reorganization for the debtors (the "Plan") on November 30, 2010. The confirmation order and the Plan incorporated the terms of an Environmental Claims Settlement Agreement that had been filed in November 2010 and that had been negotiated by the debtors with various United States agencies, the Navajo Nation, 22 states and a number of municipalities. The effectiveness of that settlement agreement was delayed pending the expiration of a public comment period that was required under the relevant environmental laws. The comment period expired, and the final versions of the Environmental Claims Settlement Agreement and of the Trust documents were approved on February 14, 2011, almost exactly ten years ago.

The Environmental Claims Settlement Agreement resolved the monetary claims that had been asserted by various governmental entities for past and prospective environmental cleanup costs and other claims under environmental laws. The Plan and the Environmental Claims Settlement Agreement created five separate trusts which the parties have referred to, collectively, as the "Environmental Response Trusts." The Trusts received funding in the amount of $270 million at the time of confirmation. They were also entitled to receive 88 percent of the proceeds of a separate adversary proceeding that had been commenced against Kerr-McGee Corporation, Anadarko Petroleum Corporation and other defendants; I will refer to that adversary proceeding as the "Anadarko Litigation." The Anadarko Litigation challenged some corporate transactions that pre-dated the Tronox bankruptcy case, and alleged that Tronox and its predecessors had transferred assets in ways that turned out to be fraudulent as to creditors. The Plan also established a litigation trust that was responsible for pursuing the fraudulent transfer claims in the Anadarko Litigation.

Each of the Environmental Response Trusts took title to some contaminated or potentially contaminated properties. Each governing Trust document, and the Environmental Claims Settlement Agreement as well, designated a particular government authority to act as the lead agency with respect to each separate Trust. In some instances the Trust documents also designated an additional non-lead agency. The Trust documents state quite clearly that the governmental entities are the sole beneficiaries of the Trusts.

Each Trust can only expend funds pursuant to budgets that are approved by the governmental entities who are the beneficiaries. The Trusts may not hire contractors or sell properties without governmental approval. They must make their books and records available to the governmental entities who are the beneficiaries of the Trusts. In short, oversight of the

Trusts is vested with the governmental entities who were the creditors in the bankruptcy case and for whose benefit the Trusts were established. The Environmental Claims Settlement Agreement also says explicitly that it does not create rights in or grant causes of action to any person who is not a party to the agreement.

I should also note that the debtors' estates retained no interest in the properties or assets that were transferred to the various Trusts, or any control or stake in how the funds are used. The arrangements, from the point of view of the debtors and their estates, just resolved the monetary claims against them.

In its motion, the NAACP has asked to reopen the Tronox bankruptcy cases and the Anadarko adversary proceeding and for permission to intervene in both. It has express concerns about the operations of the Trusts, and it has explained that the purpose of intervention is to ensure that the settlement funds "reach the communities of color damaged by Kerr-McGee and to assure the funds are spent for their intended purposes."

Certain facts are not in dispute. The NAACP was not a party to the Anadarko Litigation. It did not object to the settlement of that litigation when the settlement occurred in 2015. Similarly, the NAACP did not file a claim in the bankruptcy cases. It did not file a notice of appearance, and it did not oppose the confirmation of the Plan, or the approval of the Environmental Claims Settlement Agreement, or the terms of the Trusts when they were approved in 2011. The NAACP does not contend that it is or was a creditor of any of the debtors or an equity owner or a "party in interest" as that term is used in the Bankruptcy Code.

It was not clear in the initial motion papers just what relief the NAACP sought. In its reply papers, the NAACP has stated that it does not wish to challenge the settlement of the Anadarko case and does not want to modify any of the Orders that were actually entered by the

Court in the main bankruptcy case, although it has suggested that in in future it may seek relief that would require changes to some of those orders. In the first instance, the NAACP has said it wants to take discovery as to how the Trusts have used funds and how they have made decisions about cleanup contracts and cleanup activities. The NAACP has suggested in its reply papers that it would determine after such discovery just what further proceedings it might be entitled to bring. While specific claims and requests for relief have not been asserted, the NAACP has made clear that it believes there are issues as whether the trustees have abided by their fiduciary duties and also that the structures of the Trusts are "irredeemably flawed" and should be changed.

Objections to the motion have been filed by some of the Trusts, by entities who were defendants in the Anadarko Litigation, and by the Office of the United States Attorney for the Southern District of New York. As the objectors have noted and as I noted during argument, there are a host of procedural problems with the motion that the NAACP has filed and with the relief that it seeks from this court.

The NAACP seeks to reopen the adversary proceeding against Kerr-McGee and Anadarko. However, that proceeding has nothing to do with the actions by the Trusts that the NAACP has criticized. The Anadarko litigation was just a funding vehicle for the Trusts, and the settlement for the Anadarko litigation was approved long ago. There is no reason at all why that adversary proceeding either could or should be reopened. There is no challenge to the settlement terms, nor has any ground been identified that would enable the NAACP, as a nonparty, to reopen that long closed litigation.

As to the bankruptcy case itself: cases may be reopened to administer assets of an estate, but the Trusts here are not assets of the estate. The estates have no interest in the assets that were

transferred to the trusts and the estates are not beneficiaries of the trust.  The administration of estate assets is therefore not a ground for reopening the bankruptcy case.

The NAACP wants discovery, but as a general matter, parties have discovery rights only in connection with an actual claim or proceeding.  There are circumstances under 2004 of the Federal Rules of Bankruptcy Procedure under which I may authorize discovery as to the acts and conduct of a debtor or as to matters that affect the administration of the estate.  *See* Fed. R. Bankr. P. 2004.  But the requested discovery here involves acts of the Trusts and the Trust beneficiaries, not acts of the debtors.  The requested discovery also involves the Trusts' use of assets that ceased to be parts of the estates when they were transferred to the Trusts and in which the estates retained no interest.  Rule 2004 therefore would not support the requested discovery.  I have no other authority, to my knowledge, that would authorize me to permit discovery in aid of a legal claim that has not yet been filed and that has not been described in very specific terms in the papers.

To the extent the NAACP has asked to intervene in an already pending proceeding, it is not at all clear just what proceeding it seeks to reopen and in which it would like to intervene.  In bankruptcy terminology, the chapter 11 cases were "cases" and the individual contested matters and adversary proceedings were "proceedings" within those cases.  The confirmation of the Plan in 2010 was a contested matter and therefore was a "proceeding."  However, section 1144 of the Bankruptcy Code makes clear that a confirmation order cannot be revoked except upon a showing that the order was procured by actual fraud, and even then the request for revocation must be made within 180 days after the entry of the confirmation order.  11 U.S.C. § 1144.  I do not have any allegation of fraud here, and almost 10 years have passed between the entry of the confirmation order and the filing of the NAACP's motion.

The Court reserved jurisdiction in the confirmation order and in the Plan to issue some relief at the request of the Trusts or their stated beneficiaries if it became necessary or appropriate to interpret the Environmental Claims Settlement Agreement or the Trust documents. But the parties to the settlement agreement and the parties to the Trusts have not sought any help in interpreting or construing them.  Nor has the NAACP really identified any term of the settlement agreement or the Trust documents that is in controversy, or that is ambiguous, or that needs to be construed or interpreted, or about which the NAACP would have standing to seek an interpretation.

The Court also reserved authority to enforce the settlement agreement and the Trust documents, but again the parties to the settlement agreement and the trust documents have not asked this Court to enforce any of the terms, and in fact the NAACP has not really done so either.  The NAACP has stated that it wants to enforce what it interprets as the mission of the trusts, but in reality, the transactions that were approved by this Court just resolved the governmental entities' monetary claims against the estate.  The Trusts hold money and come up with plans at the direction of the government.  There is nothing about the particular transactions that this Court approved or that were presented for this Court's approval that needs to be enforced or that indeed anybody is trying to challenge.

To some extent, it appears that the NAACP eventually may want to seek modifications to the confirmed Plan and to the Environmental Claims Settlement Agreement and to the governance provisions that were approved for the Trusts that were established under the Plan, perhaps even giving the NAACP and not just the governmental agencies some oversight powers as to the Trusts.  But the NAACP has not cited any authority that would suggest that any such modifications to the terms of an approved settlement agreement could be made almost 10 years

later at the behest of someone who was not even a party to the particular claims and contested matters that gave rise to the settlement.

The settlement also was incorporated into the confirmed Plan. The NAACP was not a proponent of that Plan and it was not a party in interest in the bankruptcy case, and it has cited no authority pursuant to which it would be entitled to seek a modification of the terms of the Plan or of the transactions and agreements established as part of the Plan. The Environmental Response Trusts were set up for the exclusive benefits of various governmental claimants, and the sole beneficiaries of the Trusts do not include any private citizens or the NAACP itself. Modification of the terms of the Trusts to include other beneficiaries, or to change the persons who are entitled to control the actions of the Trusts, would effectively be a modification of the Plan itself. It is far too late for any such modifications, and no authority has been cited as to how those modifications could be warranted under the Bankruptcy Code.

The NAACP's real complaint is about the ways the Trusts are using funds. It is not even clear if that is a criticism of the Trusts themselves or whether it is a criticism of the various federal and state agencies who are the beneficiaries of the Trusts. However, there is nothing in the Bankruptcy Code or the terms of the confirmed Plan or the Trust documents that puts any of that under my control or supervision. A bankruptcy court is a court of limited jurisdiction. It does have jurisdiction over proceedings that are related to an underlying bankruptcy case, and while a case is pending (and before confirmation of a plan) that jurisdiction normally encompasses proceedings that might have an impact on the estate. However, once a plan has been confirmed a bankruptcy court only has "related to" jurisdiction if a dispute has a close nexus to the bankruptcy case – for example, if the dispute requires the interpretation of a plan or if the plan retains jurisdiction over the dispute. *See Stillwater Liquidating LLC v. Net Five Palm*

*Pointe, LLC (In re Stillwater Asset Backed Offshore Fund Ltd.)*, 559 B.R. 563, 573-74 (S.D.N.Y. 2016).  In this case, the use of money by the Trusts does not involve the estates and does not affect the estates.  Nor are the Trusts' uses of funds matters over which the Court reserved any jurisdiction.  How governments or any other creditors use the funds that they receive in distributions from bankruptcy cases is up to those creditors and is not subject to a bankruptcy court's control or oversight.

Private citizens and private organizations may have rights under environmental laws or other non-bankruptcy laws to challenge the conduct of governmental agencies, or perhaps the conduct of Trusts that are effectively under the control of the government agencies as their sole beneficiaries.  If a private citizen or organization thinks that the government agency or the relevant trust is acting wrongfully and in violation of some other legal duty (whether under the federal constitution, other federal statute, state law or common law), a citizen or organization may pursue whatever remedies they have under non-bankruptcy laws.  But those complaints are not bankruptcy issues, and they are not made bankruptcy issues just because some of the underlying money originally came from distributions in a bankruptcy case.  The issues raised here do not relate to the administration of the bankruptcy estate and I have no jurisdiction over them.

I am not expressing any views about the merits one way or the other of the NAACP's claims.  If there is truth to them, then they are obviously very serious accusations, but I do not have any evidence one way or the other as to whether they are correct or whether they are not.  The only thing I can resolve today is that those complaints really need to be made under other laws, and are not grounds for seeking any relief in this particular court or for reopening the bankruptcy case or the Anadarko adversary proceeding.

      The objectors have also challenged the NAACP's standing to seek relief. They have noted that the NAACP does not allege that it has suffered any concrete or particularized injury, or that it is a beneficiary of the Trusts. I think there is merit to those contentions, but probably do not need to reach them in light of the comments that I have already made. I concur with the objections that have been stated in opposition to the motion, and the motion is therefore denied.

      An order denying the motion to reopen the bankruptcy case and the adversary proceeding was entered on the docket on February 11, 2021 in both proceedings. *See* Adv. Pro. No. 09-1198 at ECF No. 701; and Bankruptcy Case 09-10156 at ECF No. 9495.

Dated: New York, New York
       February 17, 2021

                                    **s/Michael E. Wiles**
                                    UNITED STATES BANKRUPTCY JUDGE